**<u>EXHIBIT C</u>**

ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street
PO Box 093
Trenton, NJ 08625-0093
Attorney for Plaintiffs

By: John F. Dickinson, Jr.
Deputy Attorney General
(609) 984-4863

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; COMMISSIONER, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, As Trustee for Natural Resources; and THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, | Hon. Civ. Action No. |
| Plaintiffs, | |
| v. | |
| TRONOX, LLC; "ABC CORPORATIONS" 1-10 (Names Fictitious); and "JOHN DOES" 1-10 (Names Fictitious), | |
| Defendants. | |

COMPLAINT

Plaintiffs New Jersey Department of Environmental Protection ("DEP"), the Commissioner of the New Jersey Department of Environmental Protection, as trustee for natural resources, and the Administrator of the New Jersey Spill Compensation Fund

("Administrator") (collectively, "the Plaintiffs"), having their principal offices at 401 East State Street in the City of Trenton, County of Mercer, State of New Jersey, by way of Complaint against the above-named defendants ("the Defendants"), say:

## STATEMENT OF THE CASE

1. This is a civil action brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C.A. §§9601 to -9675, specifically Sections 107(a) and 113(g) of CERCLA, 42 U.S.C.A. §§9607(a) and (f) and 9613(g). Plaintiffs DEP and Administrator seek to recover the costs they have incurred, and will incur, for the release, and threatened release, of hazardous substances at the Federal Creosote Superfund site located in the Borough of Manville, Somerset County, New Jersey. Plaintiff Trustee seeks to recover the damages, including reasonable assessment costs, that have incurred, and will incur, for the injury to, destruction of, or loss of any natural resource under her trusteeship resulting from the release or threatened release of hazardous substances at the Federal Creosote Superfund site.

2. The Plaintiffs also bring this action pursuant to the Spill Compensation and Control Act ("the Spill Act"), N.J.S.A. 58:10-23.11 to -23.24, and New Jersey common law, for reimbursement of the costs and damages they have incurred, and will incur, as a result of the discharge of hazardous substances at the Federal

- 2 -

Creosote Superfund site. The costs and damages the Plaintiffs seek include the damages they have incurred, and will incur, for any natural resource of this State that has been, or may be, injured as a result of the discharge of hazardous substances at the Federal Creosote Superfund site. Further, the Plaintiffs seek an order compelling the Defendants to perform, under plaintiff DEP's oversight, or to fund plaintiff DEP's performance of, any further assessment of any natural resource that has been, or may be, injured as a result of the discharge of hazardous substances at the Federal Creosote Superfund site, and to compensate the citizens of New Jersey for the lost value of any injured natural resource.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C.A. §§9607(a) and 9613(b), 28 U.S.C.A. §1331, and 28 U.S.C.A. §1367.

4.    Venue is proper in this district pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C.A. §9607(a) and 9613(b), and 28 U.S.C.A. §1391, because the release, and threatened release, of hazardous substances giving rise to the Plaintiffs' claims occurred in this judicial district.

## THE PARTIES

- 3 -

5.    Plaintiff DEP is a principal department within the Executive Branch of the State government, vested with the authority to conserve and protect natural resources, protect the environment, prevent pollution, and protect the public health and safety. N.J.S.A. 13:1D-9.

6.    Plaintiff Trustee is authorized pursuant to Section 107(f)(2)(B) of CERCLA, 42 U.S.C.A. §§9607(f)(2)(B), to assess damages for the injury to, destruction of, or loss of any natural resource under her trusteeship, and, pursuant to Section 107(a)(1)-(4)(C) of CERCLA, 42 U.S.C.A. §9607(a)(1)-(4)(C), and Section 2 of the Spill Act, N.J.S.A. 58:10-23.11a., seek recovery of those damages, including lost value and reasonable assessment costs.

7.    Plaintiff Administrator is the chief executive officer of the New Jersey Spill Compensation Fund ("the Spill Fund"). N.J.S.A. 58:10-23.11j. As chief executive officer of the Spill Fund, plaintiff Administrator is authorized to approve and pay any cleanup and removal costs plaintiff DEP incurs, N.J.S.A. 58:10-23.11f.c. and d., and to certify the amount of any claim to be paid from the Spill Fund, N.J.S.A. 58:10-23.11j.d.

8.    Defendant Tronox, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business located at One Leadership Square, Suite 300, Oklahoma City, Oklahoma 73102.

- 4 -

9.    Defendant Tronox, LLC is the successor-in-interest to Federal Creosoting Company, Inc., a defunct Delaware corporation, ("Federal Creosoting Company") through the transactions described in paragraphs 10 through 23 below.

10.    On July 31, 1956, Federal Creosoting Company's parent, American Creosoting Company, a defunct Delaware corporation doing business out of Louisville, Kentucky, was acquired by the American Creosoting Corporation, Inc. ("American Creosoting Corp."), a defunct Delaware corporation.

11.    American Creosoting Corp., a wholly-owned subsidiary of the Union Bag Camp Paper Corporation ("Union Camp"), was created by Union Camp expressly for the purpose of acquiring the assets of the American Creosoting Company.

12.    Under the terms of the "Plan of Complete Liquidation" for Federal Creosoting Company, American Creosoting Corp. acquired all of the assets of Federal Creosoting Company, and also assumed all of the liabilities of Federal Creosoting Company.

13.    The "Plan of Complete Liquidation" was approved by the Board of Directors and stockholders of Federal Creosoting Company and the Board of Directors of American Creosoting Corp. on or about December 8, 1959.

14.    On December 16, 1959, the Board of Directors of Federal Creosoting Company met and resolved to complete the liquidation of Federal Creosoting Company by December 31, 1959.

- 5 -

15.    Federal Creosoting Company was dissolved on December 22, 1959.

16.    On September 30, 1964, Kerr-McGee Oil Industries, Inc. acquired all of the issued and outstanding stock of American Creosoting Corporation from Union Camp, and Kerr-McGee Oil Industries, Inc. changed American Creosoting Corp.'s name to Moss-American, Inc., a Delaware corporation, on April 1, 1965.

17.    Kerr-McGee Oil Industries, Inc., in turn, changed its name to Kerr-McGee Corporation on November 1, 1965.

18.    AMPOT, Inc. was incorporated as a wholly-owned subsidiary of Kerr-McGee Corporation on October 25, 1967, and, after several name changes and a merger, became known as Kerr-McGee Chemical Corporation ("Kerr-McGee Chemical") on April 1, 1974.

19.    Kerr-McGee Chemical, a Delaware corporation, was a wholly-owned subsidiary of Kerr-McGee Corporation.

20.    Moss-American merged into Kerr-McGee Chemical on September 1, 1974, with the surviving entity being Kerr-McGee Chemical.

21.    On December 17, 1997, Kerr-McGee Chemical, LLC merged with Kerr-McGee Chemical Corporation, with Kerr-McGee Chemical, LLC being the surviving entity.

22.    In 2005, Kerr-McGee Corporation announced its intention to spin off its chemical business to a stand-alone entity, and, to facilitate the spin-off, New-Co Chemical, Inc. ("New-Co") was

- 6 -

incorporated on May 17, 2005, as a wholly-owned subsidiary of Kerr-McGee Corporation.

23. New-Co changed its name to Tronox, Incorporated on September 12, 2005.

24. On September 22, 2005, Kerr-McGee Chemical, LLC changed its name to Tronox, LLC.

25. Defendants "ABC Corporations" 1-10, these names being fictitious, are entities with identities that cannot be ascertained as of the filing of this Complaint, certain of which are corporate successors to, predecessors of, or are otherwise related to, defendant Tronox, LLC.

26. Defendants "John Does" 1-10, these names being fictitious, are individuals whose identities cannot be ascertained as of the filing of this Complaint, certain of whom are partners, officers, directors, and/or responsible corporate officials of, or are otherwise related to, defendant Tronox, LLC, and/or one or more of the ABC Corporation defendants.

### GENERAL ALLEGATIONS

27. The Federal Creosote Superfund site consists of approximately 53 acres of real property located near the intersection of Champlain Road and Main Street in the Borough of Manville, Somerset County, New Jersey ("the Federal Creosote Property"), and all other areas where any hazardous substance discharged there has become located (collectively, "the Site"),

- 7 -

which plaintiff DEP has designated as Site Remediation Program
Interest No. G000031228.

28.    The Federal Creosote Property is bordered by Conrail's
Lehigh freight line to the north, Conrail's Trenton freight line
and the "Lost Valley" residential development to the southeast, and
the Borough of Manville's commercial district on Main Street to the
west.

29.    The eastern two-thirds of the Federal Creosote Property
(approximately 35 acres) is the site of the 137 home Claremont
Housing Development ("Claremont Development"), and the western one-
third (approximately 17 acres) is the site of the Rustic Mall, a
retail shopping center.

30.    Defendant Tronox, LLC's predecessor, Federal Creosoting
Company, an Indiana corporation, ("Federal Creosoting-Indiana"),
purchased the Federal Creosote Property in 1909.

31.    Federal Creosoting-Indiana began operating a creosote
wood-treatment plant at the Federal Creosote Property in 1910. The
plant treated railroad ties for area railroads, including the
Lehigh Valley and Delaware and Hudson Railroad.

32.    In 1927, Federal Creosoting-Indiana transferred title to
the Federal Creosote Property, the creosote plant and its
appurtenances to Federal Creosoting Company.    Federal Creosoting
Company was a wholly-owned subsidiary of the American Creosoting

- 8 -

Company.   Federal Creosoting Company operated the creosote plant
until March 1956.

33.   Title to the Federal Creosote Property was transferred
by Federal Creosoting Company to American Creosoting Company on or
about March 8, 1956.   American Creosoting Company held title until
conveying the Federal Creosote Property to American Creosoting
Corporation on or about July 31, 1956.

34.   American Creosoting Corporation held title to the Federal
Creosote Property for approximately six months before selling it to
Stanley Rustic, now deceased, on or about February 1, 1957.

35.   Stanley Rustic and Florence Rustic, his wife, conveyed
title to approximately 35.75 acres of the Federal Creosote Property
to Claremont Developers, Inc., a defunct New Jersey corporation, on
or about April 23, 1962, on which property the Claremont
Development is located.

36.   Various individuals are the current owners of record of
portions of the Claremont Development portion of the Federal
Creosote Property, having acquired their properties either directly
from Claremont Developers, Inc., or from the original and
subsequent purchasers of their lots in the Claremont Development.

37.   On or about December 4, 1965, the Rustics, both of whom
are now deceased, transferred the remaining 14.8 acres or so of the
Federal Creosote Property to the Rustic Mall, Inc., a defunct New

- 9 -

Jersey corporation, on which property Rustic Mall, Inc. built the Rustic Mall, a retail shopping center.

38. After Stanley Rustic died on July 5, 1972, Rustic Mall, Inc. sold approximately 9.52 acres of the Rustic Mall portion of the Federal Creosote Property to Harry Wilf, Joseph Wilf and Sidney Hartman (t/a Rustic Mall Shopping Center) on or about April 30, 1973.

39. Also on or about April 30, 1973, Florence Rustic and Joyce Urbanski, as Executrices for the Estate of Stanley Rustic, sold the remaining 3.82 acres or so of the Rustic Mall portion of the Federal Creosote Property to Messrs. Wilf and Hartman.

40. On or about March 1, 2002, Rustic Mall, LLC acquired the entire Rustic Mall portion of the Federal Creosote Property from the Estate of Harry Wilf, Joseph Wilf, and the Estate of Sidney Hartmann, partners (t/a Rustic Mall Shopping Center).

41. Rustic Mall, LLC is the present owner of record of the Rustic Mall portion of the Federal Creosote Property.

42. From 1909 through the present, defendant Tronox's predecessors, certain of the ABC Corporation defendants, and/or certain of the John Doe defendants, own, or have owned, some or all of the Federal Creosote Property, during which time "hazardous substances," as defined in <u>N.J.S.A.</u> 58:10-23.11b., were "discharged" there within the meaning of <u>N.J.S.A.</u> 58:10-23.11b., which substances included creosote.

- 10 -

43.   The business activities of defendant Tronox, LLC's predecessors, including Federal Creosoting Company, while at the Federal Creosote Property, involved the generation, storage and handling of hazardous substances, certain of which were discharged there, which substances included creosote.

44.   The Federal Creosote Property is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C.A. §9601(9).

45.   From 1910 through 1956, "hazardous substances," as defined in Section 101(14) of CERCLA, 42 U.S.C.A. §9601(14), were disposed of at the Federal Creosote Property within the meaning of Section 101(29) of CERCLA, 42 U.S.C.A. §9601(29).

46.   Federal Creosoting Company was the "owner" and/or "operator" of the Federal Creosoting Property at the time of the disposal of hazardous substances under Section 107(a)(2) of CERCLA, 42 U.S.C.A. §9607(a)(2).

47.   The United States Environmental Protection Agency ("EPA") placed the Site on the National Priorities List pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C.A. §§9601 to 9675, on January 19, 1999.

48.   The NPL, which was established pursuant to Section 105(a) of CERCLA, 42 U.S.C.A. §9605(a), is a list EPA promulgates of hazardous waste sites that pose the greatest threat to human health and safety, and the environment.

- 11 -

49. From 1997 to 2001, EPA, in consultation with plaintiff DEP, conducted three remedial investigation and feasability studies of the Site pursuant to Section 104 of CERCLA, 42 U.S.C.A. §9604, during which EPA investigated the nature and extent of the contamination at the Site, and evaluated various remediation alternatives.

50. Sampling results from the remedial investigations revealed the presence of various hazardous substances exceeding the applicable cleanup criteria in the soils and ground water at the Site, which substances included creosote product and creosote constituents, particularly, polycyclic aromatic hydrocarbons ("PAHs"), naphthalene and benzene.

51. Based upon the findings from the three remedial investigations and feasibility studies, EPA, with DEP's concurrence, chose to divide the remediation of the Site into three operable units, or remediation phases.

52. EPA, with plaintiff DEP's concurrence, signed a Record of Decision ("ROD") for each of the three operable units it selected for the Site, in which EPA documented and explained the preferred remedies to address the contaminated soils and ground water at the Site, which EPA and DEP are performing using public funds.

53. The ROD for Operable Unit #1 ("OU-1"), which EPA signed on September 28, 1999, called for the remediation of the creosote-saturated soils in the former lagoons, canals and exit trenches

- 12 -

associated with waste disposal operations at the creosoting plant, which has involved the buy-out and demolition of approximately eighteen homes in the Claremont Development, and the excavation and off-site disposal of approximately 43,900 cubic yards of creosote-contaminated soils. EPA has completed the OU-1 activities.

54.    The ROD for Operable Unit #2 ("OU-2"), which EPA signed on September 29, 2000, called for the remediation of the remaining contaminated soils at the Site that contained chemical constituents of creosote such as PAHs, but not creosote waste materials, which involved the excavation and off-site disposal of an estimated 78,900 cubic yards of contaminated soils from 81 properties in the Claremont Development, and 1 parcel on the Rustic Mall portion of the Federal Creosote Property.    EPA has completed the OU #2 activities.

55.    The ROD for Operable Unit #3 ("OU-3"), which EPA signed on September 30, 2002, addresses the creosote wastes and contaminated soils on the Rustic Mall portion of the Federal Creosote Property, and the contaminated ground water throughout the Site, which involves the excavation and off-site disposal of approximately 38,000 cubic yards of contaminated soils and creosote waste, and long-term groundwater monitoring with institutional controls. EPA has completed the OU #3 activities.

56.    The Plaintiffs have participated in, or have otherwise funded, in part, the remediation of the Site using public funds.

- 13 -

The response costs related to the Site that were incurred by Plaintiffs are not inconsistent with the National Contingency Plan, 40 C.F.R. part 300.

57. Although EPA and plaintiff DEP have undertaken the remediation of the Site, the ground water and soils remain contaminated.

CLAIMS FOR RELIEF

FIRST COUNT

CERCLA

58. The Plaintiffs repeat each allegation of paragraph nos. through 1-57 above as though fully set forth in its entirety herein.

59. Each Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C.A. §9601(21).

60. Plaintiffs DEP and Administrator have incurred, and will continue to incur, costs to respond to the release, and threatened release, of hazardous substances at and from the Federal Creosote Property.

61. The costs plaintiffs DEP and Administrator have incurred, and will incur, for the Site are "response costs" within the meaning of Section 101(25) and 107(a)(4)(A) of CERCLA, 42 U.S.C.A. §§9601(25) and 9607(a)(4)(A).

62. Plaintiff Trustee has incurred, and will continue to incur, damages, including lost value and reasonable assessment

- 14 -

costs, that have occurred due to the injury to, destruction of, or loss of any natural resource under her trusteeship resulting from the release, and threatened release, of hazardous substances at the Federal Creosote Property.

63. The damages, including lost value and reasonable assessment costs, that plaintiff Trustee has incurred, and will incur, are "damages" within the meaning of Section 101(6)and 107(a)(4)(B) of CERCLA, 42 <u>U.S.C.A.</u> §§9601(6) and 9607(a)(4)(B).

64. Pursuant to Section 113(g) of CERCLA, 42 <u>U.S.C.A.</u> §9613(g), plaintiffs DEP and Administrator are further entitled to a declaratory judgment that the Defendants are liable for all response costs plaintiffs DEP and Administrator will incur for the Site, because the Defendants are liable to plaintiffs DEP and Administrator under Section 107 of CERCLA, 42 <u>U.S.C.A.</u> §9607.

65. Pursuant to Section 113(g) of CERCLA, 42 <u>U.S.C.A.</u> §9613(g), plaintiff Trustee is further entitled to a declaratory judgment that the Defendants are liable for all damages, including lost value and reasonable assessment costs, plaintiff Trustee will incur for the Site, because the Defendants are liable to plaintiff Trustee under Section 107 of CERCLA, 42 <u>U.S.C.A.</u> §9607.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE,** plaintiffs DEP, Administrator and Trustee pray that this Court:

- 15 -

a.   Order the Defendants to reimburse plaintiffs DEP and Administrator for all response costs plaintiffs DEP and Administrator have incurred for the Site, with applicable interest;

b.   Order the Defendants to reimburse plaintiff Trustee for all damages, including lost value and reasonable assessment costs, plaintiff Trustee has incurred for the Site, with applicable interest;

c.   Enter declaratory judgment against the Defendants, for all response costs plaintiffs DEP and Administrator will incur for the Site;

d.   Enter declaratory judgment against the Defendants, for all damages, including lost value and reasonable assessment costs, plaintiff Trustee will incur for the Site;

e.   Award plaintiffs DEP, Administrator and Trustee their costs and fees in this action; and

f.   Award plaintiffs DEP, Administrator and Trustee such other relief as this Court deems appropriate.

SECOND COUNT

Spill Act

66.   The Plaintiffs repeat each allegation of paragraph nos. 1 through 65 above as though fully set forth in its entirety herein.

- 16 -

67.   Each Defendant is a "person" within the meaning of
N.J.S.A. 58:10-23.11b.

68.   Except as otherwise provided in N.J.S.A. 58:10-23.11g.12,
any person who discharges a hazardous substance, or is in any way
responsible for any hazardous substance that is discharged, shall
be liable, jointly and severally, without regard to fault, for all
cleanup and removal costs no matter by whom incurred.   N.J.S.A.
58:10-23.11g.(c).

69.   Except as otherwise exempted under N.J.S.A. 58:10-
23.11g.12, the discharge of hazardous substances is a violation of
the Spill Act, for which any person who is the discharger of, or is
in any way responsible for, any hazardous substance that is
discharged, is strictly liable, jointly and severally, without
regard to fault.   N.J.S.A. 58:10-23.11g.c.(1).

70.   Plaintiff DEP has incurred, and may continue to incur,
costs as a result of the discharge of hazardous substances at the
Federal Creosote Property.

71.   Plaintiff Administrator has certified, or may certify,
for payment, valid claims made against the Spill Fund concerning
the Site, and, further, has approved, or may approve, other
appropriations for the Site.

72.   The Plaintiffs also have incurred, and will continue to
incur, costs and damages, including lost value and reasonable
assessment costs, for any natural resource of this State that has

- 17 -

been, or may be, injured as a result of the discharge of hazardous substances at the Federal Creosote Property.

73. The costs and damages the Plaintiffs have incurred, and will incur, for the Site are "cleanup and removal costs" within the meaning of N.J.S.A. 58:10-23.11b.

74. Defendant Tronox, LLC, one or more of the ABC Corporation defendants, and/or one or more of the John Doe defendants, are, or are the successors-in-interest to, the dischargers of hazardous substances at the Federal Creosote Property, and are liable, jointly and severally, without regard to fault, for all cleanup and removal costs and damages, including lost value and reasonable assessment costs, that the Plaintiffs have incurred, and will incur, to assess, mitigate, restore, or replace, any natural resource of this State that has been, or may be, injured as a result of the discharge of hazardous substances at the Federal Creosote Property. N.J.S.A. 58:10-23.11g.c.(1).

75. Defendant Tronox, LLC, one or more of the ABC Corporation defendants, and/or one or more of the John Doe defendants, as the owners, or as the successors-in-interest to the owners, of the Federal Creosote Property at the time hazardous substances were discharged there, also are persons in any way responsible for the discharged hazardous substances, and are liable, jointly and severally, without regard to fault, for all cleanup and removal costs and damages, including lost value and reasonable assessment

costs, that the Plaintiffs have incurred, and will incur, to assess, mitigate, restore, or replace, any natural resource of this State that has been, or may be, injured as a result of the discharge of hazardous substances at the Federal Creosote Property. N.J.S.A. 58:10-23.11g.c.(1).

76.    Pursuant to N.J.S.A. 58:10-23.11u.a.(1)(a) and N.J.S.A. 58:10-23.11u.b., plaintiff DEP may bring an action in the Superior Court for injunctive relief, N.J.S.A. 58:10-23.11u.b.(1); for its unreimbursed investigation, cleanup and removal costs, including the reasonable costs of preparing and successfully litigating the action, N.J.S.A. 58:10-23.11u.b.(2); natural resource restoration and replacement costs, N.J.S.A. 58:10-23.11u.b.(4); and for any other unreimbursed costs or damages plaintiff DEP incurs under the Spill Act, N.J.S.A. 58:10-23.11u.b.(5).

77.    Pursuant    to    N.J.S.A.    58:10-23.11q.,    plaintiff Administrator is authorized to bring an action in the Superior Court for any unreimbursed costs or damages paid from the Spill Fund.

PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs DEP and Administrator pray that this Court:

a.    Order the Defendants to reimburse the Plaintiffs, jointly and severally, without regard to fault, for all cleanup and removal costs and damages, including lost value and reasonable

- 19 -

assessment costs, that the Plaintiffs have incurred for any natural resource of this State injured as a result of the discharge of hazardous substances at the Federal Creosote Property, with applicable interest;

b.     Enter declaratory judgment against the Defendants, jointly and severally, without regard to fault, for all cleanup and removal costs and damages, including lost value and reasonable assessment costs, that the Plaintiffs will incur for any natural resource of this State injured as a result of the discharge of hazardous substances at the Federal Creosote Property;

c.     Enter judgment against the Defendants, jointly and severally, without regard to fault, compelling the Defendants to perform, under plaintiff DEP's oversight, or to fund plaintiff DEP's performance of, any further assessment and restoration of any natural resource that has been, or may be, injured as a result of the discharge of hazardous substances at the Federal Creosote Property, including restoring any injured resource to its pre-discharge condition, and compelling the Defendants to compensate the citizens of New Jersey for the lost value of any injured natural resource;

d.     Award the Plaintiffs their costs and fees in this action; and

e.    Award the Plaintiffs such other relief as this Court deems appropriate.

### THIRD COUNT

### Public Nuisance

78.    The Plaintiffs repeat each allegation of paragraph nos. 1 through 77 above as though fully set forth in its entirety herein.

79.    Ground water is a natural resource of the State held in trust by the State for the benefit of the public.

80.    The use, enjoyment and existence of uncontaminated natural resources are rights common to the general public.

81.    The groundwater contamination at the Site constitutes a physical invasion of public property and an unreasonable and substantial interference, both actual and potential, with the exercise of the public's common right to this natural resource.

82.    As long as the ground water remains contaminated due to the Defendant's conduct, or that of their predecessors, the public nuisance continues.

83.    Until the ground water is restored to its pre-injury quality, the Defendants are liable for the creation, and continued maintenance, of a public nuisance in contravention of the public's common right to clean ground water.

### PRAYER FOR RELIEF

- 21 -

**WHEREFORE,** plaintiffs DEP and Administrator pray that this Court:

a.    Order the Defendants to reimburse the Plaintiffs for all cleanup and removal costs and damages, including restitution for unjust enrichment, lost value and reasonable assessment costs, that the Plaintiffs have incurred for any natural resource of this State injured as a result of the discharge of hazardous substances at the Federal Creosote Property, with applicable interest;

b.    Enter declaratory judgment against the Defendants for all cleanup and removal costs and damages, including restitution for unjust enrichment, lost value and reasonable assessment costs, that the Plaintiffs will incur for any natural resource of this State injured as a result of the discharge of hazardous substances at the Federal Creosote Property;

c.    Enter judgment against the Defendants, compelling the Defendants to perform, under plaintiff DEP's oversight, or to fund plaintiff DEP's performance of, any further assessment and restoration of any natural resource that has been, or may be, injured as a result of the discharge of hazardous substances at the Federal Creosote Property, including restoring any injured resource to its pre-discharge condition, and compelling the Defendants to compensate the citizens of

- 22 -

New Jersey for the lost value of any injured natural resource;

d.    Award the Plaintiffs their costs and fees in this action; and

e.    Award the Plaintiffs such other relief as this Court deems appropriate.

### FOURTH COUNT

#### Trespass

84.    The Plaintiffs repeat each allegation of paragraph nos. 1 through 83 above as though fully set forth in its entirety herein.

85.    Ground water is a natural resource of the State held in trust by the State for the benefit of the public.

86.    The Defendant is liable for trespass, and continued trespass, because hazardous substances were discharged at the Federal Creosote Property.

87.    As long as the ground water remains contaminated, the Defendants' trespass continues.

### PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs DEP and Administrator pray that this Court:

a.    Order the Defendants to reimburse the Plaintiffs for all cleanup and removal costs and damages, including restitution for unjust enrichment, lost value and reasonable assessment

- 23 -

costs, that the Plaintiffs have incurred for any natural resource of this State injured as a result of the discharge of hazardous substances at the Federal Creosote Property, with applicable interest;

b.    Enter declaratory judgment against the Defendants for all cleanup and removal costs and damages, including restitution for unjust enrichment, lost value and reasonable assessment costs, that the Plaintiffs will incur for any natural resource of this State injured as a result of the discharge of hazardous substances at the Federal Creosote Property;

c.    Enter judgment against the Defendants, compelling the Defendants to perform, under plaintiff DEP's oversight, or to fund plaintiff DEP's performance of, any further assessment and restoration of any natural resource that has been, or may be, injured as a result of the discharge of hazardous substances at the Federal Creosote Property, including restoring any injured resource to its pre-discharge condition, and compelling the Defendants to compensate the citizens of New Jersey for the lost value of any injured natural resource;

d.    Award the Plaintiffs their costs and fees in this action; and

- 24 -

5.    Award the Plaintiffs such other relief as this Court

deems appropriate.

                              ANNE MILGRAM
                              ATTORNEY GENERAL OF NEW JERSEY
                              Attorney for Plaintiffs


By: _____

                              John F. Dickinson, Jr.
                              Deputy Attorney General


Dated: October 21, 2008

CERTIFICATION REGARDING OTHER PROCEEDINGS AND PARTIES

Undersigned counsel hereby certifies, in accordance with L.
Civ. R. 11.2, that the matters in controversy in this action is the
subject of United States v. Tronox, LLC, Civ. No. 08-cv-04368 filed
by the United States in this Court on August 29, 2008, and New
Jersey Department of Environmental Protecction, et al. v. Tronox,
LLC, et al., Superior Court of New Jersey, Law Division, Docket No.
SOM-L-923-07.    The latter case is a state court action that will
be dismissed without prejudice subsequent to the filing of this
action.    At this time, Plaintiffs do not know of any non-party who
should be joined in this action, or who might be subject to
joinder.    If, however, any such non-party later becomes known to
the Plaintiffs, an amended certification shall be filed and served
on all other parties and with this Court.

                          ANNE MILGRAM
                          ATTORNEY GENERAL OF NEW JERSEY
                          Attorney for Plaintiffs


                    By: _____
                          John F. Dickinson, Jr.
                          Deputy Attorney General

Dated: October 21, 2008

- 26 -