Richard M. Cieri
Jonathan S. Henes
Patrick J. Nash, Jr. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| TRONOX INCORPORATED, et al.,[1] | ) | Case No. 09-10156 (ALG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## NOTICE OF FILING BLACKLINE OF FINAL DIP ORDER

PLEASE TAKE NOTICE that the above-captioned debtors and debtors in possession hereby submit as Exhibit A hereto a blackline of the *Final Order Authorizing Debtors (A) to Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (C) to Use Postpetition Financing to Repay Prepetition Secured Financing and Existing Debtor-in-Possession Financing*, marked to show changes against that certain *Interim Order (I) Authorizing Debtors (A) to Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (C) to Use Postpetition Financing to Repay*

---

[1] The debtors in these chapter 11 cases include: Tronox Luxembourg S.ar.l; Tronox Incorporated; Cimarron Corporation; Southwestern Refining Company, Inc.; Transworld Drilling Company; Triangle Refineries, Inc.; Triple S, Inc.; Triple S Environmental Management Corporation; Triple S Minerals Resources Corporation; Triple S Refining Corporation; Tronox LLC; Tronox Finance Corp.; Tronox Holdings, Inc.; Tronox Pigments (Savannah) Inc.; and Tronox Worldwide LLC.

*Prepetition Secured Financing and Existing Debtor-in-Possession Financing, and (II)*

*Scheduling Final Hearing Under Bankruptcy Rule 4001(b) and (C)* [Dkt. No 1031], which was

entered by this Court on December 23, 2009.


New York, New York
Dated: January 13, 2010

/s/ Jonathan S. Henes

Richard M. Cieri
Jonathan S. Henes
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

Patrick J. Nash, Jr.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Counsel to the Debtors
and Debtors in Possession

K&E 16179775.1

**Exhibit A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRONOX INCORPORATED, et al.,[1] | ) | Case No. 09-10156 (ALG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ~~INTERIM~~FINAL ORDER ~~(I)~~ AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e), (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (C) TO USE POSTPETITION FINANCING TO REPAY PREPETITION SECURED FINANCING AND EXISTING DEBTOR-IN-POSSESSION FINANCING~~, AND (II) SCHEDULING FINAL HEARING UNDER~~

### ~~BANKRUPTCY RULE 4001(B) AND (C)~~

Upon the motion, dated December 20, 2009 (the **"DIP Motion"**), of Tronox Incorporated (**"Holdings"**), Tronox Worldwide LLC (the **"Borrower"**) and its affiliated debtors, each as debtor and debtor-in-possession (together with Holdings and the Borrower, the **"Debtors"**), in the above-captioned Chapter 11 cases (the **"Cases"**), seeking entry of an interim order (~~this~~ **"Interim Order") and this final order ("Final** Order") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(l), 364(c)(2), 364(c)(3), 364(d)(l), 364(e) and 552 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the **"Bankruptcy Code"**), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**) and the corresponding local rules of this District (the **"Local Rules"**), that, among other things:

---

[1] The debtors in these chapter 11 cases include: Tronox Luxembourg S.ar.l; Tronox Incorporated; Cimarron Corporation; Southwestern Refining Company, Inc.; Transworld Drilling Company; Triangle Refineries, Inc.; Triple S, Inc.; Triple S Environmental Management Corporation; Triple S Minerals Resources Corporation; Triple S Refining Corporation; Tronox LLC; Tronox Finance Corp.; Tronox Holdings, Inc.; Tronox Pigments (Savannah) Inc.; and Tronox Worldwide LLC.[⊥]

(i)    authorizes the Borrower to obtain, and authorizes Holdings and certain subsidiaries of the Borrower (collectively, "**Guarantors**") to guarantee, jointly and severally, the Borrower's obligations in respect of, senior secured postpetition financing, which ~~if approved on a final basis, would consist~~**consists** of:

(a)    a senior secured, super priority, non-amortizing term loan facility consisting of $425.0 million aggregate principal amount (such term loan facility, the "**DIP Facility**") and separated into a $335.0 million single draw tranche and a $90.0 million single draw tranche (both tranches, the "**DIP Loans**"), provided pursuant to the terms and conditions of (x) thi~~s~~**e** Interim Order and the~~is~~ Final Order ~~(as defined below)~~ (collectively, the "**Replacement DIP Orders**"), (y) that certain Senior Secured Super-Priority Debtor-In-Possession And Exit Credit and Guaranty Agreement, in substantially the form attached to the DIP Motion (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with its terms, the "**DIP Credit Agreement**"),[2] by and among Holdings, the Borrower, the Guarantors, Goldman Sachs Lending Partners LLC ("**GS Lending Partners**"), as sole lead arranger, bookrunner and syndication agent (in such capacities, the "**DIP Arrangers**"), and GS Lending Partners, as administrative agent and collateral agent (in such capacities, and including any successor administrative agent and collateral agent, the "**DIP Administrative Agent**," and together with the DIP Arrangers and any other documentation agent, administrative agent, collateral agent, syndication agent, co-agent and all other agents (and successor agents) for the DIP Lenders in respect of the DIP Facility, collectively, the "**DIP Agents**"), for itself and a syndicate of financial institutions as term lenders (the "**DIP Lenders,**" and together with the DIP Agents and any other party to which DIP Obligations (as defined below) are owed pursuant

---

[2] Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given such terms in the DIP Credit Agreement.

to the DIP Loan Documents and/or this ~~Interim~~**Final** Order (including any Lender Counterparty and the Escrow Agent, collectively, the "**DIP Secured Parties**"), and (z) any and all other Credit Documents (as defined in the DIP Credit Agreement) (together with the DIP Credit Agreement, the "**DIP Loan Documents**") (all DIP Loans made to or for the benefit or account of, and all guaranties issued by, the respective Debtors pursuant to the DIP Loan Documents, thi~~s~~**e** Interim Order and ~~any~~**this** Final Order, and all other obligations and liabilities of the Debtors to, or for the benefit of, any or all of the DIP Secured Parties under any or all of the DIP Loan Documents, thi~~s~~**e** Interim Order and ~~any~~**this** Final Order, including, without limitation, all indemnification obligations and all other Obligations as defined in the DIP Credit Agreement, and all obligations owing to the Escrow Agent under the Escrow Agreement (collectively, the "**DIP Obligations**");

(b)     Liens and super-priority administrative claims granted to DIP Administrative Agent, for the benefit of itself and the other DIP Secured Parties, in all DIP Collateral (as defined below) in accordance with the Collateral Documents and this ~~Interim~~**Final** Order to secure any and all of the DIP Obligations;

(c)     repayment in full in cash of the outstanding indebtedness and other obligations (and the cash collateralization of issued and outstanding letters of credit) under the Prepetition Credit Facility (as defined below) and the Existing DIP Credit Facility (as defined below and together with the Prepetition Credit Facility, the "**Existing Credit Facilities**") as provided herein and in the DIP Credit Agreement, subject to the terms and conditions of thi~~s~~**e** Interim Order, the~~is~~ Final Order, and the DIP Loan Documents, and the extinguishing of any and all liens and obligations (except, in each case contingent indemnification obligations as provided in Paragraph 4(c) hereof) arising under the Prepetition Credit Facility and the Existing DIP Credit Facility;

3

(ii) approves the terms of, and authorizes the Debtors to execute and deliver, and perform under, the DIP Credit Agreement, the other DIP Loan Documents and this ~~Interim~~**Final** Order, and to perform such other and further acts as may be required in connection with the DIP Loan Documents and this ~~Interim~~**Final** Order;

(iii) authorizes each Debtor to grant (x) to the DIP Administrative Agent, for the benefit of itself and the other DIP Secured Parties, Liens on all of the DIP Collateral (as defined below) pursuant to sections 364(c) and (d) of the Bankruptcy Code, which Liens shall be senior to the Primed Liens (as defined below) but shall be junior to any valid, enforceable and non-avoidable Liens that are (I) in existence on the Petition Date, and (II) either perfected as of the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (III) senior to the Liens securing the Existing Credit Facilities, (y) to the DIP Secured Parties super-priority administrative claims that are senior to all Environmental Claims (as defined in the Plan Support Agreement referenced below), all Tort Claims (as defined in the Plan Support Agreement referenced below), and any other administrative claims, and that have recourse to all prepetition and postpetition property of the Debtors' estates and proceeds thereof, now owned or hereafter acquired, including Avoidance Actions (as defined below) and proceeds thereof;

(iv) authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**"), including, without limitation, Cash Collateral in which the DIP Secured Parties have a Lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this ~~Interim~~**Final** Order or otherwise;

4

(v)     vacates the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and the Replacement DIP Orders;

(vi)     schedules an emergency interim hearing (the "**Interim Hearing**") on the DIP Motion for the Court to consider entry of th~~is~~e Interim Order, which authorizes the Borrower at any time prior to the entry of the Final Order to borrow $425.0 million in aggregate principal amount under the DIP Facility;

(vii)     schedules a final hearing on the DIP Motion to be held within thirty days after the entry of th~~is~~e Interim Order (the "**Final Hearing**") to consider entry of ~~a final order, acceptable in form and substance to the DIP Administrative Agent~~**this Final Order**, which grants all of the relief requested in the DIP Motion and provided in th~~is~~e Interim Order on a final basis ~~(the "**Final Order**")~~; and

(viii)     waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of this ~~Interim~~**Final** Order.

Having considered the DIP Motion, the DIP Credit Agreement, and the evidence submitted at the Interim Hearing **and the Final Hearing**; and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d) and 9014 and all applicable Local Rules, due and proper notice of the DIP Motion and the Interim Hearing **and Final Hearing** having been given; ~~an Interim~~**a Final** Hearing having been held and concluded on ~~December 22, 2009~~**January 14, 2010**; upon consideration of all pleadings filed with this Court and all objections, if any, to the ~~interim~~ relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the ~~interim~~**final** relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors ~~pending the Final Hearing~~ and otherwise is

5

fair and reasonable and in the best interests of the Debtors, their creditors, their estates and their equity holders, and is essential for the continued operation of the Debtors' business and the pursuit of solicitation, confirmation and consummation of the Plan in accordance with the DIP Loan Documents and the Plan Support Agreement (as defined below); and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED,[3] that:**

A.     **Petition Date**.  On January 12, 2009 (the **"Petition Date"**), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the **"Court"**).  The Debtors have continued in the management and operation of their business and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") has appointed a statutory committee of unsecured creditors (the "**Creditors' Committee**") and a statutory committee of equity security holders (the "**Equity Committee**") in these Cases pursuant to section 1102(a) of the Bankruptcy Code (the Creditors' Committee, the Equity Committee and any other statutory committee appointed in these Cases or any Successor Case (as defined below) shall be collectively referred to herein as the "**Committees**").

B.     **Jurisdiction and Venue**.  This Court has core jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are

---

[3]  Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014 and the Local Bankruptcy Rules.

C.     **Notice**.  The ~~Interim~~**Final** Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001.  Notice of the ~~Interim~~**Final** Hearing ~~and the emergency relief requested in the DIP Motion~~ has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, on December ~~20,~~**28,** 2009, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) the United States Securities and Exchange Commission, (iii) the Internal Revenue Service, (iv) those Persons included on the Debtors' list of largest unsecured creditors on a consolidated basis, (v) counsel to the Existing DIP Agents and the Prepetition Agents (as each term is defined below), (vi) the Existing DIP Agents and the Prepetition Agents, (vii) the Existing DIP Lenders and the Prepetition Lenders (as defined below), (viii) counsel to the DIP Agents; (ix) counsel to the Creditors' Committee; (x) counsel to the Equity Committee; (xi) the Pension Benefit Guaranty Corporation; and (xii) all parties signatory to the Plan Support Agreement (as defined below).  Under the circumstances, such notice of the DIP Motion, the relief requested therein and the ~~Interim~~**Final** Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Bankruptcy Rules, and no further notice of the relief sought at the ~~Interim~~**Final** Hearing and the relief granted herein is necessary or required.

D.     **The Existing DIP Credit Facility and the Prepetition Credit Facility**

(i)     On February 9, 2009, the Court entered the Corrected Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing, (B) to Utilize Cash Collateral and (C) to use Postpetition Financing to Purchase Receivables Portfolio and (II) Granting Adequate Protection to Prepetition Secured Parties (the "**Initial Final DIP Order**").  Pursuant to the Initial

7

Final DIP Order, the Borrower was authorized to borrow up to $125.0 million under that certain Credit Agreement, dated as of January 12, 2009 (as amended, restated, supplemented or otherwise modified, the "**Existing DIP Credit Agreement**," and together with the other Loan Documents (as defined in the Existing DIP Credit Agreement), in each case as amended, restated, supplemented or otherwise modified, collectively with the Existing DIP Credit Agreement, the **"Existing DIP Loan Documents**,**"** and the credit facility contemplated therein, the "**Existing DIP Credit Facility**") among Tronox Worldwide LLC, as borrower, and Holdings, as guarantor, the financial institutions parties thereto from time to time as lenders (the **"Existing DIP Lenders"**), Credit Suisse AG (formerly Credit Suisse) ("**Credit Suisse**"), as administrative agent for the Existing DIP Lenders (in such capacity, the "**Existing DIP Administrative Agent**"), and JPMorgan Chase Bank, N.A. as collateral agent for the Existing DIP Lenders (in such capacity, the "**Existing DIP Collateral Agent**," and together with the Existing DIP Administrative Agent, the "**Existing DIP Agents**," and together with the Existing DIP Lenders, the "**Existing DIP Secured Parties**"). All loans made to or for the benefit or account of, and all guaranties issued by, the respective Debtors pursuant to the Existing DIP Loan Documents, the Initial Final DIP Order (or prior to the entry thereof, the interim order approving the Existing DIP Credit Facility (the "**Initial Interim DIP Order**")) and all other obligations and liabilities of the Debtors arising under the Existing DIP Loan Documents, the Initial Interim DIP Order and Initial Final DIP Order, including, without limitation, all Obligations as defined in the Existing DIP Credit Agreement and the Initial Final DIP Order, shall hereinafter be collectively referred to as the "**Existing DIP Obligations**."

(ii)     Tronox Worldwide LLC, as borrower, certain financial institutions as lenders from time to time (the **"Prepetition Lenders"**), and Credit Suisse[4] as administrative agent and collateral agent for the Prepetition Lenders (in such capacity, the "**Prepetition Administrative Agent**," and together with any other syndication agent, documentation agent, administrative agent, collateral agent, co-agent and other agents for the Prepetition Lenders in respect of the Prepetition Credit Facility (as defined below), collectively, the "**Prepetition Agents**," and together with the Prepetition Lenders, the "**Prepetition Secured Parties**") are parties to that certain Credit Agreement, dated as of November 28, 2005 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "**Prepetition Credit Agreement**," and together with the Prepetition Guarantee and Collateral Agreement (as defined in the Initial Final DIP Order) and the other Prepetition Agreements (as defined in the Initial Final DIP Order), in each case as amended, restated, supplemented or otherwise modified prior to the Petition Date, collectively with the Prepetition Credit Agreement, the **"Prepetition Loan Documents"**) (the credit facility contemplated in the Prepetition Loan Documents, the "**Prepetition Credit Facility**," and together with the Existing DIP Credit Facility, the "**Existing Credit Facilities**").   As of the Petition Date, the Debtors (i) were indebted and liable to the Prepetition Secured Parties in an amount not less than $212,816,978 in respect of loans made by the Prepetition Secured Parties, comprised of a revolving loan facility in an amount not less than $110,073,083 (the "Prepetition Revolving Facility") and a term loan facility in an amount not less than $102,743,895 (the "Prepetition Term Loan Facility") and (ii) contingently liable to the Prepetition Secured Parties in an amount not less than $79,500,000 (the "Prepetition Letters of Credit") in respect of reimbursement obligations with respect to letters of

---

[4] In light of Lehman Brothers Inc.'s chapter 11 filing in 2008, Credit Suisse replaced Lehman Commercial Paper Inc. as administrative agent for the Prepetition Credit Facility (as defined below) prior to the Petition Date.

credit issued under the Prepetition Credit Facility (which Prepetition Letters of Credit became Rolled Prepetition Obligations secured by the Rolled Liens and the Rolled Superpriority Claims, each as defined in the Initial Final DIP Order). All loans, letters of credit and other financial accommodations made to or for the benefit or account of, and all guaranties issued by, the respective Debtors pursuant to the Prepetition Loan Documents prior to the Petition Date, and all other obligations and liabilities of the Debtors arising under the Prepetition Credit Facility, the Initial Interim DIP Order and Initial Final DIP Order, including, without limitation, all Prepetition Debt (as defined in the Initial Final DIP Order), shall hereinafter be collectively referred to as the "**Prepetition Obligations**."

    E.  **Findings Regarding the DIP Facility**.

    (i)  <u>Need for Postpetition Financing</u>. In light of the imminent January 12, 2010 maturity date of the Debtors' Existing DIP Obligations under the Existing DIP Credit Facility, the covenant requiring the Debtors to consummate a sale and certain other factors, including the difficulty in priming the Prepetition Secured Parties over their objection, the Debtors have an immediate need to obtain the DIP Facility and use Cash Collateral, among other things, to repay the Existing Credit Facilities (and to cash collateralize the letters of credit issued and outstanding under the Existing Credit Facilities (each, an "**Existing Letter of Credit**")), and to permit the orderly continuation of the operation of their businesses, to facilitate the Debtors' emergence from chapter 11, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operation needs and to perform their obligations under the Plan Support Agreement (as defined below). The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to the preservation and maintenance of

~~CH\1141897.3~~ CH\1143300.2  Tronox Final Order

the going concern values of the Debtors during the Cases and the Debtors' ability to convert the

DIP Facility into an exit facility upon satisfaction of certain conditions set forth in the DIP Loan

Documents is critical to their ability to consummate a successful reorganization that will

preserve and maintain the Debtors' going concern values in accordance with the terms of the

Plan Support Agreement (as defined below).

(ii)     No Credit Available on More Favorable Terms.  The Debtors have been

and continue to be unable to obtain financing on more favorable terms from sources other than

the DIP Secured Parties under the DIP Loan Documents and this ~~Interim~~**Final** Order.  The

Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the

Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured

credit allowable under sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy

Code without the Debtors granting to the DIP Secured Parties the rights, remedies, privileges,

benefits and protections provided herein**, the Interim Order** and in the DIP Loan Documents,

including, without limitation, the DIP Liens and the DIP Super-Priority Claims (as defined

below) (collectively, the "**DIP Protections**").

(iii)     Plan Support Agreement.  Contemporaneously with the filing of the DIP

Motion, the Debtors, the Creditors' Committee, an ad hoc committee of holders (the "**Ad Hoc**

**Noteholder Committee**") of more than 66% in principal amount of the 9.5% senior unsecured

notes (collectively, the "**Noteholders**") issued under the Indenture, dated November 28, 2005,

between Tronox Worldwide LLC, as issuer, and Citibank N.A., as indenture trustee, and the

United States of America (the "**United States**"), have entered into that certain Plan Support

Agreement (the "**Plan Support Agreement**"**),** pursuant to which, among other things, (x) the

Debtors agreed to file and use commercially reasonable efforts to obtain confirmation of, and to

11

consummate, the Plan (as defined in the DIP Credit Agreement), the principal terms of which are described in the Plan Support Agreement pursuant to the timetable set forth therein, (y) the non-Debtor parties thereto agreed, subject to receipt of a Court-approved Disclosure Statement, to vote to accept the Plan, and to support the confirmation and consummation of the Plan and all transactions contemplated thereby, and (z) certain Noteholders **(collectively, the "Backstop Parties")** and other entities agreed, pursuant to the terms and conditions of a certain Equity Commitment Agreement between the Debtors and such parties (the "**Equity Commitment Agreement**"), to provide a standby commitment to purchase any unsubscribed portion of the equity of the applicable reorganized Debtors to be offered to certain of the Debtors' prepetition unsecured creditors.  In addition, the parties to the Plan Support Agreement have consented to, and have agreed to support, the DIP Facility and the parties' undertakings in the Plan Support Agreement are conditioned upon, among other things, this Court's approval of the DIP Facility pursuant to this ~~Interim Order and the~~ Final Order.

F. **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)  The DIP Secured Parties have indicated a willingness to provide postpetition secured financing via the DIP Facility to the Borrower in accordance with the DIP Loan Documents and this ~~Interim~~**Final** Order.

(ii)  The terms and conditions of the DIP Facility pursuant to the DIP Loan Documents and this ~~Interim~~**Final** Order, and the fees, costs, expenses and other charges paid or to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

~~CH\1141897.3~~ CH\1143300.2  Tronox Final Order

(iii)    The DIP Facility and DIP Loan Documents were negotiated in good faith and at arms' length among the Debtors and the DIP Secured Parties with the assistance and counsel of their respective advisors, and all of the DIP Obligations shall be deemed to have been extended by the DIP Secured Parties and their affiliates for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Liens, the DIP Super-Priority Claims and the other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event this ~~Interim~~**Final** Order or any other order or any provision hereof or thereof is vacated, reversed, amended or modified, on appeal or otherwise.

G.    **Relief Essential; Best Interest**.  ~~For the reasons stated above, the Debtors have~~**The relief** requested ~~immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules~~**in the Motion (and provided in the Interim Order and this Final Order) is necessary, essential and appropriate**.  Absent granting the relief set forth in this ~~Interim~~**Final** Order, the Debtors' estates and their ability to successfully reorganize will be immediately and irreparably harmed. Consummation of the DIP Facility, repayment of the Existing Credit Facilities and authorization of the use of Cash Collateral in accordance with this ~~Interim~~**Final** Order and the DIP Loan Documents is therefore in the best interests of the Debtors' estates consistent with their fiduciary duties.

**NOW, THEREFORE**, on the DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, the Existing DIP Secured Parties and the other parties to the Plan Support

13

Agreement to the form and entry of this ~~Interim~~**Final** Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

2. **Motion Granted**.  The DIP Motion is granted in accordance with the terms and conditions set forth in this ~~Interim~~**Final** Order and the DIP Loan Documents.  Any objections to the DIP Motion with respect to the entry of this ~~Interim~~**Final** Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

3. **DIP Loan Documents and DIP Protections**.

(a) <u>Approval of DIP Loan Documents</u>.  The Debtors are expressly and immediately authorized and empowered and directed to enter into and establish the DIP Facility, to execute, deliver and perform under the DIP Loan Documents and to incur the DIP Obligations in accordance with, and subject to, the terms of this ~~Interim~~**Final** Order and the DIP Loan Documents, and to execute, deliver and perform under all other instruments, certificates, agreements and documents which may be required, necessary or prudent for the performance by the applicable Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens and other DIP Protections described in, and provided for, by this ~~Interim~~**Final** Order and the DIP Loan Documents, including, without limitation, entering into and performing under Hedging Agreements and the Escrow Agreement to the extent required or permitted under the DIP Loan Documents.  The Debtors are hereby further authorized to do and perform all acts and pay all principal, interest, fees, expenses and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this ~~Interim~~**Final** Order, including, without limitation, all closing fees (including arranger fees), administrative

14

fees, commitment fees, letter of credit fees, escrow agent fees and reasonable attorneys' fees, financial advisors' and accountants' fees and disbursements arising under the DIP Loan Documents and this ~~Interim~~**Final** Order, which amounts shall not be subject to further approval of this Court and shall be non-refundable. Upon their execution and delivery by the Debtors, the DIP Loan Documents shall represent valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms. Each officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

(b)     Authorization to Incur DIP Obligations.   To enable the Debtors to continue to operate their business, ~~during the period from the entry of this Interim Order through and including the earlier of the entry of a Final Order (as defined below) or February 8, 2010 or such later date to which the DIP Administrative Agent consents (the "Interim Period"),~~ and subject to the terms and conditions of this ~~Interim~~**Final** Order and the DIP Loan Documents, the Borrower is hereby authorized to (i) borrow DIP Loans under, or as otherwise provided in, the DIP Facility in an aggregate outstanding principal amount not to exceed $425 million; and (ii) repay in cash and cash collateralize, as applicable, all of the Existing DIP Obligations and the Prepetition Obligations under the respective Existing Credit Facilities in accordance with the provisions of Paragraph 4 hereof. ~~Upon the expiration of the Interim Period, the Borrower's authority to borrow further DIP Loans and use Cash Collateral, if any, will be governed by the terms of the Final Order, and if no such Final Order has been entered by the expiration of the Interim Period, the Debtors' right to borrow DIP Loans and use Cash Collateral shall automatically terminate as provided in this Interim Order.~~ All DIP Obligations of the Borrower

15

shall be unconditionally guaranteed by each of the Guarantors on a joint and several basis, in each case as further provided in the DIP Loan Documents.

(c)    Application of DIP Facility and DIP Collateral Proceeds.  The proceeds of the DIP Facility and DIP Collateral (in each case net of any amounts used to pay fees, costs and expenses pursuant to, and in accordance with, the DIP Loan Documents and this ~~Interim~~**Final** Order) shall be used in accordance with the terms and conditions of the DIP Loan Documents and this ~~Interim~~**Final** Order solely for (i) payment in cash and cash collateralization, as applicable, of all of the Existing DIP Obligations and the Prepetition Obligations under the respective Existing Credit Facilities in accordance with the provisions of Paragraph 4 hereof; (ii) working capital; (iii) other general corporate purposes of the Debtors (including intercompany loans and investments (including to and in foreign subsidiaries) solely to the extent permitted by the DIP Loan Documents and this ~~Interim~~**Final** Order); (iv) payment of any related transaction costs, fees and expenses; and (v) the costs of administration of the Cases.  Without limiting the foregoing, ~~upon~~**from and after the date of** entry of thi~~s~~**e** Interim Order, the Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation prior to the effective date of the Plan or any other Chapter 11 plan or plans with respect to any of the Debtors, except with respect to the Prepetition Obligations as set forth in this ~~Interim~~**Final** Order or as otherwise provided in the DIP Credit Agreement, any other order of this Court entered prior to the filing of the DIP Motion or any other order of this Court consented to by the DIP Administrative Agent.  A copy of a condensed version of the Debtors' initial 13-week cash flow forecast is attached as Exhibit A ~~hereto~~**to the Interim Order**.

(d)    Conditions Precedent.  The DIP Secured Parties shall have no obligation to make any DIP Loan or provide any other extension of credit or financial accommodation in

16

respect of the DIP Facility or otherwise during the Interim Period unless and until all conditions precedent to the making of any such DIP Loan or other extension of credit or financial accommodation under the DIP Loan Documents and this Interim**Final** Order have been satisfied in full or waived by the requisite DIP Secured Parties in accordance with the DIP Loan Documents and this Interim**Final** Order.

(e)     <u>DIP Liens</u>.  Effective immediately upon**as of** the **date of** entry of this**e** Interim Order, as set forth more fully in this Interim**Final** Order, the DIP Administrative Agent (as provided in the DIP Loan Documents and for itself and the ratable benefit of the other DIP Secured Parties) is hereby granted the following Liens (which shall immediately, and without any further action by any Person, be valid, binding, permanent, perfected, continuing, enforceable and non-avoidable) on all property of the Debtors, now existing or hereinafter acquired, including, without limitation, all cash and cash equivalents (whether maintained with any of the DIP Agents or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, claims, causes of action, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title**,** letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries (subject to the restriction set forth below), tax refunds, insurance proceeds, commercial tort claims, membership interests and other equity ownership interests, in joint ventures and other non-wholly owned entities affiliated with the Debtors (collectively, the **"Joint Venture Entities"**) (subject to the restrictions set forth

17

below), all other Collateral (as defined in the DIP Credit Agreement) and all other "property of

the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal,

tangible, intangible or mixed, now existing or hereafter acquired or created, and all rents,

products, substitutions, accessions, profits, replacements and cash and non-cash proceeds of all

of the foregoing; provided, however, that notwithstanding any provision herein or in any DIP

Loan Document to the contrary, (i) no Debtor organized under U.S. law shall be required to

pledge in excess of 65% of the voting capital stock of its direct foreign subsidiaries or any of the

capital stock of its indirect foreign subsidiaries, and (ii) the DIP Collateral (as defined below)

shall not include any of: (A) Avoidance Actions (as defined below) or proceeds of Avoidance

Actions, or (B) any L/C Cash Collateral Account (as defined below) or any funds deposited

therein (or proceeds from the investment of such funds deposited in such L/C Cash Collateral

Account) until such funds are released from such L/C Cash Collateral Account in accordance

with this ~~Interim~~**Final** Order (all of the foregoing collateral referenced in this subparagraph (c)

(subject to the aforementioned express exclusions) is collectively referred to as the "**DIP**

**Collateral**," and all such Liens granted to the DIP Administrative Agent, for the ratable benefit

of the DIP Secured Parties pursuant to thi~~s~~**e** Interim **Order, this Final** Order and the DIP Loan

Documents, the "**DIP Liens**"):

(I)        pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, non-avoidable, first priority Lien on all unencumbered DIP Collateral other than the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and any other avoidance or similar action under the Bankruptcy Code or similar state law (collectively, the "**Avoidance Actions**") and the proceeds thereof, whether received by judgment, settlement or otherwise;

(II)       pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior Lien upon all DIP Collateral that is subject to (x) valid, enforceable, non-avoidable and perfected Liens in existence on the Petition Date and are senior to the Liens securing the Existing Credit Facilities, after giving effect to any intercreditor or subordination agreement, and (y) valid, enforceable and non-avoidable Liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and are senior to the Liens

18

securing the Existing Credit Facilities, after giving effect to any intercreditor or subordination agreement, in each case, other than Liens which are expressly stated to be primed by the Liens to be granted to the DIP Administrative Agent described in clause (III) below (subject to such exception, the "**Prepetition Senior Liens**"); and

(III)    pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming Lien on all DIP Collateral (including, without limitation, Cash Collateral) that is senior to (x) the Liens securing any or all of the Existing DIP Obligations and the Prepetition Obligations, or (y) except for the Prepetition Senior Liens, any other Liens in favor of any other Person, including, without limitation, all Liens junior to the Liens securing any or all of the Existing DIP Obligations and the Prepetition Obligations (the Liens referenced in clauses (x) and (y), collectively, the "**Primed Liens**"), which Primed Liens, together with any Liens granted on or after the Petition Date to provide adequate protection in respect of any Primed Liens, shall be primed by and made subject and subordinate to the perfected first priority senior priming DIP Liens.

(f)    <u>DIP Lien Priority</u>.  Notwithstanding anything to the contrary contained in this ~~Interim~~**Final** Order or the other DIP Loan Documents, and for the avoidance of doubt, the DIP Liens granted to the DIP Administrative Agent for the benefit of the DIP Secured Parties shall in each and every case be first priority senior Liens that (i) are subject only to the Prepetition Senior Liens and, solely to the extent provided in this ~~Interim~~**Final** Order and the DIP Loan Documents, the payment of the Carve-Out, and (ii) except as provided in clause (i), are senior to all other prepetition and postpetition Liens of any other Person (including, without limitation, the Primed Liens).  The DIP Liens and the DIP Super-Priority Claims (as defined below) (i) shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (ii) shall not be subordinate to, or pari passu with, (x) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (y) any Liens arising on or after the Petition Date (except to the extent such Liens are expressly permitted under the DIP Loan Documents and except for governmental liens to the extent permitted under the Bankruptcy Code, the priority of which permitted governmental liens vis-à-vis the DIP liens shall be based

on applicable law), or (z) any intercompany or affiliate Liens of the Debtors, and (iii) shall be valid and enforceable against any trustee or any other estate representative appointed in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "**Successor Case**"), and/or upon the dismissal of any of the Cases.

(g)    Enforceable Obligations.  The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the applicable Debtors, which DIP Obligations shall be enforceable against such Debtors, their estates and any successors thereto (including, without limitation, any trustee or other estate representative in any Case or Successor Case), and their creditors, in accordance with their terms.  No obligation, payment, transfer or grant of security under the DIP Credit Agreement, the other DIP Loan Documents or this ~~Interim~~**Final** Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 547, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise) counterclaim, cross-claim, defense or any other challenge under the Bankruptcy Code or any applicable law or regulation by any Person.

(h)    Super-Priority Administrative Claim Status.  In addition to the DIP Liens granted herein, effective immediately upon entry of th~~is~~**e** Interim Order, all of the DIP Obligations shall constitute allowed super-priority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the

20

Carve-Out to the extent specifically provided in the DIP Loan Documents and this ~~Interim~~**Final** Order, over all administrative expense claims (including all Environmental Claims (as defined in the Plan Support Agreement) and Tort Claims (as defined in the Plan Support Agreement)), adequate protection and other diminution claims, unsecured claims and all other claims against the applicable Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment (the "**DIP Super-Priority Claims**").  The DIP Super-Priority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each other Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, all Avoidance Actions (and all proceeds thereof).  Other than as provided in the DIP Credit Agreement and this ~~Interim~~**Final** Order with respect to payment of the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 327, 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these Cases, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Liens and the DIP Super-Priority Claims or the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder.

4.      **Authorization to Use Cash Collateral and Proceeds of the DIP Facility.**

Subject to the terms and conditions of this ~~Interim~~**Final** Order and the DIP Loan Documents, (a) each applicable Debtor is authorized to use proceeds of DIP Loans from and after the Closing Date (as defined in the DIP Credit Agreement), and (b) each applicable Debtor is authorized to use all Cash Collateral, and each Debtor shall be enjoined and prohibited from any time using proceeds of DIP Loans, Cash Collateral or other DIP Collateral except in accordance with the terms and conditions of this ~~Interim~~**Final** Order and the DIP Loan Documents. The applicable Debtors' right to use proceeds of DIP Loans, Cash Collateral and other DIP Collateral shall terminate automatically upon the occurrence of the earlier of (i) the Maturity Date (as defined in the DIP Credit Agreement) or (ii) the third business day after delivery of notice of such termination by the DIP Administrative Agent to the Debtors after the occurrence and during the continuance of an Event of Default under, and as defined in, the DIP Credit Agreement (each, an "**Event of Default**") (the applicable termination date specified in clause (i) or (ii) above, the "**Cash Collateral Termination Date**").

5.     **Payoff of Existing DIP Obligations and Prepetition Obligations**. Subject to the occurrence of the Closing Date (as defined in the DIP Credit Agreement), the Debtors shall use the proceeds of DIP Loans and Cash Collateral to repay in full in cash, and cash collateralize as applicable, the Existing DIP Obligations and the Prepetition Obligations in the manner required by the Existing DIP Loan Documents and the Prepetition Loan Documents, respectively, and in accordance with the following provisions:

(a)     On the business day of the receipt by the Existing DIP Administrative Agent of written notice of entry of th~~is~~**e** Interim Order, the Existing DIP Administrative Agent shall deliver to the Debtors and the DIP Administrative Agent a duly executed payoff letter (the "**DIP Facility Payoff Letter**") (i) setting forth its calculation of all

amounts then due and payable in respect of the Existing DIP Obligations, including the unpaid principal balance of outstanding loans, the face amounts of outstanding letters of credit, accrued and unpaid interest, swap breakage costs (if any) and any other fees, costs and/or expenses due and payable pursuant to the terms of the Existing DIP Loan Documents (the "**Asserted Existing DIP Facility Payoff Amount**"**),** (ii) agreeing to deliver to the DIP Administrative Agent all DIP Collateral in their possession (and agreeing to take reasonable steps to have any Existing DIP Secured Party deliver to the DIP Administrative Agent all DIP Collateral in such Existing DIP Secured Party's possession), together with any necessary endorsements, immediately upon payment of the Asserted Existing DIP Facility Payoff Amount, and (iii) providing customary further assurance provisions with respect to termination or release of Liens and with respect to the taking of further actions, including, without limitation, providing reasonable cooperation and assistance (at the Debtors' expense) with respect to effectuating the assignment (to the extent assignable) of existing deposit account control agreements and securities control agreements as requested by the DIP Administrative Agent.  In the event the Debtors dispute the accuracy or validity of the Asserted Existing DIP Facility Payoff Amount, then the Debtors shall deliver to the Existing DIP Administrative Agent and the DIP Administrative Agent, prior to the Closing Date (as defined in the DIP Credit Agreement) and within one business day after the Debtors' receipt of the Existing DIP Facility Payoff Letter, a written notice (the "**Existing DIP Facility Payoff Amount Dispute Notice**") specifying the portion of the Asserted Existing DIP Facility Payoff Amount that the Debtors dispute (such disputed portion, the "**Disputed Asserted Existing DIP Facility Payoff Amount**" and the undisputed portion, the "**Undisputed Asserted Existing DIP Facility Payoff Amount**"). Promptly upon the Debtors' and the DIP Administrative Agent's receipt of the Existing DIP Facility Payoff Letter and, if applicable, the

23

Existing DIP Facility Payoff Amount Dispute Notice, and subject to the occurrence of the Closing Date (as defined in the DIP Credit Agreement), the Debtors shall use the proceeds of DIP Loans under the DIP Credit Agreement and Cash Collateral to irrevocably repay to the Existing DIP Administrative Agent, for its benefit and the benefit of the Existing DIP Secured Parties, the entire Asserted Existing DIP Facility Payoff Amount (including the Disputed Asserted Existing DIP Facility Payoff Amount) in full satisfaction of the Existing DIP Obligations (including by replacing or cash collateralizing, in each case in accordance with the Existing DIP Loan Documents and any agreement entered into by the Debtors providing for the cash collateralization of such letters of credit, letters of credit outstanding under the Existing DIP Loan Documents and the Initial Final DIP Order); provided, that the Existing DIP Administrative Agent shall retain (and not distribute to the Existing DIP Secured Parties) the Disputed Asserted Existing DIP Facility Payoff Amount pending final resolution of the dispute specified in the Existing DIP Facility Payoff Amount Dispute Notice either by mutual agreement of the parties or by order of the Court. Immediately upon payment of the Asserted Existing DIP Facility Payoff Amount (the date on which such payment occurs, the "**Existing DIP Facility Payment Date**"), (i) all Superpriority Claims (as defined in the Initial Final DIP Order), all DIP Liens (as defined in the Initial Final DIP Order) including, without limitation, all Rolled Liens (as defined in the Initial Final DIP Order), and any other Liens securing any or all of the Existing DIP Obligations shall be automatically terminated, discharged and released in their entirety without any further action of this Court or any other Person, (ii) the Existing DIP Secured Parties shall deliver to the DIP Administrative Agent all DIP Collateral in their possession, together with any necessary endorsements, in each case at the sole cost and expense of the Debtors; provided, that the DIP Liens on such DIP Collateral shall remain valid, enforceable and effective

24

with the priority specified in this ~~Interim~~**Final** Order and the other DIP Loan Documents at all times, notwithstanding that such DIP Collateral may not have been delivered to the DIP Administrative Agent, (iii) each deposit account control agreement and each securities account control agreement entered into in connection with the Existing DIP Loan Documents shall be, at the sole discretion of the DIP Administrative Agent, either (x) assigned, to the extent such agreement can be assigned, to the DIP Administrative Agent on terms and conditions satisfactory to the DIP Administrative Agent or (y) automatically terminated without any further action of this Court or any other Person, and (iv) the Existing DIP Agents shall take all reasonable actions requested by any of the DIP Administrative Agent or the Debtors to effect or evidence the foregoing (including, without limitation, the execution and delivery of UCC-3 termination statements, mortgage releases and other instruments and documents evidencing the release of any and all Liens securing any or all of the Existing DIP Obligations), in each case at the sole cost and expense of the Debtors. Nothing in this paragraph shall require the DIP Secured Parties to loan any funds or provide any other financial accommodations that they are not otherwise required to loan or provide under the terms of the DIP Credit Agreement and this ~~Interim~~**Final** Order.

(b) On the business day of the receipt by the Prepetition Administrative Agent of written notice of entry of th~~is~~**e** Interim Order, the Prepetition Administrative Agent shall deliver to the Debtors and the DIP Administrative Agent a duly executed payoff letter (the "**Prepetition Credit Facility Payoff Letter**") (i) setting forth its calculation of all amounts then due and payable in respect of the Prepetition Obligations, including the unpaid principal balance of outstanding loans, the face amounts of outstanding letters of credit, accrued and unpaid interest (including default interest through the Prepetition

Credit Facility Payment Date (as defined below)), swap breakage costs (if any) and any other fees, costs and/or expenses due and payable pursuant to the terms of the Prepetition Loan Documents (the "**Asserted Prepetition Credit Facility Payoff Amount**")**,** (ii) agreeing to deliver to the DIP Administrative Agent all DIP Collateral in their possession (and agreeing to take reasonable steps to have any Prepetition Secured Party deliver to the DIP Administrative Agent all DIP Collateral in such Prepetition Secured Party's possession), together with any necessary endorsements, immediately upon payment of the Asserted Prepetition Credit Facility Payoff Amount, and (iii) providing customary further assurance provisions with respect to termination or release of Liens and with respect to the taking of further actions.  In the event the Debtors dispute the accuracy or validity of the Asserted Prepetition Credit Facility Payoff Amount, then the Debtors shall deliver to the Prepetition Administrative Agent and the DIP Administrative Agent, prior to the Closing Date (as defined in the DIP Credit Agreement) and within one business day after the Debtors' receipt of the Prepetition Credit Facility Payoff Letter, a written notice (the "**Prepetition Credit Facility Payoff Amount Dispute Notice**") specifying the portion of the Asserted Prepetition Credit Facility Payoff Amount that the Debtors dispute (such disputed portion, the "**Disputed Asserted Prepetition Credit Facility Payoff Amount**" and the undisputed portion, the "**Undisputed Asserted Prepetition Credit Facility Payoff Amount**"). Promptly upon the Debtors' and the DIP Administrative Agent's receipt of the Prepetition Credit Facility Payoff Letter and, if applicable, the Prepetition Credit Facility Payoff Amount Dispute Notice, and subject to the occurrence of the Closing Date (as defined in the DIP Credit Agreement), the Debtors shall use the proceeds of DIP Loans under the DIP Credit Agreement and Cash Collateral to repay to the Prepetition Administrative Agent, for its benefit and the benefit of the Prepetition Secured Parties, the entire Asserted Prepetition Credit Facility

26

Payoff Amount (including the Disputed Asserted Prepetition Credit Facility Payoff Amount) in full satisfaction of the Prepetition Obligations; provided, that the Prepetition Administrative Agent shall retain (and not distribute to the Prepetition Secured Parties) the Disputed Asserted Prepetition Credit Facility Payoff Amount pending final resolution of the dispute specified in the Prepetition Credit Facility Payoff Amount Dispute Notice either by mutual agreement of the parties or by order of the Court.  Immediately upon payment of the Asserted Prepetition Credit Facility Payoff Amount (the date on which such payment occurs, the "**Prepetition Credit Facility Payment Date**"), (i) all adequate protection duties or obligations owed by the Debtors to or for the benefit of any of the Prepetition Secured Parties (including, without limitation, all Adequate Protection Liens, 507(b) Claims and all other Adequate Protection Obligations (as each of the foregoing three terms are defined in the Initial Final DIP Order) provided to or for the benefit of such parties) under the terms of any of the Initial Final DIP Order and the Existing DIP Loan Documents shall be automatically terminated, discharged and released in their entirety without any further action of this Court or any other Person, (ii) all Prepetition Liens (as defined in the Initial Final DIP Order) and all other Liens securing any or all of the Prepetition Obligations shall be automatically terminated, discharged and released in their entirety without any further action of this Court or any other Person, (iii) the Prepetition Secured Parties shall deliver to the DIP Administrative Agent all DIP Collateral in their possession, together with any necessary endorsements, in each case at the sole cost and expense of the Debtors; provided, that the DIP Liens on such DIP Collateral shall remain valid, enforceable and effective with the priority specified in this ~~Interim~~**Final** Order and the other DIP Loan Documents at all times, notwithstanding that such DIP Collateral may not have been delivered to the DIP Administrative Agent, (iv) each deposit account control agreement and each securities account control

27

agreement entered into in connection with the Prepetition Loan Documents, at the sole discretion of the DIP Administrative Agent, shall be either (x) assigned, to the extent such agreement can be assigned, to the DIP Administrative Agent on terms and conditions satisfactory to the DIP Administrative Agent or (y) automatically terminated without any further action of this Court or any other Person, and (v) the Prepetition Secured Parties shall take all reasonable actions requested by any of the DIP Administrative Agent and/or the Debtors to effect or evidence the foregoing (including, without limitation, the execution and delivery of UCC-3 termination statements, mortgage releases and other instruments and documents evidencing the release of any and all Liens securing any or all of the Prepetition Obligations), in each case at the sole cost and expense of the Debtors. Nothing in this paragraph shall require the DIP Secured Parties to loan any funds or provide any other financial accommodations that they are not otherwise required to loan or provide under the terms of the DIP Credit Agreement and this ~~Interim~~**Final** Order.

(c)        Subsequent to the Prepetition Credit Facility Payment Date and the Existing DIP Facility Payment Date, respectively, (i) the Debtors shall promptly pay and/or reimburse the applicable Prepetition Secured Parties and Existing DIP Secured Parties for any and all fees, costs and expenses and losses and damages (including, without limitation, any fees, costs, losses, damages and expenses contemplated by section 10.5 of the Prepetition Credit Agreement or section 9.5 of the Existing DIP Credit Agreement) incurred thereafter to the extent the Prepetition Credit Agreement or the Existing DIP Credit Agreement, as applicable, expressly entitles them to such payment, indemnity or reimbursement after termination of the Prepetition Credit Agreement and the Existing DIP Credit Agreement, respectively (subject to all parties' reservation of rights on whether such fees, costs, losses, damages or expenses are entitled to

28

payment, indemnity or reimbursement by the Debtors); and (ii) such amounts shall, until paid in full in cash, constitute superpriority administrative expense claims under section 503(b)(1) of the Bankruptcy Code (which shall be subject and junior in all respects to the DIP Super-Priority Claims, DIP Liens and other DIP Protections of the DIP Secured Parties) but senior to all other administrative expense claims.

(d)       Immediately upon the occurrence of the Prepetition Credit Facility Payment Date and the Existing DIP Facility Payment Date, the Initial Final DIP Order shall have no further force and effect, except that: (i) the restrictions in Paragraph 20 of the Initial Final DIP Order on the payment of the Creditors' Committee's professional fees incurred in connection with the Lender Litigation shall remain in full force and effect so long as the Lender Litigation remains pending (provided that nothing in this ~~Interim~~**Final** Order shall affect the Creditors' Committee's right, if any, under the Initial Final DIP Order or otherwise to seek allowance and payment of additional professional fees and expenses of its professionals in connection with the Lender Litigation (as defined below) otherwise restricted by Paragraph 20 of the Initial Final DIP Order); and (ii) Paragraphs 4, 12 and 19 of the Initial Final DIP Order shall remain in full force and effect and be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors), the Committees and any other party in interest in these Cases.  As a consequence of the foregoing and the stipulations and admissions contained in Paragraphs 4, 12 and 19 of the Initial Final DIP Order, in each case except to the extent that any such stipulations and admissions have been expressly challenged in respect of the Prepetition Term Loan Facility by the Creditors' Committee in the Lender Litigation (as defined below), (i) the Prepetition Debt shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, recovery,

defense or avoidance for all purposes in these Chapter 11 cases and any subsequent Chapter 7 case, (ii) the liens securing the Prepetition Debt on the Prepetition Collateral (as defined in the Initial Final DIP Order) shall be deemed to be legal, valid, binding, perfected and of the priority described in Paragraph 4(b) of the Initial Final DIP Order, not subject to recharacterization, subordination, avoidance or reduction, (iii) the release of the Claims and Defenses (as defined in the Initial Final DIP Order) by the Debtors shall be binding on all parties in interest in the Cases and any case under Chapter 7 of the Bankruptcy Code and (iv) the Prepetition Debt, the liens securing the Prepetition Debt, the Prepetition Administrative Agent, the Prepetition Lenders and the Released Parties (as defined in the Initial Final DIP Order) shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors). Such stipulations and admissions shall be binding on all parties in interest in respect of the Prepetition Term Loan Facility if the Court approves the proposed settlement of the Lender Litigation pursuant to a separate motion to be made by the Debtors' under Federal Bankruptcy Rule 9019.

(e)     The Debtors are hereby authorized to execute and deliver, and perform their obligations thereunder, including any fees to be paid in connection therewith, one or more agreements (an "**L/C Cash Collateral Agreement**") with each issuer of an Existing Letter of Credit (such issuer, an "**L/C Bank**") providing for the establishment of one or more letter of credit cash collateral accounts (each, a "**L/C Cash Collateral Account**") into which amounts shall be deposited to cash collateralize the Existing Letters of Credit in accordance with the terms thereof, which letters of credit may be extended or renewed on the terms and

30

conditions set forth in such L/C Cash Collateral Agreement.  In the event any L/C Bank fails to enter into an L/C Cash Collateral Agreement establishing an L/C Cash Collateral Account on or before the Closing Date of the DIP Facilities, then the Debtors may set aside a portion of the funds in the Escrow Account equal to 105% of the undrawn amount of the Existing Letters of Credit issued by such L/C Bank (a "**L/C Cash Collateral Reserve**") for the sole purpose of cash collateralizing such Existing Letters of Credit issued by such L/C Bank, and upon the entry of an L/C Cash Collateral Agreement with such L/C Bank establishing a L/C Cash Collateral Account, the Debtors shall promptly cause the applicable L/C Cash Collateral Reserve to be deposited into such L/C Cash Collateral Account.  The Debtors shall use reasonable best efforts to notify any such L/C Bank that such amount is in the L/C Cash Collateral Reserve and, promptly upon the establishment of an account at such L/C Bank into which the L/C Cash Collateral Reserve can be deposited, shall deposit such amount with such L/C Bank and execute and deliver an L/C Cash Collateral Agreement with such L/C Bank.  Each L/C Bank shall have a perfected, unavoidable first priority lien, senior to all other prepetition and postpetition liens, under section 364(c)(2) of the Bankruptcy Code, on the applicable L/C Cash Collateral Account or L/C Cash Collateral Reserve, as the case may be, and any investment of the funds contained therein until such funds are released from such L/C Cash Collateral Account or L/C Cash Collateral Reserve in accordance with this ~~Interim~~**Final** Order, to secure the letter of credit issuer's obligations in respect of the Existing Letter(s) of Credit), and a superpriority administrative expense claim under Section 364(c)(1) junior to the DIP Super-Priority Claims and senior to all other administrative expense claims against the Debtors' estates.  Subject to the immediately following sentence, the Debtors, the estates and creditors (and any successors thereto, including any Chapter 7 trustee) shall not have any authority, and are hereby prohibited from requesting

~~CH\1141897.3~~ CH\1143300.2  Tronox Final Order

authority, (i) under section 363 of the Bankruptcy Code or otherwise to use the funds deposited (or any investment of those funds) in any of the L/C Cash Collateral Accounts or L/C Cash Collateral Reserves for any purpose at any time during these Cases or in any Chapter 7 case of any Debtor converted thereto or (ii) to grant or suffer to exist a lien of any priority on any L/C Cash Collateral Account or L/C Cash Collateral Reserve or the funds therein (or any investment of those funds) (in each case until such funds are released from such L/C Cash Collateral Account or L/C Cash Collateral Reserve in accordance with this ~~Interim~~**Final** Order and the L/C Cash Collateral Agreement) to secure any other obligations of the Debtors or their estates. Notwithstanding the foregoing, the DIP Liens shall attach to the Debtors' rights with respect to the L/C Cash Collateral Accounts or L/C Cash Collateral Reserves and the funds deposited therein (and any proceeds of investments of such deposited funds).  Each L/C Cash Collateral Agreement shall obligate the applicable L/C Bank, and each L/C Bank shall be obligated, as and when any Existing Letter of Credit terminates or expires, to return to the Debtors funds in the applicable L/C Cash Collateral Account in accordance with the applicable L/C Cash Collateral Agreement, or the Debtors shall be permitted to remove from funds from the applicable L/C Cash Collateral Reserve, as the case may be, and thereafter the L/C Bank shall have no lien, claim or other interest in such released funds.  Upon the depositing of the applicable amount into each L/C Cash Collateral Account or the L/C Cash Collateral Reserve, the portion of the Asserted Existing DIP Facility Payoff Amount relating to the Existing Letters of Credit shall be deemed to have been paid in full, and the Debtors (except as otherwise expressly provided in this ~~Interim~~**Final** Order or any L/C Cash Collateral Agreement), the Existing DIP Administrative Agent, the Prepetition Administrative Agent, the Existing DIP Lenders and the Prepetition

Secured Parties shall have no further liability to the L/C Banks in respect of the Existing Letters of Credit.

(f)       Notwithstanding the foregoing, the Debtors shall hold in escrow $5,000,000 in the aggregate (the "**Settlement Amount**") in respect of the repayment of the Prepetition Term Loan Facility pending approval by the Court of the proposed settlement of the civil action captioned *Official Committee of Unsecured Creditors of Tronox Incorporated et al., on behalf of the Estates of Tronox Incorporated et al. v. Credit Suisse et al.* (Case No. 09-01388) (the "**Lender Litigation**").  In the event that such settlement is approved by the Court in a final, non-appealable order, the Settlement Amount shall be retained by the Debtors.  In the event that such settlement is not approved by the Court by a final, non-appealable order, the Settlement Amount shall be paid ratably to the Prepetition Secured Parties in satisfaction of the amounts owed under the Prepetition Term Loan Facility, and the Creditors' Committee's shall have the right to seek disgorgement of all or any portion of such amounts paid to the Prepetition Secured Parties solely in respect of the Prepetition Term Loan Facility (including the Settlement Amount) pursuant to a final, non-appealable resolution of the Lender Litigation.  Nothing in this ~~Interim~~**Final** Order shall be construed to release, discharge or constitute a waiver of any of the Creditors' Committee rights or claims in the Lender Litigation.  If the Creditors' Committee continues to prosecute the Lender Litigation for any reason, then the Debtors shall deposit an amount not less than $15,000,000 with the Prepetition Administrative Agent in respect of the professional fees to be incurred by the Prepetition Secured Parties in connection with the Lender Litigation.  If the proposed settlement of the Lender Litigation is approved by the Court in a final, non-appealable order, then the fees and expenses of the Creditors' Committee's professionals in connection with the Lender Litigation shall not be subject to the restrictions set

forth in Paragraph 20 of the Initial Final DIP Order.  For the avoidance of doubt, any amount

paid to satisfy the obligations owing in respect of the Prepetition Revolving Facility, or to cash

collateralize the Prepetition Letters of Credit, shall not be subject to disgorgement under any

circumstances.

6. **Automatic Postpetition Lien Perfection**.  This ~~Interim~~**Final** Order shall be

sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the

DIP Liens without the necessity of (a) filing or recording any financing statement, deed of trust,

mortgage, or other instrument or document which may otherwise be required under the law of

any jurisdiction, (b) obtaining consents from any landlord, licensor, or other party in interest, (c)

taking possession of any DIP Collateral, the exercising of control over any lock box, deposit

account or securities account or escrow account, or the taking of any action to have security

interests or liens noted on certificates of title or similar documents, or (d) taking any other action

to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein.

Notwithstanding the foregoing, the DIP Administrative Agent may, in its sole discretion, file

financing statements, mortgages, security agreements, notices of Liens and other similar

documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy

Code in order to do so, and all such financing statements, mortgages, security agreements,

notices and other agreements or documents shall be deemed to have been filed or recorded at the

time and on the Closing Date (as defined in the DIP Credit Agreement) and shall constitute DIP

Loan Documents.  The applicable Debtors shall execute and deliver to the DIP Administrative

Agent all such financing statements, mortgages, notices and other documents as such parties may

reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated

priority of, the DIP Liens granted pursuant hereto.  Without limiting the foregoing, the DIP

Administrative Agent may file a photocopy of this ~~Interim~~**Final** Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this ~~Interim~~**Final** Order. To the maximum extent permitted by the Bankruptcy Code, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral, shall have no force or effect with respect to the DIP Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of any DIP Secured Parties in accordance with the terms of the DIP Loan Documents and this ~~Interim~~**Final** Order.

7.     **Carve Out**. Subject to the terms and conditions contained in this Paragraph 6, each of the DIP Liens and DIP Super-Priority Claims shall be subject and subordinate to the Carve-Out (as defined below):

(a)          For purposes of this ~~Interim~~**Final** Order, "Carve-Out" means (i) all unpaid fees required to be paid in these Cases to the clerk of the Bankruptcy Court and to the office of the United States Trustee under 28 U.S.C. §1930(a), whether arising prior to or after the delivery of the Carve-Out Trigger Notice; (ii) (x) all unpaid fees and expenses incurred by professionals retained by the Debtors or the Creditors' Committee in these Cases (collectively, the **"Professionals"**) and the professionals retained by the Ad Hoc Noteholder Committee, in each case, that are incurred prior to the first business day after the delivery by the DIP

35

Administrative Agent of a Carve-Out Trigger Notice (as defined below) and are finally allowed by the Court under sections 105(a), 330 and 331 of the Bankruptcy Code or otherwise, and that remain unpaid after application of available funds remaining in the Debtors' estates for such professionals and creditors and (y) in an aggregate amount not to exceed $5,000,000 (the **"Carve-Out Cap"**), all unpaid and allowed fees and expenses of Professionals that are incurred on or after the first business day after the delivery of a Carve-Out Trigger Notice and that remain unpaid after application of available funds remaining in the Debtors' estates for such professionals and creditors and (iii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $250,000 (clauses (i), (ii)(x) and (ii)(y), and (iii) collectively, the **"Carve-Out"**). The term **"Carve-Out Trigger Notice"** shall mean a written notice delivered by the DIP Administrative Agent to the Debtors' lead counsel, the U.S. Trustee, and lead counsel to the Creditors' Committee, which notice may be delivered at any time following the occurrence and during the continuation of any Event of Default under the DIP Credit Agreement and the commencement by the DIP Administrative Agent of the exercise of any default-related rights and remedies under the DIP Credit Agreement, which notice shall expressly state that the Carve-Out in clause (ii)(y) above (and the Carve-Out Cap) is invoked.

(b)     Following the delivery of the Carve-Out Trigger Notice, any payments actually made pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503 or 1103 or otherwise, to such Professionals shall (i) not be paid from the proceeds of any DIP Loan, DIP Collateral, Prepetition Collateral or Cash Collateral until such time as all retainers, if any, held by such Professionals have been reduced to zero, and (ii) in the case of any payments made on account of any fees and expenses described in clause (ii)(y) of the definition of Carve-Out,

reduce the Carve-Out Cap on a dollar-for-dollar basis. So long as no Carve-Out Trigger Notice has been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under 11 U.S.C. §§ 328, 330 and 331, as the same may be due and payable, and any such compensation and expenses previously paid, or accrued but unpaid, prior to the delivery of the Carve-Out Trigger Notice shall not reduce the Carve-Out or the Carve-Out Cap.

(c)     Notwithstanding any provision in this Paragraph 6 to the contrary, no portion of the Carve-Out, Cash Collateral, DIP Collateral or proceeds of the DIP Facility shall be utilized for the payment of professional fees and disbursements to the extent restricted under Paragraph 14 hereof.

(d)     Notwithstanding any provision herein or in any of the DIP Loan Documents to the contrary, cash proceeds of the DIP Loans in an amount equal to the Carve-Out Cap (as such cap shall be reduced from time to time in accordance with the terms of this ~~Interim~~**Final** Order) (the "**Carve-Out Funds**") shall remain on deposit in the Escrow Account for so long as the Carve-Out has not been fully satisfied and shall be used solely to fund payments in satisfaction of the Carve-Out in accordance with this ~~Interim~~**Final** Order.

(e)     Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in these Cases, or of any other Person, or shall affect the right of any DIP Secured Party to object to the allowance and payment of such fees and expenses. In addition, the Equity Committee, the members of the Equity Committee, and the Equity Committee's professionals shall not be entitled to the benefit of the Carve-Out.

8.     **Waiver of Section 506(c) Claims**.  As a further condition of the DIP Facility and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Loan Documents (and their consent to the payment of the Carve-Out to the extent provided herein), no costs or expenses of administration of the Cases or any Successor Case shall be charged against or recovered from or against any or all of the DIP Secured Parties, the Cash Collateral or any other DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Administrative Agent, and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Secured Parties.

9.     **After-Acquired Property**.  Except as otherwise provided in this ~~Interim~~**Final** Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any Lien of any Person resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable Lien as of the Petition Date which is not subject to subordination under the Bankruptcy Code or other provisions or principles of applicable law.

10.     **Protection of DIP Secured Parties' Rights**.

(a)     Unless the DIP Administrative Agent and the requisite other DIP Secured Parties under the DIP Loan Documents shall have provided their prior written consent or all DIP Obligations have been indefeasibly paid in full in cash, and as applicable fully cash collateralized, in accordance with the provisions of the applicable DIP Loan Documents and all commitments thereunder have been terminated ("**Paid in Full**" or "**Payment in Full**"), there shall not be entered in any Case or in any Successor Case, any order which authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a

38

security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case which is superior to or pari passu with the DIP Liens, DIP Super-Priority Claims and other DIP Protections granted pursuant to this ~~Interim~~**Final** Order to the DIP Secured Parties; or (ii) the use of Cash Collateral for any purpose other than to Pay in Full the DIP Obligations or as otherwise permitted in the DIP Loan Documents and this ~~Interim~~**Final** Order.

(b)     The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will (i) maintain books, records and accounts to the extent and as required by the DIP Loan Documents, (ii) cooperate, consult with, and provide to the DIP Agents all such information as required or allowed under the DIP Loan Documents or the provisions of this ~~Interim~~**Final** Order, (iii) permit representatives of the DIP Agents such rights to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as and to the extent required by the DIP Loan Documents, and (iv) permit representatives of the DIP Agents to consult with the Debtors' management and advisors on matters concerning the general status of the Debtors' businesses, financial condition and operations.

11.     **Proceeds of Subsequent Financing**.     Without limiting the provisions and protections of Paragraph 9 above, if at any time prior to the Payment in Full of all DIP Obligations (including subsequent to the confirmation of the Plan or any other Chapter 11 plan

or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d) or any other provision of the Bankruptcy Code in violation of the DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Administrative Agent for application to, and until Payment in Full of, the DIP Obligations pursuant to the applicable DIP Loan Documents. Without limiting the foregoing, no cash proceeds derived from such credit or debt or any Cash Collateral may be applied to any Environmental Claims (as defined in the Plan Support Agreement), Tort Claims (as defined in the Plan Support Agreement), or any other administrative claims prior to and until Payment in Full of the DIP Obligations.

12. **Cash Collection**. Except as otherwise provided in the DIP Loan Documents, cash collections (including, but not limited to, payments from customers with respect to accounts receivable) constituting proceeds of DIP Collateral (including Cash Collateral) shall be directed to lock-box, deposit and/or escrow accounts ("**Cash Collection Accounts**") under the sole dominion and control of the DIP Administrative Agent pursuant to a structure satisfactory to the DIP Administrative Agent. Subject to the obligations in respect of the Carve-Out set forth in Paragraph 6 hereof, upon the direction of the DIP Administrative Agent at any time after the occurrence of an Event of Default (as defined in the DIP Credit Agreement) and not less than three business days' written notice to the Debtors and the Committees (which notice period shall be inclusive of, and not in addition to, any other notice period required under this ~~Interim~~**Final** Order as a condition to enforcing rights and remedies in respect of the DIP Collateral), all proceeds in the Cash Collection Accounts shall be remitted to the DIP Administrative Agent for application to, and until Payment in Full of, the DIP Obligations pursuant to the applicable DIP

~~CH\1141897.3~~ CH\1143300.2 Tronox Final Order

Loan Documents, and the DIP Administrative Agent may take all action that is reasonably necessary or appropriate to effectuate the foregoing. Unless the DIP Credit Agreement otherwise provides, or the DIP Administrative Agent otherwise agrees in writing, the Debtors shall maintain no accounts except those identified in any order of the Court approving the Debtors' cash management system (the "**Cash Management Order**"). The Debtors and the financial institutions where the Debtors' cash collection accounts are maintained (including those accounts identified in any Cash Management Order), are authorized and directed to remit funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP Administrative Agent. The Debtors are authorized to incur obligations and liabilities for treasury, depositary or cash management services, including without limitation, overnight overdraft services, controlled disbursement, automated clearinghouse transactions, return items, overdrafts and interstate depository network services provided on a postpetition basis by any financial institution at which any Cash Collection Account is maintained; provided, however, that (i) any Lien securing any such obligations shall be junior to the DIP Lien on the funds in the cash collection accounts at such financial institution, and (ii) nothing herein shall require any DIP Secured Party to incur any overdrafts or provide any such services or functions to the Debtors.

13. **Disposition of DIP Collateral**. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the DIP Administrative Agent and the requisite DIP Secured Parties under the DIP Loan Documents (and no such consent shall be implied from any other action, inaction or acquiescence by any DIP Secured Party or any order of this Court), except for sales of inventory in the ordinary course of business and except as otherwise permitted in the DIP Loan Documents

CH\1141897.3 CH\1143300.2 Tronox Final Order

and this ~~Interim~~**Final** Order and approved by the Court to the extent required under applicable bankruptcy law. Except to the extent otherwise expressly provided in the DIP Loan Documents, all proceeds from the sale, transfer, lease, encumbrance or other disposition of any DIP Collateral shall be promptly remitted to the DIP Administrative Agent for application to, and until Payment in Full of, the DIP Obligations pursuant to and in accordance with the applicable DIP Loan Documents. For the avoidance of doubt, subject to the obligations in respect of the Carve-Out set forth in Paragraph 6 hereof, all proceeds from the sale, transfer, lease, encumbrance or other disposition of any DIP Collateral following the occurrence of any Event of Default shall be applied first to Payment in Full of the DIP Obligations, and only after Payment in Full of the DIP Obligations may any such proceeds be applied to any Environmental Claims (as defined in the Plan Support Agreement), Tort Claims (as defined in the Plan Support Agreement), or any other administrative claims.

14. **Events of Default**.

(a) Rights and Remedies Upon Event of Default. Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified, without requiring prior notice to or authorization of, this Court, to the extent necessary to permit the DIP Secured Parties to exercise (i) immediately upon the occurrence and during the continuance of an Event of Default (as defined in the DIP Credit Agreement), all rights and remedies under this ~~Interim~~**Final** Order and the DIP Loan Documents other than those rights and remedies against the DIP Collateral as provided in clause (ii) below, and (ii) upon the occurrence and during the continuance of an Event of Default (as defined in the DIP Credit Agreement) and the giving of five days' prior written notice (the "**Enforcement Notice**") to the Debtors (with a copy to the United States Trustee and the respective lead counsel to the Creditors' Committee and the Equity

42

Committee), all rights and remedies against the DIP Collateral provided for in any DIP Loan Documents or applicable law (including, without limitation, the right to set off against accounts maintained by the Debtors with any DIP Agent or any other DIP Secured Party); provided, however, that notwithstanding anything to the contrary in clause (ii) above, at any time on or after the third business day after the giving of an Enforcement Notice by the DIP Administrative Agent; (w) the Debtors shall deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Administrative Agent for application to, and until Payment in Full of, the DIP Obligations pursuant to the applicable DIP Loan Documents (subject to the obligations in respect of the Carve-Out set forth in Paragraph 6 hereof); (x) the DIP Administrative Agent shall apply such proceeds in accordance with the provisions of the DIP Loan Documents; (y) the Debtors shall have no right to use any such proceeds, any Cash Collateral or other proceeds of DIP Collateral other than towards the Payment in Full of the DIP Obligations and the payment of the Carve-Out, as provided herein and in the applicable DIP Loan Documents; and (z) any obligation otherwise imposed on any or all of the DIP Agents and the other DIP Secured Parties to provide any loan, advance or other financial accommodation to the Debtors pursuant to the DIP Facility shall immediately be suspended. Following the giving of an Enforcement Notice by the DIP Administrative Agent, the Debtors and any other party in interest shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether an Event of Default under the DIP Credit Agreement has occurred, and section 105 of the Bankruptcy Code may not be invoked by the Debtor, the Creditors' Committee or any other party in interest to restrict or preclude any DIP Secured Party from exercising any rights or remedies set forth in this ~~Interim~~**Final** Order and the DIP Loan Documents. If none of the Debtors, the Creditors' Committee or other parties in interest contest the right of the DIP Secured Parties to exercise

~~CH\1141897.3~~ CH\1143300.2  Tronox Final Order

their rights and remedies based upon whether an Event of Default (as defined in the DIP Credit Agreement) has occurred within such five day time period or if any of the Debtors, the Creditors' Committee or other parties interest do timely contest the occurrence of an Event of Default (as defined in the DIP Credit Agreement) and the Court after notice and hearing declines to find that no such Event of Default has occurred, the automatic stay, as to the DIP Secured Parties, shall automatically terminate at the end of such notice period.

(b)         Subject to the obligations in respect of the Carve-Out set forth in Paragraph 6 hereof, all proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties shall be turned over to the DIP Administrative Agent for application to, and until Payment in Full of, the DIP Obligations pursuant to the applicable DIP Loan Documents.

(c)         Nothing herein shall require the Debtors, the DIP Agents or the other DIP Secured Parties to assume any lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP Agents and the other DIP Secured Parties in this Paragraph.

(d)         The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Credit Agreement as necessary to (i) permit the Debtors to grant the DIP Liens and other DIP Protections and to incur all DIP Obligations, (ii) authorize the DIP Secured Parties to retain and apply payments hereunder, and (iii) otherwise to the extent necessary to implement and effectuate the provisions of this ~~Interim~~**Final** Order and the DIP Loan Documents, including, without limitation, the repayment of the Existing DIP Obligations and the Prepetition Obligations.

15.     **Sale Covenant.** Upon the occurrence of any event, condition or circumstance described in clauses (A), (B) or (C) of Section 5.20 of the DIP Credit Agreement (each, a "**Sale Covenant Event**"), the Debtors shall strictly and timely comply with the covenants set forth in Section 5.20 of the DIP Credit Agreement (the "**Sale Covenants**"). The Debtors are authorized and directed to take all actions necessary or prudent to timely and strictly comply with the terms, conditions and milestones set forth in the Sale Covenants, and such terms, conditions and milestones are hereby expressly authorized and approved. To the extent that the Debtors seek approval of an Acceptable Sale Transaction at any point after the occurrence of a Sale Covenant Event, any failure of such Acceptable Sale Transaction (x) to generate proceeds sufficient to pay in full all administrative expense claims incurred in the Cases and/or Successor Cases as applicable, or (y) to otherwise resolve such administrative expense claims shall not be a valid basis for denying any motion to approve an Acceptable Sale Transaction. In furtherance of the Debtors' compliance with the Sale Covenants, the signatories to the Plan Support Agreement shall not object to, or otherwise interfere with, the Debtors' compliance with the Sale Covenants, including, without limitation, the Debtors' motion to approve any Acceptable Sale Transaction and the Debtors' consummation of any Acceptable Sale Transaction; provided, however, that such signatories may object to the commercial reasonableness of (A) any bidding procedures for which the Debtors seek approval of the Bankruptcy Court and/or (B) the manner in which such sale process is conducted by the Debtors (except, for the avoidance of doubt, no such signatory shall be permitted to argue that an Acceptable Sale Transaction must be consummated after the Maturity Date to be commercially reasonable); provided, further, that the United States may object to any Acceptable Sale Transaction to the extent such Acceptable Sale Transaction (i) purports to release the purchaser from any liability under the environmental laws as an owner or

~~CH\1141897.3~~ CH\1143300.2 Tronox Final Order

operator of any property acquired by the purchaser pursuant to the Acceptable Sale Transaction or (ii) contains provisions that are contrary to the environmental laws; provided, further, that the bidding procedures to be approved by the Bankruptcy Court shall permit any creditor to submit a bid that meets the qualified bid requirements included in such bidding procedures.

Any Sale Order entered in connection with approval of an Acceptable Sale Transaction shall provide that the assets being sold pursuant to the Acceptable Sale Transaction shall be free and clear of all liens, claims, interests, encumbrances and successor liability claims that have been or could be asserted against any or all of the Debtors' estates or their respective properties, and except to the extent the DIP Administrative Agent otherwise consents in writing, the proceeds from such Acceptable Sale Transaction shall be first applied to the Payment in Full in cash of the DIP Obligations in accordance with the DIP Loan Documents and this ~~Interim~~**Final** Order prior to payment of any administrative expense claims or any other prepetition unsecured claims against the Debtors' estates.

16. **Restriction on Use of Proceeds**. Notwithstanding anything herein to the contrary, no proceeds from the DIP Facility, Cash Collateral or proceeds of other DIP Collateral (including any prepetition retainer funded by the Existing DIP Facility), or any portion of the Carve-Out may be used by any of the Debtors, the Creditors' Committee, the Equity Committee or any trustee or other estate representative appointed in any Case or any Successor Case, or any other Person to (or to pay any professional fees and disbursements incurred in connection therewith): (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other than from the DIP Secured Parties unless expressly permitted in the DIP Loan Documents; (b) investigate, assert, join, commence, support or prosecute any action for any claim, counter-claim,

action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in such capacity, any or all of the DIP Agents and the other DIP Secured Parties and their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation or in connection thereof), including, without limitation, (i) any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of action; (iii) any action with respect to the amount, validity, enforceability, perfection, priority, characterization and extent of or asserting any defense, counterclaim or offset to the DIP Obligations, or the validity, extent, priority, enforceability, perfection and characterization of the DIP Liens (or the value of any of the DIP Collateral), DIP Super-Priority Claims, any other DIP Protections; (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens, the DIP Super-Priority Claims or any other DIP Protections; (v) except to contest the occurrence or continuation of any Event of Default (as defined in the DIP Credit Agreement) as permitted in Paragraph 13(a), any action seeking, or having the effect of, preventing, hindering or otherwise delaying any or all of the DIP Secured Parties' assertion, enforcement or realization on the Cash Collateral or other DIP Collateral in accordance with the DIP Loan Documents or this ~~Interim~~**Final** Order; and (vi) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to any or all of the DIP Secured Parties hereunder or under the DIP Loan Documents.

17.     [Intentionally omitted].

18.     **Preservation of Rights Granted under ~~the~~Final Order**.

(a)    No Non-Consensual Modification or Extension of ~~Interim~~**Final** Order. Unless all DIP Obligations shall have been Paid in Full, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Credit Agreement (resulting, among other things, in the termination of the Debtors' right to use Cash Collateral and to borrow under the DIP Facility), if there is entered (i) an order amending, supplementing, extending or otherwise modifying this ~~Interim~~**Final** Order or (ii) an order converting or dismissing any of the Cases, in each case, without the prior written consent of the DIP Administrative Agent, and no such consent shall be implied by any other action, inaction or acquiescence.

(b)    Dismissal.   If any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that (i) the DIP Protections shall continue in full force and effect and shall maintain their priorities as provided in this ~~Interim~~**Final** Order until all DIP Obligations have been Paid in Full (and that all DIP Protections shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections and DIP Obligations.

(c)    Modification of ~~Interim~~**Final** Order.   Based on the findings set forth in this ~~Interim~~**Final** Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this ~~Interim~~**Final** Order and the DIP Loan Documents, in the event any or all of the provisions of this ~~Interim~~**Final** Order are hereafter reversed, modified, vacated or stayed by a subsequent order of this Court or any other court, the DIP Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such reversal, modification, vacatur or stay shall affect (i) the validity,

48

priority or enforceability of any DIP Protections or DIP Obligations granted or incurred prior to the actual receipt of written notice by the DIP Agents of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any DIP Lien, DIP Superpriority Claim or any other DIP Protection or priority authorized or created hereby or pursuant to the DIP Loan Documents and this ~~Interim~~**Final** Order with respect to any DIP Obligations. Notwithstanding any such reversal, modification, vacatur or stay, any use of DIP Collateral (including Cash Collateral) or any DIP Obligations and DIP Protections incurred or granted by the Debtors prior to the actual receipt of written notice by the DIP Administrative Agent of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this ~~Interim~~**Final** Order, and the DIP Secured Parties shall be entitled to all of the DIP Protections and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted in section 364(e) of the Bankruptcy Code, this ~~Interim~~**Final** Order and pursuant to the DIP Loan Documents with respect to all use of Cash Collateral and other DIP Collateral and all DIP Obligations.

(d) Survival of ~~Interim~~**Final** Order. The provisions of this ~~Interim~~**Final** Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto **or pursuant to the Interim Order**, and all of the DIP Protections and all other rights, remedies, DIP Liens, DIP Super-Priority Claims, priorities, privileges, protections and benefits granted to any or all of the DIP Secured Parties shall survive, and shall not be modified, impaired or discharged by, the entry of any order confirming any plan of reorganization in any Case, converting any Case to a case under chapter 7, dismissing any of the Cases, withdrawing of the reference of any of the Cases or any Successor Case or providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court, or terminating the joint administration of these

49

Cases or by any other act or omission. The terms and provisions of this ~~Interim~~**Final** Order, including all of the DIP Protections and all other rights, remedies, DIP Liens, DIP Super-Priority Claims, priorities, privileges, protections and benefits granted to any or all of the DIP Secured Parties, shall continue in full force and effect notwithstanding the entry of any such order, and such DIP Protections shall continue in these proceedings and in any Successor Case, and shall maintain their respective priorities as provided by this ~~Interim~~**Final** Order. The DIP Obligations shall not be discharged by the entry of an order confirming the Plan or any other such Chapter 11 plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

19. **Affiliate Payments; Inter-Debtor Borrowing**s. Except as otherwise permitted pursuant to the terms of the DIP Loan Documents, the DIP Loan Documents or as otherwise agreed in writing by the DIP Administrative Agent and the requisite other DIP Secured Parties under the DIP Loan Documents in their sole discretion, and subject to the remainder of this Paragraph, no Debtor shall make any loans, advances, distributions, transfers or other payments of any kind whatsoever to any other Debtor or any Affiliate. All intercompany claims arising from any permitted postpetition loans, advances, distributions, transfers or other payments from any Debtor to another Debtor shall constitute administrative expense claims against the estate of the applicable borrowing Debtor, and shall be junior and subordinate to the DIP Obligations and shall be subject to the DIP Liens and the DIP Super-Priority Claims.

20. **Other Rights and Obligations**.

(a) <u>Expenses</u>. As provided in, and subject to the limitations and exceptions set forth in, the DIP Loan Documents, the applicable Debtors will pay all reasonable fees, costs, expenses and other charges incurred by the respective DIP Agents (including, without limitation,

~~CH\1141897.3~~ CH\1143300.2  Tronox Final Order

the reasonable fees and disbursements of all counsel for the DIP Agents and any internal or third-party appraisers, consultants and auditors advising any DIP Agent) in connection with the preparation, execution, delivery, syndication and administration of the DIP Loan Documents, this~~e~~ Interim Order, ~~any~~**this** Final Order and any other agreements, instruments, pleadings or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated.  Payment of such fees, costs, expenses and other charges shall be approved and allowed pursuant to this ~~Interim~~**Final** Order and shall not be subject to any further allowance by this Court.  Professionals for the DIP Agents (collectively, the "**Lender Professionals**") shall not be required to comply with the U.S. Trustee fee guidelines or submit invoices to the Court, U.S. Trustee, the Creditors' Committee, the Equity Committee or any other party-in-interest absent further court order.  Copies of invoices submitted to the Debtors by such Lender Professionals shall be forwarded by the Debtors to the U.S. Trustee, counsel for the Creditors' Committee, and such other parties as the Court may direct.  The invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without limiting the right of the various professionals to redact privileged, confidential or sensitive information).  If the Debtors, U.S. Trustee or counsel for the Creditors' Committee object to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within ten (10) days of receipt of such invoices, the Debtors, U.S. Trustee or the Creditors' Committee, as the case may be, shall file and serve on such Lender Professionals an objection with the Court (the "**Fee Objection**") limited to the issue of reasonableness of such fees and expenses.  The Debtors shall timely pay in accordance with the terms and conditions of this ~~Interim~~**Final** Order the undisputed fees, costs and expenses reflected on any invoice to

which a Fee Objection has been timely filed and shall pay the any such remaining fees, costs and expenses owed following a final resolution of the Fee Obligation by agreement or adjudication by the Court.

**As provided in, and subject to the limitations and exceptions set forth in, the Equity Commitment Agreement, the applicable Debtors will pay all reasonable fees, costs, expenses and other charges incurred by the Backstop Parties (including, without limitation, the reasonable fees and disbursements of Milbank, Tweed, Hadley & McCloy LLP, legal advisor to the Backstop Parties ("Milbank"), and Broadpoint Capital, Inc. "Broadpoint") as financial advisor to the Backstop Parties pursuant to the engagement letter attached as Exhibit C to the Declaration of Timothy O'Connor Regarding Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1), and 364(E), (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (C) to Use Postpetition Financiing to Repay Prepetition Seured Financing and Existing Debtor in Possession Financing (such engagement letter the "Broadpoint Engagement Letter," which is hereby approved as constituting Exhibit D to the Equity Commitment Agreement)) in connection with the transactions contemplated in the Equity Commitment Agreement,** _the Plan Support Agreement_ **and the Broadpoint Engagement Letter. Payment of such fees, costs, expenses and other charges shall be approved and allowed pursuant to this Final Order without further application to or allowance by this Court. Professionals for the Backstop Parties (collectively, the "Backstop Parties' Professionals") shall not be required to comply with the U.S. Trustee fee guidelines or submit invoices to the Court, U.S. Trustee, the Creditors' Committee, the Equity Committee or any other party-in-interest absent further court**

~~CH\1141897.3~~ CH\1143300.2  Tronox Final Order

**order. Copies of invoices submitted to the Debtors by such Backstop Parties' Professionals shall be forwarded by the Debtors to the U.S. Trustee, counsel for the Creditors' Committee, and such other parties as the Court may direct. The invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without limiting the right of the various professionals to redact privileged, confidential or sensitive information), provided, however, that (i) the fee terms set forth in the Broadpoint Engagement Letter are hereby approved as reasonable and appropriate under the circumstances of these cases, and are not subject to further review or determination as to reasonableness, and (ii) only Broadpoint's expenses shall be subject to review or determination as to reasonableness. If the Debtors, U.S. Trustee or counsel for the Creditors' Committee object to the reasonableness of Milbank's fees and expenses or Broadpoint's expenses and cannot resolve such objection within ten (10) days of receipt of such invoices, the Debtors, U.S. Trustee or the Creditors' Committee, as the case may be, shall file and serve on such Backstop Parties' Professionals a Fee Objection limited to the issue of reasonableness of such fees or expenses, as applicable. The Debtors shall timely pay in accordance with the terms and conditions of this Final Order and the Equity Commitment Agreement the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been timely filed and shall pay any such remaining fees, costs and expenses owed following a final resolution of the Fee Objection by agreement or adjudication by the Court. Broadpoint and each of the Broadpoint Parties (as defined in the Broadpoint Engagement Letter) shall be deemed to be an Indemnified Person pursuant to the indemnification provisions set forth in Section 8 of the Equity Commitment Agreement, and the Debtors are hereby directed and shall be deemed to indemnify**

**Broadpoint and each of the Broadpoint Parties as Indemnified Persons pursuant to section 8 of the Equity Commitment Agreement, provided that the foregoing indemnification will not, as to any such Indemnified Person, apply to losses, claims, damages, liabilities or expenses to the extent that they are finally judicially determined to have resulted from the bad faith, self dealing, breach of fiduciary duty, gross negligence or willful misconduct of such Indemnified Person.**

(b)  <u>Binding Effect</u>.  The provisions of this ~~Interim~~**Final** Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Secured Parties, any Committee and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; <u>provided</u>, <u>however</u>, that the DIP Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(c)  <u>No Waiver</u>.  Neither the failure of the DIP Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this ~~Interim~~**Final** Order, the DIP Loan Documents or otherwise (or any delay in seeking or exercising same), shall constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.  Except as expressly provided herein, nothing contained in this ~~Interim~~**Final** Order (including, without limitation, the

~~CH\1141897.3~~ CH\1143300.2  Tronox Final Order

authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to any DIP Secured Party, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion). Except as prohibited or limited by this ~~Interim~~**Final** Order, the entry of this ~~Interim~~**Final** Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, to (i) request conversion of the Cases to cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any Chapter 11 plan or plans with respect to any of the Debtors, or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties.

(d)      No Third Party Rights.   Except as explicitly provided for herein, this ~~Interim~~**Final** Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.  In determining to make any loan or any other financial accommodation (whether under the DIP Credit Agreement, any other DIP Loan Documents or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this ~~Interim~~**Final** Order or the DIP Loan Documents, the DIP Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors, (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates or (iii) ~~subject only to the right of the Environmental Protection Agency to be heard at the Final Hearing,~~ be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the DIP Secured Parties'

55

actions do not constitute, within the meaning of 42 U.S.C. §§ 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or statement government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act 42 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

(e)    No Marshaling.    The DIP Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

(f)    Amendments.    The Debtors are authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement or waive any provision of the DIP Loan Documents in consultation with the Creditors' Committee and the Equity Committee and with the consent of the DIP Administrative Agent and the other requisite DIP Secured Parties in accordance with the DIP Loan Documents, in each case unless (i) the Creditors' Committee or Equity Committee notifies the Debtors and the DIP Administrative Agent on or before the fifth business day after delivery of written notice of such proposed amendment, modification, supplement or waiver to the respective lead counsel for the Creditors' Committee and the Equity Committee that, in their judgment, such proposed amendment, modification, supplement or waiver is material, or (ii) such amendment, modification, supplement or waiver (x) increases the interest rate (other than as a result of the imposition of the default rate), (y) increases the aggregate lending commitments of all of the DIP Lenders in respect of the DIP Facility, or (z) changes the Maturity Date (as defined in the DIP Credit Agreement).    No waiver, modification, or amendment of any of the provisions hereof shall be

56

effective unless set forth in writing, signed by on behalf of all the Debtors and the DIP Administrative Agent (after having obtained the approval of the requisite DIP Secured Parties as provided in the DIP Loan Documents) and, except as provided in the immediately preceding sentence, approved by this Court.

(g)     _Inconsistency_.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this ~~Interim~~**Final** Order, the provisions of this ~~Interim~~**Final** Order shall govern and control.

(h)     _Enforceability_.  This ~~Interim~~**Final** Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable _nunc pro tunc_ to the Closing Date (as defined in the DIP Credit Agreement) immediately upon execution hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this ~~Interim~~**Final** Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this ~~Interim~~**Final** Order as a result of the application of any of the foregoing Bankruptcy Rules or Federal Rules of Civil Procedure.

(i)     _Headings_.  Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this ~~Interim~~**Final** Order.

21.     **Reservation of Rights**.  Nothing in this ~~Interim~~**Final** Order or the DIP Loan Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).  The United States objects to any provision of this ~~Interim~~**Final** Order or the DIP Loan Documents providing for any Liens (including replacement liens) or superpriority claims with respect to actions, claims or settlements brought under or relying upon the Federal Debt Collection Procedures Act, or the

57

proceeds of such actions, claims or settlements, and this ~~Interim~~**Final** Order is without prejudice to all rights of the United States with respect to such objection, or the rights of the Debtors, any Committee, the DIP Agents, the other DIP Secured Parties, the Existing DIP Secured Parties, the Prepetition Secured Parties, or any other party-in-interest to challenge or otherwise contest such objection, and all rights of such parties are hereby fully preserved. As to the United States, its agencies, departments or agents, nothing in this ~~Interim~~**Final** Order or the DIP Loan Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

22. **Amendments to Cash Management Order**. The Final Order Authorizing The Debtors To: (A) Continue (I) Using Their Existing Cash Management System, Bank Accounts And Business Forms, And Paying Any Related Fees; (II) Transferring Funds Between The Debtors And Their Foreign Subsidiaries, (III) Use Of Electronic Debit, Wire Transfers And Automatic Clearing House Payments; (IV) Investing Excess Funds Pursuant To Section 345 Of The Bankruptcy Code; (B) Grant Postpetition Intercompany Claims Administrative Expense Priority Pursuant To Section 364, 503(B)(1) And 507(A)(2) Of The Bankruptcy Code; And (C) Continue Intercompany Arrangements In Accordance With Historical Practices entered by the Court on February 6, 2009 (the "**Cash Management Order**") is hereby amended as follows:

(a) All references therein to "DIP Facility" are hereby amended to mean the DIP Facility as defined in th~~is~~e Interim Order or th~~e~~is Final Order, whichever is then in effect, and all references therein to "DIP Lenders" shall mean the DIP Lenders as defined in th~~is~~e Interim Order or th~~e~~is Final Order, whichever is then in effect.

58

(b)     Paragraph 6 of the Cash Management Order is hereby amended to delete the phrase "or the requirements of any order governing the use of the Prepetition Lenders' cash collateral."

(c)     Paragraph 7 of the Cash Management Order is hereby amended to delete the phrase "the Prepetition Lenders, the holders of Rolled Prepetition Obligations, as defined in the DIP Facility, and . . . ."

(d)     To the extent there is any inconsistency or conflict between the Cash Management Order, on the one hand, and any or all of the Replacement DIP Orders and the DIP Loan Documents, the terms of the Replacement DIP Orders and the DIP Loan Documents shall control, and the Cash Management Order is hereby so amended.

~~**Final Hearing and Certain Reservation of Rights**.~~

~~(r)     The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for January 14, 2010, at 11:00 (prevailing Eastern time) at the United States Bankruptcy Court for the Southern District of New York.  The proposed Final Order shall be substantially the same as the Interim Order except that those provisions in the Interim Order that are subject to the entry of the Final Order shall be included in the Final Order without such qualification.~~

~~(s)     Final Hearing Notice.  On or before December 28, 2009, the Debtors shall serve, by United States mail, first-class postage prepaid, (such service constituting adequate notice of the Final Hearing) (i) notice of the entry of this Interim Order and of the Final Hearing (the **"Final Hearing Notice"**) and (ii) a copy of this Interim Order, on the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with this Court and to any Committee.  The Final Hearing Notice shall state that any party in interest~~

59

objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than January 7, 2010, which objections shall be served so that the same are received on or before such date by: (a) counsel for the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, Attention: Jonathan S. Henes and Leonard Klingbaum and Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attention: Patrick Nash; (b) counsel for the DIP Agents, Latham & Watkins LLP, 233 S. Wacker Drive, Suite 5800, Chicago, IL 60606; Attn: Richard A. Levy; (c) counsel to any Committee; (d) United States Attorney's Office for the Southern District of New York, 86 Chambers Street, 3rd Floor, New York, New York 10007; Attn: Matthew L. Schwartz & Tomoko Onozawa, AUSAs; and (e) the Office of the United States Trustee for the Southern District of New York, and shall be filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York, in each case to allow actual receipt of the foregoing no later than January 7, 2010, at 12:00 p.m. (prevailing Eastern time).

(t)     Nothing in this Interim Order, the DIP Credit Agreement or any other agreement entered into in connection therewith shall prejudice the rights of (i) any party in interest (other than the signatories to *the Plan Support Agreement*) to object to or challenge the findings herein at the Final Hearing, except those findings relating to the DIP Protections, or (ii) the State of Nevada Department of Conservation and Natural Resources, Division of Environmental Protection, the Southern Nevada Water Authority, the Metropolitan Water District of Southern California, and the Central Arizona Project/Central Arizona Water Conservation District to object to or seek to modify any proposed disclosure statement or plan of reorganization.

60

**23.** (u) **Retention of Jurisdiction**.   The Bankruptcy Court has and will retain jurisdiction to enforce this ~~Interim~~**Final** Order according to its terms.

Dated: ~~December~~**January** __, ~~2009~~**2010**
        New York, New York

_____

UNITED STATES BANKRUPTCY JUDGE

~~CH\1141897.3~~ CH\1143300.2  Tronox Final Order

**Exhibit A**