# **<u>EXHIBIT 1</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE:

       TRONOX INCORPORATED, *et al.*,

                             Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 09-10156 (ALG)

(Jointly Administered)

## <u>CONSENT DECREE AND ENVIRONMENTAL SETTLEMENT AGREEMENT</u>

# TABLE OF CONTENTS

I.      RECITALS ................................................................................................................... 1

II.     DEFINITIONS ........................................................................................................... 9

III.    JURISDICTION ....................................................................................................... 22

IV.     PARTIES BOUND; SUCCESSION AND ASSIGNMENT .......................................... 22

V.      THE MULTISTATE ENVIRONMENTAL RESPONSE TRUST ................................. 22
        Multistate Trust Accounts ................................................................................. 28
        Lead Agencies ..................................................................................................... 39
        Transfers of Funds From the Multistate Trust Accounts ................................... 43
        Multistate Trust Miscellaneous Provisions ....................................................... 46

VI.     THE SAVANNAH ENVIRONMENTAL RESPONSE TRUST ................................... 53
        Multistate Trust Accounts ................................................................................. 67
        Lead Agencies ..................................................................................................... 70
        Transfers of Funds From the Multistate Trust Accounts ................................... 72
        Multistate Trust Miscellaneous Provisions ....................................................... 73

VII.    THE CIMARRON ENVIRONMENTAL RESPONSE TRUST ................................... 79
        The Cimarron Trust Accounts ........................................................................... 85
        Cimarron Lead Agencies ................................................................................... 88
        Transfers of Funds From the Cimarron Trust Accounts .................................... 91
        Cimarron Trust Miscellaneous Provisions ........................................................ 93

VIII.   THE HENDERSON ENVIRONMENTAL RESPONSE TRUST .............................. 100
        Henderson Lease Agreement ........................................................................... 109
        Henderson Trust Accounts .............................................................................. 116
        Lead Agency for the Henderson Site ............................................................... 118
        Transfers of Funds From the Henderson Trust Accounts ................................ 120
        Henderson Trust Miscellaneous Provisions .................................................... 122

IX.     THE WEST CHICAGO ENVIRONMENTAL RESPONSE TRUST ...................... 129
        The West Chicago Trust Accounts ................................................................... 137
        West Chicago Lead Agencies ........................................................................... 141
        Transfers of Funds From the West Chicago Trust Accounts............................ 145
        West Chicago Trust Miscellaneous Provisions ................................................ 151

X.      CASH FUNDING OF ENVIRONMENTAL ACTIONS WITH
        RESPECT TO CERTAIN NON-OWNED SITES ..................................................... 157

XI.     ADDITIONAL CONSIDERATION ........................................................................ 163

**XII.**  **ANADARKO LITIGATION TRUST** ..................................................................**163**

Distributions of Anadarko Litigation Proceeds With Respect to Owned
  Funded Sites .................................................................................... 165

Distributions of Anadarko Litigation Proceeds With Respect to Certain
  Non-Owned Sites ............................................................................. 174

Distributions of Anadarko Litigation Proceeds With Respect to Other Sites ................. 178

**XIII.**  **SATISFACTION OF DOD CONTRIBUTION CLAIM** .................................. **180**

**XIV.**  **DISTRIBUTION INSTRUCTIONS** .......................................................... **180**

**XV.**  **OUTSTANDING OBLIGATIONS** ............................................................ **185**

**XVI.**  **COVENANTS NOT TO SUE OR RELEASES FROM LIABILITY** ..................... **187**

**XVII.**  **RESERVATION OF RIGHTS** ................................................................. **196**

**XVIII.** **CONTRIBUTION PROTECTION** ........................................................... **201**

**XIX.**  **TRANSFERS OF REAL PROPERTY INFORMATION AND
ENVIRONMENTAL INFORMATION** ..................................................... **203**

**XX.**  **TAX COOPERATION** .......................................................................... **210**

**XXI.**  **PUBLIC COMMENT** ........................................................................... **210**

**XXII.**  **JUDICIAL APPROVAL** ....................................................................... **211**

**XXIII.** **RETENTION OF JURISDICTION** .......................................................... **211**

**XXIV.** **EFFECTIVE DATE** .............................................................................. **212**

**XXV.**  **PLAN OF REORGANIZATION** .............................................................. **213**

**XXVI.** **AMENDMENTS/INTEGRATION AND COUNTERPARTS** ............................ **213**

## I.  <u>RECITALS</u>

**WHEREAS,** on January 12, 2009, Tronox Incorporated and 14 of its affiliates (collectively, "Debtors")[1] filed petitions with the Court under chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases");

**WHEREAS,** the Sites set forth and defined in Attachments A-1 and A-2 hereto which are owned by Debtors, and for which funding has been specifically allocated as set forth herein, are referred to herein as the Owned Funded Sites;

**WHEREAS,** the Sites set forth and defined in Attachment A-3 hereto which are owned by Debtors, and for which funding has not been specifically allocated herein, other than as set forth in Paragraph 126, are referred to herein as the Owned Non-Funded Sites;

**WHEREAS**, the Sites set forth and defined in Attachment B hereto are not owned by Debtors, but includes Sites that (i) have known or potential environmental contamination, or (ii) are the subject of current and ongoing clean-up obligations under federal, tribal, or state Environmental Laws, and are referred to herein as the Non-Owned Sites;

**WHEREAS,** the United States, on behalf of the United States Environmental Protection Agency ("US EPA"), the United States Department of Agriculture, acting through the United States Forest Service (the "Forest Service"), the United States Department of the Interior ("DOI"), acting through the Fish and Wildlife Service and the

---

[1] The debtors in these chapter 11 cases include: Tronox Luxembourg S.ar.L; Tronox Incorporated; Cimarron Corporation; Southwestern Refining Company, Inc.; Transworld Drilling Company; Triangle Refineries, Inc.; Triple S, Inc.; Triple S Environmental Management Corporation; Triple S Minerals Resources Corporation; Triple S Refining Corporation; Tronox LLC; Tronox Finance Corp.; Tronox Holdings, Inc.; Tronox Pigments (Savannah) Inc.; and Tronox Worldwide LLC.

Bureau of Land Management ("BLM"), the United States Department of Commerce,

acting through the National Oceanic and Atmospheric Administration ("NOAA"), the

United States Department of Defense, including the United States Department of the

Army, United States Army Corps of Engineers, United States Department of the Navy,

and United States Department of the Air Force ("DoD"), and the Nuclear Regulatory

Commission ("NRC"); the Navajo Nation; the States of Alabama, Florida, Georgia,[2]

Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana,[3] Massachusetts,[4] Mississippi,[5]

Missouri, Nevada,[6] New Jersey, New York, North Carolina,[7] Ohio, Oklahoma,

Pennsylvania, Tennessee, Texas, and Wisconsin (collectively, the "States"); the City of

Warrenville, Illinois, the City of West Chicago, Illinois, the Forest Preserve District of

DuPage County, Illinois, the West Chicago Park District, DuPage County, Illinois, the

City of Chicago, and the Chicago Park District (collectively, the "Local Governments");

---

[2] All references to "Georgia" or the "State of Georgia" are limited to the Georgia Department of Natural Resources, Environmental Protection Division.

[3] All references to "Louisiana" or the "State of Louisiana" are limited to the Louisiana Department of Environmental Quality.

[4] All references to "Massachusetts" or the "Commonwealth of Massachusetts" are limited to the Massachusetts Department of Environmental Protection and, as to claims for natural resource damages only, the Executive Office of Energy and Environmental Affairs.

[5] All references to "Mississippi" or the "State of Mississippi" are limited to the Mississippi Commission on Environmental Quality.

[6] All references to "Nevada" or the "State of Nevada" are limited to the Nevada Department of Conservation and Natural Resources, Division of Environmental Protection.

[7] All references to "North Carolina" or the "State of North Carolina" are limited to the North Carolina Division of Waste Management and, as to claims for natural resources only, the Trustee for Natural Resources for North Carolina, along with any successors thereto.

the Local Governments and the United States, the States, and the Navajo Nation,
collectively, the "Governments"), assert that Debtors are potentially responsible parties or
may otherwise be responsible for known or potential environmental contamination with
respect to certain Owned and Non-Owned Sites;

**WHEREAS,** the United States on behalf of the US EPA, Forest Service, DOI,
NOAA, and NRC asserts: (i) that with respect to certain Owned and Non-Owned Sites,
Debtors are liable to it for past response costs and potential future response costs that the
United States has incurred or may incur under the Comprehensive Environmental
Response, Compensation, and Liability Act ("CERCLA") 42 U.S.C. §§ 9601-9675, for
civil penalties pursuant to the Resource Conservation and Recovery Act ("RCRA") 42
U.S.C. §§ 6901-6992k, for civil penalties pursuant to the Clean Air Act ("CAA") 42
U.S.C. §§ 7401-7671(q), and the Clean Water Act ("CWA") 33 U.S.C. §§ 1251-1387, for
obligations under Sections 62, 63, and 161 of the Atomic Energy Act of 1954 ("Atomic
Energy Act"), 42 U.S.C. §§ 2092, 2093, 2201, and for damages for injury to, destruction
of, or loss of natural resources as defined in 42 U.S.C. § 101(16) ("NRD") and natural
resource damages assessment costs and restoration actions; (ii) that Debtors are liable for
all post-petition environmental response costs, NRD and related assessment costs and
restoration actions, and the performance of work and/or decommissioning activities under
CERCLA, RCRA and the Atomic Energy Act with respect to certain Owned Sites as
present owner thereof; and (iii) that Debtors are liable for certain protective and/or
contingent claims and causes of action with respect to certain Non-Owned Sites;

**WHEREAS,** the United States on behalf of DoD asserts a contribution claim
against Debtors, to the extent that DoD is determined to be liable pursuant to CERCLA

and/or analogous state law in connection with the Fireworks Site in Hanover,

Massachusetts;

**WHEREAS,** the Navajo Nation asserts that Debtors are liable for past response

costs and future response costs under CERCLA, the Navajo Nation Comprehensive

Environmental Response Compensation and Liability Act, 4 Navajo Nation Code § 2101

*et seq.*, and other federal and Navajo Nation Environmental Laws relating to the former

Shiprock, New Mexico Uranium Mill Site ("Shiprock Mill Site"), and the former Kerr-

McGee Quivira Church Rock Mine Site, including Quivira NE Church Rock Mines I, IE

and II, and all areas where contaminants associated with those mines have been

deposited, stored, disposed of, placed, or otherwise come to be located ("Quivira Mine

Site");

**WHEREAS**, the States assert: (i) that Debtors are liable for past response costs

and future response costs under CERCLA or state Environmental Laws with respect to

certain Owned and Non-Owned Sites; (ii) for certain States only, Debtors are liable for

certain NRD and related costs (including assessment costs) in connection with certain

Owned and Non-Owned Sites; (iii) that Debtors are liable for all post-petition

environmental response costs, NRD and related costs (including assessment costs), and

the performance of work under CERCLA or state law relating to certain Owned Sites as a

present owner thereof; and (iv) Debtors are liable for certain protective and/or contingent

claims and causes of action with respect to certain Non-Owned Sites;

**WHEREAS**, the Local Governments assert: (i) that Debtors are liable for the

performance of work under CERCLA or state law relating to certain Owned Sites as a

present owner thereof; and (ii) that Debtors are liable for certain protective and/or contingent claims and causes of action with respect to certain Non-Owned Sites;

**WHEREAS**, the United States filed Proofs of Claim Nos. 2384, 2385, 2386, 2387, 2388, 2389, 2390, 3528, 3529, 3530, 3532, 3533, 3534, 3535, and 3626, setting forth claims or causes of action against Debtors, and in some instances, protectively, for past and future response costs, assessment costs, and work with respect to certain Owned and Non-Owned Sites, pursuant to Debtors' status as present owner of the Owned Funded Sites, and contribution claims with respect to the Fireworks Site;

**WHEREAS**, the Navajo Nation filed Proofs of Claim Nos. 2157, 2159, 2343, 2346, and 2347, setting forth claims and causes of action under federal and Navajo Nation Environmental Laws with respect to the Shiprock Mill and Quivira Mine Sites;

**WHEREAS**, certain of the States filed Proofs of Claim setting forth claims and causes of action under Environmental Laws with respect to certain Owned and Non-Owned Sites and pursuant to Debtors' status as present owner of certain Owned Funded Sites, which are numbered as follows: Nos. 2035, 2180, 2191, 2193 (Florida); Nos. 2042, 2049, 2052, 2056, 2057, 2059, 2061[8] (Georgia); Nos. 1674, 2593, 2598, 2611, 2614, 2616, and 3210 (Illinois); Nos. 1458, 1459, 1485 (Indiana); No. 3060 (Louisiana); Nos. 3200, 3422, 3468 (Massachusetts); No. 1959 (Mississippi); Nos. 2499, 2572, 2660, 3099 (Missouri); No. 2422 (Nevada); No. 1869 (New Jersey); Nos. 3112, 3113, 3114, and 3514 (New York); Nos. 2575, 2576, 3713, and 3714 (North Carolina); No. 3249 (Ohio); Nos. 2382, 2383, 2625, 2634, 2638, 2642, 2648, 2650, 2651, 2653, 2654, 2927, 14199,

---

[8] Claim No. 2061 was expunged by Stipulation and Agreed Order dated March 17, 2010 between Debtors and the Attorney General of Georgia, acting on behalf of the Georgia Department of Natural Resources, and approved by the Court on March 31, 2010.

14198,14200, 14201, 14202, 14203, and 14204[9] (Oklahoma); No. 1499 (Tennessee);

Nos. 1517, 2156, 2164, 2171, and 2175 (Texas); and No. 2190 (Wisconsin);

**WHEREAS**, the Local Governments filed Proofs of Claim setting forth claims

and causes of action under Environmental Laws with respect to certain Owned and Non-

Owned Sites and pursuant to Debtors' status as present owner of certain Owned Funded

Sites, which are numbered as follows: Nos. 1705, 2381 (City of Warrenville, Illinois);

Nos. 919, 3536 (City of West Chicago, Illinois); No. 2814, 2820, 2929 (Forest Preserve

District of DuPage County, Illinois); No. 1799 (DuPage County, Illinois);  Nos. 2110,

2126, 2138 (City of Chicago, Illinois); and No. 288 (Chicago Park District);

**WHEREAS**, subject to the covenants not to sue and releases and reservations of

rights set forth in Sections XVI and XVII herein, Debtors and the Governments agree to

enter into this Settlement Agreement ("Settlement Agreement") for the Owned Sites and

the Non-Owned Sites in full satisfaction of all claims and causes of action, as applicable,

asserted by the Governments against Debtors in connection with the Owned Sites and the

Non-Owned Sites, which will: (i) transfer all of Debtors' right, title, and interest in all of

the Owned Sites into Environmental Response Trusts; (ii) provide for the cash funding of

Administrative Costs and Environmental Actions at certain Owned Sites and Non-Owned

Sites; and (iii) establish a Litigation Trust (the "Anadarko Litigation Trust") to which

Debtors' interests in the adversary proceeding *Tronox Worldwide LLC v. Anadarko*

*Petroleum Corporation, et al.*, Case No. 09-01198 (S.D.N.Y. Bankr. filed May 12, 2009)

("Anadarko Litigation") will be transferred for the benefit of the Governments and

---

[9] Of these claims, the following were amendments to earlier claims: Claim
numbers 14199 (amending 2591), 14198 (amending 2596), 14200 (amending 2600),
14201 (amending 2602), 14202 (amending 2607), 14203 (amending 2612), and 14204
(amending 2655).

certain holders of tort claims, and from which the Anadarko Litigation Proceeds (as

defined below), shall be allocated among the Governments and the Environmental

Response Trusts, as partial consideration for the full satisfaction of all claims and causes

of action by the Governments against Debtors in connection with the Owned Sites and

Non-Owned Sites;

**WHEREAS**, the parties hereto agree to settle, compromise and resolve their

disputes relating to the Owned Sites and Non-Owned Sites as provided herein;

**WHEREAS**, the effectiveness of this Settlement Agreement is conditioned upon

the occurrence of the consummation of a Plan of Reorganization;

**WHEREAS**, this Settlement Agreement and other environmental settlement

agreements[10] are intended to serve as a comprehensive settlement of all claims and causes

of action asserted by the Governments against Debtors with respect to potential future

costs incurred, past cost claims (where applicable), NRD and related assessment costs

(where applicable), civil penalties (where applicable), injunctive obligations (where

applicable), and work performed by the Governments relating to or in connection with

the Owned Sites and the Non-Owned Sites as described below;

**WHEREAS**, in consideration of, and in exchange for, the promises and

covenants herein, the parties hereby agree to the terms and provisions of this Settlement

Agreement;

**WHEREAS**, the settlement terms herein are in the nature of compromises, and

these terms are less favorable than the Governments would seek in the absence of this

---

10 The other environmental settlement agreements consist solely of the Kress
Creek Settlement Agreement, dated May 1, 2010, and the Consent Decree to be filed in
*United States v. Tronox Pigments (Savannah) Inc.*, No. CV 408-259 (S.D. Ga.).

Settlement Agreement;

**WHEREAS**, the treatments provided in this Settlement Agreement are compromises of the contested positions of the parties, these compromises are entered into solely for purposes of this Settlement Agreement, and all parties reserve their legal arguments on any issues involved in all other matters;

**WHEREAS**, with respect to the Owned Sites, the Settlement Agreement is based on the funding of future Environmental Actions, decommissioning costs, certain future oversight costs of the Governments through the funding of Environmental Response Trusts, past cost claims (where applicable), NRD and related assessment costs (where applicable), and penalty claims (where applicable), and on allocations to or for the benefit of the Owned Sites or the Environmental Response Trusts of specified percentages of the Anadarko Litigation Proceeds, as described more fully herein;

**WHEREAS**, with respect to the Non-Owned Sites, the Settlement Agreement is based on the funding of future Environmental Actions, decommissioning costs, certain future oversight costs of the Governments for the Non-Owned Sites, past cost claims (where applicable), NRD and related assessment costs (where applicable), and on allocations to or for the benefit of the Non-Owned Sites of specified percentages of the Anadarko Litigation Proceeds, as described more fully herein; and

**WHEREAS**, this Settlement Agreement is fair and reasonable and in the public interest, and is an appropriate means of resolving these matters.

**NOW, THEREFORE**, without any adjudication on any issue of fact or law, and upon the consent and agreement of the parties by their attorneys and authorized officials, it is hereby agreed as follows:

## II.    **DEFINITIONS**

"2006 Henderson Consent Decree" shall have the meaning provided in Paragraph 73.

"2006 Henderson Consent Decree Substitution and Clarification Agreement" shall have the meaning provided in Paragraph 73.

"Administrative Costs" shall mean the fees, costs, and expenses incurred in connection with the administration of the Multistate Trust, Savannah Trust, Henderson Trust, Cimarron Trust, and West Chicago Trust, including but not limited to real estate management, taxes, insurance, and maintenance costs, but excluding any expenses (including, without limitation, expenses of the trustees and its third-party professionals) incurred in overseeing, managing, and performing Environmental Actions.

"Anadarko Litigation" shall have the meaning provided in the Recitals.

"Anadarko Litigation Proceeds" shall mean eighty-eight percent (88%) of any and all amounts recovered in or resulting from the Anadarko Litigation, net of any payments to lead counsel for the Anadarko Litigation Trust pursuant to a separate Special Fee Arrangement, which shall be allocated to the Governments and the Environmental Response Trusts pursuant to the Plan of Reorganization and this Settlement Agreement.

"Anadarko Litigation Trust" shall have the meaning provided in the Recitals.

"Anadarko Litigation Trust Agreement" shall have the meaning provided in Paragraph 119.

"Anadarko Litigation Trustee" shall have the meaning provided in Paragraph 121.

"Anniston Terminal" shall have the meaning provided in Subparagraph 117(a).

"Atomic Energy Act" shall have the meaning provided in the Recitals.

"Avoca Site" shall have the meaning provided in Subparagraph 10(f)(xxiii).

"Bankruptcy Cases" shall have the meaning provided in the Recitals.

"Beaumont Site" shall have the meaning provided in Subparagraph 10(f)(xxiv).

"Birmingham Terminal" shall have the meaning provided in Subparagraph 117(b).

"Birmingport Site" shall have the meaning provided in Subparagraph 10(f)(ii).

"BLM" shall have the meaning provided in the Recitals.

"BMI/Landwell Assets" shall have the meaning provided in Subparagraph 70(a).

"BMI/Landwell Offset" shall have the meaning provided in Subparagraph 124(p)(i).

"BMI/Landwell Optional Transfer" shall have the meaning provided in Paragraph 70.

"Bossier City Site" shall have the meaning provided in Subparagraph 10(f)(xi).

"Bristol Mine Site" shall have the meaning provided in Subparagraph 10(f)(xvii).

"Brunswick Site" shall have the meaning provided in Subparagraph 117(e).

"CAA" shall have the meaning provided in the Recitals.

"Calhoun Gas Plant" shall have the meaning provided in Subparagraph 10(f)(xii).

"Carrying Costs" shall have the meaning provided in Subparagraph 70(d).

"Caselton Mine Site" shall have the meaning provided in Subparagraph 10(f)(xviii).

"CERCLA" shall have the meaning provided in the Recitals.

"Cimarron License" shall have the meaning provided in Subparagraph 51(a).

"Cimarron Licensee" shall have the meaning provided in Subparagraph 51(a).

"Cimarron LOC" shall have the meaning provided in Paragraph 50.

"Cimarron Site" shall have the meaning provided in Paragraph 50.

"Cimarron Standby Trust Fund" shall have the meaning provided in Paragraph 50.

"Cimarron Trust" shall have the meaning provided in Paragraph 50.

"Cimarron Trust Accounts" shall have the meaning provided in Subparagraph 55(c).

"Cimarron Trust Administrative Account" shall have the meaning provided in Subparagraph 55(b).

"Cimarron Trust Agreement" shall have the meaning provided in paragraph 53.

"Cimarron Trust Assets" shall mean (a) those assets and properties, including the Cimarron Site and sources of funding to be transferred to the Cimarron Trust pursuant to this Settlement Agreement and (b) such other assets acquired or held by the Cimarron Trust from time to time pursuant to the Cimarron Trust Agreement.

"Cimarron Trust Environmental Cost Accounts" shall have the meaning provided in Subparagraph 55(a).

"Cimarron Trust Parties" shall mean, collectively, the Cimarron Trust, the Cimarron Trustee, and the Cimarron Trustee's shareholders, officers, directors, employees, members, managers, partners, affiliated entities, consultants, agents, accountants, attorneys or other professionals or representatives engaged or employed by the Cimarron Trust or Cimarron Trustee; provided however, that any contractors or consultants retained to perform or oversee Environmental Actions of the Cimarron Trust (for the avoidance of doubt, other than the Cimarron Trustee and its officers, directors, and employees) shall not be Cimarron Trust Parties.

"Cimarron Trustee" shall have the meaning provided in Paragraph 50.

"Cleveland Site" shall have the meaning provided in Subparagraph 10(f)(xxi).

"Columbus Anadarko Amount" shall have the meaning provided in Subparagraph 124(l)(ii).

"Columbus Segregated Amount" shall have the meaning provided in Subparagraph 10(f)(xiii).

"Columbus Site" shall have the meaning provided in Subparagraph 10(f)(xiii).

"Corpus Christi No. 1 Terminal" shall have the meaning provided in Subparagraph 10(f)(xxv).

"CRC" shall have the meaning provided in Paragraph 79.

"CRC Requirements" shall have the meaning provided in Paragraph 79.

"Cushing Site" shall have the meaning provided in Subparagraph 10(f)(xxii).

"CWA" shall have the meaning provided in the Recitals.

"Debtors" shall have the meaning provided in the Recitals.

"Decatur Site" shall have the meaning provided in Subparagraph 117(i).

"DoD" shall have the meaning provided in the Recitals.

"DOI" shall have the meaning provided in the Recitals.

"DOI NRDAR Fund" shall have the meaning provided in Subparagraph 10(f)(xx).

"Dubach Gas Site" shall have the meaning provided in Subparagraph 117(j).

"Due Care Obligations" shall have the meaning provided in Subparagraph 75(a).

"DuSable Park" shall have the meaning provided in Subparagraph 117(h).

"Effective Date" shall mean the effective date of this Settlement Agreement, as provided in Paragraph 169 hereof.

"EFT" shall have the meaning provided in Paragraph 129.

"Environmental Actions" shall mean any and all environmental activities authorized or required under Environmental Laws that occur after the Effective Date and that are related to any of the Owned Sites and certain Non-Owned Sites (for which the Multistate Trust and West Chicago Trust will be performing environmental activities as provided herein), including but not limited to response or remedial actions, removal actions, corrective action, closure, or post-closure care, reclamation, investigations, studies, remediation, interim actions, final actions, emergency actions, water treatment, implementation of engineered structures and controls, monitoring, repair and replacement of engineered structures, monitoring equipment and controls, operation and maintenance, implementation, operation and maintenance of institutional controls, coordination and integration of reuse and remedial efforts and initiatives (including, without limitation, multi-stakeholder communications), and, if required, long-term stewardship and perpetual custodial care activities. "Environmental Actions" also include the above environmental activities relating to the migration of hazardous substances emanating from the Owned Sites. For the avoidance of doubt, "Environmental Actions" shall not include natural resource assessment or restoration.

"Environmental Information" shall mean all environmental reports, audits, analyses, records, studies and other documents containing information prepared by or otherwise in the possession, custody or control of Debtors or its technical consultants that are based on or otherwise reflect information related to environmental activities.

"Environmental Laws" means, whenever in effect, all federal, tribal, state and local statutes, regulations, ordinances and similar provisions having the force or effect of law; all judicial and administrative orders and determinations and all common law concerning public health and safety, worker health and safety, pollution or protection of the environment, including, without limitation, the Atomic Energy Act ("AEA"), CERCLA, CWA, CAA,  Emergency Planning and Community Right-to-Know Act ("EPCRA"), Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), RCRA, Safe Drinking Water Act ("SDWA"), Toxic Substances Control Act ("TSCA"), and any tribal, state or local equivalents.

"Environmental Response Trustees" shall mean the Cimarron Trustee, the Henderson Trustee, the Multistate Trustee, the Savannah Trustee, and the West Chicago Trustee/Licensee.

"Environmental Response Trusts" shall mean the Cimarron Trust, the Henderson Trust, the Multistate Trust, the Savannah Trust, and the West Chicago Trust.

"Environmental Trust Agreements" shall mean the Multistate Trust Agreement, the Savannah Trust Agreement, the Henderson Trust Agreement, the Cimarron Trust Agreement, and the West Chicago Trust Agreement.

"Exacerbation Obligations" shall have the meaning provided in Subparagraph 75(a).

"Excess Anadarko Proceeds" shall have the meaning provided in Subparagraph 124(p)(i).

"Existing Leases" shall have the meaning provided in Subparagraph 67(c).

"Federal West Chicago Consent Decree" shall have the meaning provided in Paragraph 93.

"Fireworks Site" shall have the meaning provided in Subparagraph 117(m).

"Flat Top Mine" shall have the meaning provided in Subparagraph 117(w).

"Forest Service" shall have the meaning provided in the Recitals.

"GA EPD" shall have the meaning provided in Subparagraph 39(a).

"Georgia Federal Court" shall have the meaning provided in Paragraph 32.

"Gore Site" shall have the meaning provided in Subparagraph 117(u).

"Governments" shall have the meaning provided in the Recitals.

"Grantor Trust Election" shall mean an election to treat a trust as a grantor trust pursuant to Treasury Regulation section 1.468B-1(k)(1).

"Guarantor" shall have the meaning provided in Paragraph 71.

"Guaranty" shall have the meaning provided in Paragraph 71.

"Gypsum Operations" shall have the meaning provided in Paragraph 27.

"Hattiesburg Site" shall have the meaning provided in Subparagraph 117(n).

"Henderson Administrative Costs" shall have the meaning provided in Subparagraph 80(b).

"Henderson Chartis Policy" shall have the meaning provided in Paragraph 72.

"Henderson Covered Person" shall have the meaning provided in Paragraph 75.

"Henderson Deed" shall have the meaning provided in Subparagraph 67(a).

"Henderson Facility Lease" shall have the meaning provided in Paragraph 71.

"Henderson Leased Facility" shall have the meaning provided in Paragraph 71.

"Henderson Legacy Conditions" shall have the meaning provided in Subparagraph 75(b).

"Henderson Property" shall have the meaning provided in Subparagraph 67(a).

"Henderson Remediation Power Agreement" shall have the meaning provided in Paragraph 79.

"Henderson Trust" shall have the meaning provided in Paragraph 67.

"Henderson Trust Accounts" shall have the meaning provided in Subparagraph 80(c).

"Henderson Trust Administrative Account" shall have the meaning provided in Subparagraph 80(b).

"Henderson Trust Agreement" shall have the meaning provided in Paragraph 77.

"Henderson Trust Assets" shall mean (a) those assets and properties, including the Henderson Property and sources of funding to be transferred to the Henderson Trust pursuant to this Settlement Agreement and (b) such other assets acquired or held by the Henderson Trust from time to time pursuant to the Henderson Trust Agreement.

"Henderson Trust Environmental Cost Account" shall have the meaning provided in Subparagraph 80(a).

"Henderson Trustee" shall have the meaning provided in Subparagraph 67(c).

"Henderson Trust Parties" shall mean, collectively, the Henderson Trust, the Henderson Trustee, and the Henderson Trustee's shareholders, officers, directors, employees, members, managers, partners, affiliated entities, consultants, agents, accountants, attorneys or other professionals or representatives engaged or employed by the Henderson Trust or Henderson Trustee; provided however, that any contractors or consultants retained to perform or oversee Environmental Actions of the Henderson Trust (for the avoidance of doubt, other than the Henderson Trustee and its shareholders, officers, directors, and employees) shall not be Henderson Trust Parties.

"IEMA" shall have the meaning provided in Paragraph 98.

"Indiana Wood Treating Site" shall have the meaning provided in Subparagraph 10(f)(ix).

"Jacksonville Terminal Site" shall have the meaning provided in Subparagraph 10(f)(v).

"Joint Navassa NRD Claimants" shall have the meaning provided in Subparagraph 10(f)(xx).

"Joint Texarkana NRD Claimants" shall have the meaning provided in Subparagraph 10(f)(xxvi).

"Juniper Mine Site" shall have the meaning provided in Subparagraph 117(d).

"Kansas City Site" shall have the meaning provided in Subparagraph 10(f)(xv).

"Kerr-McGee Jacksonville Site" shall have the meaning provided in Subparagraph 10(f)(iv).

"Kerr-McGee Jacksonville Segregated Amount" shall have the meaning provided in Subparagraph 10(f)(iv).

"Kerr-McGee West Chicago NPL Sites" shall have the meaning provided in Subparagraph 117(k).

"Kress Creek" shall have the meaning provided in Paragraph 96.

"Kress Creek Settlement Agreement" shall have the meaning provided in Paragraph 96.

"Kriner/Stigler Site" shall have the meaning provided in Subparagraph 117(u).

"Lead Agencies" shall mean the designated Government agencies identified in Paragraphs 12, 39, 56, 81 and 105.

"License Order" shall have the meaning provided in Subparagraph 51(a).

"Lindsay Light Removal Sites" shall have the meaning provided in Subparagraph 117(f).

"Line of Credit Agreement" shall have the meaning provided in Subparagraph 28(c).

"Local Communities" shall have the meaning provided in Paragraph 95.

"Local Communities Consent Decree" shall have the meaning provided in Paragraph 93.

"Local Governments" shall have the meaning provided in the Recitals.

"Madison Site" shall have the meaning provided in Subparagraph 10(f)(vii).

"Mansfield Canyon Site" shall have the meaning provided in Subparagraph 117(c).

"Manville Site" shall have the meaning provided in Subparagraph 117(o).

"Maximum Draw" shall have the meaning provided in Subparagraph 28(c).

"Meridian Anadarko Amount" shall have the meaning provided in Subparagraph 124(m)(ii).

"Meridian Segregated Amount" shall have the meaning provided in Subparagraph 10(f)(xiv).

"Meridian Site" shall have the meaning provided in Subparagraph 10(f)(xiv).

"Mobile Site" shall have the meaning provided in Subparagraph 10(f)(iii).

"Moss American NPL Site" shall have the meaning provided in Subparagraph 117(y).

"Mount Vernon Site" shall have the meaning provided in Subparagraph 117(j).

"Multistate Owned Funded Sites" shall have the meaning provided in Paragraph 4.

"Multistate Owned Sites" shall have the meaning provided in Paragraph 3.

"Multistate Trust" shall have the meaning provided in Paragraph 3.

"Multistate Trust Accounts" shall have the meaning provided in Subparagraph 10(d).

"Multistate Trust Administrative Account" shall have the meaning provided in Subparagraph 10(c).

"Multistate Trust Agreement" shall have the meaning provided in Paragraph 7.

"Multistate Trust Assets" shall mean (a) those assets and properties, including the Multistate Owned Sites and sources of funding to be transferred to the Multistate Trust pursuant to this Settlement Agreement and (b) such other assets acquired or held by the Multistate Trust from time to time pursuant to the Multistate Trust Agreement.

"Multistate Trust Environmental Cost Account" shall have the meaning provided in Subparagraph 10(a).

"Multistate Trust Parties" shall mean, collectively, the Multistate Trust, the Multistate Trustee, and the Multistate Trustee's shareholders, officers, directors, managers, members, employees, consultants, agents or other professionals or representatives employed by the Multistate Trust or Multistate Trustee; provided however, that any contractors or consultants retained to perform or oversee Environmental Actions of the Multistate Trust (for the avoidance of doubt, other than the

Multistate Trustee and its officers, directors, and employees) shall not be Multistate Trust Parties.

"Multistate Trust Work Account" shall have the meaning provided in Subparagraph 10(a).

"Multistate Trustee" shall have the meaning provided in Paragraph 3.

"Navajo Area Uranium Mines" shall have the meaning provided in Subparagraph 117(p).

"Navassa Site" shall have the meaning provided in Subparagraph 10(f)(xx).

"Navassa Trustee Council" shall have the meaning provided in Paragraph 18.

"Net Sale Proceeds" shall have the meaning provided in Subparagraph 69(d).

"New Substances Conditions" shall have the meaning provided in Subparagraph 75(b).

"NOAA" shall have the meaning provided in the Recitals.

"Non-Lead Agencies" shall mean the designated Government agencies identified in Paragraphs 12, 39, 56, 81 and 105.

"Non-Owned RAS Properties" shall have the meaning provided in Paragraph 96.

"Non-Owned Sites" shall mean those Sites set forth on Attachment B hereto, and any and all contiguous and non-contiguous areas onto which hazardous substances from such Site have migrated.

"Non-Owned Service Stations" shall have the meaning provided in Paragraph 10(f)(xxviii).

"NRC" shall have the meaning defined in the Recitals.

"NRD" shall have the meaning defined in the Recitals.

"Off-Site Facility" shall have the meaning provided in Subparagraph 161(b)(iii).

"Other Sites" shall have the meaning provided in Subparagraph 126(a).

"Other Sites Account" shall have the meaning provided in Subparagraph 126(a).

"Owned Service Stations" shall have the meaning provided in Paragraph 10(f)(xxvii).

"Owned Funded Sites" shall mean those Sites owned by the Debtors for which funding is specifically allocated herein and are as set forth on Attachments A-1 and A-2

hereto, together with all personal property, fixtures, buildings and attendant property rights (to the extent not otherwise provided herein), and any and all contiguous and non-contiguous areas onto which hazardous substances from such Site have migrated.

"Owned Non-Funded Sites" shall mean those Sites owned by the Debtors for which funding has not been specifically allocated herein, other than as set forth in Paragraph 126, and are as set forth on Attachment A-3 hereto, together with all personal property, fixtures, buildings and attendant property rights, and any and all contiguous and non-contiguous areas onto which hazardous substances from such Site have migrated.

"Owned RAS Properties" shall have the meaning provided in Paragraph 92.

"Owned Sites" shall mean, collectively, the "Owned Funded Sites" and the "Owned Non-Funded Sites," all of which are collectively set forth on Attachments A-1, A-2 and A-3 hereto.

"Phase 2 Final Agreement" shall have the meaning provided in Paragraph 96.

"Plan of Reorganization" is the Plan of Reorganization for the Debtors, which shall incorporate the terms of this Settlement Agreement.

"Preservation Date" shall have the meaning provided in Subparagraph 163(b).

"Proofs of Claim" shall mean the Proofs of Claim filed by the Governments as set forth in the Recitals.

"Quivira Mine Site" shall have the meaning provided in the Recitals.

"RAS" shall have the meaning provided in Paragraph 92.

"RAS Properties" shall have the meaning provided in Paragraph 96.

"RCRA" shall have the meaning provided in the Recitals.

"Real Property Information" shall mean all documents in Debtors' possession, custody, or control related to property taxes, leases, contracts, security, insurance, or administration or potential sales (but with respect to potential sales, only information reasonably locatable dated 2008 or later) of an Owned Site.

"REF" shall have the meaning provided in Paragraph 92.

"REF Letter of Credit" shall have the meaning provided in Subparagraph 104(f)(ii)(b).

"REF License" shall have the meaning provided in Paragraph 98.

"REF Surety Bond" shall have the meaning provided in Subparagraph 104(f)(ii)(a).

"Reorganized Tronox" shall mean, collectively, (i) Tronox Incorporated, (ii) Tronox Worldwide LLC, (iii) Tronox LLC, (iv) all other Debtors, and (v) all successors to the entities referenced in clauses (i), (ii), (iii) and (iv) above, whether by merger, consolidation, dissolution, restructuring, recapitalization, acquisition of assets or equity securities, or otherwise, on or after the Effective Date.

"Repayment Date" shall have the meaning provided in Subparagraph 28(d).

"Riley Pass Site" shall have the meaning provided in Subparagraph 117(w).

"Rome Site" shall have the meaning provided in Subparagraph 10(f)(xix).

"Rushville Site" shall have the meaning provided in Subparagraph 10(f)(x).

"Sale Costs" shall have the meaning provided in Subparagraph 70(d).

"Sale Event" shall have the meaning provided in Subparagraph 70(b).

"Sale Proceeds" shall have the meaning provided in Subparagraph 70(d).

"Sauget Site" shall have the meaning provided in Subparagraph 10(f)(viii).

"Savannah Acid Business" shall have the meaning provided in Paragraph 27.

"Savannah Consent Decree" shall have the meaning provided in Paragraph 31.

"Savannah Facility" shall have the meaning provided in Paragraph 27.

"Savannah Operating Agreement" shall have the meaning provided in Subparagraph 29(b).

"Savannah Sale" shall have the meaning provided in Paragraph 30.

"Savannah Trust" shall have the meaning provided in Paragraph 27.

"Savannah Trust Accounts" shall have the meaning provided in Subparagraph 38(c).

"Savannah Trust Administrative Account" shall have the meaning provided in Subparagraph 38(b).

"Savannah Trust Agreement" shall have the meaning provided in Paragraph 36.

"Savannah Trust Assets" shall mean (a) those assets and properties, including the Savannah Facility and sources of funding to be transferred to the Savannah Trust pursuant to this Settlement Agreement and (b) such other assets acquired or held by the Savannah Trust from time to time pursuant to the Savannah Trust Agreement.

"Savannah Trust Environmental Cost Account" shall have the meaning provided in Subparagraph 38(a).

"Savannah Trust-Owned Entity" shall have the meaning provided in Paragraph 29.

"Savannah Trust Parties" shall mean, collectively, any Savannah Trust-Owned Entity, the Savannah Trustee, and the shareholders, officers, directors, managers, members, employees, consultants, agents or other professionals or representatives employed by the Savannah Trust-Owned entity, the Savannah Trust, or the Savannah Trustee; provided however, that any contractors or consultants retained to perform or oversee Environmental Actions of the Savannah Trust (for the avoidance of doubt, other than the Savannah Trustee and its officers, directors, and employees) shall not be Savannah Trust Parties.

"Savannah Working Capital" shall have the meaning provided in Paragraph 28.

"Savannah Working Capital Statement" shall have the meaning provided in Subparagraph 28(b).

"Settlement Agreement" shall have the meaning provided in the Recitals.

"Shiprock Mill Site" shall have the meaning provided in the Recitals.

"Soda Springs Site" shall have the meaning provided in Subparagraph 10(f)(vi).

"Springfield Site" shall have the meaning provided in Subparagraph 10(f)(xvi).

"States" shall have the meaning provided in the Recitals.

"Streeterville Rights-of-Way" shall have the meaning provided in Subparagraph 117(g).

"Superfund" shall mean the "Hazardous Substance Superfund" established by 26 U.S.C. § 9507 or, in the event such Hazardous Substance Superfund no longer exists, any successor fund or comparable account of the Treasury of the United States to be used for removal or remedial actions to address releases or threats of releases of hazardous substances.

"TCEQ" shall mean the Texas Commission on Environmental Quality.

"Tenant" shall have the meaning provided in Subparagraph 67(b).

"Texarkana Facility" shall have the meaning provided in Subparagraph 10(f)(xxvi).

"Texarkana Trustee Council" shall have the meaning provided in Paragraph 18.

"Title Insurer" shall have the meaning provided in Subparagraph 67(a).

"Title X" shall have the meaning provided in Paragraph 93.

"Toledo Tie Site" shall have the meaning provided in Subparagraph 117(t)

"United States" shall mean the United States of America, including US EPA, NOAA, DOI, Department of Agriculture, acting through the Forest Service, DoD, and NRC, and all of its agencies, departments, and instrumentalities.

"US EPA" shall have the meaning provided in the Recitals.

"Welsbach Site" shall have the meaning provided in Subparagraph 117(q).

"West Chicago Owned Sites" shall have the meaning provided in Paragraph 92.

"West Chicago Special Account" shall have the meaning provided in Paragraph 100.

"West Chicago Trust" shall have the meaning provided in Paragraph 92.

"West Chicago Trust Accounts" shall have the meaning provided in Subparagraph 104(d).

"West Chicago Trust Administrative Account" shall have the meaning provided in Subparagraph 104(b).

"West Chicago Trust Agreement" shall have the meaning provided in Paragraph 96.

"West Chicago Trust Assets" shall mean (a) those assets and properties, including the West Chicago Trust Sites and sources of funding to be transferred to the West Chicago Trust pursuant to this Settlement Agreement and (b) such other assets acquired or held by the West Chicago Trust from time to time pursuant to the West Chicago Trust Agreement.

"West Chicago Trust Environmental Cost Accounts" shall have the meaning provided in Subparagraph 104(a).

"West Chicago Trust Parties" shall mean, collectively, the West Chicago Trust, the West Chicago Trustee/Licensee, and the West Chicago Environmental Response Trustee's shareholders, officers, directors, employees, consultants, agents or other professionals or representatives employed by the West Chicago Trust or West Chicago Trustee/Licensee; provided however, that any contractors or consultants retained to perform or oversee Environmental Actions of the West Chicago Trust (for the avoidance of doubt, other than the West Chicago Trustee and its officers, directors, and employees) shall not be West Chicago Trust Parties.

"West Chicago Trust Sites" shall have the meaning provided in Subparagraph 104(a).

"West Chicago Trust Title X Account" shall have the meaning provided in Subparagraph 104(c).

"West Chicago Trust Work Accounts" shall have the meaning provided in Subparagraph 104(a).

"West Chicago Trustee/Licensee" shall have the meaning provided in Paragraph 92.

"White King/Lucky Lass Site" shall have the meaning provided in Subparagraph 117(v).

"Withheld BMI/Landwell Amount" shall have the meaning provided in Subparagraph 124(p)(iv).

"Wynnewood Site" shall have the meaning provided in Subparagraph 117(u).

Capitalized terms not otherwise defined herein shall have the meanings provided for in CERCLA, or other applicable Environmental Laws.

## III.    <u>JURISDICTION</u>

1.    The Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§ 157, 1331, and 1334.

## IV.    <u>PARTIES BOUND; SUCCESSION AND ASSIGNMENT</u>

2.    This Settlement Agreement applies to, is binding upon, and shall inure to the benefit of the signatories hereto, their legal successors and assigns, and Reorganized Tronox, and any trustee, examiner or receiver appointed in the Bankruptcy Cases.  For purposes of this Settlement Agreement, any rights granted to Debtors that extend after the Effective Date shall also be deemed granted to Reorganized Tronox and its successors and assigns, subject to any reservations provided for herein.

## V.    <u>THE MULTISTATE ENVIRONMENTAL RESPONSE TRUST</u>

3.    On the Effective Date, and simultaneously with receipt of the payments to the Multistate Trust Environmental Cost Accounts under Paragraph 10, Debtors will transfer all of their right, title, and interest in and to the Multistate Owned

Sites (as defined below), including, without limitation, all of their fee ownership in, all appurtenances, rights, easements, rights-of-way, mining rights (including unpatented mining claims, mill site claims, and placer claims), mineral rights, mineral claims, appurtenant groundwater rights, associated surface water rights, claims, and filings, permits, licenses, third-party warranties and guaranties for equipment or services to the extent transferable under bankruptcy law, or other interests (including without limitation all fixtures, improvements, personal property (tangible and intangible) and equipment located thereon as of the Effective Date) related to all Owned Sites other than the Cimarron Site, the Henderson Property, the Savannah Facility, and the REF and the Owned RAS Properties in West Chicago, Illinois (collectively, the "Multistate Owned Sites"), to an environmental response trust ("Multistate Trust").  Prior to the Effective Date, but not thereafter, Debtors may remove from the Multistate Owned Sites the machinery, equipment, fixtures, furniture, computers, tools, parts, supplies, and other tangible personal property, used, or held for use, in connection with the operation of Debtors' operating assets.  On and after the Effective Date, Debtors and Reorganized Tronox shall have no ownership or other residual interest whatsoever with respect to the Multistate Trust or Multistate Owned Sites.  The transfer of ownership by the Debtors of any such assets or other property shall be a transfer of all of the Debtors' right, title and interests therein, and the transfer (i) shall be as is and where is, with no warranties of any nature; (ii) shall be free and clear of all claims, liens and interests against the Debtors (except for liens arising under Section 107 of CERCLA against the Sites in Jacksonville, Florida and Wilmington, North Carolina), including liens for the payments of monetary claims, such as property taxes, or other monetary claims asserted or that could have been

asserted in the bankruptcy proceeding, but shall remain subject to any existing in rem claims that do not secure payment of monetary claims (such as easements or deed restrictions); (iii) shall be subject to any rights of the Governments under this Settlement Agreement; and (iv) shall be accomplished by quitclaim deed, in a form substantially similar to the quitclaim deed attached as Attachment C to this Settlement Agreement, and/or personal property bill of sale without warranty, with all such conveyance documents to be agreed to in form by the Debtors and the trustee of the Multistate Trust ("Multistate Trustee"), provided that in no event shall the conveyance include any warranty by the grantor by virtue of the grant document or statutory or common law or otherwise.   Debtors and Reorganized Tronox hereby disclaim any and all express or implied representations or warranties, including any representations or warranties of any kind or nature, express or implied, as to the condition, value or quality of such assets or other property, and specifically disclaim any representation or warranty of merchantability, usage, suitability or fitness for any particular purpose with respect to such assets or other property, any part thereof, the workmanship thereof, and the absence of any defects therein, whether latent or patent, it being understood that such assets are being acquired "as is, where is," and in their condition as of the Effective Date.   Debtors and Reorganized Tronox, as applicable, will reasonably cooperate with the Governments and the Multistate Trustee to deliver to the title company (which will cause to be recorded in the appropriate real property records) the transfer documents as soon as reasonably practicable, but not to exceed 30 days after the Effective Date.   Debtors shall pay the recording costs and transfer fees to the title company relating to the title transfers. Debtors shall pay to the applicable tax authorities on or prior to the Effective Date all real

property taxes relating to the Multistate Owned Sites due on or before the Effective Date.

Debtors and the Multistate Trust shall prorate the real property taxes accruing to or

becoming a lien on the Multistate Owned Sites during the calendar year of the Effective

Date, and Debtors shall have paid to the Multistate Trust their pro-rata share of such real

property taxes as of the Effective Date.  If the actual bills for such real property taxes

have not been issued, then such proration shall be based on an amount equal to such real

property taxes for the prior year or tax period, which shall constitute a final proration and

not be subject to further adjustment.  As of the Effective Date, the Multistate Trust shall

be responsible for paying all real property taxes first coming due following the Effective

Date relating to the Multistate Owned Sites.  Debtors shall execute, or cause to be

executed, and record, if necessary, all necessary releases of any liens or security interests

held by any Debtor against any Multistate Owned Sites.  After Debtors execute this

Settlement Agreement, Debtors shall not further encumber the Multistate Owned Sites or

their other interests therein and shall maintain such properties in a commercially

reasonable manner in accordance with Debtors' current practices, including the

improvements thereon and the fixtures thereto that are related to ongoing remediation

activities in the condition that they exist as of the date of such execution, except for

ordinary wear and tear, casualty and condemnation, and except to the extent that ongoing

environmental activities require otherwise.

4.    The purpose of the Multistate Trust shall be to: (i) own the

Multistate Owned Sites; (ii) carry out administrative and property management functions

related to the Multistate Owned Sites; (iii) manage and/or fund implementation of future

Environmental Actions approved by the Lead Agencies with respect to those Owned

Funded Sites that will be transferred to the Multistate Trust ("Multistate Owned Funded Sites") and the Non-Owned Service Stations (defined in Subparagraph 10(f)(xxviii) below); (iv) fulfill other obligations as set forth in this Settlement Agreement; (v) pay certain future oversight costs (but not those related to the Non-Owned Service Stations); and (vi) ultimately sell, transfer, or otherwise dispose or facilitate the reuse of all or part of the Multistate Trust Assets, if possible, all as provided herein with no objective or authority to engage in any trade or business.  The sale, lease or other disposition of some or all of the Multistate Trust Assets by the Multistate Trust shall not be deemed an engagement in any trade or business.   The Multistate Trust shall be funded as specified in Paragraph 10 herein.

        5.        The Multistate Trust by and through its Multistate Trustee not individually but solely in its representative capacity, Debtors, and the Lead Agencies for the Multistate Owned Funded Sites shall exchange information and reasonably cooperate to determine the appropriate disposition of any executory contracts or unexpired leases that relate to the relevant Site; provided, however, that the Multistate Trust shall not be required to take assignment of any executory contract or unexpired lease without the consent of the Multistate Trustee.  Debtors shall cooperate with the Multistate Trust with the prompt and orderly delivery of all executory contracts and unexpired leases and take such action with respect to such contracts and leases as the Lead Agencies and the Multistate Trust may reasonably request.

        6.        Notwithstanding anything to the contrary herein, the United States, Debtors, and the Multistate Trustee shall address, by a separate agreement, the appropriate treatment of Debtors' interest in *Tronox Worldwide LLC v. Atlantic Richfield*

PAGE 26

*Co., et al.*, No. 07 CV 1017 (HE) (W.D. Okla.), and *Kerr-McGee Chemical Corp. v. Lefton Iron & Metal Co., et al.* ("*Lefton Iron*"), No. 90 CV 3551 (GPM) (S.D. Ill.), including by providing that the Multistate Trust shall receive the benefit of any recovery in these litigations on account of post-Effective Date response costs, and Reorganized Tronox shall receive the benefit of any recovery on account of pre-Effective Date response costs.  With respect to the *Lefton Iron* action, the State of Illinois shall also be a party to the agreement referenced in this Paragraph.

7. Greenfield Environmental Multistate Trust, LLC, not individually but solely in its representative capacity as Multistate Trustee, is appointed as the Multistate Trustee to administer the Multistate Trust and the Multistate Trust Accounts, in accordance with this Settlement Agreement and an Environmental Response Trust Agreement ("Multistate Trust Agreement") materially consistent with the Settlement Agreement to be separately executed by the parties.

8. Debtors and Reorganized Tronox shall provide to the Multistate Trustee Environmental Information and Real Property Information in accordance with Section XIX below.

9. Prior to any conveyance of a Multistate Owned Site to the Multistate Trust pursuant to this Settlement Agreement, the Debtors and their affiliates shall vacate such Multistate Owned Site and surrender possession of such Multistate Owned Site to the Multistate Trustee, unless otherwise approved by the Multistate Trustee.

10.    Multistate Trust Accounts

a.        The Multistate Trustee shall create a segregated

Multistate Trust account ("Multistate Trust Environmental Cost Account") within the

Multistate Trust for each of the Multistate Owned Funded Sites listed in Subparagraphs

10(f)(ii)-(xxvii) below, and a separate, single Multistate Trust work account ("Multistate

Trust Work Account") for the Non-Owned Service Stations listed in Subparagraph

10(f)(xxviii) below.  The purpose of a Multistate Trust Environmental Cost Account for a

Multistate Owned Funded Site shall be to provide funding for future Environmental

Actions and certain future oversight costs of the Governments included in the approved

budget set forth in Paragraph 12 below with respect to that Multistate Owned Funded

Site.  The purpose of the Multistate Trust Work Account for the Non-Owned Service

Stations shall be to provide funding for future Environmental Actions included in the

approved budget set forth in Paragraph 12 below with respect to those Non-Owned

Service Stations, but shall not be used to fund certain future oversight costs of the

Governments with respect to any of those Non-Owned Service Stations, and the

Multistate Trust shall not be responsible for any such oversight costs.  Funding from a

Multistate Trust Environmental Cost Account for any Multistate Owned Funded Site may

not be used for any other Owned Site or Non-Owned Site, except as otherwise expressly

provided by and in accordance with Paragraph 13 below.

b.        To the extent that the Multistate Trustee determines that

Environmental Actions are required with respect to any property owned by the Multistate

Trust that is not listed in Subparagraphs 10(f)(ii)-(xxvii) below, the Multistate Trustee

may create an Environmental Cost Account for that Site.  The Multistate Trustee may

provide funding for such an account pursuant to Subparagraphs 13(a)-(c) below.

        c.      The Multistate Trustee shall also create a segregated

administrative account ("Multistate Trust Administrative Account") to fund the payment

of real estate taxes, income taxes (to the extent applicable), insurance, and other

Administrative Costs.

        d.      Assets of the Multistate Trust Environmental Cost

Accounts, Multistate Trust Work Account, and Multistate Trust Administrative Account

(collectively, the "Multistate Trust Accounts") shall be held in trust solely for the

purposes provided in this Settlement Agreement.  The Governments shall be the sole

beneficiaries of the Multistate Trust and the Multistate Trust Accounts.  Neither Debtors

nor Reorganized Tronox shall have any rights or interest to the Multistate Trust Assets, or

to any funds remaining in any of the Multistate Trust Accounts upon the completion of

any and all final actions and disbursement of any and all final costs with respect to the

Multistate Owned Sites.

        e.      All interest, dividends and other revenue earned in a

Multistate Trust Account shall be retained in the respective Multistate Trust Account and

used only for the same purposes as the principal in that account as provided in this

Settlement Agreement, subject to any reallocation approved by the Governments in

accordance with the terms of this Settlement Agreement.

        f.      In settlement and full satisfaction of all claims asserted by

the Governments against Debtors and Reorganized Tronox with respect to any and all

costs of response incurred, or to be incurred, and to any and all NRD and related

assessment costs incurred or to be incurred (where applicable) in connection with the

Multistate Owned Sites and Non-Owned Service Stations (including but not limited to

the liabilities and other obligations asserted in the United States' and States' Proofs of

Claim relating to the Multistate Owned Funded Sites and the Non-Owned Service

Stations), Debtors shall, on the Effective Date, (i) make payments of $16,936,352.00 to

the Multistate Trust Administrative Account and $80,834,721.00 to the Multistate Trust

Environmental Cost Accounts and Work Accounts as set forth in Subparagraphs

10(f)(ii)-(xxviii) below, (ii) pay the Governments any amounts provided for in

Subparagraphs 10(f)(ii)-(xxviii) below, and (iii) transfer the cash value of 100% of

certain financial assurance letters of credit and surety bonds to certain Multistate

Environmental Cost Accounts, as set forth in Paragraph 11 below.  Additionally, the

Multistate Trust and the Governments shall receive the specified percentages of the

Anadarko Litigation Proceeds as set forth in Subparagraphs 124(a)-(bb) and 125(y)

below.  On the Effective Date, as described above, Debtors shall make the following

payments:

> i.      payment of $16,936,352.00 on the Effective Date to fund the Multistate Trust Administrative Account;

> ii.      payment of $402,395.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the former petroleum terminal at Birmingport, Alabama ("Birmingport Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site;

> iii.      payment of $21,587,129.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the former plant at Mobile, Alabama  ("Mobile Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site;

iv.       payment of $4,220,981.00 on the Effective Date to
fund future Environmental Actions and certain future oversight
costs of the Governments with respect to the Kerr-McGee
Chemical LLC Site in Jacksonville, Florida ("Kerr-McGee
Jacksonville Site"), to be deposited in the Multistate Trust
Environmental Cost Account for that Site; and payment of
$1,896.00 on the Effective Date to the United States on behalf of
US EPA for past cost claims asserted by US EPA with respect to
the Site, to be transferred pursuant to the instructions set forth in
Paragraph 129 below.  The Multistate Trustee will segregate
$3,590,495.00 of the funds otherwise then remaining in the
Multistate Trust Environmental Cost Account for the Kerr-McGee
Jacksonville Site (the "Kerr-McGee Jacksonville Segregated
Amount") into a separate account that shall be reserved unspent
until US EPA and the State of Florida thereafter notify the
Multistate Trustee as to how the Kerr-McGee Jacksonville
Segregated Amount will be equitably allocated between operation
and maintenance and other response action/response costs.  At that
time, the Multistate Trustee shall divide the Kerr-McGee
Jacksonville Segregated Amount into separate subaccounts within
the Multistate Trust Environmental Cost Account for the Kerr-
McGee Jacksonville Site for operation and maintenance and other
response action/response costs in accordance with the notice
provided, and may thereafter release those funds for use (to the
extent otherwise consistent with a budget approved pursuant to
Subparagraph 12(a) hereof) for the purposes of the respective
accounts.  Notwithstanding anything to the contrary in this
paragraph, at any time US EPA and the State of Florida may
jointly authorize the Multistate Trustee to release any or all of the
Kerr-McGee Jacksonville Segregated Amount for use consistent
with a budget approved pursuant to Subparagraph 12(a) hereof
without waiting for the allocation process described above;

v.       payment of $38,957.00 on the Effective Date to
fund future Environmental Actions and certain future oversight
costs of the Governments with respect to the Terminal Site in
Jacksonville, Florida ("Jacksonville Terminal Site"), to be
deposited in the Multistate Trust Environmental Cost Account for
that Site;

vi.       payment of $6,050,929.00 on the Effective Date to
fund future Environmental Actions and certain future oversight
costs of the Governments with respect to the Kerr-McGee
Chemical Corp. Superfund Site in Soda Springs, Idaho ("Soda
Springs Site"), to be deposited in the Multistate Trust
Environmental Cost Account for that Site;

vii.    payment of $1,294,468.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Madison, Illinois Site ("Madison Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site;

viii.    payment of $3,960,429.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Sauget/Moss American Site in Sauget, Illinois ("Sauget Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site;

ix.    payment of $366,782.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Indiana Wood Treating Site in Indianapolis, Indiana ("Indiana Wood Treating Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site;

x.    payment of $1,795.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Kerr-McGee Ag-Chem/Blender Farm Center in Rushville, Indiana ("Rushville Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site;

xi.    payment of $897,624.00 on the Effective Date to fund future  Environmental Actions and certain future oversight costs of the Governments with respect to the Moss American Site in Bossier City, Louisiana ("Bossier City Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site; and payment of $106.00 on the Effective Date for past costs asserted by the State of Louisiana with respect to the Site, to be made pursuant to the instructions set forth in Subparagraph 131(d);

xii.    payment of $2,720,947.00 on the Effective Date to fund future  Environmental Actions and certain future oversight costs of the Governments with respect to the Triple S Refining Corp./Calhoun Gas Plant in Calhoun, Louisiana ("Calhoun Gas Plant"), to be deposited in the Multistate Trust Environmental Cost Account for that Site; and payment of $107.00 on the Effective Date for past costs asserted by the State of Louisiana with respect to the Site, to be made pursuant to the instructions set forth in Subparagraph 131(d);

xiii.    payment of $5,520,102.00 on the Effective Date to fund future  Environmental Actions and certain future oversight

costs of the Governments with respect to the Kerr-McGee Chemical Corporation Facility in Columbus, Mississippi ("Columbus Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site, and payment of $5,386.00 on the Effective Date to the United States on behalf of US EPA for past cost claims asserted by United States on behalf of US EPA with respect to the Site, to be transferred pursuant to the instructions set forth in Paragraph 129 below.  If the Columbus Site is added to the National Priorities List, the Multistate Trustee will segregate $2,692,871 of the funds otherwise then remaining in the Multistate Trust Environmental Cost Account for the Columbus Site (or if less than $2,692,871 remains in the Multistate Trust Environmental Cost Account, such amount as does remain) (the "Columbus Segregated Amount") into a separate account that shall be reserved unspent until US EPA and the State of Mississippi thereafter notify the Multistate Trustee as to how the Columbus Segregated Amount will be equitably allocated between operation and maintenance and other response action/response costs.  At that time, the Multistate Trustee shall divide the Columbus Segregated Amount into separate subaccounts within the Multistate Trust Environmental Cost Account for the Columbus Site for operation and maintenance and other response action/response costs in accordance with the notice provided, and may thereafter release those funds for use (to the extent otherwise consistent with a budget approved pursuant to Subparagraph 12(a) hereof) for the purposes of the respective accounts.  Notwithstanding anything to the contrary in this paragraph, at any time US EPA and the State of Mississippi may jointly authorize the Multistate Trustee to release any or all of the Columbus Segregated Amount without waiting for the allocation process described above.

xiv.    payment of $1,298,956.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Kerr-McGee Chemical LLC Facility in Meridian, Mississippi ("Meridian Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site.  If the Meridian Site is added to the National Priorities List, the Multistate Trustee will segregate $897,624 of the funds otherwise then remaining in the Multistate Trust Environmental Cost Account for the Meridian Site (or if less than $897,624 remains in the Multistate Trust Environmental Cost Account, such amount as does remain) (the "Meridian Segregated Amount") into a separate account that shall be reserved unspent until US EPA and the State of Mississippi thereafter notify the Multistate Trustee as to how the Meridian Segregated Amount will be equitably allocated between operation and maintenance and

other response action/response costs. At that time, the Multistate Trustee shall divide the Meridian Segregated Amount into separate subaccounts within the Multistate Trust Environmental Cost Account for the Meridian Site for operation and maintenance and other response action/response costs in accordance with the notice provided, and may thereafter release those funds for use (to the extent otherwise consistent with a budget approved pursuant to Subparagraph 12(a) hereof) for the purposes of the respective accounts. Notwithstanding anything to the contrary in this paragraph, at any time US EPA and the State of Mississippi may jointly authorize the Multistate Trustee to release any or all of the Meridian Segregated Amount for use consistent with a budget approved pursuant to Subparagraph 12(a) hereof without waiting for the allocation process described above;

xv.     payment of $1,743,398.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the former Kerr-McGee Chemical LLC wood treating plant in Kansas City, Missouri ("Kansas City Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site, and payment of $20,801.00 on the Effective Date to the State of Missouri for NRD asserted by the State of Missouri with respect to the Site, to be made pursuant to the instructions set forth in Subparagraph 131(g);

xvi.     payment of $2,025,323.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the former Kerr-McGee Chemical LLC wood-treating plant in Springfield, Missouri ("Springfield Site") to be deposited in the Multistate Trust Environmental Cost Account for that Site, and payment and payment of $73,996.00 on the Effective Date to the State of Missouri for NRD asserted by the State of Missouri with respect to the Site, to be made pursuant to the instructions set forth in Subparagraph 131(g). After the Effective Date, the Multistate Trustee shall deposit quarterly rents received from Cedar Creek pursuant to the terms of the Springfield Lease to the Multistate Trust Environmental Cost Account for the Springfield Site. After the Effective Date, the Multistate Trustee shall also deposit real property taxes reimbursed by Cedar Creek pursuant to the terms of the Springfield Lease into the Multistate Trust Administrative Account;

xvii.     payment of $17,952.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Bristol Mine Site in

Pioche, Nevada ("Bristol Mine Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site;

xviii.    payment of $269,287.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Caselton Mine Site in Pioche, Nevada ("Caselton Mine Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site, and payment of $6,320.00 on the Effective Date to the United States on behalf of BLM for past costs incurred by BLM with respect to the Site, to be transferred pursuant to the instructions set forth in Paragraph 129;

xix.    payment of $700,000.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Rome, New York Site ("Rome Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site, payment of $2,427.00 on the Effective Date for past costs asserted by the State of New York with respect to the Site, to be made pursuant to the instructions set forth in Subparagraph 131(i), and payment of $1,896.00 on the Effective Date for NRD asserted by the State of New York with respect to the Site, to be made pursuant to the instructions set forth in Subparagraph 131(i);

xx.    payment of $4,208,555.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Navassa, North Carolina Site ("Navassa Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site;

a.    The Multistate Trustee shall segregate $3,590,495 of the funds provided under this Subparagraph to the Multistate Trust Environmental Cost Account for the Navassa Site into a separate subaccount, to be reserved unspent. Based on the final response action selected for the Navassa Site, US EPA and the State of North Carolina shall notify the Multistate Trustee as to how to equitably allocate this $3,590,495 between operation and maintenance and other response action/response costs. The Multistate Trustee shall thereafter allocate these funds into separate subaccounts within the Multistate Trust Environmental Cost Account for the Navassa Site for operation and maintenance and other response action/response costs in accordance with the notice provided, and may thereafter release those funds for use (to the extent otherwise consistent with a budget approved pursuant to

Subparagraph 12(a) hereof) for the purposes of the respective accounts. Notwithstanding anything to the contrary in this paragraph, at any time US EPA and the State of North Carolina may jointly authorize the Multistate Trustee to release any or all of these segregated funds for use consistent with a budget approved pursuant to Subparagraph 12(a) hereof without waiting for the allocation process described above.

b.      Debtors shall also make a payment of $1,896.00 on the Effective Date to the United States on behalf of US EPA for past cost claims asserted by the United States on behalf of US EPA with respect to the Site, to be made pursuant to the instructions set forth in Paragraph 129; and

c.      Debtors shall also make a payment of $915,836.00 on the Effective Date to the DOI NRDAR Fund for NRD asserted by the United States on behalf of DOI and NOAA and the State of North Carolina with respect to the Site, to be made pursuant to the instructions set forth in Paragraph 129. Cash payments for NRD under this Subparagraph shall be subsequently deposited into the DOI Natural Resource Damage Assessment and Restoration Fund ("DOI NRDAR Fund"), Account No. 14X5198, to be jointly managed by the DOI, NOAA, and the State of North Carolina Trustees ("Joint Navassa NRD Claimants"). A separate, Site-specific numbered account for the Site has been or will be established within the DOI NRDAR Fund. The funds received shall be assigned pursuant to this Subparagraph to the Site-specific Restoration Account ("Restoration Account") to allow the funds to be maintained as a segregated account within the DOI NRDAR Fund. The trustees shall use the funds in the Restoration Account, including all interest earned on such funds, for restoration activities at or in connection with the Navassa Site as directed by the Joint Navassa NRD Claimants, but shall not be used to conduct assessment activities;

xxi.     payment of $8,036,586.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Cleveland, Oklahoma Site ("Cleveland Site") to be deposited in the Multistate Trust Environmental Cost Account for that Site, and payment of $112,749.00 on the Effective Date to the State of Oklahoma for

NRD asserted with respect to this Site, to be made pursuant to the instructions set forth in Subparagraph 131(k);

xxii.    payment of $8,719,555.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Cushing, Oklahoma Site ("Cushing Site") to be deposited in the Multistate Trust Environmental Cost Account for the Site, and payment of $49,551.00 on the Effective Date to the State of Oklahoma for NRD asserted with respect to the Site, to be made pursuant to the instructions set forth in Subparagraph 131(k);

xxiii.    payment of $4,101.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Avoca, Pennsylvania Site ("Avoca Site"), to be deposited in a Multistate Trust Environmental Cost Account for that Site;

xxiv.    payment of  $1,651,132.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the International Creosoting Company Superfund Site in Beaumont, Texas ("Beaumont Site"), to be deposited in the Multistate Trust Environmental Cost Account for that Site;

xxv.    payment of $215,477.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Corpus Christi No. 1 Terminal in Corpus Christi, Texas ("Corpus Christi  No. 1 Terminal"), to be deposited in the Multistate Trust Environmental Cost Account for the Terminal;

xxvi.    payment of $2,537,176.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to the Texarkana Facility in Texarkana, Texas ("Texarkana Facility"), to be deposited in the Multistate Trust Environmental Cost Account for that Site; payment of $7,282.00 on the Effective Date for NRD asserted by the United States on behalf of DOI with respect to the Texarkana Facility, to be transferred pursuant to the instructions set forth in Paragraph 129 and subsequently deposited into the DOI NRDAR Fund; payment of $364,084.00 on the Effective Date for NRD asserted by the United States on behalf of DOI and the State of Texas Trustees ("Joint Texarkana NRD Claimants") with respect to the Site, to be transferred pursuant to the instructions set forth in Paragraph 129 and subsequently deposited into the DOI NRDAR Fund; and payment of $112,749.00 on the Effective Date for NRD

and past costs asserted by the State of Texas Trustees with respect to the Site, to be transferred pursuant to the instructions set forth in Subparagraph 131(l). Cash payments for NRD to the Joint Texarkana NRD Claimants shall subsequently be deposited into DOI NRDAR, Account No. 14X5198, to be jointly managed by the Joint Texarkana NRD Claimants. A separate, Site-specific numbered account for the Site has been or will be established within the DOI NRDAR Fund. The funds received shall be assigned to the Site-specific Restoration Account to allow the funds to be maintained as a segregated account within the DOI NRDAR Fund. The trustees shall use the funds in the Restoration Account, including all interest earned on such funds, for restoration activities at or in connection with the Texarkana Site as directed by the Joint Texarkana NRD Claimants, but shall not be used to conduct assessment activities;

xxvii. payment of $2,028,696.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of the Governments with respect to service stations owned by Debtors with ongoing cleanup obligations located in Alabama, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Oklahoma, Tennessee, Texas, and Wisconsin ("Owned Service Stations), to be deposited in a single jointly managed Multistate Trust Environmental Cost Account for those Service Stations;

xxviii. payment of $315,989.00 on the Effective Date to fund future Environmental Actions of the Governments with respect to service stations not owned by Debtors with ongoing cleanup obligations located in Alabama, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Louisiana, Oklahoma, Tennessee, Texas, and Wisconsin ("Non-Owned Service Stations"), to be deposited in a single jointly managed Multistate Trust Work Account for those Service Stations;

11. <u>Letters of Credit and Surety Bonds</u>: On the Effective Date, Debtors shall transfer the 100% cash value of the following existing financial guarantees to the following Multistate Trust Environmental Cost or Work Accounts:

a. Debtors shall convert to cash the Encroachment Permit Bond for the City of Louisville, Department of Public Utilities and, on the Effective Date, transfer the $10,000.00 in total funds from the canceled bond to the Multistate Trust

Environmental Cost Account for Owned Service Stations, unless prior to the Effective

Date, Debtors provide a no further action letter or statement that an Encroachment Permit

Bond is no longer necessary, and the City of Louisville releases the bond.

        b.      Debtors shall convert to cash the Individual Utility Permit

Bond for the Illinois Department of Transportation and, on the Effective Date, transfer

the $2,000.00 in total funds from the canceled bond to the Multistate Trust Work Account

for Non-Owned Service Stations.

        c.      Debtors shall convert to cash the Right of Way Bond for

the City of Jacksonville, Department of Public Works and, on the Effective Date, transfer

the $5,000.00 in total funds from the canceled bond to the Multistate Trust

Environmental Cost Account for the Jacksonville Terminal Site.

        d.      Debtors shall convert to cash the surety bond relating to

the Permit to Drill Ground Water Monitoring Wells issued by the City of Springfield,

Missouri and, on the Effective Date, transfer the $19,500.00 in total funds from the

cancelled surety bond to the Multistate Trust Environmental Cost Account for the

Springfield Site.

        e.      Debtors shall transfer the $50,000.00 in total funds held

by Tronox Worldwide LLC in the Sauget Site Standby Trust Fund No. 3126 (JP Morgan

Bank, Account No. 380744), to the Multistate Trust Environmental Cost Account for the

Sauget Site.

        12.      <u>Lead Agencies</u>

        a.      Within 90 days following the Effective Date in the first

year and thereafter by January 1 of each year following the Effective Date, the Multistate

Trustee shall provide to the Lead Agency for each of the Multistate Trust Environmental

Cost and Work Accounts, a statement showing the balance of each cost account and

proposed budget for the coming year.  The Lead Agency shall have the authority to

approve or disapprove the proposed budget for the relevant Multistate Trust

Environmental Cost or Work Account, but only after consultation with the Non-Lead

Agency where the Non-Lead Agency requests such consultation (the "Non Lead Agency"

will be US EPA for Sites where a State is the Lead Agency, and the State when US EPA

is the Lead Agency).  Further details relating to the proposal and approval of budgets for

the Multistate Trust Environmental Cost Account for the Owned Service Stations may be

set forth in the Multistate Trust Agreement.

> b.    The Multistate Trustee shall pay funds from a Multistate

Trust Environmental Cost or Work Account to the Lead Agency making a written request

for funds for reimbursement within 30 days following such request.  Such written request

shall: (i) be in accordance with the approved budget set forth in Subparagraph 12(a)

above, and (ii) shall specify what the funds were used for and shall certify that they were

used only for Environmental Actions performed and/or oversight costs incurred after the

Effective Date by the Lead Agency with respect to that Site.  With respect to any of the

Multistate Trust Environmental Work Accounts, however, such funds may not include

future oversight costs.

> c.    The Multistate Trustee shall also pay funds from a

Multistate Trust Environmental Cost or Work Account to the Non-Lead Agency making

a written request for funds within 30 days following such request where the Lead Agency

has requested the assistance of the Non-Lead Agency with respect to that Site.  Such

written request shall: (i) be in accordance with the approved budget set forth in

Subparagraph 12(a) above, and (ii) shall specify what the funds were used for and shall

certify that they were used only for Environmental Actions performed and/or oversight

costs incurred after the Effective Date by the Non-Lead Agency with respect to that Site.

With respect to any of the Multistate Trust Environmental Work Accounts, however,

such funds may not include future oversight costs.

        d.      In the case of requests by the Lead Agency to the

Multistate Trustee to use the funds from a particular Multistate Trust Environmental Cost

Account or Work Account to perform Environmental Actions in accordance with the

approved budget set forth in Subparagraph 12(a) above, the Multistate Trustee shall

utilize the funds and interest earned thereon from that Multistate Trust Environmental

Cost Account or Work Account to undertake such work promptly and in accordance with

any schedule approved by the Lead Agency.  The Multistate Trustee shall seek the

approval of the Lead Agency of any contractor hired by the Multistate Trustee and any

work plans to be undertaken by the Multistate Trust under the oversight of the Lead

Agency, unless the Lead Agency has provided a written waiver of such approval or

requirements.  The Multistate Trustee shall require liability insurance as set forth in the

Multistate Trust Agreement from each contractor hired to perform work.

        e.      For purposes of the Multistate Trust, the Lead Agencies

for the Multistate Owned Funded Sites and the Non-Owned Service Stations are as

follows:

| | |
|---|---|
| Birmingport, AL | State of Alabama |
| Mobile, AL | State of Alabama |
| Jacksonville, FL (Kerr-McGee Chemical LLC Site) | US EPA |

| | |
|---|---|
| Jacksonville, FL (Terminal Site) | State of Florida |
| Soda Springs, ID | US EPA |
| Madison, IL | State of Illinois |
| Sauget, IL | State of Illinois |
| Indianapolis, IN | State of Indiana |
| Rushville, IN | Indiana Department of Environmental Management |
| Bossier City, LA | State of Louisiana |
| Calhoun, LA | State of Louisiana |
| Meridian, MS | US EPA |
| Columbus, MS | US EPA |
| Kansas City, MO | State of Missouri |
| Springfield, MO | State of Missouri |
| Wilmington (Navassa), NC | US EPA |
| Bristol Mine, NV | (see below) |
| Caselton Mine, NV | (see below) |
| Rome, NY | New York State Department of Environmental Conservation |
| Cleveland, OK | State of Oklahoma |
| Cushing, OK | State of Oklahoma |
| Avoca, PA | State of Pennsylvania |
| Beaumont, TX | State of Texas |
| Corpus Christi, TX (Corpus Christi Terminal No. 1) | State of Texas |
| Texarkana, TX | State of Texas |
| Owned Service Stations and Non-Owned Service Stations | The respective State in which the service station is located shall be the Lead Agency. |

For the Bristol Mine Site and the Caselton Mine Site in Nevada, the Lead Agency and the Non-Lead Agency shall be one of the following three agencies: BLM, US EPA, or the Nevada Division of Environmental Protection. The United States and State of Nevada will jointly notify the Multistate Trustee, on or before the Effective Date, which agency will be Lead Agency and which agency will be Non-Lead Agency. This notification may

designate a different agency as Lead Agency or Non-Lead Agency for different portions

of the Bristol Mine Site or the Caselton Mine Site.

        f.       The Lead Agency for a Site shall consult with the Non-

Lead Agency for that Site relating to approval of the budget or requests for funding for

cleanup of the Site if such consultation is requested.  US EPA and the State may provide

the Multistate Trustee with joint written notice that the Lead Agency for a Multistate

Owned Funded Site or Non-Owned Service Station has changed.

        13.     Transfers of Funds From the Multistate Trust Accounts

        a.       At any time after the Effective Date, the United States

and the State in which a Multistate Owned Site is located, after consultation with the

Multistate Trustee, may jointly direct the Multistate Trustee to transfer funds from that

Site's Multistate Trust Environmental Cost Account to one or more Multistate Trust

Environmental Cost Accounts for other Sites located in the same State.  For the purpose

of Sites located in Texas, the Texas Commission on Environmental Quality ("TCEQ"),

after consultation with the Multistate Trustee and US EPA, may in TCEQ's sole

discretion direct the Multistate Trustee to transfer funds from one Texas Site's Multistate

Trust Environmental Cost Account to one or more Multistate Trust Environmental Cost

Accounts for other Texas Sites.

        b.       The United States and any of the States may agree in

writing at any time after the Effective Date that, based on new information about the

estimated cost of cleanup or the assumption of liability by a buyer or other party for one

or more Multistate Owned Funded Sites in that State, the funding for one or more

Multistate Owned Funded Sites is more than is projected by the Lead Agency for that

Site to be needed.  In such event, the United States Department of Justice may instruct in writing after consultation with the State and the Multistate Trustee that such excess funding be transferred first, to one or more of the other Multistate Trust Environmental Cost Accounts in the same State established under this Settlement Agreement if there are remaining actions to be performed and with a need for additional trust funding, second, to one or more of the other Multistate Trust Environmental Cost Accounts in other States established under this Settlement Agreement if there are remaining actions to be performed and with a need for additional trust funding or, to the extent there are no such remaining actions, as described in clauses (ii) – (iv) in Subparagraph 13(c).

        c.        After the United States and a State have confirmed to the Multistate Trustee that all final actions have been completed, and all final costs have been disbursed for all Multistate Owned Funded Sites in that State, any funds remaining in the Multistate Trust Environmental Cost Accounts for all Multistate Owned Funded Sites in that State shall be transferred in the following order: (i) first, in accordance with instructions provided by the United States Department of Justice in writing after consultation with other States, to the Multistate Trust Administrative Account, or to other Multistate Trust Environmental Cost Accounts for one or more Multistate Owned Funded Sites in one or more States, if there are remaining actions to be performed and a need for additional funding; (ii) second, in accordance with instructions to be provided by the United States Department of Justice after consultation with other States, to the Multistate Trust Work Account for the Non-Owned Service Stations, the Henderson Trust Environmental Cost Account, any of the West Chicago Trust Environmental Cost or Work Accounts, the Savannah Trust Environmental Cost Account, or any of the

Cimarron Trust Environmental Cost Accounts if there are remaining Environmental

Actions to be performed at the Owned Funded Sites, the Non-Owned Service Stations,

the Non-Owned RAS Properties or Kress Creek and a need for additional trust funding,

with the allocation among such Environmental Cost or Work Accounts to be determined

by the projected shortfall of performing such remaining Environmental Actions; (iii)

third, to Non-Owned Sites with a need for additional funding beyond the distributions

received pursuant to Paragraph 117 and from the Anadarko Litigation Proceeds; and (iv)

fourth, to the Superfund.

      d.  Annually, beginning with the first year after the Effective

Date, the Multistate Trustee shall provide the United States and the States with an update

of anticipated future Administrative Costs of the Multistate Trust.  The United States

Department of Justice may thereafter instruct in writing after consultation with the States

and the Multistate Trustee that any conservatively projected surplus funding in the

Multistate Trust Administrative Account be transferred to one or more of the other

Multistate Trust Accounts established under this Settlement Agreement if there are

remaining actions to be performed and with a need for additional trust funding or, to the

extent there are no such remaining actions, as described in clauses (ii)-(iv) in the

immediately preceding Subparagraph.

     14.  Notwithstanding anything to the contrary in this Settlement

Agreement, Debtors' unpatented mining claims that have reverted as of the Effective

Date to the United States shall be deemed relinquished by Debtors.  The Multistate

Trustee shall hold unpatented mining claims, mill site claims, and placer claims

consistent with the 1872 Mining Law, 30 U.S.C. § 22 *et seq.*, and the Federal Land Policy

and Management Act, 43 U.S.C. § 1701 *et seq.*, or shall abandon such unpatented mining

claims in accordance with applicable law.  Any actions by the Multistate Trustee on

property administered by any federal agency can only be taken after the written

concurrence of the federal agency.

15.    Debtors shall continue, at their own expense, to maintain ongoing

environmental activities being performed by Debtors pursuant to injunctive, compliance,

and regulatory obligations and requirements at a Multistate Owned Funded Site until the

Effective Date, including, but not limited to, environmental monitoring activities;

provided, however, if unanticipated environmental activities are required to be performed

by Debtors prior to the Effective Date, Debtors will cooperate with the Lead Agency in

determining a commercially reasonable course of action.

16.    <u>Multistate Trust Miscellaneous Provisions</u>

a.    The Multistate Trustee shall at all times seek to have the

Multistate Trust treated as a "qualified settlement fund" as that term is defined in

Treasury Regulation section 1.468B-1.  For purposes of complying with Section

468B(g)(2) of the Internal Revenue Code of 1986, as amended, this Settlement

Agreement shall constitute a Consent Decree between the parties.  Approval of the Court,

as a unit of the District Court, shall be sought, and the Court shall retain continuing

jurisdiction over the Multistate Trust and Multistate Trust Accounts sufficient to satisfy

the requirements of Treasury Regulation section 1.468B-1.  The Multistate Trustee shall

cause any taxes imposed on the earnings of the Multistate Trust, if any, to be paid out of

such earnings and shall comply with all tax reporting and withholding requirements

imposed on the Multistate Trust under applicable tax laws.  The Multistate Trustee shall

be the "administrator" of the Multistate Trust pursuant to Treasury Regulation section

1.468B-2(k)(3).  To the extent that the Debtors choose to make a Grantor Trust Election

with respect to the Multistate Trust, the Multistate Trustee shall provide reasonable

cooperation to the Debtors as needed to facilitate such election.  For the avoidance of

doubt, any Grantor Trust Election is for tax purposes only and shall in no way affect the

substantive rights and obligations of the parties under this Settlement Agreement or the

Multistate Trust Agreement.

        b.      The Multistate Trustee shall use the Multistate Trust

Environmental Cost Account for each of the Multistate Owned Funded Sites to fund

future Environmental Actions and certain future oversight costs with respect to that

Owned Funded Site.  The Multistate Trustee shall use the Multistate Trust Work Account

for the Non-Owned Service Stations to fund future Environmental Actions with respect to

Non-Owned Service Stations.  The Multistate Trustee shall use the Multistate Trust

Administrative Account to fund the Administrative Costs of the Multistate Trust that

have been approved by the United States and States that are Lead Agencies of the

Multistate Owned Funded Sites.

        c.      The administrative funds within the Multistate Trust

Administrative Account shall be used by the Multistate Trustee for Administrative Costs.

Within 90 days following the Effective Date in the first year and thereafter by January 1

of each year, the Multistate Trustee shall provide the Governments with an annual budget

for administration of the Multistate Trust for review and approval or disapproval by the

United States and States that are Lead Agencies.

        d.      In no event shall any of the Multistate Trust Parties be

held liable to any third parties for any liability, action, or inaction of any other party,

including Debtors or any other Multistate Trust Party.

> e.    The Multistate Trustee shall implement any institutional

controls or deed restrictions requested by the Governments with respect to any of the

Multistate Owned Funded Sites.  Additionally, the Multistate Trustee shall abide by the

terms of any institutional controls or deed restrictions in place or of record as to any

Multistate Owned Funded Sites.

> f.    In the event that the Court finds that the Multistate

Trustee in any material respect, as a result of its negligence, exacerbates or aggravates

hazardous conditions at any of the Multistate Owned Funded Sites, is seriously or

repeatedly deficient or late in performance of the work or violates the provisions of this

Settlement Agreement, the Multistate Trust Agreement or other related implementation

agreements, the United States and the State in which the relevant Site is located may

jointly direct that (i) the Multistate Trustee be replaced in accordance with the Multistate

Trust Agreement or (ii) all remaining funds and future recoveries in the Multistate Trust

be paid to US EPA or to the applicable State to be used in accordance with the terms of

this Settlement Agreement.

> g.    The Multistate Trustee may resign from its trusteeship

generally, and without cause, by giving not less than 120 days prior written notice thereof

to the Court, the United States, and the States.

> h.    The Multistate Trust is intended to be governed by the

terms of this Settlement Agreement and the Multistate Trust Agreement and shall not be

subject to any provision of the Uniform Custodial Trust Act as adopted by any state, now or in the future.

17.    The Multistate Trustee shall provide the United States and the State in which the Multistate Owned Funded Site is located and their representatives and contractors access to all portions of the Multistate Owned Funded Sites that the Multistate Trust owns at all reasonable times for the purposes of conducting Environmental Actions at or near the Multistate Owned Funded Sites.  The Multistate Trustee shall execute and record with the appropriate recorder's office any easements or deed restrictions requested by the Governments for restrictions on use of the Multistate Owned Funded Sites in order to protect public health, welfare or safety or the environment or ensure non-interference with or protectiveness of any action.  Any existing easements or deed restrictions of record as to any Multistate Owned Funded Site prior to the Effective Date of this Settlement Agreement shall survive the Settlement Agreement.

18.    The United States, the State in which the relevant Multistate Owned Funded Site is located, or a Government that is a designee thereof, may at any time propose in writing to take ownership of any of the Multistate Owned Sites or any part thereof.  Any such proposed transfer and the terms thereof are subject to approval in writing by US EPA and the State (after consultation with the Multistate Trustee) in which the Multistate Owned Site is located.  However, neither the United States nor any State shall be required to accept an ownership interest in remaining properties upon termination of the Multistate Trust.

19.      Except for the Navassa Site and the Texarkana Site, the Multistate
Trustee may, at any time, seek the approval of US EPA and the State in which the
relevant Multistate Owned Site is located for the sale or lease or other disposition of all or
part of a Multistate Owned Site.  With respect to the Navassa Site, the Multistate Trustee
shall seek the approval of US EPA, and the natural resource trustees, consisting of DOI,
NOAA, and the State of North Carolina (collectively, "the Navassa Trustee Council"),
concerning the sale or lease or other disposition of all or part of the Navassa Site.  With
respect to the Texarkana Site, the Multistate Trustee shall seek the approval of US EPA,
and the natural resource trustees for the Texarkana Site, consisting of DOI and the State
of Texas (collectively, the "Texarkana Trustee Council") concerning the sale or lease or
other disposition of all or part of the Texarkana Site.

20.      The net proceeds of any sale, lease, or disposition of all or part of a
Multistate Owned Site, except as provided in Paragraph 21 below, shall be distributed as
follows: (i) first, to the extent additional Environmental Actions are required with respect
to that Multistate Owned Site, to that Site's Multistate Trust Environmental Cost
Account, and (ii) second, 10% of the net proceeds shall be distributed to the Multistate
Trust Administrative Account, and the remaining 90% shall be distributed among the
Multistate Owned Funded Sites pursuant to the Anadarko Litigation allocations set forth
in Paragraph 124 below, except for any Multistate Owned Funded Sites for which no
further Environmental Actions are required.

21.      Subject to the approval of US EPA and the State (and subject to
the additional approval of the Navassa Trustee Council or the Texarkana Trustee Council,
for the Navassa Site and the Texarkana Site, respectively), the Multistate Trustee may

propose a sale, lease, or disposition of a Multistate Owned Site that includes funding

from, or the retention of some portion of liability by, the respective Multistate Trust

Environmental Cost Account and/or the Multistate Trust Administrative Account,

provided that the net effect of any proposed sale, lease or disposition is to lessen the total

financial obligations and liabilities as would otherwise be incurred in the absence of any

such sale, lease, or disposition.  In the event of any approved sale or lease or other

disposition under this Paragraph, any net proceeds from the sale or lease or other

disposition shall be paid to the Multistate Trust Environmental Cost Account for that

Multistate Owned Site and/or the Multistate Trust Administrative Account (subject to

Subparagraphs 16(a) and (b) hereof) in a proportion approved by US EPA and the State

in writing.

   22. None of the Multistate Trust Parties shall be personally liable

unless the Court, by a final order that is not reversed on appeal, finds that it committed

fraud or willful misconduct after the Effective Date in relation to the Multistate Trustee's

duties.  There shall be an irrebuttable presumption that any action taken or not taken with

the approval of the Court does not constitute an act of fraud or willful misconduct.  Any

judgment against a Multistate Trust Party and any costs of defense relating to any

Multistate Trust Party shall be paid from and limited to funds from the Multistate Trust

Environmental Cost Account for the relevant Site, the Multistate Trust Work Account for

the Non-Owned Service Stations, or the Multistate Trust Administrative Account without

the Multistate Trust Party having to first pay from its own funds for any personal liability

or costs of defense underline unless a final order of the Court, that is not reversed on appeal,

determines that it committed fraud or willful misconduct in relation to the Multistate

Trust Party's duties.  Nothing herein shall permit any judgment against the Multistate

Trust Environmental Cost Account related to a particular Multistate Site to be paid from

the Multistate Trust Environmental Cost Account for another Site.

      23.     The Multistate Trust Parties are exculpated by all persons,

including without limitation, holders of claims and other parties in interest, of and from

any and all claims, causes of action and other assertions of liability arising out of the

ownership of Multistate Trust Assets and the discharge of the powers and duties

conferred upon the Multistate Trust and/or Trustee by this Settlement Agreement or any

order of court entered pursuant to or in furtherance of this Settlement Agreement, or

applicable law or otherwise.  No person, including without limitation, holders of claims

and other parties in interest, will be allowed to pursue any claims or cause of action

against any Multistate Trust Party for any claim against Debtors, for making payments in

accordance with this Settlement Agreement or any order of court, or for implementing the

provisions of this Settlement Agreement or any order of court.  Nothing in this Paragraph

or the Settlement Agreement shall preclude the Governments from enforcing the terms of

this Settlement Agreement against the Multistate Trust Parties.

      24.     Except as may otherwise be provided herein: (a) the Multistate

Trust Parties may rely conclusively on, and shall be protected in acting upon, any

resolution, certificate, statement, instrument, opinion, report, notice, request, consent,

order, or other paper or document believed by them to be genuine and to have been

signed or presented by the proper party or parties; (b) the Multistate Trust Parties may, on

behalf of the Multistate Trust or on their own behalf in their capacity as Multistate Trust

parties, consult with legal counsel, financial or accounting advisors and other

professionals and shall not be personally liable for any action taken or not taken in

accordance with the advice thereof; and (c) persons or entities dealing with the Multistate

Trust Parties shall look only to the Multistate Trust Assets that may be available to them

consistent with this Settlement Agreement to satisfy any liability incurred by the

Multistate Trust Parties to such person in carrying out the terms of this Settlement

Agreement or any order of the Court, and the Multistate Trust Parties shall have no

personal obligations to satisfy any such liability other than as provided in Paragraph 22.

      25.     Neither the United States, the States, nor any of Debtors nor

Reorganized Tronox shall be deemed to be an owner, operator, trustee, partner, agent,

shareholder, officer, or director of the Multistate Trust or the Multistate Trust Parties, or

to be an owner or operator of any of the Multistate Owned Sites or any other Multistate

Trust Assets on account of this Settlement Agreement or actions contemplated thereby.

      26.     It is the objective of the State of Alabama for the Multistate Trust

to achieve a clean closure of the Mobile Site.  Without limiting its authority to do

otherwise, and subject to the availability of funding, the State of Alabama intends to

exercise its responsibilities under this Settlement Agreement with the goal of achieving

this objective.

## VI.    <u>THE SAVANNAH ENVIRONMENTAL RESPONSE TRUST</u>

      27.     On the Effective Date, and simultaneously with receipt of the

payments to the Savannah Trust Accounts under Paragraph 38, Debtors will transfer all

of their right, title, and interest in the Owned Site located in Savannah, Georgia

("Savannah Site"), the former Titanium Dioxide plants, the Savannah sulfuric acid plant

("Savannah Plant") and all equipment and operations associated with the Savannah

Sulfuric acid plant ("Savannah Acid Business"), and the Savannah gypsum operations and all associated gypsum processing equipment ("Gypsum Operations") in Savannah, Georgia (collectively, "Savannah Facility"), including, without limitation, all of their fee ownership in, all appurtenances, rights, easements, rights-of-way, mining rights (including unpatented mining claims, mill site claims, and placer claims), mineral rights, mineral claims, appurtenant groundwater rights, associated surface water rights, claims, and filings, permits, licenses, third-party warranties and guaranties for equipment or services to the extent tranferable under bankruptcy law, or other interests (including without limitation all fixtures, improvements, and equipment located thereon as of the Effective Date) related to the Savannah Facility, Savannah Working Capital, as defined in Paragraph 28 below, machinery, equipment, fixtures, furniture, computers, tools, parts, supplies, and other tangible personal property necessary to support the operation of the Savannah Facility, to an environmental response trust ("Savannah Trust").  Prior to any conveyance of the Savannah Facility to the Savannah Trust pursuant to this Settlement Agreement, the Debtors and their affiliates shall also reasonably cooperate on an orderly transition of the operations of the Savannah Facility to the Savannah Trustee.  On and after the Effective Date, Debtors and Reorganized Tronox shall have no ownership or other residual interest whatsoever with respect to the Savannah Trust or the Savannah Facility.  The transfer of ownership by the Debtors of any assets or other property shall be a transfer of all of the Debtors' right, title and interests therein, and the transfer (i) shall be as is and where is, with no warranties of any nature; (ii) shall be free and clear of all claims, liens and interests against the Debtors, including liens for the payments of monetary claims, such as property taxes, or other monetary claims asserted or that could

have been asserted in the bankruptcy proceeding, but, subject to the terms of this

Paragraph, shall remain subject to any existing in rem claims that do not secure payment

of monetary claims (such as easements or deed restrictions); (iii) shall be subject to any

rights of United States or the State of Georgia under this Settlement Agreement; and (iv)

shall be accomplished by quitclaim deed, in a form substantially similar to the quitclaim

deed attached as Attachment C to this Settlement Agreement, and/or personal property

bill of sale without warranty, with all such conveyance documents to be agreed to in form

by the Debtors and the trustee of the Savannah Trust ("Savannah Trustee"), provided that

in no event shall the conveyance include any warranty by the grantor by virtue of the

grant document or statutory or common law or otherwise.   Debtors and Reorganized

Tronox hereby disclaim any and all express or implied representations or warranties,

including any representations or warranties of any kind or nature, express or implied, as

to the condition, value or quality of such assets or other property, and specifically

disclaim any representation or warranty of merchantability, usage, suitability or fitness

for any particular purpose with respect to such assets or other property, any part thereof,

the workmanship thereof, and the absence of any defects therein, whether latent or patent,

it being understood that such assets are being acquired "as is, where is," and in their

condition of the Effective Date.   Debtors and Reorganized Tronox, as applicable, will

reasonably cooperate with the United States, the State of Georgia, and the Savannah

Trustee to deliver to the title company (which will cause to be recorded in the appropriate

real property records) the transfer documents as soon as reasonably practicable, but not to

exceed 30 days after the Effective Date.   Debtors shall pay the recording costs and

transfer fees to the title company relating to the title transfers.   Debtors shall pay to the

applicable tax authorities on or prior to the Effective Date all real and personal property

taxes relating to the Savannah Facility due on or before the Effective Date.  Debtors and

the Savannah Trust shall prorate the real and personal property taxes accruing to or

becoming a lien on the Savannah Facility during the calendar year through the Effective

Date, and Debtors shall have paid to the Savannah Trust their pro-rata share of such real

and personal property taxes as of the Effective Date.  If the actual bills for such real and

personal property taxes have not been issued, then such proration shall be based on an

amount equal to such real and personal property taxes for the prior year or tax period,

which shall constitute a final proration and not be subject to further adjustment.  As of the

Effective Date, the Savannah Trust shall be responsible for paying all real and personal

property taxes first coming due following the Effective Date relating to the Savannah

Facility.  Debtors shall execute, or cause to be executed, and record, if necessary, all

necessary releases of any liens or security interests held by any Debtor against the

Savannah Facility.  After Debtors execute this Settlement Agreement, Debtors shall not

further encumber the Savannah Facility or their other interests therein and shall maintain

such properties in a commercially reasonable manner, in accordance with Debtors'

current practices, including the improvements thereon and the fixtures thereto that are

related to ongoing remediation activities in the condition that they exist as of the date of

such execution, except for ordinary wear and tear, casualty and condemnation, and except

to the extent that ongoing environmental activities require otherwise.

      28.   <u>Savannah Working Capital</u>.  The Savannah Working Capital to be

transferred to the Savannah Trust on the Effective Date shall mean all accounts

receivable, inventory, accounts payable, and other current liabilities as of the Effective

Date of the Savannah Acid Business and Gypsum Operations.

        a.      In the event that, as of the Effective Date, the accounts

receivable and inventory of the Savannah Acid Business fail to exceed the current

liabilities of the Savannah Acid Business by $2,000,000.00, the Debtors shall make a

payment to the Savannah Trust in the amount of the difference, which payment shall not

be subject to repayment.

        b.      Debtors shall prepare and deliver to the Savannah Trustee

a statement setting forth Debtors' Savannah Working Capital as of the Effective Date

("Savannah Working Capital Statement").  The Savannah Working Capital Statement

shall be subject to the review of the Savannah Trustee, and the Savannah Trustee may in

good faith dispute any items set forth on the Savannah Working Capital Statement (or

specific calculations or methods contemplated thereby).  If the Savannah Trustee in good

faith disputes the Savannah Working Capital amount, then the Savannah Trustee and

Debtors shall reasonably cooperate and negotiate in good faith to resolve any dispute.

        c.      In addition to the Savannah Working Capital and the

payment (if any) referred to in Subparagraph 28(a), Reorganized Tronox shall also

provide the Savannah Trust (or such Savannah Trust-Owned Entity as may operate the

Savannah Acid Business) a $500,000.00 line of credit available as of the Effective Date.

Debtors, Reorganized Tronox, and the Savannah Trust shall enter into an agreement

("Line of Credit Agreement") reflecting this line of credit on or before the Effective Date,

which agreement must be acceptable in form and substance to the United States, the State

of Georgia and Reorganized Tronox.  The material terms of the Line of Credit Agreement

shall be the following:  The Savannah Trust or Savannah Trust-Owned Entity, with the

consent of the United States and the State of Georgia, may draw upon this line of credit

without need to consult with, or obtain consent from, Reorganized Tronox or any other

party but must provide reasonable advanced written notice.  The line of credit will be

secured by $500,000.00 of accounts receivable of the Savannah Acid Business and will

carry no interest unless required by law to create such line.  In such an event, the lowest

interest rate required by law will be used.  The maximum draw on the line of credit

("Maximum Draw") shall be reduced as follows: (i) on the Effective Date, $500,000.00;

(ii) one month after the Effective Date, $450,000.00; (iii) two months after the Effective

Date, $250,000.00; (iv) three months after the Effective Date: $125,000.00; (v) four

months after the effective date and thereafter: $0.  Reorganized Tronox's security interest

in the accounts receivable shall be reduced to the greater of the amount of the Maximum

Draw or the amount due and payable at any point in time.  The outstanding draw on the

line of credit in excess of the Maximum Draw on any given date shall be immediately

due and payable.  If the Savannah Trust defaults on this obligation, a reasonable rate of

interest (to be agreed in the Line of Credit Agreement) on the amount in excess of the

Maximum Draw running from the date of such default shall be added to the amount due.

Reorganized Tronox, the Savannah Trust and any other parties to the Line of Credit

Agreement reserve the right to enforce the terms of the Line of Credit Agreement.

        d.      During the six months beginning on the Effective Date,

the Savannah Trustee may, with the consent of the United States and the State of

Georgia, make one or more transfers of up to a total of $2,000,000.00 from the Savannah

Trust Administrative Account to serve as start-up working capital for the Savannah Acid

Business and/or Gypsum Operations.  The Savannah Trustee shall only transfer such

funds to the extent that it concludes (a) the Savannah Working Capital and the funds

available under the Line of Credit Agreement are insufficient to operate the Savannah

Acid Business and/or Gypsum Operations; (b) such transfer is necessary to allow for the

ongoing operations of the Savannah Acid Business and/or the Gypsum Operations; and

(c) such transfer is in the best interests of the long-term remediation of the Savannah

Facility.  Unless the United States and the State of Georgia otherwise agree, the Savannah

Trust shall return such funds to the Savannah Trust Administrative Account from positive

cash flows (in addition to cash necessarily retained for future operations) generated from

the Savannah Acid Business and/or Gypsum Operations no later than a date six months

after the last transfer authorized by the first sentence of this subparagraph (the

"Repayment Date").  To the extent such cash flows are insufficient to allow the Savannah

Trust to return the entire amount of such funds by the Repayment Date, the funds shall be

returned to the extent that cash flows allow by the Repayment Date and the remainder of

such funds shall be returned as soon thereafter as additional cash flows become available.

   29. <u>Savannah Plant Operations</u>:  In furtherance of the purposes of the

Savannah Trust, the Savannah Trustee shall determine whether the creation of a limited

liability company or similar entity in which the Savannah Trust is at least an 80% owner

("Savannah Trust-Owned Entity") is necessary to safeguard the Savannah Trust Accounts

and the Savannah Trust Assets other than the Savannah Acid Business.  If created, the

Savannah Trust-Owned Entity shall own and/or operate, as appropriate, the Savannah

Acid Business for the benefit of the Savannah Trust in the Trust's performance of

required Environmental Actions at the Savannah Facility.  Any liabilities of the Savannah

Trust-Owned Entity shall be satisfied only by assets of the Savannah Trust-Owned Entity, and creditors of the Savannah Trust-Owned Entity shall look only to the assets of the Savannah Trust-Owned Entity for satisfaction of any liabilities thereof.  For avoidance of doubt, under no circumstances may any creditor of the Savannah Trust-Owned Entity look to the Savannah Trust Administrative Account or Savannah Trust Environmental Cost Account for satisfaction of any liabilities of the Savannah Trust-Owned Entity.

        a.      The Savannah Trustee shall transfer the positive cash flow of the Savannah Acid Business, net of the costs of the Savannah Acid Business (including reasonable payments to any contract operator of the Savannah Plant or pro rata sharing of profits with any equity investor in the Savannah Trust-Owned Entity, as applicable), and net of cash necessarily retained for future operations, to the Savannah Trust Accounts to fund the performance of required Environmental Actions at the Savannah Facility, with such funds to be allocated between the Savannah Trust Environmental Cost Account and the Savannah Trust Administrative Account in a proportion to be approved in writing by the Lead and Non-Lead Agencies.

        b.      The Savannah Trustee shall enter into an operating agreement ("Savannah Operating Agreement") that shall govern any operations of the Savannah Plant and the Savannah Acid Business.  The Savannah Operating Agreement shall be subject to the approval of the Lead and Non-Lead Agencies.  The Savannah Operating Agreement shall provide that any operator of the Savannah Plant, including each of its members, shareholders, and any contract operator of the Savannah Plant, shall:

        i.      Exercise due care at the Savannah Facility with respect to preexisting contamination by preventing or  limiting

human exposure to the preexisting contamination, provided that the parties to the Settlement Agreement agree that the exercise of due care shall not include any Environmental Action required to remediate the preexisting contamination; and

ii.    Comply with all applicable federal, state, and local laws and regulations, including, but not limited to, financial assurance requirements, with respect to its operations at the Savannah Plant after the Effective Date.

c.    Nothing herein shall require the Savannah Trust-Owned Entity, or its members, shareholders, or any contract operator to take or assume any liability for any Environmental Action with respect to the remediation of any preexisting contamination.  Notwithstanding the foregoing, nothing herein shall affect any obligation or liability the Savannah Trust-Owned Entity, its members, shareholders, or any contract operator may have by law or agreement with respect to (i) any new contamination resulting from Savannah Acid Business after the Effective Date; or (ii) any exacerbation of preexisting contamination, to the extent of exacerbation only.  Additionally, in the event that new contamination from the Savannah Acid Business or its exacerbation of preexisting contamination cannot be distinguished from preexisting contamination or commingles with preexisting contamination to create an indivisible harm, then nothing herein shall affect any obligation or liability the Savannah Trust-Owned Entity, its members, shareholders, or any contract operator may have for Environmental Actions required to remediate such indistinguishable contamination or indivisible harm.

d.    The protections from liability provided by this Settlement Agreement to the Savannah Trust-Owned Entity and its members, shareholders, or any entity contracting with the Savannah Trust-Owned Entity to operate the Savannah Plant shall not apply to any act, omission, condition, status, or potential liability relating to the Savannah Site arising or occurring after any sale or transfer of the Savannah Plant

PAGE 61

ownership or operation to any entity that is not a Savannah Trust-Owned Entity.  In the

event that, by virtue of a reduction of the Savannah Trust's ownership interest in an

entity, an entity that once qualified as a Savannah Trust-Owned Entity ceases thereafter

to so qualify, such protections from liability shall not apply to any act, omission,

condition, status, or potential liability relating to the Savannah Site arising or occurring

after the date when the entity ceases to qualify as a Savannah Trust-Owned Entity.

30.    At any time prior to or as of the Effective Date, with the joint

consent of the United States and the State of Georgia, the Debtors may sell some or all of

the Savannah Facility, including but not limited to the Savannah Acid Business or

Gypsum Operations, to a third party in connection with the Plan of Reorganization

("Savannah Sale").  In the event that any such Savannah Sale involves a transfer of less

than the Savannah Trust's entire interest in the Savannah Acid Business, the proceeds of

the sale shall be added to the Savannah Trust Environmental Cost Account or the

Savannah Trust Administrative Account, in a proportion to be agreed by the United

States and the State of Georgia.  In the event that any such Savannah Sale involves a

transfer of the Savannah Trust's entire interest in the Savannah Acid Business, the United

States, the State of Georgia, and Debtors shall jointly move the Court to amend this

Settlement Agreement to do the following:

a.    Create a Savannah Trust Environmental Cost Account

within the Multistate Trust;

b.    Re-allocate all funds currently allocated to the Savannah

Trust Environmental Cost Account and Savannah Trust Administrative Account to the

new Multistate Trust Savannah Environmental Cost Account and the Multistate Trust

Administrative Account, in a proportion to be agreed by the United States and the State

of Georgia;

        c.        Allocate all proceeds of the Savannah Sale to the new

Multistate Trust Savannah Environmental Cost Account and the Multistate Trust

Administrative Account, in a proportion to be agreed by the United States and the State

of Georgia; and

        d.        Make such other conforming changes as the United States

and the State of Georgia jointly believe necessary to transfer all functions of the

Savannah Trust to the Multistate Trust and to eliminate the Savannah Trust.

        31.    <u>Savannah Consent Decree</u>: With respect to the Consent Decree for

the Savannah Facility between the United States and Tronox Pigments (Savannah) Inc.,

*United States v. Tronox Pigments (Savannah) Inc.*, No. CV 408-259 (S.D. Ga.)

("Savannah Consent Decree"), the United States and Tronox Pigments (Savannah) Inc.

will file papers with the District Court for the Southern District of Georgia ("Georgia

Federal Court") to substitute the Savannah Trust for Tronox Pigments (Savannah) Inc. as

a party to the Savannah Consent Decree after the Effective Date for all purposes, except

for the following limitations:

        a.        Notwithstanding any contrary provision in the Savannah

Consent Decree, the Savannah Trust shall have no obligation under the Savannah

Consent Decree in excess of the assets in the Savannah Trust Environmental Cost

Account.

b.      Notwithstanding any contrary provision in the Savannah Consent Decree, the Savannah Trust shall not be liable for any penalties provided for in the Savannah Consent Decree.

c.      Notwithstanding the provisions of this Subparagraph, it shall be a purpose of the Savannah Trust to comply fully with all applicable provisions of the Savannah Consent Decree to the extent funding permits.  Notwithstanding any contrary provision in the Savannah Consent Decree, it shall not be deemed a violation of the Savannah Consent Decree for the Savannah Trust to fail to expend funds on a lower priority project (as described in the following sentence), when that failure is reasonable in light of a higher priority project.  Highest priority projects are those relating to Site maintenance, including well abandonment, plant ditch system, Deptford Tract, and berm and stormwater maintenance; second priority projects are those related to completion of the Clean Water Act remediation described in Paragraphs 43 to 45 and Appendix B of the Savannah Consent Decree; third priority projects are those related to the RCRA corrective action measures described in Paragraphs 36 to 42 of the Savannah Consent Decree; fourth priority projects are all other projects.  Nothing in this Subparagraph shall affect the budget process described in Paragraph 39 below, or be construed as a limitation on the Savannah Trust's ability to propose, and the Lead Agency's ability to approve, a budget containing terms inconsistent with the priorities listed above; provided, however, that the protection from a finding of violation of the Savannah Consent Decree contained in this Subparagraph applies only under the circumstances described in the second and third sentences of this Subparagraph.

d.      Notwithstanding any contrary provision in the Savannah Consent Decree, the Savannah Trust need not comply with Paragraphs 22 to 35 of the Savannah Consent Decree, relating to the CAA, except insofar as the Savannah Trust should resume operations of a titanium dioxide plant at the Savannah Site.

e.      Notwithstanding any contrary provision in the Savannah Consent Decree, the Savannah Trust need not comply with Paragraph 40 of the Savannah Consent Decree, regarding financial assurance.

32.      The United States, the State of Georgia, the Savannah Trustee, Debtors, and Reorganized Tronox agree that the request for substitution of the Savannah Trustee as party to the Savannah Consent Decree subject to the limitations described in Subparagraphs 31(a)-(e) is authorized by Paragraphs 6, 7, 21, and 82 of the Savannah Consent Decree, without the need for further modification of that decree.  To the extent that further modification of the Savannah Consent Decree nonetheless proves necessary to effect this substitution, and the limitations thereto, the United States and the Savannah Trustee (and, if necessary under the circumstances, Debtors and Reorganized Tronox), after conferring with the State of Georgia, agree to submit an appropriate request for modification to the Georgia Federal Court to Paragraph and Subparagraphs 31(a)-(e). Further, if it appears that other modifications to the Savannah Consent Decree may be necessary or appropriate in light of the purpose and funding of the Savannah Trust, the United States, the State of Georgia, and the Savannah Trustee agree (and, if necessary under the circumstances, Debtors and Reorganized Tronox) to negotiate in good faith concerning the terms of any such modifications and the United States and the Savannah

Trust (and, if necessary under the circumstances, Debtors and Reorganized Tronox) agree to seek any agreed modifications from the Georgia Federal Court.

33.    Notwithstanding the substitution of the Savannah Trust for Tronox Pigments (Savannah) Inc., Tronox Pigments (Savannah) Inc. and its successors shall be bound by any releases or covenants not to sue contained in the Savannah Consent Decree.

34.    The purpose of the Savannah Trust shall be to: (i) own the Savannah Facility; (ii) carry out administrative and property management functions related to the Savannah Facility; (iii) manage and/or fund implementation of future Environmental Actions approved by the Lead Agency with respect to the Savannah Facility; (iv) to act as a substituted party under the Savannah Consent Decree, as set forth in Paragraph 31 above; (v) fulfill other obligations as set forth in this Settlement Agreement; (vi) pay certain future oversight costs; (vii) to operate and/or liquidate the Savannah Acid Business and Gypsum Operations so as to make available to the Savannah Trust Accounts the maximum funding possible (provided that the Savannah Trustee may retain sufficient cash in the Savannah Acid Business and Gypsum Operations to ensure the continued viability of future operations); and (viii) ultimately sell, transfer, or otherwise dispose or facilitate the reuse of all or part of the Savannah Trust Assets, if possible, all as provided herein.  The sale, lease or other disposition of some or all of the Savannah Trust Assets by the Savannah Trust, and the creation of any Savannah Trust-Owned Entity, shall be permitted only with the approval of the Lead and Non-Lead Agencies.  The Savannah Trust shall be funded as specified in Paragraph 38 herein.

35.     The Savannah Trust by and through its Savannah Trustee not individually but solely in its representative capacity, Debtors, and the Lead Agency for the Savannah Facility shall exchange information and reasonably cooperate to determine the appropriate disposition of any executory contracts or unexpired leases that relate to the relevant Site; provided, however, that the Savannah Trust shall not be required to take assignment of any executory contract or unexpired lease without the consent of the Savannah Trustee.  Debtors shall cooperate with the Savannah Trust with the prompt and orderly delivery of all executory contracts and unexpired leases and take such action with respect to such contracts and leases as the Lead Agency and the Savannah Trust may reasonably request.

36.     Greenfield Environmental Savannah Trust, LLC, not individually but solely in its representative capacity as Savannah Trustee, is appointed as the Savannah Trustee to administer the Savannah Trust and the Savannah Trust Accounts, in accordance with this Settlement Agreement and an Environmental Response Trust Agreement ("Savannah Trust Agreement") materially consistent with the Settlement Agreement to be separately executed by parties.

37.     Debtors and Reorganized Tronox shall provide to the Savannah Trustee Environmental Information and Real Property Information in accordance with Section XIX below.

38.     <u>Savannah Trust Accounts</u>

a.     The Savannah Trustee shall create a segregated Savannah Trust account ("Savannah Trust Environmental Cost Account") within the Savannah Trust for the Savannah Facility.  The purpose of the Savannah Trust Environmental Cost

Account shall be to provide funding for future Environmental Actions and certain future

oversight costs of the Governments included in the approved budget set forth in

Subparagraph 39(b) below with respect to the Savannah Facility.  Funding from the

Savannah Trust Environmental Cost Account may not be used for any other Owned Site

or Non-Owned Site, except as otherwise expressly provided by and in accordance with

Subparagraph 40(a) below.  The payments set forth in this Subparagraph shall for

purposes of the Bankruptcy Cases be accorded the status of expenses of administration.

        b.      The Savannah Trustee shall also create a segregated

administrative account ("Savannah Trust Administrative Account") to fund the payment

of real estate taxes, income taxes (to the extent applicable), insurance, and other

Administrative Costs.

        c.      Assets of the Savannah Trust Environmental Cost

Account and Savannah Trust Administrative Account (collectively, the "Savannah Trust

Accounts") shall be held in trust solely for the purposes provided in this Settlement

Agreement.  The United States and the State of Georgia shall be the sole beneficiaries of

the Savannah Trust and the Savannah Trust Accounts.  Neither Debtors nor Reorganized

Tronox shall have any rights or interest to the Savannah Trust Assets, or to any funds

remaining in any of the Savannah Trust Accounts upon the completion of any and all

final actions and disbursement of any and all final costs with respect to the Savannah

Facility.

        d.      All interest, dividends and other revenue earned in a

Savannah Trust Account shall be retained in the respective Savannah Trust Account and

used only for the same purposes as the principal in that account as provided in this

Settlement Agreement, subject to any reallocation approved by the United States and the State of Georgia in accordance with the terms of this Settlement Agreement.

e.      In settlement and full satisfaction of all claims of the United States on behalf of the US EPA and the State of Georgia against Debtors and Reorganized Tronox with respect to any and all costs of response incurred, or to be incurred, and any and all penalties incurred in connection with the Savannah Facility (including but not limited to the liabilities and other obligations asserted in the United States' and the State of Georgia's Proofs of Claim relating to the Savannah Facility), the Savannah Trust shall receive allocations of specified percentages of the Anadarko Litigation as set forth in Subparagraph 124(d) below, and Debtors shall make payments on the Effective Date as set forth in Subparagraphs 38(e)(i)-(iv) below:

i.      payment of $4,182,664.00 on the Effective Date to fund the Savannah Trust Administrative Account;

ii.      payment of $2,924,691.00 on the Effective Date to fund future Environmental Actions and certain future oversight costs of GA EPD and US EPA with respect to the Savannah Facility, to be deposited in the Savannah Trust Environmental Cost Account.

iii.      payment of $6,320.00 on the Effective Date in full settlement and satisfaction of the penalty claims of the United States on behalf of US EPA with respect to the Site, to be transferred pursuant to instructions set forth in Paragraph 129 below.

iv.      payment of $632.00 on the Effective Date in full settlement and satisfaction of the past cost claims of the State of Georgia with respect to the Site, to be transferred pursuant to instructions set forth in Subparagraph 131(b) below.

39.    <u>Lead Agency</u>

a.    For purposes of this Settlement Agreement, the Lead Agency with respect to the Savannah Facility is the Georgia Department of Natural Resources, Environmental Protection Division ("GA EPD").  The Non-Lead Agency with respect to the Savannah Facility shall be US EPA.  GA EPD and US EPA may provide the Savannah Trustee with joint written notice that the Lead Agency for the Savannah Facility has changed.

b.    Within 90 days following the Effective Date in the first year and thereafter by January 1 of each year following the Effective Date, the Savannah Trustee shall provide to the Lead Agency for the Savannah Facility, a statement showing the balance of the Savannah Trust Environmental Cost Account and proposed budget for the coming year.  The Lead Agency shall have the authority to approve or disapprove the proposed budget for the Savannah Trust Environmental Cost Account, but only after consultation with the Non-Lead Agency where the Non-Lead Agency requests such consultation.

c.    The Savannah Trustee shall pay funds from the Savannah Trust Environmental Cost Account to the Lead Agency making a written request for funds for reimbursement within 30 days following such request.  Such written request shall: (i) be in accordance with the approved budget set forth in Subparagraph 39(b) above, and (ii) shall specify what the funds were used for and shall certify that they were used only for Environmental Actions performed and/or oversight costs incurred after the Effective Date by the Lead Agency with respect to the Savannah Facility.

        d.      The Savannah Trustee shall also pay funds from the Savannah Trust Environmental Cost Account to the Non-Lead Agency making a written request for funds within 30 days following such request where the Lead Agency has requested the assistance of the Non-Lead Agency with respect to the Savannah Facility. Such written request shall: (i) be in accordance with the approved budget set forth in Subparagraph 39(b) above, and (ii) shall specify what the funds were used for and shall certify that they were used only for Environmental Actions performed and/or oversight costs incurred after the Effective Date by the Non-Lead Agency with respect to the Savannah Facility.

        e.      In the case of requests by the Lead Agency to the Savannah Trustee to use the funds from the Savannah Trust Environmental Cost Account to perform Environmental Actions in accordance with the approved budget set forth in Subparagraph 39(b) above, the Savannah Trustee shall utilize the funds and interest earned thereon from that Savannah Trust Environmental Cost Account to undertake such work promptly and in accordance with any schedule approved by the Lead Agency. The Savannah Trustee shall seek the approval of the Lead Agency of any contractor hired by the Savannah Trustee and any work plans to be undertaken by the Savannah Trust under the oversight of the Lead Agency, unless the Lead Agency has provided a written waiver of such approval or requirements. The Savannah Trustee shall require liability insurance as set forth in the Savannah Trust Agreement from each contractor hired to perform work.

40.    <u>Transfers of Funds from the Savannah Trust Accounts</u>

a.    After the United States and the State of Georgia have

confirmed to the Savannah Trustee that all final actions have been completed, and all

final costs have been disbursed for the Savannah Facility, any funds remaining in the

Savannah Environmental Cost Account shall be transferred in the following order: (i)

first, in accordance with instructions to be provided by the United States Department of

Justice and the relevant States, to the Henderson Trust Environmental Cost Account, any

of the Cimarron Trust Environmental Cost Accounts, any of the West Chicago Trust

Environmental Cost or Work Accounts, or any of the Multistate Trust Environmental

Cost or Work Accounts if there are remaining Environmental Actions to be performed at

the Owned Funded Sites, the Non-Owned Service Stations, the Non-Owned RAS

Properties or Kress Creek, and a need for additional trust funding, with the allocation

among such Environmental Cost or Work Accounts to be determined by the projected

shortfall of performing such remaining Environmental Actions; (ii) second, to Non-

Owned Sites with a need for additional funding beyond the distributions received

pursuant to Paragraph 117 and from the Anadarko Litigation Proceeds; and (iii) third, to

the Superfund.

b.    Annually, beginning with the first year after the Effective

Date, the Savannah Trustee shall provide the United States and the State of Georgia with

an update of anticipated future Administrative Costs of the Savannah Trust.  The United

States Department of Justice may thereafter instruct in writing after consultation with the

State of Georgia and the Savannah Trustee that any conservatively projected surplus

funding in the Savannah Trust Administrative Account be transferred to the Savannah

Trust Environmental Cost Account established under this Settlement Agreement if there are remaining actions to be performed and with a need for additional trust funding or, to the extent there are no such remaining actions, as described in clauses (i)-(iii) in the immediately preceding Subparagraph.  The Lead Agency and the Non-Lead Agency may also instruct in writing after consultation with the Savannah Trustee that, if there is an anticipated shortfall in the Savannah Trust Administrative Account based on anticipated future Administrative Costs of the Savannah Trust, funds from the Savannah Trust Environmental Cost Account may be transferred to the Savannah Trust Administrative Account.

41.     Debtors shall continue, at their own expense, to maintain the Savannah Acid Business and Gypsum Operations, and ongoing environmental activities being performed by Debtors pursuant to injunctive, compliance, and regulatory obligations and requirements at the Savannah Facility until the Effective Date, including, but not limited to, environmental monitoring activities; provided, however, if unanticipated environmental activities are required to be performed by Debtors prior to the Effective Date, Debtors will cooperate with the Lead Agency in determining a commercially reasonable course of action.

42.     Savannah Trust Miscellaneous Provisions

a.     The Savannah Trustee shall at all times seek to have the Savannah Trust treated as a "qualified settlement fund" as that term is defined in Treasury Regulation section 1.468B-1.  For purposes of complying with Section 468B(g)(2) of the Internal Revenue Code of 1986, as amended, this Settlement Agreement shall constitute a Consent Decree between the parties.  Approval of the Court,

as a unit of the District Court, shall be sought, and the Court shall retain continuing

jurisdiction over the Savannah Trust and Savannah Trust Accounts sufficient to satisfy

the requirements of Treasury Regulation section 1.468B-1.  The Savannah Trustee shall

cause any taxes imposed on the earnings of the Savannah Trust, if any, to be paid out of

such earnings and shall comply with all tax reporting and withholding requirements

imposed on the Savannah Trust under applicable tax laws.  The Savannah Trustee shall

be the "administrator" of the Savannah Trust pursuant to Treasury Regulation section

1.468B-2(k)(3).  To the extent that the Debtors choose to make a Grantor Trust Election

with respect to the Savannah Trust, the Savannah Trustee shall provide reasonable

cooperation to the Debtors as needed to facilitate such election.  For the avoidance of

doubt, any such Grantor Trust Election is for tax purposes only and shall in no way affect

the substantive rights and obligations of the parties under this Settlement Agreement or

the Savannah Trust Agreement.

> b.    The Savannah Trustee shall use the Savannah Trust

Environmental Cost Account to fund future Environmental Actions and certain future

oversight costs with respect to the Savannah Facility.  The Savannah Trustee shall use the

Savannah Trust Administrative Account to fund the Administrative Costs of the

Savannah Trust that have been approved by the United States and the Lead Agency of the

Savannah Facility.

> c.    The administrative funds within the Savannah Trust

Administrative Account shall be used by the Savannah Trustee for Administrative Costs.

Within 90 days following the Effective Date in the first year and thereafter by January 1

of each year, the Savannah Trustee shall provide GA EPD and US EPA with an annual

budget for administration of the Savannah Trust for review and approval or disapproval by the United States and the Lead Agency.

         d.      In no event shall any of the Savannah Trust Parties be held liable to any third parties for any liability, action, or inaction of any other party, including Debtors or any other Savannah Trust Party.

         e.      The Savannah Trustee shall implement any institutional controls or deed restrictions requested by GA EPD and US EPA with respect to any portion of the Savannah Facility.  Additionally, the Savannah Trustee shall abide by the terms of any institutional controls or deed restrictions in place or of record as to the Savannah Facility.

         f.      In the event that the Court finds that the Savannah Trustee in any material respect, as a result of its negligence, exacerbates or aggravates hazardous conditions at the Savannah Facility, is seriously or repeatedly deficient or late in performance of the work or violates the provisions of this Settlement Agreement, the Savannah Trust Agreement or other related implementation agreements, the United States and the State of Georgia may jointly direct that: (i) the Savannah Trustee be replaced in accordance with the Savannah Trust Agreement or (ii) all remaining funds and future recoveries in the Savannah Trust be paid to US EPA or to GA EPD to be used in accordance with the terms of this Settlement Agreement.

         g.      The Savannah Trustee may resign from its trusteeship generally, and without cause, by giving not less than 120 days prior written notice thereof to the Court, the United States, and the State of Georgia.

h.      The Savannah Trust is intended to be governed by the terms of this Settlement Agreement and the Savannah Trust Agreement and shall not be subject to any provision of the Uniform Custodial Trust Act as adopted by any state, now or in the future.

43.      The Savannah Trustee shall provide the United States and the State of Georgia and their representatives and contractors access to all portions of the Savannah Facility that the Savannah Trust owns at all reasonable times for the purposes of conducting Environmental Actions at or near the Savannah Facility.  The Savannah Trustee shall execute and record with the appropriate recorder's office any easements or deed restrictions requested by the United States or the State of Georgia for restrictions on use of the Savannah Facility in order to protect public health, welfare or safety or the environment or ensure non-interference with or protectiveness of any action.  Any existing easements or deed restrictions of record as to the Savannah Facility prior to the Effective Date of this Settlement Agreement shall survive the Settlement Agreement.

44.      The United States or the State of Georgia may at any time propose in writing to take ownership of the Savannah Facility or any part thereof.  Any such proposed transfer and the terms thereof are subject to approval in writing by US EPA and the GA EPD after consultation with the Savannah Trustee.  However, neither the United States nor the State of Georgia shall be required to accept an ownership interest in the Savannah Facility or any part thereof upon termination of the Savannah Trust.

45.      Subject to the approval of US EPA and GA EPD, to the extent otherwise consistent with this Agreement, the Savannah Trustee may propose a sale, lease, or disposition of the Savannah Facility that includes funding from, or the retention

of some portion of liability by, the Savannah Trust Environmental Cost Account,

provided that the net effect of any proposed sale, lease or disposition is to lessen the total

financial obligations and liabilities as would otherwise be incurred in the absence of any

such sale, lease, or disposition.  Any lease shall contain customary provisions relating to

indemnity by a tenant with respect to the operation of the tenant at the leased property

following the Effective Date.  In the event of any approved sale or lease or other

disposition under this Paragraph, any net proceeds from the sale or lease or other

disposition shall be paid to the Savannah Trust Environmental Cost Account and/or the

Savannah Trust Administrative Account in a proportion approved by US EPA and GA

EPD in writing.

       46.      None of the Savannah Trust Parties shall be personally liable

unless the Court, by a final order that is not reversed on appeal, finds that it committed

fraud or willful misconduct after the Effective Date in relation to the Savannah Trustee's

duties.  There shall be an irrebuttable presumption that any action taken or not taken with

the approval of the Court does not constitute an act of fraud or willful misconduct.  Any

judgment against a Savannah Trust Party and any costs of defense relating to any

Savannah Trust Party shall be paid from the Savannah Trust Environmental Cost

Account, or the Savannah Trust Administrative Account without the Savannah Trust

Party having to first pay from its own funds for any personal liability or costs of defense

unless a final order of the Court that is not reversed on appeal, determines that it

committed fraud or willful misconduct in relation to the Savannah Trust Party's duties.

However, any judgment shall be limited to funds in the Savannah Trust Environmental

Cost Account or the Savannah Trust Administrative Account.

47.    The Savannah Trust Parties are exculpated by all persons, including without limitation, holders of claims and other parties in interest, of and from any and all claims, causes of action and other assertions of liability arising out of the ownership of Savannah Trust Assets and the discharge of the powers and duties conferred upon the Savannah Trust and/or Trustee by this Settlement Agreement or any order of court entered pursuant to or in furtherance of this Settlement Agreement, or applicable law or otherwise.  No person, including without limitation, holders of claims and other parties in interest, will be allowed to pursue any claims or cause of action against any Savannah Trust Party for any claim against Debtors, for making payments in accordance with this Settlement Agreement or any order of court, or for implementing the provisions of this Settlement Agreement or any order of court.  Nothing in this Paragraph or the Settlement Agreement shall preclude the United States or the State of Georgia from enforcing the terms of this Settlement Agreement against the Savannah Trust Parties.

48.    Except as may otherwise be provided herein: (a) the Savannah Trust Parties may rely conclusively on, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties; (b) the Savannah Trust Parties may, on behalf of the Savannah Trust or on their own behalf in their capacity as Savannah Trust Parties, consult with legal counsel, financial or accounting advisors and other professionals and shall not be personally liable for any action taken or not taken in accordance with the advice thereof; and (c) persons and entities dealing with the Savannah Trust Parties shall look only to the Savannah Trust Assets that may be

available to them consistent with this Settlement Agreement to satisfy any liability

incurred by the Savannah Trust Parties to such person in carrying out the terms of this

Settlement Agreement or any order of the Court, and the Savannah Trust Parties shall

have no personal obligations to satisfy any such liability other than as provided in

Paragraph 46.

49.    Neither the United States, the State of Georgia, nor any of Debtors

or Reorganized Tronox shall be deemed to be an owner, operator, trustee, partner, agent,

shareholder, officer, or director of the Savannah Trust or the Savannah Trust Parties, or to

be an owner or operator of the Savannah Facility or any other Savannah Trust Assets on

account of this Settlement Agreement or actions contemplated thereby.

## VII.    THE CIMARRON ENVIRONMENTAL RESPONSE TRUST

50.    On the Effective Date, and simultaneously with receipt of the

payments to the Cimarron Trust Environmental Cost Accounts under Paragraph 55, the

creation of a standby trust fund for the benefit of NRC ("Cimarron Standby Trust Fund")

and the transfer of the funds from the Irrevocable Standby Letter of Credit ("Cimarron

LOC") to the Cimarron Standby Trust Fund under Subparagraph 55(e), Debtors will

transfer all of their right, title, and interest in and to, including, without limitation, all of

their fee ownership in, all appurtenances, rights, easements, rights-of-way, mining rights

(including unpatented mining claims, mill site claims, and placer claims), mineral rights,

mineral claims, appurtenant groundwater rights, associated surface water rights, claims,

and filings, permits, licenses, third-party warranties and guaranties for equipment or

services to the extent transferable under bankruptcy law, or other interests (including

without limitation all fixtures, improvements, and equipment located thereon as of the

Effective Date) related to the Owned Site located in Cimarron, Oklahoma ("Cimarron

Site") to an environmental response trust ("Cimarron Trust").  On and after the Effective

Date, Debtors and Reorganized Tronox shall have no ownership or other residual interest

whatsoever with respect to the Cimarron Trust, the Cimarron Standby Trust Fund or the

Cimarron Site.  The transfer of ownership by the Debtors of any such assets or other

property shall be a transfer of all of the Debtors' right, title and interests therein, and the

transfer (i) shall be as is and where is, with no warranties of any nature; (ii) shall be free

and clear of all claims, liens and interests against the Debtors, including liens for the

payments of monetary claims, such as property taxes, or other monetary claims asserted

or that could have been asserted in the bankruptcy proceeding, but shall remain subject to

any existing in rem claims that do not secure payment of monetary claims (such as

easements or deed restrictions); (iii) shall be subject to any rights of the United States and

the State of Oklahoma under this Settlement Agreement; and (iv) shall be accomplished

by quitclaim deed, in a form substantially similar to the quitclaim deed attached as

Attachment C to this Settlement Agreement, and/or personal property bill of sale without

warranty, with all such conveyance documents to be agreed to in form by the Debtors and

the trustee of the Cimarron Trust ("Cimarron Trustee"), provided that in no event shall

the conveyance include any warranty by the grantor by virtue of the grant document or

statutory or common law or otherwise.   Debtors and Reorganized Tronox hereby

disclaim any and all express or implied representations or warranties, including any

representations or warranties of any kind or nature, express or implied, as to the

condition, value or quality of such assets or other property, and specifically disclaim any

representation or warranty of merchantability, usage, suitability or fitness for any

particular purpose with respect to such assets or other property, any part thereof, the

workmanship thereof, and the absence of any defects therein, whether latent or patent, it

being understood that such assets are being acquired "as is, where is," and in their

condition as of the Effective Date.   Debtors and Reorganized Tronox, as applicable, will

reasonably cooperate with the United States (including NRC), the State of Oklahoma, and

the Cimarron Trustee to deliver to the title company (which will record or cause to be

recorded in the appropriate real property records) the transfer documents as soon as

reasonably practicable, but not to exceed 30 days after the Effective Date.  Debtors shall

pay the recording costs to the title company related to the title transfers.  Debtors shall

pay to the applicable tax authorities on or prior to the Effective Date all real property

taxes relating to the Cimarron Site due on or before the Effective Date.  Debtors and the

Cimarron Trust shall prorate the real property taxes accruing to or becoming a lien on the

Cimarron Site during the calendar year of the Effective Date, and Debtors shall have paid

to the Cimarron Trust their pro-rata share of such real property taxes as of the Effective

Date.  If the actual bills for such real property taxes have not been issued, then such

proration shall be based on an amount equal to such real property taxes for the prior year

or tax period, which shall constitute a final proration and not be subject to further

adjustment.  As of the Effective Date, the Cimarron Trust shall be responsible for paying

all real property taxes first coming due following the Effective Date relating to the

Cimarron Site.  Debtors shall execute, or cause to be executed, and record, if necessary,

all necessary releases of any liens or security interests held by any Debtors against the

Cimarron Site.  After Debtors execute this Settlement Agreement, Debtors shall not

further encumber the Cimarron Site or their other interests therein and shall maintain the

property in a commercially reasonable manner, in accordance with Debtor's current

practices, including the improvements thereon and the fixtures thereto that are related to

ongoing remediation activities in the condition that they exist as of the date of such

execution, except for ordinary wear and tear, casualty and condemnation, and except to

the extent that ongoing environmental activities require otherwise.

51.    <u>License Order</u>

a.    On or before the Effective Date, with the approval of

NRC and in accordance with the Atomic Energy Act, and applicable regulations in 10

C.F.R. Part 70, the Radioactive Materials License SNM-928 held by Cimarron

Corporation (the "Cimarron License") shall either: (i) be transferred to the Cimarron

Trust; (ii) be transferred to the Cimarron Trustee identified in Paragraph 53; or (iii) be

transferred to a person or entity retained by the Cimarron Trustee and approved by NRC

to hold the Cimarron License ("Cimarron Licensee"), pursuant to an Order Transferring

License ("License Order") issued by the NRC.

b.    The Cimarron Licensee shall be bound by the

requirements of the Cimarron License and applicable regulations, and any future

amendments to or transfers of the Cimarron License must be made in accordance with

applicable federal law and regulations.  Within 120 days after the transfer of the NRC

license, the Cimarron Trustee shall submit for approval to the Deputy Director,

Decommissioning & Uranium Recovery Licensing Directorate, Division of Waste

Management and Environmental Protection, Office of Federal and State Materials and

Environmental Management Programs, and to the Land Protection Division, Oklahoma

Department of Environmental Quality, an evaluation of potential alternative groundwater

remediation technologies.  The evaluation shall include conceptual technical, total cost, cash flow, and schedule information for each approach.  The Cimarron Trustee shall meet with representatives from both agencies within 60 days following submittal of the evaluation to discuss the approaches and obtain regulatory agency concurrence on a groundwater remediation approach.  Within 120 days following NRC and ODEQ concurrence, the Cimarron Trustee shall submit to the same parties a groundwater remediation plan leading to termination of the license and release of the Cimarron Site for unrestricted use.  The groundwater remediation plan shall include a detailed schedule for all remediation activities and a cost estimate for each action.

c.    Upon NRC and ODEQ approval of the remediation plan, the Cimarron Trustee shall commence remediation of the Site pursuant to the terms and conditions of the approved groundwater remediation plan and the Cimarron License.

d.    The Cimarron Trustee shall notify and request relief from the Deputy Director, Decommissioning & Uranium Recovery Licensing Directorate, Division of Waste Management and Environmental Protection, Office of Federal and State Materials and Environmental Management Programs, if the Trustee believes it should be relieved of any requirements in the Cimarron License because the Trustee believes that these requirements are impracticable given the parameters of the Cimarron Trust Agreement or that they have either been satisfactorily completed or are unnecessary.  The Cimarron Trustee will continue to comply with all requirements in the Cimarron License pending NRC review and determination of the Cimarron Trustee's request for relief from specified requirements.

e.      Upon completion of the groundwater remediation and in conformance with the requirements in 10 C.F.R. Part 70 and the conditions set forth in the Cimarron License, the Cimarron Trustee shall demonstrate that the Site meets the criteria for unrestricted release.

52.      The purpose of the Cimarron Trust shall be to: (i) act as successor to Debtors solely for the purpose of performing, managing, and funding implementation of all decommissioning and/or Site control and maintenance activities pursuant to the terms and conditions of the Cimarron License and an NRC-approved decommissioning plan, and all Environmental Actions required under federal or state law; (ii) own the Cimarron Site; (iii) carry out administrative functions related to the performance of work by or on behalf of the Cimarron Site; (iv) fulfill other obligations as set forth in this Settlement Agreement; (v) pay certain regulatory fees and oversight costs; and (vi) ultimately sell, transfer or otherwise dispose or facilitate the reuse of all or part of the Cimarron Trust Assets, if possible, all as provided herein with no objective or authority to engage in any trade or business.  The sale, lease or other disposition of some or all of the Cimarron Trust Assets by the Cimarron Trust shall not be deemed an engagement in any trade or business.  The Cimarron Trust by and through its Cimarron Trustee not individually but solely in its representative capacity, Debtors, and the Lead Agencies for the Cimarron Site shall exchange information and reasonably cooperate to determine the appropriate disposition of any executory contracts or unexpired leases that relate to the Cimarron Site.  The Cimarron Trust shall be funded as specified in Paragraph 55 herein.

53.      Environmental Properties Management, LLC, not individually but solely in its representative capacity as Cimarron Trustee, is appointed as the Cimarron

Trustee to administer the Cimarron Trust and the Cimarron Trust Accounts, in

accordance with this Settlement Agreement and a Cimarron Environmental Response

Trust Agreement ("Cimarron Trust Agreement") materially consistent with the

Settlement Agreement to be separately executed by the parties.

54.     Debtors and Reorganized Tronox shall provide to the Cimarron

Trustee Environmental Information and Real Property Information in accordance with

Section XIX below.

55.     <u>The Cimarron Trust Accounts</u>

a.     The Cimarron Trustee shall create segregated Cimarron

Trust accounts ("Cimarron Trust Environmental Cost Accounts") and a segregated

Cimarron Standby Trust Fund within the Cimarron Trust.  The purpose of the Cimarron

Trust Environmental Cost Accounts and the Standby Trust Fund shall be to provide

funding for future decommissioning activities, Environmental Actions and certain future

regulatory fees and oversight costs of NRC and the State of Oklahoma with respect to the

Cimarron Site.

b.     The Cimarron Trustee shall also create a segregated

Cimarron Trust administrative account ("Cimarron Trust Administrative Account") to

fund the payment of real estate taxes, insurance, and other Administrative Costs.

c.     Assets of the Cimarron Trust Environmental Cost

Accounts, the Cimarron Standby Trust Fund and the Cimarron Trust Administrative

Account (collectively, the "Cimarron Trust Accounts") shall be held in trust solely for the

purposes provided in this Settlement Agreement.  NRC, the State of Oklahoma and US

EPA shall be the sole beneficiaries of the Cimarron Trust Accounts, except for the

Cimarron Standby Trust Fund, to which NRC only shall be the sole beneficiary.  Neither

Debtors nor Reorganized Tronox shall have any rights or interest to the Cimarron Trust

Assets, including but not limited to any funds remaining in any of the Cimarron Trust

Accounts upon the completion of any and all final actions and disbursement of any and

all final costs with respect to the Cimarron Site.

        d.      All interest, dividends and other revenue earned in a

Cimarron Trust Account shall be retained in the respective Cimarron Trust Account and

used only for the same purposes as the principal in that account as provided in this

Settlement Agreement, subject to any reallocation approved by NRC and the State of

Oklahoma, after consultation with US EPA, in accordance with the terms of this

Settlement Agreement.

        e.      In settlement of claims of the United States and the State

of Oklahoma against Debtors and Reorganized Tronox with respect to any and all costs

of decommissioning incurred or to be incurred, and any and all costs of response incurred

and to be incurred in connection with the Cimarron Site (including but not limited to the

liabilities and other obligations asserted in the United States' and Oklahoma's Proofs of

Claim relating to the Cimarron Site), the United States and the State of Oklahoma [or the

Cimarron Trustee (as described below)] shall receive allocations to the Cimarron Site of

specified percentages of the Anadarko Litigation Proceeds as set forth in Subparagraph

124(v).  Debtors shall also make the following payments and, as described more fully in

Subparagraphs 55(e)(i)-(iv) herein and Debtors shall effectuate the transfer of the funds

from the Cimarron LOC on the Effective Date as follows.

      i.      On the Effective Date, Debtors shall make payment of $1,303,889.00 to fund the Cimarron Trust Administrative Account;

      ii.      On the Effective Date, Debtors shall cancel the Cimarron LOC and remit the funds from the Cimarron LOC to the Cimarron Standby Trust Fund already in existence, or to a new Cimarron Standby Trust Fund that may be established by the Cimarron Trustee in accordance with applicable NRC regulations. Furthermore:

      a.      The Standby Trustee for the Cimarron Standby Trust Fund shall make payments from the Cimarron Standby Trust Fund to the Cimarron Trustee pursuant to the terms and conditions set forth in the Standby Trust Agreement;

      b.      The Standby Trustee for the Cimarron Standby Trust Fund is authorized, in consultation with the Cimarron Trustee and the approval of NRC, to transfer from time to time any or all of the assets of the Cimarron Standby Trust Fund to any of the Cimarron Trust Accounts in this Paragraph 55.

      iii.      On the Effective Date, Debtors shall make payment of $6,588,381.00 to fund future decommissioning costs and future regulatory fees of NRC with respect to the Cimarron Site, to be deposited in a Cimarron Trust Environmental Cost Account for Federal activities ("Cimarron Trust Federal Environmental Cost Account"). Funding for the Cimarron Trust Federal Environmental Cost Account shall be held in trust for future decommissioning costs and future regulatory fees of NRC with respect to the Cimarron Site and may not be used for another Site except as otherwise expressly provided by and in accordance with Paragraph 57.

      iv.      On the Effective Date, Debtors shall make payment of $746,114.00 to fund future Environmental Actions and certain future oversight costs of the State of Oklahoma with respect to the Cimarron Site, to be deposited in a Cimarron Trust Environmental Cost Account for State activities ("Cimarron Trust State Environmental Cost Account"). Funding for the Cimarron Trust State Environmental Cost Account shall be held in trust for Environmental Actions with respect to the Cimarron Site and may not be used for another Site except as otherwise expressly provided by and in accordance with Paragraph 57.

56.   <u>Cimarron Lead Agencies</u>:

a.   For purposes of this Settlement Agreement, there shall be two Lead Agencies with respect to the Cimarron Site.  The first Lead Agency is the NRC with respect to the Cimarron Trust Federal Environmental Cost Account and decommissioning and/or Site control and maintenance activities pursuant to the terms and conditions of the Cimarron License.  The second Lead Agency for the Cimarron Site is the Oklahoma Department of Environmental Quality with respect to the Cimarron Trust State Environmental Cost Account and Environmental Actions other than those related to decommissioning, the Cimarron License, or the NRC, and the Non-Lead Agency shall be US EPA for the matters as to which the Oklahoma Department of Environmental Quality is Lead Agency.  NRC, the State of Oklahoma, and US EPA may provide the Cimarron Trustee with joint written notice that a Lead Agency for the Cimarron Site has changed.

b.   Within 60 days following the Effective Date in the first year and thereafter by January 1 of each year following the Effective Date, the Cimarron Trustee shall provide to the Lead Agency for each of the Cimarron Trust Environmental Cost Accounts, a statement showing the balance of each cost account and proposed budget for the coming year.  The Lead Agency shall have the authority to approve or disapprove the proposed budget for the relevant Cimarron Trust Environmental Cost Account after consultation with the Non-Lead Agency, if such consultation is requested by the Non-Lead Agency.  To the extent any proposed decommissioning or Environmental Actions in the proposed budget entail overlapping work that qualifies for disbursements from both the Cimarron Trust Federal Environmental Cost Account and the Cimarron Trust State Environmental Cost Account, the Lead Agencies and the

Cimarron Trustee shall determine an equitable allocation between both Environmental

Cost Accounts for such proposed work.

c.      The Cimarron Trustee shall also notify the Deputy

Director, Decommissioning & Uranium Recovery Licensing Directorate, Division of

Waste Management and Environmental Protection, Office of Federal and State Materials

and Environmental Management Programs, and the Regional Administrator, NRC

Region IV, NRC Region IV, 611 Ryan Plaza Drive, Suite 400, Arlington, TX 76011-

8064, by certified registered mail, no later than 180 days prior to the anticipated date, that

all contractual and other projected obligations will have exhausted 25%, 50%, and 75%

of the Cimarron Federal Environmental Cost Account;

i.      Upon notification that 75% of the Cimarron Federal
Environmental Cost Account has been exhausted, the Cimarron
Trustee shall cease remediation work and commence passive
maintenance and monitoring only of the Site in order to provide for
the protection of the public health and safety using the remaining
funds in the Cimarron Trust Federal Environmental Cost Account
to fund monitoring and maintenance until further order of the
NRC; provided however, that no more than 5% of the remaining
funds available in the Cimarron Trust Federal Environmental Cost
Account shall be spent in any six-month period without NRC
approval.

ii.      The assets of the Cimarron Standby Trust shall not
be accessed by the Cimarron Trustee until further order of NRC.

d.      The Cimarron Trustee shall pay funds from a Cimarron

Trust Environmental Cost Account to the Lead Agency for a Cost Account making a

written request for funds for reimbursement within 30 days following such request.  Such

written request shall: (i) be in accordance with the approved budget set forth in

Subparagraph 56(b) above, and (ii) shall specify what the funds were used for and shall

certify that they were used only for future decommissioning activities, Environmental

Actions, and future regulatory fees or oversight costs with respect to the Cimarron Site.

e.        The Cimarron Trustee shall also pay funds from the

Cimarron Trust Environmental Cost Account to the Non-Lead Agency making a written

request for funds within 30 days following such request where the Lead Agency has

requested the assistance of the Non-Lead Agency with respect to the Cimarron Site. .

Such written request shall: (i) be in accordance with the approved budget set forth in

Subparagraph 56(b) above, and (ii) shall specify what the funds were used for and shall

certify that they were used only for Environmental Actions performed and/or oversight

costs incurred after the Effective Date by the Non-Lead Agency with respect to the

Cimarron Site.

f.        In the case of requests by the Lead Agency for a

Cimarron Trust Environmental Cost Account to the Cimarron Trustee to use the funds

from a particular Cimarron Trust Environmental Cost Account to perform

decommissioning activities or Environmental Actions, the Cimarron Trustee shall utilize

the funds and interest earned thereon from that Cimarron Trust Environmental Cost

Account to undertake such work promptly and in accordance with any schedule approved

by the Lead Agency pursuant to Subparagraph 56(b) above.  The Cimarron Trustee shall

seek the approval of the appropriate Lead Agency of any contractor hired by the

Cimarron Trustee and any work plans to be undertaken by the Cimarron Trust under the

oversight of the appropriate Lead Agency, unless the Lead Agency has provided a written

waiver of such approval or requirements.  Except for architectural services and

engineering services, the Trustee shall use competitive bidding to select the most suitable

contractor for any work on matters to which the Cimarron Trust Federal Environmental

Cost Account or the Cimarron Standby Trust Fund applies, and that is not carried out by

the Trustee.  The Trustee shall be responsible for the review and selection of any

contractors sought to perform work, however, the Trustee shall provide NRC with its

intended selection at least 30 days before the contract is awarded, and NRC may object or

otherwise deny the award of any contract for any reasonable reason.  The Cimarron

Trustee shall require liability insurance as set forth in the Cimarron Trust Agreement

from each contractor hired to perform work.

57.    <u>Transfers of Funds from the Cimarron Trust Accounts</u>

a.    NRC and the State of Oklahoma may agree in writing at

any time after one year from the Effective Date that, based on new information about the

estimated cost of cleanup or the assumption of liability by a buyer or other party for the

Cimarron Site, the funding in a Cimarron Trust Environmental Cost Account is more than

is projected by one or both Lead Agencies to be needed.  Upon such an agreement, NRC

and the State of Oklahoma may instruct the Cimarron Trustee to transfer funds to one or

more of the other Cimarron Trust Environmental Cost Accounts if there are remaining

actions to be performed and a need for additional trust funding.

b.    After NRC and the State of Oklahoma have confirmed to

the Cimarron Trustee that all final actions have been completed and all final costs have

been disbursed with respect to either the Cimarron Trust Federal Environmental Cost

Account or the Cimarron Trust State Environmental Cost Account, any funds remaining

in that account shall be transferred in the following order: (i) first, in accordance with

instructions provided by NRC and the State of Oklahoma, to any of the other Cimarron

Trust Environmental Cost Accounts established under this Settlement Agreement if there

are remaining actions to be performed and a need for additional trust funding; (ii) second,

in accordance with instructions to be provided by the United States Department of Justice

after consultation with the States, to any of the Multistate Environmental Cost or Work

Accounts, the Henderson Trust Environmental Cost Account, any of the West Chicago

Trust Environmental Cost or Work Accounts, or the Savannah Trust Environmental Cost

Account, if there are remaining Environmental Actions to be performed at the Owned

Funded Sites, the Non-Owned Service Stations, the Non-Owned RAS Properties, or

Kress Creek and a need for additional trust funding, with the allocation among such

Environmental Cost Accounts to be determined by the projected shortfall of performing

such remaining Environmental Actions; (iii) third, to Non-Owned Sites with a need for

additional funding beyond the distributions received pursuant to Paragraph 117 and from

the Anadarko Litigation Proceeds; and (iv) fourth, to the Superfund.

        c.        Annually, beginning with the first year after the Effective

Date, the Cimarron Trustee shall provide NRC and the State of Oklahoma with an update

of anticipated future Administrative Costs of the Cimarron Trust.  NRC and the State of

Oklahoma may instruct the Cimarron Trustee in writing that any conservatively projected

surplus funding in the Cimarron Trust Administrative Account be transferred to one or

more of the other Cimarron Trust Accounts established under this Settlement Agreement

for the Cimarron Site if there are remaining actions to be performed and with a need for

additional trust funding or, to the extent there are no such remaining actions, as described

in clauses (ii)-(iv) in the immediately preceding Subparagraph.  If there is an anticipated

shortfall in the Cimarron Trust Administrative Account based on anticipated future

Administrative Costs of the Cimarron Trust, funds in either of the Cimarron Trust

Environmental Cost Accounts may be transferred to the Cimarron Trust Administrative

Account, upon the joint direction of the Lead Agency and the Non-Lead Agency, if

applicable, for the respective Environmental Cost Account.

        d.      Debtors shall continue, at their own expense, the

operations of ongoing decommissioning and Environmental Actions being performed by

Debtors pursuant to injunctive, compliance, and regulatory obligations and requirements

at the Cimarron Site until the payments and transfers required by Paragraph 55 of this

Settlement Agreement are made, including, but not limited to, environmental monitoring

activities; provided, however, if unanticipated environmental activities are required to be

performed by Debtors prior to the Effective Date,  Debtors will cooperate with the Lead

Agency in determining a commercially reasonable course of action.

        58.      Cimarron Trust Miscellaneous Provisions

        a.      The Cimarron Trustee shall at all times seek to have the

Cimarron Trust treated as a "qualified settlement fund" as that term is defined in Treasury

Regulation section 1.468B-1.  For purposes of complying with Section 468B(g)(2) of the

Internal Revenue Code of 1986, as amended, this Settlement Agreement shall constitute a

Consent Decree between the parties.  Approval of the Court, as a unit of the District

Court, shall be sought, and the Court shall retain continuing jurisdiction over the

Cimarron Trust and Cimarron Trust Accounts sufficient to satisfy the requirements of

Treasury Regulation section 1.468B-1.  The Cimarron Trustee shall cause any taxes

imposed on the earnings of the Cimarron Trust to be paid out of such earnings and shall

comply with all tax reporting and withholding requirements imposed on the Cimarron

Trust under applicable tax laws.  The Cimarron Trustee shall be the "administrator" of the Cimarron Trust pursuant to Treasury Regulation section 1.468B-2(k)(3).  To the extent that the Debtors choose to make a Grantor Trust Election with respect to the Cimarron Trust, the Cimarron Trustee shall provide reasonable cooperation to the Debtors as needed to facilitate such election.  For the avoidance of doubt, any such Grantor Trust Election is for tax purposes only and shall in no way affect the substantive rights and obligations of the parties under this Settlement Agreement or the Cimarron Trust Agreement.

b.      The Cimarron Trustee shall use the Cimarron Standby Trust and the Cimarron Trust Federal Environmental Cost Account to fund future decommissioning costs pursuant to the Atomic Energy Act of 1954 and NRC regulations with respect to the Cimarron Site.

c.      The Cimarron Trustee shall use the Cimarron Trust State Environmental Cost Account to fund Environmental Actions other than those related to decommissioning, the Cimarron License, or the NRC.

d.      The Cimarron Trustee shall use the Cimarron Trust Administrative Account to fund the Administrative Costs of the Cimarron Trust that have been approved by the United States and the State of Oklahoma.

e.      The administrative funds within the Cimarron Trust Administrative Account shall be used by the Cimarron Trustee for Administrative Costs. Within 60 days following the Effective Date in the first year and thereafter by January 1 of each year, the Cimarron Trustee shall provide NRC and the State of Oklahoma with an annual budget for administration of the Cimarron Trust for review and approval or

disapproval by NRC and the State of Oklahoma.

        f.      In no event shall any of the Cimarron Trust Parties be held liable to any third parties for any liability, action, or inaction of any other party, including Debtors or any other Cimarron Trust Party.

        g.      The Cimarron Trustee shall implement any institutional controls or deed restrictions requested by the United States, NRC (with respect to decommissioning and termination of the Cimarron License) and the State of Oklahoma with respect to the Cimarron Site.  Additionally, the Cimarron Trustee shall abide by the terms of any institutional controls or deed restrictions in place or of record as to Cimarron Site.

        h.      In the event the Court finds that the Cimarron Trustee in any material respect, as a result of negligence, exacerbates hazardous conditions at the Cimarron Site, is seriously or repeatedly deficient or late in performance of the work or violates the provisions of this Settlement Agreement, the Cimarron Trust Agreement or other related implementation agreements, NRC and the State of Oklahoma may jointly direct that: (i) the Cimarron Trustee be replaced in accordance with the Cimarron Trust Agreement; or (ii) that all remaining funds and future recoveries in the Cimarron Trust be paid to NRC or to the State of Oklahoma to be used in accordance with the terms of this Settlement Agreement.  Replacement of the Cimarron Trustee under this Paragraph does not affect the liability provisions in Paragraph 63 below.

        i.      In the absence of a Court finding that the Cimarron Trustee in any material respect, as a result of negligence, exacerbates hazardous conditions at the Cimarron Site, is seriously or repeatedly deficient or late in performance

of the work or violates the provisions of this Settlement Agreement, the Cimarron Trust Agreement or other related implementation agreements, three years after the Effective Date, and every three years thereafter, NRC and the State of Oklahoma may jointly direct that the Cimarron Trustee be replaced, provided that any replacement Trustee agrees to assume all the obligations of the Cimarron Trustee under this Settlement Agreement and the Cimarron Trust Agreement.  The Cimarron Trustee may resign from its trusteeship generally and without cause giving not less than 120 days prior written notice thereof to the Court, the United States (including NRC), and the State of Oklahoma, provided however, that in the event a suitable replacement is not found and approved by the NRC and the State of Oklahoma within 120 days after such written notice is provided, the Cimarron Trustee's resignation shall not become effective and the Cimarron Trustee shall continue to function in its capacity as Trustee until a suitable replacement is found and approved by the NRC and the State of Oklahoma.

j.      The Cimarron Trust is intended to be governed by the terms of this Settlement Agreement and the Cimarron Trust Agreement and shall not be subject to any provision of the Uniform Custodial Trust Act as adopted by any state, now or in the future.

59.      The Cimarron Trustee shall provide NRC, the State of Oklahoma, and their representatives and contractors access to all portions of the Cimarron Site at all reasonable times for the purposes of conducting decommissioning activities and Environmental Actions at or near the Cimarron Site.  The Cimarron Trustee shall also cooperate with the NRC, its representatives and contractors in NRC's Site inspections. The Cimarron Trustee shall execute and record with the appropriate recorder's office any

easements or deed restrictions requested by NRC and the State of Oklahoma for

restrictions on use of the Cimarron Site in order to protect public health, welfare or safety

or the environment or ensure non-interference with or protectiveness of any action.  Any

existing easements or deed restrictions of record as to the Cimarron Site prior to the

Effective Date of this Settlement Agreement shall survive the Settlement Agreement.

60.    The United States (including NRC) may at any time propose in

writing to take ownership of the Cimarron Site or any part thereof.  Any such proposed

transfer and the terms thereof are subject to approval in writing by the United States,

NRC (with respect to the Cimarron License), and the State of Oklahoma (after

consultation with the Cimarron Trustee).  However, neither the United States (including

NRC) nor the State of Oklahoma shall be required to accept an ownership interest in

remaining properties upon termination of the Cimarron Trust.

61.    The Cimarron Trustee may, at any time, seek the approval of the

United States, NRC (with respect to the Cimarron License), and the State of Oklahoma

for the sale or lease or other disposition of all or part of the Cimarron Site.

62.    Subject to the approval of NRC and the State of Oklahoma, the

Cimarron Trustee may propose a sale, lease, or disposition of the Cimarron Site that

includes funding from, or the retention of some portion of liability by, the respective

Cimarron Trust Environmental Cost Account and/or the Cimarron Trust Administrative

Account, provided that the net effect of any proposed sale, lease or disposition is to

lessen the total financial obligations and liabilities as would otherwise be incurred in the

absence of any such sale, lease, or disposition.  In the event of any approved sale or lease

or other disposition under this Paragraph, any net proceeds from the sale or lease or other

disposition shall be paid to the Cimarron Trust Environmental Cost Accounts for the

Cimarron Site and/or the Cimarron Trust Administrative Account in a proportion

approved by NRC and the State of Oklahoma in writing.

63.     None of the Cimarron Trust Parties shall be personally liable

unless the Court, by a final order that is not reversed on appeal, finds that it committed

acts that were grossly negligent, and/or committed fraud or willful misconduct after the

Effective Date in relation to the Cimarron Trustee's duties.  There shall be an irrebuttable

presumption that any action taken or not taken with the approval of the Court does not

constitute gross negligence, or an act of fraud or willful misconduct.  Any judgment

against a Cimarron Trust Party and any costs of defense relating to any Cimarron Trust

Party shall be paid from the relevant Cimarron Trust Environmental Cost Account or the

Cimarron Trust Administrative Account without the Cimarron Trust Party having to first

pay from its own funds for any personal liability or costs of defense, _unless_ a final order

of the Court, that is not reversed on appeal, determines that it committed acts that were

grossly negligent, and/or committed fraud or willful misconduct in relation to the

Cimarron Trust Party's duties.  However, any payment shall be limited to funds in the

relevant Cimarron Trust Environmental Cost Accounts or the Cimarron Trust

Administrative Account.

64.     The Cimarron Trust Parties are exculpated by all persons,

including without limitation, holders of claims and other parties in interest, of and from

any and all claims, causes of action and other assertions of liability arising out of the

ownership of Cimarron Trust Assets and the discharge of the powers and duties conferred

upon the Cimarron Trust and/or Trustee by this Settlement Agreement or any order of

court entered pursuant to or in furtherance of this Settlement Agreement, or applicable

law or otherwise.  No person, including without limitation, holders of claims and other

parties in interest, will be allowed to pursue any claims or cause of action against any

Cimarron Trust Party for any claim against Debtors, for making payments in accordance

with this Settlement Agreement or any order of court, or for implementing the provisions

of this Settlement Agreement or any order of court.  Nothing in this Paragraph or the

Settlement Agreement shall preclude the United States or the State of Oklahoma from

enforcing the terms of this Settlement Agreement against the Cimarron Trust Parties.

65.    Except as may otherwise be provided herein: (a) the Cimarron

Trust Parties may rely on, and shall be protected in acting upon, any resolution,

certificate, statement, instrument, opinion, report, notice, request, consent, order, or other

paper or document believed by them to be genuine and to have been signed or presented

by the proper party or parties; (b) the Cimarron Trust Parties may consult with legal

counsel, financial or accounting advisors and other professionals and shall not be

personally liable for any action taken or not taken in accordance with the advice thereof;

and (c) persons and entities dealing with the Cimarron Trust Parties shall look only to the

Cimarron Trust Assets that may be available to them consistent with this Settlement

Agreement to satisfy any liability incurred by the Cimarron Trust Parties to such person

in carrying out the terms of this Settlement Agreement or any order of the Court, and the

Cimarron Trust Parties shall have no personal obligations to satisfy any such liability

other than as provided in Paragraph 63.

66.    Neither the United States, the State of Oklahoma, nor any of

Debtors or Reorganized Tronox shall be deemed to be an owner, operator, trustee,

partner, agent, shareholder, officer, or director of the Cimarron Trust or the Cimarron

Trust Parties, or to be an owner or operator of the Cimarron Site simply on account of

this Settlement Agreement or actions contemplated thereby.

## VIII.    THE HENDERSON ENVIRONMENTAL RESPONSE TRUST

67.

a.    On the Effective Date, and simultaneously with receipt

of the payments to the Henderson Trust Accounts under Paragraph 80, Debtors will

transfer (and execute all necessary documents in connection therewith) to the Henderson

Environmental Response Trust (the "Henderson Trust") by quitclaim deed (the

"Henderson Deed") (provided such form of deed is expressly approved by the

Bankruptcy Court in its Confirmation Order, or otherwise by such form of deed as the

Henderson Trust's title insurer, Chicago Title Insurance Company ("Title Insurer"), shall

approve and insure) and other appropriate instruments all of their right, title, and interest

in and to, including, without limitation, all of their fee ownership in that certain real

property (the "Henderson Property") comprising all of the real property currently owned

by Debtors and located in Clark County, Nevada (including, without limitation, the tax

assessor parcels described in Attachment D annexed hereto and the real property

described by the legal description set forth in Attachment E annexed hereto),  together

with all appurtenances, rights, easements, rights-of-way, mining rights (including

unpatented mining claims, mill site claims, and placer claims), mineral rights, mineral

claims, appurtenant groundwater rights, associated surface water rights, claims, filings

and permits (to the extent applicable to the Henderson Trust as owner of the Henderson

Property), licenses, third-party warranties and guaranties for equipment or services to the

extent transferable under bankruptcy law and that are not related to the Henderson

Business, or other interests (including without limitation all fixtures, improvements, and

equipment located thereon as of the Effective Date) owned by Debtors and related to the

Henderson Property, including without limitation, all development rights, with the

exception of: any machinery, equipment, fixtures, furniture, computers, tools, parts,

supplies, and other tangible personal property, filings, permits, licenses, warranties,

guaranties, or other interests used or held for use in connection with the operation of the

Henderson Business, and located in or on the Henderson Leased Facility (as hereinafter

defined).  Also on the Effective Date, Debtors will transfer or assign to the Henderson

Trust, or its nominee, all of their right, title, and interest to all personal property,

equipment, fixtures, easements, contracts or other rights necessary for the continued

operation of the chromium- and perchlorate-related groundwater intercept and treatment

systems and all other on-going environmental contamination investigation, treatment or

remediation systems or programs at or associated with the Henderson Property.

      b.      On and after the Effective Date, Debtors and Reorganized

Tronox shall have no ownership or other residual interest whatsoever with respect to the

Henderson Trust or Henderson Property, but as of the Effective Date, Reorganized

Tronox, as Tronox LLC (Tronox LLC and any approved assigns to the leasehold interest

shall be collectively referred to as "Tenant"), shall have all rights and obligations as

Tenant as set forth in the Henderson Facility Lease (as hereinafter defined).  To the extent

owned by Debtors, the transfers of the Henderson Property shall include any land lying in

bed or any street, road or avenue opened or proposed, public or private, in front of or

adjoining the portions of the Henderson Property along with (x) any award made or to be

made in lieu thereof, (y) any unpaid award for damage to the Henderson Property by

reason of change of grade of any street, and (z) any strips and gores adjoining the

adjacent property.  As soon as reasonably practicable, and in any event within 10

business days after the execution of this Settlement Agreement, Debtors shall deliver any

"as-built" plans and specifications for the Henderson Leased Facility and any

improvements on the Henderson Property that are within Debtors' possession, custody or

control.

     c.  The transfer of ownership of the Henderson Property

shall be (i) "as is" and "where is" with no warranties of any nature; (ii) free and clear of

all claims, liens, encumbrances and interests against the Debtors, including mechanics'

liens and other liens for the payments of monetary claims, such as real property taxes

(except statutory liens for real property taxes that are not yet due and payable), or other

monetary claims asserted or that could have been asserted in the bankruptcy proceeding,

but shall remain subject to any existing in rem claims that do not secure payment of

monetary claims (such as easements or deed restrictions); (iii) free and clear of all leases

and tenancies, other than the Henderson Facility Lease, and the two unrecorded leases

(the "Existing Leases") described in Attachment F annexed hereto, which Existing Leases

shall not be assigned to or assumed by the Henderson Trust, but will continue as

subleases between Tenant and the tenants under the Existing Leases subject and

subordinate to the Henderson Facility Lease (and unless an order of the Bankruptcy Court

specifically acknowledges that there are no leases affecting the Henderson Property other

than the Existing Leases, any other leases having been rejected, then on the Effective

Date the Debtors shall provide the Henderson Trust with an affidavit to the effect that

there are no leases affecting the Henderson Property other than the Existing Leases); (iv)

subject to any rights of the United States and the State of Nevada under this Settlement

Agreement; and (v) accomplished by the Henderson Deed, and personal property bill of

sale without warranty, with all such conveyance documents to be agreed to in form by the

Debtors and the trustee of the Henderson Trust ("Henderson Trustee").

        d.      The Henderson Trustee, the Debtors and the Lead

Agency shall exchange information and reasonably cooperate to determine the

appropriate disposition of any executory contracts that relate to the Henderson Property,

provided however, that Henderson Trust shall not be required to take assignment of any

executory contract without the consent of the Henderson Trustee.  Debtors shall

cooperate with the Henderson Trustee to effect the prompt and orderly delivery of all

executory contracts and take such action with respect to such contracts and leases as the

Henderson Trustee may request before the Effective Date.  The Henderson Trust shall not

be required to pay any cure costs.

        e.      Debtors will cooperate with the State of Nevada, the

United States and the Henderson Trustee to deliver the Henderson Deed to the Title

Insurer prior to the Effective Date (which Title Insurer will record or cause to be recorded

in the appropriate real property records the Henderson Deed as soon as reasonably

practicable, but not to exceed 30 days after the Effective Date), together with all

affidavits of title and all other documents necessary, if any, for the Henderson Trust's

Title Insurer to insure title (including, without limitation, gap insurance and insurance

against mechanics liens) to the Henderson Property free and clear of all liens and

encumbrances except as otherwise provided herein.  In the event the Henderson Deed is

not recorded by the Title Insurer on the Effective Date, Reorganized Tronox will

cooperate with the State of Nevada, the United States, the Henderson Trustee and the

Title Insurer to cause to be recorded in the appropriate real property records the

Henderson Deed as soon as reasonably practicable, but not to exceed 30 days after the

Effective Date.  Notwithstanding the foregoing sentence, none of Debtors' or

Reorganized Tronox's obligations nor its cooperation with the Henderson Trust or its

Title Insurer (as the case may be) shall in any way be construed to impose a duty on

Debtors or Reorganized Tronox to provide title insurance to the Henderson Trust for the

Henderson Property and the issuance of a title insurance policy for the Henderson

Property to the Henderson Trust shall not be deemed a condition precedent to the transfer

of the Henderson Property to the Henderson Trust pursuant to this Settlement Agreement

and the Henderson Deed.

f.        As soon as reasonably practicable after the Effective

Date, to the extent a separate parcel assessment for the Henderson Leased Facility has not

already been obtained, Tenant shall use best efforts to obtain from the taxing authorities a

separate parcel assessment for the Henderson Leased Facility, and to the extent possible,

Tenant shall obtain from Black Mountain Industrial Center Association separate

assessments for the Henderson Leased Facility and the balance of the Henderson

Property.  Debtors shall pay the recording costs to the title company related to the title

transfers.

g.        Debtors shall pay all real property taxes relating to the

Henderson Property prorated through the Effective Date.  As of the Effective Date, the

Henderson Trust shall be responsible for all real property taxes relating to the Henderson

Property, except the real property taxes relating to the Henderson Leased Facility shall be

the responsibility of Tenant under the Henderson Facility Lease after the Effective Date.

   68.  On or prior to the Effective Date, Debtors shall execute, or cause to

be executed, and record, if necessary, all necessary releases of any liens or security

interests held by any Debtors against the Henderson Property.  After Debtors execute this

Settlement Agreement, but prior to the Effective Date, unless Debtors obtain the

Henderson Trust's consent otherwise (which consent shall not be unreasonably withheld,

conditioned or delayed), Debtors shall (i) not further encumber the Henderson Property

or its other interests therein;  (ii) use the Henderson Property only for the currently

existing use as a chemical manufacturing facility, including ancillary uses related thereto;

(iii) not materially change, alter or expand such existing use; (iv) not demolish the

Henderson Property; (v) keep the Henderson Property in the currently existing order and

repair (including without limitation the storage, timely removal and off-site permitted

disposal of all waste and refuse generated in the ordinary course of business), ordinary

wear and tear, casualty and condemnation excepted or to the extent that ongoing

environmental activities require otherwise; (vi) not enter into any leases or subleases of

all or any portions of the Henderson Property; (vii) maintain and keep in force current

insurance policies for the Henderson Property; (viii) maintain the Henderson Property in

accordance with Debtors' current practices, including the improvements thereon and the

fixtures thereto that are related to ongoing remediation activities in the condition that they

exist as of the date of execution, except for ordinary wear and tear, casualty and

condemnation or to the extent that ongoing environmental activities require otherwise;

and (ix) continue, at their own expense, the ongoing environmental activities being

performed by Debtors pursuant to injunctive, compliance, and regulatory obligations and requirements at the Henderson Property until the payments and transfers required by this Settlement Agreement (except for the payment from the Anadarko Litigation Trust described in Subparagraph 124(p)) are made, including, but not limited to, environmental monitoring and groundwater treatment activities.

69.    If, on or prior to the Effective Date,

a.    all or any part of the Henderson Property is damaged or destroyed by fire or other casualty, the Debtors shall promptly notify the Henderson Trust of such fact.  In such event (i) the Debtors shall assign to the Henderson Trust, on the Effective Date, all of the Debtors' right, title and interest in and to the insurance proceeds paid or to be paid as the result of such damage or destruction (except to the extent that the proceeds relate to the Henderson Leased Facility and Tenant elects to use the proceeds to restore the Henderson Leased Facility), and (ii) the Debtors shall execute such documents as may be reasonably requested to effectuate such assignment.  Such damage or destruction shall not affect the obligation of Debtors to transfer the Henderson Property on the Effective Date, or the obligation of the Henderson Trust and Tenant to enter into the Henderson Facility Lease.

b.    all or any portion of the Henderson Property is taken by eminent domain (or is the subject of a pending or contemplated taking which has not been consummated), the Debtors shall promptly notify the Henderson Trust of such fact. In such event (i) the Debtors shall assign to the Henderson Trust, on the Effective Date, all of the Debtors' right, title and interest in and to the award paid or to be paid as the result of such taking (except to the extent that the award relates to the Henderson Leased

Facility, in which event the award shall be applied in accordance with the terms of the

Henderson Facility Lease), and (ii) the Debtors shall execute such documents as may be

reasonably requested to effectuate such assignment.  Such taking shall not affect the

obligation of Debtors to transfer the Henderson Property on the Effective Date, or the

obligation of the Henderson Trust and Tenant to enter into the Henderson Facility Lease,

except as to portions of the Henderson Leased Facility so taken.  On or before the

Effective Date, Debtors shall provide to the Henderson Trust evidence (which may be in

the form of an appropriate Bankruptcy Court order or separate agreements entered into by

the tenants under the Existing Leases) that each of the Existing Leases is subject and

subordinate in all respects to the Henderson Facility Lease, that the Existing Leases will

automatically terminate on the termination of the Henderson Facility Lease, and that each

tenant under the Existing Leases has acknowledged that it will look solely to Tenant (and

not to the Henderson Trust) with respect to any obligations of landlord under the Existing

Leases.

      70.   <u>BMI/Landwell Assets</u>

      a.   <u>Transfer to Henderson Trust</u>.  On the Effective Date,

Tronox LLC will transfer all of its interests ("BMI/Landwell Assets") in Basic

Management, Inc. and The Landwell Company, LP to the Henderson Trust or to an entity

in which the Henderson Trust has an interest, in either case on terms and conditions to be

reasonably agreed upon by Tronox LLC, the Henderson Trustee, the State of Nevada, and

the United States.

      b.   <u>Optional Transfer of Interest to Other Trusts.</u>  At any time

prior to any sale by the Henderson Trust of the BMI/Landwell Assets,  whether by right

of first refusal or otherwise ("Sale Event"), and prior to a distribution by the Anadarko

Litigation Trust, the Henderson Trustee may transfer 65% of its economic interest in the

BMI/Landwell Assets to one or more of the Multistate Trust, Cimarron Trust, Savannah

Trust, and West Chicago Trust, in such proportions and upon such terms as the United

States may direct ("BMI/Landwell Optional Transfer").

        c.    <u>Distribution of Net Sale Proceeds</u>.  If at any time any

person or entity purchases the BMI/Landwell Assets from the Henderson Trust, whether

by right of first refusal or otherwise, the Net Sale Proceeds (as defined below) shall be

distributed as follows:  (x) the first $20 million, to the Henderson Environmental Cost

Account or Henderson Administrative Account, as jointly directed by the State of Nevada

and the United States, (y) 35% of the Net Sale Proceeds above $20 million, to the

Henderson Environmental Cost Account and/or Henderson Administrative Account, as

jointly directed by the State of Nevada and the United States, and (z) 65% of the Net Sale

Proceeds above $20 million, (i) first, to any Administrative Account, Environmental Cost

Account, or Work Account in the Multistate Trust, Cimarron Trust, Henderson Trust,

Savannah Trust, or West Chicago Trust, as directed by the United States, if there are

remaining Environmental Actions to be performed at the Owned Sites, the Non-Owned

RAS Properties, Kress Creek, and the Non-Owned Service Stations in those Trusts and a

need for additional trust funding; (ii) second, to any Non-Owned Site, as directed by the

United States, with a need for additional funding of Environmental Actions beyond the

distributions designated to be received from the Anadarko Litigation Proceeds; and (iii)

third, to the Superfund.  Nothing in this Subparagraph is intended to preclude or limit any

transfers of funds from any other accounts established in this Settlement Agreement to

the Henderson Trust Environmental Cost Account or Henderson Trust Administrative

Account pursuant to the terms of any applicable funds transfer provision in this

Settlement Agreement if there are remaining Environmental Actions to be performed at

or with respect to the Henderson Property and a need for additional trust funding.

        d.    <u>Definition of Net Sale Proceeds</u>.  "Net Sale Proceeds" shall

mean an amount equal to the purchase price paid as a result of a Sale Event ("Sale

Proceeds"), plus any profits earned by the Henderson Trust on the BMI/Landwell Assets

prior to a Sale Event, minus (a) any litigation, valuation, or transaction costs reasonably

incurred by the Henderson Trust in connection with the Sale Event but excluding any

costs that otherwise would have been expended by the Henderson Trust in the absence of

the exercise of the Sale Event ("Sale Costs") and (b) any carrying costs reasonably

incurred by the Henderson Trust as owner of the BMI/Landwell Assets but excluding any

costs that otherwise would have been expended by the Henderson Trust in the absence of

its ownership of the BMI/Landwell Assets ("Carrying Costs").

        71.    <u>Henderson Facility Lease</u>: On the Effective Date, the Henderson

Trust shall enter into a triple net lease agreement (the "Henderson Facility Lease") with

Tenant for the portion of the Henderson Property described under the caption "Leased

Premises" in the Lease Term Sheet annexed hereto as Attachment G (the "Henderson

Leased Facility").  The Henderson Facility Lease shall include, without limitation, the

provisions set forth in the Lease Term Sheet.  On the Effective Date, Tronox Incorporated

("Guarantor") shall execute and deliver to the Henderson Trust an irrevocable and

unconditional guaranty (the "Guaranty") of the observance and performance of Tenant's

obligations under (i) the Henderson Facility Lease and (ii) this Settlement Agreement as

its obligations pertain to the Henderson Leased Facility, in form and substance

reasonably satisfactory to Guarantor and the Henderson Trust.

72.     On the Effective Date, the Henderson Trust shall be the legal

successor-in-interest to certain rights under the Kerr-McGee Henderson Pollution Clean-

Up and Legal Liability Manuscript Policy (the "Henderson Chartis Policy").  The Plan of

Reorganization shall vest in the Henderson Trust all of Debtors' interest in claims,

proceeds, or recoveries against the Henderson Chartis Policy, excluding reimbursements

for funds expended by Debtors on the Henderson Property prior to the Effective Date

provided that, insurance claims for such funds expended by Debtors are submitted timely

as provided by the Henderson Chartis Policy and are for costs incurred before the

Effective Date.  Debtors shall also provide the Henderson Trust with copies of such

claims at the time they are submitted.  For the sole purpose of securing recovery to the

Henderson Trust, the Henderson Trust shall succeed to the liabilities of Debtors with

respect to the Henderson Property.  Proceeds and recoveries from the Henderson Chartis

Policy shall be placed in the Henderson Trust Environmental Cost Account for the

Henderson Property described in Subparagraph 80(a) below.

73.     With respect to the Consent Decree for the Henderson Property

between Tronox LLC and the United States, *Tronox LLC v. United States*, Civil Action

No. 01:00CV01285 EGS (D.D.C.) (the "2006 Henderson Consent Decree"), the United

States and Tronox LLC will file papers with the District Court for the District of

Columbia to modify the 2006 Henderson Consent Decree to substitute the Henderson

Trust for Tronox LLC as a party to the 2006 Henderson Consent Decree after the

Effective Date for all purposes.  The United States, the State of Nevada, and the

Henderson Trust shall also enter into a 2006 Henderson Consent Decree Substitution and

Clarification Agreement to clarify the meaning of and otherwise document the parties'

stipulations and reservations of rights concerning certain provisions of the 2006

Henderson Consent Decree.  However, nothing in this Settlement Agreement or in the

2006 Henderson Consent Decree Substitution and Clarification Agreement shall purport

to relieve Tronox LLC as signatory to the 2006 Henderson Consent Decree, or its

successors, of any releases or covenants not to sue provided by Tronox LLC in the 2006

Henderson Consent Decree.

74.    The State of Nevada's entry into this Settlement Agreement shall

not waive, limit or otherwise affect any argument it or any other entity may have that the

2006 Henderson Consent Decree does not give rise to contribution protection (because of

insufficient notice as to a particular entity or otherwise).  Additionally, to the extent that

the State of Nevada or any other entity may argue that the 2006 Henderson Consent

Decree does not give rise to contribution protection because of insufficient notice to a

particular entity, the United States agrees that it shall not argue that the notice and

comment process with respect to the Settlement Agreement cured any such alleged defect

with respect to the 2006 Henderson Consent Decree.  The United States otherwise

reserves any and all responses it may have to any such arguments made by Nevada or any

other entity.

75.    In conducting its operations at the Henderson Leased Facility on

and after the Effective Date, Tenant, including its successors, assigns, contractors,

subcontractors, or sublessees, (each a "Henderson Covered Person") shall (i) comply with

Due Care Obligations; and (ii) comply with all applicable Environmental Laws, provided,

however, that nothing in this clause (ii) shall require any Henderson Covered Person to take any actions or assume any liability with respect to remediation (including investigation), removal or restoration of any Henderson Legacy Conditions except with respect to the Exacerbation Obligations (as defined hereafter).  Tenant, as lessee and operator of the Henderson Leased Facility, and its successors and assigns under the Henderson Facility Lease, shall be liable for conditions that are attributable to (i) any New Substances Conditions; (ii) any failure to comply with Due Care Obligations, subject to the Exacerbation Obligations (as defined hereafter); and (iii) any failure to comply with applicable Environmental Laws, in each instance by any Henderson Covered Person on or after the Effective Date.  For purposes of this Settlement Agreement:

a.    "Due Care Obligations" shall mean the duty with respect to the Henderson Leased Facility to:  (i) not exacerbate any Henderson Legacy Conditions; (ii) comply with all institutional controls applicable to such Henderson Legacy Conditions; (iii) take reasonable steps to prevent or limit human exposure to such Henderson Legacy Conditions; (iv) take reasonable precaution against foreseeable acts of third parties that could exacerbate such Henderson Legacy Conditions; and (v) provide reasonable cooperation as may be requested by the Trustee or Lead Agency in carrying out their respective obligations under the Settlement Agreement with respect to any Henderson Legacy Conditions at or pertaining to the Henderson Leased Facility.  The term "Due Care Obligations" includes the obligation to remedy any circumstance arising from any failure to perform such duty, but does not include any liability for obligations or payments to investigate, remediate, remove or restore any Henderson Legacy Conditions,

including any obligation to operate the existing groundwater extraction and treatment

systems, except with respect to the Exacerbation Obligations (as defined hereafter).

Notwithstanding the foregoing, Tenant's liability and obligations with respect to the

exacerbation of any Henderson Legacy Conditions shall be limited to the extent of

exacerbation ("Exacerbation Obligations").

    b.  "Henderson Legacy Conditions" shall mean the presence

or release, prior to or on the Effective Date, of hazardous substances in or into the

environment at, on or below any portion of the Henderson Property, including the

presence in any environmental media of such released hazardous substances as a result of

migration from any portion of the Henderson Property, whether before or after the

Effective Date.  For the purposes of this Settlement Agreement and the Henderson

Facility Lease, the Lease Term Sheet, and the Environmental Response Trust Agreements

(including but not limited to Sections XVI and XVIII of this Settlement Agreement) only,

perchlorate and chlorate compounds shall be treated as "hazardous substances."  This

treatment of perchlorate and chlorate compounds shall not in any way affect, impact, or

interfere with any person or entity's right to assert that perchlorate or chlorate compounds

are, may be, or are not hazardous substances for any purpose other than construing this

Settlement Agreement and the Henderson Facility Lease, the Lease Term Sheet, and the

Environmental Response Trust Agreements, including but not limited to for the purpose

of remediation efforts at any other site.  Nothing in this paragraph of the Settlement

Agreement is intended to modify or affect the 2006 Henderson Consent Decree in any

respect.

c.        "New Substances Conditions" shall mean any hazardous

substances released, added, deposited, generated, produced, stored or spilled by any

Henderson Covered Person in, at, on, or below the Henderson Leased Facility on or after

the Effective Date, including the migration of any such hazardous substances from the

Henderson Leased Facility.

76.      The purpose of the Henderson Trust shall be to: (i) own the

Henderson Property for purposes of implementing this Settlement Agreement; (ii) carry

out administrative and property management functions related to the Henderson Property;

(iii) manage and/or fund implementation of Environmental Actions for the Henderson

Legacy Conditions that are approved by the Henderson Lead Agency, and pay future

oversight costs of the Lead Agency and Non-Lead Agency, as applicable; (iv) act as legal

successor to Debtors under the Henderson Chartis Policy for the sole purpose of pursuing

and securing claims, proceeds, and recoveries under the Henderson Chartis Policy; (v) act

as landlord under the Henderson Facility Lease; and (vi) act as substituted party for

Tronox LLC under the 2006 Henderson Consent Decree, as set forth in Paragraph 73

above.  The Henderson Trust shall be funded as specified in Paragraph 80 herein.  The

Henderson Trust shall work with the Lead Agency and Non-Lead Agency, consistent

with its responsibilities under applicable law, to use reasonable efforts to minimize any

interference with Tenant's operations related to its implementation of Environmental

Actions at the Henderson Property.

77.      Le Petomane XXVII, Inc., not individually but solely in its

representative capacity as Henderson Trustee, is appointed as the Henderson Trustee to

administer the Henderson Trust and the Henderson Trust Accounts, in accordance with

this Settlement Agreement and an Environmental Response Trust Agreement

("Henderson Trust Agreement") materially consistent with the Settlement Agreement to

be separately executed by the parties.

78.    Debtors and Reorganized Tronox shall provide to the Henderson

Trustee Environmental Information and Real Property Information in accordance with

Section XIX below.

79.    On the Effective Date, the Henderson Trustee and Tenant shall

enter into an agreement ("Henderson Remediation Power Agreement") under which

Tenant shall provide to the Henderson Trust or its designee or assignee on and after the

Effective Date the uninterrupted supply of hydroelectric power as necessary to continue

to power components of the existing perchlorate- and chromium-related groundwater

intercept and treatment systems at the same prices, terms and conditions as are applicable

to Tenant's allocation of hydroelectric power from the Colorado River Commission of

Nevada ("CRC"), subject to all applicable CRC laws, regulations or other requirements

("CRC Requirements").  The Henderson Remediation Power Agreement shall include a

severability provision providing that each provision of the Henderson Remediation Power

Agreement will to the extent possible be interpreted in such manner as to be effective and

valid under applicable CRC Requirements, but if any provision of the Henderson

Remediation Power Agreement is held to be prohibited by or invalid under applicable

CRC Requirements, such provision will be ineffective only to the extent of such

prohibition or invalidity, without invalidating the remainder of such provision or the

remaining provisions of the Henderson Remediation Power Agreement.  The Henderson

Remediation Power Agreement shall require that Tenant obligate any transferee or

assignee of Tenant's rights to such hydroelectric power to continue to supply power to the

Henderson Trust or its assigns in accordance with the Henderson Remediation Power

Agreement, subject to all CRC Requirements applicable to any such transfer or

assignment.  Such hydroelectric power shall be provided pursuant to the Henderson

Remediation Power Agreement for so long as operation of the groundwater intercept and

treatment systems is deemed required Environmental Actions under this Settlement

Agreement, subject to the terms and continuance of the power contracts between Tenant

and the CRC, as they may be amended, assigned or transferred from time to time in

accordance with CRC Requirements and the terms of the Henderson Remediation Power

Agreement, and the authority of the CRC over the allocation of such hydroelectric power.

80.    Henderson Trust Accounts

a.    The Henderson Trustee shall create a segregated

Henderson Trust Environmental Cost Account ("Henderson Trust Environmental Cost

Account") for the Henderson Property.  The purpose of the Henderson Trust

Environmental Cost Account shall be to provide funding for Environmental Actions for

the Henderson Legacy Conditions and future oversight costs of the Lead Agency and the

US EPA with respect to the Henderson Property.  Funding for the Henderson Trust

Environmental Cost Account shall be held in trust for Environmental Actions with

respect to the Henderson Property and may not be used for any Owned or Non-Owned

Site except as expressly provided by and in accordance with Paragraph 82.

b.    The Henderson Trustee shall also create a segregated

Henderson Trust administrative account ("Henderson Trust Administrative Account") to

fund the payment of real estate taxes except as otherwise provided under the Henderson

Facility Lease, insurance, and other administrative costs incurred in administering the

Henderson Trust other than the Henderson Lease Administrative Expenses to be paid by

Tenant pursuant to the Henderson Facility Lease ("Henderson Administrative Costs").

        c.      Assets of the Henderson Trust Environmental Cost

Accounts and Henderson Trust Administrative Account (collectively, the "Henderson

Trust Accounts") shall be held in trust solely for the purposes provided in this Settlement

Agreement.  The State of Nevada and the United States shall be the sole beneficiaries of

the Henderson Trust Accounts.  Neither Debtors, Reorganized Tronox, nor Tenant shall

have any rights or interest to the Henderson Trust Assets distributed to the Henderson

Trust Accounts, nor to any funds remaining in any of the Henderson Trust Accounts upon

the completion of any and all final actions and disbursements for any and all final costs

with respect to the Henderson Property.

        d.      All interest, dividends and other revenue earned in a

Henderson Trust Account shall be retained in the respective Henderson Trust Accounts

and used only for the same purposes as the principal in that account as provided in this

Settlement Agreement, subject to any reallocation as set forth in Paragraph 82.

        e.      In settlement and full satisfaction of all claims of the

State of Nevada and the United States on behalf of US EPA against Debtors with respect

to any and all costs of response incurred, or to be incurred, in connection with the

Henderson Property (including but not limited to the liabilities and other obligations

asserted in the State of Nevada's and the United States' Proofs of Claim relating to the

Henderson Property), the Henderson Trustee (as described below) shall receive

allocations with respect to the Henderson Property of a specified percentage of the

Anadarko Litigation Proceeds as set forth in Subparagraph 124(p), and Debtors shall

make a payment of $8,602,853.00 for the Henderson Trust Administrative Account and

$72,417,165.00 to the Henderson Environmental Cost Account on the Effective Date.

The payments set forth in this Subparagraph shall, for purposes of the Bankruptcy Cases,

be accorded the status of expenses of administration.

81.    Lead Agency for the Henderson Property

a.    For purposes of this Settlement Agreement, the Lead

Agency for the Henderson Property is NDEP, and the Non-Lead Agency will be US

EPA.  The Lead Agency for the Henderson Property shall consult with the Non-Lead

Agency relating to approval of the budget or requests for funding for Environmental

Actions associated with the Henderson Legacy Conditions if such consultation is

requested.  The Lead Agency and Non-Lead Agency may provide the Henderson Trustee

with joint written notice that the Lead Agency for the Henderson Property has changed.

b.    Within 90 days following the Effective Date in the first

year and thereafter by January 1 of each year following the Effective Date, the Henderson

Trustee shall provide to the Lead Agency a statement showing the balance of each cost

account and proposed budget for the Henderson Trust Environmental Cost Account for

the coming year.  The Lead Agency shall have the authority to approve or disapprove the

proposed budget for the Henderson Trust Environmental Cost Account, but only after

consultation with the Non-Lead Agency, where the Non-Lead Agency requests such

consultation.

c.    The Henderson Trustee shall pay funds from the

Henderson Trust Environmental Cost Account to the Lead Agency making a written

request for funds for reimbursement within 10 days following such request.  Such written

request shall: (i) be in accordance with the approved budget set forth in Subparagraph

81(b) above, and (ii) specify what the funds were used for and shall certify that they were

used only for Environmental Actions performed and/or oversight costs incurred after the

Effective Date by the Lead Agency with respect to the Henderson Property.

        d.      The Henderson Trustee shall also pay funds from the

Henderson Trust Environmental Cost Account to the Non-Lead Agency making a written

request for funds within 30 days following such request where the Lead Agency has

requested the assistance of the Non-Lead Agency with respect to the Henderson Property.

Such written request shall: (i) be in accordance with the approved budget set forth in

Subparagraph 81(b) above, and (ii) specify what the funds were used for and shall certify

that they were used only for Environmental Actions performed and/or oversight costs

incurred after the Effective Date by the Non-Lead Agency with respect to the Henderson

Property.

        e.      In the case of requests by the Lead Agency to the

Henderson Trustee to use the funds from the Henderson Trust Environmental Cost

Account to perform Environmental Actions associated with the Henderson Legacy

Conditions in accordance with the approved budget set forth in Subparagraph 81(b)

above, the Henderson Trustee shall utilize the funds and interest earned thereon from the

Henderson Trust Environmental Cost Account to undertake such work promptly and in

accordance with any schedule approved by the Lead Agency.  The Henderson Trustee

shall seek the approval of the Lead Agency of any contractor hired by the Henderson

Trustee and any work plans to be undertaken by the Henderson Trust under the oversight

of the Lead Agency, unless the Lead Agency has provided a written waiver of such

approval or requirements.  The Henderson Trustee shall require liability insurance as set

forth in the Henderson Trust Agreement from each contractor hired to perform work and

will, to the extent that such work is being performed at the Henderson Leased Facility,

name Tenant as an additional insured under such policies.

82.    <u>Transfers of Funds from the Henderson Trust Accounts</u>

a.    After the Lead Agency and the Non-Lead Agency have

confirmed to the Henderson Trustee that all final actions have been completed, including

the sale of parcels comprising the Henderson Property in accordance with Paragraph 87,

and disbursements have been made for all final costs for the Henderson Property, any

funds remaining in the Henderson Trust Environmental Cost Account shall be transferred

in the following order: (i) first, the Henderson Trustee, in consultation with the Lead

Agency and Non-Lead Agency, shall agree to a reservation of funds necessary to

preserve and maintain any parcels of the Henderson Property that have not been sold,

pending winding up and termination of the Henderson Trust, including taxes and holding

costs; (ii) second, in accordance with instructions to be provided by the United States

Department of Justice, to the West Chicago Trust Environmental Cost or Work Accounts,

the Cimarron Trust Environmental Cost Accounts, the Savannah Environmental Cost

Account, or any of the Multistate Trust Environmental Cost or Work Accounts

established under this Settlement Agreement if there are remaining Environmental

Actions to be performed at the Owned Funded Sites, the Non-Owned Service Stations,

the Non-Owned RAS Properties or Kress Creek and a need for additional trust funding,

with the allocation among such Environmental Cost Accounts to be determined by the

projected shortfall of performing such remaining Environmental Actions; (iii) third, to Non-Owned Sites with a need for additional funding beyond the distributions received pursuant to Paragraph 117 and from the Anadarko Litigation Proceeds; and (iv) fourth, to the Superfund; provided however, that the remaining balance of any local, state or federal appropriation to, or any grant, loan or donation that has been transferred by any entity to a segregated account within the Henderson Trust that is established for those funds shall be distributed pursuant to the terms of any such appropriation, grant, loan, or donation, and may not be transferred pursuant to clauses (ii)-(iv) of this Paragraph.

b.      Annually, beginning with the first year after the Effective Date, the Henderson Trustee shall provide the Lead Agency and the Non-Lead Agency with an update of anticipated future Administrative Costs of the Henderson Trust.  In the fourth year after the Effective Date and every year thereafter, the  Lead Agency and the Non-Lead Agency may thereafter instruct in writing after consultation with the Henderson Trustee that any conservatively projected surplus funding in the Henderson Trust Administrative Account be transferred to the Henderson Trust Environmental Cost Account established under this Settlement Agreement if there are remaining actions to be performed and with a need for additional trust funding or, to the extent there are no such remaining actions, as described in clauses (i)-(iv) in the immediately preceding Subparagraph.  The Lead Agency and the Non-Lead Agency may also instruct in writing after consultation with the Henderson Trustee that, if there is an anticipated shortfall in the Henderson Trust Administrative Account based on anticipated future Administrative Costs of the Henderson Trust, funds from the Henderson Trust Environmental Cost Account may be transferred to the Henderson Trust Administrative Account.

83.    Debtors shall continue, at their own expense, to maintain ongoing

environmental activities being performed by Debtors pursuant to injunctive, compliance,

and regulatory obligations and requirements at the Henderson Property until the Effective

Date, including, but not limited to, environmental monitoring and groundwater treatment

activities.

84.    <u>Henderson Trust Miscellaneous Provisions</u>

a.    The Henderson Trustee shall at all times seek to have the

Henderson Trust treated as a "qualified settlement fund" as that term is defined in

Treasury Regulation section 1.468B-1.  For purposes of complying with Section

468B(g)(2) of the Internal Revenue Code of 1986, as amended, this Settlement

Agreement shall constitute a Consent Decree between the parties.  Approval of the Court,

as a unit of the District Court, shall be sought, and the Court shall retain continuing

jurisdiction over the Henderson Trust and Henderson Trust Accounts sufficient to satisfy

the requirements of Treasury Regulation section 1.468B-1.   The Henderson Trustee shall

cause any taxes imposed on the earnings of the Henderson Trust to be paid out of such

earnings and shall comply with all tax reporting and withholding requirements imposed

on the Henderson Trust under applicable tax laws.  The Henderson Trustee shall be the

"administrator" of the Henderson Trust pursuant to Treasury Regulation section 1.468B-

2(k)(3).  To the extent that the Debtors choose to make a Grantor Trust Election with

respect to the Henderson Trust, the Henderson Trustee shall provide reasonable

cooperation to the Debtors as needed to facilitate such election.  For the avoidance of

doubt, any such Grantor Trust Election is for tax purposes only and shall in no way affect

the substantive rights and obligations of the parties under this Settlement Agreement or

the Henderson Trust Agreement.

b.        The Henderson Trustee shall use the Henderson Trust

Environmental Cost Account to fund Environmental Actions associated with the

Henderson Legacy Conditions and certain future oversight costs pursuant to CERCLA or

state Environmental Laws with respect to the Henderson Property.  The Henderson

Trustee shall use the Henderson Trust Administrative Account to fund the Henderson

Administrative Costs that have been approved by the Lead Agency and Non-Lead

Agency.

c.        The administrative funds within the Henderson Trust

Administrative Account shall be used by the Henderson Trustee for Henderson

Administrative Costs.  Within 90 days following the Effective Date in the first year and

thereafter by January 1 of each year, the Henderson Trustee shall provide the Lead

Agency and the Non-Lead Agency with an annual budget for administration of the

Henderson Trust for review and approval or disapproval by the Lead Agency after

consultation with the Non-Lead Agency.

d.        In no event shall any of the Henderson Trust Parties be

held liable to any third parties for any liability, action, or inaction of any other party,

including Debtors, Reorganized Tronox, Tenant or any other Henderson Trust Party,

provided however, nothing herein shall modify the rights or obligations of Tenant as

provided in the Henderson Facility Lease.

e.        The Henderson Trustee shall implement any institutional

controls or deed restrictions requested by the Lead Agency and Non-Lead Agency or

required under applicable Environmental Laws with respect to the Henderson Property.

Additionally, the Henderson Trustee and Tenant shall abide by the terms of any

institutional controls or deed restrictions in place or of record as to the Henderson

Property.

        f.      In the event that the Court finds that the Henderson

Trustee in any material respect, as a result of negligence, exacerbates or aggravates

hazardous conditions at the Henderson Property, is seriously or repeatedly deficient or

late in performance of the work or violates the provisions of this Settlement Agreement,

the Henderson Trust Agreement or other related implementation agreements, the State of

Nevada and the United States may jointly direct that: (i) the Henderson Trustee be

replaced in accordance with the Henderson Trust Agreement; or (ii) all remaining funds

and future recoveries in the Henderson Trust be paid to the Lead Agency or to the Non-

Lead Agency to be used in accordance with the terms of this Settlement Agreement.

Replacement of the Henderson Trustee under this Paragraph does not affect the liability

provisions in Paragraphs 88 to 90 below.

        g.      Notwithstanding Subparagraph 84(f), within the first five

years after the Effective Date, the State of Nevada and the United States Department of

Justice may jointly direct that the Henderson Trustee be replaced, for cause, provided that

any replacement Trustee agrees to assume all the obligations of the Henderson Trustee

under this Settlement Agreement and the Henderson Trust Agreement.  After the

completion of the first five years after the Effective Date, and at any time thereafter, the

State of Nevada and the United States Department of Justice may jointly direct generally

and without cause that the Henderson Trustee be replaced, provided that any replacement

Trustee agrees to assume all the obligations of the Henderson Trustee under this Settlement Agreement and the Henderson Trust Agreement. The Henderson Trustee may resign from its trusteeship generally and without cause, in either case, on not less than 120 days prior written notice thereof to the Court, the United States, and the State of Nevada.

h. The Henderson Trustee shall provide Tenant at least 15 business days, or such shorter period as is established by the Henderson Lead Agency, to comment on work plans (including approvable deliverables that describe work to be performed at or relating to the Henderson Leased Facility) concerning proposed Environmental Actions at or relating to the Henderson Leased Facility, at the same time such proposed work plans (including such approvable deliverables as described above) are provided to the Henderson Lead Agency and Non-Lead Agency for their review or approval, as applicable. The Henderson Trustee shall consult with Tenant to keep Tenant reasonably apprised of any major developments with respect to such Environmental Actions.

85. The Henderson Trust is intended to be governed by the terms of this Settlement Agreement and the Henderson Trust Agreement and shall not be subject to any provision of the Uniform Custodial Trust Act as adopted by any state, now or in the future.

86. The Henderson Trustee shall provide the Henderson Lead Agency, Henderson Non-Lead Agency, and their representatives and contractors access to all portions of the Henderson Property at all reasonable times for the purposes of Environmental Actions at or near the Henderson Property. Any existing easements or

deed restrictions of record as to the Henderson Property prior to the Effective Date of this

Settlement Agreement shall survive the Settlement Agreement.

87.     The Henderson Trustee may, at any time, seek the approval of the

Henderson Lead Agency and the Henderson Non-Lead Agency for the sale or lease or

other disposition of all or part of the BMI/Landwell Assets or the Henderson Property,

subject to any existing lease(s) then in effect by its terms.  Subject to the approval of the

Henderson Lead Agency and the Henderson Non-Lead Agency, the Henderson Trustee

may propose a sale, lease, or disposition of all or part of the Henderson Property that

includes funding from, or the retention of some portion of liability by, the Henderson

Trust Environmental Cost Account and/or the Henderson Trust Administrative Account,

provided that the net effect of any proposed sale, lease or disposition is to lessen the total

financial obligations and liabilities as would otherwise be incurred in the absence of any

such sale, lease, or disposition.  In the event of any approved sale or lease or other

disposition of the Henderson Property under this Paragraph, any net proceeds from the

sale or lease or other disposition shall be paid to the Henderson Trust Environmental Cost

Account and/or the Henderson Trust Administrative Account in a proportion approved by

the Henderson Lead Agency and the Henderson Non-Lead Agency in writing.  The

disposition of the BMI/Landwell Assets shall be as set forth in Paragraph 70.   Neither

the United States nor the State of Nevada shall be required to accept an ownership

interest in the BMI/Landwell Assets or the Henderson Property or any part thereof upon

termination of the Henderson Trust.

88.     None of the Henderson Trust Parties shall be personally liable

unless the Court, by a final order that is not reversed on appeal, finds that it committed

fraud or willful misconduct after the Effective Date in relation to the Henderson Trustee's

duties.  There shall be an irrebuttable presumption that any action taken or not taken with

the approval of the Court does not constitute an act of fraud or willful misconduct.  Any

judgment against a Henderson Trust Party and any costs of defense relating to any

Henderson Trust Party shall be paid from the Henderson Trust Environmental Cost

Account or the Henderson Trust Administrative Account without the Henderson Trust

Party having to first pay from its own funds for any personal liability or costs of defense

unless a final order of the Court, that is not reversed on appeal, determines that it

committed fraud or willful misconduct in relation to the Henderson Trust Party's duties.

However, any such payment shall be limited to funds in the Henderson Trust

Environmental Cost Account or the Administrative Account.

   89. The Henderson Trust Parties are exculpated by all persons,

including without limitation, holders of claims and other parties in interest, of and from

any and all claims, causes of action and other assertions of liability arising out of the

ownership of Henderson Trust Assets and the discharge of the powers and duties

conferred upon the Henderson Trust and/or Trustee by this Settlement Agreement or any

order of court entered pursuant to or in furtherance of this Settlement Agreement, or

applicable law or otherwise.  No person, including without limitation, holders of claims

and other parties in interest, will be allowed to pursue any claims or causes of action

against any Henderson Trust Party for any claim against Debtors or Reorganized Tronox,

for making payments in accordance with this Settlement Agreement or any order of court,

or for implementing the provisions of this Settlement Agreement or any order of court.

Nothing in this Paragraph or the Settlement Agreement shall preclude the State of

Nevada and the United States from enforcing the terms of this Settlement Agreement against the Henderson Trust Parties.

90.     Except as may otherwise be provided herein: (a) the Henderson Trust Parties may rely on, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties; (b) the Henderson Trust Parties may consult with legal counsel, financial or accounting advisors and other professionals and shall not be personally liable for any action taken or not taken in accordance with the advice thereof; and (c) persons and entities dealing with the Henderson Trust Parties shall look only to the Henderson Trust Assets that may be available to them consistent with this Settlement Agreement to satisfy any liability incurred by the Henderson Trust Parties to such person in carrying out the terms of this Settlement Agreement or any order of the Court, and the Henderson Trust Parties shall have no personal obligations to satisfy any such liability other than as provided in Paragraph 89.

91.     Neither the State of Nevada, the United States, nor any of Debtors or Reorganized Tronox shall be deemed to be an owner, operator, trustee, partner, agent, shareholder, officer, or director of the Henderson Trust or the Henderson Trust Parties, or to be an owner or operator of the Henderson Property on account of this Settlement Agreement or actions contemplated thereby.  Nothing in this Paragraph purports to preclude or otherwise affect the status of Tenant as an operator or lessee of the Henderson Leased Facility on account of the Henderson Facility Lease or any activities or operations conducted by Tenant at the Henderson Leased Facility on or after the

Effective Date provided that Tenant shall not have any obligations with respect to

Henderson Legacy Conditions except as provided in Paragraph 75 herein.

## IX.    THE WEST CHICAGO ENVIRONMENTAL RESPONSE TRUST

92.    On the Effective Date, and simultaneously with receipt of the

payments to the West Chicago Trust Environmental Cost Accounts and West Chicago

Trust Work Accounts, Debtors will transfer all of their right, title, and interest in and to,

including, without limitation, all of their fee ownership in, all appurtenances, rights,

easements, rights-of-way, mining rights (including unpatented mining claims, mill site

claims, and placer claims), mineral rights, mineral claims, appurtenant groundwater

rights, associated surface water rights, claims, and filings, permits, licenses, third-party

warranties and guaranties for equipment or services to the extent transferable under

bankruptcy law or other interests (including without limitation all fixtures, improvements,

and equipment located thereon as of the Effective Date) related to the Rare Earths

Facility in West Chicago, Illinois ("REF"), and the properties owned by the Debtors in

the Residential Areas Site ("RAS") in West Chicago, Illinois and DuPage County, Illinois

("Owned RAS Properties"; with REF, collectively "West Chicago Owned Sites") to a

West Chicago Environmental Response Trust ("West Chicago Trust").  On and after the

Effective Date, Debtors and Reorganized Tronox shall have no ownership or other

residual interest whatsoever with respect to the West Chicago Owned Sites or the West

Chicago Trust.  The transfer of ownership by the Debtors of property shall be a transfer

of all of the Debtors' right, title and interests therein, and the transfer (i) shall be as is and

where is, with no warranties of any nature, (ii) shall be free and clear of all claims, liens

and interests against the Debtors, including liens for the payments of monetary claims,

such as property taxes, or other monetary claims asserted or that could have been asserted

in the bankruptcy proceeding, but shall remain subject to any existing in rem claims that

do not secure payment of monetary claims (such as easements or deed restrictions); (iii)

shall be subject to any rights of the United States and the State of Illinois under this

Settlement Agreement; and (iv) shall be accomplished by quitclaim deed, in a form

substantially similar to the quitclaim deed attached as Attachment C to this Settlement

Agreement, and/or personal property bill of sale without warranty, all such conveyance

documents to be agreed to in form by the Debtors and the trustee/licensee of the West

Chicago Trust ("West Chicago Trustee/Licensee"), provided that in no event shall the

conveyance include any warranty by the grantor by virtue of the grant document or

statutory or common law or otherwise.  Debtors and Reorganized Tronox hereby disclaim

any and all express or implied representations or warranties, including any

representations or warranties of any kind or nature, express or implied, as to the

condition, value or quality of such assets or other property, and specifically disclaim any

representation or warranty of merchantability, usage, suitability or fitness for any

particular purpose with respect to such assets or other property, any part thereof, the

workmanship thereof, and the absence of any defects therein, whether latent or patent, it

being understood that such assets are being acquired "as is, where is," and in their

condition of the Effective Date.  Debtors and Reorganized Tronox, as applicable, will

deliver to the title company (which will record or cause to be recorded in the appropriate

real property records) the transfer documents as soon as reasonably practicable, but not to

exceed 30 business days after the Effective Date.  Debtors shall pay the recording costs to

the title company relating to the title transfers.  Debtors shall pay to the applicable tax

authorities on or prior to the Effective Date all real property taxes relating to the West

Chicago Owned Sites due on or before the Effective Date.  Debtors and the West Chicago

Trust shall prorate the real property taxes accruing to or becoming a lien on the West

Chicago Owned Sites during the calendar year of the Effective Date, and Debtors shall

have paid to the West Chicago Trust their pro-rata share of such real property taxes as of

the Effective Date.  If the actual bills for such real property taxes have not been issued,

then such proration shall be based on an amount equal to such real property taxes for the

prior year or tax period, which shall constitute a final proration and not be subject to

further adjustment.  As of the Effective Date, the West Chicago Trust shall be responsible

for paying all real property taxes first coming due following the Effective Date relating to

the West Chicago Owned Sites.  Debtors shall execute, or cause to be executed, and

record, if necessary, all necessary releases of any liens or security interests held by any

Debtors against the West Chicago Owned Sites.  After Debtors execute this Settlement

Agreement, Debtors shall not further encumber the West Chicago Owned Sites, or their

other interests therein and shall maintain such properties in a commercially reasonable

manner, in accordance with Debtors' current practices, including the improvements

thereon and the fixtures thereto that are related to ongoing remediation activities in the

condition that they exist as of the date of such execution, except for ordinary wear and

tear, casualty and condemnation excepted, and except to the extent that ongoing

Environmental Actions require otherwise.

93.    On the Effective Date, Debtors shall transfer to the West Chicago

Trust all of their rights, title, and interest in all reimbursements from the Department of

Energy pursuant to Title X of the Energy Policy Act of 1992 ("Title X") as amended,

Pub. L. No. 102-486 (1992), to which Debtors would have been entitled based on remediation work performed by or on behalf of Debtors at the REF and the Kerr-McGee West Chicago NPL Sites (as defined in Subparagraph 117(k) below), and pursuant to the Consent Decree for the Kerr-McGee West Chicago NPL Sites, *United States v. Kerr-McGee Chemical LLC*, Civil Action No. 05C2318 (N.D. Ill.) ("Federal West Chicago Consent Decree") and the Consent Decree filed in *County of DuPage v. Kerr-McGee Chemical, LLC*, Civil Action No. 05C 1874 (N.D. Ill.) ("Local Communities Consent Decree").

94.     With respect to the Federal West Chicago Consent Decree, the United States, the State of Illinois, and Tronox LLC will file papers with the District Court for the Northern District of Illinois to modify the Federal West Chicago Consent Decree (and including without limitation any other applicable orders, decrees or agreements regarding investigation, remediation, cleanup or oversight as appropriate) to substitute the West Chicago Trust for Tronox LLC as a party to the Federal West Chicago Consent Decree  after the Effective Date for all purposes; provided, however, that (i) nothing in this Paragraph purports to impose any obligation on the West Chicago Trust in excess of the West Chicago Trust Assets, and (ii) other than the substitution of the West Chicago Trust for Tronox LLC, nothing in this Settlement Agreement shall affect any other provision of the Federal West Chicago Consent Decree.

95.     With respect to the Local Communities Consent Decree, the County of DuPage, Illinois, the Forest Preserve District of DuPage County, Illinois, the City of West Chicago, the City of Warrenville, and the West Chicago Park District (collectively, the "Local Communities") and Tronox LLC will file papers with the

District Court for the Northern District of Illinois to modify the Local Communities

Consent Decree (and including without limitation any other applicable orders, decrees or

agreements regarding investigation, remediation, cleanup or oversight as appropriate) to

substitute the West Chicago Trust for Tronox LLC as a party to the Local Communities

Consent Decree after the Effective Date for all purposes; provided, however, that (i)

nothing in this Paragraph  purports to impose any obligation on the West Chicago Trust

in excess of the West Chicago Trust Assets, (ii) nothing in this Paragraph purports to

relieve Tronox LLC or its successors of any releases or covenants not to sue in the Local

Communities Consent Decree, and (iii) other than the substitution of the West Chicago

Trust for Tronox LLC, nothing in this Settlement Agreement shall affect any other

provision of the Local Communities Consent Decree.

        96.     The purpose of the West Chicago Trust shall be to: (i) act as

successor to Debtors solely for the purpose of performing, managing, and funding

implementation of Environmental Actions selected by US EPA for (a) the portions of the

RAS that are not owned by Debtors ("Non-Owned RAS Properties") and the Owned

RAS Properties (collectively, "RAS Properties"), and (b) for Kress Creek and the West

Branch DuPage River in DuPage County, Illinois ("Kress Creek"), pursuant to the

Federal West Chicago Consent Decree and the Local Communities Consent Decree; (ii)

act as successor to the Debtors solely for the purpose of performing, managing, and

funding implementation of Environmental Actions at the REF; (iii) use all reasonable

efforts, by and through the West Chicago Trustee/Licensee, to secure Title X

reimbursements owed after the Effective Date from the Department of Energy, to which

the West Chicago Trustee/Licensee is legally entitled based on Environmental Actions

performed by or on behalf of Debtors and the West Chicago Trust (and regardless of whether further Environmental Actions continue to be necessary at Kress Creek, the RAS Properties, or the REF); (iv) own the West Chicago Owned Sites; (v) carry out administrative functions related to the performance of Environmental Actions by or on behalf of the West Chicago Trust at Kress Creek and the RAS Properties, and other administrative functions with respect to the West Chicago Owned Sites; (vi) ultimately sell, transfer or otherwise dispose or facilitate the reuse of all or part of the Owned RAS Properties (including, but not limited to, any appurtenances, machinery, equipment, fixtures, furniture, computers, tools, parts, supplies, and other tangible property on the Owned RAS Properties that are transferred to the West Chicago Trust), if possible; (vii) ultimately sell or transfer the REF to the City of West Chicago, pursuant to the conditions and terms set forth in the Phase 2 Final Agreement Between Kerr-McGee Chemical Corporation and The City of West Chicago, Illinois dated February 24, 1997 ("Phase 2 Final Agreement") as shall be specified in the West Chicago Trust Agreement with the approval of IEMA and the City of West Chicago; and (viii) to act as successor to Debtors for the purpose of complying with the provisions of the Kress Creek Settlement Agreement executed by the Debtors and the United States and dated May 1, 2010 ("Kress Creek Settlement Agreement").  The actions of the West Chicago Trust, including the sale, lease or other disposition of some or all of the West Chicago Assets by the West Chicago Trust and the West Chicago Trustee/Licensee's duties pursuant to the Settlement Agreement and the West Chicago Environmental Response Trust Agreement ("West Chicago Trust Agreement"), shall not be deemed an engagement in any trade or business. The West Chicago Trust by and through its West Chicago Trustee/Licensee not

individually but solely in its representative capacity, the Debtors, and the Lead Agencies

for the REF, the RAS Properties, and Kress Creek shall exchange information and

reasonably cooperate to determine the appropriate disposition of any executory contracts

or unexpired leases that relate to the relevant Site, provided however, that the West

Chicago Trustee/Licensee shall not be required to take assignment of any executory

contract or unexpired lease without the consent of the West Chicago Trustee/Licensee.

Debtors shall cooperate with the West Chicago Trustee/Licensee with the prompt and

orderly delivery of all executory contracts and leases and take such action with respect to

such contracts and leases as the Lead Agencies and the West Chicago Trustee/Licensee

may request before the Effective Date.  The West Chicago Trust shall not be required to

pay any cure costs.  The West Chicago Trust shall be funded as specified in Paragraph

104 herein.

      97.     Weston Solutions, Inc., solely in its representative capacity as

West Chicago Trustee/Licensee, is appointed as the West Chicago Trustee/Licensee to

administer the West Chicago Trust and the West Chicago Trust Accounts, in accordance

with this Settlement Agreement and the West Chicago Trust Agreement materially

consistent with the Settlement Agreement to be separately executed by the parties.

      98.     On the Effective Date, the West Chicago Trustee/Licensee shall

have obtained a Radioactive Material License ("REF License") issued by the Illinois

Emergency Management Agency ("IEMA") for the performance of Environmental

Actions at the REF.  The West Chicago Trustee/Licensee shall be bound by the

requirements of the REF License and applicable regulations, and any future amendments

to or transfers of the REF License must be made in accordance with applicable state and

federal law and regulations.  The West Chicago Trustee/Licensee shall ensure that all

Title X reimbursements received by the West Chicago Trust after the Effective Date from

the Department of Energy shall be deposited in the West Chicago Title X Account (as set

forth in Subparagraph 104(c) below).

      99.    As set forth in Paragraph 4 of the Kress Creek Settlement

Agreement, on the Effective Date, the Debtors shall assign the ARCADIS Contract, as

defined in Paragraph 3 of the Kress Creek Settlement Agreement, to the West Chicago

Trust in order that all rights, obligations, interests and liabilities of the Debtors pursuant

to the ARCADIS Contract shall be assigned to and assumed by the West Chicago Trust.

      100.    As set forth in Paragraph 6 of the Kress Creek Settlement

Agreement, US EPA, at its discretion, may transfer funds from the Kress Creek/West

Branch DuPage River Superfund Site Special Account ("West Chicago Special

Account") to the West Chicago Trust Work Account for Kress Creek or the West

Chicago Trust Work Account for the Non-Owned RAS Properties, for the West Chicago

Trustee/Licensee to conduct or finance response actions at or in connection with those

Sites.

      101.    As set forth in Paragraph 7 of the Kress Creek Settlement

Agreement, on or before the Effective Date, the Debtors shall provide to the West

Chicago Trustee/Licensee all information and documentation necessary to submit a Title

X claim for any remedial costs incurred by the Debtors for work performed under the

Kress Creek Settlement Agreement that was not previously claimed by the Debtors in

Paragraph 5 of the Kress Creek Settlement Agreement.

102.    As set forth in Paragraph 8 of the Kress Creek Settlement

Agreement, on the Effective Date, the Debtors shall transfer to the West Chicago Trust

all of their rights, title, and interest in all Title X reimbursements from the Department of

Energy to which the Debtors would have been entitled based on remediation work

performed by the Debtors under the Kress Creek Settlement Agreement.

103.    Debtors and Reorganized Tronox shall provide to the West

Chicago Trustee/Licensee Environmental Information and Real Property Information in

accordance with Section XIX below.

104.    The West Chicago Trust Accounts

a.    The West Chicago Trustee/Licensee shall create

segregated West Chicago Trust Environmental Cost Accounts ("West Chicago Trust

Environmental Cost Accounts") and segregated West Chicago Trust Work Accounts

("West Chicago Trust Work Accounts") within the West Chicago Trust for each of the

designated Sites ("West Chicago Trust Sites") listed in this Paragraph as follows: (i) a

West Chicago Trust Environmental Cost Account for REF; (ii) a West Chicago Trust

Work Account for Kress Creek; (iii) a West Chicago Trust Environmental Cost

Account for the Owned RAS Properties; and (iv) a West Chicago Trust Work Account

for the Non-Owned RAS Properties.  The purpose of the West Chicago Trust

Environmental Cost Account for the REF shall be to provide funding for future

Environmental Actions and certain past and future oversight costs of the State of

Illinois with respect to the REF (such past costs are unpaid costs incurred by IEMA

during the period July 1, 2010 through the Effective Date and payable pursuant to

Section 331.200 of the Radiation Protection regulations, 32 Ill. Adm. Code 331.200);

additionally, in accordance with Subparagraph 107(b), the West Chicago Trustee/Licensee may transfer funds from the West Chicago Trust Environmental Cost Account for the REF to the West Chicago Trust Work Account for Kress Creek. The purpose of the West Chicago Trust Work Account for Kress Creek shall be to fund the performance of Environmental Actions by the West Chicago Trust with respect to Kress Creek. The purpose of the West Chicago Trust Environmental Cost Account for the Owned RAS Properties shall be to provide funding for future Environmental Actions and certain future oversight costs of the State of Illinois and/or US EPA with respect to the Owned RAS Properties. The purpose of the West Chicago Trust Work Account for the Non-Owned RAS Properties shall be to fund the performance of Environmental Actions by the West Chicago Trust for the Non-Owned RAS Properties Sites. Funding from a West Chicago Trust Environmental Cost Account or West Chicago Trust Work Account for any of the West Chicago Trust Sites may not be used for any other Site except as expressly provided by and in accordance with Paragraph 107 below.

b.    The West Chicago Trustee/Licensee shall also create a segregated West Chicago Trust administrative account ("West Chicago Trust Administrative Account") to fund the payment of real estate taxes, insurance, and other Administrative Costs.

c.    The West Chicago Trustee/Licensee shall also create a segregated West Chicago Trust holding account ("West Chicago Trust Title X Account") to serve as a repository for Title X reimbursements.

          d.        Assets of the West Chicago Trust Environmental Cost Accounts, the West Chicago Trust Work Accounts, and the West Chicago Trust Administrative Account (collectively, the "West Chicago Trust Accounts") shall be held in trust solely for the purposes provided in this Settlement Agreement.  The State of Illinois on behalf of IEMA and the Illinois Environmental Protection Agency ("IEPA"), and the United States on behalf of the US EPA shall be the sole beneficiaries of the West Chicago Trust Accounts.  Neither Debtors nor Reorganized Tronox shall have any rights or interest to the West Chicago Assets, including but not limited to any Title X reimbursements received from the Department of Energy after the Effective Date, or to any funds remaining in any of the West Chicago Trust Accounts upon the completion of any and all final actions and disbursement of any and all final costs with respect to the West Chicago Trust Sites.

          e.        All interest, dividends and other revenue earned in a West Chicago Trust account shall be retained in the respective West Chicago Trust Account and used only for the same purposes as the principal in that account as provided in this Settlement Agreement, subject to any reallocation approved by the State of Illinois and US EPA in accordance with the terms of this Settlement Agreement.

          f.        In settlement of all claims of the United States, the State of Illinois, and the Local Communities against Debtors and Reorganized Tronox with respect to any and all costs of response incurred, or to be incurred, in connection with the REF, the RAS Properties and Kress Creek (including but not limited to the liabilities and other obligations asserted in the United States', State of Illinois and Local Communities' Proofs of Claim relating to REF, Kress Creek and the RAS Properties),

Debtors shall, on the Effective Date, make payments and effectuate transfers of funds

from applicable surety bonds and letters of credit, as described in the following

Subparagraphs herein.

       i.      On the Effective Date, Debtors shall make a payment of $8,303,002.00 to fund the West Chicago Trust Administrative Account;

       ii.      On the Effective Date, Debtors shall transfer the following surety bond and letter of credit to fund the West Chicago Trust Environmental Cost Account for the REF as follows:

       a.      Debtors shall convert to cash Bond No. 2971100-2630 ("REF Surety Bond") and on the Effective Date, transfer the $15,000,000.00 in total funds from the cancelled REF Surety Bond to the West Chicago Trust Environmental Cost Account for the REF to fund future Environmental Actions and certain past and future oversight costs of IEMA at the REF; and

       b.      Debtors shall convert to cash Letter of Credit No. CPCS-648701 ("REF Letter of Credit") and, on the Effective Date, transfer the $24,797,247.65 in total funds from the cancelled REF Letter of Credit to the West Chicago Trust Environmental Cost Account for the REF to fund future Environmental Actions and certain past and future oversight costs of IEMA at the REF.

       iii.      On the Effective Date, Debtors shall make a payment of $306,488.00 to fund future Environmental Actions and certain future oversight costs of the State of Illinois and US EPA with respect to the Owned RAS Properties, to be deposited in a West Chicago Trust Environmental Cost Account for the Owned RAS Properties.

       iv.      On the Effective Date, Debtors shall make a payment of $77,240.00 to fund future Environmental Actions to be deposited in a West Chicago Trust Work Account for the Non-Owned RAS Properties.  Funds in the West Chicago Trust Work Account for the Non-Owned RAS Properties may not be used for future oversight costs of the State of Illinois and US EPA with respect to the Non-Owned RAS Properties.

       v.      On the Effective Date, Debtors shall make a payment of $1,670,090.00 to fund future Environmental Actions to

be deposited in a West Chicago Trust Work Account for Kress Creek.  Funds in the West Chicago Trust Work Account for Kress Creek may not be used for future oversight costs of the State of Illinois and US EPA with respect to Kress Creek.

vi.    On the Effective Date, and as set forth in Paragraph 9 of the Kress Creek Settlement Agreement, Debtors shall transfer the funds remaining in the third-party escrow account established under the Kress Creek Settlement Agreement to either the West Chicago Trust Environmental Cost Account for the Owned RAS Properties, the West Chicago Trust Work Account for the Non-Owned RAS Properties, or to the West Chicago Trust Work Account for Kress Creek, pursuant to written instructions to be provided by US EPA before the Effective Date.

105.    West Chicago Lead Agencies

a.    For purposes of this Settlement Agreement, the Lead Agencies for the West Chicago Trust Sites are as follows:

| | |
|---|---|
| REF | IEMA |
| Kress Creek | US EPA |
| RAS Properties | US EPA |

b.    For purposes of this Settlement Agreement, the Non-Lead Agency for Kress Creek and the RAS Properties are as follows:

| | |
|---|---|
| Kress Creek | IEPA |
| RAS Properties | IEPA |

The Lead Agency for a West Chicago Trust Site shall consult with the Non-Lead Agency for that Site relating to approval of the budget or requests for funding for cleanup of the Site if such consultation is requested.  US EPA and the State of Illinois may provide the West Chicago Trustee/Licensee with joint written notice that the Lead Agency for a West Chicago Trust Site has changed.

c.    The West Chicago Trustee/Licensee, IEMA, IEPA and US EPA shall designate a contact for each West Chicago Trust Site.  Upon request, the

West Chicago Trustee/Licensee shall provide to IEMA, IEPA, and US EPA electronic or paper copies of technical memoranda, scopes of work, work plans, progress reports, and cost estimates and cost expenditures as the West Chicago Trustee/Licensee distributes those documents to the Lead Agency for each West Chicago Trust Site.  Upon request, the West Chicago Trustee/Licensee shall also provide copies of each West Chicago Environmental Cost Account and Work Account statement, work schedule, and budget to IEMA, IEPA, and US EPA, as those documents are generated.  IEMA, IEPA or US EPA may contact each other or the West Chicago Trustee/Licensee for information purposes.  However, each Lead Agency fully reserves its authority, rights and responsibilities to make decisions regarding its respective Work Chicago Trust Environmental Cost Account or Work Account.  The West Chicago Trustee/Licensee shall also provide an update on completed and scheduled work and other activities, especially of interest to the public, related to their respective West Chicago Trust Site(s) at the regularly scheduled Intergovernmental Forum.

d.        Within 90 days following the Effective Date in the first year and thereafter by January 1 of each year following the Effective Date, the West Chicago Trustee/Licensee shall provide to US EPA and IEMA a statement for each of the West Chicago Trust Environmental Cost and Work Accounts showing the balance of each cost account and proposed budget for the coming year.  The Lead Agency shall have the authority to approve or disapprove the proposed budget for the relevant West Chicago Trust Environmental Cost or Work Account after consultation with the Non-Lead Agency, if such consultation is requested.

e.        The West Chicago Trustee/Licensee shall pay funds from the West Chicago Trust Environmental Cost Accounts for the REF and the Owned RAS Properties to the Lead Agency making a written request for funds for reimbursement within 10 days following such request, for costs incurred for the REF or the Owned RAS Properties.  Such written request shall: (i) be in accordance with the approved budget set forth in Subparagraph 105(d) above, (ii) specify what the funds were used for and (iii) certify that they were used only for Environmental Actions and certain past costs and future oversight costs incurred after the Effective Date by the Lead Agency with respect to that Site.  The West Chicago Trustee/Licensee shall also pay funds from the West Chicago Trust Environmental Cost Account for the Owned RAS Properties to the Non-Lead Agency making a written request for funds within 30 days following such request where the Lead Agency has requested the assistance of the Non-Lead Agency with respect to that Site.  Such written request shall: (i) be in accordance with the approved budget set forth in Subparagraph 105(d) above, (ii) specify what the funds were used for, and (iii) certify that they were used only for Environmental Actions performed and/or oversight costs incurred after the Effective Date by the Non-Lead Agency with respect to the Owned RAS Properties.

f.        The West Chicago Trustee/Licensee shall pay funds from the West Chicago Trust Work Accounts for Kress Creek and the Non-Owned RAS Properties to the Lead Agency making a written request for funds for reimbursement within 30 days following such request.  Such written request shall: (i) be in accordance with the approved budget set forth in Subparagraph 105(d) above, (ii) specify what the funds were used for, and (iii) certify that they were used only for Environmental Actions.

The West Chicago Trustee/Licensee shall also pay funds from the West Chicago Trust Work Accounts for Kress Creek and the Non-Owned RAS Properties to the Non-Lead Agency making a written request for funds within 30 days following such request where the Lead Agency has requested the assistance of the Non-Lead Agency with respect to either Site.  Such written request shall: (i) be in accordance with the approved budget set forth in Subparagraph 105(d) above, (ii) specify what the funds were used for, and (iii) certify that they were used only for Environmental Actions performed by the Non-Lead Agency with respect to Kress Creek or the Non-Owned RAS Properties, and will not be used to reimburse the Lead Agency or the Non-Lead Agency for oversight costs.  The funds paid pursuant to this Subparagraph may not be used to reimburse the Lead Agency or Non-Lead Agency for oversight costs.

g.      In the case of requests by the Lead Agency to the West Chicago Trustee/Licensee to use the funds from a particular West Chicago Trust Environmental Cost or West Chicago Trust Work Account to perform Environmental Actions in accordance with the approved budget set forth in Subparagraph 105(d) above, the West Chicago Trustee/Licensee shall utilize the funds and interest earned thereon from that West Chicago Trust Environmental Cost or West Chicago Trust Work Account to undertake such work promptly and in accordance with any schedule approved by the Lead Agency.  The West Chicago Trustee/Licensee shall seek the approval of the Lead Agency of any contractor hired by the West Chicago Trustee/Licensee and any work plans to be undertaken by the West Chicago Trust under the oversight of the Lead Agency, unless the Lead Agency has provided a written waiver of such approval or

requirements.  The West Chicago Trustee/Licensee shall require liability insurance as set

forth in the West Chicago Trust Agreement from each contractor hired to perform work.

106.    The West Chicago Trustee/Licensee shall ensure that all Title X

reimbursements received by the West Chicago Trust after the Effective Date from the

Department of Energy shall be deposited in the West Chicago Title X Account.

107.    Transfers of Funds from the West Chicago Trust Accounts

a.    Transfers from the West Chicago Administrative Account.

US EPA, IEMA and the Local Communities may jointly direct the West Chicago

Trustee/Licensee to transfer 30% of the funds deposited in the West Chicago

Administrative Account pursuant to Subparagraph 104(b) into the West Chicago Trust

Work Account for Kress Creek.

b.    Transfers from the West Chicago Environmental Cost

Account for the REF.  To facilitate completion of Environmental Actions at Kress Creek

in a timely manner, IEMA authorizes the West Chicago Trustee/Licensee to transfer up to

a total of $14,000,000.00 in funds from the West Chicago Trust Environmental Cost

Account for the REF to the West Chicago Trust Work Account for Kress Creek to pay for

transportation and disposal costs as follows:

i.    First, within 30 days after the Effective Date, and
upon receipt and review of applicable invoices for costs incurred
for transportation and disposal during the 2010 construction season
through the Effective Date, the West Chicago Trustee shall transfer
funds in the total amount of transportation and disposal invoices
during the 2010 construction season through the Effective Date,
from the West Chicago Trust Environmental Cost Account for the
REF to the West Chicago Trust Work Account for Kress Creek;
and

ii.    Second, upon receipt of an invoice or invoices for
transportation and disposal costs of materials from Kress Creek,
the Owned RAS Properties, and the Non-Owned RAS Properties

> that were incurred after the Effective Date, the West Chicago
> Trustee shall transfer the amount of the invoices due and owing
> from the West Chicago Trust Environmental Cost Account for the
> REF to the West Chicago Trust Work Account for Kress Creek to
> provide for payment pursuant to the terms of the invoice(s).

The West Chicago Trustee/Licensee shall maintain funds in the West Chicago Trust

Environmental Cost Account for the REF as long as possible in order to provide for the

generation of interest consistent with the terms of the invoices.  If any portion of the

transferred REF funds remains after payment of all transportation and disposal costs

described herein, those funds shall be returned to the West Chicago Trust Environmental

Cost Account for the REF.

c.    Transfers from the West Chicago Title X Account.  In the

event that the West Chicago Trustee/Licensee is directed to transfer funds deposited in

the West Chicago Administrative Account into the West Chicago Trust Work Account

for Kress Creek, as provided in Subparagraph 107(a) above, any funds that become

available to the West Chicago Trust Title X Account shall be transferred to the West

Chicago Administrative Account until such time as the funds transferred by

Subparagraph 107(a) are restored (with no provision for interest).

d.    Subject to Subparagraph 107(c) above, the West Chicago

Trustee/Licensee shall allocate any funds from the West Chicago Trust Title X Account

as money becomes available according to the following priority list: (i) first, to the West

Chicago Trust Work Account for Kress Creek, in a total amount not to exceed

$17,000,000.00 (including Title X reimbursements relating to approved reimbursement

requests submitted to DOE after April 1, 2010); (ii) second, to the West Chicago

Environmental Cost Account for the REF to replenish the West Chicago Environmental

Cost Account for the REF in the amount of funds previously transferred to the West

Chicago Trust Work Account for Kress Creek; (iii) third, to the West Chicago Trust

Environmental Cost Account for the Owned RAS Properties or to the West Chicago

Trust Work Account for the Non-Owned RAS Properties, to fund Site evaluations and/or

to fund remaining Environmental Actions identified as of the Effective Date; (iv) fourth,

to the West Chicago Special Account to replenish the balance of the Special Account up

to the amount contained in the Special Account at the Effective Date, provided, however,

that the Special Account shall be reimbursed first unless the West Chicago

Trustee/Licensee determines, with the approval of US EPA and IEMA, that any of the

other West Chicago Trust Sites has a need for additional funding for remaining

Environmental Actions; (v) fifth, to the extent allowed by law, to reimburse all Superfund

monies provided to any of the West Chicago Trust Work Accounts, if any, in full or in

part; (vi) sixth, with the approval of US EPA and IEMA, to the Multistate Trust

Environmental Cost Account for any Site located in Illinois; (vii) seventh, in accordance

with instructions to be provided by the United States Department of Justice and the

relevant States, to the Henderson Trust Environmental Cost Account, the Cimarron Trust

Environmental Cost Account, the Savannah Trust Environmental Cost Account, or any of

the Multistate Trust Environmental Cost Accounts or Work Accounts if there are

remaining Environmental Actions to be performed at the Owned Funded Sites or the

Non-Owned Service Stations and a need for additional trust funding, with the allocation

among such Environmental Cost or Work Accounts to be determined by the projected

shortfall of performing such remaining Environmental Actions; (viii) eighth, to Non-

Owned Sites with a need for additional funding beyond the distributions received

pursuant to Paragraph 117 and from the Anadarko Litigation Proceeds; and (ix) ninth, to

the Superfund;

      e.      Transfer of Funds from the West Chicago Trust
Environmental Cost Accounts and Work Accounts upon
Completion of Environmental Actions:

After US EPA, IEMA and/or IEPA have confirmed to the West

Chicago Trustee that all final actions have been completed, and all final costs have been

disbursed to a West Chicago Trust Site, any funds remaining in that Site's Environmental

Cost Account or Work Account shall be transferred in the following order: (i) first, to the

West Chicago Trust Work Account for Kress Creek to fund  remaining Environmental

Actions at Kress Creek; (ii) second, to the West Chicago Environmental Cost Account for

the REF to replenish that account in the amount of funds transferred to the West Chicago

Trust Work Account for Kress Creek; (iii) third, to the West Chicago Trust

Environmental Cost Account for the Owned RAS Properties or the West Chicago Trust

Work Account for the Non-Owned RAS Properties, to fund Site evaluations and/or to

fund remaining Environmental Actions identified as of the Effective Date; (iv) fourth, to

the West Chicago Special Account to replenish the balance of the Special Account up to

the amount contained in the Special Account at the Effective Date, or to any of the other

West Chicago Trust Sites, provided, however, that the Special Account shall be

reimbursed first unless the West Chicago Trustee/Licensee determines, with the approval

of US EPA and IEMA, that any of the other West Chicago Trust Sites has a need for

additional funding for remaining Environmental Actions; (v) fifth, to the extent allowed

by law, to reimburse all Superfund monies provided to any of the West Chicago Trust

Work Accounts, if any, in full or in part; (vi), sixth, with the approval of US EPA and

IEMA, to the Multistate Trust Environmental Cost Account for any Site located in

Illinois; (vii) seventh, in accordance with instructions to be provided by the United States

Department of Justice and the relevant States, to the Henderson Trust Environmental

Cost Account, the Cimarron Trust Environmental Cost Account, the Savannah Trust

Environmental Cost Account, or any of the Multistate Trust Environmental Cost

Accounts or Work Accounts if there are remaining Environmental Actions to be

performed at Owned Sites or certain Non-Owned Sites in those Trusts and a need for

additional trust funding, with the allocation among such Environmental Cost or Work

Accounts to be determined by the projected shortfall of performing such remaining

Environmental Actions; (viii) eighth, to Non-Owned Sites with a need for additional

funding beyond the distributions received pursuant to Paragraph 117 and from the

Anadarko Litigation Proceeds; and (ix) ninth, to the Superfund.

           f.      Annually, beginning with the first year after the Effective

Date, the West Chicago Trustee/Licensee shall provide the United States and the State of

Illinois with an update of anticipated future Administrative Costs of the West Chicago

Trust.  The United States Department of Justice may thereafter instruct in writing after

consultation with the State of Illinois and the West Chicago Trustee/Licensee that any

conservatively projected surplus funding in the West Chicago Trust Administrative

Account be transferred to one or more of the other West Chicago Trust Environmental

Cost Accounts or West Chicago Trust Work Accounts established under this Settlement

Agreement for a West Chicago Trust Site if there are remaining actions to be performed

and with a need for additional trust funding or, to the extent there are no such remaining

actions, as described in clauses (i)-(ix) in the immediately preceding Subparagraph.  If

there is an anticipated shortfall in the West Chicago Trust Administrative Account based

on anticipated future Administrative Costs of the West Chicago Trust, funds in any of the

West Chicago Trust Environmental Cost Accounts may be transferred to the West

Chicago Trust Administrative Account, upon the joint direction of the Lead Agency and

the Non-Lead Agency, if applicable, for the respective Environmental Cost Account.

g.      Notwithstanding any other provision in this Settlement

Agreement, with respect to any West Chicago Trust Environmental Cost Account or

Work Account, in no event shall funds be removed from an account without the express

written consent of the Lead Agency for that account, except that IEMA hereby approves

the transfer of funds from the West Chicago Environmental Cost Account for the REF to

the West Chicago Trust Work Account for Kress Creek pursuant to Subparagraph 107(b)

above.

h.      Debtors shall continue, at their own expense, to maintain

ongoing environmental activities being performed by Debtors pursuant to injunctive,

compliance, and regulatory obligations and requirements at a West Chicago Trust Site,

including all obligations set forth in the Kress Creek Settlement Agreement and the REF

License until the Effective Date, including, but not limited to, environmental monitoring

activities; provided, however, if unanticipated environmental activities are required to be

performed by Debtors prior to the Effective Date,  Debtors will cooperate with the Lead

Agency in determining a commercially reasonable course of action.

108.   As provided by Paragraph 6 of the Kress Creek Settlement

Agreement, US EPA, at its discretion, may transfer funds from the Kress Creek/West

Branch DuPage River Superfund Site Special Account to the West Chicago Trust Work

Account for Kress Creek or to the West Chicago Trust Work Account for the Non-

Owned RAS Properties, to be used by the West Chicago Trustee to conduct or finance

response actions at or in connection with the West Chicago Trust Sites.

109.    West Chicago Trust Miscellaneous Provisions

a.    The West Chicago Trustee/Licensee shall at all times

seek to have the West Chicago Trust treated as a "qualified settlement fund" as that term

is defined in Treasury Regulation section 1.468B-1.  For purposes of complying with

Section 468B(g)(2) of the Internal Revenue Code of 1986, as amended, this Settlement

Agreement shall constitute a Consent Decree between the parties.  Approval of the Court,

as a unit of the District Court, shall be sought, and the Court shall retain continuing

jurisdiction over the West Chicago Trust and West Chicago Trust Accounts sufficient to

satisfy the requirements of Treasury Regulation section 1.468B-1.   The West Chicago

Trustee/Licensee shall cause any taxes imposed on the earnings of the West Chicago

Trust to be paid out of such earnings and shall comply with all tax reporting and

withholding requirements imposed on the West Chicago Trust under applicable tax laws.

The West Chicago Trustee/Licensee shall be the "administrator" of the West Chicago

Trust pursuant to Treasury Regulation section 1.468B-2(k)(3).  To the extent that the

Debtors choose to make a Grantor Trust Election with respect to the West Chicago Trust,

the West Chicago Trustee/Licensee shall provide reasonable cooperation to the Debtors

as needed to facilitate such election.  For the avoidance of doubt, any such Grantor

Election is for tax purposes only and shall in no way affect the substantive rights and

obligations of the parties under this Settlement Agreement or the West Chicago Trust

Agreement.

b.     The administrative funds within the West Chicago Trust

Administrative Account shall be used by the West Chicago Trustee/Licensee for

Administrative Costs, except as set forth in Subparagraph 107(a) above.  Within 90 days

following the Effective Date in the first year and thereafter by January 1 of each year, the

West Chicago Trustee/Licensee shall provide the United States and the State of Illinois

with an annual budget for administration of the West Chicago Trust for review and

approval or disapproval by the United States and the State of Illinois.

c.     In no event shall any of the West Chicago Trust Parties

be held liable to any third parties for any liability, action, or inaction of any other party,

including Debtors or any other West Chicago Trust Party.

d.     The West Chicago Trustee/Licensee shall implement any

institutional controls or deed restrictions requested by the United States and the Illinois

EPA with respect to the Owned RAS Properties, and any institutional controls or deed

restrictions requested by IEMA with respect to the REF.  Additionally, the West Chicago

Trustee/Licensee shall abide by the terms of any institutional controls or deed restrictions

in place or of record as to the REF and the Owned RAS Properties.

e.     In the event that the Court finds that the West Chicago

Trustee/Licensee in any material respect, as a result of negligence, exacerbates or

aggravates hazardous conditions at any of the West Chicago Trust Sites, is seriously or

repeatedly deficient or late in performance of the work or violates the provisions of this

Settlement Agreement, the West Chicago Trust Agreement or other related

implementation agreements, the United States and the State of Illinois may jointly direct

that: (i) the West Chicago Trustee/Licensee be replaced in accordance with the West

Chicago Trust Agreement; or (ii) all remaining funds and future recoveries in the West

Chicago Trust be paid to the United States or to the State of Illinois to be used in

accordance with the terms of this Settlement Agreement.

    f. The West Chicago Trust is intended to be governed by

the terms of this Settlement Agreement and the West Chicago Trust Agreement and shall

not be subject to any provision of the Uniform Custodial Trust Act as adopted by any

state, now or in the future.

    g. The West Chicago Trustee/Licensee may resign from its

trusteeship generally and without cause giving not less than 120 days prior written notice

thereof to the Court, the United States (including US EPA), the State of Illinois

(including IEMA) and the Local Communities, provided however, that in the event a

suitable replacement is not found and approved by the United States, the State of Illinois

(including IEMA), and the Local Communities within 120 days after such written notice

is provided, the West Chicago Trustee/Licensee's resignation shall not become effective

and the West Chicago Trustee/Licensee shall continue to function in its capacity as

Trustee/Licensee until a suitable replacement is found and approved by the United States,

the State of Illinois (including IEMA), and the Local Communities.

    110. The West Chicago Trustee/Licensee shall provide the United

States, the State of Illinois, and their representatives and contractors access to all portions

of the West Chicago Trust Sites at all reasonable times for the purposes of conducting

Environmental Actions at or near the West Chicago Trust Sites.  With respect to Kress

Creek, the West Chicago Trustee/Licensee shall also provide the Forest Preserve District

of DuPage County and their representatives and contractors access to all portions of the

Site at all reasonable times for the purposes of conducting Environmental Actions at or

near the Site.  The West Chicago Trustee/Licensee shall execute and record with the

appropriate recorder's office any easements or deed restrictions requested by the United

States and IEPA for restrictions on use of the Owned RAS Properties, or requested by

IEMA for restrictions on the use of the REF, in order to protect public health, welfare or

safety or the environment or ensure non-interference with or protectiveness of any action.

Any existing easements or deed restrictions of record as to the West Chicago Owned

Sites prior to the Effective Date of this Settlement Agreement shall survive the

Settlement Agreement.

111.    The United States and the State of Illinois may at any time propose

in writing to take ownership of the Owned RAS Properties or any part thereof.  Any such

proposed transfer and the terms thereof are subject to approval in writing by the United

States and the State of Illinois (after consultation with the West Chicago

Trustee/Licensee).  The West Chicago Trustee/Licensee may, at any time, seek the

approval of the United States and the State of Illinois for the sale or lease or other

disposition of all or part of the Owned RAS Properties.  The West Chicago

Trustee/Licensee shall also take all necessary steps to effectuate the transfer of the REF

to the City of West Chicago, as set forth in Subparagraph 96(vii) above.  However,

neither the United States nor the State of Illinois shall be required to accept an ownership

interest in remaining properties upon termination of the West Chicago Trust.

112.    Subject to the approval of the United States and the State of

Illinois, the West Chicago Trustee/Licensee may propose a sale, lease, or disposition of

the Owned RAS Properties that includes funding from, or the retention of some portion

of liability by, the West Chicago Trust Environmental Cost Account for the Owned RAS

Properties and/or the West Chicago Trust Administrative Account, provided that the net

effect of any proposed sale, lease or disposition is to lessen the West Chicago Trust's

total financial obligations and liabilities as would otherwise be incurred in the absence of

any such sale, lease, or disposition.  In the event of any approved sale or lease or other

disposition under this Paragraph, any net proceeds from the sale or lease or other

disposition shall be paid to the West Chicago Trust Environmental Cost Account for the

Owned RAS Properties and/or the West Chicago Trust Administrative Account in a

proportion approved by the United States and the State of Illinois in writing.

113.    None of the West Chicago Trust Parties shall be personally liable

unless the Court, by a final order that is not reversed on appeal, finds that it committed

acts that were grossly negligent, and/or committed fraud or willful misconduct after the

Effective Date in relation to the West Chicago Trustee/Licensee's duties.  There shall be

an irrebuttable presumption that any action taken or not taken with the approval of the

Court does not constitute gross negligence, or an act of fraud or willful misconduct.  Any

judgment against a West Chicago Trust Party and any costs of defense relating to any

West Chicago Trust Party shall be paid from the West Chicago Trust Environmental Cost

Account or West Chicago Trust Work Account for the relevant Site or the West Chicago

Trust Administrative Account without the West Chicago Trust Party having to first pay

from its own funds for any personal liability or costs of defense, unless a final order of

the Court, that is not reversed on appeal, determines that it committed acts that were

grossly negligent, and/or committed fraud or willful misconduct in relation to the West

Chicago Trust Party's duties.  However, any payment shall be limited to funds in the

West Chicago Trust Environmental Cost Account or Work Account for the relevant West

Chicago Trust Site or the West Chicago Trust Administrative Account.

114.    The West Chicago Trust Parties are exculpated by all persons,

including without limitation, holders of claims and other parties in interest, of and from

any and all claims, causes of action and other assertions of liability arising out of the

ownership of West Chicago Trust Assets and the discharge of the powers and duties

conferred upon the West Chicago Trust and/or West Chicago Trustee/Licensee by this

Settlement Agreement or any order of court entered pursuant to or in furtherance of this

Settlement Agreement, or applicable law or otherwise.  No person, including without

limitation, holders of claims and other parties in interest, will be allowed to pursue any

claims or cause of action against any West Chicago Trust Party for any claim against

Debtors, for making payments in accordance with this Settlement Agreement or any

order of court, or for implementing the provisions of this Settlement Agreement or any

order of court.  Nothing in this Paragraph or this Settlement Agreement shall preclude the

United States, the State of Illinois, or the Local Communities from enforcing the terms of

this Settlement Agreement against the West Chicago Trust Parties.

115.    Except as may otherwise be provided herein: (a) the West Chicago

Trust Parties may rely on, and shall be protected in acting upon, any resolution,

certificate, statement, instrument, opinion, report, notice, request, consent, order, or other

paper or document believed by them to be genuine and to have been signed or presented

by the proper party or parties; (b) the West Chicago Trust Parties may consult with legal

counsel, financial, tax, accounting or other advisors and professionals as they deem

appropriate and shall not be personally liable for any action taken or not taken in

accordance with the advice thereof; and (c) persons and entities dealing with the West

Chicago Trust Parties shall look only to the West Chicago Trust Assets that may be

available to them consistent with this Settlement Agreement and the West Chicago Trust

Agreement to satisfy any liability incurred by the West Chicago Trust Parties to such

person in carrying out the terms of this Settlement Agreement or any order of the Court,

and the West Chicago Trust Parties shall have no personal obligations to satisfy any such

liability other than as provided in Paragraph 113.  For the avoidance of doubt, the West

Chicago Trustee/Licensee shall have no obligation to perform work required by the

License obtained pursuant to this Settlement Agreement and the West Chicago Trust

Agreement if the cost of such work exceeds the value of the West Chicago

Environmental Cost Account for the REF.

116.    Neither the United States, the State of Illinois, the Local

Communities, nor any of Debtors or Reorganized Tronox shall be deemed to be an

owner, operator, trustee, partner, agent, shareholder, officer, or director of the West

Chicago Trust or the West Chicago Trust Parties, or to be an owner or operator of any of

the West Chicago Trust Sites on account of this Settlement Agreement or actions

contemplated thereby.

## X.       CASH FUNDING OF ENVIRONMENTAL ACTIONS WITH RESPECT TO CERTAIN NON-OWNED SITES

117.    On the Effective Date, Debtors shall make payments in accordance

with this Paragraph which, together with the payments the Anadarko Litigation Trustee

shall make under Paragraph 125, and with satisfaction of all other obligations of Debtors

herein, are in settlement and full satisfaction of all claims of the Governments against

Debtors and Reorganized Tronox with respect to any and all costs of response incurred,

or to be incurred, in connection with the following Non-Owned Sites (including but not

limited to the liabilities and other obligations asserted in the United States', the Navajo

Nation's, the States', and Local Governments' respective Proofs of Claim relating to the

Non-Owned Sites).  With respect to the payments received by US EPA under this

Paragraph, except as provided in Subparagraphs 117(p), (r) and (v), US EPA shall deposit

the funds into the Superfund, or into Site-specific special accounts to be retained and

used to conduct or finance response actions at or in connection with the relevant Site or to

be transferred to the Superfund.

> a.    Anniston Terminal (Alabama):  payment of $6,320.00 on
the Effective Date to the State of Alabama in connection with the Anniston Bulk Fuel
Terminal in Anniston, Alabama ("Anniston Terminal").  Debtors shall transfer the
payment under this Subparagraph pursuant to the instructions set forth in Paragraph
131(a).

> b.    Birmingham Terminal (Alabama):  payment of
$179,525.00 on the Effective Date to the State of Alabama in connection with the
Birmingham Petroleum Terminal in Birmingham, Alabama ("Birmingham Terminal").
Debtors shall transfer the payment under this Subparagraph pursuant to the instructions
set forth in Paragraph 131(a).

> c.    Mansfield Canyon Site (Arizona):  payment of $94,797.00
on the Effective Date to the United States on behalf of the Forest Service in connection
with the Mansfield Canyon Watershed Site in the Coronado National Forest in Arizona
("Mansfield Canyon Site").  Debtors shall transfer the payment under this Subparagraph
pursuant to the instructions set forth in Paragraph 129.

> d.    Juniper Mine Site (California):  payment of $191,490.00 on
the Effective Date to the United States on behalf of the Forest Service in connection with
the Juniper Uranium Mine Site in the Sonora Mining District, Tuolumne County,
California ("Juniper Mine Site").  Debtors shall transfer the payment under this
Subparagraph pursuant to the instructions set forth in Paragraph 129.

> e.    Brunswick Site (Georgia):  payment of $632.00 on the
Effective Date to the State of Georgia in connection with the Brunswick Site in
Brunswick, Georgia ("Brunswick Site").  Debtors shall transfer the payment under this
Subparagraph pursuant to the instructions set forth in Subparagraph 131(b).

f.      Lindsay Light Removal Sites (Illinois):  payment of $2,724,470.00 on the Effective Date to the United States on behalf of the US EPA in connection with the Lindsay Light Removal Sites in Chicago, Illinois ("Lindsay Light Removal Sites").  Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Paragraph 129.

g.      Streeterville Rights-of-Way  (Illinois):  payment of $2,692,871.00 on the Effective Date to the United States on behalf of US EPA, in connection with claims filed by the United States on behalf of US EPA and the City of Chicago for the Streeterville Rights-of-Way in Chicago, Illinois ("Streeterville Rights-of-Way").  Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Paragraph 129, to be transferred to a special account with the Superfund to be retained and used to conduct or finance response actions at or in connection with the Streeterville Rights-of-Way after the Effective Date.  US EPA shall make funds received in accordance with this Subparagraph available to the City of Chicago for work conducted under a US EPA-approved workplan and pursuant to a cooperative agreement entered into by US EPA and the City of Chicago for the Streeterville Rights-of-Way, including rights-of-way subsequently acquired by the City of Chicago.

h.      DuSable Park (Illinois):  payment of $269,287.00 on the Effective Date to the United States on behalf of US EPA, in connection with claims filed by the United States on behalf of US EPA and the Chicago Park District for DuSable Park in Chicago, Illinois ("DuSable Park").  Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Paragraph 129, to be transferred to a special account with the Superfund to be retained and used to conduct or finance future response actions at or in connection with DuSable Park after the Effective Date.  US EPA shall make funds received in accordance with this Subparagraph available to the Chicago Park District for work conducted under a US EPA-approved workplan and pursuant to a cooperative agreement entered into by US EPA and the Chicago Park District for DuSable Park.

i.      Decatur Site (Illinois):  payment of $632.00 on the Effective Date to the State of Illinois in connection with the Decatur, Illinois Site ("Decatur Site").  Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Subparagraph 131(c).

j.      Mount Vernon Site (Illinois):  payment of $94,797.00 on the Effective Date to the State of Illinois in connection with the Creosote Forest Products Site in Mount Vernon, Illinois ("Mount Vernon Site").  Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Subparagraph 131(c).

k.      Kerr-McGee West Chicago NPL Sites (Illinois): On the Effective Date, Debtors shall make the following payments in connection with the RAS Properties, Reed-Keppler Park in West Chicago Illinois, the Sewage Treatment Plant Site

in West Chicago and DuPage County, Illinois, and Kress Creek (collectively, the "Kerr-McGee West Chicago NPL Sites"):

> i.    payment of $632.00 for NRD costs of the State of Illinois pursuant to the Federal West Chicago Consent Decree. Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Subparagraph 131(c);

> ii.    payment of $47,917.00 to the United States on behalf of US EPA, in connection with US EPA's claim for future oversight costs at the Non-Owned RAS Properties and Kress Creek, to be transferred pursuant to the instructions set forth in Paragraph 129; and

> iii.    payment of $63,198.00 to the United States on behalf of US EPA, in connection with US EPA's claim for past costs at the Kerr-McGee West Chicago NPL Sites, to be transferred pursuant to the instructions set forth in Paragraph 129.

l.    <u>Dubach Gas Site (Louisiana)</u>:  (i) payment of $1,896.00 on the Effective Date to the State of Louisiana in connection with the Dubach Gas Site in Dubach, Louisiana ("Dubach Gas Site"); and (ii) payment of $419.00 to the State of Louisiana for past cost claims in connection with the Site.  Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Subparagraph 131(d).

m.    <u>Fireworks Site (Massachusetts)</u>:  (i) payment of $947,967.00 on the Effective Date to the Commonwealth of Massachusetts for response actions to be performed in connection with the property at and near Forge Pond/Industrial Park, in Hanover, Massachusetts, including environmental activities relating to the migration of hazardous substances emanating from that location ("Fireworks Site"); (ii) payment of $1,896.00 on the Effective Date for reimbursement of the Commonwealth of Massachusetts for pre-petition response action costs incurred in relation to the Fireworks Site; and (iii) payment of $94,797.00 on the Effective Date for NRD (and assessment costs) incurred or to be incurred in relation to the Fireworks Site.  Debtors shall make the payments under this Subparagraph in accordance with the instructions set forth in Subparagraphs 131(e)(i), (ii) and (iii), respectively.

n.    <u>Hattiesburg Site (Mississippi)</u>:  payment of $389,310.00 on the Effective Date to the State of Mississippi in connection with the Hattiesburg, Mississippi Site ("Hattiesburg Site").  Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Subparagraph 131(f).

o.    <u>Manville Site (New Jersey)</u>:  (i) payment of $2,908,702.00 on the Effective Date to the United States on behalf of US EPA in connection with the Federal Creosote Superfund Site in Manville, New Jersey ("Manville Site"); (ii) payment of $394,986.00 on the Effective Date to the State of New Jersey in connection with the

Manville Site; and (iii) and payment of $94,797.00 on the Effective Date to the State of New Jersey with respect to any and all NRD in connection with the Manville Site. Debtors shall transfer the payments under this Subparagraph pursuant to the instructions set forth in Paragraph 129 (the United States on behalf of US EPA) and pursuant to the instructions set forth in Subparagraph 131(h) (the State of New Jersey).

        p.      Navajo Area Uranium Mines (Multiple States):  payment of $12,039,562.00 on the Effective Date to the United States on behalf of the US EPA in connection with the "Navajo Area Uranium Mines" which shall mean: (1) the 49 mines or mining exploration Sites identified as "Designated Navajo Area Mines" on Attachment B, (2) any other uranium mines or uranium mining exploration Sites on Attachment B for which US EPA Region 9 determines that it is the lead region under the terms of the "Memorandum of Agreement Between the Navajo Nation and the U.S. Environmental Protection Agency Regions 6, 8 and 9 Regarding the Implementation of Environmental Standards and Regulations of the Navajo Nation" dated October 9, 1991; and (3) any other uranium mines or uranium mining exploration Sites on Attachment B that US EPA Region 9, after discussions with Navajo Nation, determines may have an impact on or within the Navajo Nation.  Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Paragraph 129.  The total amount to be received by US EPA pursuant to this Subparagraph shall be transferred by US EPA to one or more special accounts with respect to the Navajo Area Uranium Mines within the Superfund to be retained and used to conduct or finance response actions at or in connection with the Navajo Area Uranium Mines, or transferred to the Superfund, if there is no remaining work at the Navajo Area Uranium Mines.  US EPA and the Navajo Nation Environmental Protection Agency ("Navajo EPA") will continue their ongoing process of prioritizing response actions for the Navajo Area Uranium Mines and will determine lead responsibility for response action at each mine.

        q.      Welsbach Site (New Jersey): payment of $3,159,890.00 on the Effective Date to the United States on behalf of US EPA in connection with the Welsbach and General Gas Mantle Contamination Superfund Site in Camden and Gloucester City, New Jersey ("Welsbach Site").  Debtors shall transfer the payment under this Subparagraph to the instructions set forth in Paragraph 129.

        r.      Quivira Mine Site (New Mexico):  payment of $1,263,956.00 on the Effective Date to the United States on behalf of US EPA in connection with claims filed on behalf of the US EPA and the Navajo Nation for the Quivira Mine Site.  Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Paragraph 129.  The total amount to be received by US EPA pursuant to this Subparagraph shall be transferred by US EPA to one or more special accounts with respect to the Quivira Mine Site within the Superfund to be retained and used to conduct or finance response actions at or in connection with the Quivira Mine Site, or transferred to the Superfund, if there is no remaining work at the Quivira Mine Site.

        s.      Shiprock Mill Site (New Mexico):  payment of $1,231,978.00 on the Effective Date to the Navajo Nation in connection with the

Shiprock Mill Site.  Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Paragraph 130.

t.    Toledo Tie Site (Ohio):  payment of $191,231.00 on the Effective Date to the United States on behalf of the US EPA in connection with the Toledo Tie Treatment Site in Toledo, Ohio ("Toledo Tie Site"), and payment of $65,625.00 to the State of Ohio in connection with the Site.  Debtors shall transfer the payments under this Subparagraph pursuant to the instructions set forth in Paragraph 129 (the United States on behalf of US EPA) and pursuant to the instructions set forth in Subparagraph 131(j) (the State of Ohio).

u.    Gore, Kriner/Stigler and Wynnewood Sites (Oklahoma):  payment of $94,797.00 on the Effective Date to the State of Oklahoma for all NRD claims in connection with the Gore, Oklahoma Site ("Gore Site"), the Kriner/Stigler, Oklahoma Site ("Kriner/Stigler Site"), and the Wynnewood, Oklahoma Site ("Wynnewood Site").   Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Subparagraph 131(k).

v.    White King/Lucky Lass Site (Oregon):  payment of $448,812.00 on the Effective Date to the United States on behalf of the US EPA in connection with the White King/Lucky Lass Mines Superfund Site in Lakeview, Oregon ("White King/Lucky Lass Site"), and payment of the 100% cash value of the $500,000 JPMorgan Letter of Credit for the Site.  Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Paragraph 129, to be transferred to one or more accounts as directed by the United States.

w.    Riley Pass Site (South Dakota):  payment of $96,082.00 on the Effective Date to the United States on behalf of the US EPA, and payment of $7,272,648.00 on the Effective Date to the United States on behalf of the Forest Service in connection with the North Cave Hills/Riley Pass Mine Site in Harding County, South Dakota ("Riley Pass Site").  Debtors shall transfer the payments under this Subparagraph pursuant to the instructions set forth in Paragraph 129.

x.    Flat Top Mine (South Dakota):  payment of $631,978.00 on the Effective Date to the United States on behalf of the US EPA in connection with the Flat Top Mine in Ludlow, South Dakota ("Flat Top Mine").  Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Paragraph 129.

y.    Non-Owned Portion of the Moss American NPL Site (Wisconsin): payment of $724,419.00 on the Effective Date to the United States on behalf of US EPA in connection with the Non-Owned Portion of the Moss American NPL Site ("Moss American NPL Site") in Milwaukee, Wisconsin.  Debtors shall transfer the payment under this Subparagraph pursuant to the instructions set forth in Paragraph 129.

## XI.    **ADDITIONAL CONSIDERATION**

118.    In addition to the other payments described above, subject to and in accordance with Article XII.D of the Plan of Reorganization, Debtors shall pay $3,000,000 to such account or accounts as the United States and the State of Nevada may direct.  Such amount shall be deemed to satisfy all fees and expenses incurred, directly or indirectly, in connection with the Plan or the Bankruptcy Cases, including, without limitation, (a) all fees and expenses of any legal or financial advisors to the Governments and any consultants or other persons retained or engaged by or on behalf of the Governments and (b) any other out of pocket costs and expenses incurred by the Governments.

## XII.    **ANADARKO LITIGATION TRUST**

119.    Pursuant to the terms of the Litigation Trust Agreement for Anadarko Litigation to be separately executed ("Anadarko Litigation Trust Agreement"), on the Effective Date, the Debtors will establish a trust and transfer all of their right, title, and interest to the Anadarko Litigation to the Anadarko Litigation Trust.

120.    Debtors shall remain responsible for paying all expenses, fees, and other obligations of the Anadarko Litigation incurred on or before the Effective Date. The terms of the Anadarko Litigation Trust Agreement shall provide that the expenses, fees, and other obligations of the Anadarko Litigation Trust incurred at any time after the Effective Date shall be paid from a portion of the cash consideration provided by Debtors under this Settlement Agreement that has been expressly reserved for that purpose, and/or from the proceeds of any recovery in the Anadarko Litigation.  In no event shall the

Governments be responsible for paying any expenses, fees, and other obligations of the

Anadarko Litigation Trust incurred at any time after the Effective Date.

121.    On the Effective Date, and simultaneously with receipt of the

payments to the Multistate Trust Accounts, the Savannah Trust Accounts, the Cimarron

Trust Accounts, the Henderson Trust Accounts, and the West Chicago Trust Accounts,

the Debtors shall make a payment of $25,000,000.00 to fund the costs and expenses of

the Anadarko Litigation Trust and the trustee of the Anadarko Litigation Trust

("Anadarko Litigation Trustee").

122.    After the Anadarko Litigation Proceeds are distributed to the

Owned and Non-Owned Sites as set forth in Paragraphs 124 and 125, any funds left over

in the Anadarko Litigation Trust shall be distributed to the Sites in accordance with those

allocations, except for those Sites at which no further action is required, whose share

shall be distributed pro rata in accordance with those allocations.

123.    In addition to the payments made by Debtors to the Multistate

Trust, the Cimarron Trust, the Henderson Trust, the Savannah Trust, and the West

Chicago Trust as set forth in Paragraphs 10, 38, 55, 80, and 104, and together with the

payments under Paragraphs 70, 117 and 118, in settlement and full satisfaction of all

claims asserted by the United States on behalf of US EPA, Forest Service, DOI, NOAA

and NRC, the Navajo Nation, the States and the Local Governments against Debtors and

Reorganized Tronox with respect to any and all costs of response incurred or to be

incurred in connection with the Owned Sites and Non-Owned Sites (including but not

limited to the liabilities and other obligations in the United States', the Navajo Nation's,

the States'  and the Local Governments' Proofs of Claim), the Anadarko Litigation

Trustee shall distribute to the Governments and the Multistate Trustee, Savannah Trustee,

Cimarron Trustee, Henderson Trustee, and West Chicago Trustee/Licensee the Anadarko

Litigation Proceeds.  Distributions from the Anadarko Litigation Proceeds for the Owned

Funded Sites and Non-Owned Service Stations shall be made in addition to the funding

from the Multistate Trust Environmental Cost Accounts, Multistate Trust Work

Accounts, Savannah Trust Environmental Cost Account, Henderson Trust Environmental

Cost Account, Cimarron Trust Environmental Work Accounts, and West Chicago Trust

Environmental Cost Accounts and West Chicago Trust Work Accounts for the Owned

Funded Sites and Non-Owned Service Stations, as set forth in Paragraphs 10, 38, 55, 80,

and 104.  The Anadarko Litigation Proceeds shall be distributed among the Multistate

Trust, Savannah Trust, Henderson Trust, Cimarron Trust and West Chicago Trusts for the

Owned Funded Sites and Non-Owned Service Stations, and to the Governments for the

remaining Non-Owned Sites and Other Sites, as set forth in Paragraphs 124 and 125

below.  With respect to the payments received by US EPA under Paragraphs 124 and

125, except as provided in Subparagraphs 124(d), and 125(o), (q) and (u), EPA shall

deposit the funds into the Superfund, or into Site-specific special accounts to be retained

and used to conduct or finance response actions at or in connection with the relevant Site,

or to be transferred to the Superfund.  These payments shall be on account of allowed

claims of the Governments and/or resolutions of causes of action of the Governments,

and shall be allocated as set forth in Paragraphs 124 and 125 below.

        124.    <u>Distributions of Anadarko Litigation Proceeds With Respect to Owned
Funded Sites</u>

        a.    <u>Birmingport Site (Alabama)</u>:  The Multistate Trust shall receive,
in addition to the distributions to the Multistate Trust Environmental Cost Account
described in Subparagraph 10(f)(ii) above, a distribution of 0.01% of the Anadarko
Litigation Proceeds.  The distribution received under this Subparagraph shall be

deposited in the Multistate Trust Environmental Cost Account for that Site, to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.

b.    Mobile Site (Alabama):  The Multistate Trust shall receive, in addition to the distributions to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(iii) above, a distribution of 6% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be deposited in the Multistate Trust Environmental Cost Account for that Site, to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.

c.    Kerr-McGee Jacksonville Site (Florida):

i.    The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(iv) above, a distribution of 2% of the Anadarko Litigation Proceeds, to be deposited in the Multistate Trust Environmental Cost Account for the Site, to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.  The United States on behalf of US EPA shall also receive a distribution of 0.003% of the Anadarko Litigation Proceeds for past response costs incurred in connection with the Site.  The payment to the United States on behalf of US EPA shall be made pursuant to the instructions set forth in Paragraph 129.

ii.    The Multistate Trustee will segregate any funds distributed under this Subparagraph to the Multistate Trust Environmental Cost Account (or such amount thereof as remains unspent at that time) (the "Kerr-McGee Jacksonville Anadarko Amount") into a separate account that shall be reserved unspent until US EPA and the State of Florida thereafter notify the Multistate Trustee how the Kerr-McGee Jacksonville Anadarko Amount will be equitably allocated between operation and maintenance and other response action/response costs.  At that time, the Multistate Trustee shall divide the Kerr-McGee Jacksonville Anadarko Amount into separate subaccounts within the Multistate Trust Environmental Cost Account for the Kerr-McGee Jacksonville Site for operation and maintenance and other response action/response costs in accordance with the notice provided, and may thereafter release those funds for use (to the extent otherwise consistent with a budget approved pursuant to Subparagraph 12(a) hereof) for the purposes of the respective accounts.  Notwithstanding anything to the contrary in this paragraph, at any time US EPA and the State of Florida may jointly authorize the Multistate Trustee to release any or all of the Kerr-McGee Jacksonville Anadarko Amount for use consistent with a budget approved pursuant to Subparagraph 12(V.12.a) hereof without waiting for the allocation process described above;

d.    Savannah Facility (Georgia): In settlement and full satisfaction of all claims of the United States on behalf of the US EPA, and the State of Georgia against Debtors and Reorganized Tronox, as described in Paragraph 123 above, and including the civil penalty assessed by the Consent Decree to be filed in United States v. Tronox Pigments (Savannah) Inc., No. CV 408-259 (S.D. Ga.), the Savannah Trust shall receive, in addition to the distribution to the Savannah Trust Environmental Cost Account described in Paragraph 38 above, a distribution of 1% of the Anadarko Litigation

Proceeds, to be deposited in the Savannah Trust Environmental Cost Account for the Savannah Facility, to be retained and used to conduct or finance Environmental Actions at or in connection with the Facility. The State of Georgia shall also receive a distribution of 0.001% of the Anadarko Litigation Proceeds in full satisfaction of its past cost claims with respect to the Facility, to be transferred pursuant to the instructions set forth in Subparagraph 131(b). The United States on behalf of US EPA shall also receive a distribution of 0.01% of the Anadarko Litigation Proceeds to the United States Treasury in full satisfaction of its penalty claim with respect to the Facility, to be transferred pursuant to the instructions set forth in Paragraph 129.

e.    Soda Springs Site (Idaho): The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(vi) above, a distribution of 2% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be deposited in the Multistate Trust Environmental Cost Account for the Site to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.

f.    Madison Site (Illinois): The Multistate Trust shall receive, in addition to the distributions to the Multistate Environmental Cost Accounts described in Subparagraph 10(f)(vii) above, a distribution of 0.15% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be deposited in the Multistate Trust Environmental Cost Account for the Site, to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.

g.    Sauget Site (Illinois): The Multistate Trust shall receive, in addition to the distributions to the Multistate Environmental Cost Accounts described in Subparagraph 10(f)(viii) above, a distribution of 0.1% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be deposited in the Multistate Trust Environmental Cost Account for the Site, to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.

h.    Indiana Wood Treating Site (Indiana):  The Multistate Trust shall receive, in addition to the distributions to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(ix) above, a distribution of 0.05% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be deposited in the Multistate Trust Environmental Cost Account for the Site, to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.

i.    Rushville Site (Indiana):  The Multistate Trust shall receive, in addition to the distributions to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(x) above, a distribution of 0.001% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be deposited in the Multistate Trust Environmental Cost Account for the Site, to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.

       j.     <u>Bossier City Site (Louisiana)</u>:  The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xi) above, a distribution of 0.5% of the Anadarko Litigation Proceeds, to be deposited in the Multistate Trust Environmental Cost Account for the Site, to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.  The State of Louisiana shall also receive a distribution of 0.00017% of the Anadarko Litigation Proceeds for past costs incurred in connection with the Site, to be transferred pursuant to the instructions set forth in Subparagraph 131(d).

       k.     <u>Calhoun Gas Plant (Louisiana)</u>:  The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xii) above, a distribution of 0.25% of the Anadarko Litigation Proceeds, to be deposited in the Multistate Trust Environmental Cost Account for the Plant, to be retained and used to conduct or finance Environmental Actions at or in connection with the Plant.  The State of Louisiana shall also receive a distribution of 0.00017% of the Anadarko Litigation Proceeds for past costs incurred in connection with the Plant, to be transferred pursuant to the instructions set forth in Subparagraph 131(d).

       l.     <u>Columbus Site (Mississippi)</u>:

       i.     The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xiii) above, a distribution of 1.5% of the Anadarko Litigation Proceeds, to be deposited in the Multistate Trust Environmental Cost Account for the Site to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.  The United States on behalf of US EPA shall also receive a distribution of 0.003% of the Anadarko Litigation Proceeds for past response costs incurred in connection with the Site.  The payment to the United States on behalf of US EPA shall be made pursuant to the instructions set forth in Paragraph 129.

       ii.     If the Columbus Site is added to the National Priorities List, the Multistate Trustee will segregate any funds  distributed pursuant to this Subparagraph (or such amount thereof as remains unspent at that time) (the "Columbus Anadarko Amount") into a separate account that shall be reserved unspent until US EPA and the State of Mississippi thereafter notify the Multistate Trustee how the Columbus Anadarko Amount will be equitably allocated between operation and maintenance and other response action/response costs.  At that time, the Multistate Trustee shall divide the Columbus Anadarko Amount into separate subaccounts within the Multistate Trust Environmental Cost Account for the Columbus Site for operation and maintenance and other response action/response costs in accordance with the notice provided, and may thereafter release those funds for use (to the extent otherwise consistent with a budget approved pursuant to Subparagraph 12(a) hereof) for the purposes of the respective accounts.  Notwithstanding anything to the contrary in this paragraph, at any time US EPA and the State of Mississippi may jointly authorize the Multistate Trustee to release any or all of the Columbus Anadarko Amount for use consistent with a budget approved

pursuant to Subparagraph 12(a) hereof without waiting for the allocation process described above.

      m.    <u>Meridian Site (Mississippi)</u>:

      i.    The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xiv) above, a distribution of 0.5% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be deposited in the Multistate Trust Environmental Cost Account for the Site to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.

      ii.    If the Meridian Site is added to the National Priorities List, the Multistate Trustee will segregate any funds  distributed pursuant to this Subparagraph (or such amount thereof as remains unspent at that time) (the "Meridian Anadarko Amount") into a separate account that shall be reserved unspent until US EPA and the State of Mississippi thereafter notify the Multistate Trustee how the Meridian Anadarko Amount will be equitably allocated between operation and maintenance and other response action/response costs.  At that time, the Multistate Trustee shall divide the Meridian Anadarko Amount into separate subaccounts within the Multistate Trust Environmental Cost Account for the Meridian Site for operation and maintenance and other response action/response costs in accordance with the notice provided, and may thereafter release those funds for use (to the extent otherwise consistent with a budget approved pursuant to Subparagraph 12(a) hereof) for the purposes of the respective accounts.  Notwithstanding anything to the contrary in this paragraph, at any time US EPA and the State of Mississippi may jointly authorize the Multistate Trustee to release any or all of the Meridian Anadarko Amount for use consistent with a budget approved pursuant to Subparagraph 12(a) hereof without waiting for the allocation process described above;

      n.    <u>Kansas City Site (Missouri)</u>: The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xv) above, a distribution of 0.5% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be deposited in the Multistate Trust Environmental Cost Account for the Site, to be retained and used to conduct or finance Environmental Actions at or in connection with the Site. The State of Missouri shall also receive a distribution of 0.033% of the Anadarko Litigation Proceeds for NRD incurred in connection with the Site.  The payment to the State of Missouri shall be made pursuant to the instructions set forth in Paragraph 131(g).

      o.    <u>Springfield Site (Missouri)</u>: The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xvi) above, a distribution of 0.5% of the Anadarko Litigation Proceeds, to be deposited in the Multistate Trust Environmental Cost Accounts for the Site, to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.  The State of Missouri shall also receive a distribution of 0.117% of the Anadarko Litigation Proceeds for NRD incurred in connection with the

Site.  The payment to the State of Missouri shall be made pursuant to the instructions set forth in Paragraph 131(g).

p.    Henderson Property (Nevada):  The Henderson Trust shall receive, in addition to the distribution to the Henderson Trust Environmental Cost Accounts described in Paragraph 80 above, a distribution of 23.75% of the Anadarko Litigation Proceeds, to be deposited in the Henderson Trust Environmental Account to be retained and used to conduct or finance Environmental Actions at or in connection with the Henderson Property.  Notwithstanding the foregoing sentence:

i.    BMI/Landwell Offset In General.  If the Anadarko Litigation Proceeds are greater than $150 million (the amount by which the Anadarko Litigation Proceeds exceed $150 million, the "Excess Anadarko Proceeds"), then the amount otherwise distributable to the Henderson Trust in respect of the Excess Anadarko Proceeds pursuant to the first sentence of this Subparagraph 124(p) may be reduced by an amount ("BMI/Landwell Offset"), which may be $0, determined by the remainder of this Subparagraph 124(p).  The amount of any BMI/Landwell Offset shall be redistributed to the other recipients of distributions under Paragraph 124 (excluding the Henderson Trust), in proportion to the percentages contained in Paragraph 124.

ii.    BMI/Landwell Offset if No Sale Event.  If no Sale Event has occurred prior to the distribution of the Anadarko Litigation Proceeds, then the amount of the BMI/Landwell Offset shall be equal to the lesser of (x) 25% of the Excess Anadarko Proceeds, and (y) 65% of the value of BMI/Landwell Assets.  For this purpose, the United States and the State of Nevada shall provide the Anadarko Litigation Trustee with a joint written notification of the value of the BMI/Landwell Assets.  This joint written notification shall conclusively set the value of the BMI/Landwell Assets for the purpose of the BMI/Landwell Offset.  The United States and State of Nevada shall jointly agree on a mechanism for determining the value of the BMI/Landwell Assets.  For the purpose of this Subparagraph, the value of the BMI/Landwell Assets shall be adjusted by (i) subtracting the amount of any Carrying Costs (defined in Subparagraph 70(d) above), and (ii) adding the amount of any profits realized by the Henderson Trust on the BMI/Landwell Assets, to the extent not already included in the valuation.

iii.    Offset Under Certain Circumstances if Sale Event Occurred.  If a Sale Event has occurred prior to the distribution of the Anadarko Litigation Proceeds, the amount of the BMI/Landwell Offset shall be the lesser of (x) 25% of the Excess Anadarko Proceeds and (y) 65% of $20 million.

iv.    BMI/Landwell Offset if BMI/Landwell Optional Transfer.  Notwithstanding anything to the contrary in Subparagraphs 124(p)(i)-(iii), if, before the distribution of the Anadarko Litigation Proceeds, (i) a BMI/Landwell Optional Transfer has occurred or (ii) the Henderson Trustee provides written notice to the Anadarko Litigation Trustee that it shall make a BMI/Landwell Optional Transfer, then the amount of the BMI/Landwell Offset shall be $0.00.  The Anadarko Litigation Trustee shall be entitled to withhold an amount equal to the amount of the BMI/Landwell Offset that would otherwise have been payable (the "Withheld BMI/Landwell Amount")

pending the closing of such BMI/Landwell Optional Transfer.  Upon such closing, the Withheld BMI/Landwell Amount shall promptly be paid to the Henderson Trust.

   q. <u>Bristol Mine Site (Nevada)</u>: The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xvii) above, a distribution of 0.003% of the Anadarko Litigation Proceeds, to be deposited in the Multistate Trust Environmental Cost Account for the Site, to be retained and used to conduct or finance Environmental Actions at or in connection with that Site.

   r. <u>Caselton Mine Site (Nevada)</u>: The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xviii) above, a distribution of 0.15% of the Anadarko Litigation Proceeds, to be deposited in the Multistate Trust Environmental Cost Account for the Site, to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.  The United States on behalf of BLM shall also receive a distribution of 0.01% of the Anadarko Litigation Proceeds for past costs incurred in connection with the Site, to be transferred pursuant to the instructions set forth in Paragraph 129.

   s. <u>Rome Site (New York)</u>: The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xix) above, a distribution of 0.4% of the Anadarko Litigation Proceeds, to be deposited in the Multistate Trust Environmental Cost Account for the Site, to be retained and used to conduct or finance Environmental Actions at or in connection with that Site.  The State of New York shall also receive a distribution of 0.002% of the Anadarko Litigation Proceeds for past costs incurred in connection with the Site, and a distribution of 0.003% for NRD incurred in connection with the Site, to be transferred pursuant to the instructions set forth in Subparagraph 131(i).

   t. <u>Navassa Site – Non-NRD Claims (North Carolina)</u>:  The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xx) above, a distribution of 2% of the Anadarko Litigation Proceeds for the United States' claim on behalf of US EPA and for North Carolina's claim, to be deposited in the Multistate Trust Environmental Cost Account for the Site to be retained and used to conduct or finance Environmental Actions at or in connection with that Site, or to be transferred by US EPA to the Superfund.  Based on the final response action selected for the Navassa Site, US EPA and the State of North Carolina shall notify the Multistate Trustee as to how the distribution of the Anadarko Litigation Proceeds set forth this Subparagraph will be equitably allocated between operation and maintenance and other response action/response costs.  The Multistate Trustee shall thereafter allocate the total distribution of the Anadarko Litigation Proceeds for the Navassa Site in separate subaccounts within the Multistate Trust Environmental Cost Account for the Navassa Site for operation and maintenance and other response action/response costs in accordance with the notice provided.  The United States on behalf of US EPA shall also receive a distribution of 0.003% of the Anadarko Litigation Proceeds for past costs

incurred in connection with the Site, to be transferred pursuant to the instructions set forth in Paragraph 129.

u. <u>Navassa Site – NRD Claims (North Carolina)</u>: The Joint Navassa Claimants shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xx) above, an allocated distribution of 0.5% of the Anadarko Litigation Proceeds. The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129, to be subsequently deposited into the DOI NRDAR Fund pursuant to payment instructions to be provided. These funds, and any interest earned thereon, shall be jointly managed by the Joint Navassa Claimants.

v. <u>Cimarron Site (Oklahoma)</u>: The Cimarron Trust shall receive, in addition to the distributions to the Cimarron Trust Environmental Cost Account described in Subparagraph 55(e) above, a distribution of 1.75% of the Anadarko Litigation Proceeds, to be allocated as follows: (i) 1.5% for the United States' claim, and (ii) 0.25% for the State of Oklahoma's claim. The distribution for the United States' claim under this Subparagraph shall be deposited in the Cimarron Trust Federal Environmental Cost Account to decommission and remediate the Cimarron Site. The distribution for Oklahoma's claim under this Subparagraph shall be deposited in the Cimarron Trust State Environmental Cost Account to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.

w. <u>Cleveland Site (Oklahoma)</u>: The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xxi) above, a distribution of 1% of the Anadarko Litigation Proceeds, to be deposited in the Multistate Trust Environmental Cost Account for the Site, to be retained and used to conduct or finance response Environmental Actions at or in connection with the Site. The State of Oklahoma shall also receive a distribution of 0.16% of the Anadarko Litigation Proceeds for NRD incurred in connection with the Site, to be transferred pursuant to the instructions set forth in Subparagraph 131(k).

x. <u>Cushing Site (Oklahoma)</u>: The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xxii) above, a distribution of 2% of the Anadarko Litigation Proceeds, to be deposited in the Multistate Trust Environmental Cost Account for the Site, to be retained and used to conduct or finance Environmental Actions at or in connection with the Site. The State of Oklahoma shall also receive a distribution of 0.06% of the Anadarko Litigation Proceeds for NRD incurred in connection with the Site, to be transferred pursuant to the instructions set forth in Subparagraph 131(k).

y. <u>Texarkana Facility – non-NRD Claims (Texas)</u>: The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account described in Subparagraph 10(f)(xxvi) above, a distribution of 0.5% of the Anadarko Litigation Proceeds, to be deposited in the Multistate Trust Environmental Cost

Account for the Facility to be retained and used to conduct or finance Environmental Actions at or in connection with the Facility.

z.    Texarkana Facility – NRD Claims (Texas):

i.    The United States on behalf of DOI shall receive a distribution of 0.006% of the Anadarko Litigation Proceeds for past costs with respect to the Texarkana Facility.  This distribution shall be transferred pursuant to the instructions set forth in Paragraph 129, to be deposited into the DOI NRDAR Fund pursuant to payment instructions to be provided.

ii.    The Joint Texarkana Claimants shall receive a distribution of 0.3% of the Anadarko Litigation Proceeds for NRD with respect to the Texarkana Facility.  This distribution shall be transferred pursuant to the instructions set forth in Paragraph 129, to be deposited into the DOI NRDAR Fund pursuant to payment instructions to be provided.

iii.    The State of Texas Trustees shall receive a distribution of 0.16% of the Anadarko Litigation Proceeds for NRD and past costs with respect to the Texarkana Facility to be transferred pursuant to the instructions set forth in Subparagraph 131(l).

aa.    Beaumont Site (Texas):  The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Accounts described in Subparagraph 10(f)(xxiv) above, a distribution of 0.5% of the Anadarko Litigation Proceeds, to be deposited in the Multistate Trust Environmental Cost Account for the Site, to be retained and used to conduct or finance Environmental Actions at or in connection with the Site.

bb.    Owned Service Stations (Multiple States):  The Multistate Trust shall receive, in addition to the distribution to the Multistate Trust Environmental Cost Account for Service Stations described in Subparagraph 10(f)(xxvii) above, a distribution of 0.15% of the Anadarko Litigation Proceeds, to be deposited in the jointly managed Multistate Trust Environmental Cost Account for Owned Service Stations, to be retained and used to conduct or finance Environmental Actions at or in connection with the Owned Service Stations.

cc.    Environmental Response Trusts

i.    The Multistate Trust shall receive a distribution of 1.155% of the Anadarko Litigation Proceeds, to be deposited in the Multistate Trust Administrative Account.

ii.    The Savannah Trust shall receive a distribution of 0.285% of the Anadarko Litigation Proceeds, to be deposited in the Savannah Trust Administrative Account.

iii.    The Cimarron Trust shall receive a distribution of 0.089% of the Anadarko Litigation Proceeds, to be deposited in the Cimarron Trust Administrative Account.

iv.    The Henderson Trust shall receive a distribution of 1.25% of the Anadarko Litigation Proceeds, to be deposited in the Henderson Trust Administrative Account.

125.    <u>Distributions of Anadarko Litigation Proceeds With Respect to Certain Non-Owned Sites</u>

a.    <u>Anniston Terminal (Alabama)</u>:  The State of Alabama shall receive, in addition to the distribution described in Subparagraph 117(a) above, a distribution of 0.01% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Subparagraph 131(a).

b.    <u>Birmingham Terminal (Alabama)</u>: The State of Alabama on shall receive, in addition to the distribution described in Subparagraph 117(b) above, receive a distribution of 0.1% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Subparagraph 131(a).

c.    <u>Mansfield Canyon Site (Arizona)</u>: The United States on behalf of the Forest Service shall receive, in addition to the distribution described in Subparagraph 117(c) above, a distribution of 0.15% of the Anadarko Litigation Proceeds. The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129.

d.    <u>Juniper Mine Site (California)</u>: The United States on behalf of the Forest Service shall receive, in addition to the distribution described in Subparagraph 117(d) above, the following distributions of the Anadarko Litigation Proceeds: (i) 0.25% for response actions to be performed in connection with the Site; and (ii) 0.053% for pre-petition response action costs incurred in relation to the Site.  The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129.

e.    <u>Brunswick Site (Georgia)</u>: The State of Georgia shall receive, in addition to the distribution described in Subparagraph 117(e) above, a distribution of 0.001% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Subparagraph 131(b).

f.    <u>Lindsay Light Removal Sites – US EPA Claim (Illinois)</u>: The United States on behalf of the US EPA shall receive, in addition to the distribution described in Subparagraph 117(f) above, a distribution of 1.55% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129.

g.       Streeterville Rights-of-Way – US EPA and City of Chicago Claims (Illinois):  In connection with claims filed by the United States on behalf of US EPA and the City of Chicago, the United States on behalf of US EPA shall receive, in addition to the distribution described in Subparagraph 117(g) above, a distribution of 1% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129, to be transferred to a special account within the Superfund to be retained and used to conduct or finance response actions at or in connection with the Streeterville Rights-of-Way after the Effective Date.  US EPA shall make funds received in accordance with this Subparagraph available to the City of Chicago for work conducted under a US EPA-approved workplan and pursuant to a cooperative agreement entered into by US EPA and the City of Chicago for the Streeterville Rights-of-Way, including rights-of-way subsequently acquired by the City of Chicago.

h.       DuSable Park – US EPA and Chicago Park District Claims (Illinois):  In connection with the claims filed by the United States on behalf of US EPA and the Chicago Park District, the United States on behalf of US EPA shall receive, in addition to the distributions described in Subparagraph 117(h) above, a distribution of 0.15% of the Anadarko Litigation Proceeds.  The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129, to be transferred to a special account within the Superfund to be retained and used to conduct or finance response actions at or in connection with DuSable Park after the Effective Date.  US EPA shall make funds received in accordance with this Subparagraph available to the Chicago Park District for work conducted under a US EPA-approved work plan and pursuant to a cooperative agreement entered into by US EPA and the Chicago Park District for DuSable Park.

i.       Kerr-McGee West Chicago NPL Sites (Illinois):  The United States on behalf of the US EPA shall receive, in addition to the distribution described in Subparagraph 104(f) above, a distribution of 0.1% of the Anadarko Litigation Proceeds for past costs incurred by the US EPA at the Kerr-McGee West Chicago NPL Sites, and a distribution of 0.1% for future oversight costs to be incurred by US EPA at the Non-Owned RAS Properties and Kress Creek.  The State of Illinois shall also receive a distribution of 0.001% of the Anadarko Litigation Proceeds for NRD at Kress Creek.  Distributions to the United States on behalf of the US EPA under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129, and distributions to the State of Illinois under this Subparagraph shall be transferred pursuant to the instructions set forth in Subparagraph 131(c).

j.       Decatur and Mount Vernon Sites (Illinois):  The State of Illinois shall receive, in addition to the distributions described in Subparagraphs 117(i) and (j) above, a distribution of 0.151% of the Anadarko Litigation Proceeds, to be allocated as follows: (i) 0.001% for the Decatur Site, and (ii) 0.15% for the Mount Vernon Site.  Distributions received by the State of Illinois under this Subparagraph shall be transferred pursuant to the instructions set forth in Subparagraph 131(c).

k.      Dubach Gas Site (Louisiana):  The State of Louisiana shall
receive, in addition to the distribution described in Subparagraph 117(l) above, a
distribution of 0.00066% of the Anadarko Litigation Proceeds.  The distribution received
under this Subparagraph shall be transferred pursuant to the instructions set forth in
Subparagraph 131(d).

l.      Fireworks Site (Massachusetts):  The Commonwealth of
Massachusetts shall receive the following distributions of the Anadarko Litigation
Proceeds: (i) 1.5% for response actions to be performed in connection with the Fireworks
Site; (ii) 0.003% for reimbursement of the Commonwealth of Massachusetts for pre-
petition response action costs incurred in relation to the Fireworks Site; and (iii) 0.15%
for NRD (including assessment costs) incurred or to be incurred in relation to the
Fireworks Site.  Distributions required under this Subparagraph shall be made pursuant to
the instructions set forth in Subparagraphs 131(e)(i), (ii) and (iii), respectively.

m.      Hattiesburg Site (Mississippi): The State of Mississippi shall
receive, in addition to the distribution described in Subparagraph 117(n) above, a
distribution of 0.1% of the Anadarko Litigation Proceeds.  The distribution received
under this Subparagraph shall be transferred pursuant to the instructions set forth in
Subparagraph 131(f).

n.      Manville Site (New Jersey): The United States on behalf of the
US EPA shall receive a distribution of 4.85% of the Anadarko Litigation Proceeds for its
pre-petition response costs, and the State of New Jersey shall receive a distribution of
0.625% of the Anadarko Litigation Proceeds for its pre-petition response costs.  The State
of New Jersey shall also receive a distribution of 0.1% of the Anadarko Litigation
Proceeds for NRD incurred or to be incurred in connection with the Site.  The distribution
received by the United States on behalf of the US EPA under this Subparagraph shall be
transferred pursuant to the instructions set forth in Paragraph 129.  The distribution
received by the State of New Jersey for its pre-petition response costs under this
Subparagraph shall be transferred pursuant to the instructions set forth in Subparagraph
131(h).  The distribution received by the State of New Jersey for NRD under this
Subparagraph shall be transferred pursuant to the instructions set forth in Subparagraph
131(h).

o.      Navajo Area Uranium Mines (Multiple States): The United
States on behalf of the US EPA shall receive, in addition to the distribution described in
Subparagraph 117(p) above, a distribution of 20% of the Anadarko Litigation Proceeds.
The distribution received under this Subparagraph shall be transferred pursuant to the
instructions set forth in Paragraph 129.  The total amount to be received by US EPA
pursuant to this Subparagraph shall be transferred by US EPA to one or more special
accounts with respect to the Navajo Area Uranium Mines within the Superfund to be
retained and used to conduct or finance response actions at or in connection with the
Navajo Area Uranium Mines, or to the Superfund, if there is no remaining work at the
Navajo Area Uranium Mines.

p.      Welsbach Site (New Jersey): The United States on behalf of the US EPA shall receive a distribution of 5% of the Anadarko Litigation Proceeds. The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129.

q.      Quivira Mine Site (New Mexico):  In connection with claims filed by the Navajo Nation and the United States on behalf of US EPA, the United States on behalf of US EPA shall receive, in addition to the distribution set forth in Subparagraph 117(r) above, a distribution of 2% of the Anadarko Litigation Proceeds for the Sites. The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129. The total amount to be received by US EPA pursuant to this Subparagraph shall be transferred by US EPA to one or more special accounts with respect to the Quivira Mine Site within the Superfund to be retained and used to conduct or finance response actions at or in connection with the Quivira Mine Site, or transferred to the Superfund, if there is no remaining work at the Quivira Mine Site.

r.      Shiprock Mill Site (New Mexico):  The Navajo Nation shall receive, in addition to the distribution described in Subparagraph 117(s) above, a distribution of 1% of the Anadarko Litigation Proceeds. The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 130.

s.      Toledo Tie Site (Ohio): The United States on behalf of the US EPA shall receive a distribution of 0.113% of the Anadarko Litigation Proceeds, and the State of Ohio shall receive a distribution of 0.102% of the Anadarko Litigation Proceeds. The distribution received by the United States on behalf of the US EPA under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129. The distribution received by the State of Ohio under this Subparagraph shall be transferred pursuant to the instructions set forth in Subparagraph 131(j).

t.      Gore Site, Kriner/Stigler Site and Wynnewood Site (Oklahoma):  The State of Oklahoma shall receive, in addition to the distribution described in Subparagraph 117(u) above, a distribution of 0.15% of the Anadarko Litigation Proceeds for any and all NRD-related costs and damages incurred or to be incurred in connection with these Sites. Distributions received by the State of Oklahoma under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 131(k).

u.      White King/Lucky Lass Site (Oregon): The United States on behalf of the US EPA shall receive, in addition to the distribution described in Subparagraph 117(v) above, a distribution of 0.25% of the Anadarko Litigation Proceeds. The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129, to be transferred to one or more accounts as directed by the United States.

        v.        Riley Pass Site (South Dakota): The United States on behalf of the US EPA and the Forest Service shall receive, in addition to the distributions described in Subparagraph 117(w) above, the following distributions from the Anadarko Litigation Proceeds: (i) 0.06% for the claim on behalf of the US EPA, and (ii) 4.053% for the claim on behalf of the Forest Service. The distributions received under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129.

        w.        Flat Top Mine (South Dakota): The United States on behalf of the US EPA shall receive, in addition to the distribution described in Subparagraph 117(x) above, a distribution of 1% of the Anadarko Litigation Proceeds. The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129.

        x.        Non-Owned Portion of the Moss American NPL Site (Wisconsin): The United States on behalf of the US EPA shall receive, in addition to the distribution described in Subparagraph 117(y) above, a distribution of 0.41% of the total Anadarko Litigation. The distribution received under this Subparagraph shall be transferred pursuant to the instructions set forth in Paragraph 129.

        y.        Non-Owned Service Stations (Multiple States): The Multistate Trust shall receive a distribution of 0.5% of the Anadarko Litigation Proceeds. The distributions received under this Subparagraph shall be deposited in the jointly managed Multistate Trust Environmental Work Account for Non-Owned Service Stations, to be retained and used to conduct or finance response actions at or in connection with the Non-Owned Service Stations.

        126.        Distributions of Anadarko Litigation Proceeds with Respect to Other Sites for Which the United States and States have Provided Covenants Not to Sue (Multiple States):

        a.        The Multistate Trust shall receive a distribution of 3% of the Anadarko Litigation Proceeds for Sites identified in Attachments A-3 and B as Other Sites ("Other Sites") to be deposited in a segregated trust account within the Multistate Trust ("Other Sites Account"); provided that if pursuant to Subparagraph 117(p), above, a mine or exploration mining site is a Navajo Area Uranium Mine, then such Site shall not constitute an Other Site, notwithstanding its identification as such in Attachment B. The Multistate Trust shall promptly provide the United States and those States which have provided covenants not to sue or releases for such Other Sites pursuant to Paragraph 137 below, with written notice that the distribution required under this Subparagraph has been transferred to the Other Sites Account.

        b.        Within 90 days following receiving notice from the Multistate Trustee pursuant to Subparagraph 126(a) above, the United States and the relevant States may submit to the Multistate Trustee requests for funding of Environmental Actions to be performed by the Multistate Trustee with respect to a specified Other Site or for reimbursement of Environmental Actions performed or to be performed by the United States or the States with respect to such Other Site, with

certifications that (a) such funds were and/or will be used only for Environmental Actions performed in connection with the Other Site and (b) the amounts sought to be distributed do not exceed the Debtors' allocable share at that Site.  The Multistate Trustee may request additional supporting documentation from the United States and the relevant States to make disbursement determinations pursuant to this Subparagraph.  Upon review of the requests, and upon a determination that the certifications are accurate, the Multistate Trustee shall disburse the funds in the Other Sites Account as set forth in Subparagraphs 126(c) and (d) below.  To the extent that an Other Site is owned by the Multistate Trust, the Multistate Trustee may provide for funding of Environmental Actions at that Site, pursuant to a workplan approved by either US EPA or the State, from the Other Sites Account on the same terms that the United States or a State would be able to request funding if the United States or a State had given a covenant not to sue for such Other Site.

c.    If  the total amount of approved requests under Subparagraph 126(b) is less than or equivalent to the total amount in the Other Sites Account, the Multistate Trustee shall make disbursements from the Other Sites Account to fund or reimburse Environmental Actions.  If, two years after the distributions for the Other Sites are made under this Subparagraph, any funds remain in the Other Sites Account, the Multistate Trustee shall distribute 10% of the remaining funds to the Multistate Trust Administrative Account, and distribute the remaining 90% among the Owned Funded Sites and Non-Owned Sites (except for the Other Sites) pursuant to the Anadarko Litigation allocations set forth in Paragraphs 124 and 125.

d.    If the total amount of approved requests under Subparagraph 126(b) is more than the total amount in the Other Sites Fund, disbursements shall be prorated among approved requests, provided, however, that disbursements for requests for past costs incurred by the United States and the relevant States before the Effective Date shall not exceed more than 10% of the funds in the Other Sites Account, and the Multistate Trustee shall promptly provide notice to the United States and the States that no further requests are being taken.

127.    With respect to the claims of the United States on behalf of the US EPA, Forest Service, DOI, NOAA, and NRC, of the Navajo Nation, of the States, and of the Local Governments, only the amount of cash received respectively by each such agency, tribal government, each such State, or each such Local Government for such claims (and net cash received by each such agency, tribal government, or each such State on account of any non-cash distributions) in the Bankruptcy Cases, and not the total amount of the claims asserted in the Governments' Proofs of Claim, shall be credited by each such agency, tribal government, each such State, or each such Local Government to

its account for a particular Site, which credit shall reduce the liability to such agency,

tribal government, State, or Local Government of non-settling potentially responsible

parties (or responsible parties that have only partially settled their liability) for the

particular Site by the amount of the credit.

## XIII.    SATISFACTION OF DOD CONTRIBUTION CLAIM

128.    The payments from Debtors and the distributions from the

Anadarko Litigation Trust as paid and distributed to the Commonwealth of

Massachusetts pursuant to Subparagraphs 117(m) and 125(l), and the covenant not to sue

the United States with respect to the Fireworks Site provided by Debtors and

Reorganized Tronox as set forth in Paragraph 148 below, shall be in settlement and full

satisfaction of DoD's claims against Debtors and Reorganized Tronox with respect to the

Fireworks Site (including, but not limited to the Fireworks I Site portion of the Proof of

Claim brought by the United States on behalf of DoD).

## XIV.    DISTRIBUTION INSTRUCTIONS

129.    Cash payments to the United States required in this Settlement

Agreement shall be made by FedWire Electronic Funds Transfer ("EFT") to the United

States Department of Justice in accordance with written instructions to be provided by the

Financial Litigation Unit of the United States Attorney's Office for the Southern District

of New York, 86 Chambers Street, New York, New York 10007.  At the time of payment

a copy of the EFT authorization form and the EFT transaction record, together with a

transmittal letter — which shall state that the payment is pursuant to the Settlement

Agreement in *In re Tronox, Inc.*, No. 09-10156 (Bankr. S.D.N.Y.) (ALG), and shall refer

to the civil action number and the United States Department of Justice Case Number 90-

11-3-09688 — shall be sent by first-class mail to:

>   EPA Cincinnati Finance Office
>   26 Martin Luther King Drive
>   Cincinnati, Ohio 45268
>
>   United States Attorney's Office
>   Attn: Financial Litigation Unit
>   86 Chambers Street, Third Floor
>   New York, New York 10007
>
>   United States Department of Justice
>   Environment and Natural Resources Division
>   Attn: Chief, Environmental Enforcement Section
>   P.O. Box 7611
>   Ben Franklin Station
>   Washington, DC 20044
>
>   Environmental Protection Agency
>   Ariel Rios Building
>   1200 Pennsylvania Avenue, N.W.
>   Washington, DC 20004
>
>   Fund Manager
>   Natural Resource Damage Assessment and Restoration Fund
>   Department of the Interior
>   Office of Natural Resource Restoration
>   1849 C Street, NW
>   Mailstop 3548
>   Washington, DC 20240
>
>   Fund Manager
>   Central Materials Hazardous Fund
>   Department of the Interior
>   1849 C. Street, NW
>   Washington, DC 20240

130.    Cash payments to the Navajo Nation required in this Settlement

Agreement shall be made to the Navajo Nation Environmental Protection Agency for

deposit in the Hazardous Substances Fund, with additional routing instructions to be

provided by the Navajo Nation at the time of transfer.

131.    Distributions to the States

a.    Cash payments to the State of Alabama shall be made by

electronic funds transfer as follows:

    ACH                  062-0000-80
    Fed. Wire            111-025-013
    Wachovia Account  21 000 3 00 00 282

b.    Cash payments to the State of Georgia shall be made

pursuant to routing or other instructions to be provided by the State of Georgia prior to

transfer.

c.    Cash payments to the State of Illinois shall be made as

follows:

i.    For past costs claims, payment shall be made by
certified check or money order payable to the Illinois Environmental Protection Agency
for deposit into the Hazardous Waste Fund.  The payment shall be sent by first class mail
and delivered to:  Illinois Environmental Protection Agency, Fiscal Services, 1021 North
Grand Avenue East, P.O. Box 19276, Springfield, IL 62794-9276.  The name, case
number and the Debtor's federal tax identification number shall appear on the face of the
certified check or money order.  A copy of each certified check or money order and any
transmittal letter shall be sent to the Illinois Attorney General at: Environmental Bureau,
Illinois Attorney General's Office, 500 South Second Street, Springfield, IL 62706.

ii.    For NRD costs, payment shall be made by certified
check or money order to the Illinois Department of Natural Resources, Office of Realty
& Environmental Planning, One Natural Resources Way, Springfield, IL 62702-1271, for
Invoice # 8170-0901.

d.    Cash payments to the Louisiana Department of

Environmental Quality shall be mailed or delivered to the attention of Account

Administrator, Financial Services Division, Louisiana Department of Environmental

Quality, P.O. Box 4303,  Baton Rouge, Louisiana 70821-4303.

          e.          Cash payments to the Commonwealth of Massachusetts

shall be made as follows:

          i.          Distributions for post-petition or future response costs received by the Commonwealth of Massachusetts pursuant to Subparagraphs 117(m)(i) and 125(l)(i) for the Fireworks Site shall be paid in the form of a certified or cashier's check payable to the Commonwealth of Massachusetts and referencing Tronox Bankruptcy Settlement – Fireworks Site, Hanover MA (post-petition or future Response Costs).  Payment shall be sent to: Cost Recovery, Fees and Revenue Section, Bureau for Waste Site Cleanup, Massachusetts Department of Environmental Protection, One Winter Street, Boston, MA 02108 (Attn: Marc Collins, Branch Chief).  Copies of the check shall be sent to: the Office of the Attorney General, Environmental Protection Division, One Ashburton Place, 18th Floor, Boston, MA 02108 (Attn: Carol Iancu), and to the Massachusetts Department of Environmental Protection, Office of General Counsel, One Winter Street, Boston, MA 02108 (Attn: Jennifer Davis).  The Commonwealth of Massachusetts shall deposit such distributions in an Expendable Trust established pursuant to Mass. Gen. Laws ch. 6A, § 6, and 801 C.M.R. §§ 50.00, *et seq.*, to be retained and used to conduct or finance response actions at or in connection with the Fireworks Site.

          ii.          Distributions for pre-petition response costs received by the Commonwealth of Massachusetts pursuant to Subparagraphs 117(m)(ii) and 125(l)(ii) for the Fireworks Site shall be paid in the form of a certified or cashier's check payable to the Commonwealth of Massachusetts and referencing Tronox Bankruptcy Settlement – Fireworks Site, Hanover, MA (pre-petition response costs).  Payment shall be sent to the Office of the Attorney General, Environmental Protection Division, One Ashburton Place, 18th Floor, Boston, MA 02108 (Attn: Carol Iancu).  Copies of the check shall be sent to:  Cost Recovery, Fees and Revenue Section, Bureau for Waste Site Cleanup, Massachusetts Department of Environmental Protection, One Winter Street, Boston, MA 02108 (Attn: Marc Collins, Branch Chief), and to the Massachusetts Department of Environmental Protection, Office of General Counsel, One Winter Street, Boston, MA 02108 (Attn: Jennifer Davis).

          iii.          Distributions for NRD received by the Commonwealth of Massachusetts pursuant to Subparagraphs 117(m)(iii) and 125(l)(iii) for the Fireworks Site shall be paid in the form of a certified check payable to the Commonwealth of Massachusetts, with a reference to Natural Resource Damages Trust – Account 2000-6020, related to Tronox Bankruptcy Settlement.  Payment shall be sent to: Executive Office of Energy and Environmental Affairs, 100 Cambridge Street, Suite 900, Boston, MA 02114 (Attn: Chief Financial Officer).  Copies of the check shall be sent to: Massachusetts Department of Environmental Protection, NRD Program, One Winter Street, 8th Floor, Boston, MA 02108 (Attn: Karen Pelto), and Office of the Attorney General, Environmental Protection Division, One Ashburton Place, 18th Floor, Boston, MA 02108 (Attn: Carol Iancu).

f.        Cash payments to the State of Mississippi shall be made by electronic funds transfer to Regions Bank, ABA Routing Number 065305436, Account Number 5000023780, with notification to mbishop@treasury.state.ms.us.

g.        Cash payments to the State of Missouri for NRD shall be made by check payable to "State of Missouri, Natural Resource Protection Fund," and sent to the Collection Specialist, Financial Services Unit, Missouri Attorney General, P.O. Box 899, Jefferson City, Missouri.

h.        Cash payments to the State of New Jersey shall be made by check payable to "Treasurer, State of New Jersey" and sent to Richard F. Engel, Deputy Attorney General, Office of the Attorney General, Division of Law, Cost Recovery/Natural Resources Section, Richard J. Hughes Justice Complex, 25 Market Street, P.O. Box 093, Trenton, New Jersey 08625-0093.

i.        Cash payments to the State of New York shall be made pursuant to routing or other instructions to be provided by the State of New York prior to transfer.

j.        Cash payments to the State of Ohio shall be made by personal check payable to the "State of Ohio." The payment should be delivered to: Ohio Attorney General, Environmental Protection Agency, 30 East Broad Street, $2^{5th}$ Floor, Columbus, Ohio 43215, Attn: Karen Pierson.

k.        Cash payments for NRD to the State of Oklahoma shall be made by certified funds check payable to the "State of Oklahoma" and should clearly state either on the certified funds check or in accompanying documentation that such payment is for the State of Oklahoma's NRD claims in the Tronox bankruptcy. The

payment should be delivered to: Oklahoma Office of Attorney General, Attn: Clayton

Eubanks, Assistant Attorney General, Environmental Protection Unit, 313 N.E. 21st

Street, Oklahoma City, Oklahoma, 73105.

l.    Cash payments to the State of Texas for NRD shall be

paid in the form of a certified check made payable to the State of Texas and referencing

"Tronox NRD" and the identifying number "AG#072484017."  The check shall be

submitted to: Chief, EPAL, Texas Attorney General's Office, P.O. Box 12548, Austin,

Texas, 78711.

132.    Cash payments to the Environmental Response Trusts and the

Anadarko Litigation Trust under this Settlement Agreement shall be made pursuant to

instructions to be provided by the Environmental Response Trustees and the Anadarko

Litigation Trustee to Debtors prior to the Effective Date.

## XV.    OUTSTANDING OBLIGATIONS

133.    All obligations of Debtors to perform work pursuant to any

outstanding Consent Decree, Consent Order, Unilateral Administrative Order, Agreed

Order, Administrative Order on Consent, Administrative Order, or any other order,

decree or agreement regarding investigation, remediation, cleanup or oversight with

respect to any of the Owned Sites and the Non-Owned Sites, and any statutory,

stipulated, or other penalties allegedly due from Debtors as of the Effective Date related

to such orders, decrees, or agreements are fully resolved and satisfied, and Debtors shall

be removed as a party to such orders or decrees pursuant to the terms hereof on the

Effective Date; provided, however, that: (a) all requirements to retain records, Real

Property Information and Environmental Information shall remain in full force and effect

in accordance with the requirements of Paragraph 163; (b) all covenants not to sue or releases provided by Debtors in such orders, decrees, or agreements shall remain in full effect, and Debtors and Reorganized Tronox shall continue to be bound thereby; (c) with respect to the Consent Decree for the Moss American Site, *United States v. Kerr-McGee Chemical Corp.*, Civil Actions Nos. 01-C-1396/92-C-6 (E.D. Wi.), the United States and Tronox will file papers with the District Court for the District of Wisconsin to modify the Consent Decree to conform to this Settlement Agreement and remove Kerr-McGee Chemical Corp., predecessor in interest to Tronox, as a party to the Consent Decree after the Effective Date; (d) with respect to the Consent Decree for the White King/Lucky Lass Site, *United States v. Kerr-McGee Chemical Worldwide LLC*, Civil Action No. 04-CV-00032 (D. Or.), the United States and Tronox will file papers with the District Court for the District of Oregon to modify the Consent Decree to conform to this Settlement Agreement and remove Kerr-McGee Chemical Worldwide LLC, predecessor in interest to Tronox, as a party to the Consent Decree after the Effective Date; (e) with respect to the Consent Decree for the Soda Springs Site, *United States v. Kerr-McGee Chemical Company*, Civil Action No. 97-0121-E-BLW (D. Id.), the United States and Tronox will file papers with the District Court for the District of Idaho to modify the Consent Decree to conform to this Settlement Agreement and remove Kerr-McGee Chemical Company, predecessor in interest to Tronox, as a party to the Consent Decree after the Effective Date; and (f) with respect to the 2006 Henderson Consent Decree, the United States and Tronox will file papers with the United States District Court for the District of Columbia to modify the Consent Decree consistent with Paragraph 73, above.

134.    The Governments may not impose any statutory, stipulated, or other penalties allegedly due from Debtors for Debtors' conduct occurring between the date hereof and the Effective Date with respect to the Owned Sites and Non-Owned Sites unless it has given notice to the Debtors and the Official Committee of Unsecured Creditors of the terms of any potentially applicable statutory, stipulated, or other civil penalties, and in the event the Governments seek to impose any such penalties, the amount of the penalty and circumstances under which it is imposed shall be negotiated before the penalty is applied.  Nothing in this Paragraph shall be construed to modify any existing consent decrees or administrative orders.

135.    As of the Effective Date, the Environmental Response Trusts shall become beneficiaries of all insurance policies applicable to past, present or future occurrences at the Sites.  Debtors agree to take such reasonable steps as are appropriate to effectuate this Paragraph.

## XVI.    <u>COVENANTS NOT TO SUE OR RELEASES FROM LIABILITY</u>

136.    With respect to the Owned Sites and except as specifically provided in Section XVII (Reservation of Rights), upon the Effective Date and Debtors' full payment of the payments required for the Multistate, Savannah, Henderson, Cimarron, and West Chicago Trust Accounts as set forth in Paragraphs 10, 38, 55, 80, and 104 of this Settlement Agreement and the establishment and full funding of the Anadarko Litigation Trust under Paragraph 121: (i) the United States on behalf of the US EPA, Forest Service, and NRC (except for DOI and NOAA, whose covenants not to sue are set forth respectively in Paragraphs 139 and 140 below), the Navajo Nation, the States (except for the State of North Carolina, whose release and agreement not to sue is set

forth in Paragraph 142 below) and the Local Governments covenant not to sue or assert

any civil claims or causes of action against Debtors, Reorganized Tronox, and the

Henderson Trust Parties, the Cimarron Trust Parties, the West Chicago Trust Parties, the

Savannah Trust Parties and the Multistate Trust Parties pursuant to CERCLA, RCRA,

CWA, CAA, and the Atomic Energy Act; any applicable tribal or state Environmental

Laws; and for any environmental liabilities or obligations asserted in the United States',

the Navajo Nation's, the States' and the Local Governments' respective Proofs of Claim;

and (ii) the Governments agree not to seek and covenant not to sue or assert any

administrative or other civil claims or causes of action against Debtors, Reorganized

Tronox, the Henderson Trust Parties, the Cimarron Trust Parties, the West Chicago Trust

Parties, the Savannah Trust Parties and the Multistate Trust Parties with respect to any

financial assurance required under any applicable Environmental Laws relating to the

Owned Sites.

137.    With respect to the Non-Owned Sites identified on Attachment B

hereto, to the extent made applicable to each respective Government by inclusion on the

separate sub-table for that Government within Attachment B, and except as specifically

provided in Section XVII (Reservation of Rights), upon the Effective Date and Debtors'

full payment of the payments required under Paragraph 117 of this Settlement Agreement

and the establishment and full funding of the Anadarko Litigation Trust under Paragraph

121: (i) the United States on behalf of the US EPA, Forest Service, and NRC (except for

DOI and NOAA, whose covenants not to sue are set forth respectively in Paragraphs 139

and 140 below), the Navajo Nation, the States (except for the Commonwealth of

Massachusetts, whose covenant not to sue is set forth in Paragraph 141 below, and except

for the State of North Carolina, whose release and agreement not to sue are set forth in Paragraph 142 below) and the Local Governments covenant not to sue or assert any civil claims or causes of action against Debtors, Reorganized Tronox, and the Henderson Trust Parties, the Cimarron Trust Parties, the West Chicago Trust Parties, the Savannah Trust Parties and the Multistate Trust Parties pursuant to CERCLA, RCRA, CWA, CAA, and the Atomic Energy Act; any applicable tribal or state Environmental Laws; and for any environmental liabilities or obligations asserted in the United States', the Navajo Nation's, the States' and the Local Governments' respective Proofs of Claim; and (ii) the Governments agree not to seek and covenant not to sue or assert any administrative or other civil claims or causes of action against Debtors, Reorganized Tronox, the Henderson Trust Parties, the Cimarron Trust Parties, the West Chicago Trust Parties, the Savannah Trust Parties and the Multistate Trust Parties with respect to any financial assurance required under Environmental Laws relating to the Non-Owned Sites.  For avoidance of doubt, each Government providing a covenant contained in this Paragraph is providing such covenant only with respect to sites appearing on the separate sub-table for that Government within Attachment B; provided, that the covenants provided by the United States on behalf of DOI and NOAA and the Commonwealth of Massachusetts, and releases provided by the State of North Carolina, are governed by Paragraphs 139 to 142, below.

138.    Except as provided in Section XVII (Reservation of Rights) below, the United States, on behalf of DoD, covenants not to sue Debtors or Reorganized Tronox for any and all costs of response incurred or to be incurred in connection with the Fireworks Site (including but not limited to the matters addressed in the Fireworks I Site

section of the United States' Proof of Claim).  This covenant extends only to Debtors and

Reorganized Tronox and does not extend to any third parties or claims that are not

addressed by this Settlement Agreement, including the claims of the National Coatings

Company and the Massachusetts Institute of Technology.  The United States on behalf of

DoD specifically reserves any and all rights it may have to bring actions against

potentially responsible parties other than Debtors or Reorganized Tronox, as well as any

defenses it may have with respect to any claims and causes of action brought against it.

139.    The United States on behalf of DOI covenants not to file a civil

action or to take any administrative or other civil action against the Debtors or

Reorganized Tronox or the Multistate Trust Parties pursuant to Section 107 of CERCLA,

42 U.S.C. § 9607, with respect to (i) NRD, including assessment and restoration costs, at

the Texarkana Site and the Navassa Site and (ii) response costs at the Bristol Mine Site,

the Caselton Mine Site, and the Spencer Mine Site in McKinley, New Mexico; provided

that with respect to the five sites specified in this sentence, NRD or response costs, as

applicable, include those relating to releases of hazardous substances from any portion of

the Sites and all areas affected by migration of such substances from the Sites.  With

respect to all Owned Sites and Non-Owned Sites (including releases of hazardous

substances from any portion of the Owned Sites and the Non-Owned Sites, and all areas

affected by migration of such substances from the Owned Sites and Non-Owned Sites),

all liabilities and obligations of the Debtors or Reorganized Tronox to the United States

on behalf of DOI under Section 107 of CERCLA, 42 U.S.C. § 9607, arising from pre-

petition acts, omissions, or conduct of the Debtors or their predecessors shall be

discharged under Section 1141 of the Bankruptcy Code by the Effective Date of the Plan

of Reorganization.  The United States on behalf of DOI agrees that the liabilities and

obligations referred to in this Paragraph are dischargeable claims under the Bankruptcy

Code in this case.

        140.    The United States on behalf of NOAA covenants not to file a civil

action or to take any administrative or other civil action against the Debtors, Reorganized

Tronox, or the Multistate Trust Parties pursuant to Section 107 of CERCLA, 42 U.S.C. §

9607, with respect to the Navassa Site (including releases of hazardous substances from

any portion of the Site, and all areas affected by migration of such substances from the

Site).  With respect to all other Owned Sites and Non-Owned Sites (including releases of

hazardous substances from any portion of the Owned Sites and the Non-Owned Sites, and

all areas affected by migration of such substances from the Owned Sites and Non-Owned

Sites), all liabilities and obligations of the Debtors and Reorganized Tronox to the United

States on behalf of NOAA under Section 107 of CERCLA, 42 U.S.C. § 9607, arising

from pre-petition acts, omissions, or conduct of the Debtors or their predecessors shall be

discharged under Section 1141 of the Bankruptcy Code by the Effective Date of the Plan

of Reorganization.  The United States on behalf of NOAA agrees that the liabilities and

obligations referred to in this Paragraph are dischargeable claims under the Bankruptcy

Code.

        141.    The Massachusetts Department of Environmental Protection

covenants not to sue or assert any civil claims or causes of action against Debtors and

Reorganized Tronox with respect to the Fireworks Site pursuant to CERCLA, RCRA,

CWA, CAA, and the Atomic Energy Act; any applicable state Environmental Laws; and

for any environmental liabilities or obligations asserted in Massachusetts' Proof of Claim.

142.    The State of North Carolina releases and agrees not to sue or take administrative action with respect to the Navassa Site, the Potter's Septic Tank Service Pits Superfund Site in Sandy Creek, North Carolina, and the Big "O" Jamboree Site in Williamston, North Carolina, against Debtors, Reorganized Tronox, and the Henderson Trust Parties, the Cimarron Trust Parties, the West Chicago Trust Parties, the Savannah Trust Parties, and the Multistate Trust Parties pursuant to CERCLA, RCRA and the Inactive Hazardous Sites Response Act of 1987, N.C.G.S. 130A-310 *et seq.*, and any similar state law for any liabilities or obligations asserted in North Carolina's Proofs of Claim.

143.    To the extent necessary, the Governments' Proofs of Claim are deemed amended to be consistent with this Settlement Agreement.

144.    This Settlement Agreement in no way impairs the scope and effect of Debtors' discharge under Section 1141 of the Bankruptcy Code as to any third parties or as to any claims as defined in Section 101(5) of the Bankruptcy Code that are not addressed by this Settlement Agreement.  Furthermore, as regards those Non-Owned Sites for which there is no covenant not to sue protection from certain of the Governments, no negative inferences regarding whether a claim has been discharged shall be drawn from the lack of covenant not to sue protection, and the Debtors, Reorganized Tronox and the Governments reserve all rights and defenses with respect to the applicability of the discharge to any and all claims related to such Non-Owned Sites, including the right to assert or dispute that Debtors have provided notice of such claims to the Governments by identifying such Sites in Attachment B.

145.    Without in any way limiting the covenants not to sue or releases
set forth in Paragraphs 136 to 142, and notwithstanding any other provision of this
Settlement Agreement, such covenants not to sue or releases shall also apply to Debtors'
and Reorganized Tronox's successors, assigns, directors, officers, managers, members,
employees, lenders to the Debtors' exit credit facility, and trustees, but only to the extent
that the alleged liability of the successor, assign, director, officer, manager, member,
employee, lender to the Debtors' exit credit facility or trustee of Debtors or Reorganized
Tronox is based solely on its status as and in its capacity as a successor, assign, director,
officer, manager, member, employee, lender to the Debtors' exit credit facility or trustee
of Debtors or Reorganized Tronox.  For the avoidance of doubt, all references to
"successors" and "assigns" in this Paragraph shall include successor subsidiaries or
successor affiliated entities, and assignee subsidiaries or assignee affiliated entities.

146.    The covenants not to sue (and in the case of North Carolina, the
release and agreement not to sue) in this Settlement Agreement extend only to Debtors,
Reorganized Tronox, Multistate Trust Parties, Savannah Trust Parties, Henderson Trust
Parties, Cimarron Trust Parties, West Chicago Trust Parties, and the persons described in
Paragraph 145 above and do not extend to any other person.  The covenant not to sue for
the Commonwealth of Massachusetts, set forth in Paragraph 141, extends only to
Debtors, Reorganized Tronox, and the persons described in Paragraph 145 above.  The
covenants not to sue for the United States on behalf of DOI and NOAA, set forth in
Paragraphs 139 and 140 respectively, extend only to Debtors, Reorganized Tronox, the
Multistate Trustee Parties and the persons described in Paragraph 145 above.  Nothing in
this Settlement Agreement is intended as a covenant not to sue or a release from liability

for any person or entity other than Debtors, Reorganized Tronox, the Henderson Trust

Parties, the Cimarron Trust Parties, the West Chicago Trust Parties, the Savannah Trust

Parties, the Multistate Trust Parties, the United States, the Navajo Nation, the States, the

Local Governments and the persons described in Paragraph 145.

147.    Notwithstanding any other provision in this Settlement Agreement,

none of the covenants not to sue or releases from liability set forth herein shall apply to or

be for the benefit of the following parties: Lehman Brothers Holdings Inc., Ernst &

Young LLP, Kerr-McGee Corporation and Anadarko Petroleum Corporation (including

their respective subsidiaries, affiliates or other related entities, except for the Debtors or

Reorganized Tronox) and their respective officers, directors, employees, advisors,

attorneys, professionals, accountants, investment bankers, consultants, agents and other

representatives (including their respective officers, directors, employees, members and

professionals), or any individuals who were former directors or officers of the Debtors or

their subsidiaries and also were or currently are directors or officers of Kerr-McGee

Corporation and/or Anadarko Petroleum Corporation.

148.    Debtors, Reorganized Tronox, the Henderson Trustee, the

Cimarron Trustee, the West Chicago Trustee, the Savannah Trustee and the Multistate

Trustee covenant not to sue and agree not to assert claims or causes of action against the

United States, the Navajo Nation, the States or the Local Governments, and Debtors and

Reorganized Tronox covenant not to sue, and agree not to assert claims or causes of

action against the Henderson, Cimarron, West Chicago, Savannah, and Multistate Trust

Parties, and the Henderson, Cimarron, West Chicago, Savannah, and Multistate Trust

Parties covenant not to sue, and agree not to assert claims or causes of action against the

Debtors and Reorganized Tronox and the persons identified in Paragraph 145, with

respect to the Owned Sites and the Non-Owned Sites, including but not limited to any

direct or indirect claim for reimbursement from the Superfund (established pursuant to

the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107,

111, 112, 113, 42 U.S.C. §§ 9606(b), 9607, 9611, 9612, 9613, RCRA, or any other

provision of law; any claims and causes of action against the United States, the Navajo

Nation, States or the Local Governments, including any of their departments, agencies or

instrumentalities pursuant to Section 107 or 113 of CERCLA, 42 U.S.C. §§ 9607, 9613,

or other applicable state Environmental Laws; and any claims and causes of action

arising out of the response activities at the Owned Sites or the Non-Owned Sites.

Nothing in this Settlement Agreement shall be construed to constitute preauthorization of

a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611 or 40 C.F.R.

§ 300.700(d).  For avoidance of doubt, the parties state that pursuant to Paragraphs 137

and 138 above, the United States on behalf of DoD and US EPA covenants not to sue

with respect to any claim against Debtors or Reorganized Tronox for any and all post-

petition or future costs of response incurred, or to be incurred, in connection with the

Fireworks Site, and pursuant to this Paragraph, Debtors and Reorganized Tronox release,

and covenant not to sue with respect to, any claim against the United States for any and

all post-petition or future costs of response incurred, or to be incurred, in connection with

the Fireworks Site.

   149. In the event that the Henderson Trust Parties, Cimarron Trust

Parties, West Chicago Trust Parties, Savannah Trust Parties, or Multistate Trust Parties

assert a claim or cause of action that is not reserved in Section XVII, Reservation of

Rights, against the United States, the Navajo Nation, the States, the Local Governments,

the Debtors, or Reorganized Tronox, then the covenant not to sue as to the party that has

asserted the claim or cause of action shall be null and void and have no effect.

## XVII.    <u>RESERVATION OF RIGHTS</u>

150.    The covenants not to sue and releases from liability set forth in

Section XVI do not pertain to any matters other than those expressly specified therein.

The United States, the Navajo Nation, the States, and the Local Governments reserve,

and this Settlement Agreement is without prejudice to, all rights against Debtors,

Reorganized Tronox, or other persons with respect to all matters other than those set forth

in Paragraphs 136 to 142 above.  The United States, the Navajo Nation, the States, and

the Local Governments also specifically reserve, and this Settlement Agreement is

without prejudice to: (a) criminal liability; (b) any action to enforce the terms of this

Settlement Agreement; and (c) liability for response costs, natural resource damages

(including natural resource damage assessment costs), civil penalties, and injunctive

relief under CERCLA, RCRA, CAA, CWA, the Atomic Energy Act, and tribal or state

laws for Debtors' or Reorganized Tronox's future acts creating liability under CERCLA

and other federal, tribal or state Environmental Laws that occur after the Effective Date.

Debtors' or Reorganized Tronox's future acts creating liability under CERCLA and other

federal, tribal or state Environmental Laws shall not be deemed to include continuing

releases at the Owned Sites or Non-Owned Sites or continuing releases related to

Debtors' conduct prior to the Effective Date, except to the extent that Debtors' or

Reorganized Tronox's future acts exacerbate existing contamination or existing releases.

The United States, the Navajo Nation, the States, and the Local Governments also

reserve, and this Settlement Agreement is without prejudice to any liability of Debtors'

and Reorganized Tronox's successors, assigns, officers, directors, employees, and

trustees for response costs, penalties, and injunctive relief under federal, tribal or state

Environmental Laws for any acts occurring after the Effective Date by any such entity

creating liability under federal, tribal or state Environmental Laws.  With respect to the

Henderson Property, the United States and the State of Nevada also reserve their rights

under Paragraph 75.

   151. The United States, the Navajo Nation, the States, and the Local

Governments also reserve all rights against Debtors until the Effective Date.

   152. Debtors, Reorganized Tronox, and the Henderson Trust Parties, the

Cimarron Trust Parties, the West Chicago Trust Parties, the Savannah Trust Parties and

the Multistate Trust Parties reserve, and this Settlement Agreement is without prejudice

to all rights against the United States, the Navajo Nation, the States, the Local

Governments, and Debtors and Reorganized Tronox with respect to (a) all matters other

than those set forth in Paragraph 148, and (b) any action to enforce their rights under the

terms of this Settlement Agreement.  In addition, Debtors' and Reorganized Tronox's

covenant not to sue under Paragraph 148 shall not apply in the event that the United

States, the Navajo Nation, a State, or a Local Government brings a cause of action or

issues an order pursuant to the reservations set forth in Paragraph 150, but only to the

extent that Debtors' or Reorganized Tronox's claims and causes of action arise from the

same response action, response costs, damages, or other relief that the United States, the

Navajo Nation, a State, or a Local Government is seeking pursuant to the applicable

reservations.  Reorganized Tronox and the other parties to the Line of Credit Agreement

set forth in Subparagraph 28(c) reserve all rights to enforce the Line of Credit

Agreement.  Tronox LLC reserves all of its rights to enforce the Henderson Facility

Lease.  Tronox Incorporated reserves all of its rights under the Guaranty.  Furthermore,

the Henderson Trustee reserves its rights to enforce the 2006 Henderson Consent Decree

against the United States.  With respect to the Henderson Property, the Henderson

Trustee reserves all of its rights under Paragraph 75 and under the Henderson Facility

Lease.

      153.    Nothing in this Settlement Agreement shall release, nullify or

preclude any liability, if any, of the United States to the State of Nevada under applicable

Environmental Laws as a potentially responsible or liable party with respect to any

Henderson Legacy Conditions.

      154.    The United States, the Navajo Nation, the States, the Local

Governments, Debtors, Reorganized Tronox, and the Henderson Trust Parties, the

Cimarron Trust Parties, the West Chicago Trust Parties, the Savannah Trust Parties, and

the Multistate Trust Parties expressly reserve all claims, demands, and causes of action

either judicial or administrative, past, present or future, in law or equity, which the United

States, the Navajo Nation, the States, the Local Governments, or Debtors, Reorganized

Tronox, the Henderson Trust Parties, the Cimarron Trust Parties, the West Chicago Trust

Parties, the Savannah Trust Parties, and the Multistate Trust Parties may have against all

other persons, firms, corporations or entities for any matter arising at or relating in any

manner to the Owned Sites, the Non-Owned Sites, and/or claims addressed herein.

      155.    Nothing in this Settlement Agreement shall be deemed to limit the

authority of the United States, the Navajo Nation, the States and the Local Governments

to take response or natural resource assessment action under Section 104 of CERCLA, 42

U.S.C. § 9604, or any other applicable federal, tribal, or state Environmental Laws, or to

alter the applicable legal principles governing judicial review of any action taken by the

United States, the Navajo Nation, the States and the Local Governments pursuant to that

authority.  Nothing in this Settlement Agreement shall be deemed to limit the

information-gathering authority of the United States, the Navajo Nation or the States

under Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other

applicable federal, tribal or state Environmental Laws, or to excuse Debtors or

Reorganized Tronox or the Henderson, Savannah, Cimarron, West Chicago, and

Multistate Trustees from any disclosure or notification requirements imposed by

CERCLA or any other applicable federal, tribal or state Environmental Laws.

156.    The United States and the States shall retain the right to issue,

obtain, or enforce an order against the respective Environmental Response Trusts to

perform Environmental Actions at an Owned Site, an Owned or Non-Owned Service

Station, a Non-Owned RAS Property, or Kress Creek under applicable law, including an

administrative order, provided that funding necessary to implement such order remains

subject to the approval of the Lead Agency and the availability of such funding.  The

Environmental Response Trusts may enter into a consent decree or consent order with the

United States and the respective State in which an Owned Site, an Owned or Non-Owned

Service Station, a Non-Owned RAS Property, or Kress Creek is located, and may

perform work pursuant to administrative orders issued unilaterally by the United States or

the respective State under applicable law, to facilitate or conduct Environmental Actions

at an Owned Site, an Owned or Non-Owned Service Station, a Non-Owned RAS

Property, or Kress Creek, provided that funding necessary to implement such consent decree, consent order, administrative order, or any action required in response to an enforcement action remains subject to the approval of the Lead Agency and the availability of such funding.

157.    Notwithstanding any other provision in this Settlement Agreement, none of the covenants not to sue or releases from liability set forth herein shall release, nullify, or preclude any liability of Reorganized Tronox as the owner or operator of a property of Reorganized Tronox with respect to any properties owned or operated by Reorganized Tronox after the Effective Date, including but not limited to, the Hamilton, Mississippi facility and the Oklahoma City Technical Center in Oklahoma, provided however, Tenant's responsibilities for the Henderson Leased Facility shall be in accordance with Paragraph 75.  Moreover, all liabilities or obligations of the Debtors or Reorganized Tronox to the United States on behalf of US EPA, Forest Service, NRC, DOI and NOAA, the Navajo Nation, the States, and the Local Governments under CERCLA, RCRA, CWA, CAA, and the Atomic Energy Act, any applicable tribal or state Environmental Laws or regulations, and any environmental liabilities or obligations asserted in the Governments' respective Proofs of Claim with respect to any properties owned or operated by Reorganized Tronox after the Effective Date (including but not limited to, the Hamilton, Mississippi facility and the Oklahoma City Technical Center in Oklahoma), shall not be discharged under bankruptcy law; provided however, Tenant's responsibilities for the Henderson Leased Facility shall be in accordance with Paragraph 75.

158.    Except to the extent expressly set forth herein, nothing in this

Settlement Agreement shall be construed to create any rights in, or grant any cause of

action to, any person not a party to this Settlement Agreement.

## XVIII.    **CONTRIBUTION PROTECTION**

159.    The parties hereto agree that, as of the Effective Date, Debtors,

Reorganized Tronox, and the Henderson Trust Parties, the Cimarron Trust Parties, the

West Chicago Trust Parties, the Savannah Trust Parties, and Multistate Trust Parties are

entitled to protection from contribution actions or claims as provided by Section 113(f)(2)

of CERCLA, 42 U.S.C. § 9613(f)(2), or as otherwise provided by law, including any state

laws (except as set forth in Paragraph 160 with respect to Mass. Gen. Laws ch. 21E, §

3A(j)(2)), for matters addressed in this Settlement Agreement, subject to the covenants

not to sue and releases and reservations of rights set forth in Sections XVI and XVII

herein.  The Debtors and Reorganized Tronox contend that the contribution protection

provided under this Settlement Agreement applies to actions brought under Section 107

of CERCLA, and as such, the Debtors and Reorganized Tronox reserve the right to argue

that this Settlement Agreement and Section 113(f)(2) of CERCLA protect against claims

for contribution brought under Section 107 of CERCLA.  The matters addressed in this

Settlement Agreement include all costs of Environmental Actions, including oversight

costs, incurred or to be incurred by the United States, the Navajo Nation, the States, the

Local Governments, or any other person relating to or in connection with the Owned

Sites and the Non-Owned Sites, including releases of hazardous substances from any

portion of the Owned Sites and the Non-Owned Sites (except for contribution protection

under state law with respect to the Fireworks Site, which is set forth in Paragraph 160

below), and all areas affected by migration of such substances from such Sites.  Matters

addressed in this Settlement Agreement include NRD claims, including restoration and

assessment costs, asserted by the United States on behalf of DOI and NOAA at the

Texarkana Facility and the Navassa Site.  Matters addressed in this Settlement

Agreement also include NRD claims asserted by the States, including restoration and

assessment costs relating to or in connection with the Owned Sites and the Non-Owned

Sites (except for contribution protection under state law with respect to the Fireworks

Site, which is set forth in Paragraph 160 below).  Matters addressed in this Settlement

Agreement do not include any matters that are the subject of the reservations of rights set

forth in Section XVII herein.

160.    With respect to contribution protection under state law with respect

to the Fireworks Site, Massachusetts and Debtors hereby agree, and by approving this

Settlement Agreement this Court finds, that pursuant to Mass. Gen. Laws ch. 21E,

§ 3A(j)(2), the Debtors and Reorganized Tronox are entitled to protection from claims

brought pursuant to Mass. Gen. Laws ch. 21E regarding matters addressed in

Massachusetts' Proofs of Claim in the Bankruptcy Cases for the Fireworks Site, for cost

recovery, contribution, and equitable share as to those persons receiving notice and an

opportunity to comment on this Settlement Agreement in accordance with Mass. Gen.

Laws ch. 21E, § 3A(j)(2), as of the date of filing of a notice by the Commonwealth of

Massachusetts indicating that it received no comments disclosing facts or considerations

showing that the Settlement Agreement would unfairly terminate the rights of third

parties.  As of the date of such notice, this Settlement Agreement constitutes a "judicially

approved settlement" for purposes of Mass. Gen. Laws ch. 21E, § 3A(j)(2).  For purposes

of this Paragraph, "matters addressed" shall be response action costs incurred or to be

incurred by the Commonwealth of Massachusetts, work performed or to be performed,

and natural resource damages (including restoration and assessment costs) with respect to

the Fireworks Site, but shall not include any matters that are the subject of the

reservations of rights set forth in Section XVII herein.  The 90-day comment period

required under Mass. Gen. Laws ch. 21E, § 3A(j)(2) shall commence 45 days after

Massachusetts executes this Settlement Agreement.

XIX.    **TRANSFERS OF REAL PROPERTY INFORMATION AND
ENVIRONMENTAL INFORMATION**

161.    Owned Sites

a.    Electronic Files.  Debtors shall provide to the

Environmental Response Trustees, at Debtors' expense, within 30 days before the

Effective Date, a hard drive(s) containing electronic files of Environmental Information

and Real Property Information related to the Owned Sites; provided, however, that in the

event that Debtors determine that any such provision of Environmental Information or

Real Property Information violates any law or legal proceeding or waives any applicable

privilege, protection or immunity, including, without limitation, the attorney-client

privilege or the work-product doctrine, Debtors shall take all reasonable measures to

provide such Environmental Information or Real Property Information in a manner that

avoids any such harm or consequence, including retention of the specific electronic files.

If any of the Environmental Response Trustees need specific electronic files of

Environmental Information or Real Property Information before such Trustee's receipt of

the hard drive(s), then as soon as reasonably practicable upon written request, Debtors

shall provide the Environmental Response Trustees with such specific electronic files of

Environmental Information or Real Property Information, at Debtors' expense.

b.    Hard Copy Files

i.    Hard Copy Files Stored On-Site:  Hard copy files of
Environmental Information and Real Property Information located at any of the Owned
Sites before the Effective Date shall remain on-Site after the Effective Date and shall
thereafter remain in the possession, custody, and control of the relevant Environmental
Response Trustee for such Owned Site.

ii.    Hard Copy Files of Real Property Information
Located in Oklahoma City:  Debtors shall provide to the Environmental Response
Trustees, at Debtors' expense, within thirty days before the Effective Date, copies of hard
copy files of Real Property Information  related to the Owned Sites and located at
Debtors' offices in Oklahoma City, Oklahoma; provided, however, that if Debtors
determine that any such provision of Real Property Information violates any law or legal
proceeding or waives any applicable privilege, protection or immunity, including,
without limitation, the attorney-client privilege or the work-product doctrine, Debtors
shall take all reasonable measures to provide such Real Property Information in a manner
that avoids any such harm or consequence, including retention of the specific hard copy
files.  In the event the Environmental Response Trustees need specific hard copy files of
Real Property Information located at Debtors' offices in Oklahoma City, Oklahoma, prior
to such Trustee's receipt of the hard copy files, then as soon as reasonably practicable
after written request, Debtors shall provide the Environmental Response Trustees with
such specific hard copy files of Real Property Information, at Debtors' expense.

iii.    Hard Copy Files Stored Off-Site:  Debtors shall
provide to the Environmental Response Trustees, at any time and as soon as reasonably
practicable after written request, copies of hard copy files of Environmental Information
or Real Property Information related to an Owned Site that are stored at Debtors' off-site
facility, Underground Vault Storage, located in Oklahoma City, Oklahoma ("Off-Site
Facility"); provided, however, that if Debtors determine that any such provision of
Environmental Information or Real Property Information violates any law or legal
proceeding, or waives any applicable privilege, protection or immunity, including,
without limitation, the attorney-client privilege or the work-product doctrine, Debtors
shall take all reasonable measures to provide access in a manner that avoids any such
harm or consequence, including retention of the specific hard copy files.  With respect to
preparing copies of any hard copy files of Environmental Information or Real Property
Information located at the Off-Site Facility, the cost of retrieving, copying and shipping
the files, including any cost incurred to ensure that the state and condition of the files is
not impaired by the shipping or copying effort, will be borne by the Environmental
Response Trustees, subject to the Schedule of Costs attached as Attachment H.

162.  "Other Sites"

a.    Electronic Files.  The Multistate Trustee, at the request of any

of the Governments which have provided covenants not to sue or releases from liability

for the "Other Sites" identified in Attachment B  pursuant to Paragraph 137 above, shall

ask Debtors to provide, at Debtors' expense, a hard drive(s) containing electronic files of

Environmental Information related to such Other Site(s); provided, however, that in the

event that the Debtors determine that any such provision of Environmental Information

violates any law or legal proceeding or waives any applicable privilege, protection or

immunity, including, without limitation, the attorney-client privilege or the work-product

doctrine, Debtors shall take all reasonable measures to provide such Environmental

Information in a manner that avoids any such harm or consequence, including retention

of the specific electronic files.  Upon receipt, the Multistate Trustee shall promptly

forward such hard drive(s) to the Government(s) making the request.

b.    Hard Copy Files Stored Off-Site:  The Governments which

have provided covenants not to sue or releases from liability for the "Other Sites"

identified in Attachment B pursuant to Paragraph 137 above, may ask the Multistate

Trustee to request from Debtors hard copy files of Environmental Information related to

such Other Site(s) that are located at the Off-Site Facility.  As soon as practicable upon

receipt of such request from the Multistate Trustee, Debtors shall provide the Multistate

Trustee with a written estimate of the cost of retrieving, copying and shipping the

requested files, including any cost incurred to ensure that the state and condition of the

files is not impaired by the shipping or copying effort, in accordance with the Schedule of

Costs attached as Attachment H; provided that such estimate shall not be binding upon

Debtors.  However, Debtors shall provide notice upon knowledge that such cost will

exceed the estimate by 50%.  If the Multistate Trustee determines, in its discretion, that

the estimated cost of obtaining such files will present an undue expense to the Multistate

Trust, the Multistate Trustee may withdraw its request to Debtors and notify the relevant

Government(s) making the request for such information.  Otherwise, upon receiving the

Multistate Trustee's written confirmation that the estimated cost is acceptable, Debtors

shall provide to the Multistate Trustee all requested hard copy files of Environmental

Information related to such Other Site(s) located at the Off-Site Facility, subject to the

Schedule of Costs attached as Attachment H, with such costs to be borne by the

Multistate Trustee; provided, however, that in the event that Debtors determine that any

such provision of Environmental Information violates any law or legal proceeding or

waives any applicable privilege, protection or immunity, including, without limitation,

the attorney-client privilege or the work-product doctrine, Debtors shall take all

reasonable measures to provide access in a manner that avoids any such harm or

consequence, including retention of the specific hard copy files.  Upon receipt, the

Multistate Trustee shall promptly forward such copies of the hard copy files to the

Government(s) making the request.

  163. <u>Document Retention</u>

   a. Debtors shall at all times maintain ownership and control of

the original form of the Environmental Information and Real Property Information,

except for any hard copy files of Environmental Information or Real Property

Information stored at any Owned Sites pursuant to Paragraph 161 above.  As to those on-

Site files, the Environmental Response Trustees shall provide access for review and

copying to the Anadarko Litigation Trustee and Debtors at all reasonable times upon

prior reasonable notice.  Any copying expenses shall be borne by the party requesting

such access.

     b.  Debtors will preserve the Environmental Information and

Real Property Information that is the property of Debtors in its present state or condition.

After the Effective Date, Reorganized Tronox shall use commercially reasonable efforts

to retain all Environmental Information and Real Property Information in its possession

or control as of the Effective Date in accordance with litigation document holds or

preservation memoranda issued by Debtors or Reorganized Tronox or Reorganized

Tronox's document retention or other policies as in effect on the Effective Date, or such

document retention or other policies as may be reasonably adopted by Reorganized

Tronox after the Effective Date; provided however, Reorganized Tronox shall retain all

Environmental Information and Real Property Information until the Anadarko Litigation

or other litigations or investigations requiring the preservation of such information have

been resolved and all final appeals, if applicable, have been exhausted ("Preservation

Date").  Reorganized Tronox shall provide written copies of all such litigation hold or

preservation memoranda, and all document retention or other policies to the

Environmental Response Trustees and the Anadarko Litigation Trustee as soon as

practicable after the Effective Date, except to the extent Reorganized Tronox determines

that providing such memoranda or policies waives any applicable privilege, protection or

immunity, including, without limitation, the attorney-client privilege or the work-product

doctrine.  Reorganized Tronox shall not destroy, or permit any members of its group to

destroy, any Environmental Information or Real Property Information until the

Preservation Date, that the Environmental Response Trustees, the Anadarko Litigation

Trustee, the United States, the Navajo Nation, any relevant State, or any relevant Local

Government may have the right to obtain pursuant to this Settlement Agreement, the

Environmental Response Trust Agreements or the Anadarko Litigation Trust Agreement

without first notifying, as applicable, the relevant Environmental Response Trustee, the

Anadarko Litigation Trustee, the United States, the Navajo Nation, the relevant State, or

relevant Local Government of the proposed destruction and giving, as applicable, the

relevant Environmental  Response Trustee, the Anadarko Litigation Trustee, the United

States, the Navajo Nation, the relevant State, or relevant Local Government the

opportunity to take possession or copy such Environmental Information or Real Property

Information.  If more than one of the aforementioned parties requests to take possession

of the Environmental Information or Real Property Information, such parties shall reach

an agreement as to which entity shall take possession of such Environmental Information

or Real Property Information and notify Reorganized Tronox of same.

        c.     At any time after 60 days following the Preservation Date,

Reorganized Tronox may elect to relinquish control and/or destroy archived

Environmental Information or Real Property Information including such information

saved on computer servers to the extent permitted by litigation document hold or

preservation memoranda issued by Debtors or Reorganized Tronox or Reorganized

Tronox's document retention or other policies.  Reorganized Tronox shall provide written

notice, as applicable, to the relevant Environmental Response Trustee, the Anadarko

Litigation Trustee, the United States, the Navajo Nation, the relevant State, or relevant

Local Government that it will no longer maintain the Environmental Information or Real

Property Information identified and provide the responding parties the opportunity to take

possession of such Environmental Information or Real Property Information within 60

days following such notification.  If more than one of the aforementioned parties requests

to take possession of the documents, such parties shall reach an agreement as to which

entity shall take possession of such Environmental Information or Real Property

Information and notify Reorganized Tronox of same.

             d.     At any time after 365 days following the Effective Date, any

of the Environmental Response Trustees may elect to relinquish control and/or destroy

any Environmental Information, Real Property Information or other records located at

any Owned Site.  The Environmental Response Trustee shall provide written notice to

Reorganized Tronox and the Anadarko Litigation Trustee that it will no longer maintain

the Environmental Information, Real Property Information or other records identified and

provide Reorganized Tronox and the Anadarko Litigation Trustee the opportunity to take

possession of such Environmental Information, Real Property Information, or other

records within 60 days following such notification.  If both Reorganized Tronox and the

Anadarko Litigation Trustee request to take possession of the documents, such parties

shall reach an agreement as to which entity shall take possession of such Environmental

Information, Real Property Information, or other records and notify the relevant

Environmental Response Trustee of same.

             e.     <u>No Liability</u>.  No party shall have any liability to any other

party if any Environmental Information or Real Property Information is destroyed after

all reasonable efforts have been taken by such party to comply with the provisions of

Subparagraphs 163(b), (c) and (d) above.

    f. <u>No Warranty</u>.  Neither Debtor nor Reorganized Tronox makes
any warranty as to the completeness or accuracy of the Environmental Information or
Real Property Information provided pursuant to Paragraphs 161, 162 and 163 above.

    164. The United States, the Navajo Nation, the States, and the Local
Governments reserve, and this Settlement Agreement is without prejudice to, all rights to
obtain information regarding the Owned Sites and Other Sites from Debtors and
Reorganized Tronox pursuant to their information-gathering authority under Sections 104
and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable federal, tribal
or state Environmental Laws.

## XX. **TAX COOPERATION**

    165. Notwithstanding any other provision of this Settlement Agreement,
the Governments agree to reasonably cooperate with the Debtors to allow the Debtors to
fund each Environmental Response Trust (as described elsewhere in this Settlement
Agreement) via a single transferor, for the sole purpose of eligibility for a Grantor Trust
Election.

## XXI. **PUBLIC COMMENT**

    166. This Settlement Agreement will be subject to a public comment
period of 30 days following notice published in the Federal Register and notice under any
applicable State or tribal law providing for public comment.  The United States, the
Navajo Nation and any State (except for the State of Georgia) soliciting or receiving
public comment reserve the right to withdraw or withhold their consent if the public
comments regarding the Settlement Agreement disclose facts or considerations that
indicate that this Settlement Agreement is inappropriate, improper, or inadequate.  The

State of Georgia reserves the right to withdraw or withhold its consent if the public comments regarding the Settlement Agreement disclose facts or considerations that indicate that this Settlement Agreement should not be executed.  At the conclusion of the public comment period, the United States, the Navajo Nation and any State taking public comment will provide the Court with copies of any public comments and their response thereto.  With respect to the Commonwealth of Massachusetts, the right to withdraw or withhold consent to the Settlement Agreement shall exist until the date of Court approval of this Settlement Agreement; and, separate and apart from that right, the effectiveness of contribution protection under Massachusetts law shall be in accordance with the terms set forth in Paragraph 160, above.

## XXII.    **JUDICIAL APPROVAL**

167.    The settlement reflected in this Settlement Agreement shall be subject to approval by the Court pursuant to Bankruptcy Rule 9019.  Debtors shall move promptly for court approval of this Settlement Agreement and shall exercise commercially reasonable efforts to obtain such approval.

## XXIII.    **RETENTION OF JURISDICTION**

168.    The Court shall retain jurisdiction over both the subject matter of this Settlement Agreement and the parties hereto, for the duration of the performance of the terms and provisions of this Settlement Agreement for the purpose of enabling any of the parties to apply to the Court at any time for such further order, direction and relief as may be necessary or appropriate for the construction or interpretation of this Settlement Agreement, or to effectuate or enforce compliance with its terms.

## XXIV.    **EFFECTIVE DATE**

169.    Following a public comment process following notice published in the Federal Register and notice under any applicable State or tribal law providing for public comment, this Settlement Agreement shall be effective as of the effective date of the Plan of Reorganization.  For the purpose of the preceding sentence, the Settlement Agreement shall become effective even if the comment period under Massachusetts law has not been completed, except that any contribution protection under Massachusetts law shall not become effective until the date of filing of a notice by the Commonwealth of Massachusetts as described in Paragraph 160.  Debtors shall conform their Plan of Reorganization to incorporate the Settlement Agreement. This Settlement Agreement shall also be contingent on the execution of Environmental Response Trust Agreements that are materially consistent with the terms of this Settlement Agreement.

170.    If for any reason (i) the Settlement Agreement is withdrawn by the United States, Navajo Nation, or any State as provided in Paragraph 166; (ii) the Settlement Agreement is not approved; or (iii) the Bankruptcy Cases are dismissed or converted to  cases under Chapter 7 of the Bankruptcy Code before the Effective Date of a Plan of Reorganization: (a) this Settlement Agreement shall be null and void and the parties shall not be bound hereunder or under any documents executed in connection herewith; (b) the parties shall have no liability to one another arising out of or in connection with this Settlement Agreement or under any documents executed in connection herewith; and (c) this Settlement Agreement and any documents prepared in connection herewith shall have no residual or probative effect or value, and it shall be as if they had never been executed.

### XXV.    <u>PLAN OF REORGANIZATION</u>

171.    The Debtors shall incorporate this Settlement Agreement into the

Plan by reference and approval of this Settlement Agreement shall be a condition

precedent to confirmation of the Plan.  Debtors shall not file a Plan or amend the Plan or

the proposed order confirming the Plan in a manner inconsistent with the terms and

provisions of this Settlement Agreement, take any other action in the Bankruptcy Cases

that is inconsistent with the terms and provisions of this Settlement Agreement, or

propose terms for any order confirming the Plan that are inconsistent with this Settlement

Agreement.  The Governments shall not oppose any term or provision of the Plan or an

order confirming the Plan that is addressed by and is consistent with this Settlement

Agreement.  The Parties reserve all other rights or defenses that they may have with

respect to the Plan.  In the event of any inconsistency between the Plan, any order

confirming the Plan, and this Settlement Agreement, the terms of this Settlement

Agreement shall control.

### XXVI.    <u>AMENDMENTS/INTEGRATION AND COUNTERPARTS</u>

172.    This Settlement Agreement and any other documents to be

executed in connection herewith or referred to herein shall constitute the sole and

complete agreement of the parties hereto with respect to the matters addressed herein.

This Settlement Agreement may not be amended except by a writing signed by all the

parties.

173.    Notwithstanding Paragraph 172, at any time after the Effective

Date, any modification of the provisions specific to any of the Environmental Response

Trusts established under this Settlement Agreement can be amended by separate written

agreement without Court approval among the applicable Trustee(s), the United States, the affected State(s) and Local Government(s), and Reorganized Tronox, <u>except that</u> the agreement of Reorganized Tronox is only required as to: (i) modifications to any provision regarding the transfer of Environmental Information and Real Property Information between Reorganized Tronox and the applicable Trust(s), (ii) modifications with respect to the line of credit to be made available by Reorganized Tronox to the Savannah Trust or the Savannah Trust-Owned Entity and any obligations under the Line of Credit Agreement set forth in Subparagraph 28(c), and (iii) modifications to any provision regarding obligations in connection with the Henderson Leased Facility.

174.    The signatories for the parties each certify that he or she is authorized to enter into the terms and conditions of this Settlement Agreement after the close of any applicable comment period(s) and provisions of comments by the Governments to the Court, and to execute and bind legally such party to this document.

175.    This Settlement Agreement may be executed in counterparts, each of which shall constitute an original, and all of which shall constitute one and the same agreement.

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT

**FOR THE UNITED STATES OF AMERICA**

Date: 11/0/10

ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20044

Date: 11/22/10

PREET BHARARA
United States Attorney for the
Southern District of New York

By:

ROBERT WILLIAM YALEN
TOMOKO ONOZAWA
JOSEPH A. PANTOJA
Assistant United States Attorneys
86 Chambers Street
New York, New York 10007
Tel:  (212) 637-2722
Fax: (212) 637-2686

Date: 11/22/10

ALAN S. TENENBAUM
National Bankruptcy Coordinator
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20044

Date: 11/10/10

FREDERICK PHILLIPS, Attorney
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20044

PAGE 215

**FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

Date: _11/9/10_                        By: _Cynthia Giles_

CYNTHIA GILES
Assistant Administrator for Enforcement
and Compliance Assurance
U.S. Environmental Protection Agency

Date: _11/8/10_                        By: _____

CRAIG KAUFMAN
Attorney-Advisor
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC 20460

*In re: Tronox, Inc., et al.,* Case No. 09-10156 (ALG)

**FOR TRONOX LUXEMBOURG S.ar.L**

Date: _8 NOV 2010_

By: _____
Michael J. Foster
Attorney-in-Fact

**FOR TRONOX INCORPORATED**

Date: _8 NOV 2010_

By: _____
Michael J. Foster
Vice President, General Counsel & Secretary

**FOR CIMARRON CORPORATION**

Date: _8 NOV 2010_

By: _____
Michael J. Foster
Director, Vice President & Secretary

**FOR SOUTHWESTERN REFINING COMPANY, INC.**

Date: _8 NOV 2010_

By: _____
Michael J. Foster
Director, Vice President & Secretary

**FOR TRANSWORLD DRILLING COMPANY**

Date: _8 NOV 2010_

By: _____
Michael J. Foster
Director, Vice President & Secretary

PAGE 217

**FOR TRIANGLE REFINERIES, INC.**

Date:    8 Nov 2010

By:   
Michael J. Foster
Director, Vice President & Secretary

**FOR TRIPLE S, INC.**

Date:    8 Nov 2010

By:   
Michael J. Foster
Director, Vice President & Secretary

**FOR TRIPLE S ENVIRONMENTAL MANAGEMENT CORPORATION**

Date:    8 Nov 2010

By:   
Michael J. Foster
Director, Vice President & Secretary

**FOR TRIPLE S MINERALS RESOURCES CORPORATION**

Date:    8 Nov 2010

By:   
Michael J. Foster
Director, Vice President & Secretary

**FOR TRIPLE S REFINING CORPORATION**

Date:    8 Nov 2010

By:   
Michael J. Foster
Director, Vice President & Secretary

PAGE 218

**FOR TRONOX LLC**

Date:    8 NOV 2010

By:

Michael J. Foster
Manager, Vice President & Secretary


**FOR TRONOX FINANCE CORP.**

Date:    8 NOV 2010

By:

Michael J. Foster
Director, Vice President & Secretary


**FOR TRONOX HOLDINGS, INC.**

Date:    8 NOV 2010

By:

Michael J. Foster
Director
Vice President & Secretary


**FOR TRONOX PIGMENTS (SAVANNAH) INC.**

Date:    8 NOV 2010

By:

Michael J. Foster
Director, Vice President & Secretary


**FOR TRONOX WORLDWIDE LLC**

Date:    8 NOV 2010

By:

Michael J. Foster
Manager, Vice President & Secretary


PAGE 219

**FOR THE NAVAJO NATION**

Date: _Nov 09, 2010_     _____
                         Louis Denetsosie, Attorney General
                         NAVAJO NATION DEPARTMENT OF JUSTICE
                         P.O. Box 2010
                         Window Rock, AZ 86515

*In re: Tronox, Inc., et al.,* Case No. 09-10156 (ALG)

PAGE 220

**FOR THE STATE OF ALABAMA**

TROY KING
Attorney General
State of Alabama


By: _____    Date: ___Novermber 17, 2010_____
Thomas L. Johnston (JOH081)
Assistant Attorney General


By: _____    Date: ___Novermber 17, 2010_____
Antoinette Jones (JON018)
Assistant Attorney General


PAGE 221

**FOR THE FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION**

FLORIDA DEPARTMENT OF
ENVIRONMENTAL PROTECTION


By its attorney,
JONATHAN H. ALDEN,
SENIOR ASST. GENL. COUNSEL

Date:  11/22/2010

By:  /s/ *Jonathan H. Alden*
Jonathan H. Alden
Senior Assistant General Counsel
Florida Department of Environmental
Protection
3900 Commonwealth Blvd., MS 35
Tallahassee, FL 32399-3000
(850) 245-2238
jonathan.alden@dep.state.fl.us

**FOR THE STATE OF GEORGIA**

Date: _11/15/2010_

Georgia Environmental Protection
Division

**FOR THE STATE OF IDAHO**

Date: _11-17-2010_

**FOR THE STATE OF ILLINOIS**

PEOPLE OF THE STATE OF ILLINOIS
*ex rel.* LISA MADIGAN
Attorney General of the State of Illinois

MATTHEW J. DUNN, Chief
Environmental Enforcement
Asbestos Litigation Division

BY: _____          BY: _____
ROSEMARIE CAZEAU, Chief                 THOMAS DAVIS, Chief
Assistant Attorney General              Assistant Attorney General
Environmental Bureau North              Environmental Bureau South

DATE: 11/15/10                          DATE: 11/15/10


ILLINOIS ENVIRONMENTAL                  ILLINOIS DEPARTMENT OF
PROTECTION AGENCY                       NATURAL RESOURCES

DOUGLAS P. SCOTT, Director              MARC MILLER, Director
Illinois Environmental Protection Agency  Illinois Department of Natural
                                          Resources

BY: _____          BY: _____
JOHN J. KIM                             MITCHELL L. COHEN
Chief Legal Counsel                     Chief Legal Counsel

DATE: 11/12/10                          DATE: 11/11/10


ILLINOIS EMERGENCY MANAGEMENT AGENCY

JOSEPH KLINGER, Interim Director
Illinois Emergency Management Agency

BY: _____
MAUREEN CUNNINGHAM
General Counsel

DATE: 11/10/10


PAGE 225

**Indiana's Signature Page for
"CONSENT DECREE AND ENVIRONMENTAL SETTLEMENT AGREEMENT"
in the case of Tronox Incorp., US Brc Ct. SD NY Case No. 09-10156 (ALG)**


Indiana Department of
Environmental Management

By: _____
    Thomas W. Easterly,
    Commissioner


Ind. Dept. of Environmental Mgmt
100 North Senate Avenue
MC 50-01, ICGN 1301
Indianapolis, IN 46204


Gregory F. Zoeller,
Attorney General of Indiana
Atty. No. 1958-98

By: _____
    Patricia Orloff Erdmann
    Chief Counsel for Litigation
    Atty. No. 17664-49A

By: _____
    Timothy J. Junk
    Dep. Atty. Gen.
    Atty. No. 5587-02


Office of the Attorney General
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204


Date: _November 15, 2010_

FOR THE STATE OF IOWA

DATE: Nov. 12, 2010

BY: *Wayne Gieselman*

Wayne Gieselman
Division Administrator
Iowa Department of Natural Resources

**FOR THE STATE OF KANSAS**

Date: _Nov. 10, 2010_

_John W. Mitchell_
John W. Mitchell
Acting Secretary
Kansas Department of Health and Environment

United States Bankruptcy Court
Southern District Of New York

In Re:    Tronox Incorporated, *Et Al.*
Case No. 09-10156 (Alg), (Jointly Administered)
CONSENT DECREE AND ENVIRONMENTAL SETTLEMENT AGREEMENT

PAGE 228

**FOR THE STATE OF LOUISIANA**

**LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QUALITY**
Peggy M. Hatch, Secretary

Date: 11/18/10                    By: _____

Beau James Brock, Assistant Secretary
Office of Environmental Compliance

PAGE 229

**FOR THE MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL
PROTECTION**

MASSACHUSETTS DEPARTMENT OF
ENVIRONMENTAL PROTECTION
By its attorney,

MARTHA COAKLEY,
ATTORNEY GENERAL

Date: 11/15/10          By:

Carol Iancu, MA BBO # 635626
Assistant Attorney General
Environmental Protection Division
Massachusetts Office of the Attorney
     General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 963-2428
carol.iancu@state.ma.us

PAGE 230

**FOR THE STATE OF MISSISSIPPI**

MISSISSIPPI COMMISSION ON
ENVIRONMENTAL QUALITY

Date: _11/15/10_    By: _____

Trudy D. Fisher
Executive Director
Mississipi Department of Environmental
    Quality
P.O. Box 2261
Jackson, Mississippi 39225

**FOR THE STATE OF MISSOURI**

Date: _11/15/10_

_____
CHRIS KOSTER
Attorney General for the State of Missouri

JOHN K. MCMANUS
Chief Counsel
Agriculture and Environment Division
P.O. Box 899
Jefferson City, Missouri 65102
Tel.: 573-751-8370
Fax: 573-781-8796
Email: jack.mcmanus@ago.mo.gov

Date: _11/16/10_

_____
Leanne Tippett Mosby
Director
Division of Environmental Quality
Missouri Department of Natural Resources
P.O. Box 176
Jefferson City, Missouri 65102

PAGE 232

FOR THE STATE OF NEVADA

DEPARTMENT OF CONSERVATION AND
   NATURAL RESOURCES,
DIVISION OF ENVIRONMENTAL
   PROTECTION

Date: 11|9|10    By:

LEO M. DROZDOFF, P.E.
Acting Director, DCNR

Approved as to form:

CATHERINE CORTEZ MASTO
Attorney General

Date: 11·10·10    By:

CAROLYN E. TANNER
Deputy Attorney General

PAGE 233

**FOR THE STATE OF NEW JERSEY**

PAULA T. DOW
Attorney General of New Jersey

Date: November 9, 2010    By: _____

Richard F. Engel
Deputy Attorney General
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, NJ  08625-0093
Tel.:  (609) 984-4863
Fax:  (609) 341-5030

PAGE 234

**FOR THE STATE OF NEW YORK**

Date:   November 17, 2010

Linda E. White
Assistant Attorney General

**FOR THE STATE OF NORTH CAROLINA**

Date: _11-10-10_

Dexter R. Matthews
Director, Division of Waste
Management
Department of Environment and
    Natural Resources

PAGE 236

**FOR THE STATE OF OHIO**

Date: 11/15/10

**RICHARD CORDRAY**
**Ohio Attorney General**

Michelle T. Sutter
Assistant Attorney General
30 East Broad Street, 26th Floor
Columbus, OH 43215
(614) 752-4316
(866) 483-1104

PAGE 237

**FOR THE STATE OF OKLAHOMA**

Date: 11·11·10 _____    _____

J.D. STRONG,
OKLAHOMA SECRETARY OF THE
ENVIRONMENT


Date: _____    _____

STEVEN A. THOMPSON
EXECUTIVE DIRECTOR
OKLAHOMA DEPARTMENT OF
ENVIRONMENTAL QUALITY

PAGE 238-A

**FOR THE STATE OF OKLAHOMA**

Date: _____          _____
                                 J.D. STRONG
                                 OKLAHOMA SECRETARY OF THE
                                    ENVIRONMENT


Date: _11_|_16_|_11_____          _____
                                 STEVEN A. THOMPSON
                                 EXECUTIVE DIRECTOR
                                 OKLAHOMA DEPARTMENT OF
                                    ENVIRONMENTAL QUALITY

PAGE 238-B

FOR THE COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF ENVIRONMENTAL PROTECTION:


Thomas M. Thompson, P.G.
Professional Geologist Manager
Environmental Cleanup Program

**FOR THE STATE OF TENNESSEE**

Date: _11/5/10_                    _James H. Fyke_
                                   James H. Fyke
                                   Commissioner
                                   Dept. of Environment and Conservation

PAGE 240

**FOR THE STATE OF TEXAS**

Date: _____          _____

**FOR THE STATE OF TEXAS NATURAL RESOURCE DAMAGE TRUSTEES**

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

BARBARA B. DEANE
Chief, Environmental Protection and Administrative Law Division

DAVID PREISTER
Chief, Environmental Protection Section

Date: _November 17, 2010_          By: _Sarah Jane Utley_

SARAH J. UTLEY
Assistant Attorney General
State Bar No. 24042075

**FOR THE STATE OF WISCONSIN**

MATTHEW J. FRANK
Secretary

Date: _11/18/10_

ALLEN K. SHEA
Deputy Secretary
Wisconsin Department of Natural Resources

Approved as to form:

J.B. VAN HOLLEN
Attorney General

Date: _11/18/10_

ANNE C. MURPHY
Assistant Attorney General
State Bar # 1031600
Attorneys for the State of Wisconsin

PAGE 243

**FOR THE CITY OF WARRENVILLE, ILLINOIS**

Date:  _09-17-10_

David L. Brummer
Mayor

PAGE 244

**FOR THE CITY OF WEST CHICAGO, ILLINOIS**

Date: September 7, 2010

Michael B. Kwasman
Mayor

PAGE 245

**FOR THE FOREST PRESERVE DISTRICT OF DUPAGE COUNTY, ILLINOIS**

Date: _____

D. "Dewey" Pierotti Jr.
President

PAGE 246

**FOR THE COUNTY OF DUPAGE, ILLINOIS**

Date: _____

Robert Schillerstrom
Chairman

PAGE 247

**FOR THE CITY OF CHICAGO, ILLINOIS**

Date: 11/15/10                         By: _____
                                       SUZANNE MALEC-MCKENNA
                                       Commissioner
                                       Department of Environment

Date: 11-10-10                         By: _____
                                       MARA S. GEORGES
                                       Corporation Counsel
                                       Department of Law

PAGE 248

**FOR THE CHICAGO PARK DISTRICT, ILLINOIS**

Date: 11 | 15 | 10          By: _Maria A. Garcia_

Maria Garcia, General Counsel
Chicago Park District

**FOR THE MULTISTATE TRUSTEE**

Date: 11/17/10

Cynthia Brooks

Greenfield Environmental Multistate Trust LLC
Not Individually But Solely In Its Representative
    Capacity
As Trustee for the Multistate Trust
By: Greenfield Environmental Trust Group, Inc.,
Member
By: Cynthia Brooks, President

**PAGE 250**

**FOR THE SAVANNAH TRUSTEE**

Date: 11/17/10

Greenfield Environmental Savannah Trust LLC
Not Individually But Solely In Its Representative
        Capacity
As Trustee for the Savannah Trust
By:  Greenfield Environmental Trust Group, Inc.,
Member
By:  Cynthia Brooks, President

PAGE 251

**FOR THE WEST CHICAGO TRUSTEE**

WESTON SOLUTIONS, INC.,
NOT INDIVIDUALY BUT SOLELY
IN ITS REPRESENTATIVE CAPACITY AS
TRUSTEE OF THE WEST CHICAGO
ENVIRONMENTAL RESPONSE TRUST

Date: _11/15/10_    By: _____

Peter A. Ceribelli
Chief Operating Officer

**FOR THE CIMARRON TRUSTEE**

The Cimarron Custodial Trustee By and through
Environmental Properties Management, LLC, not
individually but solely in the representative capacity
as Trustee of the Cimarron Environmental Response
Trust

Date: _Nov 10, 2010_    By: _____

Stephen M. Linnemann, P.E.,
  not individually but solely in the representative
  capacity as President of the Trustee
  of the Custodial Trust

PAGE 253

**FOR THE HENDERSON TRUSTEE**

The Henderson Trustee
By and through Le Petomane XXVII, Inc., not
individually but solely in the representative capacity
as Trustee of the Henderson Environmental
Response Trust

Date: ___11/11/10___          By: _____    *not individually*
                                                            *but solely as*
Jay A. Steinberg, not individually but                      *President*
solely in the representative capacity
as President of the Trustee of the Henderson
Environmental Response Trust

PAGE 254

**Attachment A-1**

**Owned Funded Sites**

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 1 | MOBILE SITE | MOBILE PIGMENT COMPLEX | MOBILE PIGMENT COMPLEX | Mobile | AL | Multistate | YES | AL | |
| 2 | BIRMINGPORT SITE | BIRMINGPORT TERMINAL | 7955 BIRMINGPORT RD | Mulga | AL | Multistate | YES | AL | |
| 3 | JACKSONVILLE TERMINAL | JACKSONVILLE - TALLEYRAND | 2470 TALLEYRAND AVE | Duval | FL | Multistate | YES | FL | |
| 4 | JACKSONVILLE TERMINAL | JACKSONVILLE - TERMINAL | JACKSONVILLE TERMINAL | Duval | FL | Multistate | YES | FL | |
| 5 | KERR-MCGEE JACKSONVILLE SITE | JACKSONVILLE - CHEM PLANT | 1611 TALLEYRAND AVE | Duval | FL | Multistate | YES | FL | |
| 6 | SAVANNAH FACILITY | SAVANNAH PLANT SITE | 1 KERR-MCGEE ROAD | Savannah | GA | Savannah | YES | GA | |
| 7 | SODA SPRINGS SITE | SODA SPRINGS - 1963 - Part I | ACQUIRED PRIOR TO 1963 | Caribou | ID | Multistate | YES | ID | |
| 8 | SODA SPRINGS SITE | SODA SPRINGS - FEE 236 - Part 2 | #2 OF 3 PARCELS AT SODA SPGS | Caribou | ID | Multistate | YES | ID | |
| 9 | SODA SPRINGS SITE | SODA SPRINGS - VANADIAM-Part 3 | ADJ TO VANADIUM PLANT | Caribou | ID | Multistate | YES | ID | |
| 10 | SODA SPRINGS SITE | SODA SPRINGS PLANT SITE | TWO MILES NORTH ON STATE HIGHWAY 34 | Soda Springs | ID | Multistate | YES | ID | |
| 11 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - Parcel 04-09-423-002 | RARE EARTHS FACILITY - Factory Street | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 12 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - Parcel 04-09-423-003 | RARE EARTHS FACILITY - Factory Street | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 13 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - Parcel 04-09-423-004 | RARE EARTHS FACILITY - Factory Street | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 14 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - Parcel 04-09-423-005 | RARE EARTHS FACILITY - Factory Street | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 15 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - Parcel 04-09-423-006 | RARE EARTHS FACILITY - Factory Street | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 16 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - Parcel 04-09-423-007 | RARE EARTHS FACILITY - Factory Street | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 17 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - Parcel 04-09-432-012 | RARE EARTHS FACILITY - Factory & Weyrauch St | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 18 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - Parcel 04-09-433-001 | RARE EARTHS FACILITY - 800 Weyrauch Street | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 19 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - Parcel 04-16-202-001 | RARE EARTHS FACILITY | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 20 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - TAX # 04-04-402-002 | 553 YALE STREET | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 21 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - TAX # 04-09-415-009 | 323 WEST BLAIR STREET | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 22 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - TAX # 04-09-416-015 | 318 W. BLAIR STREET | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 23 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - TAX # 04-09-432-001 | 250 W. BROWN STREET | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 24 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - TAX # 04-09-439-015 | 740 JOLIET ST | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 25 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - TAX # 04-09-440-007 | 826 JOLIET & 826 1/2 JOLIET | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 26 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - TAX # 04-09-440-007 | 826 1/2 JOLIET & 826 JOLIET | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 27 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - TAX # 04-16-405-006 | 479 MELOLANE | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 28 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - TAX # 04-16-406-004 | 65 JOY ROAD | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 29 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - TAX # 04-09-439-013 | 700 BLK OF JOLIET STREET & HAZEL ST. | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 30 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - TAX # 04-09-439-014 | 736 JOLIET STREET | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 31 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - TAX # 04-09-440-001 | LESTER & WEYRAUCH - LOT 8 | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 32 | REF AND OWNED RAS PROPERTIES | W. CHICAGO - TAX # 04-09-440-002 | LESTER STREET - LOT 7 | DuPage | IL | West Chicago | YES | IL | W. Chi. Local Communities |
| 33 | MADISON SITE | MADISON-- Part 1 - E & S BNDRY | ADJ TO E & S BOUNDARY | Madison | IL | Multistate | YES | IL | |
| 34 | MADISON SITE | MADISON-- Part 2 - LECLEDE #1 | ADJ TO N BOUNDARY | Madison | IL | Multistate | YES | IL | |
| 35 | MADISON SITE | MADISON-- Part 3 - LECLEDE #2 | ADJ TO N BOUNDARY | Madison | IL | Multistate | YES | IL | |
| 36 | MADISON SITE | MADISON-- Part 4 - N & S R-O-W | NORTH/SOUTH RIGHT OF WAY | Madison | IL | Multistate | YES | IL | |
| 37 | MADISON SITE | MADISON-- Part 5 - TREATING PLANT | NO. 2 WASHINGTON AVE | Madison | IL | Multistate | YES | IL | |
| 38 | SAUGET SITE | SAUGET | 2702 OGDEN AVE | Sauget | IL | Multistate | YES | IL | |
| 39 | INDIANA WOOD TREATING SITE | INDIANAPOLIS - TREATING | 1450 SOUTH EARHART STREET | Indianapolis | IN | Multistate | YES | IN | |
| 40 | INDIANA WOOD TREATING SITE | INDIANAPOLIS - 1735 LASALLE | 1735 S. LASALLE ST | Marion | IN | Multistate | YES | IN | |
| 41 | INDIANA WOOD TREATING SITE | INDIANAPOLIS - 1747 LASALLE | 1747-1749 S. LASALLE ST | Marion | IN | Multistate | YES | IN | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 42 | INDIANA WOOD TREATING SITE | INDIANAPOLIS - SHERMAN AVE | ON SOUTH SHERMAN AVENUE | Marion | IN | Multistate | YES | IN | |
| 43 | INDIANA WOOD TREATING SITE | INDIANAPOLIS - STEWART | STEWART MEMORIAL CHURCH | Marion | IN | Multistate | YES | IN | |
| 44 | INDIANA WOOD TREATING SITE | INDIANAPOLIS - VANDEMAN | 1717 VANDEMAN STREET | Marion | IN | Multistate | YES | IN | |
| 45 | INDIANA WOOD TREATING SITE | INDIANAPOLIS- BARRINGTON | BARR.MANOR & MN HTS LOTS | Marion | IN | Multistate | YES | IN | |
| 46 | INDIANA WOOD TREATING SITE | INDIANAPOLIS- LASALLE | 1745 S. LASALLE ST | Marion | IN | Multistate | YES | IN | |
| 47 | RUSHVILLE SITE | RUSHVILLE - 114,115 | LOTS 114, 115 | Rush | IN | Multistate | YES | IN | |
| 48 | RUSHVILLE SITE | RUSHVILLE - 78, 79, 80, 81 & 82 | LOTS 78, 79, 80, 81 & 82 | Rush | IN | Multistate | YES | IN | |
| 49 | BOSSIER CITY SITE | BOSSIER CITY FORMER WOOD TREATING SITE | 600 HAMILTON RD | Bossier City | LA | Multistate | YES | LA | |
| 50 | CALHOUN GAS PLANT- NEIGHBORING PROPERTIES | CALHOUN / CHAMBLISS | 0.916 ACRES ON GRIGGS RD. | Ouachita | LA | Multistate | YES | LA | |
| 51 | CALHOUN GAS PLANT- NEIGHBORING PROPERTIES | CALHOUN / GOLSON | 3 ACRES - GOLSON | Ouachita | LA | Multistate | YES | LA | |
| 52 | CALHOUN GAS PLANT- NEIGHBORING PROPERTIES | CALHOUN / GREENE | 20 ACRES, GREENE | Ouachita | LA | Multistate | YES | LA | |
| 53 | CALHOUN GAS PLANT- NEIGHBORING PROPERTIES | CALHOUN / MASSEY B. | 7.5 ACRES-MASSEY(BRUCE) | Ouachita | LA | Multistate | YES | LA | |
| 54 | CALHOUN GAS PLANT- NEIGHBORING PROPERTIES | CALHOUN / MASSEY L. | LARRY W. MASSEY PROPERTY | Ouachita | LA | Multistate | YES | LA | |
| 55 | CALHOUN GAS PLANT- NEIGHBORING PROPERTIES | CALHOUN / NICHOLS | 242 GRIGGS ROAD | Ouachita | LA | Multistate | YES | LA | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 56 | CALHOUN GAS PLANT-NEIGHBORING PROPERTIES | CALHOUN / TURNER | 3 ACRES - TURNER | Ouachita | LA | Multistate | YES | LA | |
| 57 | CALHOUN GAS PLANT-NEIGHBORING PROPERTIES | CALHOUN / WILLIAMS | 0.51 ACRE W/HOUSE - WILLIAMS | Ouachita | LA | Multistate | YES | LA | |
| 58 | SPRINGFIELD SITE | SPRINGFIELD FORMER WOOD TREATING | Lot 51B, GOLDEN HILLS | Greene | MO | Multistate | YES | MO | |
| 59 | KANSAS CITY SITE | KANSAS CITY TREATING PLANT | 2300 OAKLAND (AT SOUTH 23RD STREET & I-435) | Kansas City | MO | Multistate | YES | MO | |
| 60 | SPRINGFIELD SITE | SPRINGFIELD-TREATING PLANT | 2800/ 3800 W. HIGH STREET | Springfield | MO | Multistate | YES | MO | |
| 61 | COLUMBUS SITE | COLUMBUS TREATING | 2300 SOUTH 14TH AVENUE | Columbus | MS | Multistate | YES | MS | |
| 62 | MERIDIAN SITE | MERIDIAN ORPHAN SITE | NORTH, ORPHAN SITE | Lauderdale | MS | Multistate | YES | MS | |
| 63 | COLUMBUS SITE | COLUMBUS - LOT 5 SQUARE | SE/C 14TH AVE NO. & 21ST N. (2300 14TH AVE) | Lowndes | MS | Multistate | YES | MS | |
| 64 | MERIDIAN SITE | MERIDIAN TREATING | HIGHWAY 11 SOUTH (310 HIGHWAY S) | Meridian | MS | Multistate | YES | MS | |
| 65 | NAVASSA SITE | WILMINGTON PLANT-Abandoned | NAVASSA ROAD | Navassa | NC | Multistate | YES | NC | |
| 66 | HENDERSON PROPERTY | HENDERSON PLANT | 8000 WEST LAKE MEAD DRIVE (INCLUDING 140 ACRES OF UNDEVELOPED LAND) | Henderson | NV | Henderson | YES | NV | |
| 67 | BRISTOL MINE SITE | PATENT MINING CLAIMS AND ASSOCIATED LAND NEAR BRISTOL MINE SITES | T3N, R66E (Additional Details on Attachment A-4) | Pioche Area | NV | Multistate | YES | NV | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 68 | CASELTON MINE SITE | PATENT MINING CLAIMS AND ASSOCIATED LAND NEAR CASELTON MINE SITES | T01N, R67 E, SEC. 32, E ½ AND W ½, AND T01S, R67E, SEC. 4, NE 1/4, NE 1/4, 7.5' QUADRANGLE; WEST LONGITUDE: -114.4920, NORTH LATITUDE: 37.9250 (Additional Details on Attachment A-4) | Pioche Area | NV | Multistate | YES | NV | |
| 69 | CASELTON MINE SITE | CASELTON MILL, CASELTON HEIGHTS AREA, AND ASSOCIATED MILL TAILINGS | TOWNSHIP 1 NORTH, RANGE 67 EAST, IMMEDIATELY WEST OF THE TOWN OF PIOCHE | Pioche Area | NV | Multistate | YES | NV | |
| 70 | ROME SITE | ROME | 51.29 & 12.93 acre tracts (5856 AND 5900 SUCCESS DRIVE) | Oneida | NY | Multistate | YES | NY | |
| 71 | ROME SITE | ROME | Sec 222, Blk 2, Lot 16 - London Rd | Oneida | NY | Multistate | YES | NY | |
| 72 | CLEVELAND SITE | CLEVELAND FORMER REFINERY FEE LANDS | 400 SOUTH SWAN | Cleveland | OK | Multistate | YES | OK | |
| 73 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING-MAVERIC MINI MART | | Cushing | OK | Multistate | YES | OK | |
| 74 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING- OKLAHOMA OILWELL CEMENTING CO. | 1 acre | Cushing | OK | Multistate | YES | OK | |
| 75 | CIMARRON SITE | CIMARRON FORMER NUCLEAR FUELS FACILITY- MARTIN FARM | FEE #45 CIMARRON FACILITY | Logan | OK | Cimarron | YES | OK | |
| 76 | CLEVELAND SITE | CLEVELAND FORMER REFINERY FEE LANDS | CLEVELAND REFINERY (500 S. SWAN ROAD) | Pawnee | OK | Multistate | YES | OK | |
| 77 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - BROWN PPTY | 17.19 ACRES W/RESIDENCE | Payne | OK | Multistate | YES | OK | |
| 78 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - JEFF CARGILL | 1.28 ACRES + Shed & Mobile Home | Payne | OK | Multistate | YES | OK | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 79 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - C.W. CARGILL | 3.75 ACRES - Shop & Mobile Homes | Payne | OK | Multistate | YES | OK | |
| 80 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - PARKER | PARKER PROPERTY | Payne | OK | Multistate | YES | OK | |
| 81 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - ANDERSON | ANDERSON PROPERTY | Payne | OK | Multistate | YES | OK | |
| 82 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - AREA TANKS | CUSHING AREA TANKS | Payne | OK | Multistate | YES | OK | |
| 83 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - BANK PPTY | 2.46A | Payne | OK | Multistate | YES | OK | |
| 84 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - BOYDSTON | BOYDSTON PROP | Payne | OK | Multistate | YES | OK | |
| 85 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - CHANEL | CHANEL ENERGY PROPERTY | Payne | OK | Multistate | YES | OK | |
| 86 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - ERW INC. | ERW INC. PROPERTY | Payne | OK | Multistate | YES | OK | |
| 87 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - FEE 90 - 8.49 ACRES | SW/c SE4 | Payne | OK | Multistate | YES | OK | |
| 88 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - FEE 90 - 10.33 ACRES | E481' S935.5 OF E2 S22 18N 5E | Payne | OK | Multistate | YES | OK | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 89 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - FEE 90 - 200.479 ACRES | SE4 LESS TRS CONV E2 SW4 | Payne | OK | Multistate | YES | OK | |
| 90 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - FEE 90 - 39.5 ACRES | E16' NW4 SE4 & NE4 SE4 LESS 1A | Payne | OK | Multistate | YES | OK | |
| 91 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - GRAVENS | .35A - GRAVENS PROPERTY | Payne | OK | Multistate | YES | OK | |
| 92 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - HARRIS | 5.58A | Payne | OK | Multistate | YES | OK | |
| 93 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - HUGGENS | JACK & IRA HUGGENS PPTY | Payne | OK | Multistate | YES | OK | |
| 94 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - LAND | LAND | Payne | OK | Multistate | YES | OK | |
| 95 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - MARTIN | MARTIN PROPERTY | Payne | OK | Multistate | YES | OK | |
| 96 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - MULTIMEDIA | MULTIMEDIA PROPERTY | Payne | OK | Multistate | YES | OK | |
| 97 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - NOLAN VINSON | NOLAN VINSON PROPERTY | Payne | OK | Multistate | YES | OK | |
| 98 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - RUNNELS PROPERTY | 47.31 ACRES | Payne | OK | Multistate | YES | OK | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 99 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - RUTHERFORD | RUTHERFORD PROPERTY | Payne | OK | Multistate | YES | OK | |
| 100 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - TORONTO | TORONTO RESOURCE PROP | Payne | OK | Multistate | YES | OK | |
| 101 | CUSHING SITE AND SURROUNDING PROPERTIES | CUSHING - WILSON | JIMMY WILSON PROPERTY | Payne | OK | Multistate | YES | OK | |
| 102 | AVOCA SITE | AVOCA, PA TREATING PLANT | MCALPINE ST. NEAR YORK AVENUE | Avoca | PA | Multistate | YES | PA | |
| 103 | BEAUMONT SITE | BEAUMONT PLANT | 1110 PINE ST | Beaumont | TX | Multistate | YES | TX | |
| 104 | TEXARKANA FACILITY | TEXARKANA - #1 | 155 Buchanan Road | Bowie | TX | Multistate | YES | TX | |
| 105 | TEXARKANA FACILITY | TEXARKANA GREENBELT - #2 | GREENBELT, E SIDE OF PLANT | Bowie | TX | Multistate | YES | TX | |
| 106 | TEXARKANA FACILITY | TEXARKANA POND - #3 | POND | Bowie | TX | Multistate | YES | TX | |
| 107 | CORPUS CHRISTI NO. 1 TERMINAL | CORPUS CHRISTI #08 | JOHN G. HATCH - TRACT I | Nueces | TX | Multistate | YES | TX | |
| 108 | CORPUS CHRISTI NO. 1 TERMINAL | CORPUS CHRISTI #09 | JOHN G. HATCH - TRACT II | Nueces | TX | Multistate | YES | TX | |
| 109 | CORPUS CHRISTI NO. 1 TERMINAL | CORPUS CHRISTI #10 | JOHN G. HATCH - TRACT III | Nueces | TX | Multistate | YES | TX | |
| 110 | CORPUS CHRISTI NO. 1 TERMINAL | CORPUS CHRISTI #01-A | N. BDWY - TERM 1- #1 | Nueces | TX | Multistate | YES | TX | |
| 111 | CORPUS CHRISTI NO. 1 TERMINAL | CORPUS CHRISTI #01-B | S. BDWY - TERM 1- #2 | Nueces | TX | Multistate | YES | TX | |
| 112 | CORPUS CHRISTI NO. 1 TERMINAL | CORPUS CHRISTI #01-C | SALT FLATS - TERM 1- #3 | Nueces | TX | Multistate | YES | TX | |
| 113 | TEXARKANA FACILITY | TEXARKANA PLANT - #4 | 2513 BUCHANON ROAD | Texarkana | TX | Multistate | YES | TX | |

## Attachment A-2

### Owned Service Stations

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 1 | OWNED SERVICE STATION | SELMA #2157 | 3217 WATERS ST. | Dallas | AL | Multistate | YES | AL | |
| 2 | OWNED SERVICE STATION | SELMA #5030 | US HWY 80 EAST | Dallas | AL | Multistate | YES | AL | |
| 3 | OWNED SERVICE STATION | BOAZ #1 | HWY 431 SOUTH (SARDIS CITY) | Etowah | AL | Multistate | YES | AL | |
| 4 | OWNED SERVICE STATION | E. GADSDEN #7075 | HWY 278 EAST | Etowah | AL | Multistate | YES | AL | |
| 5 | OWNED SERVICE STATION | E. GADSDEN #7090 | 300 E MEIGHAN BLVD | Etowah | AL | Multistate | YES | AL | |
| 6 | OWNED SERVICE STATION | JASPER | OLD HIGHWAY 78W (ADJACENT LOT) | Jasper | AL | Multistate | YES | AL | |
| 7 | OWNED SERVICE STATION | BESSEMER #5011 - PLAT 1 | 4536 BESSEMER HWY | Jefferson | AL | Multistate | YES | AL | |
| 8 | OWNED SERVICE STATION | BESSEMER #5012 - PLAT 2 | 4536 BESSEMER HWY | Jefferson | AL | Multistate | YES | AL | |
| 9 | OWNED SERVICE STATION | BIRMINGHAM #2081 | 1600 DENNISON | Jefferson | AL | Multistate | YES | AL | |
| 10 | OWNED SERVICE STATION | HUNTSVILLE #7095 | 3105 BOB WALLACE AVENUE | Madison | AL | Multistate | YES | AL | |
| 11 | OWNED SERVICE STATION | MONTGOMERY #7101 | 4118 MOBILE RD | Montgomery | AL | Multistate | YES | AL | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 12 | OWNED SERVICE STATION | JASPER #7063 | 1302 BANKHEAD HWY | Walker | AL | Multistate | YES | AL | |
| 13 | OWNED SERVICE STATION | DEWITT #1 - AR | 9TH & JEFFERSON | Arkansas | AR | Multistate | YES | NONE | |
| 14 | OWNED SERVICE STATION | STUTTGART #1 | US HWY 79 & SPRING ST. | Arkansas | AR | Multistate | YES | NONE | |
| 15 | OWNED SERVICE STATION | MOUNTAIN HOME #1 | 1025 HIGHWAY 62 SW | Baxter | AR | Multistate | YES | NONE | |
| 16 | OWNED SERVICE STATION | ROGERS #1 | 1540 SOUTH OLRICH (NEAR 8TH STREET) | Benton | AR | Multistate | YES | NONE | |
| 17 | OWNED SERVICE STATION | SILOAM SPRINGS #1 | ARKANSAS HWY 68/59 RT 4 | Benton | AR | Multistate | YES | NONE | |
| 18 | OWNED SERVICE STATION | ARKADELPHIA #1 | ROUTE 3 US HWY 67 | Clark | AR | Multistate | YES | NONE | |
| 19 | OWNED SERVICE STATION | JONESBORO #1 | 1208 E. JOHNSON | Craighead | AR | Multistate | YES | NONE | |
| 20 | OWNED SERVICE STATION | WEST MEMPHIS #1 | 1024 N. MISSOURI | Crittenden | AR | Multistate | YES | NONE | |
| 21 | OWNED SERVICE STATION | CONWAY #2 | SW/C OAK & FACTORY STS | Faulkner | AR | Multistate | YES | NONE | |
| 22 | OWNED SERVICE STATION | HOT SPRINGS #1 | 3521 CENTRAL AVE. | Garland | AR | Multistate | YES | NONE | |
| 23 | OWNED SERVICE STATION | MALVERN #1 | 305 W PAGE AVENUE | Hot Spring | AR | Multistate | YES | NONE | |
| 24 | OWNED SERVICE STATION | MALVERN #3 | HWY 270 & OLD MILITARY RD | Hot Springs | AR | Multistate | YES | NONE | |
| 25 | OWNED SERVICE STATION | BATESVILLE #1 | 614 ST. LOUIS | Independence | AR | Multistate | YES | NONE | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 26 | OWNED SERVICE STATION | WEST HELENA #1 | 420 N. SEBASTIAN | Phillips | AR | Multistate | YES | NONE | |
| 27 | OWNED SERVICE STATION | RUSSELLVILLE #1 | 1301 S. ARKANSAS | Pope | AR | Multistate | YES | NONE | |
| 28 | OWNED SERVICE STATION | NORTH LITTLE ROCK | NW/C I-40 & CENT APT RD | Pulaski | AR | Multistate | YES | NONE | |
| 29 | OWNED SERVICE STATION | NORTH LITTLE ROCK #6 | 3823 PIKE AVENUE | Pulaski | AR | Multistate | YES | NONE | |
| 30 | OWNED SERVICE STATION | FORREST CITY #1 | 1506 N. WASHINGTON | St. Francis | AR | Multistate | YES | NONE | |
| 31 | OWNED SERVICE STATION | SPRINGDALE #1 | 1901 SUNSET AVE | Washington | AR | Multistate | YES | NONE | |
| 32 | OWNED SERVICE STATION | JACKSONVILLE #3078 | 10414 LEM TURNER RD. | Duval | FL | Multistate | YES | FL | |
| 33 | OWNED SERVICE STATION | JACKSONVILLE #3054 | 6930 103RD STREET | Duval | FL | Multistate | YES | FL | |
| 34 | OWNED SERVICE STATION | JACKSONVILLE #3 | US HWY 1 (Dinsmore) | Duval | FL | Multistate | YES | FL | |
| 35 | OWNED SERVICE STATION | JACKSONVILLE #3064 | 3131 WEST BEAVER ST | Duval | FL | Multistate | YES | FL | |
| 36 | OWNED SERVICE STATION | TAMPA #3045 | 5239 S. MCDILL AVE. | Hillsborough | FL | Multistate | YES | FL | |
| 37 | OWNED SERVICE STATION | MACON #3008 | 5500 SOUTH HOUSTON | Bibb | GA | Multistate | YES | GA | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 38 | OWNED SERVICE STATION | ATLANTA #2138 | 2095 JONESBORO RD. | Fulton | GA | Multistate | YES | GA | |
| 39 | OWNED SERVICE STATION | WARNER ROBINS #3004 | 101 WATSON BLVD. | Houston | GA | Multistate | YES | GA | |
| 40 | OWNED SERVICE STATION | DEWITT #1 | 200 SOUTH SIXTH | Clinton | IA | Multistate | YES | IA | |
| 41 | OWNED SERVICE STATION | ESTHERVILLE #1 | 1715 E CENTRAL AVENUE | Emmet | IA | Multistate | YES | IA | |
| 42 | OWNED SERVICE STATION | HUMBOLDT #1 | 404 13TH ST. NORTH | Humboldt | IA | Multistate | YES | IA | |
| 43 | OWNED SERVICE STATION | IOWA CITY #2 | 2229 MUSCATINE | Johnson | IA | Multistate | YES | IA | |
| 44 | OWNED SERVICE STATION | RED OAK #1 | 1001 BROADWAY | Montgomery | IA | Multistate | YES | IA | |
| 45 | OWNED SERVICE STATION | MUSCATINE #1 | 201 (210) GREEN ST. | Muscatine | IA | Multistate | YES | IA | |
| 46 | OWNED SERVICE STATION | MUSCATINE #2 | 1507 PARK AVENUE | Muscatine | IA | Multistate | YES | IA | |
| 47 | OWNED SERVICE STATION | DES MOINES #05 | 6601-6667 DOUGLAS BLVD. | Polk | IA | Multistate | YES | IA | |
| 48 | OWNED SERVICE STATION | DES MOINES #18 | SE/C UNIVERSITY & 14TH | Polk | IA | Multistate | YES | IA | |
| 49 | OWNED SERVICE STATION | BETTENDORF #1 | 2838 STATE STREET | Scott | IA | Multistate | YES | IA | |
| 50 | OWNED SERVICE STATION | DAVENPORT #3 | 2334 ROCKINGHAM ROAD | Scott | IA | Multistate | YES | IA | |
| 51 | OWNED SERVICE STATION | AMES #1 | 517-519 LINCOLN WAY | Story | IA | Multistate | YES | IA | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 52 | OWNED SERVICE STATION | CRESTON #3 | 709 S. ELM ST. | Union | IA | Multistate | YES | IA | |
| 53 | OWNED SERVICE STATION | SIOUX CITY #2 | 1400 INGLESIDE AVE | Woodbury | IA | Multistate | YES | IA | |
| 54 | OWNED SERVICE STATION | URBANA #1 | 1302 N. CUNNINGHAM ROAD | Champaign | IL | Multistate | YES | IL | |
| 55 | OWNED SERVICE STATION | TUSCOLA #1 | 405 S MAIN | Douglas | IL | Multistate | YES | IL | |
| 56 | OWNED SERVICE STATION | PARIS #1 | RT 6 HIGHWAY NO 1 NORTH | Edgar | IL | Multistate | YES | IL | |
| 57 | OWNED SERVICE STATION | WHITE HALL #1 | 715 NORTH MAIN | Greene | IL | Multistate | YES | IL | |
| 58 | OWNED SERVICE STATION | WATSEKA #1 | 337 W. WALNUT | Iroquois | IL | Multistate | YES | IL | |
| 59 | OWNED SERVICE STATION | AURORA #1 | 410 HILL STREET | Kane | IL | Multistate | YES | IL | |
| 60 | OWNED SERVICE STATION | KANKAKEE #1 | 1305 N. SCHUYLER | Kankakee | IL | Multistate | YES | IL | |
| 61 | OWNED SERVICE STATION | GALESBURG #1 | 484 N. HENDERSON | Knox | IL | Multistate | YES | IL | |
| 62 | OWNED SERVICE STATION | GALESBURG #2 | 829 W. GROVE | Knox | IL | Multistate | YES | IL | |
| 63 | OWNED SERVICE STATION | VIRDEN #1 | 110 E. DEANE ST. (110 S. SPRINGFIELD) | Macoupin | IL | Multistate | YES | IL | |
| 64 | OWNED SERVICE STATION | COTTAGE HILLS #1 | 501 WEST MACARTHUR | Madison | IL | Multistate | YES | IL | |
| 65 | OWNED SERVICE STATION | MADISON #1 | 425 MC CAMBRIDGE | Madison | IL | Multistate | YES | IL | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|-----|----------------------------------|---------------|-------------------|----------------|-------|-------|------------------------------|----------------------------|----------------------------|
| 66 | OWNED SERVICE STATION | MACOMB #1 | 707 W JACKSON | McDonough | IL | Multistate | YES | IL | |
| 67 | OWNED SERVICE STATION | MOLINE #2 | 4655-4TH AVENUE | Rock Island | IL | Multistate | YES | IL | |
| 68 | OWNED SERVICE STATION | ROCK ISLAND #2 | 5001 11TH ST. | Rock Island | IL | Multistate | YES | IL | |
| 69 | OWNED SERVICE STATION | HERRIN #1 | 1106 S. PARK AVENUE | Williamson | IL | Multistate | YES | IL | |
| 70 | OWNED SERVICE STATION | HARTFORD CITY #1 | 1307 N. WALNUT | Blackford | IN | Multistate | YES | IN | |
| 71 | OWNED SERVICE STATION | LEBANON #1 | 1914 N. LEBANON | Boone | IN | Multistate | YES | IN | |
| 72 | OWNED SERVICE STATION | GREENSBURG | 1208 N. LINCOLN | Decatur | IN | Multistate | YES | IN | |
| 73 | OWNED SERVICE STATION | MUNCIE #1 | 3210 E. JACKSON | Delaware | IN | Multistate | YES | IN | |
| 74 | OWNED SERVICE STATION | NOBLESVILLE #1 - PLAT2 | 200 EAST CONNER | Hamilton | IN | Multistate | YES | IN | |
| 75 | OWNED SERVICE STATION | NOBLESVILLE #1 - PLAT 1 | 2000 EAST CONNER | Hamilton | IN | Multistate | YES | IN | |
| 76 | OWNED SERVICE STATION | KOKOMO #1 | 1023 E MARKLAND | Howard | IN | Multistate | YES | IN | |
| 77 | OWNED SERVICE STATION | INDIANAPOLIS #03 | 4057 SOUTHEASTERN/1425 TEMPERANCE | Marion | IN | Multistate | YES | IN | |
| 78 | OWNED SERVICE STATION | INDIANAPOLIS #04 | 1310 ROOSEVELT AVENUE | Marion | IN | Multistate | YES | IN | |
| 79 | OWNED SERVICE STATION | CRAWFORDSVILLE #1 | DARLINGTON & VERMONT ST | Montgomery | IN | Multistate | YES | IN | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 80 | OWNED SERVICE STATION | HUMBOLDT #1 | 617 SOUTH 9TH STREET | Allen | KS | Multistate | YES | KS | |
| 81 | OWNED SERVICE STATION | GARNETT #1 | 103 MAPLE STREET | Anderson | KS | Multistate | YES | KS | |
| 82 | OWNED SERVICE STATION | SEDAN #1 - PLAT 1 | MAIN & SCHOOL STREETS | Chautauqua | KS | Multistate | YES | KS | |
| 83 | OWNED SERVICE STATION | SEDAN #1 - PLAT 2 | SE/C MAIN & SCHOOL | Chautauqua | KS | Multistate | YES | KS | |
| 84 | OWNED SERVICE STATION | COLUMBUS #1 | 124 NO. KANSAS AVENUE (NEAR WALNUT) | Cherokee | KS | Multistate | YES | KS | |
| 85 | OWNED SERVICE STATION | ABILENE #1 | SW/C 6TH & BUCKEYE | Dickinson | KS | Multistate | YES | KS | |
| 86 | OWNED SERVICE STATION | PARSONS #1 | 2601 NORTH MAIN | Labette | KS | Multistate | YES | KS | |
| 87 | OWNED SERVICE STATION | McPHERSON #1 | KANSAS AND HICKORY | McPherson | KS | Multistate | YES | KS | |
| 88 | OWNED SERVICE STATION | CANEY #1 | 401 N. McGEE | Montgomery | KS | Multistate | YES | KS | |
| 89 | OWNED SERVICE STATION | COFFEYVILLE #1 | 812 EAST 11TH | Montgomery | KS | Multistate | YES | KS | |
| 90 | OWNED SERVICE STATION | COFFEYVILLE #2 | 403 WEST 11TH ST | Montgomery | KS | Multistate | YES | KS | |
| 91 | OWNED SERVICE STATION | ERIE #1 | 205 W. 4TH | Neosho | KS | Multistate | YES | KS | |
| 92 | OWNED SERVICE STATION | CHANUTE #1 & #2 | 306 (305) S. LINCOLN + EXT. LAND | Neosho | KS | Multistate | YES | KS | |
| 93 | OWNED SERVICE STATION | LARNED #1 | 1404 BROADWAY | Pawnee | KS | Multistate | YES | KS | |

7

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 94 | OWNED SERVICE STATION | SALINA #1 | 235 SOUTH BROADWAY | Saline | KS | Multistate | YES | KS | |
| 95 | OWNED SERVICE STATION | SCOTT CITY #1 | 12TH & S. MAIN | Scott | KS | Multistate | YES | KS | |
| 96 | OWNED SERVICE STATION | TOPEKA #1 (WAKARUSA) | US 75 & FORBES AFB | Shawnee | KS | Multistate | YES | KS | |
| 97 | OWNED SERVICE STATION | TOPEKA #6 | 2635 CALIFORNIA | Shawnee | KS | Multistate | YES | KS | |
| 98 | OWNED SERVICE STATION | NEODESHA #1 | 903 MAIN STREET | Wilson | KS | Multistate | YES | KS | |
| 99 | OWNED SERVICE STATION | FRANKFORT #2166 | US HWY 60/MEADOWVIEW | Frankin | KY | Multistate | YES | NONE | |
| 100 | OWNED SERVICE STATION | MAYFIELD #1 | 723 E. BROADWAY | Graves | KY | Multistate | YES | NONE | |
| 101 | OWNED SERVICE STATION | LOUISVILLE #2123 | 4804 SOUTHSIDE DR. | Jefferson | KY | Multistate | YES | NONE | |
| 102 | OWNED SERVICE STATION | LOUISVILLE #2147 | 8800 MINORS LANE | Jefferson | KY | Multistate | YES | NONE | |
| 103 | OWNED SERVICE STATION | LOUISVILLE #2151 | 8207 OLD 3RD ST. RD | Jefferson | KY | Multistate | YES | NONE | |
| 104 | OWNED SERVICE STATION | LOUISVILLE #2152 | 9123 DIXIE HIGHWAY | Jefferson | KY | Multistate | YES | NONE | |
| 105 | OWNED SERVICE STATION | PADUCAH #1 | 1922 BRIDGE STREET | McCracken | KY | Multistate | YES | NONE | |
| 106 | OWNED SERVICE STATION | PADUCAH #3 | 1391 S. BELTLINE HWY | McCracken | KY | Multistate | YES | NONE | |
| 107 | OWNED SERVICE STATION | HARRODSBURG #1006 | COLLEGE & LEXINGTON | Mercer | KY | Multistate | YES | NONE | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 108 | OWNED SERVICE STATION | MANSFIELD #9021 | 1006 JENKINS STREET | DeSota Parish | LA | Multistate | YES | LA | |
| 109 | OWNED SERVICE STATION | WINNSBORO #9018 | LOCUST & MAIN STREETS | Franklin | LA | Multistate | YES | LA | |
| 110 | OWNED SERVICE STATION | RAYVILLE #9001 | 219-221 HARRISON | Richland | LA | Multistate | YES | LA | |
| 111 | OWNED SERVICE STATION | RAYVILLE #9022 | 1100 JULIA ST | Richland | LA | Multistate | YES | LA | |
| 112 | OWNED SERVICE STATION | FARMERVILLE #9013 | LA HWY & BOUNDARY | Union Parish | LA | Multistate | YES | LA | |
| 113 | OWNED SERVICE STATION | BLUE EARTH #1 | 321 NORTH GROVE | Faribault | MN | Multistate | YES | NONE | |
| 114 | OWNED SERVICE STATION | WORTHINGTON #1 | 1320 GRAND | Nobles | MN | Multistate | YES | NONE | |
| 115 | OWNED SERVICE STATION | LUVERNE #1 | 211 S. KNISS AVE. | Rock | MN | Multistate | YES | NONE | |
| 116 | OWNED SERVICE STATION | KIRKSVILLE #1 | 1024 E MCPHERSON ST | Adair | MO | Multistate | YES | MO | |
| 117 | OWNED SERVICE STATION | MEXICO #2 | 726 E. LIBERTY | Audrain | MO | Multistate | YES | MO | |
| 118 | OWNED SERVICE STATION | KENNETT #2 | 1333 FIRST STREET | Dunklin | MO | Multistate | YES | MO | |
| 119 | OWNED SERVICE STATION | SPRINGFIELD #2 | 1419 E. KEARNEY | Greene | MO | Multistate | YES | MO | |
| 120 | OWNED SERVICE STATION | MACON #1 | 102 S.MISSOURI | Macon | MO | Multistate | YES | MO | |
| 121 | OWNED SERVICE STATION | CHARLESTON #1 | 200 WEST MARSHALL | Mississippi | MO | Multistate | YES | MO | |

9

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 122 | OWNED SERVICE STATION | PERRYVILLE #1 | 300 W ST JOSEPH | Perry | MO | Multistate | YES | MO | |
| 123 | OWNED SERVICE STATION | MARSHALL #1 | NW/C I-70 & CO. RD. YY | Saline | MO | Multistate | YES | MO | |
| 124 | OWNED SERVICE STATION | NEVADA #1 | 212 SOUTH OAK | Vernon | MO | Multistate | YES | MO | |
| 125 | OWNED SERVICE STATION | JACKSON #5074 | 5502 N. STATE ST. | Hinds | MS | Multistate | YES | MS | |
| 126 | OWNED SERVICE STATION | PASCAGOULA #2154 | 2415 INGALLS AVENUE | Jackson | MS | Multistate | YES | MS | |
| 127 | OWNED SERVICE STATION | BOONEVILLE #1 | 102 SOUTH 2ND ST | Prentiss | MS | Multistate | YES | MS | |
| 128 | OWNED SERVICE STATION | GRAFTON  #1 | 640 WEST 12TH ST. | Walsh | ND | Multistate | YES | NONE | |
| 129 | OWNED SERVICE STATION | OMAHA #09 | 8516 BLONDO | Douglas | NE | Multistate | YES | NONE | |
| 130 | OWNED SERVICE STATION | OMAHA #10 | 1902 S. 10TH STREET | Douglas | NE | Multistate | YES | NONE | |
| 131 | OWNED SERVICE STATION | OMAHA #7 | 2932 MYRTLE AVENUE | Douglas | NE | Multistate | YES | NONE | |
| 132 | OWNED SERVICE STATION | LINCOLN #2 | 2910 N. 48TH | Lancaster | NE | Multistate | YES | NONE | |
| 133 | OWNED SERVICE STATION | LINCOLN #5 | 1740 COTNER BLVD. | Lancaster | NE | Multistate | YES | NONE | |
| 134 | OWNED SERVICE STATION | NORFOLK #1 | 311 OMAHA AVE. | Madison | NE | Multistate | YES | NONE | |
| 135 | OWNED SERVICE STATION | NEBRASKA CITY #1 | 718 S. 11TH STREET | Otoe | NE | Multistate | YES | NONE | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 136 | OWNED SERVICE STATION | BELEN #1 | I-25 SOUTH EDGE OF TOWN | Valencia | NM | Multistate | YES | NONE | |
| 137 | OWNED SERVICE STATION | EL RENO #1 | 1102 S. ROCK ISLAND | Canadian | OK | Multistate | YES | OK | |
| 138 | OWNED SERVICE STATION | OKLA CITY #077 | NE/C SW 29TH & SARA RD. | Canadian | OK | Multistate | YES | OK | |
| 139 | OWNED SERVICE STATION | YUKON-MILLER #1A | SE/C SW 15 & CZECH HALL | Canadian | OK | Multistate | YES | OK | |
| 140 | OWNED SERVICE STATION | LAWTON #1 | 2201 NW SHERIDAN ROAD | Comanche | OK | Multistate | YES | OK | |
| 141 | OWNED SERVICE STATION | LAWTON #2 | 2716 FT SILL BLVD. | Comanche | OK | Multistate | YES | OK | |
| 142 | OWNED SERVICE STATION | LAWTON #3 | 1015 "I" STREET | Comanche | OK | Multistate | YES | OK | |
| 143 | OWNED SERVICE STATION | LAWTON #5 | 1515 LEE BLVD. | Comanche | OK | Multistate | YES | OK | |
| 144 | OWNED SERVICE STATION | DRUMRIGHT #3 | SE/C TUCKER & BROADWAY | Creek | OK | Multistate | YES | OK | |
| 145 | OWNED SERVICE STATION | ENID #2 | 1123 N. GRAND | Garfield | OK | Multistate | YES | OK | |
| 146 | OWNED SERVICE STATION | ENID #8 | 1005 E. WILLOW | Garfield | OK | Multistate | YES | OK | |
| 147 | OWNED SERVICE STATION | CHICKASHA #1 | 2102 S. 4TH | Grady | OK | Multistate | YES | OK | |
| 148 | OWNED SERVICE STATION | MANGUM #1 | 1720 N. LOUIS TITTLE AVE. | Greer | OK | Multistate | YES | OK | |
| 149 | OWNED SERVICE STATION | ALTUS #2 | 1321 N. MAIN. | Jackson | OK | Multistate | YES | OK | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|-----|----------------------------------|---------------|-------------------|----------------|-------|-------|-----------------------------|---------------------------|---------------------------|
| 150 | OWNED SERVICE STATION | ALTUS #3 | 1921 E. BROADWAY | Jackson | OK | Multistate | YES | OK | |
| 151 | OWNED SERVICE STATION | TONKAWA #1 | 601 E. NORTH AVENUE | Kay | OK | Multistate | YES | OK | |
| 152 | OWNED SERVICE STATION | HENNESSEY #1 | 619 N. MAIN STREET | Kingfisher | OK | Multistate | YES | OK | |
| 153 | OWNED SERVICE STATION | WILBURTON #1 | HIGHWAYS 2 AND 270 | Latimer | OK | Multistate | YES | OK | |
| 154 | OWNED SERVICE STATION | POTEAU #2 | HWY 271 & 59 SOUTH | LeFlore | OK | Multistate | YES | OK | |
| 155 | OWNED SERVICE STATION | PRYOR #2 | 409 SOUTH MILL ST | Mayes | OK | Multistate | YES | OK | |
| 156 | OWNED SERVICE STATION | PURCELL #3 | I-35 & JOHNSON ROAD | McClain | OK | Multistate | YES | OK | |
| 157 | OWNED SERVICE STATION | SULPHUR #1 | 1815 W. BROADWAY | Murray | OK | Multistate | YES | OK | |
| 158 | OWNED SERVICE STATION | PERRY #1 - STATION | 8TH & FIR (STATION) | Noble | OK | Multistate | YES | OK | |
| 159 | OWNED SERVICE STATION | PERRY #2 - BOCOX | BOCOX PROPERTY | Noble | OK | Multistate | YES | OK | |
| 160 | OWNED SERVICE STATION | PERRY #3 - HOMELAND | 702 FIR STREET | Noble | OK | Multistate | YES | OK | |
| 161 | OWNED SERVICE STATION | OKLA CITY #009 | 12000 NORTHEAST EXPWY | Oklahoma | OK | Multistate | YES | OK | |
| 162 | OWNED SERVICE STATION | DEL CITY #2 | 3300 SE 15TH STREET | Oklahoma | OK | Multistate | YES | OK | |
| 163 | OWNED SERVICE STATION | HARRAH #1 | HOLDEN AND HARRAH ROAD | Oklahoma | OK | Multistate | YES | OK | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 164 | OWNED SERVICE STATION | BETHANY #1 | SW/C NW 39 & COUNCIL, FEE 121 | Oklahoma | OK | Multistate | YES | OK | |
| 165 | OWNED SERVICE STATION | OKLA CITY #014 | 3834 NW 10 | Oklahoma | OK | Multistate | YES | OK | |
| 166 | OWNED SERVICE STATION | OKLA CITY #019 | 4100 NW EXPRESSWAY | Oklahoma | OK | Multistate | YES | OK | |
| 167 | OWNED SERVICE STATION | OKLA CITY #022 | 3216 NORTH MAY | Oklahoma | OK | Multistate | YES | OK | |
| 168 | OWNED SERVICE STATION | OKLA CITY #023 | 2109 NE 23RD ST | Oklahoma | OK | Multistate | YES | OK | |
| 169 | OWNED SERVICE STATION | OKLA CITY #028 - PLAT 1 | 8005 N. MAY | Oklahoma | OK | Multistate | YES | OK | |
| 170 | OWNED SERVICE STATION | OKLA CITY #028 - PLAT 2 | 8005 N. MAY | Oklahoma | OK | Multistate | YES | OK | |
| 171 | OWNED SERVICE STATION | OKLA CITY #056 - PLAT 1 | 25 N.E. 36TH | Oklahoma | OK | Multistate | YES | OK | |
| 172 | OWNED SERVICE STATION | OKLA CITY #056 - PLAT 2 | 25 N.E. 36TH | Oklahoma | OK | Multistate | YES | OK | |
| 173 | OWNED SERVICE STATION | OKLA CITY #062 | 5221 S. WESTERN | Oklahoma | OK | Multistate | YES | OK | |
| 174 | OWNED SERVICE STATION | OKLA CITY #063 - PLAT 1 | 7025 S. WESTERN | Oklahoma | OK | Multistate | YES | OK | |
| 175 | OWNED SERVICE STATION | OKLA CITY #063 - PLAT 2 | 7025 S WESTERN | Oklahoma | OK | Multistate | YES | OK | |
| 176 | OWNED SERVICE STATION | OKLA CITY #064 | 3630 N. MACARTHUR | Oklahoma | OK | Multistate | YES | OK | |
| 177 | OWNED SERVICE STATION | OKLA CITY #074 | 7800 NW 10TH | Oklahoma | OK | Multistate | YES | OK | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 178 | OWNED SERVICE STATION | OKLA CITY #084 | 1301 SE 15TH | Oklahoma | OK | Multistate | YES | OK | |
| 179 | OWNED SERVICE STATION | OKLA CITY #087 | 9000 N WESTERN | Oklahoma | OK | Multistate | YES | OK | |
| 180 | OWNED SERVICE STATION | OKLA CITY #088 - PLAT 1 | 4300 SE 59TH | Oklahoma | OK | Multistate | YES | OK | |
| 181 | OWNED SERVICE STATION | OKLA CITY #088 - PLAT 2 | 4300 SE 59TH | Oklahoma | OK | Multistate | YES | OK | |
| 182 | OWNED SERVICE STATION | OKLA CITY #096 | 1131 N. MERIDIAN | Oklahoma | OK | Multistate | YES | OK | |
| 183 | OWNED SERVICE STATION | OKLA CITY #098 | 1801 N. LINWOOD | Oklahoma | OK | Multistate | YES | OK | |
| 184 | OWNED SERVICE STATION | OKLA CITY #109 | 4325 N.W. 39TH EXPRESSWAY | Oklahoma | OK | Multistate | YES | OK | |
| 185 | OWNED SERVICE STATION | OKLA CITY #110 | 1520 N. MAY | Oklahoma | OK | Multistate | YES | OK | |
| 186 | OWNED SERVICE STATION | ADA #5 | 201 S. MISSISSIPPI | Pontotoc | OK | Multistate | YES | OK | |
| 187 | OWNED SERVICE STATION | SHAWNEE #2 | 1501 (1502) N. HARRISON | Pottawatomie | OK | Multistate | YES | OK | |
| 188 | OWNED SERVICE STATION | SEMINOLE #2 | STATE & STROTHERS | Seminole | OK | Multistate | YES | OK | |
| 189 | OWNED SERVICE STATION | MARLOW #1 | 210 N. BROADWAY | Stephens | OK | Multistate | YES | OK | |
| 190 | OWNED SERVICE STATION | NEW PERRYMAN - Fee 128 | PERRYMAN SEC 1-17N-12E (35ac) | Tulsa | OK | Multistate | YES | OK | |
| 191 | OWNED SERVICE STATION | TULSA #04 | 7839 E. ADMIRAL PLACE | Tulsa | OK | Multistate | YES | OK | |

14

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 192 | OWNED SERVICE STATION | TULSA #15 | 4108 S. PEORIA | Tulsa | OK | Multistate | YES | OK | |
| 193 | OWNED SERVICE STATION | TULSA #16 | 1135 N. SHERIDAN RD. | Tulsa | OK | Multistate | YES | OK | |
| 194 | OWNED SERVICE STATION | TULSA #18 | 543 S. SHERIDAN | Tulsa | OK | Multistate | YES | OK | |
| 195 | OWNED SERVICE STATION | TULSA #21 | 1435 N. UTICA/1706 E. PINE | Tulsa | OK | Multistate | YES | OK | |
| 196 | OWNED SERVICE STATION | TULSA #26 | 3604 NORTH LEWIS | Tulsa | OK | Multistate | YES | OK | |
| 197 | OWNED SERVICE STATION | TULSA #27 | 740 S. UTICA | Tulsa | OK | Multistate | YES | OK | |
| 198 | OWNED SERVICE STATION | TULSA #30 | 1501 N. MINGO | Tulsa | OK | Multistate | YES | OK | |
| 199 | OWNED SERVICE STATION | TULSA #31 | 5110 E. PINE | Tulsa | OK | Multistate | YES | OK | |
| 200 | OWNED SERVICE STATION | TULSA #32 | 5940 S. PEORIA | Tulsa | OK | Multistate | YES | OK | |
| 201 | OWNED SERVICE STATION | BARTLESVILLE #2 | 3101 E FRANK PHILLIPS BLVD | Washington | OK | Multistate | YES | OK | |
| 202 | OWNED SERVICE STATION | HURON #1 | 39 DAKOTA AVE N | Beadle | SD | Multistate | YES | NONE | |
| 203 | OWNED SERVICE STATION | ABERDEEN #3 | 1802 E 6TH AVE | Brown | SD | Multistate | YES | NONE | |
| 204 | OWNED SERVICE STATION | MITCHELL #1 | 416 W. HAVENS | Davison | SD | Multistate | YES | NONE | |
| 205 | OWNED SERVICE STATION | CAMDEN #1 | 169-A WEST MAIN | Benton | TN | Multistate | YES | TN | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 206 | OWNED SERVICE STATION | MCKENZIE #1 | 802 (605) N. HIGHLAND | Carroll | TN | Multistate | YES | TN | |
| 207 | OWNED SERVICE STATION | DYERSBURG #1 | 1201 FORREST STREET | Dyer | TN | Multistate | YES | TN | |
| 208 | OWNED SERVICE STATION | HUMBOLDT #1 | 2824 EAST END DRIVE | Gibson | TN | Multistate | YES | TN | |
| 209 | OWNED SERVICE STATION | CHATTANOOGA #2008 | 5510 RINGGOLD RD | Hamilton | TN | Multistate | YES | TN | |
| 210 | OWNED SERVICE STATION | CHATTANOOGA #2034 | 2020 E. 23RD | Hamilton | TN | Multistate | YES | TN | |
| 211 | OWNED SERVICE STATION | BROWNSVILLE #1 | 411 EAST MAIN ST | Haywood | TN | Multistate | YES | TN | |
| 212 | OWNED SERVICE STATION | ETOWAH #2053 | HWY 411E & TENN.AVE. | McMinn | TN | Multistate | YES | TN | |
| 213 | OWNED SERVICE STATION | SOUTH FULTON #1 | HIGHWAY 45 EAST & 10 BROADWAY | Obion | TN | Multistate | YES | TN | |
| 214 | OWNED SERVICE STATION | MEMPHIS #7 | 1309 N. HOLLYWOOD | Shelby | TN | Multistate | YES | TN | |
| 215 | OWNED SERVICE STATION | MEMPHIS #8 | 2232 AIRWAYS BLVD | Shelby | TN | Multistate | YES | TN | |
| 216 | OWNED SERVICE STATION | KINGSPORT #2141 | 2005 BLOOMINGDALE PIKE | Sullivan | TN | Multistate | YES | TN | |
| 217 | OWNED SERVICE STATION | COVINGTON #1 | HWY 51 SOUTH | Tipton | TN | Multistate | YES | TN | |
| 218 | OWNED SERVICE STATION | MARTIN #1 | HWY 45 E & PALACE ST/309 LINDELL HIGHWAY | Weakley | TN | Multistate | YES | TN | |
| 219 | OWNED SERVICE STATION | MULESHOE #1 | 1414 W. AMERICAN BLVD | Bailey | TX | Multistate | YES | TX | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 220 | OWNED SERVICE STATION | BROWNSVILLE #9078 | 615 CENTRAL AVE | Cameron | TX | Multistate | YES | TX | |
| 221 | OWNED SERVICE STATION | BROWNSVILLE #9079 | 3503 BOCA CHICA BLVD. | Cameron | TX | Multistate | YES | TX | |
| 222 | OWNED SERVICE STATION | CHILDRESS #1 | 111 AVENUE F NE | Childress | TX | Multistate | YES | TX | |
| 223 | OWNED SERVICE STATION | DALHART #1 | W. 7TH & CHERRY ST. | Dallam | TX | Multistate | YES | TX | |
| 224 | OWNED SERVICE STATION | PAMPA #1 | 1801 NORTH HOBART | Gray | TX | Multistate | YES | TX | |
| 225 | OWNED SERVICE STATION | MEMPHIS #1 | FRONT AND DOVER STREET | Hall | TX | Multistate | YES | TX | |
| 226 | OWNED SERVICE STATION | QUANAH #1 | 601 WEST 11TH STREET | Hardeman | TX | Multistate | YES | TX | |
| 227 | OWNED SERVICE STATION | HOUSTON #9034 | 4525 WASHINGTON AVE. | Harris | TX | Multistate | YES | TX | |
| 228 | OWNED SERVICE STATION | HOUSTON #9048 | 115 WEST CAVALCADE | Harris | TX | Multistate | YES | TX | |
| 229 | OWNED SERVICE STATION | HOUSTON #9057 | 2506 KELLY ST. | Harris | TX | Multistate | YES | TX | |
| 230 | OWNED SERVICE STATION | HOUSTON #9062 | 5201 S MARTIN L KING | Harris | TX | Multistate | YES | TX | |
| 231 | OWNED SERVICE STATION | HOUSTON #9091 | 3120 ELYSIAN | Harris | TX | Multistate | YES | TX | |
| 232 | OWNED SERVICE STATION | HOUSTON #9092 | 3701 OLD SPANISH TRAIL | Harris | TX | Multistate | YES | TX | |
| 233 | OWNED SERVICE STATION | EDINBURG #9082 | 800 N. CLOSNER | Hidalgo | TX | Multistate | YES | TX | |

17

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 234 | OWNED SERVICE STATION | PHARR #1060 | 900 BLK OF N CAGE | Hidalgo | TX | Multistate | YES | TX | |
| 235 | OWNED SERVICE STATION | BORGER #1 | 800 S. CEDAR | Hutchinson | TX | Multistate | YES | TX | |
| 236 | OWNED SERVICE STATION | BORGER #2 | 10TH & WEATHERLY | Hutchinson | TX | Multistate | YES | TX | |
| 237 | OWNED SERVICE STATION | BORGER #3 | 907 MONROE | Hutchinson | TX | Multistate | YES | TX | |
| 238 | OWNED SERVICE STATION | DUMAS #1 | 1700 SOUTH DUMAS | Moore | TX | Multistate | YES | TX | |
| 239 | OWNED SERVICE STATION | PERRYTON #3 | 125 NORTH MAIN | Ochiltree | TX | Multistate | YES | TX | |
| 240 | OWNED SERVICE STATION | FRIONA #1 | 11TH & GREEN AVE. | Parmer | TX | Multistate | YES | TX | |
| 241 | OWNED SERVICE STATION | AMARILLO #1 | 300 W. AMARILLO BLVD. | Potter | TX | Multistate | YES | TX | |
| 242 | OWNED SERVICE STATION | AMARILLO #3 | 7611 E. AMARILLO | Potter | TX | Multistate | YES | TX | |
| 243 | OWNED SERVICE STATION | AMARILLO #4 | 1601 N GRAND | Potter | TX | Multistate | YES | TX | |
| 244 | OWNED SERVICE STATION | AMARILLO #5 | 2214 SE 3RD ST. | Potter | TX | Multistate | YES | TX | |
| 245 | OWNED SERVICE STATION | AMARILLO #7 | 4419 SO. GEORGIA | Randall | TX | Multistate | YES | TX | |
| 246 | OWNED SERVICE STATION | CANYON #1 | 1301 23RD ST. | Randall | TX | Multistate | YES | TX | |
| 247 | OWNED SERVICE STATION | ODEM #9088 | 100 PARK AVENUE | San Patricio | TX | Multistate | YES | TX | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 248 | OWNED SERVICE STATION | FORT WORTH #1 | 301 E.BERRY STREET | Tarrant | TX | Multistate | YES | TX | |
| 249 | OWNED SERVICE STATION | ABINGDON #2132 | 622 WEST MAIN | Washington | VA | Multistate | YES | NONE | |
| 250 | OWNED SERVICE STATION | GREEN BAY - 13TH AVE | 609 13TH AVE | Brown | WI | Multistate | YES | WI | |
| 251 | OWNED SERVICE STATION | GREEN BAY - MASON | 936 W MASON ST | Brown | WI | Multistate | YES | WI | |
| 252 | OWNED SERVICE STATION | GREEN BAY #1 | 2128 UNIVERSITY AVENUE | Brown | WI | Multistate | YES | WI | |
| 253 | OWNED SERVICE STATION | DEPERE | 715 GEORGE STREET | DePere | WI | Multistate | YES | WI | |
| 254 | OWNED SERVICE STATION | MENOMONIE #1 | 1132 (1131) N. BROADWAY | Dunn | WI | Multistate | YES | WI | |
| 255 | OWNED SERVICE STATION | LACROSSE #2 | 2100 (2127)SOUTH AVE. | LaCrosse | WI | Multistate | YES | WI | |
| 256 | OWNED SERVICE STATION | MILWAUKEE #9 | 5626 W. HAMPTON | Milwaukee | WI | Multistate | YES | WI | |
| 257 | OWNED SERVICE STATION | JANESVILLE #1 - PLAT 1 | ORCHARD & COURT | Rock | WI | Multistate | YES | WI | |
| 258 | OWNED SERVICE STATION | JANESVILLE #1 - PLAT 2 | SW/C ORCHARD & COURT | Rock | WI | Multistate | YES | WI | |
| 259 | OWNED SERVICE STATION | NEENAH #1 | 960 W. WHEELER RD./906 AMERICAN DRIVE | Winnebago | WI | Multistate | YES | WI | |

## Attachment A-3

## Other Sites- Owned

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 1 | OTHER SITES | LAURA LODE-MINING | PAT. MINING CLAIMS (T23S, R11E) (Additional Details on Attachment A-4) | Santa Cruz | AZ | Multistate | YES | NONE | |
| 2 | OTHER SITES | RED MOUNTAIN, AZ | PAT. MINING CLAIMS (T22S, R16E) (Additional Details on Attachment A-4) | Santa Cruz | AZ | Multistate | YES | NONE | |
| 3 | OTHER SITES | VERNON PROPERTY | MAP BOOK 6303, PAGE 004, PARCEL 029- Tract no 275 corn N 89c35' E 273.52 Ft from intersection of S. Line of N | Vernon | CA | Multistate | YES | NONE | |
| 4 | OTHER SITES | VERNON PROPERTY | MAP BOOK 6303, PAGE 004, PARCEL 036- San Antonio Rancho * Por of SD RO | Vernon | CA | Multistate | YES | NONE | |
| 5 | OTHER SITES | RED MOUNTAIN, CO | PAT. MINING CLAIMS (Additional Details on Attachment A-4) | Ouray /San Juan | CO | Multistate | YES | NONE | |
| 6 | OTHER SITES | FLORIDA PHOSPHATE LANDS | POLK COUNTY - BREWSTER (31S, R23) (Additional Details on Attachment A-4) | Polk | FL | Multistate | YES | FL | |
| 7 | OTHER SITES | EAST ST. LOUIS - YARD | DSY YARD SITE | St. Clair | IL | Multistate | YES | IL | |
| 8 | OTHER SITES | FEE 312 - LAKE ROAD | LAKE ROAD | Oxford | ME | Multistate | YES | NONE | |
| 9 | OTHER SITES | LAGRANGE TERMINAL | NORTH BUSINESS HIGHWAY 61A (905 N. MAIN) | LaGrange | MO | Multistate | YES | MO | |
| 10 | OTHER SITES | HATTIESBURG SITE (PROPERTY NEAR GULF STATES FORMER WOOD TREATING SITE) | W. PINE STREET | Hattiesburg | MS | Multistate | YES | MS | |
| 11 | OTHER SITES | OKC - COLLEGE PARK ADDN - FEE #62 | LOTS 5 thru 14, BLK 31 | Oklahoma | OK | Multistate | YES | OK | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 12 | OTHER SITES | OKC - FEE 21 PART 1 - BLK 33 | NE/C NW 88 & SHARTEL | Oklahoma | OK | Multistate | YES | OK | |
| 13 | OTHER SITES | OKC - FEE 21 PART 2 - BLK 33 | NE/C NW 88 & SHARTEL | Oklahoma | OK | Multistate | YES | OK | |
| 14 | OTHER SITES | OKC - FEE 21 PART 3 - BLK 13 | 601 NW 101 - FLORAL PARK ADDN | Oklahoma | OK | Multistate | YES | OK | |
| 15 | OTHER SITES | OKC - FEE 21 PART 4 - BLK 4 | 346 NW 96 - CHESTER HILL ADDN | Oklahoma | OK | Multistate | YES | OK | |
| 16 | OTHER SITES | OKC - FEE 22 HOMEDALE ADDN | 900 NW 101 - HOMEDALE ADDITION | Oklahoma | OK | Multistate | YES | OK | |
| 17 | OTHER SITES | OKC - FEE 22 HOMEDALE ADDN | 930 NW 107 - LOT -16, BLK 007 | Oklahoma | OK | Multistate | YES | OK | |
| 18 | OTHER SITES | NASHVILLE TERMINAL #2 | NASHVILLE TERMINAL | Davidson | TN | Multistate | YES | TN | |
| 19 | OTHER SITES | NASHVILLE TERMINAL #1 | 160 WARF AVENUE | Nashville | TN | Multistate | YES | TN | |
| 20 | OTHER SITES | CORPUS CHRISTI LANDFARM SITE/ CORPUS CHRISTI #05 | 144 BRANIGAN | Nueces | TX | Multistate | YES | TX | |
| 21 | OTHER SITES | CORPUS CHRISTI #02 | 1930 WINNEBAGO | Nueces | TX | Multistate | YES | TX | |
| 22 | OTHER SITES | CORPUS CHRISTI #03 | 1934 WINNEBAGO | Nueces | TX | Multistate | YES | TX | |
| 23 | OTHER SITES | CORPUS CHRISTI #04 | 1925 NUECES STREET | Nueces | TX | Multistate | YES | TX | |
| 24 | OTHER SITES | CORPUS CHRISTI #06 | 1905 NUECES STREET | Nueces | TX | Multistate | YES | TX | |
| 25 | OTHER SITES | CORPUS CHRISTI #07 | NUECES ST | Nueces | TX | Multistate | YES | TX | |
| 26 | OTHER SITES | MOSS AMERICAN NPL SITE (OWNED PORTION) | 9633-49 W. BROWN DEER RD | Milwaukee | WI | Multistate | YES | WI | |

## Attachment A-4

## Additional Information - Owned Mines

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 1 | OWNED FUNDED SITES | PATENT MINING CLAIMS NEAR BRISTOL/CASELTON | 154 Pat Mining Claims, Millsites, (Map/Parcel Number: '009-011-25) | Lincoln County - Pioche Fire | NV | Multistate | YES | NV | |
| 2 | OWNED FUNDED SITES | PATENT MINING CLAIMS NEAR BRISTOL/CASELTON | 16 Pat Mining Claims, (Map/Parcel Number '09-011-41) | Lincoln County - Pioche | NV | Multistate | YES | NV | |
| 3 | OWNED FUNDED SITES | PATENT MINING CLAIMS NEAR BRISTOL/CASELTON | 2 Pat. Mining claims Jackrabbit (Map/Parcel Number '09-012-09) | Lincoln County | NV | Multistate | YES | NV | |
| 4 | OWNED FUNDED SITES | PATENT MINING CLAIMS NEAR BRISTOL/CASELTON | 27 Pat Claims Bristol Dist. (Map/Parcel Number '09-012-16) | Lincoln County | NV | Multistate | YES | NV | |
| 5 | OTHER SITES | LAURA LODE-MINING | Pat Mine Located in the ORO Blanco Mining Dist., MS #3048, Laura, Sec 20 & 29, T 23S R11 E (20.66 ACRES, Map/Parcel Number: 11335001) | Santa Cruz County | AZ | Multistate | YES | NONE | |
| 6 | OTHER SITES | LAURA LODE-MINING | Patent #02-82-0029 IN Harshaw Ming Dist Sec 19 & 20 T22S R16 EMS #4767 (51.13 ACRES, Map/Parcel Number: 106-24-011 9) | Santa Cruz County | AZ | Multistate | YES | NONE | |
| 7 | OTHER SITES | LAURA LODE-MINING | RED CASTLES #2 | Santa Cruz County | AZ | Multistate | YES | NONE | |
| 8 | OTHER SITES | LAURA LODE-MINING | RED CASTLES #8 | Santa Cruz County | AZ | Multistate | YES | NONE | |
| 9 | OTHER SITES | LAURA LODE-MINING | RED CASTLES #9 | Santa Cruz County | AZ | Multistate | YES | NONE | |
| 10 | OTHER SITES | RED MOUNTAIN, AZ | AAGH NO. 16 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 11 | OTHER SITES | RED MOUNTAIN, AZ | AAGH NO. 21 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 12 | OTHER SITES | RED MOUNTAIN, AZ | AAGH NO. 7 | Santa Cruz | AZ | Multistate | YES | NONE | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|-----|----------------------------------|---------------|-------------------|----------------|-------|-------|------------------------------|----------------------------|----------------------------|
| 13 | OTHER SITES | RED MOUNTAIN, AZ | ANDES NO. 1 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 14 | OTHER SITES | RED MOUNTAIN, AZ | ANDES NO. 2 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 15 | OTHER SITES | RED MOUNTAIN, AZ | CHARLOTTE | Santa Cruz | AZ | Multistate | YES | NONE | |
| 16 | OTHER SITES | RED MOUNTAIN, AZ | DORFEE | Santa Cruz | AZ | Multistate | YES | NONE | |
| 17 | OTHER SITES | RED MOUNTAIN, AZ | ELNOR | Santa Cruz | AZ | Multistate | YES | NONE | |
| 18 | OTHER SITES | RED MOUNTAIN, AZ | FOX NO. 4 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 19 | OTHER SITES | RED MOUNTAIN, AZ | FOX NO. 5 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 20 | OTHER SITES | RED MOUNTAIN, AZ | GEM NO. 1 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 21 | OTHER SITES | RED MOUNTAIN, AZ | GEM NO. 2 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 22 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 1 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 23 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 10 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 24 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 11 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 25 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 12 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 26 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 13 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 27 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 14 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 28 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 15 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 29 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 16 | Santa Cruz | AZ | Multistate | YES | NONE | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 30 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 17 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 31 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 18 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 32 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 19 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 33 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 2 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 34 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 20 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 35 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 21 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 36 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 8 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 37 | OTHER SITES | RED MOUNTAIN, AZ | HANK NO. 9 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 38 | OTHER SITES | RED MOUNTAIN, AZ | HEAVEYSIDE | Santa Cruz | AZ | Multistate | YES | NONE | |
| 39 | OTHER SITES | RED MOUNTAIN, AZ | HEAVEYSIDE NO. 2 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 40 | OTHER SITES | RED MOUNTAIN, AZ | HOPE NO. 1 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 41 | OTHER SITES | RED MOUNTAIN, AZ | HOPE NO. 3 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 42 | OTHER SITES | RED MOUNTAIN, AZ | HOPE NO. 4 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 43 | OTHER SITES | RED MOUNTAIN, AZ | Patent #02-82-0030 in Patagonia Mining Dist Sec 19, 20,21,29,30 T22S R16 EMS (472.97 ACRES, Map/Parcel Number: 106-24-012A 1) | Santa Cruz County | AZ | Multistate | YES | NONE | |
| 44 | OTHER SITES | RED MOUNTAIN, AZ | SOUTH RED MOUNTAIN NO. 1 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 45 | OTHER SITES | RED MOUNTAIN, AZ | SOUTH RED MOUNTAIN NO. 2 | Santa Cruz | AZ | Multistate | YES | NONE | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 46 | OTHER SITES | RED MOUNTAIN, AZ | SOUTH RED MOUNTAIN NO. 3 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 47 | OTHER SITES | RED MOUNTAIN, AZ | SOUTH RED MOUNTAIN NO. 4 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 48 | OTHER SITES | RED MOUNTAIN, AZ | SOUTH RED MOUNTAIN NO. 5 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 49 | OTHER SITES | RED MOUNTAIN, AZ | SOUTH RED MOUNTAIN NO. 6 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 50 | OTHER SITES | RED MOUNTAIN, AZ | SOUTH RED MOUNTAIN NO. 7 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 51 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 103 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 52 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 113 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 53 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 115 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 54 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 117 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 55 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 119 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 56 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 121 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 57 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 122 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 58 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 123 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 59 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 124 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 60 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 125 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 61 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 126 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 62 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 127 | Santa Cruz | AZ | Multistate | YES | NONE | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 63 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 128 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 64 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 129 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 65 | OTHER SITES | RED MOUNTAIN, AZ | TEN GRAND NO. 98 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 66 | OTHER SITES | RED MOUNTAIN, AZ | TERRY NO. 1 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 67 | OTHER SITES | RED MOUNTAIN, AZ | UNITED VERDE NO. 1 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 68 | OTHER SITES | RED MOUNTAIN, AZ | UNITED VERDE NO. 3 | Santa Cruz | AZ | Multistate | YES | NONE | |
| 69 | OTHER SITES | RED MOUNTAIN, CO | 50% HUMBOLT, 1558, 10.33 A, #4775-063-00-008 | Ouray County | CO | Multistate | YES | NONE | |
| 70 | OTHER SITES | RED MOUNTAIN, CO | BLUE BELL, 9688, 10.33 A, #4775-082-00-002 | Ouray County | CO | Multistate | YES | NONE | |
| 71 | OTHER SITES | RED MOUNTAIN, CO | DAISY, 4548, 10.33 A, #4775-082-00-002 | Ouray County | CO | Multistate | YES | NONE | |
| 72 | OTHER SITES | RED MOUNTAIN, CO | EASTERN BELLE QUARTZ, 7088, 9.84 A, #4775-172-00-001 | Ouray County | CO | Multistate | YES | NONE | |
| 73 | OTHER SITES | RED MOUNTAIN, CO | ENGLISH MAID, 4548, 10.33A, #4775-082-002 | Ouray County | CO | Multistate | YES | NONE | |
| 74 | OTHER SITES | RED MOUNTAIN, CO | EUREKA MNG DISTRICT; CAPITOL 6585, MARY 18589; 17.37 TOTAL ACRES | San Juan County | CO | Multistate | YES | NONE | |
| 75 | OTHER SITES | RED MOUNTAIN, CO | EUREKA MNG DISTRICT; CORA 16220, DEL MINO 18950, GOLD STANDARD 18950, GOLDEN WONDER #3 16220, KEYSTONE 18950, LITTLE MINNIE 16304, SIBLEY 18950, VESTAL 16642, WETZEL 18950, GOLDEN WONDER 16220; 59.88 TOTAL ACRES | San Juan County | CO | Multistate | YES | NONE | |
| 76 | OTHER SITES | RED MOUNTAIN, CO | EXCELSIOR 18552, 6.85 A, #4775-083-00-004 | Ouray County | CO | Multistate | YES | NONE | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|-----|----------|----------|----------|----------|----------|----------|----------|----------|----------|
| 77 | OTHER SITES | RED MOUNTAIN, CO | EXTENSION 1303, 2560, 10.33A, #4775-053-00-006 | Ouray County | CO | Multistate | YES | NONE | |
| 78 | OTHER SITES | RED MOUNTAIN, CO | JUDSON, 2214, 6.9 A, #4775-084-00-005 | Ouray County | CO | Multistate | YES | NONE | |
| 79 | OTHER SITES | RED MOUNTAIN, CO | LIGHT, 18051, 10.33 A, #4775-054-00-008 | Ouray County | CO | Multistate | YES | NONE | |
| 80 | OTHER SITES | RED MOUNTAIN, CO | LITTLE MONA, 4639, 7.72 A, #4775-063-00-007 | Ouray County | CO | Multistate | YES | NONE | |
| 81 | OTHER SITES | RED MOUNTAIN, CO | MAGGIE, 18552, 4.27 A, #4775-172-00-001 | Ouray County | CO | Multistate | YES | NONE | |
| 82 | OTHER SITES | RED MOUNTAIN, CO | MINERAL BELT, 8071, 10.33 A, #4775-043-00-002 | Ouray County | CO | Multistate | YES | NONE | |
| 83 | OTHER SITES | RED MOUNTAIN, CO | MONA'S QUEEN, 4639, 5.7 A, 4775-063-00-005 | Ouray County | CO | Multistate | YES | NONE | |
| 84 | OTHER SITES | RED MOUNTAIN, CO | NEWPORT, 18552, 6.29 A, #4775-083-00-004 | Ouray County | CO | Multistate | YES | NONE | |
| 85 | OTHER SITES | RED MOUNTAIN, CO | PACIFIC, 4548, 10.33A, #4775-082-00-002 | Ouray County | CO | Multistate | YES | NONE | |
| 86 | OTHER SITES | RED MOUNTAIN, CO | RED MOUNTAIN MNG DISTRICT; BERNARD 16222, CAMP BIRD 18636, DRY GULCH 18636, GOLD DOLLAR 18636, GOLDEN WONDER #1 16220, GOLDEN WONDER #2 16220, GOLDEN WONDER #6 16220, IXION 17361, LIBBIE B 16220, MAMMOTH 16220, NELLIE BLY 16220, MINNIE 16896, PRODIGAL DAUGHTER 16769, TINCUP (UND 1/2 INT IN 8.83 ACRES) 16909, WITCH HAZEL 16202; 116.79 TOTAL ACRES | San Juan | CO | Multistate | YES | NONE | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 87 | OTHER SITES | RED MOUNTAIN, CO | RED MOUNTAIN MNG DISTRICT; BIG HORN #2 18516, BIG HORN #3 18516, BIG HORN #12 18516, BIG HORN #13 18516, BIG HORN #14 18516, WILSON 6689; 55.38 TOTAL ACRES | San Juan | CO | Multistate | YES | NONE | |
| 88 | OTHER SITES | RED MOUNTAIN, CO | RED MOUNTAIN MNG DISTRICT; BOY COTTER 18950, BOY COTTER EXT 18950, DARDENELLE 18627, J C BELL 18950, MILL 18950, WEBSTER 8438; 51.75 TOTAL ACRES | San Juan | CO | Multistate | YES | NONE | |
| 89 | OTHER SITES | RED MOUNTAIN, CO | RED MOUNTAIN MNG DISTRICT; BURLEIGH 18626, DETROUT 18626, KING 18626, LITTLE ROUND TOP 18626, PACIFIC SLIDE 18626, PRIMROSE 18626, VENDOME 18626, VEVA 18626; 69.75 TOTAL ACRES | San Juan | CO | Multistate | YES | NONE | |
| 90 | OTHER SITES | RED MOUNTAIN, CO | RED MOUNTAIN MNG DISTRICT; BUTTERCUP 18626, CONSTELLATION 19014, CONTRA COSTA 18626, CRESCENT 19014, DAISY 18626, DEW DROP 18626, DEW DROP #2 18626, KING #1 18626, LITTLE GEM 18626, MORNING GLORY 18626, RESERVE 18626, ROSE 18626, ROSE BUD 18626, SPARTA 18626, SPARROW 18626, SYNOPSIS 18626, VIOLET 18626, WESTERN RESERVE 18626, WYANDOTE 18626, MAMMOTH 18626; 189.31 TOTAL ACRES | San Juan | CO | Multistate | YES | NONE | |
| 91 | OTHER SITES | RED MOUNTAIN, CO | RED MOUNTAIN MNG DISTRICT; CRESCENT 18672, HILLTOP 18672; 1.63 TOTAL ACRES | San Juan | CO | Multistate | YES | NONE | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 92 | OTHER SITES | RED MOUNTAIN, CO | RED MOUNTAIN MNG DISTRICT; LITTLE ROCK 16274, LITTLE SIDE HILL 16274, LOS ANGELES 16274, MONTANA 15205 (BAL. OF CLAIM IN OURAY), THERESA #1 14213; 37.53 TOTAL ACRES | San Juan | CO | Multistate | | NONE | |
| 93 | OTHER SITES | RED MOUNTAIN, CO | RED MOUNTAIN MNG DISTRICT; PLEASANT VIEW 19386; 3.4 TOTAL ACRES | San Juan | CO | Multistate | | | |
| 94 | OTHER SITES | RED MOUNTAIN, CO | RED MOUNTAIN MNG DISTRICT;ELLA 18552, EXCELSIOR 18552, JUDSON 2214, MAGGIE 18552, NEVADA (BAL OURAY) 15205, NEWPORT 18552, PENNSYLVANIA 15205, PITTSBURG 15205, RAMONA 15205; 31.49 TOTAL ACRES | San Juan | CO | Multistate | | | |
| 95 | OTHER SITES | RED MOUNTAIN, CO | SAILOR BOY, 1850, 10.33 A, #4775-172-00-001 | Ouray County | CO | Multistate | YES | NONE | |
| 96 | OTHER SITES | RED MOUNTAIN, CO | SIERRA NEVADA, 2207, 8.6 A, #4775-063-00-009 | Ouray County | CO | Multistate | YES | NONE | |
| 97 | OTHER SITES | RED MOUNTAIN, CO | SILVER BUD, 9688, 10.33 A, #4775-082-00-002 | Ouray County | CO | Multistate | YES | NONE | |
| 98 | OTHER SITES | RED MOUNTAIN, CO | ST. BRIDGES, 2557, 10.33 A, #4775-064-00-014 | Ouray County | CO | Multistate | YES | NONE | |
| 99 | OTHER SITES | RED MOUNTAIN, CO | SURE ENOUGH, 18060, 3.71A, #4775-063-00-009 | Ouray County | CO | Multistate | YES | NONE | |
| 100 | OTHER SITES | RED MOUNTAIN, CO | TIN CUP 80%, 16909, 10.33A, #4775-172-00-002 | Ouray County | CO | Multistate | YES | NONE | |
| 101 | OTHER SITES | RED MOUNTAIN, CO | TIP TOP, 18051, 10.33 A, #4775-054-00-008 | Ouray County | CO | Multistate | YES | NONE | |
| 102 | OTHER SITES | RED MOUNTAIN, CO | VULCAN, 4548, 8.61 A, #4775-082-00-002 | Ouray County | CO | Multistate | YES | NONE | |
| 103 | OTHER SITES | FLORIDA PHOSPHATE LANDS | EAST OF HIGHWAY 37, Pt SW/4SW/4,SE/4SW/4 (37.4 Acres) | Polk County | FL | Multistate | YES | FL | |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State | Trust | Federal Covenant Not to Sue | State Covenant Not to Sue | Other Covenant Not to Sue |
|---|---|---|---|---|---|---|---|---|---|
| 104 | OTHER SITES | FLORIDA PHOSPHATE LANDS | EAST OF HIGHWAY 37, NE/4NW/4  (40 Acres) | Polk County | FL | Multistate | YES | FL | |
| 105 | OTHER SITES | FLORIDA PHOSPHATE LANDS | WEST OF HIGHWAY 37, Pt SW/4SW/4 (37.3 Acres) | Polk County | FL | Multistate | YES | FL | |
| 106 | OTHER SITES | FLORIDA PHOSPHATE LANDS | WEST OF HIGHWAY 37, E/2, E/2SW/4, SE/4NW/4, S/2NE/4NW/4  (455 Acres) | Polk County | FL | Multistate | YES | FL | |
| 107 | OTHER SITES | FLORIDA PHOSPHATE LANDS | WEST OF HIGHWAY 37, NE/4, N/2N/2SE/4,N/2NE/4SW/4,NE/4NW/4   (295.5 Acres) | Polk County | FL | Multistate | YES | FL | |
| 108 | OTHER SITES | FLORIDA PHOSPHATE LANDS | WEST OF HIGHWAY 37, W/2SW/4,SW/4NW/4, S/2NW/4NW/4  (140 Acres) | Polk County | FL | Multistate | YES | FL | |
| 109 | OTHER SITES | FLORIDA PHOSPHATE LANDS | WEST OF HIGHWAY 37, NW/4NW/4  (40 Acres) | Polk County | FL | Multistate | YES | FL | |
| 110 | OTHER SITES | FLORIDA PHOSPHATE LANDS | WEST OF HIGHWAY 37, E/2E/2,SE/4NE/4, S/2NE/4NE/4 (140 Acres) | Polk County | FL | Multistate | YES | FL | |
| 111 | OTHER SITES | FLORIDA PHOSPHATE LANDS | WEST OF HIGHWAY 37, E/2, E/2W/2, Pt. W/2W/2  (537.3 Acres) | Polk County | FL | Multistate | YES | FL | |
| 112 | OTHER SITES | FLORIDA PHOSPHATE LANDS | WEST OF HIGHWAY 37, W/2SW/4, Pt. E/2SW/4, S/2NW/4,S/2N/2NW/4, Pt. NW/4NW4NW/4, NE/4NE/4  (390 Acres) | Polk County | FL | Multistate | YES | FL | |
| 113 | OTHER SITES | FLORIDA PHOSPHATE LANDS | WEST OF HIGHWAY 37, N/2NW/4 (80 Acres) | Polk County | FL | Multistate | YES | FL | |
| 114 | OTHER SITES | FLORIDA PHOSPHATE LANDS | WEST OF HIGHWAY 37, N/2NE/4, NE/4NW/4, Pt. SE/4NW/4 (60 Acres) | Polk County | FL | Multistate | YES | FL | |
| 115 | OTHER SITES | FLORIDA PHOSPHATE LANDS | WEST OF HIGHWAY 37, Pt.W/2W/2 (30.7 Acres) | Polk County | FL | Multistate | YES | FL | |
| 116 | OTHER SITES | FLORIDA PHOSPHATE LANDS | WEST OF HIGHWAY 37, Pt.S/2NW/4 (43.4 Acres) | Polk County | FL | Multistate | YES | FL | |
| 117 | OTHER SITES | FLORIDA PHOSPHATE LANDS | WEST OF HIGHWAY 37, Pt.S/2NE/4 & Pt.NE/4NW/4  (130 Acres) | Polk County | FL | Multistate | YES | FL | |

## Attachment B

## Table of Contents[1]

**Non-Owned Sites: Federal Covenant Not to Sue** ........................................................**3**
SEPARATELY FUNDED SITES ............................................................................3
OTHER SITES........................................................................................................69

**Non-Owned Sites: Alabama Covenant Not to Sue**...................................................**106**
SEPARATELY FUNDED SITES ........................................................................106

**Non-Owned Sites: Georgia Covenant Not to Sue**....................................................**107**
SEPARATELY FUNDED SITES ........................................................................107
OTHER SITES......................................................................................................107

**Non-Owned Sites: Iowa Covenant Not to Sue**.........................................................**108**
SEPARATELY FUNDED SITES ........................................................................108
OTHER SITES......................................................................................................111

**Non-Owned Sites: Idaho Covenant Not to Sue** .......................................................**112**
OTHER SITES......................................................................................................112

**Non-Owned Sites: Illinois Covenant Not to Sue**.....................................................**113**
SEPARATELY FUNDED SITES ........................................................................113
OTHER SITES......................................................................................................118

**Non-Owned Sites: Indiana Covenant Not to Sue** ...................................................**120**
SEPARATELY FUNDED SITES ........................................................................120
OTHER SITES......................................................................................................121

**Non-Owned Sites: Kansas Covenant Not to Sue** ....................................................**123**
SEPARATELY FUNDED SITES ........................................................................123

**Non-Owned Sites: Louisiana Covenant Not to Sue** ................................................**126**
SEPARATELY FUNDED SITES ........................................................................126

**Non-Owned Sites: Massachusetts Covenant Not to Sue**........................................**127**
SEPARATELY FUNDED SITES ........................................................................127

**Non-Owned Sites: Missouri Covenant Not to Sue** .................................................**128**
OTHER SITES......................................................................................................128

---

[1]Sites within the "Other Sites" sub-tables herein are Non-Owned Sites referred to as "Other Sites" in Paragraph 126(a) of the Settlement Agreement; provided that notwithstanding the designation of a Site as an Other Site in this Attachment, if pursuant to Subparagraph 117(p) of Settlement Agreement the Site is, or is later characterized as, a Navajo Area Uranium Mine, then such Site is not, or shall cease to be, an Other Site.  Sites referred to as "Separately Funded" Sites in this Attachment are Non-Owned Sites for which distributions are to be made under the Settlement Agreement other than the distributions described in Paragraph 126.

**Non-Owned Sites: Mississippi Covenant Not to Sue** ...................................................**129**
    SEPARATELY FUNDED SITES ...................................................................129

**Non-Owned Sites: Nevada Covenant Not to Sue** .......................................................**130**
    SEPARATELY FUNDED SITES ...................................................................130

**Non-Owned Sites: New Jersey Covenant Not to Sue** ................................................**131**
    SEPARATELY FUNDED SITES ...................................................................131
    OTHER SITES ..............................................................................................131

**Non-Owned Sites: New York Covenant Not to Sue** ..................................................**132**
    SEPARATELY FUNDED SITES ...................................................................132

**Non-Owned Sites: North Carolina Releases** ............................................................**133**
    OTHER SITES ..............................................................................................133

**Non-Owned Sites: Ohio Covenant Not to Sue** ..........................................................**134**
    SEPARATELY FUNDED SITES ...................................................................134
    OTHER SITES ..............................................................................................134

**Non-Owned Sites: Oklahoma Covenant Not to Sue** .................................................**135**
    SEPARATELY FUNDED SITES ...................................................................135
    OTHER SITES ..............................................................................................151

**Non-Owned Sites: Pennsylvania Covenant Not to Sue** ............................................**154**
    OTHER SITES ..............................................................................................154

**Non-Owned Sites: Tennessee Covenant Not to Sue** ..................................................**155**
    SEPARATELY FUNDED SITES ...................................................................155
    OTHER SITES ..............................................................................................158

**Non-Owned Sites: Wisconsin Covenant Not to Sue** .................................................**159**
    SEPARATELY FUNDED SITES ...................................................................159

**Non-Owned Sites: Navajo Covenant Not to Sue** ......................................................**160**
    SEPARATELY FUNDED SITES ...................................................................160
    OTHER SITES ..............................................................................................162

**Non-Owned Sites: City of Chicago Covenant Not to Sue** .........................................**163**
    SEPARATELY FUNDED SITES ...................................................................163

**Non-Owned Sites: Chicago Park District Covenant Not to Sue** ..............................**164**
    SEPARATELY FUNDED SITES ...................................................................164

**Non-Owned Sites: West Chicago Local Communities Covenant Not to Sue** ..........**165**
    SEPARATELY FUNDED SITES ...................................................................165
    OTHER SITES ..............................................................................................165

## Non-Owned Sites: Federal Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | | **SEPARATELY FUNDED SITES** | | |
| 1 | NON-OWNED FUNDED SITES | ANNISTON TERMINAL | 2525 U.S. HIGHWAY #78 EAST | Anniston | AL |
| 2 | NON-OWNED FUNDED SITES | BIRMINGHAM TERMINAL | 2600 & 2700 ISHKOODA-WENONAH ROAD | Birmingham | AL |
| 3 | NON-OWNED FUNDED SITES | NAVAJO AREA URANIUM MINES: LUKACHUKAI MOUNTAINS SITE | URANIUM MINING | Lukachukai | AZ |
| 4 | NON-OWNED FUNDED SITES | MANSFIELD CANYON SITE | FORMER MINERALS EXPLORATION | Patagonia | AZ |
| 5 | NON-OWNED FUNDED SITES | JUNIPER MINE SITE | SONORA MINING DISTRICT, TOWNSHIP 5N, RANGE 20W, SECTION 9, MDBM | Tuolumne County | CA |
| 6 | NON-OWNED FUNDED SITES | BRUNSWICK SITE | ONE-HALF MILE EAST OF HIGHWAY 25 ON PERRY LANE ROAD/NEAR SOUTH OF THIRD AVENUE, WEST OF ALBANY STREET | Brunswick | GA |
| 7 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (LINDSAY LIGHT GROUP) | 160 E. ILLINOIS STREET | Chicago/ Streeterville | IL |
| 8 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (BEVERLY SAND & GRAVEL SITE) | 1100 BRANDT DRIVE | Chicago/ Streeterville | IL |
| 9 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES(ORANGE BLUE LLC/KIEFFER BUILDING) | 160 AND 200 EAST ILLINOIS STREET | Chicago/ Streeterville | IL |
| 10 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (SITE I) | 161 EAST GRAND AVENUE | Chicago/ Streeterville | IL |
| 11 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (COLUMBUS DRIVE SITE) | 221 N. COLUMBUS DRIVE | Chicago/ Streeterville | IL |
| 12 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (EAST OHIO ST SITES) | 245-247, 252, 341, AND 450 EAST OHIO STREET | Chicago/ Streeterville | IL |
| 13 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (SITE II: CHICAGO DOCK) | 316-318 EAST ILLINOIS STREET | Chicago/ Streeterville | IL |
| 14 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (ADAMS MARK HOTEL SITE) | 319 E. ILLINOIS STREET | Chicago/ Streeterville | IL |
| 15 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (LAKESHORE DRIVE SITE) | 401 N. LAKESHORE DRIVE | Chicago/ Streeterville | IL |
| 16 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (LINDSAY LIGHT III AND CHINESE RESTAURANT) | 22 WEST HUBBARD | Chicago/Streeterville | IL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 17 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (TEACHER'S RETIREMENT SITE) | 341 EAST OHIO | Chicago/Streeterville | IL |
| 18 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (KRAFT LOT) | 400 EAST ILLINOIS/510 N. PESHTIGO | Chicago/Streeterville | IL |
| 19 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (STREETERVILLE AREA) | 635 N. FAIRBANKS; 550 N. ST. CLAIR, 535 N. ST. CLAIR; 600 N. LAKE SHORE DRIVE; JANNE ADAMS MEMORIAL PARK; 505 N. LAKE SHORE DRIVE (LAKE POINT TOWER); ; 420 E. NORTH WATER; RIVER VIEWL RIVER EAST; 455 N. PARK; 465 N. PARK; 205, 209, 211 E. GRANT; 160 ILLINOIS (ALLEY OF CONCERN); 130 E. LAKE; LAKESHORE EAST; 630 MCCLUNG COURT; 405 E. ONTARIO; 515 N. PESHTIGO; 150-160 E. ONTARIO; NORTHWESTERN MEMORIAL HOSPITAL; REHABILITATION INSTITUTE OF CHICAGO; THE FORDHAM COMPANY; TFC PARK STREET LLC. | Chicago/Streeterville | IL |
| 20 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (GRAND PIER CENTER) | NORTH COLUMBUS DRIVE/200 E. ILLINOIS | Chicago/Streeterville | IL |
| 21 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (LAKESHORE EAST-GOLF COURSE, CLUBHOUSE, AND COMMONWEALTH EDISON) | | Chicago/Streeterville | IL |
| 22 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES-DUSABLE PARK | RIVER EAST | Chicago/ Streeterville | IL |
| 23 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES-STREETERVILLE RIGHTS OF WAY | | Chicago/Streeterville | IL |
| 24 | NON-OWNED FUNDED SITES | DECATUR SITE (WASTE HAULING LANDFILL SITE) | MACON COUNTY, NE QUARTER OF SEC. 24, TOWNSHIP 16, NORTH RANGE 1 EAST | Decatur | IL |
| 25 | NON-OWNED FUNDED SITES | MOUNT VERNON SITE | 20 ACRES BOUNDED BY SHAWNEE STREET ON THE NORTH EAST AND STATE HIGHWAY 142 ON SOUTH | Mount Vernon | IL |
| 26 | NON-OWNED FUNDED SITES | KRESS CREEK (WEST BRANCH DUPAGE RIVER SUPERFUND SITE) | | West Chicago | IL |
| 27 | NON-OWNED FUNDED SITES | NON-OWNED RAS PROPERTIES | | West Chicago | IL |
| 28 | NON-OWNED FUNDED SITES | NON-OWNED RAS PROPERTIES -- WEST CHICAGO OPERA HOUSE | westrom building | West Chicago | IL |
| 29 | NON-OWNED FUNDED SITES | DUBACH GAS SITE | 300 FLOWERS ROAD | Dubach | LA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 30 | NON-OWNED FUNDED SITES | FIREWORKS SITE | APPROXIMATELY 240 ACRES GENERALLY BORDERED TO THE NORTH BY SCHOOL AND CIRCUIT STREETS; TO THE EAST BY WINTER STREET AND BROADWAY; TO THE SOUTH BY EAST WASHINGTON STREET; AND TO THE WEST BY KING STREET. | Hanover | MA |
| 31 | NON-OWNED FUNDED SITES | HATTIESBURG SITE | NEAR W. PINE STREET | HATTIESBURG | MS |
| 32 | NON-OWNED FUNDED SITES | WELSBACH AND GENERAL GAS MANTLE SUPERFUND SITE | 5 AREAS IN CAMDEN AND GLOUCESTER CITY | Gloucester City | NJ |
| 33 | NON-OWNED FUNDED SITES | MANVILLE SITE | VALERIE DRIVE & LOUISE DRIVE | Manville | NJ |
| 34 | NON-OWNED FUNDED SITES | NAVAJO AREA URANIUM MINES: AMBROSIA LAKE U MINES | URANIUM MINING | Ambrosia Lake | NM |
| 35 | NON-OWNED FUNDED SITES | QUIVIRA MINE SITE (QUIVIRA NE CHURCH ROCK MINES I, IE AND II AND ALL AREAS WHERE CONTAMINANTS ASSOCIATED WITH THOSE MINES HAVE BEEN DEPOSITED, STORED, DISPOSED OF, PLACED, OR OTHERWISE COME TO BE LOCATED) | NE 1/4, SEC 27, T17N, R16W | McKinley County | NM |
| 36 | NON-OWNED FUNDED SITES | TOLEDO TIE SITE | INTERSECTION OF FRENCHMENS ROAD AND ARCO DRIVE | Toledo | OH |
| 37 | NON-OWNED FUNDED SITES | GORE SITE (SEQUOIA FUELS) | 140 NORTH HIGHWAY 10 | Gore | OK |
| 38 | NON-OWNED FUNDED SITES | KRINGER/STIGLER SITE (CHOCTAW COAL MINE SITE) | HASKELL COUNTY | Kringer/Stigler | OK |
| 39 | NON-OWNED FUNDED SITES | WYNNEWOOD SITE | 906 SOUTH POWELL AVENUE | Wynnewood | OK |
| 40 | NON-OWNED FUNDED SITES | WHITE KING/LUCKY LASS SITE | lakeview | Lake | OR |
| 41 | NON-OWNED FUNDED SITES | RILEY PASS SITE | T22N, R5E; NORTH CAVE HILLS AREA | Harding County | SD |
| 42 | NON-OWNED FUNDED SITES | FLAT TOP MINE | | Ludlow | SD |
| 43 | NON-OWNED FUNDED SITES | MOSS AMERICAN NPL SITE (NON-OWNED PORTION) | 8716 NORTH GRANVILLE ROAD | Milwaukee | WI |
| 44 | NON-OWNED FUNDED SITES | CALHOUN FACILITY | 200 GRIGGS ROAD | Calhoun | LA |
| 45 | NON-OWNED FUNDED SITES | CUSHING SITE | 1 MILE EAST OF HIGHWAY 18 AND DEEP ROCK ROAD INTERSECTION | Cushing | OK |
| 46 | NON-OWNED FUNDED SITES | CIMARRON SITE | 1/2 MILE NORTH OF HIGHWAY 33 AND HIGHWAY 74 INTERSECTION | Guthrie | OK |
| 47 | NON-OWNED FUNDED SITES | ROME SITE | 5900 SUCCESS DRIVE | Rome | NY |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|------------------------------|---------------|-------------------|----------------|-------|
| 48 | DESIGNATED NAVAJO AREA MINES | Black No. 1 Mine | N/A | Apache | AZ |
| 49 | DESIGNATED NAVAJO AREA MINES | Black No. 2 Mine | N/A | Apache | AZ |
| 50 | DESIGNATED NAVAJO AREA MINES | Black No. 2 Mine (West) | N/A | Apache | AZ |
| 51 | DESIGNATED NAVAJO AREA MINES | Block K | N/A | Apache | AZ |
| 52 | DESIGNATED NAVAJO AREA MINES | Flag No. 1 Mine | N/A | Apache | AZ |
| 53 | DESIGNATED NAVAJO AREA MINES | Frank Jr. Mine | N/A | Apache | AZ |
| 54 | DESIGNATED NAVAJO AREA MINES | Mesa 1 3/4 Incline | N/A | Apache | AZ |
| 55 | DESIGNATED NAVAJO AREA MINES | Mesa 1 3/4, Mine No. 2, P150 | N/A | Apache | AZ |
| 56 | DESIGNATED NAVAJO AREA MINES | Mesa I 1/2 Mine | N/A | Apache | AZ |
| 57 | DESIGNATED NAVAJO AREA MINES | Mesa I 1/4 Mine | N/A | Apache | AZ |
| 58 | DESIGNATED NAVAJO AREA MINES | Mesa I, Mine No. 10-15 | N/A | Apache | AZ |
| 59 | DESIGNATED NAVAJO AREA MINES | Mesa II 1/2 Mine | N/A | Apache | AZ |
| 60 | DESIGNATED NAVAJO AREA MINES | Mesa II 1/2 Mine, Mine 4 | N/A | Apache | AZ |
| 61 | DESIGNATED NAVAJO AREA MINES | Mesa II, Mine 4 | N/A | Apache | AZ |
| 62 | DESIGNATED NAVAJO AREA MINES | Mesa II, Mine No. 1 & 2, P-21 | N/A | Apache | AZ |
| 63 | DESIGNATED NAVAJO AREA MINES | Mesa II, Mine No. 1, P-150 | N/A | Apache | AZ |
| 64 | DESIGNATED NAVAJO AREA MINES | Mesa III Mine | N/A | Apache | AZ |
| 65 | DESIGNATED NAVAJO AREA MINES | Mesa III, Mine 1 | N/A | Apache | AZ |
| 66 | DESIGNATED NAVAJO AREA MINES | Mesa IV 1/2 Mine and Simpson 181 | N/A | Apache | AZ |
| 67 | DESIGNATED NAVAJO AREA MINES | Mesa IV, Mine 1 | N/A | Apache | AZ |
| 68 | DESIGNATED NAVAJO AREA MINES | Mesa IV, Mine 2 | N/A | Apache | AZ |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 69 | DESIGNATED NAVAJO AREA MINES | Mesa IV, Mine 3 | N/A | Apache | AZ |
| 70 | DESIGNATED NAVAJO AREA MINES | Mesa V Adit | N/A | Apache | AZ |
| 71 | DESIGNATED NAVAJO AREA MINES | Mesa V Incline | N/A | Apache | AZ |
| 72 | DESIGNATED NAVAJO AREA MINES | Mesa V Mine | N/A | Apache | AZ |
| 73 | DESIGNATED NAVAJO AREA MINES | Mesa VI Mine | N/A | Apache | AZ |
| 74 | DESIGNATED NAVAJO AREA MINES | Step Mesa Mine | N/A | Apache | AZ |
| 75 | DESIGNATED NAVAJO AREA MINES | Tommy James Mine | N/A | Apache | AZ |
| 76 | DESIGNATED NAVAJO AREA MINES | Section 1 | 13N 9W | McKinley | NM |
| 77 | DESIGNATED NAVAJO AREA MINES | Spencer Mine | 13N 9W | McKinley | NM |
| 78 | DESIGNATED NAVAJO AREA MINES | Section 10 | 14N 10W | McKinley | NM |
| 79 | DESIGNATED NAVAJO AREA MINES | Section 22 | 14N 10W | Mckinley | NM |
| 80 | DESIGNATED NAVAJO AREA MINES | Section 22 Heap Leach Mine | 14N 10W | Mckinley | NM |
| 81 | DESIGNATED NAVAJO AREA MINES | Section 24 | 14N 10W | McKinley | NM |
| 82 | DESIGNATED NAVAJO AREA MINES | Section 24 Heap Leach | 14N 10W | McKinley | NM |
| 83 | DESIGNATED NAVAJO AREA MINES | Section 26 (including Section 26 mined through Section 24) | 14N 10W | McKinley | NM |
| 84 | DESIGNATED NAVAJO AREA MINES | Section 17 | 14N 9W | McKinley | NM |
| 85 | DESIGNATED NAVAJO AREA MINES | Section 18 (including Section 18 SEQ) | 14N 9W | Mckinley | NM |
| 86 | DESIGNATED NAVAJO AREA MINES | Section 19 | 14N 9W | McKinley | NM |
| 87 | DESIGNATED NAVAJO AREA MINES | Section 20 | 14N 9W | McKinley | NM |
| 88 | DESIGNATED NAVAJO AREA MINES | Section 29 (including Section 29 mined through Sections 30, 32, and 33) | 14N 9W | McKinley | NM |
| 89 | DESIGNATED NAVAJO AREA MINES | Section 30 | 14N 9W | Mckinley | NM |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 90 | DESIGNATED NAVAJO AREA MINES | Section 30W | 14N 9W | Mckinley | NM |
| 91 | DESIGNATED NAVAJO AREA MINES | Section 31 | 14N 9W | McKinley | NM |
| 92 | DESIGNATED NAVAJO AREA MINES | Section 33 | 14N 9W | McKinley | NM |
| 93 | DESIGNATED NAVAJO AREA MINES | Section 35 | 14N 9W | McKinley | NM |
| 94 | DESIGNATED NAVAJO AREA MINES | Section 36 | 14N 9W | Mckinley | NM |
| 95 | DESIGNATED NAVAJO AREA MINES | Section 32 | 15N 11W | Mckinley | NM |
| 96 | DESIGNATED NAVAJO AREA MINES | Section 33 | 15N 11W | McKinley | NM |
| 97 | NON-OWNED SERVICE STATIONS | Albertville 7070 | Highway 431 South | Albertville | AL |
| 98 | NON-OWNED SERVICE STATIONS | Alexander City 50 | Route 2, U.S. 280 By-Pass | Alexander City | AL |
| 99 | NON-OWNED SERVICE STATIONS | Anniston 106 | 2830 Noble St. | Anniston | AL |
| 100 | NON-OWNED SERVICE STATIONS | Arab | Parkway 231 North | Arab | AL |
| 101 | NON-OWNED SERVICE STATIONS | Ardmore 7203 | Highway 53 South | Ardmore | AL |
| 102 | NON-OWNED SERVICE STATIONS | Athens 6085 | 378 Highway 72 East | Athens | AL |
| 103 | NON-OWNED SERVICE STATIONS | Athens 7083 | Highway 72 West | Athens | AL |
| 104 | NON-OWNED SERVICE STATIONS | Athens | Hwy. 72E | Athens | AL |
| 105 | NON-OWNED SERVICE STATIONS | Athens | Hwy. 72W | Athens | AL |
| 106 | NON-OWNED SERVICE STATIONS | Attalla | 929 5th Avenue | Attalla | AL |
| 107 | NON-OWNED SERVICE STATIONS | Bessemer 7110 | 929 5th Avenue N.E. | Attalla | AL |
| 108 | NON-OWNED SERVICE STATIONS | Attalla 7077 | South 3rd Street | Attalla | AL |
| 109 | NON-OWNED SERVICE STATIONS | Bessemer 58 | 1400 First Avenue South | Bessemer | AL |
| 110 | NON-OWNED SERVICE STATIONS | Bessemer 103 | 1405 19th Street | Bessemer | AL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 111 | NON-OWNED SERVICE STATIONS | Bessemer | 330 S. 14th Street | Bessemer | AL |
| 112 | NON-OWNED SERVICE STATIONS | Bessemer 17 | 4001 Greenwood Road | Bessemer | AL |
| 113 | NON-OWNED SERVICE STATIONS | Bessemer 43 | Hall Avenue and 14th Street | Bessemer | AL |
| 114 | NON-OWNED SERVICE STATIONS | Bessemer 59 | Route 8 (U.S. Highway 11) | Bessemer | AL |
| 115 | NON-OWNED SERVICE STATIONS | Birmingham 66 | 10th Avenue North | Birmingham | AL |
| 116 | NON-OWNED SERVICE STATIONS | Birmingham 2105 | 1125 Gadsden RD | Birmingham | AL |
| 117 | NON-OWNED SERVICE STATIONS | Birmingham 104 | 1813 Bankhead Highway | Birmingham | AL |
| 118 | NON-OWNED SERVICE STATIONS | Birmingham 7059 | 301 77th Street | Birmingham | AL |
| 119 | NON-OWNED SERVICE STATIONS | Birmingham 23 | 4401 Fourth Avenue South | Birmingham | AL |
| 120 | NON-OWNED SERVICE STATIONS | Birmingham 101 | 4641 Decatur Highway | Birmingham | AL |
| 121 | NON-OWNED SERVICE STATIONS | Birmingham 85 | 490 Forestdale Boulevard | Birmingham | AL |
| 122 | NON-OWNED SERVICE STATIONS | Birmingham 2 | 5501 First Avenue South | Birmingham | AL |
| 123 | NON-OWNED SERVICE STATIONS | Birmingham 102 | 606 Birmingham - Bessemer Super Highway | Birmingham | AL |
| 124 | NON-OWNED SERVICE STATIONS | Birmingham 84 | 6525 Third Avenue North | Birmingham | AL |
| 125 | NON-OWNED SERVICE STATIONS | Birmingham 80 | 816 Sixth Avenue South | Birmingham | AL |
| 126 | NON-OWNED SERVICE STATIONS | Birmingham 37 | 8211 North First Avenue | Birmingham | AL |
| 127 | NON-OWNED SERVICE STATIONS | Birmingham 7702, 8 | Jefferson & 16th | Birmingham | AL |
| 128 | NON-OWNED SERVICE STATIONS | Birmingham 67 | Third Avenue and 9th Street | Birmingham | AL |
| 129 | NON-OWNED SERVICE STATIONS | Birmingham 82 | US Highway 78 West | Birmingham | AL |
| 130 | NON-OWNED SERVICE STATIONS | Birmingham 2167 | 3319 Fifth Avenue North | Birmingham | AL |
| 131 | NON-OWNED SERVICE STATIONS | Blountsville 109 | State Highway 79 & US Highway 231 | Blountsville | AL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 132 | NON-OWNED SERVICE STATIONS | Boaz KM-124-7000 | 303 Thomas Avenue | Boaz | AL |
| 133 | NON-OWNED SERVICE STATIONS | Boaz 7007 | NW/C Highway 431 & Bethsaida Road | Boaz | AL |
| 134 | NON-OWNED SERVICE STATIONS | Center Point 86 | 1837 Center Point Road | Center Point | AL |
| 135 | NON-OWNED SERVICE STATIONS | Columbiana 64 | State Highway 25 | Columbiana | AL |
| 136 | NON-OWNED SERVICE STATIONS | Crossville | Hwy. 75S | Crossville | AL |
| 137 | NON-OWNED SERVICE STATIONS | Dothan 48 | 718 North Oates | Dothan | AL |
| 138 | NON-OWNED SERVICE STATIONS | East Gadsden 75 | Highway 278 East | East Gadsden | AL |
| 139 | NON-OWNED SERVICE STATIONS | Fultondale 2159 | US Highway 31 North | Fultondale | AL |
| 140 | NON-OWNED SERVICE STATIONS | Gadsden 7039 | 1325 Noccaula RD Highway 211 | Gadsden | AL |
| 141 | NON-OWNED SERVICE STATIONS | Gadsden 76 | 22225 W. Meighan Blvd. | Gadsden | AL |
| 142 | NON-OWNED SERVICE STATIONS | Gadsden 7114 | 346 Albert Rains Blvd. | Gadsden | AL |
| 143 | NON-OWNED SERVICE STATIONS | Gadsden 99 | Forrest Avenue and First Street | Gadsden | AL |
| 144 | NON-OWNED SERVICE STATIONS | Gadsden | Rainbow Drive | Gadsden | AL |
| 145 | NON-OWNED SERVICE STATIONS | Glencoe 7068 | 16051 Highway 431 South | Glencoe | AL |
| 146 | NON-OWNED SERVICE STATIONS | Grand Bay | US Highway 90 | Grand Bay | AL |
| 147 | NON-OWNED SERVICE STATIONS | Guntersville 431 | US Highway 431 | Guntersville | AL |
| 148 | NON-OWNED SERVICE STATIONS | Hamilton 78 | US Highway 78 | Hamilton | AL |
| 149 | NON-OWNED SERVICE STATIONS | Highland Home K-11 | US Highway 331 | Highland Home | AL |
| 150 | NON-OWNED SERVICE STATIONS | Hollins 60 | Highway 241 | Hollins | AL |
| 151 | NON-OWNED SERVICE STATIONS | Homewood 15 | 2705 South 18th Street | Homewood | AL |
| 152 | NON-OWNED SERVICE STATIONS | Huntsville 53 | 2500 Bob Wallace Avenue | Huntsville | AL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 153 | NON-OWNED SERVICE STATIONS | Huntsville 7111 | 2821 University Drive | Huntsville | AL |
| 154 | NON-OWNED SERVICE STATIONS | Huntsville 33 | 611 West Clinton Street | Huntsville | AL |
| 155 | NON-OWNED SERVICE STATIONS | Huntsville 96 | 650 North Parkway | Huntsville | AL |
| 156 | NON-OWNED SERVICE STATIONS | Irondale 104 | 1813 Bankhead Highway | Irondale | AL |
| 157 | NON-OWNED SERVICE STATIONS | Jasper 115 | Bankhead Highway & 2nd Avenue | Jasper | AL |
| 158 | NON-OWNED SERVICE STATIONS | Jasper 7063 | Highway 69 South & 13th Avenue (near bankhead highway) | Jasper | AL |
| 159 | NON-OWNED SERVICE STATIONS | Kilpatrick 7104 | Highway 168 East | Kilpatrick | AL |
| 160 | NON-OWNED SERVICE STATIONS | Loxley 21 | Highway 90 | Loxley or Mobile | AL |
| 161 | NON-OWNED SERVICE STATIONS | Mobile 72 | 1910 St. Stephens Road | Mobile | AL |
| 162 | NON-OWNED SERVICE STATIONS | Mobile 3 | 59 North Broad Street | Mobile | AL |
| 163 | NON-OWNED SERVICE STATIONS | Mobile 9 | 750 Government Street | Mobile | AL |
| 164 | NON-OWNED SERVICE STATIONS | Mobile 55 | Moffat Road | Mobile | AL |
| 165 | NON-OWNED SERVICE STATIONS | Mobile 57 | 1051 Springhill Avenue | Mobile | AL |
| 166 | NON-OWNED SERVICE STATIONS | Montgomery 7 | 137 Madison Avenue | Montgomery | AL |
| 167 | NON-OWNED SERVICE STATIONS | Montgomery k-6 | 1521 Decatur Street | Montgomery | AL |
| 168 | NON-OWNED SERVICE STATIONS | Montgomery K-7 | 3452 Mobile Highway | Montgomery | AL |
| 169 | NON-OWNED SERVICE STATIONS | Tan-Kar Oil Company (11 stations, office space and storage building) | 3452 Mobile Hwy | Montgomery | AL |
| 170 | NON-OWNED SERVICE STATIONS | Montgomery K-1 | 500 Bell Street | Montgomery | AL |
| 171 | NON-OWNED SERVICE STATIONS | Montgomery K-15 | 570 South Decatur Street | Montgomery | AL |
| 172 | NON-OWNED SERVICE STATIONS | Montgomery K-12 | US 82 and 231 | Montgomery | AL |
| 173 | NON-OWNED SERVICE STATIONS | Montgomery K-4 | US Highway 80 | Montgomery | AL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 174 | NON-OWNED SERVICE STATIONS | Morgan City 7079 | Highway 231 North | Morgan City | AL |
| 175 | NON-OWNED SERVICE STATIONS | Morgan City | Hwy. 431N | Morgan City | AL |
| 176 | NON-OWNED SERVICE STATIONS | Mountainboro-Boaz 7025 | Highway 431 N - Carlisle | Mountainboro Boaz | AL |
| 177 | NON-OWNED SERVICE STATIONS | Odenville 7030 | Highway 411 South | Odenville | AL |
| 178 | NON-OWNED SERVICE STATIONS | Oneonta 108 | 402 2nd Avenue East | Oneonta | AL |
| 179 | NON-OWNED SERVICE STATIONS | Oneonta 7201 | Highway 231 North | Oneonta | AL |
| 180 | NON-OWNED SERVICE STATIONS | Oneonta 7204 | Highway 75 West | Oneonta | AL |
| 181 | NON-OWNED SERVICE STATIONS | Opelika 63 | US Highway 29 | Opelika | AL |
| 182 | NON-OWNED SERVICE STATIONS | Owens Cross Roads 7080 | 9642 Highway 431 South | Owens Cross Roads | AL |
| 183 | NON-OWNED SERVICE STATIONS | OXFORD | 1200 SNOW | Oxford | AL |
| 184 | NON-OWNED SERVICE STATIONS | Painter-Crossville 7022 | Highway 75 South | Painter-Crossville | AL |
| 185 | NON-OWNED SERVICE STATIONS | Pelham 89 | US Highway 31 South of Birmingham | Pelham | AL |
| 186 | NON-OWNED SERVICE STATIONS | Phenix City 62 | US 280 and 431 | Phenix City | AL |
| 187 | NON-OWNED SERVICE STATIONS | Piedmont 107 | State Highway 74 and US 278 | Piedmont | AL |
| 188 | NON-OWNED SERVICE STATIONS | Prattville 18 | Highway 31 and Alabama River | Prattville | AL |
| 189 | NON-OWNED SERVICE STATIONS | Prattville K-3 | RR #1 | Prattville | AL |
| 190 | NON-OWNED SERVICE STATIONS | Prattville 13 | US Highway 31 | Prattville | AL |
| 191 | NON-OWNED SERVICE STATIONS | Prichard 73 | 3000 St Stephens Road | Prichard | AL |
| 192 | NON-OWNED SERVICE STATIONS | Prichard 54 | Highway 45 & Lott Road | Prichard | AL |
| 193 | NON-OWNED SERVICE STATIONS | Reform 65 | US Highway 82 | Reform | AL |
| 194 | NON-OWNED SERVICE STATIONS | Saraland 5071 | 207 Highway #43 | Saraland | AL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 195 | NON-OWNED SERVICE STATIONS | Selma 20 | 1327 - 1331 Broad Street | Selma | AL |
| 196 | NON-OWNED SERVICE STATIONS | Selma K-14 | US Highway 80 | Selma | AL |
| 197 | NON-OWNED SERVICE STATIONS | Shawmut 158 | 3000 20th Avenue | Shawmut | AL |
| 198 | NON-OWNED SERVICE STATIONS | Sheffield 7098 | 717 East 2nd Street | Sheffield | AL |
| 199 | NON-OWNED SERVICE STATIONS | Sheffield 94 | 723 East Second | Sheffield | AL |
| 200 | NON-OWNED SERVICE STATIONS | Sheffield 112 | Montgomery Avenue and Cohen Street | Sheffield | AL |
| 201 | NON-OWNED SERVICE STATIONS | Somerville 111 | Decatur-Arab Road (Highway 67) | Somerville | AL |
| 202 | NON-OWNED SERVICE STATIONS | Southside 7084 | Highway 77 South | Southside | AL |
| 203 | NON-OWNED SERVICE STATIONS | Sylacauga 7082 | Highway 21 North | Sylacauga | AL |
| 204 | NON-OWNED SERVICE STATIONS | Tarrant County 7102 | 1021 Pinson Valley Parkway | Tarrant County | AL |
| 205 | NON-OWNED SERVICE STATIONS | Tuscaloosa 12 | Greensboro Avenue and Second Street | Tuscaloosa | AL |
| 206 | NON-OWNED SERVICE STATIONS | Verbena 16 | US Highway 31 | Verbena | AL |
| 207 | NON-OWNED SERVICE STATIONS | Wetempka K-8 | 14 miles east of Montgomery on Highway 231 | Wetumpka | AL |
| 208 | NON-OWNED SERVICE STATIONS | Wetempka 56 | US Highway 231 | Wetumpka | AL |
| 209 | NON-OWNED SERVICE STATIONS | Wetumpka K-2 | US Highway 231 | Wetumpka | AL |
| 210 | NON-OWNED SERVICE STATIONS | Winfield 114 | US Highway 78 | Winfield | AL |
| 211 | NON-OWNED SERVICE STATIONS | Winterborough 61 | US Highway 231 | Winterborough | AL |
| 212 | NON-OWNED SERVICE STATIONS | Beebe 1 | Highway 67 | Beebe | AR |
| 213 | NON-OWNED SERVICE STATIONS | Beebe 74 | | Beebe | AR |
| 214 | NON-OWNED SERVICE STATIONS | Blytheville 1 | 1000 South Division Street | Blytheville | AR |
| 215 | NON-OWNED SERVICE STATIONS | Blytheville 2 | 301 South Elm Street | Blytheville | AR |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 216 | NON-OWNED SERVICE STATIONS | Blythville 3 | Highway 151 North | Blytheville | AR |
| 217 | NON-OWNED SERVICE STATIONS | Camden 1 | SE/C California & Chestnut | Camden | AR |
| 218 | NON-OWNED SERVICE STATIONS | DeQueen 1 | 830 Elberta Avenue | DeQueen | AR |
| 219 | NON-OWNED SERVICE STATIONS | Eudora 5 | Highway 65 & Fourth Street | Eudora | AR |
| 220 | NON-OWNED SERVICE STATIONS | Fayetteville 1 | 103 South School Street | Fayetteville | AR |
| 221 | NON-OWNED SERVICE STATIONS | Fayetteville 2 | 1236 South School Street | Fayetteville | AR |
| 222 | NON-OWNED SERVICE STATIONS | Fayetteville 4 | 1348 West 6th Street | Fayetteville | AR |
| 223 | NON-OWNED SERVICE STATIONS | Fayetteville 3 | 2402 College | Fayetteville | AR |
| 224 | NON-OWNED SERVICE STATIONS | Fort Smith 4 | 3825 Jenny Lind | Fort Smith | AR |
| 225 | NON-OWNED SERVICE STATIONS | Fort Smith 3 | 3811 Grand Avenue | Ft. Smith | AR |
| 226 | NON-OWNED SERVICE STATIONS | Ft. Smith 1 | 3911 Towson Avenue | Ft. Smith | AR |
| 227 | NON-OWNED SERVICE STATIONS | Fort Smith 2 | 5101 Jenny Lind Avenue | Ft. Smith | AR |
| 228 | NON-OWNED SERVICE STATIONS | Helena 1 | Perry and Oakland Streets | Helena | AR |
| 229 | NON-OWNED SERVICE STATIONS | Hot Springs 2 | 2200 Albert Pike | Hot Springs | AR |
| 230 | NON-OWNED SERVICE STATIONS | Hot Springs 3 | 2245 Malvern Avenue | Hot Springs | AR |
| 231 | NON-OWNED SERVICE STATIONS | Hot Springs | 4109 Central Avenue | Hot Springs | AR |
| 232 | NON-OWNED SERVICE STATIONS | Hoxie 1 | NE/C US Highway 67 & Lindsey St. | Hoxie | AR |
| 233 | NON-OWNED SERVICE STATIONS | Jacksonville 1 | 106 Marshall Road | Jacksonville | AR |
| 234 | NON-OWNED SERVICE STATIONS | Little Rock 5 | 1100 East Roosevelt | Little Rock | AR |
| 235 | NON-OWNED SERVICE STATIONS | Little Rock 2 | 1823 High Street | Little Rock | AR |
| 236 | NON-OWNED SERVICE STATIONS | Little Rock 1 | 2801 West Markham | Little Rock | AR |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 237 | NON-OWNED SERVICE STATIONS | Little Rock 44 | West 12th Street and South Hayes | Little Rock | AR |
| 238 | NON-OWNED SERVICE STATIONS | Malvern 2 | 1114 East Page Avenue | Malvern | AR |
| 239 | NON-OWNED SERVICE STATIONS | Marianna 1 | US Highway 79 & SH-1 | Marianna | AR |
| 240 | NON-OWNED SERVICE STATIONS | Newport 1 | Highway 67 | Newport | AR |
| 241 | NON-OWNED SERVICE STATIONS | North Little Rock 4 | 224 East Broadway | North Little Rock | AR |
| 242 | NON-OWNED SERVICE STATIONS | North Little Rock 3 | 4600 East Broadway | North Little Rock | AR |
| 243 | NON-OWNED SERVICE STATIONS | Pine Bluff 3 | 1301 West Barraque | Pine Bluff | AR |
| 244 | NON-OWNED SERVICE STATIONS | PINE BLUFF | 1700 N CEDAR | Pine Bluff | AR |
| 245 | NON-OWNED SERVICE STATIONS | Pine Bluff 5 | 2220 Olive Street | Pine Bluff | AR |
| 246 | NON-OWNED SERVICE STATIONS | Pine Bluff 4 | 3820 West Sixth Avenue | Pine Bluff | AR |
| 247 | NON-OWNED SERVICE STATIONS | Pine Bluff 2 | NW/C US Highway 65 & Hutchinson | Pine Bluff | AR |
| 248 | NON-OWNED SERVICE STATIONS | Pine Bluff 1 | US Highway 79 North & Collegiate Dr | Pine Bluff | AR |
| 249 | NON-OWNED SERVICE STATIONS | POTTSVILLE | SE/C i-40 & us 64 | Pottsville | AR |
| 250 | NON-OWNED SERVICE STATIONS | Russellville 2 | 1021 East 4th Street | Russellville | AR |
| 251 | NON-OWNED SERVICE STATIONS | Russellville | 3109 N. Main street | Russellville | AR |
| 252 | NON-OWNED SERVICE STATIONS | Searcy 1 | 502 W. Pleasure St. | Searcy | AR |
| 253 | NON-OWNED SERVICE STATIONS | Searcy 2 | 1901 East Race Street | Searcy | AR |
| 254 | NON-OWNED SERVICE STATIONS | Springdale 1 | 930 South Thompson Street | Springdale | AR |
| 255 | NON-OWNED SERVICE STATIONS | Springdale 2 | 404 W. Emma | Springdale | AR |
| 256 | NON-OWNED SERVICE STATIONS | Atlantic Beach 71 | 1119 Atlantic Boulevard | Atlantic Beach | FL |
| 257 | NON-OWNED SERVICE STATIONS | Atlantic Beach 75 | 880 Mayport Road | Atlantic Beach | FL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 258 | NON-OWNED SERVICE STATIONS | Boynton Beach 87 | 730 NW Second Avenue | Boynton Beach | FL |
| 259 | NON-OWNED SERVICE STATIONS | Clearwater 63 | US Alternate Route 19 and Howard Court | Clearwater | FL |
| 260 | NON-OWNED SERVICE STATIONS | COCOA #3057 | SE/C ST ROAD 520/LINCOLN ROAD | Cocoa | FL |
| 261 | NON-OWNED SERVICE STATIONS | Crystal River 44 | Eastside US Highway 19 | Crystal River | FL |
| 262 | NON-OWNED SERVICE STATIONS | Fernandina Beach 67 | State Highway 200 | Fernandina Beach | FL |
| 263 | NON-OWNED SERVICE STATIONS | Fort Walton Beach 76 | 54 Beal Parkway Southwest | Fort Walton Beach | FL |
| 264 | NON-OWNED SERVICE STATIONS | Ft. Walton Beach | 98 Elgin Parkway N.E. | Ft. Walton Beach | FL |
| 265 | NON-OWNED SERVICE STATIONS | Gainesville 79 | 205 NW 8th Avenue | Gainesville | FL |
| 266 | NON-OWNED SERVICE STATIONS | Gainesville 91 | 2225 NW 6th | Gainesville | FL |
| 267 | NON-OWNED SERVICE STATIONS | Holly Hills 92 | 1094 Derbshire | Holly Hills | FL |
| 268 | NON-OWNED SERVICE STATIONS | Jacksonville 74 | 1112 University Boulevard | Jacksonville | FL |
| 269 | NON-OWNED SERVICE STATIONS | Jacksonville 69 | 4233 Brentwood | Jacksonville | FL |
| 270 | NON-OWNED SERVICE STATIONS | Jacksonville 66 | 4321 Moncrief Road | Jacksonville | FL |
| 271 | NON-OWNED SERVICE STATIONS | Jacksonville 70 | 509 South Edgewood Avenue | Jacksonville | FL |
| 272 | NON-OWNED SERVICE STATIONS | Jacksonville 55 | 6186 Cleveland Avenue | Jacksonville | FL |
| 273 | NON-OWNED SERVICE STATIONS | Jacksonville 90 | 6203 Roosevelt Boulevard | Jacksonville | FL |
| 274 | NON-OWNED SERVICE STATIONS | Jacksonville 42 | 7136 Atlantic Avenue | Jacksonville | FL |
| 275 | NON-OWNED SERVICE STATIONS | Jacksonville 68 | 725 Florida Avenue | Jacksonville | FL |
| 276 | NON-OWNED SERVICE STATIONS | Jacksonville 73 | 729 West Ashley Street | Jacksonville | FL |
| 277 | NON-OWNED SERVICE STATIONS | Jacksonville 41 | 959 Cassatt Avenue | Jacksonville | FL |
| 278 | NON-OWNED SERVICE STATIONS | Jacksonville 40 | NW/C Merrill Road & Cesery Boulevard | Jacksonville | FL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 279 | NON-OWNED SERVICE STATIONS | Lake Worth 83 | 1001-05 South Dixie Highway | Lake Worth | FL |
| 280 | NON-OWNED SERVICE STATIONS | Lake Worth 84 | 3138 Lake Worth Road | Lake Worth | FL |
| 281 | NON-OWNED SERVICE STATIONS | Lake Worth 86 | 3380 South Military Trail | Lake Worth | FL |
| 282 | NON-OWNED SERVICE STATIONS | Lakeland 88 | 414 West Memorial Boulevard | Lakeland | FL |
| 283 | NON-OWNED SERVICE STATIONS | Largo 58 | 3390 E. Bay Drive | Largo | FL |
| 284 | NON-OWNED SERVICE STATIONS | Melbourne 29 | 2300 New Haven Street and Acacia Drive | Melbourne | FL |
| 285 | NON-OWNED SERVICE STATIONS | Merritt Island 82 | 325 Merritt Island Causeway | Merritt Island | FL |
| 286 | NON-OWNED SERVICE STATIONS | Ocala Power 52 | US Highway Interstate 75 & State Route 40 | Ocala | FL |
| 287 | NON-OWNED SERVICE STATIONS | Orlando 77 | 10 East Oakridge Road | Orlando | FL |
| 288 | NON-OWNED SERVICE STATIONS | Orlando 3093 | 1905 East Michigan | Orlando | FL |
| 289 | NON-OWNED SERVICE STATIONS | Orlando 76 | 7525 South Orange Avenue | Orlando | FL |
| 290 | NON-OWNED SERVICE STATIONS | Ormond Beach 3072 | 101 W. Granada Blvd | Ormond Beach | FL |
| 291 | NON-OWNED SERVICE STATIONS | Palatka 65 | 2005 Reid Road | Palatka | FL |
| 292 | NON-OWNED SERVICE STATIONS | Panama City | 1920 East Fifth Street | Panama City | FL |
| 293 | NON-OWNED SERVICE STATIONS | Panama City 45 | St. Andrews - Lynn Haven Road | Panama City | FL |
| 294 | NON-OWNED SERVICE STATIONS | Pensacola 47 | 3600 Palafox | Pensacola | FL |
| 295 | NON-OWNED SERVICE STATIONS | Pensacola 35 | 3806 Mobile Highway | Pensacola | FL |
| 296 | NON-OWNED SERVICE STATIONS | Perry 39 | US Highway 19 South | Perry | FL |
| 297 | NON-OWNED SERVICE STATIONS | St Augustine 56 | Green Acres Road & S. Highway 16 | St. Augustine | FL |
| 298 | NON-OWNED SERVICE STATIONS | Tallahassee 38 | 1080 West Tennessee Street | Tallahassee | FL |
| 299 | NON-OWNED SERVICE STATIONS | Tampa 51 | 3057 West Hillsborough Avenue | Tampa | FL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 300 | NON-OWNED SERVICE STATIONS | Tampa 59 | 3337 South West Shore Boulevard | Tampa | FL |
| 301 | NON-OWNED SERVICE STATIONS | Titusville 3081 | 1110 Garden Street | Titusville | FL |
| 302 | NON-OWNED SERVICE STATIONS | Titusville 80 | South & DeLeon Streets | Titusville | FL |
| 303 | NON-OWNED SERVICE STATIONS | West Palm Beach 85 | 5713 Voss Road, Mangonia Park | West Palm Beach | FL |
| 304 | NON-OWNED SERVICE STATIONS | Winter Haven 89 | 1506 34th Street, NW | Winter Haven | FL |
| 305 | NON-OWNED SERVICE STATIONS | Albany 47 | 1300 North Slappey Boulevard | Albany | GA |
| 306 | NON-OWNED SERVICE STATIONS | Albany 48 | 615 Radium Springs Road | Albany | GA |
| 307 | NON-OWNED SERVICE STATIONS | Alpharetta 5 | 125 South Main Street | Alpharetta | GA |
| 308 | NON-OWNED SERVICE STATIONS | Athens 28 | 1064 Baxter Street | Athens | GA |
| 309 | NON-OWNED SERVICE STATIONS | Athens 57 | Oconee Street | Athens | GA |
| 310 | NON-OWNED SERVICE STATIONS | Atlanta 17 | 1113 Twiggs Street | Atlanta | GA |
| 311 | NON-OWNED SERVICE STATIONS | Atlanta 24 | 1321 Bankhead Highway | Atlanta | GA |
| 312 | NON-OWNED SERVICE STATIONS | Atlanta 11 | 180 Georgia Avenue S.W. | Atlanta | GA |
| 313 | NON-OWNED SERVICE STATIONS | Atlanta 11 | 1811 Lakewood Avenue SE | Atlanta | GA |
| 314 | NON-OWNED SERVICE STATIONS | Atlanta 12 | 1811 Lakewood Avenue, S.W. | Atlanta | GA |
| 315 | NON-OWNED SERVICE STATIONS | Atlanta 2091 | 186 Northside Drive, S.W. | Atlanta | GA |
| 316 | NON-OWNED SERVICE STATIONS | Atlanta 4 | 2125 Piedmont Road, N.E. | Atlanta | GA |
| 317 | NON-OWNED SERVICE STATIONS | Atlanta 3 | 2125 Piedmont Road, NE | Atlanta | GA |
| 318 | NON-OWNED SERVICE STATIONS | Atlanta 2 | 2418 Bolton Road | Atlanta | GA |
| 319 | NON-OWNED SERVICE STATIONS | Atlanta 1 | 2418 Bolton Road N.W. | Atlanta | GA |
| 320 | NON-OWNED SERVICE STATIONS | Atlanta 3030 | 280 Central Avenue | Atlanta | GA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 321 | NON-OWNED SERVICE STATIONS | Atlanta 10 | 370 Peters Street | Atlanta | GA |
| 322 | NON-OWNED SERVICE STATIONS | Atlanta 4 | 3955 Buford Highway | Atlanta | GA |
| 323 | NON-OWNED SERVICE STATIONS | Atlanta8 | 409 Mitchell Street S.W. | Atlanta | GA |
| 324 | NON-OWNED SERVICE STATIONS | Atlanta 8 | 409 Mitchelle Street S.W. | Atlanta | GA |
| 325 | NON-OWNED SERVICE STATIONS | Atlanta 2 | 4374 Roswell Road, N.W. | Atlanta | GA |
| 326 | NON-OWNED SERVICE STATIONS | Atlanta 3 | 4374 Roswell Road, N.W. | Atlanta | GA |
| 327 | NON-OWNED SERVICE STATIONS | Atlanta 139 | 646 DeKalb Avenue | Atlanta | GA |
| 328 | NON-OWNED SERVICE STATIONS | Atlanta 26 | 712 Hemphill Avenue | Atlanta | GA |
| 329 | NON-OWNED SERVICE STATIONS | Atlanta 31 | 980 Howell Mill Road | Atlanta | GA |
| 330 | NON-OWNED SERVICE STATIONS | Atlanta 92 | 980 Howell Mill Road | Atlanta | GA |
| 331 | NON-OWNED SERVICE STATIONS | Atlanta Bulk Plant | Avon Avenue & Sylvan Road | Atlanta | GA |
| 332 | NON-OWNED SERVICE STATIONS | Atlanta 29 | Bankhead Highway | Atlanta | GA |
| 333 | NON-OWNED SERVICE STATIONS | Atlanta 30 | Central & Pulliam | Atlanta | GA |
| 334 | NON-OWNED SERVICE STATIONS | Atlanta 10 | 108 Georgia Avenue | Atlanta | GA |
| 335 | NON-OWNED SERVICE STATIONS | Augusta 17 | 1113 Twiggs Street | Augusta | GA |
| 336 | NON-OWNED SERVICE STATIONS | Augusta 25 | 2228 Milledgeville Road | Augusta | GA |
| 337 | NON-OWNED SERVICE STATIONS | Brunswick 49 | 2325 Norwich Street | Brunswick | GA |
| 338 | NON-OWNED SERVICE STATIONS | Chamblee 2 | 3705 Buford Highway | Chamblee | GA |
| 339 | NON-OWNED SERVICE STATIONS | Chamblee 1 | 4477 Peachtree rd | Chamblee | GA |
| 340 | NON-OWNED SERVICE STATIONS | College Park 137 | 2086 Roosevelt Highway | College Park | GA |
| 341 | NON-OWNED SERVICE STATIONS | Columbus 35 | 3238 Cusseta Road | Columbus | GA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 342 | NON-OWNED SERVICE STATIONS | Dalton 23 | 606 East Morris | Dalton | GA |
| 343 | NON-OWNED SERVICE STATIONS | Dalton 16 | 900 North Glenwood Avenue | Dalton | GA |
| 344 | NON-OWNED SERVICE STATIONS | Decatur 9 | 1875 Candler Road | Decatur | GA |
| 345 | NON-OWNED SERVICE STATIONS | Decatur 9 | 1881 Candler Road | Decatur | GA |
| 346 | NON-OWNED SERVICE STATIONS | Decatur 2038 | 3647 Covington Highway | Decatur | GA |
| 347 | NON-OWNED SERVICE STATIONS | Dry Branch 3011 | Macon Irwinton Road | Dry Branch | GA |
| 348 | NON-OWNED SERVICE STATIONS | Eatonton | Oak Street & South Madison | Eatonton | GA |
| 349 | NON-OWNED SERVICE STATIONS | Fair Oaks 7 | 505 Austell Road | Fair Oaks | GA |
| 350 | NON-OWNED SERVICE STATIONS | Flippen 3 | SE/C Meadowbrook & Highway 351 | Flippen | GA |
| 351 | NON-OWNED SERVICE STATIONS | Forest Park 2135 | 752 Main Street | Forest Park | GA |
| 352 | NON-OWNED SERVICE STATIONS | Fort Valley 9 | Macon and Church Streets | Fort Valley | GA |
| 353 | NON-OWNED SERVICE STATIONS | Gainesville 6 | 1000 Athens Street | Gainesville | GA |
| 354 | NON-OWNED SERVICE STATIONS | Gainesville 9 | 920 Athens Avenue | Gainesville | GA |
| 355 | NON-OWNED SERVICE STATIONS | Gainesville 6 | Athens Highway | Gainesville | GA |
| 356 | NON-OWNED SERVICE STATIONS | Gray 5 | Gray-Milledgeville Road | Gray | GA |
| 357 | NON-OWNED SERVICE STATIONS | Green Valley 27 | Highway 87 | Green Valley | GA |
| 358 | NON-OWNED SERVICE STATIONS | Griffin 36 | 361 North Expressway | Griffin | GA |
| 359 | NON-OWNED SERVICE STATIONS | Hapeville | 816 South Central Avenue | Hapeville | GA |
| 360 | NON-OWNED SERVICE STATIONS | Irwinton 13 | Main Street & Highway 29 & 57 | Irwinton | GA |
| 361 | NON-OWNED SERVICE STATIONS | Jenkinsburg 3028 | US Highway 23 | Jenkinsburg | GA |
| 362 | NON-OWNED SERVICE STATIONS | Mableton 2093 | 835 Bankhead Highway | Mableton | GA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 363 | NON-OWNED SERVICE STATIONS | Macon 24 | 1083 Third Street | Macon | GA |
| 364 | NON-OWNED SERVICE STATIONS | Macon 24 | 1095 Third Street | Macon | GA |
| 365 | NON-OWNED SERVICE STATIONS | Macon | 1194 Broadway | Macon | GA |
| 366 | NON-OWNED SERVICE STATIONS | Macon 20 | 1503 Broadway | Macon | GA |
| 367 | NON-OWNED SERVICE STATIONS | Macon 21 | 161 Emery Highway | Macon | GA |
| 368 | NON-OWNED SERVICE STATIONS | Macon 2 | 2165 Montpelier Avenue | Macon | GA |
| 369 | NON-OWNED SERVICE STATIONS | Macon 15 | 2827 Houston Avenue | Macon | GA |
| 370 | NON-OWNED SERVICE STATIONS | Macon 18 | 3306 Forsyth Road | Macon | GA |
| 371 | NON-OWNED SERVICE STATIONS | Macon 18 | 3306 Vineville Avenue | Macon | GA |
| 372 | NON-OWNED SERVICE STATIONS | Macon 34 | 3430 Pio Nona Avenue | Macon | GA |
| 373 | NON-OWNED SERVICE STATIONS | Macon 46 | 3871 Broadway | Macon | GA |
| 374 | NON-OWNED SERVICE STATIONS | Macon 22 | 399 Walnut Street | Macon | GA |
| 375 | NON-OWNED SERVICE STATIONS | Macon 12 | 3992 Napier Avenue | Macon | GA |
| 376 | NON-OWNED SERVICE STATIONS | Macon 23 | 489 Cotton Avenue | Macon | GA |
| 377 | NON-OWNED SERVICE STATIONS | Macon 3 | 659 North Avenue | Macon | GA |
| 378 | NON-OWNED SERVICE STATIONS | Macon 50 | 727 Emery Highway & Fort Hill Road | Macon | GA |
| 379 | NON-OWNED SERVICE STATIONS | Macon 12 | Belleville Station | Macon | GA |
| 380 | NON-OWNED SERVICE STATIONS | macon #3053 | sw/c Hawkinsville road & allen road | Macon | GA |
| 381 | NON-OWNED SERVICE STATIONS | Macon 37 | 3871 Broadway | Macon | GA |
| 382 | NON-OWNED SERVICE STATIONS | Marietta 7 | 1410 Austell Road, Southeast | Marietta | GA |
| 383 | NON-OWNED SERVICE STATIONS | Moultrie 16 | West Central & First Street, S.W. | Moultrie | GA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 384 | NON-OWNED SERVICE STATIONS | Moultrie 16 | West Central & Trust | Moultrie | GA |
| 385 | NON-OWNED SERVICE STATIONS | Scottsdale 14 | 3436 East Ponce De Leon Avenue | Scottsdale | GA |
| 386 | NON-OWNED SERVICE STATIONS | Statesboro 7 | Savannah and Vine Streets | Statesboro | GA |
| 387 | NON-OWNED SERVICE STATIONS | Summerville 51 | 463 Commerce Street | Summerville | GA |
| 388 | NON-OWNED SERVICE STATIONS | Thomaston 6 | 904 Barnesville Street | Thomaston | GA |
| 389 | NON-OWNED SERVICE STATIONS | Thomaston 26 | US Highway 19 | Thomaston | GA |
| 390 | NON-OWNED SERVICE STATIONS | Valdosta 14 | 651 South Patterson | Valdosta | GA |
| 391 | NON-OWNED SERVICE STATIONS | Vidalia 10 | First Street | Vidalia | GA |
| 392 | NON-OWNED SERVICE STATIONS | West Point 46 | 100 East 8th Street | West Point | GA |
| 393 | NON-OWNED SERVICE STATIONS | Atlantic 2 | 7th and Walnut Streets | Atlantic | IA |
| 394 | NON-OWNED SERVICE STATIONS | Bettendorf 1 | 2920 State Street | Bettendorf | IA |
| 395 | NON-OWNED SERVICE STATIONS | Burlington 1 | 1200 N. Roosevelt Avenue | Burlington | IA |
| 396 | NON-OWNED SERVICE STATIONS | Carroll 1 | US Highway 30 East | Carroll | IA |
| 397 | NON-OWNED SERVICE STATIONS | Cedar Rapids | 1600 6th Street | Cedar Rapids | IA |
| 398 | NON-OWNED SERVICE STATIONS | Cedar Rapids 1 | 4713 6th Street | Cedar Rapids | IA |
| 399 | NON-OWNED SERVICE STATIONS | Centerville 1 | 220 East Maple Street | Centerville | IA |
| 400 | NON-OWNED SERVICE STATIONS | Clive 1 | 1725 N.W. 86th Street | Clive | IA |
| 401 | NON-OWNED SERVICE STATIONS | Cresco 1 | 202 2nd Avenue South | Cresco | IA |
| 402 | NON-OWNED SERVICE STATIONS | Davenport 2 | 2000 West River Road | Davenport | IA |
| 403 | NON-OWNED SERVICE STATIONS | Davenport 1 | 2920 West Locust | Davenport | IA |
| 404 | NON-OWNED SERVICE STATIONS | Denison 1 | White and Prospect Streets | Denison | IA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 405 | NON-OWNED SERVICE STATIONS | Des Moines 2 | 14th & Euclid | Des Moines | IA |
| 406 | NON-OWNED SERVICE STATIONS | Des Moines 7 | 1824 Second Avenue | Des Moines | IA |
| 407 | NON-OWNED SERVICE STATIONS | Des Moines 9 | 1954 Indianola Road | Des Moines | IA |
| 408 | NON-OWNED SERVICE STATIONS | Des Moines 11 | 2110 West Army Post Road | Des Moines | IA |
| 409 | NON-OWNED SERVICE STATIONS | Des Moines 3 | 2270 Hubbell Avenue | Des Moines | IA |
| 410 | NON-OWNED SERVICE STATIONS | Des Moines 15 | 2814 E. University Street | Des Moines | IA |
| 411 | NON-OWNED SERVICE STATIONS | Des Moines 17 | 2825 Easton Boulevard | Des Moines | IA |
| 412 | NON-OWNED SERVICE STATIONS | Des Moines 10 | 3200 S.E. 14th | Des Moines | IA |
| 413 | NON-OWNED SERVICE STATIONS | Des Moines 16 | 3418 Sixth Avenue | Des Moines | IA |
| 414 | NON-OWNED SERVICE STATIONS | Des Moines 6 | 3426 Harding Road | Des Moines | IA |
| 415 | NON-OWNED SERVICE STATIONS | Des Moines 1 | 4100 S.W. Ninth St. | Des Moines | IA |
| 416 | NON-OWNED SERVICE STATIONS | Des Moines 14 | 4200 East Hubbell | Des Moines | IA |
| 417 | NON-OWNED SERVICE STATIONS | Des Moines 13 | 4675 North Second Avenue | Des Moines | IA |
| 418 | NON-OWNED SERVICE STATIONS | Des Moines 12 | 6900 Hickman Road | Des Moines | IA |
| 419 | NON-OWNED SERVICE STATIONS | Des Moines 4 | 7101 University Avenue | Des Moines | IA |
| 420 | NON-OWNED SERVICE STATIONS | Dunlap | 7th & Iowa Streets | Des Moines | IA |
| 421 | NON-OWNED SERVICE STATIONS | Des Moines 8 | East 14th & Des Moines | Des Moines | IA |
| 422 | NON-OWNED SERVICE STATIONS | Des Moines Bulk Station | Raccoon Street between 9th & 10th | Des Moines | IA |
| 423 | NON-OWNED SERVICE STATIONS | Fairfield 1 | 605 North Second Street | Fairfield | IA |
| 424 | NON-OWNED SERVICE STATIONS | Fort Dodge 1 | 1202 Second Avenue, South | Fort Dodge | IA |
| 425 | NON-OWNED SERVICE STATIONS | Fort Dodge 2 | 1500 Second Avenue, North | Fort Dodge | IA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 426 | NON-OWNED SERVICE STATIONS | Fort Madison 1 | 2311 Avenue "L" | Fort Madison | IA |
| 427 | NON-OWNED SERVICE STATIONS | Indianola 1 | 109 S. Jefferson Avenue | Indianola | IA |
| 428 | NON-OWNED SERVICE STATIONS | Iowa City 1 | 304 East Burlington | Iowa City | IA |
| 429 | NON-OWNED SERVICE STATIONS | Kellogg | Interstate 80 & County Road | Kellogg | IA |
| 430 | NON-OWNED SERVICE STATIONS | Keokuk 1 | 2820 Main | Keokuk | IA |
| 431 | NON-OWNED SERVICE STATIONS | LeMars 1 | 226 Fifth Avenue, S.W. | LeMars | IA |
| 432 | NON-OWNED SERVICE STATIONS | LeMars | 234 5th Avenue | LeMars | IA |
| 433 | NON-OWNED SERVICE STATIONS | Maquoketa 1 | 311 East Platt Street | Maquoketa | IA |
| 434 | NON-OWNED SERVICE STATIONS | Mason City 1 | North Federal and 13t Street | Mason City | IA |
| 435 | NON-OWNED SERVICE STATIONS | Missouri Valley 1 | 500 West Erie Street | Missouri Valley | IA |
| 436 | NON-OWNED SERVICE STATIONS | Nevada 2 | 1136 East 5th Street | Nevada | IA |
| 437 | NON-OWNED SERVICE STATIONS | Newton 1 | 1901 First Avenue | Newton | IA |
| 438 | NON-OWNED SERVICE STATIONS | Oakland 1 | Main Street | Oakland | IA |
| 439 | NON-OWNED SERVICE STATIONS | Oelwein 1 | 935 South Frederick | Oelwein | IA |
| 440 | NON-OWNED SERVICE STATIONS | Osage 1 | 1428 Main Street | Osage | IA |
| 441 | NON-OWNED SERVICE STATIONS | Osceola 1 | 714 West McLane | Osceola | IA |
| 442 | NON-OWNED SERVICE STATIONS | Oskaloosa 1 | 1102 A Avenue West | Oskaloosa | IA |
| 443 | NON-OWNED SERVICE STATIONS | Ottumwa 1 | 1268 West 2nd | Ottumwa | IA |
| 444 | NON-OWNED SERVICE STATIONS | Ottumwa 2 | 201 North Madison | Ottumwa | IA |
| 445 | NON-OWNED SERVICE STATIONS | Pella 1 | 600 Oskaloosa Street | Pella | IA |
| 446 | NON-OWNED SERVICE STATIONS | Sheldon 1 | 622 Second Avenue | Sheldon | IA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 447 | NON-OWNED SERVICE STATIONS | Sioux City 1 | 322 South Lewis Road | Sioux City | IA |
| 448 | NON-OWNED SERVICE STATIONS | Sioux City | 500 Wesley Way | Sioux City | IA |
| 449 | NON-OWNED SERVICE STATIONS | Storm Lake 1 | 420 Flindt Drive | Storm Lake | IA |
| 450 | NON-OWNED SERVICE STATIONS | Washington 1 | Route 2, Box 110-A | Washington | IA |
| 451 | NON-OWNED SERVICE STATIONS | Waterloo 1 | 2102-2116 Lafayette | Waterloo | IA |
| 452 | NON-OWNED SERVICE STATIONS | Abingdon 1 | Monmouth & Monroe Sts. | Abingdon | IL |
| 453 | NON-OWNED SERVICE STATIONS | Belleville 1 | 1531 Lebanon Avenue | Belleville | IL |
| 454 | NON-OWNED SERVICE STATIONS | Belvidere 1 | 600 Logan Avenue | Belvidere | IL |
| 455 | NON-OWNED SERVICE STATIONS | Bushnell #1 | 105 E. Hail Street | Bushnell | IL |
| 456 | NON-OWNED SERVICE STATIONS | Carlinville | 304 East First South Street | Carlinville | IL |
| 457 | NON-OWNED SERVICE STATIONS | Centralia 1 | 138 N. Walnut | Centralia | IL |
| 458 | NON-OWNED SERVICE STATIONS | Charleston 1 | 120 Lincoln Street | Charleston | IL |
| 459 | NON-OWNED SERVICE STATIONS | Chillicothe 1 | 223 N. 4th | Chillicothe | IL |
| 460 | NON-OWNED SERVICE STATIONS | Clinton | 105 East Van Buren | Clinton | IL |
| 461 | NON-OWNED SERVICE STATIONS | Collinsville 1 | 201 North Vandalia | Collinsville | IL |
| 462 | NON-OWNED SERVICE STATIONS | Decatur Bulk Station | 100 Industry Court | Decatur | IL |
| 463 | NON-OWNED SERVICE STATIONS | Decatur 7 | 1500 East Eldorado Street | Decatur | IL |
| 464 | NON-OWNED SERVICE STATIONS | Decatur 5 | 274 West Wood Street | Decatur | IL |
| 465 | NON-OWNED SERVICE STATIONS | Decatur | 560 East Pershing Road | Decatur | IL |
| 466 | NON-OWNED SERVICE STATIONS | DeKalb 1 | 1120 W. Lincoln Highway | DeKalb | IL |
| 467 | NON-OWNED SERVICE STATIONS | LEFTON IRON AND METAL | SCRAP SALVAGE SITE- 205 SOUTH 17TH STREET | East St. Louis | IL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 468 | NON-OWNED SERVICE STATIONS | Edwardsville | 100 South Main Street | Edwardsville | IL |
| 469 | NON-OWNED SERVICE STATIONS | Effingham 1 | 419 West Fayette Avenue | Effingham | IL |
| 470 | NON-OWNED SERVICE STATIONS | Fairfield 1 | W. Main and Clarence | Fairfield | IL |
| 471 | NON-OWNED SERVICE STATIONS | Flora 1 | 400 West North Avenue | Flora | IL |
| 472 | NON-OWNED SERVICE STATIONS | Freeport 1 | 901 South Galena | Freeport | IL |
| 473 | NON-OWNED SERVICE STATIONS | Galesburg 2 | RFD 3, Knoxville Road | Galesburg | IL |
| 474 | NON-OWNED SERVICE STATIONS | Galva 1 | S.E. 1st Avenue | Galva | IL |
| 475 | NON-OWNED SERVICE STATIONS | Georgetown 1 | 305 North Main Street | Georgetown | IL |
| 476 | NON-OWNED SERVICE STATIONS | Granite City 1 | 2320 Nameoki Road | Granite City | IL |
| 477 | NON-OWNED SERVICE STATIONS | Greenville 1 | 110 East Harris St. | Greenville | IL |
| 478 | NON-OWNED SERVICE STATIONS | Harrisburg 1 | NW/C Commercial and Church Streets | Harrisburg | IL |
| 479 | NON-OWNED SERVICE STATIONS | Hoopeston 1 | West Main Street and South Sixth Avenue | Hoopeston | IL |
| 480 | NON-OWNED SERVICE STATIONS | Jacksonville 1 | 524 East Morton Avenue | Jacksonville | IL |
| 481 | NON-OWNED SERVICE STATIONS | Kankakee 3 | 121 West Court Street | Kankakee | IL |
| 482 | NON-OWNED SERVICE STATIONS | Kankakee 2 | 750 Fair Street | Kankakee | IL |
| 483 | NON-OWNED SERVICE STATIONS | Kewanee 1 | 501 N. Main | Kewanee | IL |
| 484 | NON-OWNED SERVICE STATIONS | LaSalle 1 | 145 Third Street | LaSalle | IL |
| 485 | NON-OWNED SERVICE STATIONS | Lincoln 1 | 203 North Kickapoo Street | Lincoln | IL |
| 486 | NON-OWNED SERVICE STATIONS | Litchfield 1 | 403 E. Union Avenue | Litchfield | IL |
| 487 | NON-OWNED SERVICE STATIONS | Marion 1 | 1500 West Main | Marion | IL |
| 488 | NON-OWNED SERVICE STATIONS | Mattoon 1 | 1721 Charleston Avenue | Mattoon | IL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 489 | NON-OWNED SERVICE STATIONS | Mendota 1 | 1212 13th Avenue | Mendota | IL |
| 490 | NON-OWNED SERVICE STATIONS | Metropolis 1 | NE/C Ferry & Sixth Streets | Metropolis | IL |
| 491 | NON-OWNED SERVICE STATIONS | Moline 1 | 4720 Bridgelane | Moline | IL |
| 492 | NON-OWNED SERVICE STATIONS | Monmouth 1 | Main and Franklin | Monmouth | IL |
| 493 | NON-OWNED SERVICE STATIONS | Monticello 1 | 117 N. Market Street | Monticello | IL |
| 494 | NON-OWNED SERVICE STATIONS | Morrison 1 | US Highway 30, North Route | Morrison | IL |
| 495 | NON-OWNED SERVICE STATIONS | mt. carmel | 330 walnut ave | Mt. Carmel | IL |
| 496 | NON-OWNED SERVICE STATIONS | Mt. Pulaski | Railroad Right-of-way Site | Mt. Pulaski | IL |
| 497 | NON-OWNED SERVICE STATIONS | Mt. Vernon | 100 South 15th Street | Mt. Vernon | IL |
| 498 | NON-OWNED SERVICE STATIONS | MT. VERNON | 1416 S 10TH | Mt. Vernon | IL |
| 499 | NON-OWNED SERVICE STATIONS | Murphysboro 1 | Sixth and Walnut Street | Murphysboro | IL |
| 500 | NON-OWNED SERVICE STATIONS | Normal | 313 West Beaufort | Normal | IL |
| 501 | NON-OWNED SERVICE STATIONS | Olney 1 | 703 West Main Street | Olney | IL |
| 502 | NON-OWNED SERVICE STATIONS | Petersburg | 219 N. 6th | Petersburg | IL |
| 503 | NON-OWNED SERVICE STATIONS | Princeton 1 | Highway 26, Route 1 | Princeton | IL |
| 504 | NON-OWNED SERVICE STATIONS | Rantoul 1 | 714 E. Champaign | Rantoul | IL |
| 505 | NON-OWNED SERVICE STATIONS | Rochelle 1 | US Highway 51, North of Rochelle | Rochelle | IL |
| 506 | NON-OWNED SERVICE STATIONS | Rock Island 1 | 1520 11th Street | Rock Island | IL |
| 507 | NON-OWNED SERVICE STATIONS | Rock Island 3 | 3100 Fifth Avenue | Rock Island | IL |
| 508 | NON-OWNED SERVICE STATIONS | Rockford 3 | 1430 East Broadway | Rockford | IL |
| 509 | NON-OWNED SERVICE STATIONS | Rockford | 2301 Harrison Avenue | Rockford | IL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 510 | NON-OWNED SERVICE STATIONS | Rockford 2 | 2903 S. Kishwaukee | Rockford | IL |
| 511 | NON-OWNED SERVICE STATIONS | Rockford 4 | 3410 West State Street | Rockford | IL |
| 512 | NON-OWNED SERVICE STATIONS | Salem 1 | 1435 West Main | Salem | IL |
| 513 | NON-OWNED SERVICE STATIONS | Springfield 3 | 1000 N. MacArthur | Springfield | IL |
| 514 | NON-OWNED SERVICE STATIONS | Springfield 2 | 2041 East Cook Street | Springfield | IL |
| 515 | NON-OWNED SERVICE STATIONS | Springfield 1 | 629 North 9th Street | Springfield | IL |
| 516 | NON-OWNED SERVICE STATIONS | Streator 1 | Bridge Street and Bloomington | Streator | IL |
| 517 | NON-OWNED SERVICE STATIONS | Sullivan 1 | 305 S. Hamilton | Sullivan | IL |
| 518 | NON-OWNED SERVICE STATIONS | Sycamore #1 | Route 23, Highway 23 South | Sycamore | IL |
| 519 | NON-OWNED SERVICE STATIONS | Taylorville | 1101 W. Spressor street | Taylorville | IL |
| 520 | NON-OWNED SERVICE STATIONS | Taylorville 1 | Highway 48 & Silver Street or 1101 Route 48 West | Taylorville | IL |
| 521 | NON-OWNED SERVICE STATIONS | Urbana 1 | US Highway 45 North | Urbana | IL |
| 522 | NON-OWNED SERVICE STATIONS | Washington 1 | 1309 Washington Road | Washington | IL |
| 523 | NON-OWNED SERVICE STATIONS | West Frankfort 1 | 1110 East Main | West Frankfort | IL |
| 524 | NON-OWNED SERVICE STATIONS | Anderson 1 | 603 East 8th | Anderson | IN |
| 525 | NON-OWNED SERVICE STATIONS | Clermont 1 | 9054 Crawfordsville Road | Clermont | IN |
| 526 | NON-OWNED SERVICE STATIONS | Clermont Pipeline Terminal | W. 30th St. | Clermont | IN |
| 527 | NON-OWNED SERVICE STATIONS | Clinton 1 | 9th and Vine Street | Clinton | IN |
| 528 | NON-OWNED SERVICE STATIONS | Elwood 1 | 2034 E. Main St | Elwood | IN |
| 529 | NON-OWNED SERVICE STATIONS | Franklin 1 | 650 West Madison | Franklin | IN |
| 530 | NON-OWNED SERVICE STATIONS | Greencastle 1 | 605 Bloomington | Greencastle | IN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 531 | NON-OWNED SERVICE STATIONS | Indianapolis 8 | 2801 Post Road | Indianapolis | IN |
| 532 | NON-OWNED SERVICE STATIONS | INDIANAPOLIS | 3311 KENTUCKY AVE | Indianapolis | IN |
| 533 | NON-OWNED SERVICE STATIONS | Indianapolis 2 | 4951 South Madison Avenue | Indianapolis | IN |
| 534 | NON-OWNED SERVICE STATIONS | Indianapolis 6 | 5461 East 30th Street | Indianapolis | IN |
| 535 | NON-OWNED SERVICE STATIONS | Indianapolis 1 | 550 South Harding Street | Indianapolis | IN |
| 536 | NON-OWNED SERVICE STATIONS | Indianapolis 7 | 911 West 34th Street | Indianapolis | IN |
| 537 | NON-OWNED SERVICE STATIONS | Kentland 1 | 5th & Seymour Streets | Kentland | IN |
| 538 | NON-OWNED SERVICE STATIONS | Lawrence 1 | 4715 Shadeland Avenue | Lawrence | IN |
| 539 | NON-OWNED SERVICE STATIONS | Linton 1 | 380 N.W. "A" Street | Linton | IN |
| 540 | NON-OWNED SERVICE STATIONS | Logansport 1 | 1001 Wheatland | Logansport | IN |
| 541 | NON-OWNED SERVICE STATIONS | Marion 1 | 1102 S. Baldwin Avenue | Marion | IN |
| 542 | NON-OWNED SERVICE STATIONS | 1741 SOUTH MAIN | 1741 SOUTH MAIN STREET | New Castle | IN |
| 543 | NON-OWNED SERVICE STATIONS | New Castle 1 | 2131 E. Broad Street | New Castle | IN |
| 544 | NON-OWNED SERVICE STATIONS | Peru 1 | 310 N. Broadway | Peru | IN |
| 545 | NON-OWNED SERVICE STATIONS | Plainfield 1 | US Highway & Clarks Road | Plainfield | IN |
| 546 | NON-OWNED SERVICE STATIONS | Princeton 1 | 1600 West Broadway | Princeton | IN |
| 547 | NON-OWNED SERVICE STATIONS | Rockville 1 | 600 North Lincoln Road | Rockville | IN |
| 548 | NON-OWNED SERVICE STATIONS | Speedway 1 | 2490 Georgetown Road | Speedway | IN |
| 549 | NON-OWNED SERVICE STATIONS | Sullivan 1 | Section and Johnson Street | Sullivan | IN |
| 550 | NON-OWNED SERVICE STATIONS | Terre Haute 2 | 1328 Poplar Street | Terre Haute | IN |
| 551 | NON-OWNED SERVICE STATIONS | Terre Haute 1 | 1732 North Third | Terre Haute | IN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 552 | NON-OWNED SERVICE STATIONS | Vincennes 1 | 1626 North 6th Street | Vincennes | IN |
| 553 | NON-OWNED SERVICE STATIONS | Wabash 1 | 958 North Cass | Wabash | IN |
| 554 | NON-OWNED SERVICE STATIONS | Ark City | 601 Summit street | Ark City | KS |
| 555 | NON-OWNED SERVICE STATIONS | Arkansas City 1 | 601 S. Summit | Arkansas City | KS |
| 556 | NON-OWNED SERVICE STATIONS | Augusta 2 | 115 East 7th | Augusta | KS |
| 557 | NON-OWNED SERVICE STATIONS | Augusta 1 | 641 Osage | Augusta | KS |
| 558 | NON-OWNED SERVICE STATIONS | Belleville 1 | 28th & L Streets | Belleville | KS |
| 559 | NON-OWNED SERVICE STATIONS | Burlington 1 | 1124 N. 4th | Burlington | KS |
| 560 | NON-OWNED SERVICE STATIONS | Cherryvale Storage Tank | 101 East Fourth Street | Cherryvale | KS |
| 561 | NON-OWNED SERVICE STATIONS | Cherryvale 1 | NE/Third & Liberty (330 W. 3rd) | Cherryvale | KS |
| 562 | NON-OWNED SERVICE STATIONS | Colby | State Highway 25 | Colby | KS |
| 563 | NON-OWNED SERVICE STATIONS | Concordia 1 | NW/C 11th Street & Lincoln | Concordia | KS |
| 564 | NON-OWNED SERVICE STATIONS | Derby 1 | 230 S. Baltimore | Derby | KS |
| 565 | NON-OWNED SERVICE STATIONS | El Dorado 1 | 1631 West Central | El Dorado | KS |
| 566 | NON-OWNED SERVICE STATIONS | Emporia 1 | 1128 Commercial St. | Emporia | KS |
| 567 | NON-OWNED SERVICE STATIONS | Garden City Shop 'N Gas | 308 North Sixth Street | Garden City | KS |
| 568 | NON-OWNED SERVICE STATIONS | Garden City | NE/C 11th and Kansas Street | Garden City | KS |
| 569 | NON-OWNED SERVICE STATIONS | Hays 1 | 401 East 8th Street | Hays | KS |
| 570 | NON-OWNED SERVICE STATIONS | Haysville 1 | 248 South Seneca, Haysville KS 67060 | Haysville | KS |
| 571 | NON-OWNED SERVICE STATIONS | Hillsboro 1 | 414 S. Washington | Hillsboro | KS |
| 572 | NON-OWNED SERVICE STATIONS | Hutchinson 1 | 2629 East 4th Street | Hutchinson | KS |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 573 | NON-OWNED SERVICE STATIONS | Independence | 112 N. 10th Street | Independence | KS |
| 574 | NON-OWNED SERVICE STATIONS | Iola 1 | 201 South State Street | Iola | KS |
| 575 | NON-OWNED SERVICE STATIONS | Junction City | 711 Grant Avenue | Junction City | KS |
| 576 | NON-OWNED SERVICE STATIONS | Kansas City | 4732 State Avenue | Kansas City | KS |
| 577 | NON-OWNED SERVICE STATIONS | Lawrence 4 | 900 Illinois | Lawrence | KS |
| 578 | NON-OWNED SERVICE STATIONS | Lawrence 3 | 930 W. 23rd Street | Lawrence | KS |
| 579 | NON-OWNED SERVICE STATIONS | Lawrence 2 | West Sixth & Lawrence | Lawrence | KS |
| 580 | NON-OWNED SERVICE STATIONS | Lawrence 1 | 920 N. Second Street | Lawrence | KS |
| 581 | NON-OWNED SERVICE STATIONS | Liberal 2 | US 54 Highway & Jewell Street | Liberal | KS |
| 582 | NON-OWNED SERVICE STATIONS | Manhattan 1 | 12th and Laramie | Manhattan | KS |
| 583 | NON-OWNED SERVICE STATIONS | Manhattan 2 | State Highway 18 West | Manhattan | KS |
| 584 | NON-OWNED SERVICE STATIONS | Marysville 1 | 203 Center Street | Marysville | KS |
| 585 | NON-OWNED SERVICE STATIONS | Oakley | US Highway 83 & Interstate 70 | Oakley | KS |
| 586 | NON-OWNED SERVICE STATIONS | Ogden 1 | Highway 18 | Ogden | KS |
| 587 | NON-OWNED SERVICE STATIONS | Oswego 1 | NW/C 6th & Ohio Street | Oswego | KS |
| 588 | NON-OWNED SERVICE STATIONS | Paola 1 | NW/C Piankishaw and Silver | Paola | KS |
| 589 | NON-OWNED SERVICE STATIONS | Pittsburgh 1 | 719 South Broadway | Pittsburgh | KS |
| 590 | NON-OWNED SERVICE STATIONS | Russell 1 | US 281 E | Russell | KS |
| 591 | NON-OWNED SERVICE STATIONS | Topeka 5 | 101 East Highway 24 | Topeka | KS |
| 592 | NON-OWNED SERVICE STATIONS | Topeka 2 | 4710 South Topeka Avenue | Topeka | KS |
| 593 | NON-OWNED SERVICE STATIONS | Topeka 3 | 5335 South Topeka Boulevard | Topeka | KS |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 594 | NON-OWNED SERVICE STATIONS | Topeka 4 | NW/C I-70 & Valencia Road | Topeka | KS |
| 595 | NON-OWNED SERVICE STATIONS | Washington | 101 West 7th Street | Washington | KS |
| 596 | NON-OWNED SERVICE STATIONS | Wellington 1 | 206 West 15th | Wellington | KS |
| 597 | NON-OWNED SERVICE STATIONS | Wichita 2 | 1439 East 13th | Wichita | KS |
| 598 | NON-OWNED SERVICE STATIONS | Wichita 5 | 1701 East McArthur | Wichita | KS |
| 599 | NON-OWNED SERVICE STATIONS | Wichita 9 | 2160 South Broadway | Wichita | KS |
| 600 | NON-OWNED SERVICE STATIONS | Wichita 6 | 2347 South Senenca | Wichita | KS |
| 601 | NON-OWNED SERVICE STATIONS | Wichita 8 | 2410 South Oliver | Wichita | KS |
| 602 | NON-OWNED SERVICE STATIONS | Wichita 3 | 2439 North Arkansas | Wichita | KS |
| 603 | NON-OWNED SERVICE STATIONS | Wichita 4 | 4710 South East Boulevard | Wichita | KS |
| 604 | NON-OWNED SERVICE STATIONS | Wichita 1 | 6439 Highway 54 West | Wichita | KS |
| 605 | NON-OWNED SERVICE STATIONS | Wichita 7 | 695 North West Street | Wichita | KS |
| 606 | NON-OWNED SERVICE STATIONS | Wichita 10 | NW/C 13th & Maize Road | Wichita | KS |
| 607 | NON-OWNED SERVICE STATIONS | Yates Center 1 | 501 West Mary | Yates Center | KS |
| 608 | NON-OWNED SERVICE STATIONS | Bowling Green 65 | 1588 Laurel | Bowling Green | KY |
| 609 | NON-OWNED SERVICE STATIONS | Cave City 59 | Highway 31 West | Cave City | KY |
| 610 | NON-OWNED SERVICE STATIONS | central city | highway 431 & stroud | Central City | KY |
| 611 | NON-OWNED SERVICE STATIONS | Danville | 501 South Fourth Street | Danville | KY |
| 612 | NON-OWNED SERVICE STATIONS | Elizabethtown 61 | US Highway 31 West at Mt. Zion Road | Elizabethtown | KY |
| 613 | NON-OWNED SERVICE STATIONS | Glasgow | 528 Happy Valley Road | Glasgow | KY |
| 614 | NON-OWNED SERVICE STATIONS | Hopkinsville 130 | 1411 West 7th Street | Hopkinsville | KY |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 615 | NON-OWNED SERVICE STATIONS | Jeffersontown 145 | 10200 Taylorsville Road | Jeffersontown | KY |
| 616 | NON-OWNED SERVICE STATIONS | Lexington 1 | 2172 Nicholasville Road | Lexington | KY |
| 617 | NON-OWNED SERVICE STATIONS | Lexington 67 | 235 New Circle Road | Lexington | KY |
| 618 | NON-OWNED SERVICE STATIONS | Lexington 4 | 600 East Third Street | Lexington | KY |
| 619 | NON-OWNED SERVICE STATIONS | Lexington 3 | 800 North Broadway | Lexington | KY |
| 620 | NON-OWNED SERVICE STATIONS | Lexington 9 | 901 Georgetown Road | Lexington | KY |
| 621 | NON-OWNED SERVICE STATIONS | Louisville 62 | 2601 Bardstown Road | Louisville | KY |
| 622 | NON-OWNED SERVICE STATIONS | Louisville 146 | 3323 Fern Valley Road | Louisville | KY |
| 623 | NON-OWNED SERVICE STATIONS | Louisville 66 | 3800 Cane Run Road | Louisville | KY |
| 624 | NON-OWNED SERVICE STATIONS | Louisville 124 | 4660 Poplar Level Road | Louisville | KY |
| 625 | NON-OWNED SERVICE STATIONS | Louisville 150 | 619 Outer Loop and Nash Road | Louisville | KY |
| 626 | NON-OWNED SERVICE STATIONS | Louisville 144 | 7401 Preston Highway | Louisville | KY |
| 627 | NON-OWNED SERVICE STATIONS | Louisville 60 | 7528 Dixie Highway | Louisville | KY |
| 628 | NON-OWNED SERVICE STATIONS | Louisville 125 | Fegenbush & Watterson Trail | Louisville | KY |
| 629 | NON-OWNED SERVICE STATIONS | Louisville 126 | 4435 OR 4403 New Manslick Road | Louisville | KY |
| 630 | NON-OWNED SERVICE STATIONS | Louisville 153 | 612 Lyndon Lane | Lyndon | KY |
| 631 | NON-OWNED SERVICE STATIONS | Madisonville 122 | 2425 South Main Street | Madisonville | KY |
| 632 | NON-OWNED SERVICE STATIONS | Owensboro 2063 | 4024 East 4th Street | Owensboro | KY |
| 633 | NON-OWNED SERVICE STATIONS | Owensboro 55 | 623 West Ninth Street | Owensboro | KY |
| 634 | NON-OWNED SERVICE STATIONS | Paducah 2 | Park Avenue West | Paducah | KY |
| 635 | NON-OWNED SERVICE STATIONS | Paris | 585 West 8th Street | Paris | KY |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 636 | NON-OWNED SERVICE STATIONS | Radcliff 133 | 870 South Dixie Boulevard | Radcliff | KY |
| 637 | NON-OWNED SERVICE STATIONS | Russellville 58 | 523 North Main Street | Russellville | KY |
| 638 | NON-OWNED SERVICE STATIONS | Shelbyville 7 | 1530 Midland Trail West | Shelbyville | KY |
| 639 | NON-OWNED SERVICE STATIONS | Somerset 8 | SE/C West Columbia and Mt. Vernon Streets | Somerset | KY |
| 640 | NON-OWNED SERVICE STATIONS | Winchester 5 | Main & Clark | Winchester | KY |
| 641 | NON-OWNED SERVICE STATIONS | WINCHEsTER | us highway 277 | Winchester | KY |
| 642 | NON-OWNED SERVICE STATIONS | Arcadia 5 | 131 East First Street | Arcadia | LA |
| 643 | NON-OWNED SERVICE STATIONS | Bastrop | 701 North Washington | Bastrop | LA |
| 644 | NON-OWNED SERVICE STATIONS | Bastrop 17 | West Madison and West Hickory | Bastrop | LA |
| 645 | NON-OWNED SERVICE STATIONS | Columbia 1 | Pearl and Kentucky Street | Columbia | LA |
| 646 | NON-OWNED SERVICE STATIONS | Delhi 1 | 205 N.E. First Street | Delhi | LA |
| 647 | NON-OWNED SERVICE STATIONS | Ferriday 1 | 619 South 4th | Ferriday | LA |
| 648 | NON-OWNED SERVICE STATIONS | Girard Tank Yard | Railroad Right of Way | Girard | LA |
| 649 | NON-OWNED SERVICE STATIONS | Jena 1 | West Oak Street | Jena | LA |
| 650 | NON-OWNED SERVICE STATIONS | Jonesboro 6 | 1703 Ringgold | Jonesboro | LA |
| 651 | NON-OWNED SERVICE STATIONS | Lake Providence 3 | Sparrow Street | Lake Providence | LA |
| 652 | NON-OWNED SERVICE STATIONS | Minden | 223 East Union Street | Minden | LA |
| 653 | NON-OWNED SERVICE STATIONS | Monroe 19 | 801 Wiinsboro Road | Monroe | LA |
| 654 | NON-OWNED SERVICE STATIONS | Monroe 20 | Magnolia & DeSiard Street | Monroe | LA |
| 655 | NON-OWNED SERVICE STATIONS | Natchitochas | 210 Hwy. 10 South | Natchitochas | LA |
| 656 | NON-OWNED SERVICE STATIONS | NATCHITOCHES #9016 | 210 HIGHWAY 1 SOUTH | Natchitoches | LA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 657 | NON-OWNED SERVICE STATIONS | Oak Grove 11 | Louisiana Highway 17 | Oak Grove | LA |
| 658 | NON-OWNED SERVICE STATIONS | Oak Grove 2 | South Front Street | Oak Grove | LA |
| 659 | NON-OWNED SERVICE STATIONS | Opelousas 40 | US Highway 90 | Opelousas | LA |
| 660 | NON-OWNED SERVICE STATIONS | Ruston | East Georgia Avenue. & Monrovia Dr. | Ruston | LA |
| 661 | NON-OWNED SERVICE STATIONS | Tallulah 1 | 508 West Green Street | Tallulah | LA |
| 662 | NON-OWNED SERVICE STATIONS | Vidalia 1 | Carter Avenue & Hickory | Vidalia | LA |
| 663 | NON-OWNED SERVICE STATIONS | West Monroe | 702 Jonesboro Road | West Monroe | LA |
| 664 | NON-OWNED SERVICE STATIONS | Menominee 1 | 1915 Tenth Street | Menominee | MI |
| 665 | NON-OWNED SERVICE STATIONS | Ada 1 | Park & West Main State Highway 200 | Ada | MN |
| 666 | NON-OWNED SERVICE STATIONS | Austin 2 | 903 Fourth Avenue, NE | Austin | MN |
| 667 | NON-OWNED SERVICE STATIONS | Austin 1 | Highway 218 South | Austin | MN |
| 668 | NON-OWNED SERVICE STATIONS | Bemidji 1 | SW/C US Highway 2 and Irving Avenue | Bemidji | MN |
| 669 | NON-OWNED SERVICE STATIONS | Beroun 1 | I-35 & Co. Road 14 | Beroun | MN |
| 670 | NON-OWNED SERVICE STATIONS | Bloomington | 5001 W. 80th Street | Bloomington | MN |
| 671 | NON-OWNED SERVICE STATIONS | Bloomington 1 | 855 Lyndale Avenue South | Bloomington | MN |
| 672 | NON-OWNED SERVICE STATIONS | Blue Earth 2 | Highway 169 and 16 | Blue Earth | MN |
| 673 | NON-OWNED SERVICE STATIONS | Cass Lake | Main and Cass Streets | Cass Lake | MN |
| 674 | NON-OWNED SERVICE STATIONS | Chisholm | Highway 169 West | Chisholm | MN |
| 675 | NON-OWNED SERVICE STATIONS | Crookston 1 | Broadway & Third Streets | Crookston | MN |
| 676 | NON-OWNED SERVICE STATIONS | Detroit Lakes 1 | 319 East Frazee | Detroit Lakes | MN |
| 677 | NON-OWNED SERVICE STATIONS | Elk River 1 | Route 2, Highway 10 & 52 | Elk River | MN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 678 | NON-OWNED SERVICE STATIONS | Fairmont 1 | 415 S. State Street | Fairmont | MN |
| 679 | NON-OWNED SERVICE STATIONS | Grand Rapids 1 | 23 N.E. 4th Street | Grand Rapids | MN |
| 680 | NON-OWNED SERVICE STATIONS | Grand Rapids Bulk Station | Right-of-Way Site | Grand Rapids | MN |
| 681 | NON-OWNED SERVICE STATIONS | Grand Rapids 2 | SW/C 6th Street and Pokegama Avenue | Grand Rapids | MN |
| 682 | NON-OWNED SERVICE STATIONS | Hastings 1 | 1610 S. Vermillion | Hastings | MN |
| 683 | NON-OWNED SERVICE STATIONS | Hastings 1 | 1701 Excelsior Avenue, North | Hastings | MN |
| 684 | NON-OWNED SERVICE STATIONS | LaCrescent 1 | Rt 2, Highway 14, 16 & 61 | LaCrescent | MN |
| 685 | NON-OWNED SERVICE STATIONS | Little Falls | 220 Southeast First Street | Little Falls | MN |
| 686 | NON-OWNED SERVICE STATIONS | Mankato 2 | 328 Park Lane | Mankato | MN |
| 687 | NON-OWNED SERVICE STATIONS | Mankato 1 | 1301 Rhine Street | Mankato 1 | MN |
| 688 | NON-OWNED SERVICE STATIONS | Marshall 1 | East College Drive | Marshall | MN |
| 689 | NON-OWNED SERVICE STATIONS | McIntosh Bulk Station | Johnson Avenue & R.R. Tracks | McIntosh | MN |
| 690 | NON-OWNED SERVICE STATIONS | Melrose 1 | Interstate 94 and 2nd Avenue East | Melrose | MN |
| 691 | NON-OWNED SERVICE STATIONS | Minneapolis 1 | 3601 Chicago Avenue | Minneapolis | MN |
| 692 | NON-OWNED SERVICE STATIONS | Minneapolis | 4737 Minnehaha Avenue | Minneapolis | MN |
| 693 | NON-OWNED SERVICE STATIONS | Minneapolis Office | 6701 Penn Avenue South | Minneapolis | MN |
| 694 | NON-OWNED SERVICE STATIONS | Montevideo 1 | Canton and Chippewa | Montevideo | MN |
| 695 | NON-OWNED SERVICE STATIONS | Moorhead 1 | 21 South 8th Street | Moorhead | MN |
| 696 | NON-OWNED SERVICE STATIONS | Mountain Lake 1 | East High 60 | Mountain Lake | MN |
| 697 | NON-OWNED SERVICE STATIONS | New Brighton | 590 Eighth Avenue, N.W. | New Brighton | MN |
| 698 | NON-OWNED SERVICE STATIONS | New Elm Bulk Station | T.H. 15 and 68 South | New Elm | MN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 699 | NON-OWNED SERVICE STATIONS | New Ulm 1 | 2125 South Broadway | New Ulm | MN |
| 700 | NON-OWNED SERVICE STATIONS | Redwood Falls 1 | 713 S. Mill Street | Redwood Falls | MN |
| 701 | NON-OWNED SERVICE STATIONS | Rochester 1 | 604 - 4th Street, S.E. | Rochester | MN |
| 702 | NON-OWNED SERVICE STATIONS | Rochester 2 | I-90 and Co. Rds 6 & 8 | Rochester | MN |
| 703 | NON-OWNED SERVICE STATIONS | Spring Park 1 | NE/C Shouline Blvd and Seton Channel | Spring Park | MN |
| 704 | NON-OWNED SERVICE STATIONS | Springfield 1 | Highway 14 / 603 West Rock Street | Springfield | MN |
| 705 | NON-OWNED SERVICE STATIONS | St. Paul Office Space | 2639 University Avenue | St. Paul | MN |
| 706 | NON-OWNED SERVICE STATIONS | Staples 1 | 201 N.E. Second Street | Staples | MN |
| 707 | NON-OWNED SERVICE STATIONS | Walker | Minnesota Avenue and Sixth Street | Walker | MN |
| 708 | NON-OWNED SERVICE STATIONS | West St. Paul 1 | 1422 South Robert | West St Paul | MN |
| 709 | NON-OWNED SERVICE STATIONS | Willmar 1 | 716 South First Street | Willmar | MN |
| 710 | NON-OWNED SERVICE STATIONS | Anderson 1 | US Highway 71 | Anderson | MO |
| 711 | NON-OWNED SERVICE STATIONS | Boonville 1 | 1105 Main Street | Boonville | MO |
| 712 | NON-OWNED SERVICE STATIONS | Brookfield 1 | Main & Canal Streets | Brookfield | MO |
| 713 | NON-OWNED SERVICE STATIONS | Carrollton | 106 E. Highways 64 & 65 | Carrollton | MO |
| 714 | NON-OWNED SERVICE STATIONS | Carthage 1 | 504 West Central | Carthage | MO |
| 715 | NON-OWNED SERVICE STATIONS | Chillicothe | 301 S. Washington | Chillicothe | MO |
| 716 | NON-OWNED SERVICE STATIONS | Claycomo 1 | US Highway 69 East, Rt. 2, Box 336 | Claycomo | MO |
| 717 | NON-OWNED SERVICE STATIONS | Clinton | 922 N. Second | Clinton | MO |
| 718 | NON-OWNED SERVICE STATIONS | Columbia 1 | 103 North Providence | Columbia | MO |
| 719 | NON-OWNED SERVICE STATIONS | Farmington 1 | US Highway 67 & St. Genevieve Avenue | Farmington | MO |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 720 | NON-OWNED SERVICE STATIONS | Fulton | 4 Highway 54 South | Fulton | MO |
| 721 | NON-OWNED SERVICE STATIONS | Hazelwood 14 | 47 Village Square Shopping Center | Hazelwood | MO |
| 722 | NON-OWNED SERVICE STATIONS | Holt 1 | NE/C I-35 & St. Rd. Permitted Person | Holt | MO |
| 723 | NON-OWNED SERVICE STATIONS | Independence 1 | 9300 East 24 Highway | Independence | MO |
| 724 | NON-OWNED SERVICE STATIONS | Jefferson City 1 | 800 Missouri Blvd | Jefferson City | MO |
| 725 | NON-OWNED SERVICE STATIONS | Joplin 1 | 1201 S. Rangeline | Joplin | MO |
| 726 | NON-OWNED SERVICE STATIONS | Joplin 4 | 2209 West Seventh Street | Joplin | MO |
| 727 | NON-OWNED SERVICE STATIONS | Joplin 3 | 2637 East 7th Street | Joplin | MO |
| 728 | NON-OWNED SERVICE STATIONS | Joplin 2 | 901 Illinois Street | Joplin | MO |
| 729 | NON-OWNED SERVICE STATIONS | Joplin Pipeline Terminal | ON US Highway 71 | Joplin | MO |
| 730 | NON-OWNED SERVICE STATIONS | Kansas City 1 | 8505 Woodland | Kansas City | MO |
| 731 | NON-OWNED SERVICE STATIONS | Mexico 1 | 1525 East Liberty Street | Mexico | MO |
| 732 | NON-OWNED SERVICE STATIONS | Moberly 1 | 700 Concannon Street | Moberly | MO |
| 733 | NON-OWNED SERVICE STATIONS | Monnett 1 | 13th & Cleveland | Monnett | MO |
| 734 | NON-OWNED SERVICE STATIONS | Monroe City | US Highway 36 | Monroe City | MO |
| 735 | NON-OWNED SERVICE STATIONS | Neosho 1 | 520 S. Neosho Road | Neosho | MO |
| 736 | NON-OWNED SERVICE STATIONS | Portageville 1 | U.S. Highway 61 | Portageville | MO |
| 737 | NON-OWNED SERVICE STATIONS | Raytown 1 | 10810 E. Highway 350 | Raytown | MO |
| 738 | NON-OWNED SERVICE STATIONS | Rolla 1 | 406 East Highway 72 | Rolla | MO |
| 739 | NON-OWNED SERVICE STATIONS | Sedalia | 2801 West Broadway | Sedalia | MO |
| 740 | NON-OWNED SERVICE STATIONS | Springfield 3 | 902 South Glenstone | Springfield | MO |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----------------------------------|---------------|-------------------|----------------|-------|
| 741 | NON-OWNED SERVICE STATIONS | Springfield 1 | 950 South Grant Street | Springfield | MO |
| 742 | NON-OWNED SERVICE STATIONS | Union 1 | 310 West Highway 50 | Union | MO |
| 743 | NON-OWNED SERVICE STATIONS | Warrensburg 1 | 215 East Young Street | Warrensburg | MO |
| 744 | NON-OWNED SERVICE STATIONS | Webb City | 1309 S. Madison street | Webb City | MO |
| 745 | NON-OWNED SERVICE STATIONS | Wentzville | 771 West Pearce | Wentzville | MO |
| 746 | NON-OWNED SERVICE STATIONS | Biloxi 10 | 79 B West Beach | Biloxi | MS |
| 747 | NON-OWNED SERVICE STATIONS | Corinth 1 | 320 Highway 72 East | Corinth | MS |
| 748 | NON-OWNED SERVICE STATIONS | Gulfport 22 | 1247 Pass Road | Gulfport | MS |
| 749 | NON-OWNED SERVICE STATIONS | Gulfport 26 | 2301 25th Avenue | Gulfport | MS |
| 750 | NON-OWNED SERVICE STATIONS | Gulfport 49 | 301 Pass Road | Gulfport | MS |
| 751 | NON-OWNED SERVICE STATIONS | Gulfport 5 | NW/C Broad & West Railroad Street | Gulfport | MS |
| 752 | NON-OWNED SERVICE STATIONS | Hattiesburg 27 | 901 Broadway Drive | Hattiesburg | MS |
| 753 | NON-OWNED SERVICE STATIONS | Indianola 149 | 517 Highway 82 East | Indianola | MS |
| 754 | NON-OWNED SERVICE STATIONS | Jackson 44 | 1250 Flowood Drive | Jackson | MS |
| 755 | NON-OWNED SERVICE STATIONS | Jackson 4 | 1629 Highway 80E | Jackson | MS |
| 756 | NON-OWNED SERVICE STATIONS | Louisville 39 | College & Church Streets | Louisville | MS |
| 757 | NON-OWNED SERVICE STATIONS | Meridian 29 | 325 Highway 11 | Meridian | MS |
| 758 | NON-OWNED SERVICE STATIONS | Meridian 34 | 4000 - 8th Street | Meridian | MS |
| 759 | NON-OWNED SERVICE STATIONS | Moss Point 2155 | 4130 Main Street | Moss Point | MS |
| 760 | NON-OWNED SERVICE STATIONS | Ocean Springs 5001 | 1120 Highway 90 | Ocean Springs | MS |
| 761 | NON-OWNED SERVICE STATIONS | Pascagoula 8 | 1002 Telephone Road | Pascagoula | MS |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 762 | NON-OWNED SERVICE STATIONS | Pascagoula | 3603 Chicot Road | Pascagoula | MS |
| 763 | NON-OWNED SERVICE STATIONS | Devils Lake 1 | 106 Fifth Street | Devils Lake | ND |
| 764 | NON-OWNED SERVICE STATIONS | Devils Lake 2 | 503 Fourth Street | Devils Lake | ND |
| 765 | NON-OWNED SERVICE STATIONS | Fargo 3 | 1213 Fourth Avenue North | Fargo | ND |
| 766 | NON-OWNED SERVICE STATIONS | FARGO | 401 UNIVERSITY | Fargo | ND |
| 767 | NON-OWNED SERVICE STATIONS | Fargo 2 | 901 Northern Pacific Avenue | Fargo | ND |
| 768 | NON-OWNED SERVICE STATIONS | Grand Forks 1 | 410 N. Washington | Grand Forks | ND |
| 769 | NON-OWNED SERVICE STATIONS | Hillsboro 1 | I-29 & County Road 11 | Hillsboro | ND |
| 770 | NON-OWNED SERVICE STATIONS | Jamestown 1 | 920 4th Avenue, SE | Jamestown | ND |
| 771 | NON-OWNED SERVICE STATIONS | Oriska 1 | NW/C I-94 & SH 32 | Oriska | ND |
| 772 | NON-OWNED SERVICE STATIONS | Wahpeton 1 | 11th and Dakota Avenue, S.W. | Wahpeton | ND |
| 773 | NON-OWNED SERVICE STATIONS | West Fargo 1 | 239 West Main Avenue | West Fargo | ND |
| 774 | NON-OWNED SERVICE STATIONS | Beatrice 1 | 900 East Court | Beatrice | NE |
| 775 | NON-OWNED SERVICE STATIONS | Bellevue #1 | 1002 Galvin Road | Bellevue | NE |
| 776 | NON-OWNED SERVICE STATIONS | Fremont 1 | 1105 South Broad Street | Fremont | NE |
| 777 | NON-OWNED SERVICE STATIONS | Fremont 2 | SE/C 23rd & Nye Avenue | Fremont | NE |
| 778 | NON-OWNED SERVICE STATIONS | Hastings 1 | 1213 West "J" Street | Hastings | NE |
| 779 | NON-OWNED SERVICE STATIONS | Lincoln 3 | 1060 N. 27 Street | Lincoln | NE |
| 780 | NON-OWNED SERVICE STATIONS | Lincoln 4 | 3001 North 70th Street | Lincoln | NE |
| 781 | NON-OWNED SERVICE STATIONS | O'Neill 1 | 1002 East Douglas | O'Neill | NE |
| 782 | NON-OWNED SERVICE STATIONS | Omaha Bulk Station | 1126 North Eleventh Street | Omaha | NE |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 783 | NON-OWNED SERVICE STATIONS | Omaha 1 | 13th and Missouri Avenue 4546 S. 13th | Omaha | NE |
| 784 | NON-OWNED SERVICE STATIONS | Omaha 4 | 2102 N. 24th Street | Omaha | NE |
| 785 | NON-OWNED SERVICE STATIONS | Omaha 11 | 2920 South 120th Street | Omaha | NE |
| 786 | NON-OWNED SERVICE STATIONS | Omaha 2 | 3101 Florence Blvd. | Omaha | NE |
| 787 | NON-OWNED SERVICE STATIONS | Omaha 6 | 3952 "Q" Street | Omaha | NE |
| 788 | NON-OWNED SERVICE STATIONS | Omaha 5 | 421 N. 60th Street | Omaha | NE |
| 789 | NON-OWNED SERVICE STATIONS | Omaha 16 | 4621 N. 24th Street | Omaha | NE |
| 790 | NON-OWNED SERVICE STATIONS | Omaha 3 | 5327 Center Street | Omaha | NE |
| 791 | NON-OWNED SERVICE STATIONS | Omaha 8 | 8724 N. 30th Street | Omaha | NE |
| 792 | NON-OWNED SERVICE STATIONS | So. Sioux City NE | | Sioux City | NE |
| 793 | NON-OWNED SERVICE STATIONS | South Sioux City 2 | 2816 Dakota Avenue | South Sioux City | NE |
| 794 | NON-OWNED SERVICE STATIONS | South Sioux City 1 | SW/C Dakota Avenue & 9th Street | South Sioux City | NE |
| 795 | NON-OWNED SERVICE STATIONS | Albuquerque 4 | 501 Yale Blvd, SW | Albuquerque | NM |
| 796 | NON-OWNED SERVICE STATIONS | Albuquerque 3 | 701 Isleta Boulevard, S.W. | Albuquerque | NM |
| 797 | NON-OWNED SERVICE STATIONS | Albuquerque 2 | NE/C Louisiana and Zuni Road | Albuquerque | NM |
| 798 | NON-OWNED SERVICE STATIONS | Albuquerque #1 | SW/C Central and Cypress | Albuquerque | NM |
| 799 | NON-OWNED SERVICE STATIONS | Carlsbad 1 | 422 East Green Street | Carlsbad | NM |
| 800 | NON-OWNED SERVICE STATIONS | Grants 1 | NE/C Roosevelt Ave & Lobo Canyon rd | Grants | NM |
| 801 | NON-OWNED SERVICE STATIONS | Tucumcari | 1505 E. Tucumcari | Tucumcari | NM |
| 802 | NON-OWNED SERVICE STATIONS | Tucumcari 2 | 716 West Tucumcari Blvd. | Tucumcari | NM |
| 803 | NON-OWNED SERVICE STATIONS | Former kerr-mcgee manufacturing facility | 604 findlay street | Fostoria | OH |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 804 | NON-OWNED SERVICE STATIONS | Ada 1 | 14th Street & Mississippi | Ada | OK |
| 805 | NON-OWNED SERVICE STATIONS | Ada 2 | 630 N. Broadway | Ada | OK |
| 806 | NON-OWNED SERVICE STATIONS | Ada 3 | 914 West Main Street | Ada | OK |
| 807 | NON-OWNED SERVICE STATIONS | Ada 4 | Cradduck Road and Highway 99 | Ada | OK |
| 808 | NON-OWNED SERVICE STATIONS | Allen 1 | Bulk and Service Station & Tourist Court | Allen | OK |
| 809 | NON-OWNED SERVICE STATIONS | Altus 1 | 721 South Main Street | Altus | OK |
| 810 | NON-OWNED SERVICE STATIONS | Alva | 923 7th Street | Alva | OK |
| 811 | NON-OWNED SERVICE STATIONS | Anadarko 1 | 602 West Kentucky | Anadarko | OK |
| 812 | NON-OWNED SERVICE STATIONS | Anadarko 2 | SW/C South Mission & Kentucky | Anadarko | OK |
| 813 | NON-OWNED SERVICE STATIONS | Antlers 1 | U.S. Highway 271 | Antlers | OK |
| 814 | NON-OWNED SERVICE STATIONS | Antlers 2 | | Antlers | OK |
| 815 | NON-OWNED SERVICE STATIONS | Ardmore 1 | 203 - 14th Street, N.E. | Ardmore | OK |
| 816 | NON-OWNED SERVICE STATIONS | Ardmore 2 | SW/C US Highway 70 & I-35 | Ardmore | OK |
| 817 | NON-OWNED SERVICE STATIONS | Atoka 1 | 206 N. Mississippi Avenue | Atoka | OK |
| 818 | NON-OWNED SERVICE STATIONS | Atoka 2 | Highway 69 | Atoka | OK |
| 819 | NON-OWNED SERVICE STATIONS | Barnsdall 1 | 412 West Spruce | Barnsdall | OK |
| 820 | NON-OWNED SERVICE STATIONS | Bartlesville 3 | 4004 Nowata Road | Bartlesville | OK |
| 821 | NON-OWNED SERVICE STATIONS | Bartlesville 1 | 901 E. Frank Phillips | Bartlesville | OK |
| 822 | NON-OWNED SERVICE STATIONS | Bethany 2 | 7104 N.W. 23rd | Bethany | OK |
| 823 | NON-OWNED SERVICE STATIONS | Blackwell 1 | 1502 South Main Street | Blackwell | OK |
| 824 | NON-OWNED SERVICE STATIONS | Blackwell 2 | 728 North Main Street | Blackwell | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 825 | NON-OWNED SERVICE STATIONS | Braman 1 | NW/C I-35 & US 77 | Braman | OK |
| 826 | NON-OWNED SERVICE STATIONS | Britton | 301 East Britton Avenue | Britton | OK |
| 827 | NON-OWNED SERVICE STATIONS | Broken Bow 1 | West First and Park Drive | Broken Bow | OK |
| 828 | NON-OWNED SERVICE STATIONS | Cache 1 | 507 H Street | Cache | OK |
| 829 | NON-OWNED SERVICE STATIONS | Calvin 1 | U.S. 75 and 270 | Calvin | OK |
| 830 | NON-OWNED SERVICE STATIONS | Chandler Bulk Station | 6th and Manvel Streets | Chandler | OK |
| 831 | NON-OWNED SERVICE STATIONS | Chandler 1 | Cleveland Street and US Highway 66 | Chandler | OK |
| 832 | NON-OWNED SERVICE STATIONS | Checotah 1 | P.O. Box 28 | Checotah | OK |
| 833 | NON-OWNED SERVICE STATIONS | Cherokee 1 | Highway 64 and South Ohio | Cherokee | OK |
| 834 | NON-OWNED SERVICE STATIONS | Chickasha 2 | 1502 South 4th Street | Chickasha | OK |
| 835 | NON-OWNED SERVICE STATIONS | Choctaw 1 | Muzzy Street | Choctaw | OK |
| 836 | NON-OWNED SERVICE STATIONS | Cleveland 1 | C Street and Caddo | Cleveland | OK |
| 837 | NON-OWNED SERVICE STATIONS | Clinton 1 | 2000 Gary Freeway | Clinton | OK |
| 838 | NON-OWNED SERVICE STATIONS | Clinton 2 | NE/C 4th and Terrace | Clinton | OK |
| 839 | NON-OWNED SERVICE STATIONS | Cordell 1 | 1110 North Church Street | Cordell | OK |
| 840 | NON-OWNED SERVICE STATIONS | Cordell 2 | 1126 East Main Street | Cordell | OK |
| 841 | NON-OWNED SERVICE STATIONS | Cushing 1 | 1624 or 1348 East Main Street | Cushing | OK |
| 842 | NON-OWNED SERVICE STATIONS | Cushing 2 | 905 North Little | Cushing | OK |
| 843 | NON-OWNED SERVICE STATIONS | Cushing 3 | NW/C East Main & Linwood | Cushing | OK |
| 844 | NON-OWNED SERVICE STATIONS | Davis 1 | R.F.D. 1 | Davis | OK |
| 845 | NON-OWNED SERVICE STATIONS | Del City | 1801 S. Sunnylane | Del City | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 846 | NON-OWNED SERVICE STATIONS | Dill City | SE/4 of Sectio 31, T 10 N, R 18 W, Washita County | Dill City | OK |
| 847 | NON-OWNED SERVICE STATIONS | Drumright 2 | 501 North Harley Street | Drumright | OK |
| 848 | NON-OWNED SERVICE STATIONS | Drumright Bulk Station | Wheeler Lease | Drumright | OK |
| 849 | NON-OWNED SERVICE STATIONS | Duncan 3 | 16th and Pine | Duncan | OK |
| 850 | NON-OWNED SERVICE STATIONS | Duncan 1 | 505 S. 81st Bypass | Duncan | OK |
| 851 | NON-OWNED SERVICE STATIONS | Duncan 2 | 706 East Highway 7 | Duncan | OK |
| 852 | NON-OWNED SERVICE STATIONS | Edmond 2 | 1422 S. Broadway | Edmond | OK |
| 853 | NON-OWNED SERVICE STATIONS | Edmond 1 | 2216 West Edmond Road | Edmond | OK |
| 854 | NON-OWNED SERVICE STATIONS | El Reno 2 | 1519 Sunset Drive | El Reno | OK |
| 855 | NON-OWNED SERVICE STATIONS | Elk City 2 | 2124 West Third Street | Elk City | OK |
| 856 | NON-OWNED SERVICE STATIONS | Elk City | I-40 & County Road | Elk City | OK |
| 857 | NON-OWNED SERVICE STATIONS | Elk City 1 | NE/C First & Van Buren | Elk City | OK |
| 858 | NON-OWNED SERVICE STATIONS | Enid 3 | 129 West Elm Street | Enid | OK |
| 859 | NON-OWNED SERVICE STATIONS | Enid 5 | 1609 South Van Buren | Enid | OK |
| 860 | NON-OWNED SERVICE STATIONS | Enid 4 | 231 West Main Street | Enid | OK |
| 861 | NON-OWNED SERVICE STATIONS | Enid 1 | 308 West Broadway | Enid | OK |
| 862 | NON-OWNED SERVICE STATIONS | Enid 6 | 424 N. Van Buren | Enid | OK |
| 863 | NON-OWNED SERVICE STATIONS | Enid 7 | North 4th & Walnut | Enid | OK |
| 864 | NON-OWNED SERVICE STATIONS | Erick 1 | NE/C I-40 & SH 30 | Erick | OK |
| 865 | NON-OWNED SERVICE STATIONS | Eufaula 1 | 302 North Main Street | Eufaula | OK |
| 866 | NON-OWNED SERVICE STATIONS | Eufaula 2 | State Highway 9 and US 69 Service Road | Eufaula | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 867 | NON-OWNED SERVICE STATIONS | Fairland | NW/C Connor and Main Street | Fairland | OK |
| 868 | NON-OWNED SERVICE STATIONS | Fairview | Main and Ash Streets | Fairview | OK |
| 869 | NON-OWNED SERVICE STATIONS | Frederick 1 | 1200 S. Main Street | Frederick | OK |
| 870 | NON-OWNED SERVICE STATIONS | Gore 1 | NW/C 8th and Main Streets | Gore | OK |
| 871 | NON-OWNED SERVICE STATIONS | Guthrie 1 | 308 S. Division Street | Guthrie | OK |
| 872 | NON-OWNED SERVICE STATIONS | Guthrie | 617-618 Division Street | Guthrie | OK |
| 873 | NON-OWNED SERVICE STATIONS | Hennessey | I-81 & I-51 | Hennessey | OK |
| 874 | NON-OWNED SERVICE STATIONS | Henryetta | 611 E. Main street | Henryetta | OK |
| 875 | NON-OWNED SERVICE STATIONS | Henryetta 2 | SW/C East Main and F Streets | Henryetta | OK |
| 876 | NON-OWNED SERVICE STATIONS | Henryetta 1 | US Highway 62 East | Henryetta | OK |
| 877 | NON-OWNED SERVICE STATIONS | Holdenville 1 | 7th Avenue and Hinckley Street | Holdenville | OK |
| 878 | NON-OWNED SERVICE STATIONS | Hugo 1 | 601 W. Jackson | Hugo | OK |
| 879 | NON-OWNED SERVICE STATIONS | Idabel 1 | 110 East Washington | Idabel | OK |
| 880 | NON-OWNED SERVICE STATIONS | Kansas | State Highway 33 East | Kansas | OK |
| 881 | NON-OWNED SERVICE STATIONS | Keota 1 | 2 miles East of Keota on State Highway 9 | Keota | OK |
| 882 | NON-OWNED SERVICE STATIONS | Konawa 1 | 111 East Main | Konawa | OK |
| 883 | NON-OWNED SERVICE STATIONS | Lawton 4 | 2401 Cache Road | Lawton | OK |
| 884 | NON-OWNED SERVICE STATIONS | Lawton 6 | 4135 West Gore | Lawton | OK |
| 885 | NON-OWNED SERVICE STATIONS | Lexington 1 | Highway 77 | Lexington | OK |
| 886 | NON-OWNED SERVICE STATIONS | Lindsay 1 | 508 West Cherokee | Lindsay | OK |
| 887 | NON-OWNED SERVICE STATIONS | Madill | 511 S. 1st street | Madill | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 888 | NON-OWNED SERVICE STATIONS | Madill 1 | 511 South First | Madill | OK |
| 889 | NON-OWNED SERVICE STATIONS | Maysville 1 | Sixth and Ash Streets | Maysville | OK |
| 890 | NON-OWNED SERVICE STATIONS | McAlester 2 | 1101 E. Carl Albert | McAlester | OK |
| 891 | NON-OWNED SERVICE STATIONS | McAlester | 1101 E. Carl Albert pkwy | McAlester | OK |
| 892 | NON-OWNED SERVICE STATIONS | McAlester | Ashland & Main | McAlester | OK |
| 893 | NON-OWNED SERVICE STATIONS | Midwest City | 1100 N. Douglas Blvd. | Midwest City | OK |
| 894 | NON-OWNED SERVICE STATIONS | Midwest City 2 | 1100 North Midwest Blvd | Midwest City | OK |
| 895 | NON-OWNED SERVICE STATIONS | Midwest City 4 | 2725 South Midwest Blvd | Midwest City | OK |
| 896 | NON-OWNED SERVICE STATIONS | Midwest City | 8917 SE 29th street | Midwest City | OK |
| 897 | NON-OWNED SERVICE STATIONS | Midwest City | N.E. 10th  street & N. Midwest Blvd. | Midwest City | OK |
| 898 | NON-OWNED SERVICE STATIONS | Midwest City 1 | NW/C NE 10 and Westminster | Midwest City | OK |
| 899 | NON-OWNED SERVICE STATIONS | Midwest City 5 | NW/C SE 29 & Post Road | Midwest City | OK |
| 900 | NON-OWNED SERVICE STATIONS | Midwest City | SE 29th  street & Sooner road | Midwest City | OK |
| 901 | NON-OWNED SERVICE STATIONS | Moore | 600 SW 4th street | Moore | OK |
| 902 | NON-OWNED SERVICE STATIONS | Moore 2 | 714 N.W. 27th | Moore | OK |
| 903 | NON-OWNED SERVICE STATIONS | Moore | 714 NW 27th street | Moore | OK |
| 904 | NON-OWNED SERVICE STATIONS | Moore | 800 N.E. 12th street | Moore | OK |
| 905 | NON-OWNED SERVICE STATIONS | Moore 6 | NE/C SE 19th & Eastern | Moore | OK |
| 906 | NON-OWNED SERVICE STATIONS | Moore 1 | NW/C SE 119 & Sunnylane | Moore | OK |
| 907 | NON-OWNED SERVICE STATIONS | Moore 3 | SE/C 119th and Bryant | Moore | OK |
| 908 | NON-OWNED SERVICE STATIONS | Moore 4 | SE/C SE 164th & Bryant Avenue | Moore | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 909 | NON-OWNED SERVICE STATIONS | Moore 4 | SW 4th and Telephone Road | Moore | OK |
| 910 | NON-OWNED SERVICE STATIONS | Muskogee | 101 W. Southside Blvd. | Muskogee | OK |
| 911 | NON-OWNED SERVICE STATIONS | Muskogee | 111 S. 32nd street | Muskogee | OK |
| 912 | NON-OWNED SERVICE STATIONS | Muskogee 4 | 1202 West Okmulgee | Muskogee | OK |
| 913 | NON-OWNED SERVICE STATIONS | Muskogee | 2340 Gibson street | Muskogee | OK |
| 914 | NON-OWNED SERVICE STATIONS | Muskogee | 2404 E. Chandler road | Muskogee | OK |
| 915 | NON-OWNED SERVICE STATIONS | Muskogee 1 | 3704 West Okmulgee | Muskogee | OK |
| 916 | NON-OWNED SERVICE STATIONS | Muskogee | 737 Callahan street | Muskogee | OK |
| 917 | NON-OWNED SERVICE STATIONS | Muskogee 8 | 838 North Main Street | Muskogee | OK |
| 918 | NON-OWNED SERVICE STATIONS | Muskogee 9 | SW/C Shawnee and North 17th Street | Muskogee | OK |
| 919 | NON-OWNED SERVICE STATIONS | Mustang 2 | NE/C S.W. 74th Street and Czech Hall Road | Mustang | OK |
| 920 | NON-OWNED SERVICE STATIONS | Mustang 1 | NW/C SW 44th and Sara Road | Mustang | OK |
| 921 | NON-OWNED SERVICE STATIONS | Mustang 4 | SE/C Sw 29th St. & Mustang Road | Mustang | OK |
| 922 | NON-OWNED SERVICE STATIONS | Mustang 3 | SW/C SW 59th & Mustang Road | Mustang | OK |
| 923 | NON-OWNED SERVICE STATIONS | New Perryman | | New Perryman | OK |
| 924 | NON-OWNED SERVICE STATIONS | Newcastle 1 | Tuttle & Newcastle 1 | Newcastle | OK |
| 925 | NON-OWNED SERVICE STATIONS | Noble 1 | US Highway 77 | Noble | OK |
| 926 | NON-OWNED SERVICE STATIONS | Norman | 1445 W. Lindsey street | Norman | OK |
| 927 | NON-OWNED SERVICE STATIONS | Norman 2 | 2100 W. Main | Norman | OK |
| 928 | NON-OWNED SERVICE STATIONS | Norman | 2316 E. Lindsey street | Norman | OK |
| 929 | NON-OWNED SERVICE STATIONS | Norman 1 | 2316 West Lindsey | Norman | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 930 | NON-OWNED SERVICE STATIONS | Norman | 316 W. Robinson street | Norman | OK |
| 931 | NON-OWNED SERVICE STATIONS | Norman 10 | Highway 77 SE | Norman | OK |
| 932 | NON-OWNED SERVICE STATIONS | Norman 6 | NE/C SW 194th and Santa Fe Avenue | Norman | OK |
| 933 | NON-OWNED SERVICE STATIONS | Norman 4 | NW/C New State Highway 9 & Douglas | Norman | OK |
| 934 | NON-OWNED SERVICE STATIONS | Norman 3 | Robinson Street & Berry Street | Norman | OK |
| 935 | NON-OWNED SERVICE STATIONS | Norman 5 | SW/C SE 19th and Midwest Blvd | Norman | OK |
| 936 | NON-OWNED SERVICE STATIONS | Nowata 1 | 216 South Ash | Nowata | OK |
| 937 | NON-OWNED SERVICE STATIONS | Okemah 1 | 402 North Fifth Street | Okemah | OK |
| 938 | NON-OWNED SERVICE STATIONS | Okemah 2 | I-40 & State 27 Interchange | Okemah | OK |
| 939 | NON-OWNED SERVICE STATIONS | Oklahoma City | SE/C 17th and N MacArthur | Oklahoma | OK |
| 940 | NON-OWNED SERVICE STATIONS | Oklahoma City 42 | 100 N.E. 13th Street | Oklahoma City | OK |
| 941 | NON-OWNED SERVICE STATIONS | Oklahoma City 99 | 101 NW 63rd | Oklahoma City | OK |
| 942 | NON-OWNED SERVICE STATIONS | Oklahoma City 39 | 101 South Walker | Oklahoma City | OK |
| 943 | NON-OWNED SERVICE STATIONS | Oklahoma City 1 | 1023 West Main Street | Oklahoma City | OK |
| 944 | NON-OWNED SERVICE STATIONS | Oklahoma City 29 | 1030 North Western | Oklahoma City | OK |
| 945 | NON-OWNED SERVICE STATIONS | Southern Region Office | 105 S.E. 46th Street | Oklahoma City | OK |
| 946 | NON-OWNED SERVICE STATIONS | Oklahoma City | 10830 N. May avenue | Oklahoma City | OK |
| 947 | NON-OWNED SERVICE STATIONS | Oklahoma City 27 | 1100 S.W. 29th Street | Oklahoma City | OK |
| 948 | NON-OWNED SERVICE STATIONS | Oklahoma City 117 | 1207 Sovereign Row, Building A #1207B | Oklahoma City | OK |
| 949 | NON-OWNED SERVICE STATIONS | Oklahoma City | 122nd street & MacArthur blvd | Oklahoma City | OK |
| 950 | NON-OWNED SERVICE STATIONS | Oklahoma City | 122nd street & Rockwell avenue | Oklahoma City | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 951 | NON-OWNED SERVICE STATIONS | Oklahoma City 113 | 12300 N. MacArthur | Oklahoma City | OK |
| 952 | NON-OWNED SERVICE STATIONS | Oklahoma City 12 | 1301 South Walker | Oklahoma City | OK |
| 953 | NON-OWNED SERVICE STATIONS | Oklahoma City 35 | 1306 East Reno | Oklahoma City | OK |
| 954 | NON-OWNED SERVICE STATIONS | Oklahoma City 60 | 1601 South May Avenue (near 15th) | Oklahoma City | OK |
| 955 | NON-OWNED SERVICE STATIONS | Oklahoma City 32 | 1724 N.W. 16th Street | Oklahoma City | OK |
| 956 | NON-OWNED SERVICE STATIONS | Oklahoma City 75 | 1920 N.E. Eight Street | Oklahoma City | OK |
| 957 | NON-OWNED SERVICE STATIONS | Oklahoma City 7A | 201 South May Avenue | Oklahoma City | OK |
| 958 | NON-OWNED SERVICE STATIONS | Oklahoma City | 201 W. Britton road | Oklahoma City | OK |
| 959 | NON-OWNED SERVICE STATIONS | Oklahoma City 57 | 201 West Britton Road | Oklahoma City | OK |
| 960 | NON-OWNED SERVICE STATIONS | Oklahoma City 36 | 2040 N.W. 23rd Street | Oklahoma City | OK |
| 961 | NON-OWNED SERVICE STATIONS | Oklahoma City Warehouse | 220 N.W. Robert S. Kerr Avenue | Oklahoma City | OK |
| 962 | NON-OWNED SERVICE STATIONS | Oklahoma City 21 | 2321 N. Portland | Oklahoma City | OK |
| 963 | NON-OWNED SERVICE STATIONS | Oklahoma City 8 | 23rd & Eastern | Oklahoma City | OK |
| 964 | NON-OWNED SERVICE STATIONS | Oklahoma City | 23rd street & Portland avenue | Oklahoma City | OK |
| 965 | NON-OWNED SERVICE STATIONS | Oklahoma City | 23rd street & Rockwell avenue | Oklahoma City | OK |
| 966 | NON-OWNED SERVICE STATIONS | Oklahoma City 2 | 2410 S.W. 29th Street | Oklahoma City | OK |
| 967 | NON-OWNED SERVICE STATIONS | OKLAHOMA CITY | 2412 SW 29TH STREET (29TH AND AGNEW) | Oklahoma City | OK |
| 968 | NON-OWNED SERVICE STATIONS | Oklahoma City 31 | 2419 North Classen | Oklahoma City | OK |
| 969 | NON-OWNED SERVICE STATIONS | Oklahoma City | 2421 SW 29th street | Oklahoma City | OK |
| 970 | NON-OWNED SERVICE STATIONS | Oklahoma City 3 | 2523 Classen Blvd | Oklahoma City | OK |
| 971 | NON-OWNED SERVICE STATIONS | Oklahoma City | 2523 Classen Blvd. | Oklahoma City | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 972 | NON-OWNED SERVICE STATIONS | Oklahoma City 70 | 2726 S. Western | Oklahoma City | OK |
| 973 | NON-OWNED SERVICE STATIONS | Oklahoma City 58 | 2819 South Shields | Oklahoma City | OK |
| 974 | NON-OWNED SERVICE STATIONS | Oklahoma City 54 | 2840 S.W. 59th | Oklahoma City | OK |
| 975 | NON-OWNED SERVICE STATIONS | Oklahoma City 38 | 2900 N.W. 16th | Oklahoma City | OK |
| 976 | NON-OWNED SERVICE STATIONS | Oklahoma City 12 | 2900 Northwest 23rd Street | Oklahoma City | OK |
| 977 | NON-OWNED SERVICE STATIONS | midwest city #3 | 2917 south douglas avenue | Oklahoma City | OK |
| 978 | NON-OWNED SERVICE STATIONS | Oklahoma City 83 | 2922 N.  Lincoln | Oklahoma City | OK |
| 979 | NON-OWNED SERVICE STATIONS | Oklahoma City 34 | 3020 N.W. 23rd | Oklahoma City | OK |
| 980 | NON-OWNED SERVICE STATIONS | Oklahoma City 40 | 318 North Walnut | Oklahoma City | OK |
| 981 | NON-OWNED SERVICE STATIONS | Oklahoma City | 3601 and 3603 NW 50th street | Oklahoma City | OK |
| 982 | NON-OWNED SERVICE STATIONS | Oklahoma City | 36th street & May avenue | Oklahoma City | OK |
| 983 | NON-OWNED SERVICE STATIONS | Oklahoma City | 3701 S. Pennsylvania avenue (near 36th street) | Oklahoma City | OK |
| 984 | NON-OWNED SERVICE STATIONS | Oklahoma City 15 | 3701 South Pennsylvania | Oklahoma City | OK |
| 985 | NON-OWNED SERVICE STATIONS | Oklahoma City | 4015 N. Pennsylvania avenue | Oklahoma City | OK |
| 986 | NON-OWNED SERVICE STATIONS | Oklahoma City 90 | 4015 North Pennsylvania | Oklahoma City | OK |
| 987 | NON-OWNED SERVICE STATIONS | Oklahoma City 11 | 402 South Robinson Street | Oklahoma City | OK |
| 988 | NON-OWNED SERVICE STATIONS | Oklahoma City 43 | 4200 Newcastle Road | Oklahoma City | OK |
| 989 | NON-OWNED SERVICE STATIONS | Oklahoma City 52 | 4200 South May Avenue (near may and 41st) | Oklahoma City | OK |
| 990 | NON-OWNED SERVICE STATIONS | Oklahoma City 26 | 429 S.E. 29th Street | Oklahoma City | OK |
| 991 | NON-OWNED SERVICE STATIONS | Oklahoma City 51 | 4430 West Reno | Oklahoma City | OK |
| 992 | NON-OWNED SERVICE STATIONS | Oklahoma City 67 | 4432 N.W. 63rd | Oklahoma City | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 993 | NON-OWNED SERVICE STATIONS | Oklahoma City | 4th street & Harrison avenue | Oklahoma City | OK |
| 994 | NON-OWNED SERVICE STATIONS | Oklahoma City | 5101 N. Western avenue | Oklahoma City | OK |
| 995 | NON-OWNED SERVICE STATIONS | Oklahoma City 30 | 5101 N. Western Avenue | Oklahoma City | OK |
| 996 | NON-OWNED SERVICE STATIONS | Oklahoma City 68 | 5241 NW 10th Street | Oklahoma City | OK |
| 997 | NON-OWNED SERVICE STATIONS | OKLAHOMA CITY | 5400 MARTIN LUTHER KING | Oklahoma City | OK |
| 998 | NON-OWNED SERVICE STATIONS | Oklahoma City 24 | 5529 SE 15th | Oklahoma City | OK |
| 999 | NON-OWNED SERVICE STATIONS | Oklahoma City | 57th and north may | Oklahoma City | OK |
| 1000 | NON-OWNED SERVICE STATIONS | Oklahoma City 16 | 5816 North May Avenue | Oklahoma City | OK |
| 1001 | NON-OWNED SERVICE STATIONS | Oklahoma City 6 | 5901 South Shields | Oklahoma City | OK |
| 1002 | NON-OWNED SERVICE STATIONS | Oklahoma City | 63rd & Broadway | Oklahoma City | OK |
| 1003 | NON-OWNED SERVICE STATIONS | Oklahoma City | 63rd street & May avenue | Oklahoma City | OK |
| 1004 | NON-OWNED SERVICE STATIONS | Oklahoma City | 63rd street & Meridian avenue | Oklahoma City | OK |
| 1005 | NON-OWNED SERVICE STATIONS | Oklahoma City 33 | 6401 N. May | Oklahoma City | OK |
| 1006 | NON-OWNED SERVICE STATIONS | Oklahoma City 5 | 6602 North Western | Oklahoma City | OK |
| 1007 | NON-OWNED SERVICE STATIONS | Oklahoma City 17 | 700 S.E. 15th | Oklahoma City | OK |
| 1008 | NON-OWNED SERVICE STATIONS | Oklahoma City 18 | 701 N.E. 7th Street | Oklahoma City | OK |
| 1009 | NON-OWNED SERVICE STATIONS | Oklahoma City 7 | 701 NE 8th Street | Oklahoma City | OK |
| 1010 | NON-OWNED SERVICE STATIONS | Oklahoma City 114 | 7040 N.W. 122nd | Oklahoma City | OK |
| 1011 | NON-OWNED SERVICE STATIONS | Oklahoma City 2A | 723 South Walker | Oklahoma City | OK |
| 1012 | NON-OWNED SERVICE STATIONS | Oklahoma City 71 | 7941 N.E. Expressway | Oklahoma City | OK |
| 1013 | NON-OWNED SERVICE STATIONS | Oklahoma City 111 | 7944 W. Hefner Road | Oklahoma City | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 1014 | NON-OWNED SERVICE STATIONS | Oklahoma City Bulk Station | 814 South Harvey Street | Oklahoma City | OK |
| 1015 | NON-OWNED SERVICE STATIONS | Oklahoma City | 89th street & S. Pennsylvania avenue | Oklahoma City | OK |
| 1016 | NON-OWNED SERVICE STATIONS | Oklahoma City 116 | 9000 South Pennsylvania | Oklahoma City | OK |
| 1017 | NON-OWNED SERVICE STATIONS | Oklahoma City 93 | 901 South Pennsylvania | Oklahoma City | OK |
| 1018 | NON-OWNED SERVICE STATIONS | Oklahoma City 37 | 9214 North Western | Oklahoma City | OK |
| 1019 | NON-OWNED SERVICE STATIONS | Oklahoma City 108 | 9300 Block of N. Rockwell | Oklahoma City | OK |
| 1020 | NON-OWNED SERVICE STATIONS | Oklahoma City 73 | 950 N.E. 23rd Street (near kelley) | Oklahoma City | OK |
| 1021 | NON-OWNED SERVICE STATIONS | Oklahoma City 61 | Hefner Road and Broadway Extension | Oklahoma City | OK |
| 1022 | NON-OWNED SERVICE STATIONS | Oklahoma City | N. Council road & W. Hefner road | Oklahoma City | OK |
| 1023 | NON-OWNED SERVICE STATIONS | Oklahoma City 106 | N. of I-240 & Sooner Road | Oklahoma City | OK |
| 1024 | NON-OWNED SERVICE STATIONS | Oklahoma City 13 | N.E. 23rd and Post Road | Oklahoma City | OK |
| 1025 | NON-OWNED SERVICE STATIONS | Oklahoma City 53 | N.E. 63rd & Prospect | Oklahoma City | OK |
| 1026 | NON-OWNED SERVICE STATIONS | Oklahoma City 69 | N.W. 50th East of Portland | Oklahoma City | OK |
| 1027 | NON-OWNED SERVICE STATIONS | Oklahoma City 115 | N.W. Highway & Harvest Hills Road | Oklahoma City | OK |
| 1028 | NON-OWNED SERVICE STATIONS | Billboard | N.W/C N. W. 23rd and Ann Arbor | Oklahoma City | OK |
| 1029 | NON-OWNED SERVICE STATIONS | Oklahoma City 94 | NE 64th & Oklahoma Avenue | Oklahoma City | OK |
| 1030 | NON-OWNED SERVICE STATIONS | Oklahoma City 4 | NE Corner of SE 29th & Sooner Rd. | Oklahoma City | OK |
| 1031 | NON-OWNED SERVICE STATIONS | Oklahoma City 91 | NE/C N. Eastern and 52nd | Oklahoma City | OK |
| 1032 | NON-OWNED SERVICE STATIONS | Oklahoma City 49 | NE/C N.W. 16th St. and Council Road | Oklahoma City | OK |
| 1033 | NON-OWNED SERVICE STATIONS | Oklahoma City 45 | NE/C Reno & Rockwell | Oklahoma City | OK |
| 1034 | NON-OWNED SERVICE STATIONS | Oklahoma City 92 | NE/C S.W. 39th and Portland | Oklahoma City | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 1035 | NON-OWNED SERVICE STATIONS | Oklahoma City 105 | NE/C SE 134 & Sunnylane | Oklahoma City | OK |
| 1036 | NON-OWNED SERVICE STATIONS | Oklahoma City 104 | NE/C SW 89th & Walker | Oklahoma City | OK |
| 1037 | NON-OWNED SERVICE STATIONS | Oklahoma City 44 | NW 24th and MacArthur Boulevard | Oklahoma City | OK |
| 1038 | NON-OWNED SERVICE STATIONS | Oklahoma City 55 | NW/C 122nd and N. Kelley | Oklahoma City | OK |
| 1039 | NON-OWNED SERVICE STATIONS | Oklahoma City 66 | NW/C N.W. 23rd Street and Ann Arbor | Oklahoma City | OK |
| 1040 | NON-OWNED SERVICE STATIONS | Oklahoma City 112 | NW/C NW 122nd & Council | Oklahoma City | OK |
| 1041 | NON-OWNED SERVICE STATIONS | Oklahoma City 82 | NW/C Reno & Mustang Road | Oklahoma City | OK |
| 1042 | NON-OWNED SERVICE STATIONS | Billboards | NW/C S.E. 29th & Douglas | Oklahoma City | OK |
| 1043 | NON-OWNED SERVICE STATIONS | Oklahoma City 78 | NW/C SW 44th & Rockwell | Oklahoma City | OK |
| 1044 | NON-OWNED SERVICE STATIONS | Oklahoma City 100 | NW/C Wilshire & Harvey | Oklahoma City | OK |
| 1045 | NON-OWNED SERVICE STATIONS | Billboard | S.E. CN.W. 63rd and Meridian | Oklahoma City | OK |
| 1046 | NON-OWNED SERVICE STATIONS | Oklahoma City 41 | S.W. 13th and May Avenue | Oklahoma City | OK |
| 1047 | NON-OWNED SERVICE STATIONS | Oklahoma City 20 | S.W. 44th and Pennsylvania | Oklahoma City | OK |
| 1048 | NON-OWNED SERVICE STATIONS | Oklahoma City 86 | SE/C NW 10 & Morgan Road | Oklahoma City | OK |
| 1049 | NON-OWNED SERVICE STATIONS | OKC - MEEKER #2 FARM | SE/C NW 164 STREET & PORTLAND AVENUE | Oklahoma City | OK |
| 1050 | NON-OWNED SERVICE STATIONS | OKC - MEEKER #2 FARM | SE/C NW 164 STREET & PORTLAND AVENUE | Oklahoma City | OK |
| 1051 | NON-OWNED SERVICE STATIONS | Oklahoma City 103 | SE/C of SW 44th & MacArthur | Oklahoma City | OK |
| 1052 | NON-OWNED SERVICE STATIONS | Billboard | SE/C S.W. 59th & May | Oklahoma City | OK |
| 1053 | NON-OWNED SERVICE STATIONS | Oklahoma City 76 | SE/C SE 149th & Sooner Road | Oklahoma City | OK |
| 1054 | NON-OWNED SERVICE STATIONS | Oklahoma City 80 | SE/C SW 134th & S. Pennsylvania | Oklahoma City | OK |
| 1055 | NON-OWNED SERVICE STATIONS | Oklahoma City 48 | SE/C SW 29th & Meridian | Oklahoma City | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|------|------|------|------|------|------|
| 1056 | NON-OWNED SERVICE STATIONS | Billboard | SE/C West Reno and Meridian | Oklahoma City | OK |
| 1057 | NON-OWNED SERVICE STATIONS | Knox Service Station, Job 5 | Southwest 29th and Harvey | Oklahoma City | OK |
| 1058 | NON-OWNED SERVICE STATIONS | Oklahoma City 72 | Styll Road and Northwest Highway. | Oklahoma City | OK |
| 1059 | NON-OWNED SERVICE STATIONS | Oklahoma City | SW 59th street & May avenue | Oklahoma City | OK |
| 1060 | NON-OWNED SERVICE STATIONS | Oklahoma City | sw 8th and pennsylvania ave | Oklahoma City | OK |
| 1061 | NON-OWNED SERVICE STATIONS | Oklahoma City 97 | SW/C N. Western & Memorial Road | Oklahoma City | OK |
| 1062 | NON-OWNED SERVICE STATIONS | Oklahoma City 81 | SW/C NW 10th & Mustang Road | Oklahoma City | OK |
| 1063 | NON-OWNED SERVICE STATIONS | Oklahoma City 107 | SW/C SE 89 & Sooner Road | Oklahoma City | OK |
| 1064 | NON-OWNED SERVICE STATIONS | Oklahoma City 95 | SW/C SW 29th & Morgan Road | Oklahoma City | OK |
| 1065 | NON-OWNED SERVICE STATIONS | Oklahoma City | w. Reno avenue & s. Meridian street | Oklahoma City | OK |
| 1066 | NON-OWNED SERVICE STATIONS | Oklahoma City 50 | NEC SW 44th & MacArthur | Oklahoma City | OK |
| 1067 | NON-OWNED SERVICE STATIONS | Oklahoma City 47 | SW/C N. W. Highway & MacArthur Blvd | Oklahoma City | OK |
| 1068 | NON-OWNED SERVICE STATIONS | Oklahoma City 100 | W. side of S. Western near 93rd Street (9128 western road) | Oklahoma City | OK |
| 1069 | NON-OWNED SERVICE STATIONS | Okmulgee | 10 N. Wood Drive | Okmulgee | OK |
| 1070 | NON-OWNED SERVICE STATIONS | Okmulgee 1 | 200 South Muskogee Street | Okmulgee | OK |
| 1071 | NON-OWNED SERVICE STATIONS | Okmulgee 3 | 210 N. Wood Drive | Okmulgee | OK |
| 1072 | NON-OWNED SERVICE STATIONS | Okmulgee 2 | Okmulgee and Fourth Streets | Okmulgee | OK |
| 1073 | NON-OWNED SERVICE STATIONS | Owasso 1 | 101 S. Main | Owasso | OK |
| 1074 | NON-OWNED SERVICE STATIONS | PAULS VALLEY | 900 S CHICKASAW | Pauls Valley | OK |
| 1075 | NON-OWNED SERVICE STATIONS | Pawnee County | Fee 136, Lake Keystone | Pawnee | OK |
| 1076 | NON-OWNED SERVICE STATIONS | Pawnee County | Fee 86 Arkansas River Property | Pawnee | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1077 | NON-OWNED SERVICE STATIONS | Perry | | Perry | OK |
| 1078 | NON-OWNED SERVICE STATIONS | Pierce 307 | SW/C I-40 & Pierce Road | Pierce | OK |
| 1079 | NON-OWNED SERVICE STATIONS | Ponca City 2 | 200 East Highland | Ponca City | OK |
| 1080 | NON-OWNED SERVICE STATIONS | Ponca City | 500 E. Hartford avenue | Ponca City | OK |
| 1081 | NON-OWNED SERVICE STATIONS | Ponca City 3 | Highway U.S. 60 West | Ponca City | OK |
| 1082 | NON-OWNED SERVICE STATIONS | Ponca City 1 | South 4th Street and East South Avenue | Ponca City | OK |
| 1083 | NON-OWNED SERVICE STATIONS | Poteau 1 | 500 North Front Street | Poteau | OK |
| 1084 | NON-OWNED SERVICE STATIONS | Poteau | 701 Highway | Poteau | OK |
| 1085 | NON-OWNED SERVICE STATIONS | Poteau Bulk Station | East Dewey and KCS right-of-way | Poteau | OK |
| 1086 | NON-OWNED SERVICE STATIONS | Pryor 1 | Highway 69 | Pryor | OK |
| 1087 | NON-OWNED SERVICE STATIONS | Purcell 1 | 508 South Green Street | Purcell | OK |
| 1088 | NON-OWNED SERVICE STATIONS | Purcell 2 | 630 S. Green Avenue | Purcell | OK |
| 1089 | NON-OWNED SERVICE STATIONS | Rush Springs 1 | West Side U.S. Highway 81 | Rush Springs | OK |
| 1090 | NON-OWNED SERVICE STATIONS | Sallisaw | 1101 E. Cherokee avenue | Sallisaw | OK |
| 1091 | NON-OWNED SERVICE STATIONS | Sapulpa 2 | 501 Dewey Avenue | Sapulpa | OK |
| 1092 | NON-OWNED SERVICE STATIONS | Sapulpa 1 | 717 E. Dewey St. | Sapulpa | OK |
| 1093 | NON-OWNED SERVICE STATIONS | Shattuck 1 | NE/C Main & 8th | Shattuck | OK |
| 1094 | NON-OWNED SERVICE STATIONS | Shawnee 3 | 1501 North Kickapoo | Shawnee | OK |
| 1095 | NON-OWNED SERVICE STATIONS | Shawnee 1 | 301 East Highland Street | Shawnee | OK |
| 1096 | NON-OWNED SERVICE STATIONS | Shawnee 4 | NE/C I-40 & St. Highway 9A | Shawnee | OK |
| 1097 | NON-OWNED SERVICE STATIONS | Spencer 1 | SW/C NE 36th & Spencer Road | Spencer | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 1098 | NON-OWNED SERVICE STATIONS | Spiro 1 | | Spiro | OK |
| 1099 | NON-OWNED SERVICE STATIONS | Stigler 2 | 701 Maine Street | Stigler | OK |
| 1100 | NON-OWNED SERVICE STATIONS | Stigler 1 | 310 West Main | Stigler | OK |
| 1101 | NON-OWNED SERVICE STATIONS | Stillwater 1 | 1124 Boomer Road | Stillwater | OK |
| 1102 | NON-OWNED SERVICE STATIONS | Stillwater | 1124 N. Boomer Road | Stillwater | OK |
| 1103 | NON-OWNED SERVICE STATIONS | Stillwater | 424 W. 6th Street | Stillwater | OK |
| 1104 | NON-OWNED SERVICE STATIONS | Tahlequah | 1909 S. Muskogee avenue | Tahlequah | OK |
| 1105 | NON-OWNED SERVICE STATIONS | Tahlequah | 904 S. Muskogee | Tahlequah | OK |
| 1106 | NON-OWNED SERVICE STATIONS | Tishomingo 2 | Highway 78 East | Tishomingo | OK |
| 1107 | NON-OWNED SERVICE STATIONS | Tishomingo 1 | Highway 99 (705 North Kemp) | Tishomingo | OK |
| 1108 | NON-OWNED SERVICE STATIONS | Tulsa | 10519 E. 11th street | Tulsa | OK |
| 1109 | NON-OWNED SERVICE STATIONS | Tulsa 29 | 10519 East 11th Street | Tulsa | OK |
| 1110 | NON-OWNED SERVICE STATIONS | Tulsa 8 | 1435 South Lewis | Tulsa | OK |
| 1111 | NON-OWNED SERVICE STATIONS | Tulsa 21 | 1706 East Pine Street | Tulsa | OK |
| 1112 | NON-OWNED SERVICE STATIONS | Tulsa 9 | 1823 East Third Street | Tulsa | OK |
| 1113 | NON-OWNED SERVICE STATIONS | Tulsa 3 | 209 S. Peoria | Tulsa | OK |
| 1114 | NON-OWNED SERVICE STATIONS | Tulsa 10 | 21st and Lewis Avenue | Tulsa | OK |
| 1115 | NON-OWNED SERVICE STATIONS | Tulsa 28 | 2341 Southwest Boulevard | Tulsa | OK |
| 1116 | NON-OWNED SERVICE STATIONS | Tulsa 33 | 2604 East Apache | Tulsa | OK |
| 1117 | NON-OWNED SERVICE STATIONS | Tulsa 17 | 2797 North Peoria | Tulsa | OK |
| 1118 | NON-OWNED SERVICE STATIONS | Tulsa 6 | 3252 Southwest Boulevard | Tulsa | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1119 | NON-OWNED SERVICE STATIONS | Tulsa 23 | 3625 South Sheridan | Tulsa | OK |
| 1120 | NON-OWNED SERVICE STATIONS | Tulsa 1 | 3917 East 11th Street | Tulsa | OK |
| 1121 | NON-OWNED SERVICE STATIONS | Tulsa 2 | 4106 East Admiral Place | Tulsa | OK |
| 1122 | NON-OWNED SERVICE STATIONS | Tulsa 20 | 6110 East 11th Street | Tulsa | OK |
| 1123 | NON-OWNED SERVICE STATIONS | Tulsa 34 | 6505 E. 91st Street South | Tulsa | OK |
| 1124 | NON-OWNED SERVICE STATIONS | Tulsa | 6505 S. 91st Street | Tulsa | OK |
| 1125 | NON-OWNED SERVICE STATIONS | Tulsa 22 | 6624 E. Pine | Tulsa | OK |
| 1126 | NON-OWNED SERVICE STATIONS | Tulsa 19 | 7200 Charles Page Boulevard | Tulsa | OK |
| 1127 | NON-OWNED SERVICE STATIONS | Tulsa 5 | 7640 Sand Springs Road | Tulsa | OK |
| 1128 | NON-OWNED SERVICE STATIONS | Tulsa 7 | 823 South Boston Avenue | Tulsa | OK |
| 1129 | NON-OWNED SERVICE STATIONS | Tulsa 25 | 9616 East 21st Street | Tulsa | OK |
| 1130 | NON-OWNED SERVICE STATIONS | Tulsa | Admiral and Allegheny | Tulsa | OK |
| 1131 | NON-OWNED SERVICE STATIONS | Tulsa | Fee 85, Sec 31-T19N-R10E | Tulsa | OK |
| 1132 | NON-OWNED SERVICE STATIONS | Tulsa 24 | Southwest Boulevard and West 45 Street | Tulsa | OK |
| 1133 | NON-OWNED SERVICE STATIONS | Vian 1 | IH 40 and Lake Road Interchange | Vian | OK |
| 1134 | NON-OWNED SERVICE STATIONS | Wagoner 1 | 1205 West Cherokee | Wagoner | OK |
| 1135 | NON-OWNED SERVICE STATIONS | Warner 1 | NW/C I-40 and St. Highway 2 | Warner | OK |
| 1136 | NON-OWNED SERVICE STATIONS | Waynoka | Cecil & Flynn Streets | Waynoka | OK |
| 1137 | NON-OWNED SERVICE STATIONS | Weatherford 1 | Route 2 | Weatherford | OK |
| 1138 | NON-OWNED SERVICE STATIONS | Webbers Falls 1 | I 40 and SH 100 | Webbers Falls | OK |
| 1139 | NON-OWNED SERVICE STATIONS | Wynnewood | 903 S. D.A. McGee avenue | Wynnewood | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 1140 | NON-OWNED SERVICE STATIONS | Wynnewood 1 (refinery) | Highway 77 at South City Limits | Wynnewood | OK |
| 1141 | NON-OWNED SERVICE STATIONS | Wynnewood 2 | NE/C I-35 & St. Highway 29 | Wynnewood | OK |
| 1142 | NON-OWNED SERVICE STATIONS | Yukon 5 | 1301 S. Cornwell | Yukon | OK |
| 1143 | NON-OWNED SERVICE STATIONS | Yukon 2 | 307 E. Main | Yukon | OK |
| 1144 | NON-OWNED SERVICE STATIONS | Yukon | 307 E. Main street | Yukon | OK |
| 1145 | NON-OWNED SERVICE STATIONS | Yukon 4 | NE/C NW 10th and Cornwell | Yukon | OK |
| 1146 | NON-OWNED SERVICE STATIONS | Yukon | S. Cornwell drive & W. VandAment avenue | Yukon | OK |
| 1147 | NON-OWNED SERVICE STATIONS | Yukon 3 | SE/C NW 36th and Sara Rd. | Yukon | OK |
| 1148 | NON-OWNED SERVICE STATIONS | Yukon 1 | SW/C 23rd and Mustang Road | Yukon | OK |
| 1149 | NON-OWNED SERVICE STATIONS | Aberdeen 2 | 423 North Main Street | Aberdeen | SD |
| 1150 | NON-OWNED SERVICE STATIONS | Brookings 1 | 501 Sixth Street | Brookings | SD |
| 1151 | NON-OWNED SERVICE STATIONS | Hecla 1 | Lots 15 and 16, Block 3 | Hecla | SD |
| 1152 | NON-OWNED SERVICE STATIONS | Vermillion 1 | 801 Cherry Street | Vermillion | SD |
| 1153 | NON-OWNED SERVICE STATIONS | Watertown 1 | 150 Fourth Street, N.E. | Watertown | SD |
| 1154 | NON-OWNED SERVICE STATIONS | Watertown | U.S. Hwy. 212 & Broadway | Watertown | SD |
| 1155 | NON-OWNED SERVICE STATIONS | Webster 1 | Lot 6 of Sandvig's Outlot Addition | Webster | SD |
| 1156 | NON-OWNED SERVICE STATIONS | Bristol Peoples 46 | 301 Bluff City Highway | Bristol | TN |
| 1157 | NON-OWNED SERVICE STATIONS | Bristol 140 | Volunteer Parkway and Shelby Lane | Bristol | TN |
| 1158 | NON-OWNED SERVICE STATIONS | Chattanooga 27 | 1998 Dayton Pike | Chattanooga | TN |
| 1159 | NON-OWNED SERVICE STATIONS | Chattanooga 98 | 2405 Dayton Boulevard | Chattanooga | TN |
| 1160 | NON-OWNED SERVICE STATIONS | Chattanooga 117 | 4239 Bonny Oaks Drive | Chattanooga | TN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1161 | NON-OWNED SERVICE STATIONS | Chattanooga | 5801 Lee Highway | Chattanooga | TN |
| 1162 | NON-OWNED SERVICE STATIONS | Chattanooga 28 | Main Street & Lyerly | Chattanooga | TN |
| 1163 | NON-OWNED SERVICE STATIONS | Clarksville 41 | Highway 41-A & Walnut | Clarksville | TN |
| 1164 | NON-OWNED SERVICE STATIONS | Columbia 47 | 514 North Garden | Columbia | TN |
| 1165 | NON-OWNED SERVICE STATIONS | Columbia 161 | U.S. Highway 31 By-pass and Pillow Drive | Columbia | TN |
| 1166 | NON-OWNED SERVICE STATIONS | Cookeville 163 | South Jefferson Avenue | Cookeville | TN |
| 1167 | NON-OWNED SERVICE STATIONS | Donelson 11 | 3202 Lebanon Road at Central Pike | Donelson | TN |
| 1168 | NON-OWNED SERVICE STATIONS | Elizabethton 142 | Route 7 - Highway 19 East | Elizabethton | TN |
| 1169 | NON-OWNED SERVICE STATIONS | Elizabethton 2143 | State Highway 91 & US Highway 31 | Elizabethton | TN |
| 1170 | NON-OWNED SERVICE STATIONS | Erwin | Main and Elm Streets | Erwin | TN |
| 1171 | NON-OWNED SERVICE STATIONS | Franklin 2164 | 505 Hillsboro Road | Franklin | TN |
| 1172 | NON-OWNED SERVICE STATIONS | Gallatin 51 | South Waters Avenue | Gallatin | TN |
| 1173 | NON-OWNED SERVICE STATIONS | Gray 131 | US Highway 36 | Gray | TN |
| 1174 | NON-OWNED SERVICE STATIONS | Greenville 50 | 1153 Tusculum Boulevard | Greenville | TN |
| 1175 | NON-OWNED SERVICE STATIONS | Greenville 120 | Snapps Ferry Road | Greenville | TN |
| 1176 | NON-OWNED SERVICE STATIONS | Hixon 116 | 4514 Hixson Pike | Hixson | TN |
| 1177 | NON-OWNED SERVICE STATIONS | Johnson City 13 | E. Main & Broadway | Johnson City | TN |
| 1178 | NON-OWNED SERVICE STATIONS | Johnson City 14 | New Jonesboro Highway | Johnson City | TN |
| 1179 | NON-OWNED SERVICE STATIONS | Kingsport 2007 | 1748 Netherland Inn Road | Kingsport | TN |
| 1180 | NON-OWNED SERVICE STATIONS | Kingsport 6 | 2555 Fort Henry Drive | Kingsport | TN |
| 1181 | NON-OWNED SERVICE STATIONS | Kingsport 31 | 340 East Sullivan Street | Kingsport | TN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1182 | NON-OWNED SERVICE STATIONS | Knoxville 39 | 4133 Broadway, N.E. | Knoxville | TN |
| 1183 | NON-OWNED SERVICE STATIONS | Knoxville 29 | 4646 Broadway | Knoxville | TN |
| 1184 | NON-OWNED SERVICE STATIONS | Knoxville 49 | 6211 Chapman Highway | Knoxville | TN |
| 1185 | NON-OWNED SERVICE STATIONS | Knoxville 20 | NE/C Asheville Highway & Stooksbury Rd. | Knoxville | TN |
| 1186 | NON-OWNED SERVICE STATIONS | Lebanon 2121 | 816 North Cumberland | Lebanon | TN |
| 1187 | NON-OWNED SERVICE STATIONS | Lexington 6378 | 562 West Church | Lexington | TN |
| 1188 | NON-OWNED SERVICE STATIONS | Madison 22 | Gallatin Road and Hall's Lane | Madison | TN |
| 1189 | NON-OWNED SERVICE STATIONS | Madisonville 162 | US Highway 411 | Madisonville | TN |
| 1190 | NON-OWNED SERVICE STATIONS | McMinnville 118 | 603 North Chancery Street | McMinnville | TN |
| 1191 | NON-OWNED SERVICE STATIONS | Memphis 5 | 2742 Park Avenue | Memphis | TN |
| 1192 | NON-OWNED SERVICE STATIONS | Memphis 2 | 3087 South Third | Memphis | TN |
| 1193 | NON-OWNED SERVICE STATIONS | Memphis 4 | 3690 Jackson Avenue | Memphis | TN |
| 1194 | NON-OWNED SERVICE STATIONS | Memphis 3 | 3819 Lamar Avenue | Memphis | TN |
| 1195 | NON-OWNED SERVICE STATIONS | Memphis 1 | 4672 South Third Street | Memphis | TN |
| 1196 | NON-OWNED SERVICE STATIONS | Memphis 6 | 908 Chelsea | Memphis | TN |
| 1197 | NON-OWNED SERVICE STATIONS | Mt. Pleasant 127 | 302 North Main Street | Mt. Pleasant | TN |
| 1198 | NON-OWNED SERVICE STATIONS | Murfreesboro 2129 | 1110 Memorial Drive | Murfreesboro | TN |
| 1199 | NON-OWNED SERVICE STATIONS | Murfreesboro 148 | 1149 Northwest Broad St. | Murfreesboro | TN |
| 1200 | NON-OWNED SERVICE STATIONS | Murfreesboro 37 | 215 N.W. Broad Street | Murfreesboro | TN |
| 1201 | NON-OWNED SERVICE STATIONS | Nashville 18 | 1008 East Thompson Lane | Nashville | TN |
| 1202 | NON-OWNED SERVICE STATIONS | Old Hickory 2010 | 1515 Robinson Road | Nashville | TN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1203 | NON-OWNED SERVICE STATIONS | NASHVILLE | 1814 4TH AVE | Nashville | TN |
| 1204 | NON-OWNED SERVICE STATIONS | Nashville 2030 | 3720 Dickerson  Road | Nashville | TN |
| 1205 | NON-OWNED SERVICE STATIONS | Nashville 43 | 3901 Hillsboro Road | Nashville | TN |
| 1206 | NON-OWNED SERVICE STATIONS | Nashville 90 | 4537 Nolensville Pike | Nashville | TN |
| 1207 | NON-OWNED SERVICE STATIONS | Nashville 5 | 6012 Charlotte Pike | Nashville | TN |
| 1208 | NON-OWNED SERVICE STATIONS | Nashville 25 | 711 Lebanon Road | Nashville | TN |
| 1209 | NON-OWNED SERVICE STATIONS | Nashville 45 | 721 Jefferson Street | Nashville | TN |
| 1210 | NON-OWNED SERVICE STATIONS | Nashville 2019 | 801 North First Street | Nashville | TN |
| 1211 | NON-OWNED SERVICE STATIONS | Nashville | Abbott-Martin Road | Nashville | TN |
| 1212 | NON-OWNED SERVICE STATIONS | Nashville 39 | Charlotte Pike and Morrow Road | Nashville | TN |
| 1213 | NON-OWNED SERVICE STATIONS | nashville #2168 | trousdale drive and elysian fields road | Nashville | TN |
| 1214 | NON-OWNED SERVICE STATIONS | Paris 1 | 1005 Mineral Wells | Paris | TN |
| 1215 | NON-OWNED SERVICE STATIONS | Shelbyville 121 | SW/C North Main and West Cedar | Shelbyville | TN |
| 1216 | NON-OWNED SERVICE STATIONS | Smithville 128 | US Highway 70 | Smithville | TN |
| 1217 | NON-OWNED SERVICE STATIONS | Tullahoma | South Anderson & Volney Streets | Tullahoma | TN |
| 1218 | NON-OWNED SERVICE STATIONS | Winchester 21 | 1109 First Avenue South | Winchester | TN |
| 1219 | NON-OWNED SERVICE STATIONS | Amarillo 6 | 2508 West 7th Street | Amarillo | TX |
| 1220 | NON-OWNED SERVICE STATIONS | Amarillo 2 | SE/C 50th Street and Western Avenue | Amarillo | TX |
| 1221 | NON-OWNED SERVICE STATIONS | Austin 69 | 1198 Airport Boulevard | Austin | TX |
| 1222 | NON-OWNED SERVICE STATIONS | Austin 73 | 2027 South Lamar | Austin | TX |
| 1223 | NON-OWNED SERVICE STATIONS | Austin 72 | 3903 South First | Austin | TX |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 1224 | NON-OWNED SERVICE STATIONS | Austin 1 | 5239 Burnet Road | Austin | TX |
| 1225 | NON-OWNED SERVICE STATIONS | Austin 71 | 3903 South Congress Avenue | Austin | TX |
| 1226 | NON-OWNED SERVICE STATIONS | Beaumont 45 | 2820 College | Beaumont | TX |
| 1227 | NON-OWNED SERVICE STATIONS | Bovina 1 | Main and Martin Streets | Bovina | TX |
| 1228 | NON-OWNED SERVICE STATIONS | Brownsville WALCO 96 | 2975 Southmost | Brownsville | TX |
| 1229 | NON-OWNED SERVICE STATIONS | BROWNSVILLE 9079 | 4500 EAST 14TH STREET | Brownsville | TX |
| 1230 | NON-OWNED SERVICE STATIONS | BROWNSVILLE 9078 | 605 CENTRAL BLVD | Brownsville | TX |
| 1231 | NON-OWNED SERVICE STATIONS | Brownsville WALCO 100 | 635 International Blvd. | Brownsville | TX |
| 1232 | NON-OWNED SERVICE STATIONS | Brownsville WALCO 95 | 645 East Madison | Brownsville | TX |
| 1233 | NON-OWNED SERVICE STATIONS | Brownwood 74 | 209 South Main | Brownwood | TX |
| 1234 | NON-OWNED SERVICE STATIONS | Cleburne 1 | 505 West Henderson | Cleburne | TX |
| 1235 | NON-OWNED SERVICE STATIONS | Conway 1 | SE/C I-40 & State Highway 15 | Conway | TX |
| 1236 | NON-OWNED SERVICE STATIONS | Corpus Christi 80 | 1821 Leopard | Corpus Christi | TX |
| 1237 | NON-OWNED SERVICE STATIONS | Corpus Christi 81 | 4500 Ayers | Corpus Christi | TX |
| 1238 | NON-OWNED SERVICE STATIONS | Dallas 5 | 11030 Harry Hines Boulevard | Dallas | TX |
| 1239 | NON-OWNED SERVICE STATIONS | Dallas 6 | 2519 Swiss Avenue | Dallas | TX |
| 1240 | NON-OWNED SERVICE STATIONS | Dallas 8 | 2900 Fordham Road | Dallas | TX |
| 1241 | NON-OWNED SERVICE STATIONS | Dallas 9 | 3151 Kiest Boulevard | Dallas | TX |
| 1242 | NON-OWNED SERVICE STATIONS | Dallas 4 | 4501 North Beltline Road | Dallas | TX |
| 1243 | NON-OWNED SERVICE STATIONS | Dallas 3 | 4847 Scyene Road | Dallas | TX |
| 1244 | NON-OWNED SERVICE STATIONS | Dallas 2 | 7233 Gaston Avenue | Dallas | TX |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1245 | NON-OWNED SERVICE STATIONS | Dallas 1 | 8054 Forest Lane | Dallas | TX |
| 1246 | NON-OWNED SERVICE STATIONS | Dallas 7 | 9938 Harry Hines Boulevard | Dallas | TX |
| 1247 | NON-OWNED SERVICE STATIONS | Edinburg 93 | 1020 East University Drive | Edinburg | TX |
| 1248 | NON-OWNED SERVICE STATIONS | Edinburg Walco 93 | 1021 East University Drive | Edinburg | TX |
| 1249 | NON-OWNED SERVICE STATIONS | Fort Worth 3 | 2025 Evans Street | Fort Worth | TX |
| 1250 | NON-OWNED SERVICE STATIONS | Fort Worth 2 | 6401 Baker Boulevard | Fort Worth | TX |
| 1251 | NON-OWNED SERVICE STATIONS | Freeport 46 | 1005 Brazosport Boulevard | Freeport | TX |
| 1252 | NON-OWNED SERVICE STATIONS | Gainesville 1 | 1205 S. California | Gainesville 1 | TX |
| 1253 | NON-OWNED SERVICE STATIONS | Garland 2 | 1917 South First Street | Garland | TX |
| 1254 | NON-OWNED SERVICE STATIONS | Garland 1 | 3525 Forest Lane | Garland | TX |
| 1255 | NON-OWNED SERVICE STATIONS | Grand Prairie 1 | 2217 West Jefferson | Grand Prairie | TX |
| 1256 | NON-OWNED SERVICE STATIONS | harlingen 9083 | 1520 west harrison | Harlingen | TX |
| 1257 | NON-OWNED SERVICE STATIONS | harlingen 9084 | 1821 south 77 sunshine strip | Harlingen | TX |
| 1258 | NON-OWNED SERVICE STATIONS | Houston 65 | 10510 Post Oak Road | Houston | TX |
| 1259 | NON-OWNED SERVICE STATIONS | Houston 64 | 11515 South Post Oak | Houston | TX |
| 1260 | NON-OWNED SERVICE STATIONS | Houston 66 | 1339 West Gray and Waugh Drive | Houston | TX |
| 1261 | NON-OWNED SERVICE STATIONS | Houston 52 | 1621 Federal Road | Houston | TX |
| 1262 | NON-OWNED SERVICE STATIONS | Houston 41 | 1629 E. 25th | Houston | TX |
| 1263 | NON-OWNED SERVICE STATIONS | Houston 44 | 2005 Bingle Road | Houston | TX |
| 1264 | NON-OWNED SERVICE STATIONS | Houston 67 | 2105 Wirtcrest at Wirt Road | Houston | TX |
| 1265 | NON-OWNED SERVICE STATIONS | Houston 31 | 2203 Durham | Houston | TX |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 1266 | NON-OWNED SERVICE STATIONS | Houston 37 | 2701 Yale | Houston | TX |
| 1267 | NON-OWNED SERVICE STATIONS | Houston 39 | 2804 North Shepherd | Houston | TX |
| 1268 | NON-OWNED SERVICE STATIONS | Houston 39 | 2807 N. Shepherd #39 | Houston | TX |
| 1269 | NON-OWNED SERVICE STATIONS | Houston 101 | 315 East 20th Street | Houston | TX |
| 1270 | NON-OWNED SERVICE STATIONS | Houston 55 | 3403 Irvington Blvd. | Houston | TX |
| 1271 | NON-OWNED SERVICE STATIONS | Houston 38 | 3736 Mangum Road | Houston | TX |
| 1272 | NON-OWNED SERVICE STATIONS | Houston 35 | 4010 North Main | Houston | TX |
| 1273 | NON-OWNED SERVICE STATIONS | Houston 33 | 402 West 11th Street | Houston | TX |
| 1274 | NON-OWNED SERVICE STATIONS | Houston 40 | 407 Yale | Houston | TX |
| 1275 | NON-OWNED SERVICE STATIONS | Houston 36 | 4814 Lockwood | Houston | TX |
| 1276 | NON-OWNED SERVICE STATIONS | Houston 50 | 4901 Darling | Houston | TX |
| 1277 | NON-OWNED SERVICE STATIONS | Houston | 5210 Buffalo Speedway | Houston | TX |
| 1278 | NON-OWNED SERVICE STATIONS | Houston 47 | 5210 Buffalo Speedway | Houston | TX |
| 1279 | NON-OWNED SERVICE STATIONS | Houston 59 | 5502 Bissonnet | Houston | TX |
| 1280 | NON-OWNED SERVICE STATIONS | Houston 53 | 5702 Gulf Freeway | Houston | TX |
| 1281 | NON-OWNED SERVICE STATIONS | Houston 58 | 5906 North Main | Houston | TX |
| 1282 | NON-OWNED SERVICE STATIONS | Houston 63 | 6330 South Martin Luther King Boulevard | Houston | TX |
| 1283 | NON-OWNED SERVICE STATIONS | Houston 56 | 7028 Lawndale | Houston | TX |
| 1284 | NON-OWNED SERVICE STATIONS | Houston 32 | 7402 Long Point 32 | Houston | TX |
| 1285 | NON-OWNED SERVICE STATIONS | Houston 49 | 8221 Clinton Drive | Houston | TX |
| 1286 | NON-OWNED SERVICE STATIONS | Houston 54 | 9909 Hempstead Highway | Houston | TX |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1287 | NON-OWNED SERVICE STATIONS | Houston 43 | NW/C FM 1969 & Cashel Forest Drive | Houston | TX |
| 1288 | NON-OWNED SERVICE STATIONS | Irving 1 | 2326 W. Shady Grove | Irving | TX |
| 1289 | NON-OWNED SERVICE STATIONS | Lancaster 1 | 2601 N. Dallas | Lancaster | TX |
| 1290 | NON-OWNED SERVICE STATIONS | mcallen 9085 | 1200 south 23rd | McAllen | TX |
| 1291 | NON-OWNED SERVICE STATIONS | McAllen WALCO 94 | 1901 West Highway | McAllen | TX |
| 1292 | NON-OWNED SERVICE STATIONS | mcallen 9086 | 701 East pecan | McAllen | TX |
| 1293 | NON-OWNED SERVICE STATIONS | MERCEDES | 447 W 2ND STREET | Mercedes | TX |
| 1294 | NON-OWNED SERVICE STATIONS | Mesquite 1 | 2022 Gus Thomasson Road | Mesquite | TX |
| 1295 | NON-OWNED SERVICE STATIONS | Pasadena 61 | 1202 South Shaver | Pasadena | TX |
| 1296 | NON-OWNED SERVICE STATIONS | Pasadena 60 | 1516 East Southmore | Pasadena | TX |
| 1297 | NON-OWNED SERVICE STATIONS | Pasadena 42 | 2631 South Shaver | Pasadena | TX |
| 1298 | NON-OWNED SERVICE STATIONS | Perryton 2 | 1422 South Main | Perryton | TX |
| 1299 | NON-OWNED SERVICE STATIONS | Perryton 1 | 822 South Main | Perryton | TX |
| 1300 | NON-OWNED SERVICE STATIONS | PHARR 9089 | 1000 NORTH CAGE | Pharr | TX |
| 1301 | NON-OWNED SERVICE STATIONS | Pharr 9090 | 500 East Highway 83 | Pharr | TX |
| 1302 | NON-OWNED SERVICE STATIONS | Pharr | | Pharr | TX |
| 1303 | NON-OWNED SERVICE STATIONS | Plainview | 1504 West 5th | Plainview | TX |
| 1304 | NON-OWNED SERVICE STATIONS | San Angelo 75 | 1320 North Oakes | San Angelo | TX |
| 1305 | NON-OWNED SERVICE STATIONS | San Antonio 76 | 1815 South W.W. White Road | San Antonio | TX |
| 1306 | NON-OWNED SERVICE STATIONS | San Antonio 77 | 5826 South Flores | San Antonio | TX |
| 1307 | NON-OWNED SERVICE STATIONS | Tyler 3 | 2520 East 5th Street | Tyler | TX |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 1308 | NON-OWNED SERVICE STATIONS | Tyler 2 | 430 South Beckham | Tyler | TX |
| 1309 | NON-OWNED SERVICE STATIONS | Tyler 1 | 716 West Front Street | Tyler | TX |
| 1310 | NON-OWNED SERVICE STATIONS | Vernon 1 | 3228 Wilbarger Street | Vernon | TX |
| 1311 | NON-OWNED SERVICE STATIONS | Waco 70 | 724 East Waco Drive | Waco | TX |
| 1312 | NON-OWNED SERVICE STATIONS | Wharton 68 | 1619 North Richmond | Wharton | TX |
| 1313 | NON-OWNED SERVICE STATIONS | Wichita Falls 2 | 2714 Southwest Parkway | Wichita Falls | TX |
| 1314 | NON-OWNED SERVICE STATIONS | Wichita Falls | 2714 SW Parkway | Wichita Falls | TX |
| 1315 | NON-OWNED SERVICE STATIONS | Wichita Falls 1 | 3703 Sheppard Access Road | Wichita Falls | TX |
| 1316 | NON-OWNED SERVICE STATIONS | Bristol 2160 | U.S. Highway 11 | Bristol | VA |
| 1317 | NON-OWNED SERVICE STATIONS | BLENDER-FARM CENTER | | Portsmouth | VA |
| 1318 | NON-OWNED SERVICE STATIONS | Abbotsford | Spruce Street North of Soo R.R. Depot | Abbotsford | WI |
| 1319 | NON-OWNED SERVICE STATIONS | Antigo 1 | 4th Avenue & Superior Street | Antigo | WI |
| 1320 | NON-OWNED SERVICE STATIONS | Appleton 1 | 504 West College Avenue | Appleton | WI |
| 1321 | NON-OWNED SERVICE STATIONS | Atkinson | | Atkinson | WI |
| 1322 | NON-OWNED SERVICE STATIONS | Berlin 1 | Broadway and Mound Street | Berlin | WI |
| 1323 | NON-OWNED SERVICE STATIONS | Chippewa Falls 3 | 304 West River Street | Chippewa Falls | WI |
| 1324 | NON-OWNED SERVICE STATIONS | Chippewa Falls 2 | 524 North Bridge Street | Chippewa Falls | WI |
| 1325 | NON-OWNED SERVICE STATIONS | Chippewa Falls | Woodward & Park Avenue | Chippewa Falls | WI |
| 1326 | NON-OWNED SERVICE STATIONS | Cudahy 1 | 4570 South Kinnickinnic Avenue | Cudahy | WI |
| 1327 | NON-OWNED SERVICE STATIONS | Dodge Bulk Station | | Dodge | WI |
| 1328 | NON-OWNED SERVICE STATIONS | Dodgeville 1 | 1202 North Bequette Street | Dodgeville | WI |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 1329 | NON-OWNED SERVICE STATIONS | Fennimore | Lincoln Avenue & Warner Street | Fennimore | WI |
| 1330 | NON-OWNED SERVICE STATIONS | Fort Atkinson | 1012 S. Whitewater avenue | Fort Atkinson | WI |
| 1331 | NON-OWNED SERVICE STATIONS | Green Bay | 621 South Broadway | Green Bay | WI |
| 1332 | NON-OWNED SERVICE STATIONS | Green Bay 1 | Van Deuren Street | Green Bay | WI |
| 1333 | NON-OWNED SERVICE STATIONS | Janesville 2 | NW/C Sherman and N. Parker Drive | Janesville | WI |
| 1334 | NON-OWNED SERVICE STATIONS | La Crosse | 2127 S. Avenue | La Crosse | WI |
| 1335 | NON-OWNED SERVICE STATIONS | Lacrosse 1 | 1104 N. Lacrosse | Lacrosse | WI |
| 1336 | NON-OWNED SERVICE STATIONS | Ladysmith 1 | 518 Lake Avenue West | Ladysmith | WI |
| 1337 | NON-OWNED SERVICE STATIONS | Lake Geneva 1 | 600 Williams Street | Lake Geneva | WI |
| 1338 | NON-OWNED SERVICE STATIONS | Madison | 3505 E. Washington avenue | Madison | WI |
| 1339 | NON-OWNED SERVICE STATIONS | Madison 2 | 3505 East Washington | Madison | WI |
| 1340 | NON-OWNED SERVICE STATIONS | Madison 1 | 728 Jenifer | Madison | WI |
| 1341 | NON-OWNED SERVICE STATIONS | Madison Bulk Station | Seminole Highway near Madison | Madison | WI |
| 1342 | NON-OWNED SERVICE STATIONS | Marinette Bulk and Service Sta | Marinette Avenue & Mary Street | Marinette | WI |
| 1343 | NON-OWNED SERVICE STATIONS | Mauston Bulk & Service Station | Highways 12 & 16 | Mauston | WI |
| 1344 | NON-OWNED SERVICE STATIONS | Menasha 1 | U.S. Highway 41 | Menasha | WI |
| 1345 | NON-OWNED SERVICE STATIONS | Menomonie 2 | I-94 & County Road "B" | Menomonie | WI |
| 1346 | NON-OWNED SERVICE STATIONS | Milwaukee 6 | 1545 West Hopkins | Milwaukee | WI |
| 1347 | NON-OWNED SERVICE STATIONS | Milwaukee | 405 W. Center Street | Milwaukee | WI |
| 1348 | NON-OWNED SERVICE STATIONS | Milwaukee 7 | 405 West Center Street | Milwaukee | WI |
| 1349 | NON-OWNED SERVICE STATIONS | Milwaukee 3 | 4170 South Howell Avenue | Milwaukee | WI |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|------|------|------|------|------|
| 1350 | NON-OWNED SERVICE STATIONS | Milwaukee 4 | 4270 North 76th | Milwaukee | WI |
| 1351 | NON-OWNED SERVICE STATIONS | Milwaukee - Division | 4823 N. Teutonia Avenue | Milwaukee | WI |
| 1352 | NON-OWNED SERVICE STATIONS | Milwaukee 5 | 5510 South 27th Street | Milwaukee | WI |
| 1353 | NON-OWNED SERVICE STATIONS | Milwaukee 8 | 7537 N. Teutonia | Milwaukee | WI |
| 1354 | NON-OWNED SERVICE STATIONS | Milwaukee 2 | 832 West Oklahoma Avenue | Milwaukee | WI |
| 1355 | NON-OWNED SERVICE STATIONS | Milwaukee | | Milwaukee | WI |
| 1356 | NON-OWNED SERVICE STATIONS | Monona 1 | 320 E. Broadway | Monona | WI |
| 1357 | NON-OWNED SERVICE STATIONS | Monroe Bulk Station | Right-of-way | Monroe | WI |
| 1358 | NON-OWNED SERVICE STATIONS | Neenah 1 | Interstate Highway 41 | Neenah | WI |
| 1359 | NON-OWNED SERVICE STATIONS | Neillsville Bulk Station | 7th and Forest Streets | Neillsville | WI |
| 1360 | NON-OWNED SERVICE STATIONS | Neillsville 1 | South Grand Avenue & West 5th Street | Neillsville | WI |
| 1361 | NON-OWNED SERVICE STATIONS | New Richmond | 447 N. Knowles Avenue | New Richmond | WI |
| 1362 | NON-OWNED SERVICE STATIONS | Oconto | U.S. Hwy. 41 South & Plat #2 | Oconto | WI |
| 1363 | NON-OWNED SERVICE STATIONS | Oconto 1 | US Highway 41 South | Oconto | WI |
| 1364 | NON-OWNED SERVICE STATIONS | Oshkosh 6 | 1606 South Main Street | Oshkosh | WI |
| 1365 | NON-OWNED SERVICE STATIONS | Oshkosh 5 | 173 West Algoma Street | Oshkosh | WI |
| 1366 | NON-OWNED SERVICE STATIONS | Oshkosh 1 | 387 Main Street | Oshkosh | WI |
| 1367 | NON-OWNED SERVICE STATIONS | Oshkosh | 415 W. Murdock avenue | Oshkosh | WI |
| 1368 | NON-OWNED SERVICE STATIONS | Platteville 1 | US Highway 151 & SH 80-81 | Platteville | WI |
| 1369 | NON-OWNED SERVICE STATIONS | Racine 1 | 2305 Racine Street | Racine | WI |
| 1370 | NON-OWNED SERVICE STATIONS | Rhinelander | 217 Anderson Street | Rhinelander | WI |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1371 | NON-OWNED SERVICE STATIONS | Rice Lake 1 | 501 North Main | Rice Lake | WI |
| 1372 | NON-OWNED SERVICE STATIONS | Ripon 1 | East Fond du Lac Street | Ripon | WI |
| 1373 | NON-OWNED SERVICE STATIONS | River Falls 1 | 700 North Main | River Falls | WI |
| 1374 | NON-OWNED SERVICE STATIONS | Rothschild 1 | 407 South Grand | Rothschild | WI |
| 1375 | NON-OWNED SERVICE STATIONS | Shawano | 315 S. Main | Shawano | WI |
| 1376 | NON-OWNED SERVICE STATIONS | Shawano Bulk Plant | Minneapolis, St. Paul & Sault Ste. Marie Railway Right-of-Way | Shawano | WI |
| 1377 | NON-OWNED SERVICE STATIONS | South Milwaukee 1 | 1522 North Chicago Avenue | South Milwaukee | WI |
| 1378 | NON-OWNED SERVICE STATIONS | Stevens Point | 417 N. Division street | Stevens Point | WI |
| 1379 | NON-OWNED SERVICE STATIONS | Superior 1 | 2601 Tower Avenue | Superior | WI |
| 1380 | NON-OWNED SERVICE STATIONS | Superior Advertising Sign | River Street | Superior | WI |
| 1381 | NON-OWNED SERVICE STATIONS | Waukesha 1 | 114 E. Broadway | Waukesha | WI |
| 1382 | NON-OWNED SERVICE STATIONS | Waupaca | Badger & Jefferson Streets | Waupaca | WI |
| 1383 | NON-OWNED SERVICE STATIONS | Waupun 1 | 42 Fond du Lac Street | Waupun | WI |
| 1384 | NON-OWNED SERVICE STATIONS | Wausau 4 | 1033-35 S. Fourth Avenue | Wausau | WI |
| 1385 | NON-OWNED SERVICE STATIONS | Wausau 3 | 526 Bridge Street | Wausau | WI |
| 1386 | NON-OWNED SERVICE STATIONS | Wausau Bulk Station | Chicago, Milwaukee, St. Paul and Pacific Railroad Company Right-of-Way | Wausau | WI |
| 1387 | NON-OWNED SERVICE STATIONS | Wausau 2 | Third Avenue & Callon Street | Wausau | WI |
| 1388 | NON-OWNED SERVICE STATIONS | Whitewater 1 | 1280 West Main Street | Whitewater | WI |
| | | | OTHER SITES | | |
| 1389 | OTHER SITES: GENERAL | MT. CANAAN FULL GOSPEL CHURCH | 2725 24TH STREET SOUTHWEST | Birmingham | AL |
| 1390 | OTHER SITES: GENERAL | FORMER GULF STATE CREOSOTING COMPANY | JEFFERSON COUNTY, E1/2 SEC. 8 T18S, R3W, LONGITUDE: -86.88, LATITUDE: 33.48/2709 South Park Drive | Birmingham | AL |
| 1391 | OTHER SITES: GENERAL | ALABAMA STATE DOCKS | 250 NORTH WATER STREET | Mobile | AL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 1392 | OTHER SITES: GENERAL | BLAKELY ISLAND TERMINAL | U.S. HIGHWAY 90 NORTH | Mobile | AL |
| 1393 | OTHER SITES: GENERAL | CHOCTAW POINT TERMINAL | ADJACENT TO I-10 AND I-65 INTERCHANGE LOCATED 3 MILES WEST | Mobile | AL |
| 1394 | OTHER SITES: GENERAL | EL DORADO SITE | BULK OF PROPERTY IN N1/2 SEC. 15 T17S, R15W, LONGITUDE: -92.64, LATITUDE: 33.25/South of the intersection of us 167 and callon highway | El Dorado | AR |
| 1395 | OTHER SITES: GENERAL | CADILLAC FAIRVIEW SITE | | Cadillac Fairview | CA |
| 1396 | OTHER SITES: GENERAL | CASMALIA SITE | 10 MILES SW OF THE CITY OF SANTA MARIA, 1.2 MILES NORTH OF THE TOWN OF CASMALIA, AND FOUR MILES FROM THE PACIFIC OCEAN | Casmalia | CA |
| 1397 | OTHER SITES: GENERAL | WESTERN ELECTROCHEMICAL | 9036 Culver Boulevard | Culver City | CA |
| 1398 | OTHER SITES: GENERAL | WAREHOUSE | | Long Beach | CA |
| 1399 | OTHER SITES: GENERAL | WECCO PLANT | 2640 – 50 East Washington Boulevard | Los Angeles | CA |
| 1400 | OTHER SITES: GENERAL | LOS ANGELES SITE | 3000 AND 3300 West 6TH STREET | Los Angeles | CA |
| 1401 | OTHER SITES: GENERAL | VERNON OR HOBART SITE | 3100 E. 26TH STREET | Los Angeles | CA |
| 1402 | OTHER SITES: GENERAL | WESTERN WASTE INDUSTRIES SITE (DEL AMO SITE) | DEL AMO BLVD AND SOUTH VERMONT AVE | Los Angeles | CA |
| 1403 | OTHER SITES: GENERAL | WESTERN ELECTROCHEMICAL COMPANY SITES | | Los Angeles | CA |
| 1404 | OTHER SITES: GENERAL | MOBILE SMELTING FACILITY | UNITED STREET AND REED AVENUE | Mojave | CA |
| 1405 | OTHER SITES: GENERAL | SEARLES VALLEY MINERALS SITE | SE 1/4, SECTION 21, T25S, R43E | Searles Valley/Trona | CA |
| 1406 | OTHER SITES: GENERAL | TORRANCE SITE | 20231 S. VERMONT AVENUE | Torrance | CA |
| 1407 | OTHER SITES: GENERAL | WHITTIER LAB | 201 W. WASHINGTON BLVD. | Whittier | CA |
| 1408 | OTHER SITES: GENERAL | COMMERCE CITY SITE (MILT ADAMS INC. DBA APPROVED OIL SERVICES AKA APPROVED DRAIN OIL SERVICE) | 5390 E 72ND AVENUE | Commerce City | CO |
| 1409 | OTHER SITES: GENERAL | TABLE MOUNTAIN SITE | 5950 MCINTYRE ROAD | Golden | CO |
| 1410 | OTHER SITES: GENERAL | GRAND JUNCTION SITE (HANSEN CONTAINER SITE) | 530 LAWRENCE AVENUE | Grand Junction | CO |
| 1411 | OTHER SITES: GENERAL | NORTH HAVEN FERTILIZER, PESTICIDE, HERBICIDE SITE | 440 SACKETT POINT ROAD | North Haven | CT |
| 1412 | OTHER SITES: GENERAL | NORTH HAVEN WOOD TREATMENT SITE | 300 UNIVERSAL DRIVE | North Haven | CT |
| 1413 | OTHER SITES: GENERAL | CANTONMENT FORMER OIL RECOVERY FACILITY/DUBOSE OIL PRODUCTS SITE | COUNTY ROAD 97, 1 MILE NORTH OF COUNTY ROAD 184 | Cantonment | FL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1414 | OTHER SITES: GENERAL | COTTONDALE FERTILIZER FACILITY | SW CORNER OF INTERSECTION OF HIGHWAY U.S. 90 AND HIGHWAY U.S. 231; SEC. 31, T5N, R1W | Cottondale | FL |
| 1415 | OTHER SITES: GENERAL | FORT PIERCE AG CHEM MANUFACTURING SITE | 3630 selvitz road | Fort Pierce | FL |
| 1416 | OTHER SITES: GENERAL | IMESON LANDFILL SITE | 513 GUN CLUB ROAD | Jacksonville | FL |
| 1417 | OTHER SITES: GENERAL | PICKETTVILLE ROAD LANDFILL | 5150 PICKETTVILLE ROAD | Jacksonville | FL |
| 1418 | OTHER SITES: GENERAL | ROUSE STEEL DRUM SITE | 612 E. 12TH STREET | Jacksonville | FL |
| 1419 | OTHER SITES: GENERAL | LANDIA CHEMICAL COMPANY SUPERFUND SITE | 1405 WEST OLIVE STREET | Lakeland | FL |
| 1420 | OTHER SITES: GENERAL | DAVIS REFINING SUPERFUND SITE | 2606 SPRINGHILL ROAD | Tallahassee | FL |
| 1421 | OTHER SITES: GENERAL | TAMPA AG CHEM MANUFACTURING SITE | 5226 EAST HILLSBOROUGH AVENUE | Tampa | FL |
| 1422 | OTHER SITES: GENERAL | BAY DRUMS SUPERFUND SITE | EAST BROADWAY AVENUE | Tampa | FL |
| 1423 | OTHER SITES: GENERAL | SIDNEY MINE SITE | STATE ROAD 60, 1 MILE EAST OF DOVER ROAD | Valrico, | FL |
| 1424 | OTHER SITES: GENERAL | M&J SOLVENTS COMPANY SITE | 1577 MARIETTA ROAD NW | Atlanta | GA |
| 1425 | OTHER SITES: GENERAL | LITTLE TYBEE ISLAND SITE | | Little Tybee Island | GA |
| 1426 | OTHER SITES: GENERAL | TIFTEN AG CHEM MANUFACTURING SITE/SOGREEN WASTE PILE (BARREN AREA) ENVIRONMENTAL SITE | W MAPLE STREET AND HIGHLAND AVENUE | Tifton | GA |
| 1427 | OTHER SITES: GENERAL | BELL TERMINAL | | Chicago | IL |
| 1428 | OTHER SITES: GENERAL | DEKALB SITE | | DeKalb | IL |
| 1429 | OTHER SITES: GENERAL | FORMER KETTLE RIVER CO/GLEN CARBON SITE | S ½ SEC. 23 T4N, R8W, LONGITUDE: -89.96, LATITUDE: 38.78/SW OF INTERSECTION OF STATE ROUTE 159 AND CENTER GROVE ROAD | Edwardsville | IL |
| 1430 | OTHER SITES: GENERAL | TRI-COUNTY LANDFILL | Waste Management of Illinois | Elgin | IL |
| 1431 | OTHER SITES: GENERAL | MARION WOOD TREATING FACILITY | E1/2 sec. 25 T9S, R2E, Longitude: -88.93, LAtitude: 37.71/off of route 37 (south court street) near intersection with crites road | Marion | IL |
| 1432 | OTHER SITES: GENERAL | REED KEPPLER PARK SUPERFUND SITE | | West Chicago | IL |
| 1433 | OTHER SITES: GENERAL | SEWAGE TREATMENT PLANT SUPERFUND SITE | | West Chicago | IL |
| 1434 | OTHER SITES: GENERAL | FORMER INDIAN CREOSOTING COMPANY | NWNW SEC. 16/SWSW SEC. 9 T8N, R1W, LONGITUDE: -86.53, LATITUDE: 39.14/240 COUNTY CLUB ROAD | Bloomington | IN |
| 1435 | OTHER SITES: GENERAL | CLERMONT TERMINAL | 10833 EAST COUNTY ROAD 300 NORTH | Clermont | IN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 1436 | OTHER SITES: GENERAL | AMERICAN CHEMICAL SERVICES NPL SITE AND GRIFFITH FORMER LANDFILL SITES | 420 S. COLFAX AVENUE | Griffith | IN |
| 1437 | OTHER SITES: GENERAL | MAXEY FLATS SITE | MAXEY FLATS RD, LONGITUDE: -83.569200, LATITUDE: 38.260800 | Hillsboro | KY |
| 1438 | OTHER SITES: GENERAL | LOUISVILLE TERMINAL | | Louisville | KY |
| 1439 | OTHER SITES: GENERAL | WORTHINGTON WOOD TREATING SITE | GREENUP COUNTY, LONGITUDE: -82.72, LATITUDE: 38.56/NEAR INTERSECTION OF DIVISION STREET AND EDSEL AVENUE, NORTH OR RAILROAD CORRIDOR | Worthington | KY |
| 1440 | OTHER SITES: GENERAL | BOGALUSA SITE | WASHINGTON PARISH, N1/2 SEC. 26 T3S, R15E, LONGITUDE: -89.87, LATITUDE: 30.77/WEST END OF HICKORY AVENUE | Bogalusa | LA |
| 1441 | OTHER SITES: GENERAL | CALUMET LUBRICANTS SITE | 1756 OLD HIGHWAY 7 | Cotton Valley | LA |
| 1442 | OTHER SITES: GENERAL | DERIDDER SITE | SOUTH OF POST PLANT ROAD, EAST OF BNSF RAILROAD CORRIDOR | Deridder | LA |
| 1443 | OTHER SITES: GENERAL | SAREPTA TANK FARM | | Sarepta | LA |
| 1444 | OTHER SITES: GENERAL | DEVIL'S SWAMP LAKE SUPERFUND SITE | SEC 44 AND 45, T5S R1W | Scotlandville | LA |
| 1445 | OTHER SITES: GENERAL | SHREVEPORT SITE | INTERSECTION OF DALZELL STREET AND LINWOOD AVENUE | Shreveport | LA |
| 1446 | OTHER SITES: GENERAL | SLIDELL SITE | US 190 AND FRONT STREET | Slidell | LA |
| 1447 | OTHER SITES: GENERAL | BALTIMORE AG CHEM MANUFACTURING SITE | 2400 South Clinton street (Canton Neighborhood) | Baltimore | MD |
| 1448 | OTHER SITES: GENERAL | CAMBRIDGE AG CHEM MANUFACTURING SITE | 200, 205-207, 211, 306, 311 Trenton Street, and 100 and 102 green street | Cambridge | MD |
| 1449 | OTHER SITES: GENERAL | JACKSON SITE | | Jackson | MI |
| 1450 | OTHER SITES: GENERAL | ECHO TRAIL AREA | LACROIX & KAWISHIWI RAGER DISTRICTS, SUPERIOR NATIONAL FOREST | | MN |
| 1451 | OTHER SITES: GENERAL | ST. LOUIS | 4000 KOCH HOSPITAL ROAD | Mehlville | MO |
| 1452 | OTHER SITES: GENERAL | RED PANTHER PESTICIDE SUPERFUND SITE | 550 PATTON STREET | Clarksdale | MS |
| 1453 | OTHER SITES: GENERAL | INDUSTRIAL POLLUTION CONTROL SUPERFUND SITE | 810 POINDEXTER STREET | Jackson | MS |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1454 | OTHER SITES: GENERAL | JACKSON (FLOWOOD) LAND WOOD TREATING SITE | RANKIN COUNTY, SEC 1 T5N, R1E, SEC. 6T5N, R2E, SEC 36 T6N, R1E, SEC. 31, T6N, R2E; LONGITUDE: -90.15, LATITUDE: 32.31/west and northwest of the intersection of flowood drive and underwood drive | Jackson | MS |
| 1455 | OTHER SITES: GENERAL | POTTER'S SEPTIC TANK SERVICE PITS SUPERFUND SITE | OFF 74-76 NEAR SANDY CREEK & NORTHWEST | Sandy Creek | NC |
| 1456 | OTHER SITES: GENERAL | BIG "O" JAMBOREE SITE | HIGHWAY 17 NORTH AND ROANOKE RIVER | Williamston | NC |
| 1457 | OTHER SITES: GENERAL | BOWMAN SITE | | Bowman | ND |
| 1458 | OTHER SITES: GENERAL | CONSTABLE HOOK SITE | HUDSON COUNTY, LONGITUDE: -74.09, LATITUDE: 40.65/ALONG UPPER NEW YORK BAY, EAST OF HOOK ROAD, SOUTH OF THE BAYONNE GOLD COURSE | Bayonne | NJ |
| 1459 | OTHER SITES: GENERAL | SILSONIX CORPORATE SITE | 514 LYONS AVENUE | Irvington | NJ |
| 1460 | OTHER SITES: GENERAL | PATERSON SITE | 21, 51, 99, and 203 kuller road | Paterson | NJ |
| 1461 | OTHER SITES: GENERAL | SEWAREN TERMINAL | 115 STATE STREET | Sewaren | NJ |
| 1462 | OTHER SITES: GENERAL | AMBROSIA LAKE FACILITY | 25 MILES NORTH OF GRANTS, NM ON HIGHWAY 509; SEC 31, T14N, R9W | Grants | NM |
| 1463 | OTHER SITES: GENERAL | AMENIA LANDFILL SUPERFUND SITE | ROUTE 22 SOUTH, 1.5 MILES SOUTH OF ROUTE 44 | Amenia | NY |
| 1464 | OTHER SITES: GENERAL | NEW HYDE PARK TERMINAL | 1900 PLAZA AVENUE | New Hyde Park | NY |
| 1465 | OTHER SITES: GENERAL | PORT CHESTER SITE | 100 RYANN STREET | Port Chester | NY |
| 1466 | OTHER SITES: GENERAL | LONG ISLAND CITY TERMINAL | 42-40 VERNON AVENUE | Queens | NY |
| 1467 | OTHER SITES: GENERAL | SIDNEY SITE | west of the intersection of route 8 and delaware avenue | Sidney | NY |
| 1468 | OTHER SITES: GENERAL | HUGO SITE | CHOCTAW COUNTY, E1/2 SEC. 20 T6S, R17E, LONGITUDE: -95.55, LATITUDE: 34.02/1806 garrett  street | Hugo | OK |
| 1469 | OTHER SITES: GENERAL | DOUBLE EAGLE REFINERY | 301 NORTH RHODE ISLAND AVENUE | Oklahoma City | OK |
| 1470 | OTHER SITES: GENERAL | MOSLEY ROAD LANDFILL SITE | 3300 MOSLEY ROAD | Oklahoma City | OK |
| 1471 | OTHER SITES: GENERAL | CATO OIL & GREASE | NW 10TH STREET AND RENO STREET | Oklahoma City | OK |
| 1472 | OTHER SITES: GENERAL | SAND SPRINGS FORMER REFINERY SITE | 2 BLOCKS S 198 E. MORRO ROAD | Sand Springs | OK |
| 1473 | OTHER SITES: GENERAL | SAND SPRINGS LANDFILL SITE | 0.5 MI SOUTH OF HWY 51 ON 137 NORTH AVENUE | Sand Springs | OK |
| 1474 | OTHER SITES: GENERAL | LAKEVIEW SITE | 18 MILES NW OF LAKEVIEW; SECTIONS 25 & 30, T37S, R19E | Lakeview | OR |
| 1475 | OTHER SITES: GENERAL | THE DALLES SITE | 100 TIE PLANT ROAD | The Dalles | OR |
| 1476 | OTHER SITES: GENERAL | LEWIS RUN SITE | BIG SHANTY ROAD AND LAFAYETTE AVENUE | Lewis Run | PA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1477 | OTHER SITES: GENERAL | LACKAWANNA REFUSE SITE (AKA OLD FORGE LANDFILL) | SOUTH KEYSER AVENUE | Old Forge | PA |
| 1478 | OTHER SITES: GENERAL | PHILADELPHIA AG CHEM MANUFACTURING SITE | 1701 SOUTH DELAWARE AVENUE | Philadelphia | PA |
| 1479 | OTHER SITES: GENERAL | PHILADELPHIA WATERFRONT SITE (SYNTHETIC BONE ASH) | | Philadelphia | PA |
| 1480 | OTHER SITES: GENERAL | JERICHO SITE | 7747 SAVANNAH HIGHWAY | Ravenel/Jericho | SC |
| 1481 | OTHER SITES: GENERAL | MEMPHIS CONTAINER DRUM SITE (AKA TRI-STATE DRUMS) | 1761 WARFORD ROAD | Memphis | TN |
| 1482 | OTHER SITES: GENERAL | FEDERAL IRON & METAL SITE | 4000 AGNES STREET | Corpus Christi | TX |
| 1483 | OTHER SITES: GENERAL | BRINE SERVICE COMPANY SUPERFUND SITE | E/NE OF INTERSECTION OF IH-37 AND GOLDSTON ROAD | Corpus Christi | TX |
| 1484 | OTHER SITES: GENERAL | CORPUS CHRISTI TERMINAL 2 AND SOUTHWEST REFINERY | INTERSTATE HIGHWAY 37 AT NUECES BAY BLVD. NORTH | Corpus Christi | TX |
| 1485 | OTHER SITES: GENERAL | PESSES CHEMICAL COMPANY | | Fort Worth | TX |
| 1486 | OTHER SITES: GENERAL | FORT WORTH FORMER WASTE DISPOSAL SITE | 2031 SOUTH MAIN STREET | Ft. Worth | TX |
| 1487 | OTHER SITES: GENERAL | FALCON REFINERY SITE (NATIONAL OIL RECOVERY) | INTERSECTION OF FARM TO MARKET ROAD 2725 AND BISHOP ROAD | Ingleside | TX |
| 1488 | OTHER SITES: GENERAL | HAYES-SAMMONS WAREHOUSE TEXAS SUPERFUND SITE | MILLER AND 8TH STREETS, HOLLAND STREET & NICHOLSON AVENUE, AND FRANCISCO AVENUE | Mission | TX |
| 1489 | OTHER SITES: GENERAL | ROBSTOWN SITE | BALLARD LANE | Robstown | TX |
| 1490 | OTHER SITES: GENERAL | CORPUS CHRISTI LAND TREATMENT FACILITY | INTERSECTION OF TEXAS COUNTY ROAD 61 AND TEXAS COUNTY ROAD 28 | Robstown | TX |
| 1491 | OTHER SITES: GENERAL | MALONE SERVICE COMPANY SUPERFUND SITE | 5300 CAMPBELL BAYOU ROAD | Texas City | TX |
| 1492 | OTHER SITES: GENERAL | WASKOM SITE | TEXAS HIGHWAY 9 | Waksom | TX |
| 1493 | OTHER SITES: GENERAL | EKOTEK REFINERY SITE | 1626 NORTH CHICAGO STREET | Salt Lake City | UT |
| 1494 | OTHER SITES: GENERAL | WOODS CROSS SITE | 500 W. 800 SOUTH | Woods Cross | UT |
| 1495 | OTHER SITES: GENERAL | CHIPPEWA FALLS SITE | 1350 HALBLEIB ROAD | Chippewa Falls | WI |
| 1496 | OTHER SITES: GENERAL | MCFARLAND TERMINAL | 4009 TRIANGLE STREET | McFarland | WI |
| 1497 | OTHER SITES: GENERAL | PETROTOMICS MILL SITE | | Shirley Basin | WY |
| 1498 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Atmore | AL |
| 1499 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | Highway 93 | Brundidge | AL |
| 1500 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 2034 taylor road | Dothan | AL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 1501 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Florala | AL |
| 1502 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Foley | AL |
| 1503 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Hartford | AL |
| 1504 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Huxford | AL |
| 1505 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Loxley | AL |
| 1506 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Opp | AL |
| 1507 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Samson | AL |
| 1508 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Wicksburg | AL |
| 1509 | OTHER SITES: AG-CHEM SITES | LAND | | Des Ark | AR |
| 1510 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Keo | AR |
| 1511 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 15 chamberlain | East Windsor (a.k.a. Windsorville, CT) | CT |
| 1512 | OTHER SITES: AG-CHEM SITES | LAND | 220 Sackett Point Road | North Haven | CT |
| 1513 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Portland | CT |
| 1514 | OTHER SITES: AG-CHEM SITES | DA NITROGEN | | Delmar | DE |
| 1515 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Melford (possibly Milford) | DE |
| 1516 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Selbyville | DE |
| 1517 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Baker | FL |
| 1518 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | 2304 cypress lane | Belle Glade | FL |
| 1519 | OTHER SITES: AG-CHEM SITES | LAND | | Cocoa | FL |
| 1520 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Cottondale | FL |
| 1521 | OTHER SITES: AG-CHEM SITES | LAND | | Davenport | FL |
| 1522 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Eagle Lake | FL |
| 1523 | OTHER SITES: AG-CHEM SITES | LAND | | Eustis | FL |
| 1524 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | 1620 orange avenue | Fort Pierce | FL |
| 1525 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Ft. Lauderdale | FL |
| 1526 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Ft. Myers | FL |
| 1527 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Greenwood | FL |
| 1528 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Hastings | FL |
| 1529 | OTHER SITES: AG-CHEM SITES | FARM CENTER | 99 sw 14th avenue | Homestead | FL |
| 1530 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Immokalee | FL |
| 1531 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Jasper | FL |
| 1532 | OTHER SITES: AG-CHEM SITES | FARM CENTER | 3525 highway 4 west | Jay | FL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1533 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Lake Butler | FL |
| 1534 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Lake Wales | FL |
| 1535 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Miami | FL |
| 1536 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Orlando | FL |
| 1537 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Paxton | FL |
| 1538 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Pensacola | FL |
| 1539 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Pensacola | FL |
| 1540 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Plant City | FL |
| 1541 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Sanford | FL |
| 1542 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | St. Petersburg | FL |
| 1543 | OTHER SITES: AG-CHEM SITES | LAND | | Umatilla | FL |
| 1544 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Walnut Hill | FL |
| 1545 | OTHER SITES: AG-CHEM SITES | LAND | 2251 US Highway 17 S. | Wauchula (may be Wanchula) | FL |
| 1546 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Winter Garden | FL |
| 1547 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Adel | GA |
| 1548 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Ambrose | GA |
| 1549 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Baxley | GA |
| 1550 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Blackshear (may be Blacksheer) | GA |
| 1551 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Cartersville | GA |
| 1552 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Douglas | GA |
| 1553 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Lenox | GA |
| 1554 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Moultrie | GA |
| 1555 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Ocilla | GA |
| 1556 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Charles City | IA |
| 1557 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Farmersburg | IA |
| 1558 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 25245 highway 52 | Garnavillo | IA |
| 1559 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Laporte City | IA |
| 1560 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 206 railroad street | Mingo | IA |
| 1561 | OTHER SITES: AG-CHEM SITES | BLENDER- FARM CENTER | 100 E. Railroad Street | Kingston | IL |
| 1562 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Richmond | IL |
| 1563 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Blooming Grove | IN |
| 1564 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Huntington | IN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1565 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Lynn | IN |
| 1566 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Milroy | IN |
| 1567 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Raleigh | IN |
| 1568 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Rushville | IN |
| 1569 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Shelbyville | IN |
| 1570 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Worthington | IN |
| 1571 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Chanute | KS |
| 1572 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Gridley | KS |
| 1573 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 5357 hopkinsville road | Cadiz | KY |
| 1574 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Guthrie | KY |
| 1575 | OTHER SITES: AG-CHEM SITES | DISTRICT OFFICE | | Hopkinsville | KY |
| 1576 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 221 duffy street | Pembroke | KY |
| 1577 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Franklinton | LA |
| 1578 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 25 elm street | South Deerfield | MA |
| 1579 | OTHER SITES: AG-CHEM SITES | REGIONAL OFFICE | | W. Springfield | MA |
| 1580 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | West Concord | MA |
| 1581 | OTHER SITES: AG-CHEM SITES | FARM CENTER | 1003 hope road | Centreville | MD |
| 1582 | OTHER SITES: AG-CHEM SITES | MAINTENANCE AND EQUIPMENT CENTER | | Centreville | MD |
| 1583 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Chaptico | MD |
| 1584 | OTHER SITES: AG-CHEM SITES | FARM CENTER | 499 south cross street | Chestertown | MD |
| 1585 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Easton | MD |
| 1586 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Hickman | MD |
| 1587 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 1221 bruceville road | Keymar | MD |
| 1588 | OTHER SITES: AG-CHEM SITES | FARM CENTER | 12200 massey road, route 2999 | Massey | MD |
| 1589 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Mt. Airy | MD |
| 1590 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Powellville | MD |
| 1591 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Preston | MD |
| 1592 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Queen Ann | MD |
| 1593 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Reliance | MD |
| 1594 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Rigley | MD |
| 1595 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Secretary | MD |
| 1596 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Waldorf | MD |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1597 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Westover | MD |
| 1598 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Whitehall | MD |
| 1599 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Hudson | MI |
| 1600 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 540 atlantic avenue east | Dassel | MN |
| 1601 | OTHER SITES: AG-CHEM SITES | LAND | | Garvin | MN |
| 1602 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Norwood | MN |
| 1603 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Randolph | MN |
| 1604 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Wabasso | MN |
| 1605 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 2 north renville street | Winthrop | MN |
| 1606 | OTHER SITES: AG-CHEM SITES | REGIONAL OFFICE | | Jackson | MS |
| 1607 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Lucedale | MS |
| 1608 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Macon | MS |
| 1609 | OTHER SITES: AG-CHEM SITES | MAINTENANCE AND EQUIPMENT CENTER | | Vicksburg | MS |
| 1610 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Aurelian Springs | NC |
| 1611 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Ayden | NC |
| 1612 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Bessemer City | NC |
| 1613 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | China Grove | NC |
| 1614 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Clarendon | NC |
| 1615 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Como | NC |
| 1616 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Conway | NC |
| 1617 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Davidson | NC |
| 1618 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Enfield | NC |
| 1619 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Fairbluff | NC |
| 1620 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Gaston | NC |
| 1621 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Goldsboro | NC |
| 1622 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Harrelsville | NC |
| 1623 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Kinston | NC |
| 1624 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Liberty | NC |
| 1625 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Minturn | NC |
| 1626 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | 1302 10th avenue | Monroe | NC |
| 1627 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Mt. Olive | NC |
| 1628 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | New Bern | NC |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1629 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Newport | NC |
| 1630 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Newton Grove | NC |
| 1631 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Orrum | NC |
| 1632 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Pantego | NC |
| 1633 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Pikeville | NC |
| 1634 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Princeton | NC |
| 1635 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Red Oak | NC |
| 1636 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Rich Square | NC |
| 1637 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Robersonville | NC |
| 1638 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Shelby | NC |
| 1639 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Tyner | NC |
| 1640 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Warsaw | NC |
| 1641 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Williamston | NC |
| 1642 | OTHER SITES: AG-CHEM SITES | LAND | | Woodland | NC |
| 1643 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | North Walpole | NH |
| 1644 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Aura | NJ |
| 1645 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Cohansey | NJ |
| 1646 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Cranbury | NJ |
| 1647 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Dover | NJ |
| 1648 | OTHER SITES: AG-CHEM SITES | LAND | | Dover | NJ |
| 1649 | OTHER SITES: AG-CHEM SITES | LAND | | Jamesburg | NJ |
| 1650 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Jamesburg | NJ |
| 1651 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Ringoes | NJ |
| 1652 | OTHER SITES: AG-CHEM SITES | LAND | | Swedesboro | NJ |
| 1653 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Swedesboro | NJ |
| 1654 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Vineland | NJ |
| 1655 | OTHER SITES: AG-CHEM SITES | LAND | | Vineland | NJ |
| 1656 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Albion | NY |
| 1657 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 3530 route 343 | Amenia | NY |
| 1658 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Cato | NY |
| 1659 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Chatham | NY |
| 1660 | OTHER SITES: AG-CHEM SITES | LAND | | Eagle Harbor | NY |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1661 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Elba | NY |
| 1662 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Fonda | NY |
| 1663 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Goshen | NY |
| 1664 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Hamlin | NY |
| 1665 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Lawtons | NY |
| 1666 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Nattituck | NY |
| 1667 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | welcher road | Newark | NY |
| 1668 | OTHER SITES: AG-CHEM SITES | LAND | | North Collins | NY |
| 1669 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Salem | NY |
| 1670 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Schoharie | NY |
| 1671 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 1834 spangler road ne | Canton | OH |
| 1672 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Delta | OH |
| 1673 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Mt. Gilead | OH |
| 1674 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Union City | OH |
| 1675 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | W. Alexandria | OH |
| 1676 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Antlers | OK |
| 1677 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Boynton | OK |
| 1678 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Dustin | OK |
| 1679 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Ft. Cobb | OK |
| 1680 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Haskell | OK |
| 1681 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Poteau | OK |
| 1682 | OTHER SITES: AG-CHEM SITES | DISTRICT OFFICE | | Pryor | OK |
| 1683 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Sulphur | OK |
| 1684 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Talahina | OK |
| 1685 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Atglen | PA |
| 1686 | OTHER SITES: AG-CHEM SITES | FARM CENTER | 41 greenleaf road | Bloomsburg | PA |
| 1687 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Everett | PA |
| 1688 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Germansville | PA |
| 1689 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Holland | PA |
| 1690 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Honeybrook | PA |
| 1691 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Martinsburg | PA |
| 1692 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | McConnellsburg | PA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|------|-----------|-----------|-----------|-----------|------|
| 1693 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Millersville | PA |
| 1694 | OTHER SITES: AG-CHEM SITES | FARM CENTER | milnor road route 4 | Milnor (also referred to as Greencastle) | PA |
| 1695 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Pottstown | PA |
| 1696 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Russellville | PA |
| 1697 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Soudertown | PA |
| 1698 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | West Kingston | RI |
| 1699 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Aiken | SC |
| 1700 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Allendale | SC |
| 1701 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Bowman | SC |
| 1702 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Burton | SC |
| 1703 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Cameron | SC |
| 1704 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Darlington | SC |
| 1705 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Dazell | SC |
| 1706 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Eastover | SC |
| 1707 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Elko | SC |
| 1708 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Erhardt | SC |
| 1709 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Eutawville | SC |
| 1710 | OTHER SITES: AG-CHEM SITES | FARM CENTER AND MAINTENANCE/EQUIPMENT CENTER | | Florence | SC |
| 1711 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Gaston | SC |
| 1712 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Islandton | SC |
| 1713 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Kingstree | SC |
| 1714 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Lake City | SC |
| 1715 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Leesville | SC |
| 1716 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Little Mountain | SC |
| 1717 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Lone Star | SC |
| 1718 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Loris | SC |
| 1719 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Martin | SC |
| 1720 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Nesmeth | SC |
| 1721 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | North | SC |
| 1722 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Owesgo | SC |
| 1723 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Pelion | SC |
| 1724 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Rockhill | SC |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1725 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Saluda | SC |
| 1726 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Sumpter | SC |
| 1727 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Swansea | SC |
| 1728 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Sycamore | SC |
| 1729 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Timmonsville | SC |
| 1730 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Walterboro | SC |
| 1731 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Cedar Hill | TN |
| 1732 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | highway 902 | Dorchester | TX |
| 1733 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Courtland | VA |
| 1734 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Danville | VA |
| 1735 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Maurertown | VA |
| 1736 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Mt. Sidney | VA |
| 1737 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Mt. Solon | VA |
| 1738 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | South Hill | VA |
| 1739 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Stuarts Draft | VA |
| 1740 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Waverly | VA |
| 1741 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | White Post | VA |
| 1742 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 231 lenoir drive | Winchester | VA |
| 1743 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Bradford | VT |
| 1744 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Vergennes | VT |
| 1745 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Brandon | WI |
| 1746 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 101 n. third street | Darien | WI |
| 1747 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Livingston | WI |
| 1748 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 305 w. commercial drive | Lone Rock | WI |
| 1749 | OTHER SITES: AG-CHEM SITES | REGIONAL OFFICE | | Madison | WI |
| 1750 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 1302 10th avenue | Monroe | WI |
| 1751 | OTHER SITES: AG-CHEM SITES | MAINTENANCE AND EQUIPMENT CENTER | | Portage | WI |
| 1752 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 13501 old highway 11 | Sturtevant | WI |
| 1753 | OTHER SITES: MINING SITES | Mineral Springs | | Howard | AR |
| 1754 | OTHER SITES: MINING SITES | Newton County | | Newton | AR |
| 1755 | OTHER SITES: MINING SITES | East Cameron | | Sebastian | AR |
| 1756 | OTHER SITES: MINING SITES | Ft. Smith | | Sebastian | AR |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1757 | OTHER SITES: MINING SITES | Wilkem Project | | Sebastian | AR |
| 1758 | OTHER SITES: MINING SITES | Bates | | Sebastian/ Scott | AR |
| 1759 | OTHER SITES: MINING SITES | Maps/Correspondence (transferred to American Coal) | | Sebastian/ Scott | AR |
| 1760 | OTHER SITES: MINING SITES | NW CARRIZO PROJECT | | Apache | AZ |
| 1761 | OTHER SITES: MINING SITES | RATTLESNAKE AREA | | Apache | AZ |
| 1762 | OTHER SITES: MINING SITES | Ft. Bowie | | Cochise | AZ |
| 1763 | OTHER SITES: MINING SITES | Middlemarch | | Cochise | AZ |
| 1764 | OTHER SITES: MINING SITES | Mt. Glenn | | Cochise | AZ |
| 1765 | OTHER SITES: MINING SITES | WHETSTONE MTS | | Cochise | AZ |
| 1766 | OTHER SITES: MINING SITES | WHETSTONE PROJECT | | Cochise County | AZ |
| 1767 | OTHER SITES: MINING SITES | Copper Springs | | Gila | AZ |
| 1768 | OTHER SITES: MINING SITES | DRIPPING SPRINGS I | | Gila | AZ |
| 1769 | OTHER SITES: MINING SITES | GRANITE POINT AREA | | Gila | AZ |
| 1770 | OTHER SITES: MINING SITES | SIERRA ANCHA | | Gila | AZ |
| 1771 | OTHER SITES: MINING SITES | DRY MOUNTAIN | | Graham | AZ |
| 1772 | OTHER SITES: MINING SITES | SAFFORD | | Graham | AZ |
| 1773 | OTHER SITES: MINING SITES | Bouse | | La Paz | AZ |
| 1774 | OTHER SITES: MINING SITES | BLACK NO.1 MINE (FLAG NO.2) | | Lukachukai | AZ |
| 1775 | OTHER SITES: MINING SITES | BLACK NO.2 (WEST) | | Lukachukai | AZ |
| 1776 | OTHER SITES: MINING SITES | BLACK NO.2 MINE (BARE ROCK MESA) | | Lukachukai | AZ |
| 1777 | OTHER SITES: MINING SITES | DAN PHILLIPS | | Lukachukai | AZ |
| 1778 | OTHER SITES: MINING SITES | David Phillips | | Lukachukai | AZ |
| 1779 | OTHER SITES: MINING SITES | Edward McCabe | | Lukachukai | AZ |
| 1780 | OTHER SITES: MINING SITES | FLAG MESA- BLACK #1 | | Lukachukai | AZ |
| 1781 | OTHER SITES: MINING SITES | FLAG MESA- HENRY #1 | | Lukachukai | AZ |
| 1782 | OTHER SITES: MINING SITES | FLAG NO.1 MINE | | Lukachukai | AZ |
| 1783 | OTHER SITES: MINING SITES | HENRY PHILLIPS MINE | | Lukachukai | AZ |
| 1784 | OTHER SITES: MINING SITES | KNIFE EDGE MESA | | Lukachukai | AZ |
| 1785 | OTHER SITES: MINING SITES | KOLEY BLACK #2 | | Lukachukai | AZ |
| 1786 | OTHER SITES: MINING SITES | MESA I 1/2- L 8667 | | Lukachukai | AZ |
| 1787 | OTHER SITES: MINING SITES | MESA I 1/2 MINE | | Lukachukai | AZ |
| 1788 | OTHER SITES: MINING SITES | MESA I 1/2, WEST MINE | | Lukachukai | AZ |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1789 | OTHER SITES: MINING SITES | MESA I 1/4 MINE | | Lukachukai | AZ |
| 1790 | OTHER SITES: MINING SITES | MESA I 1/4 P 150 | | Lukachukai | AZ |
| 1791 | OTHER SITES: MINING SITES | MESA I 3/4 | | Lukachukai | AZ |
| 1792 | OTHER SITES: MINING SITES | MESA I 3/4 INCLINE | | Lukachukai | AZ |
| 1793 | OTHER SITES: MINING SITES | MESA I 3/4 MINE NO. 2, P150 | | Lukachukai | AZ |
| 1794 | OTHER SITES: MINING SITES | MESA I MINE NO. 10 | | Lukachukai | AZ |
| 1795 | OTHER SITES: MINING SITES | MESA I MINE NO. 11 | | Lukachukai | AZ |
| 1796 | OTHER SITES: MINING SITES | MESA I MINE NO. 12 | | Lukachukai | AZ |
| 1797 | OTHER SITES: MINING SITES | MESA I MINE NO. 13 | | Lukachukai | AZ |
| 1798 | OTHER SITES: MINING SITES | MESA I MINE NO. 14 | | Lukachukai | AZ |
| 1799 | OTHER SITES: MINING SITES | MESA I MINE NO. 15 | | Lukachukai | AZ |
| 1800 | OTHER SITES: MINING SITES | MESA I, MINE 12 A | | Lukachukai | AZ |
| 1801 | OTHER SITES: MINING SITES | MESA I, MINE 14A | | Lukachukai | AZ |
| 1802 | OTHER SITES: MINING SITES | MESA I, MINE 16 | | Lukachukai | AZ |
| 1803 | OTHER SITES: MINING SITES | MESA I, MINE 22 | | Lukachukai | AZ |
| 1804 | OTHER SITES: MINING SITES | MESA I, MINE 23 | | Lukachukai | AZ |
| 1805 | OTHER SITES: MINING SITES | MESA I, MINE 24 | | Lukachukai | AZ |
| 1806 | OTHER SITES: MINING SITES | MESA II - L 8666 & 8667 | | Lukachukai | AZ |
| 1807 | OTHER SITES: MINING SITES | MESA II - MINE 4 | | Lukachukai | AZ |
| 1808 | OTHER SITES: MINING SITES | MESA II 1/2 - L 8666 | | Lukachukai | AZ |
| 1809 | OTHER SITES: MINING SITES | MESA II 1/2 INCLINE | | Lukachukai | AZ |
| 1810 | OTHER SITES: MINING SITES | MESA II 1/2- P 21 | | Lukachukai | AZ |
| 1811 | OTHER SITES: MINING SITES | MESA II 1/2, MINE 4 | | Lukachukai | AZ |
| 1812 | OTHER SITES: MINING SITES | MESA II I/2, MINE 1 | | Lukachukai | AZ |
| 1813 | OTHER SITES: MINING SITES | MESA II MINE 3 | | Lukachukai | AZ |
| 1814 | OTHER SITES: MINING SITES | MESA II PIT | | Lukachukai | AZ |
| 1815 | OTHER SITES: MINING SITES | MESA II, MINE NO. 1, P-150 | | Lukachukai | AZ |
| 1816 | OTHER SITES: MINING SITES | MESA II, MINES NO. 1 (P-21) | | Lukachukai | AZ |
| 1817 | OTHER SITES: MINING SITES | MESA II, MINES NO. 2 (P-21) | | Lukachukai | AZ |
| 1818 | OTHER SITES: MINING SITES | MESA III - P 93 | | Lukachukai | AZ |
| 1819 | OTHER SITES: MINING SITES | MESA III MINE | | Lukachukai | AZ |
| 1820 | OTHER SITES: MINING SITES | MESA IV 1/2 MINE (1212 MINE) | | Lukachukai | AZ |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 1821 | OTHER SITES: MINING SITES | MESA IV 1/2- P57 | | Lukachukai | AZ |
| 1822 | OTHER SITES: MINING SITES | MESA IV L8666 | | Lukachukai | AZ |
| 1823 | OTHER SITES: MINING SITES | MESA IV MINE | | Lukachukai | AZ |
| 1824 | OTHER SITES: MINING SITES | MESA IV MINE NO. 2 | | Lukachukai | AZ |
| 1825 | OTHER SITES: MINING SITES | MESA IV WEST MINE | | Lukachukai | AZ |
| 1826 | OTHER SITES: MINING SITES | MESA IV, MINE NO. 3 | | Lukachukai | AZ |
| 1827 | OTHER SITES: MINING SITES | MESA V - L 8666 | | Lukachukai | AZ |
| 1828 | OTHER SITES: MINING SITES | MESA V ADIT (MINE 1) | | Lukachukai | AZ |
| 1829 | OTHER SITES: MINING SITES | MESA V INCLINE (MINE2) | | Lukachukai | AZ |
| 1830 | OTHER SITES: MINING SITES | MESA V MINE | | Lukachukai | AZ |
| 1831 | OTHER SITES: MINING SITES | MESA VI MINE | | Lukachukai | AZ |
| 1832 | OTHER SITES: MINING SITES | Mike Brodie | | Lukachukai | AZ |
| 1833 | OTHER SITES: MINING SITES | Peter Fred Yazzie | | Lukachukai | AZ |
| 1834 | OTHER SITES: MINING SITES | Section 32 (15N-11W) (NE114, D. Begay allotment) mined through Moe #5 decline | | Lukachukai | AZ |
| 1835 | OTHER SITES: MINING SITES | SIMPSON NO. 181 | | Lukachukai | AZ |
| 1836 | OTHER SITES: MINING SITES | STEP MESA MINE | | Lukachukai | AZ |
| 1837 | OTHER SITES: MINING SITES | TOM JOE | | Lukachukai | AZ |
| 1838 | OTHER SITES: MINING SITES | TOMMY JAMES MINE | | Lukachukai | AZ |
| 1839 | OTHER SITES: MINING SITES | Belmont | | Maricopa | AZ |
| 1840 | OTHER SITES: MINING SITES | Vekol | | Maricopa | AZ |
| 1841 | OTHER SITES: MINING SITES | HUALPAI MT. | | Mohave | AZ |
| 1842 | OTHER SITES: MINING SITES | ODELL RANCH | | Mohave | AZ |
| 1843 | OTHER SITES: MINING SITES | HUALPAI MOUNTAINS PROSPECT | | Mohave County | AZ |
| 1844 | OTHER SITES: MINING SITES | Las Gujas | | Pima | AZ |
| 1845 | OTHER SITES: MINING SITES | MINING SITE | | Pima | AZ |
| 1846 | OTHER SITES: MINING SITES | Bloodsucker Wash | | Pinal | AZ |
| 1847 | OTHER SITES: MINING SITES | Durham Hills | | Pinal | AZ |
| 1848 | OTHER SITES: MINING SITES | Friendly Corners | | Pinal | AZ |
| 1849 | OTHER SITES: MINING SITES | Granite Mt. | | Pinal | AZ |
| 1850 | OTHER SITES: MINING SITES | Kelvin | | Pinal | AZ |
| 1851 | OTHER SITES: MINING SITES | Poston Butte | | Pinal | AZ |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 1852 | OTHER SITES: MINING SITES | San Manuel-North | | Pinal | AZ |
| 1853 | OTHER SITES: MINING SITES | Three Buttes | | Pinal | AZ |
| 1854 | OTHER SITES: MINING SITES | SUMMIT DISTRICT | | Pinal | AZ |
| 1855 | OTHER SITES: MINING SITES | Harshaw Area | | Santa Cruz | AZ |
| 1856 | OTHER SITES: MINING SITES | Ivanhoe | | Santa Cruz | AZ |
| 1857 | OTHER SITES: MINING SITES | Thunder Mt. (Sunnyside) | | Santa Cruz | AZ |
| 1858 | OTHER SITES: MINING SITES | Washington-Duquesne | | Santa Cruz | AZ |
| 1859 | OTHER SITES: MINING SITES | THUNDER MOUNTAIN PROSPECT | | Santa Cruz County | AZ |
| 1860 | OTHER SITES: MINING SITES | TSE TAH MINES | MINING | Tse Tah | AZ |
| 1861 | OTHER SITES: MINING SITES | BLOCK K | | Tse Tah | AZ |
| 1862 | OTHER SITES: MINING SITES | BRODIE 1 | | Tse Tah | AZ |
| 1863 | OTHER SITES: MINING SITES | BAGDAD | | Yavapai | AZ |
| 1864 | OTHER SITES: MINING SITES | COTTONWOOD | | Yavapai | AZ |
| 1865 | OTHER SITES: MINING SITES | HILLSIDE PROJECT | | Yavapai | AZ |
| 1866 | OTHER SITES: MINING SITES | HUMBUG | | Yavapai | AZ |
| 1867 | OTHER SITES: MINING SITES | MONTEZUMA | | Yavapai | AZ |
| 1868 | OTHER SITES: MINING SITES | HILLSIDE PROJECT | | Yavapai County | AZ |
| 1869 | OTHER SITES: MINING SITES | QUARTZITE PROSPECT | | Yuma | AZ |
| 1870 | OTHER SITES: MINING SITES | RED MOUNTAIN SITE | FORMER MINERALS EXPLORATION | | AZ |
| 1871 | OTHER SITES: MINING SITES | MONUMENT VALLEY | | | AZ |
| 1872 | OTHER SITES: MINING SITES | Ace | | Inyo | CA |
| 1873 | OTHER SITES: MINING SITES | Inyo | | Inyo | CA |
| 1874 | OTHER SITES: MINING SITES | North Searles Valley | | Inyo | CA |
| 1875 | OTHER SITES: MINING SITES | Owens Lake | | Inyo | CA |
| 1876 | OTHER SITES: MINING SITES | Panamint Valley | | Inyo | CA |
| 1877 | OTHER SITES: MINING SITES | Ratcliff Mine | | Inyo | CA |
| 1878 | OTHER SITES: MINING SITES | Rand Project | | Kern | CA |
| 1879 | OTHER SITES: MINING SITES | coulterville | | Mariposa | CA |
| 1880 | OTHER SITES: MINING SITES | MONO LAKE | | Mono | CA |
| 1881 | OTHER SITES: MINING SITES | Gravel Hills | | San Bernadino | CA |
| 1882 | OTHER SITES: MINING SITES | Harvard Hills/Lavic | | San Bernadino | CA |
| 1883 | OTHER SITES: MINING SITES | Searles Lake | | San Bernadino | CA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 1884 | OTHER SITES: MINING SITES | Downieville | | Sierra | CA |
| 1885 | OTHER SITES: MINING SITES | Hornbrook | | Siskiyou | CA |
| 1886 | OTHER SITES: MINING SITES | Juniper Ur Mine, Sonora Mining District | | Tuolumne | CA |
| 1887 | OTHER SITES: MINING SITES | COPPER ROCK | | Boulder | CO |
| 1888 | OTHER SITES: MINING SITES | PORPHYRY MT./JAMESTOWN | | Boulder | CO |
| 1889 | OTHER SITES: MINING SITES | SISK PROSPECT | | Boulder | CO |
| 1890 | OTHER SITES: MINING SITES | Empire Area | | Clear Creek | CO |
| 1891 | OTHER SITES: MINING SITES | SPANISH BAR | | Clear Creek | CO |
| 1892 | OTHER SITES: MINING SITES | N. WET MT. | | Custer | CO |
| 1893 | OTHER SITES: MINING SITES | S. WEST MT. | | Custer | CO |
| 1894 | OTHER SITES: MINING SITES | DELORES CANYON | | Delores | CO |
| 1895 | OTHER SITES: MINING SITES | Cedaredge | | Delta | CO |
| 1896 | OTHER SITES: MINING SITES | East Colorado Springs | | El Paso | CO |
| 1897 | OTHER SITES: MINING SITES | COTOPAXI FAULT | | Fremont | CO |
| 1898 | OTHER SITES: MINING SITES | LAST CHANCE MINE | | Fremont | CO |
| 1899 | OTHER SITES: MINING SITES | PLEASANT VALLEY FAULT | | Fremont | CO |
| 1900 | OTHER SITES: MINING SITES | TALLAHASSEE CREEK | | Fremont | CO |
| 1901 | OTHER SITES: MINING SITES | TEXAS CREEK | | Fremont | CO |
| 1902 | OTHER SITES: MINING SITES | Grand Hogback | | Garfield/Rio Blanco | CO |
| 1903 | OTHER SITES: MINING SITES | BANTA HILL | | Gilpin | CO |
| 1904 | OTHER SITES: MINING SITES | Banta Hill | | Gilpin | CO |
| 1905 | OTHER SITES: MINING SITES | TOLLAND | | Gilpin | CO |
| 1906 | OTHER SITES: MINING SITES | Colorado School of Mines research Institute | | Golden | CO |
| 1907 | OTHER SITES: MINING SITES | PARSHALL/HOT SULPHUR SPRINGS | | Grand | CO |
| 1908 | OTHER SITES: MINING SITES | MCINTOSH MT. | | Gunnison | CO |
| 1909 | OTHER SITES: MINING SITES | TOMICHI CREEK | | Gunnison | CO |
| 1910 | OTHER SITES: MINING SITES | COTTONWOOD GULCH | | Gunnison/ Saguache | CO |
| 1911 | OTHER SITES: MINING SITES | NORTH TRINIDAD PROJECT-BEULAH | | Huerfana/Las Animas/Pueblo | CO |
| 1912 | OTHER SITES: MINING SITES | Coalmont | | Jackson | CO |
| 1913 | OTHER SITES: MINING SITES | North Park Area | | Jackson | CO |
| 1914 | OTHER SITES: MINING SITES | RED CANYON | | Jackson | CO |
| 1915 | OTHER SITES: MINING SITES | ASCENSION | | Jefferson | CO |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 1916 | OTHER SITES: MINING SITES | PURGATORIE CANYON | | La Plata | CO |
| 1917 | OTHER SITES: MINING SITES | Empire Mine | | Larimer | CO |
| 1918 | OTHER SITES: MINING SITES | Cameo | | Mesa | CO |
| 1919 | OTHER SITES: MINING SITES | Blue Mt. | | Moffat | CO |
| 1920 | OTHER SITES: MINING SITES | Craig-Lay-Mabell | | Moffat | CO |
| 1921 | OTHER SITES: MINING SITES | North Craig | | Moffat | CO |
| 1922 | OTHER SITES: MINING SITES | Baggs | | Moffat/Carbon | CO |
| 1923 | OTHER SITES: MINING SITES | Green River-Hams Fork Region | | Moffat/Routt | CO |
| 1924 | OTHER SITES: MINING SITES | MOFFAT COUNTY | | Moffat/Routt | CO |
| 1925 | OTHER SITES: MINING SITES | Williams Fort Mts. | | Moffat/Routt | CO |
| 1926 | OTHER SITES: MINING SITES | LITTLE GYPSUM | | Montrose | CO |
| 1927 | OTHER SITES: MINING SITES | CLAY CREEK | | Montrose/ San Miguel | CO |
| 1928 | OTHER SITES: MINING SITES | ANTERO BASIN | | Park | CO |
| 1929 | OTHER SITES: MINING SITES | LIN PROSPECT/KENOSHA PASS | | Park | CO |
| 1930 | OTHER SITES: MINING SITES | LINIGER LAKE | | Park | CO |
| 1931 | OTHER SITES: MINING SITES | Meeker Area | | Rio Blanco | CO |
| 1932 | OTHER SITES: MINING SITES | THORNBURG | | Rio Blanco | CO |
| 1933 | OTHER SITES: MINING SITES | COLUMBINE | | Routt | CO |
| 1934 | OTHER SITES: MINING SITES | Steamboat Springs | | Routt | CO |
| 1935 | OTHER SITES: MINING SITES | Danfort Hills | | Routt/Rio Blanco | CO |
| 1936 | OTHER SITES: MINING SITES | BLACK SAGE PASS | | Saguache | CO |
| 1937 | OTHER SITES: MINING SITES | GRAVEYARD GULCH | | Saguache | CO |
| 1938 | OTHER SITES: MINING SITES | GUNNISON MINING | | Saguache | CO |
| 1939 | OTHER SITES: MINING SITES | PONCHA CREEK | | Saguache | CO |
| 1940 | OTHER SITES: MINING SITES | SUMMIT CANYON | | San Miguel | CO |
| 1941 | OTHER SITES: MINING SITES | CRIPPLE CREEK | | Teller | CO |
| 1942 | OTHER SITES: MINING SITES | Roggen | | Weld/Morgan | CO |
| 1943 | OTHER SITES: MINING SITES | BEAVER MESA | | | CO |
| 1944 | OTHER SITES: MINING SITES | DELTA/MONTROSE/ WESTERWATER | | | CO |
| 1945 | OTHER SITES: MINING SITES | LADWIG | | | CO |
| 1946 | OTHER SITES: MINING SITES | Red Mountain, CO | | | CO |
| 1947 | OTHER SITES: MINING SITES | LaCrosse | | Alchua | FL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|------|------|------|------|------|------|
| 1948 | OTHER SITES: MINING SITES | Baker | | Baker | FL |
| 1949 | OTHER SITES: MINING SITES | Brooker | | Bradford | FL |
| 1950 | OTHER SITES: MINING SITES | McDavid Property | | Bradford | FL |
| 1951 | OTHER SITES: MINING SITES | North Lake City | | Columbia | FL |
| 1952 | OTHER SITES: MINING SITES | Osceola Forest | | Columbia | FL |
| 1953 | OTHER SITES: MINING SITES | Brewster Phosphate | | Florida - Bradford, Columbia, Hillsboro, Hamilton, Manatee, Polk, Union & others | FL |
| 1954 | OTHER SITES: MINING SITES | Lonesome Mine | | Hillsboro | FL |
| 1955 | OTHER SITES: MINING SITES | Sidney Mine Site | | Hillsboro | FL |
| 1956 | OTHER SITES: MINING SITES | Hillsborough | | Hillsborough | FL |
| 1957 | OTHER SITES: MINING SITES | Jameson Block | | Manatee | FL |
| 1958 | OTHER SITES: MINING SITES | Yulee Prospect | | Nassau | FL |
| 1959 | OTHER SITES: MINING SITES | Baugh Block | | Polk | FL |
| 1960 | OTHER SITES: MINING SITES | Suwannee | | Suwannee | FL |
| 1961 | OTHER SITES: MINING SITES | Dukes Phosphate | | Union | FL |
| 1962 | OTHER SITES: MINING SITES | North Florida | | | FL |
| 1963 | OTHER SITES: MINING SITES | Fendig Area | | Brantley | GA |
| 1964 | OTHER SITES: MINING SITES | Hoboken E | | Brantley | GA |
| 1965 | OTHER SITES: MINING SITES | Lulation Project | | Brantley | GA |
| 1966 | OTHER SITES: MINING SITES | Oak Level Project | | Bryan | GA |
| 1967 | OTHER SITES: MINING SITES | Hazard Neck/Union Camp | | Camden | GA |
| 1968 | OTHER SITES: MINING SITES | Burnt Fort W | | Charlton | GA |
| 1969 | OTHER SITES: MINING SITES | Folkston Tract/Union Camp | | Charlton | GA |
| 1970 | OTHER SITES: MINING SITES | Chatham | | Chatham | GA |
| 1971 | OTHER SITES: MINING SITES | Tybee/L. Tybee Islands | | Chatham | GA |
| 1972 | OTHER SITES: MINING SITES | Altama Area | | Glynn | GA |
| 1973 | OTHER SITES: MINING SITES | Sunbury Project | | Liberty | GA |
| 1974 | OTHER SITES: MINING SITES | Ludowici Project | | Long | GA |
| 1975 | OTHER SITES: MINING SITES | Lowndes County Block | | Lowndes | GA |
| 1976 | OTHER SITES: MINING SITES | Darian | | McIntosh | GA |
| 1977 | OTHER SITES: MINING SITES | McIntosh County | | McIntosh | GA |
| 1978 | OTHER SITES: MINING SITES | Mt. Plesant Project | | Wayen | GA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-------------------------------|---------------|-------------------|----------------|-------|
| 1979 | OTHER SITES: MINING SITES | S. Jesup Area | | Wayne | GA |
| 1980 | OTHER SITES: MINING SITES | Caribou County | | Caribou | ID |
| 1981 | OTHER SITES: MINING SITES | Soda Springs | | Caribou | ID |
| 1982 | OTHER SITES: MINING SITES | STANLEY BASIN | | Custer | ID |
| 1983 | OTHER SITES: MINING SITES | Orogrande | | Idaho | ID |
| 1984 | OTHER SITES: MINING SITES | Petzite Project | | Idaho | ID |
| 1985 | OTHER SITES: MINING SITES | IXL | | Washington | ID |
| 1986 | OTHER SITES: MINING SITES | Spring Valley Area | | Bureau | IL |
| 1987 | OTHER SITES: MINING SITES | Royal | | Champaign/ Vermillion | IL |
| 1988 | OTHER SITES: MINING SITES | GALATIA MINE SITE | | Galatia | IL |
| 1989 | OTHER SITES: MINING SITES | Galatia  (transferred to American Coal) | | Hamilton/ Saline | IL |
| 1990 | OTHER SITES: MINING SITES | Hamilton-Saline | | Hamilton/ Saline | IL |
| 1991 | OTHER SITES: MINING SITES | Flourspar District | | Johnson/ Pope/ Saline | IL |
| 1992 | OTHER SITES: MINING SITES | Oglesby | | LaSalle/Putnam | IL |
| 1993 | OTHER SITES: MINING SITES | Granville | | Putnam | IL |
| 1994 | OTHER SITES: MINING SITES | Danville-Royal | | Vermillion | IL |
| 1995 | OTHER SITES: MINING SITES | Dubois | | Washington | IL |
| 1996 | OTHER SITES: MINING SITES | Griffin Burn Station Site | | Griffin | IN |
| 1997 | OTHER SITES: MINING SITES | Oswego Area | | Cherokee/ Labette | KS |
| 1998 | OTHER SITES: MINING SITES | Kansas Zinc | | Kansas | KS |
| 1999 | OTHER SITES: MINING SITES | Linn County | | Linn | KS |
| 2000 | OTHER SITES: MINING SITES | Newton County | | Newton | KS |
| 2001 | OTHER SITES: MINING SITES | Eastern Kansas | | | KS |
| 2002 | OTHER SITES: MINING SITES | Maxey Flats | | | KY |
| 2003 | OTHER SITES: MINING SITES | LIBERTY MINE | | Frederick | MD |
| 2004 | OTHER SITES: MINING SITES | MOLL OCKETT FAULT | | Oxford | ME |
| 2005 | OTHER SITES: MINING SITES | EVERGREEN | | Oxford/Cumberland | ME |
| 2006 | OTHER SITES: MINING SITES | WILSON STREAM | | Washington | ME |
| 2007 | OTHER SITES: MINING SITES | HURON RIVER | | Baraga | MI |
| 2008 | OTHER SITES: MINING SITES | NORTHEAST TAYLOR | | Baraga | MI |
| 2009 | OTHER SITES: MINING SITES | REID | | Baraga | MI |
| 2010 | OTHER SITES: MINING SITES | Tunis | | Baraga | MI |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 2011 | OTHER SITES: MINING SITES | EAST RANGE INPUT AREA | | Dickinson | MI |
| 2012 | OTHER SITES: MINING SITES | Fitzgerald Creek | | Dickinson | MI |
| 2013 | OTHER SITES: MINING SITES | HARDWOOD | | Dickinson | MI |
| 2014 | OTHER SITES: MINING SITES | Banner | | Gogebic | MI |
| 2015 | OTHER SITES: MINING SITES | Cisco Branch | | Gogebic | MI |
| 2016 | OTHER SITES: MINING SITES | King Lake | | Gogebic | MI |
| 2017 | OTHER SITES: MINING SITES | Misty Lake | | Gogebic | MI |
| 2018 | OTHER SITES: MINING SITES | Presque Isle River | | Gogebic | MI |
| 2019 | OTHER SITES: MINING SITES | Winegar | | Gogebic | MI |
| 2020 | OTHER SITES: MINING SITES | Amasa | | Iron | MI |
| 2021 | OTHER SITES: MINING SITES | Dead River East | | Marquette | MI |
| 2022 | OTHER SITES: MINING SITES | Dead River West | | Marquette | MI |
| 2023 | OTHER SITES: MINING SITES | Deer Lake | | Marquette | MI |
| 2024 | OTHER SITES: MINING SITES | GREEN CREEK | | Marquette | MI |
| 2025 | OTHER SITES: MINING SITES | Nash Creek | | Marquette | MI |
| 2026 | OTHER SITES: MINING SITES | STURGEON RIVER | | Marquette | MI |
| 2027 | OTHER SITES: MINING SITES | East Range/ Nathan | | Menominee | MI |
| 2028 | OTHER SITES: MINING SITES | Miscauna Creek | | Menominee | MI |
| 2029 | OTHER SITES: MINING SITES | Nadeau | | Menominee | MI |
| 2030 | OTHER SITES: MINING SITES | Lordsburg-San Simon | | Hildalgo | MN |
| 2031 | OTHER SITES: MINING SITES | Birchdale | | Koochiching | MN |
| 2032 | OTHER SITES: MINING SITES | Ranier | | Koochiching | MN |
| 2033 | OTHER SITES: MINING SITES | Burntside | | St. Louis | MN |
| 2034 | OTHER SITES: MINING SITES | Cook-Tower | | St. Louis | MN |
| 2035 | OTHER SITES: MINING SITES | Foss Lake | | St. Louis | MN |
| 2036 | OTHER SITES: MINING SITES | Murray | | St. Louis | MN |
| 2037 | OTHER SITES: MINING SITES | Pike Bay | | St. Louis | MN |
| 2038 | OTHER SITES: MINING SITES | Spaulding | | St. Louis | MN |
| 2039 | OTHER SITES: MINING SITES | Vermillion / Mud Lake | | St. Louis | MN |
| 2040 | OTHER SITES: MINING SITES | Vermillion/ Larue | | St. Louis | MN |
| 2041 | OTHER SITES: MINING SITES | Echo Trail Area | | | MN |
| 2042 | OTHER SITES: MINING SITES | LaCrois & Kwishiwi Rager Districts | | | MN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 2043 | OTHER SITES: MINING SITES | Superior National Forest | | | MN |
| 2044 | OTHER SITES: MINING SITES | Sheldon-Bellamy | | Barton/Vernon | MO |
| 2045 | OTHER SITES: MINING SITES | SE Missouri Regional | | Butler/Carter/Reynolds /Shannon/Wayne | MO |
| 2046 | OTHER SITES: MINING SITES | Cape Girardeau | | Cape Girardeau | MO |
| 2047 | OTHER SITES: MINING SITES | Van Buren | | Carter | MO |
| 2048 | OTHER SITES: MINING SITES | Caulfield District | | Howell/Ozark | MO |
| 2049 | OTHER SITES: MINING SITES | Western Missouri | | Regional | MO |
| 2050 | OTHER SITES: MINING SITES | Corridon | | Reynolds | MO |
| 2051 | OTHER SITES: MINING SITES | Ellington Area | | Reynolds | MO |
| 2052 | OTHER SITES: MINING SITES | Ozark Mine | | Reynolds | MO |
| 2053 | OTHER SITES: MINING SITES | Paint Rock | | Shannon | MO |
| 2054 | OTHER SITES: MINING SITES | Spring Valley | | Shannon | MO |
| 2055 | OTHER SITES: MINING SITES | St. Genevieve County | | St. Genevieve | MO |
| 2056 | OTHER SITES: MINING SITES | Vernon County | | Vernon | MO |
| 2057 | OTHER SITES: MINING SITES | Piedmont | | Wayne | MO |
| 2058 | OTHER SITES: MINING SITES | Belgrade | | | MO |
| 2059 | OTHER SITES: MINING SITES | Williamsville Area | | | MO |
| 2060 | OTHER SITES: MINING SITES | Black Coulee | | Big Horn | MT |
| 2061 | OTHER SITES: MINING SITES | Decker | | Big Horn | MT |
| 2062 | OTHER SITES: MINING SITES | Wolfe Mt. | | Big Horn | MT |
| 2063 | OTHER SITES: MINING SITES | Indian Creek | | Broadwater | MT |
| 2064 | OTHER SITES: MINING SITES | ALZADA | | Carter | MT |
| 2065 | OTHER SITES: MINING SITES | BELLE TOWER | | Carter | MT |
| 2066 | OTHER SITES: MINING SITES | NO BLACK HILLS JV | | Carter | MT |
| 2067 | OTHER SITES: MINING SITES | NW BLACK HILLS | | Carter | MT |
| 2068 | OTHER SITES: MINING SITES | Boston Coulee | | Cascade | MT |
| 2069 | OTHER SITES: MINING SITES | Great Falls | | Cascade | MT |
| 2070 | OTHER SITES: MINING SITES | Pine Hills | | Custer | MT |
| 2071 | OTHER SITES: MINING SITES | 13 Mile Creek/Fox Lake | | Dawson | MT |
| 2072 | OTHER SITES: MINING SITES | Hodges-Griffith | | Dawson | MT |
| 2073 | OTHER SITES: MINING SITES | Pust Coal Bed | | Dawson | MT |
| 2074 | OTHER SITES: MINING SITES | W. CEDAR CREEK | | Fallon/Wibaux | MT |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 2075 | OTHER SITES: MINING SITES | Blackfeet-Valier | | Glacier/Ponderosa | MT |
| 2076 | OTHER SITES: MINING SITES | Revenue Flats | | Madison | MT |
| 2077 | OTHER SITES: MINING SITES | Goose Lake | | Park | MT |
| 2078 | OTHER SITES: MINING SITES | Otter Creek | | Powder River | MT |
| 2079 | OTHER SITES: MINING SITES | Pumpkin Creek | | Powder River | MT |
| 2080 | OTHER SITES: MINING SITES | Custer Forest | | Powder River/Rosebud | MT |
| 2081 | OTHER SITES: MINING SITES | Williston & Powder River Basins | | regional | MT |
| 2082 | OTHER SITES: MINING SITES | Colstrip | | Rosebud | MT |
| 2083 | OTHER SITES: MINING SITES | Minnesott Ridge | | Beaufort/ Pamlico | NC |
| 2084 | OTHER SITES: MINING SITES | Hallman-Beam Deposit | | Gaston | NC |
| 2085 | OTHER SITES: MINING SITES | Kings Mt. | | Gaston/ Lincoln | NC |
| 2086 | OTHER SITES: MINING SITES | Becker North | | Pamlico | NC |
| 2087 | OTHER SITES: MINING SITES | Pamlico | | Pamlico | NC |
| 2088 | OTHER SITES: MINING SITES | Snow Hill | | Perquiamans/Chowan | NC |
| 2089 | OTHER SITES: MINING SITES | Pierce | | Slope | NC |
| 2090 | OTHER SITES: MINING SITES | Ukrainia Area | | Billings | ND |
| 2091 | OTHER SITES: MINING SITES | Manning Project | | Billings/Dunn | ND |
| 2092 | OTHER SITES: MINING SITES | Bowman Area | | Bowman | ND |
| 2093 | OTHER SITES: MINING SITES | Bowman-Haley | | Bowman | ND |
| 2094 | OTHER SITES: MINING SITES | Ives | | Bowman/Slope | ND |
| 2095 | OTHER SITES: MINING SITES | EAST CEDAR CREEK | | Golden Valley/ Slope | ND |
| 2096 | OTHER SITES: MINING SITES | Flat Top Mt. | | Harding | ND |
| 2097 | OTHER SITES: MINING SITES | Waterford City | | McKenzie | ND |
| 2098 | OTHER SITES: MINING SITES | Mercer County | | Mercer | ND |
| 2099 | OTHER SITES: MINING SITES | Zenith Project | | Stark | ND |
| 2100 | OTHER SITES: MINING SITES | BOWMAN LIGNITE | | | ND |
| 2101 | OTHER SITES: MINING SITES | Griffin Burn Station | | | ND |
| 2102 | OTHER SITES: MINING SITES | SADDLE BUTTES | | | ND |
| 2103 | OTHER SITES: MINING SITES | BUFFALO CREEK | | Red Willow | NE |
| 2104 | OTHER SITES: MINING SITES | CHADRON ARCH | | Sheridan | NE |
| 2105 | OTHER SITES: MINING SITES | Manchester/ASARCO | | Ocean/ Manchester | NJ |
| 2106 | OTHER SITES: MINING SITES | BENEVIDEZ RANCH | | Bernalillo | NM |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 2107 | OTHER SITES: MINING SITES | SAN JUAL MESA | | Canves/ Roosevelt | NM |
| 2108 | OTHER SITES: MINING SITES | N. DATIL MONGOLION VOLCANIC | | Catrol | NM |
| 2109 | OTHER SITES: MINING SITES | MAYES WASH | | Catron | NM |
| 2110 | OTHER SITES: MINING SITES | TEJANA MESA | | Catron | NM |
| 2111 | OTHER SITES: MINING SITES | White City | | Eddy | NM |
| 2112 | OTHER SITES: MINING SITES | Carlsbad Mining District | | Eddy/Lea | NM |
| 2113 | OTHER SITES: MINING SITES | Hobbs | | Eddy/Lea | NM |
| 2114 | OTHER SITES: MINING SITES | CLOVIS POINT COAL MINE | | Gillette | NM |
| 2115 | OTHER SITES: MINING SITES | JACOBS RANCH COAL MINE | | Gillette | NM |
| 2116 | OTHER SITES: MINING SITES | Burro Mt. Area | | Grant | NM |
| 2117 | OTHER SITES: MINING SITES | Hanover Mt. | | Grant | NM |
| 2118 | OTHER SITES: MINING SITES | HANOVER MINE | | Grant County | NM |
| 2119 | OTHER SITES: MINING SITES | White Signal | | Grant/ Hidalgo | NM |
| 2120 | OTHER SITES: MINING SITES | Grant | | Grant/ Luna | NM |
| 2121 | OTHER SITES: MINING SITES | S BURRO MT. | | Grant/ Luna | NM |
| 2122 | OTHER SITES: MINING SITES | W. Lordsburg | | Hidalgo | NM |
| 2123 | OTHER SITES: MINING SITES | POTASH Mines | | Hobbs | NM |
| 2124 | OTHER SITES: MINING SITES | Tres Hermanas | | Luna | NM |
| 2125 | OTHER SITES: MINING SITES | Borrego Pass | | McKinley | NM |
| 2126 | OTHER SITES: MINING SITES | Crownpoint | | McKinley | NM |
| 2127 | OTHER SITES: MINING SITES | Echo Tank | | McKinley | NM |
| 2128 | OTHER SITES: MINING SITES | Gallup Embayment | | McKinley | NM |
| 2129 | OTHER SITES: MINING SITES | Hosta Butte | | McKinley | NM |
| 2130 | OTHER SITES: MINING SITES | Kerr McGee Pit 31-13-9 | | McKinley | NM |
| 2131 | OTHER SITES: MINING SITES | Lee Mine | | McKinley | NM |
| 2132 | OTHER SITES: MINING SITES | Mariano-Smith Lake | | McKinley | NM |
| 2133 | OTHER SITES: MINING SITES | Marquez TVA JV | | McKinley | NM |
| 2134 | OTHER SITES: MINING SITES | Mexican Springs | | McKinley | NM |
| 2135 | OTHER SITES: MINING SITES | Pena Ranch | | McKinley | NM |
| 2136 | OTHER SITES: MINING SITES | Roca Honda | | McKinley | NM |
| 2137 | OTHER SITES: MINING SITES | San Juan Basin | | McKinley | NM |
| 2138 | OTHER SITES: MINING SITES | San Mateo Mesa | | McKinley | NM |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 2139 | OTHER SITES: MINING SITES | Section 17 | | McKinley | NM |
| 2140 | OTHER SITES: MINING SITES | Section 19 | | McKinley | NM |
| 2141 | OTHER SITES: MINING SITES | W. Largo | | McKinley | NM |
| 2142 | OTHER SITES: MINING SITES | Marquez | | McKinley/ Sandoval | NM |
| 2143 | OTHER SITES: MINING SITES | Poison Canyon | | McKinley/ Sandoval | NM |
| 2144 | OTHER SITES: MINING SITES | Williams Lease | | McKinley/ Sandoval | NM |
| 2145 | OTHER SITES: MINING SITES | Chama Basin | | Rio Arriba | NM |
| 2146 | OTHER SITES: MINING SITES | Chuka Mts. | | San Juan | NM |
| 2147 | OTHER SITES: MINING SITES | Kerr-McGee Uranium Mine | | San Juan | NM |
| 2148 | OTHER SITES: MINING SITES | Ojo Alamo | | San Juan | NM |
| 2149 | OTHER SITES: MINING SITES | Atargue | | San Miguel | NM |
| 2150 | OTHER SITES: MINING SITES | Triassic | | San Miguel | NM |
| 2151 | OTHER SITES: MINING SITES | Canada De Los Alamos | | Sandoval | NM |
| 2152 | OTHER SITES: MINING SITES | E. Rio Puerco/Agua Salada | | Sandoval | NM |
| 2153 | OTHER SITES: MINING SITES | Nacimiento | | Sandoval | NM |
| 2154 | OTHER SITES: MINING SITES | Rio Puerco Area | | Sandoval | NM |
| 2155 | OTHER SITES: MINING SITES | SE Rio Puerco | | Sandoval | NM |
| 2156 | OTHER SITES: MINING SITES | Eden Valley | | Sweetwater | NM |
| 2157 | OTHER SITES: MINING SITES | Champion Mine (Copper Hill) | | Taos | NM |
| 2158 | OTHER SITES: MINING SITES | Hoarce Mesa Prospect | | Valencia | NM |
| 2159 | OTHER SITES: MINING SITES | Laguna | | Valencia | NM |
| 2160 | OTHER SITES: MINING SITES | Section 32 (15N-11W) (NE114, D. Begay allotment) mined through Moe #5 decline | | | NM |
| 2161 | OTHER SITES: MINING SITES | Section 33 (15N-11W) Moe #5, West Ranch Mine | | | NM |
| 2162 | OTHER SITES: MINING SITES | Wastewater #1 Mine Water Recovery | | | NM |
| 2163 | OTHER SITES: MINING SITES | Bowl of Fire | | Clark | NV |
| 2164 | OTHER SITES: MINING SITES | Clark | | Clark | NV |
| 2165 | OTHER SITES: MINING SITES | Crescent Peak | | Clark | NV |
| 2166 | OTHER SITES: MINING SITES | Fish Lake | | Esmeralda | NV |
| 2167 | OTHER SITES: MINING SITES | Rose Creek | | Humbolt/ Pershing | NV |
| 2168 | OTHER SITES: MINING SITES | Cottonwood Spring Project | | Lander | NV |
| 2169 | OTHER SITES: MINING SITES | Rocky Canyon | | Lander | NV |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 2170 | OTHER SITES: MINING SITES | Zeno Project | | Lander | NV |
| 2171 | OTHER SITES: MINING SITES | PIOCHE-CASELTON MINE SITES | T1N, R67 E | Lincoln | NV |
| 2172 | OTHER SITES: MINING SITES | PIOCHE-BRISTOL MINE SITES | T3N, R66 E | Lincoln | NV |
| 2173 | OTHER SITES: MINING SITES | Pioche (Bristol) | | Lincoln | NV |
| 2174 | OTHER SITES: MINING SITES | Pioche (Caselton) | | Lincoln | NV |
| 2175 | OTHER SITES: MINING SITES | East Fork | | Lyon/ Mineral | NV |
| 2176 | OTHER SITES: MINING SITES | East Walker | | Lyon/ Mineral | NV |
| 2177 | OTHER SITES: MINING SITES | Red Wash | | Lyon/ Mineral | NV |
| 2178 | OTHER SITES: MINING SITES | Black Mountain | | Mineral | NV |
| 2179 | OTHER SITES: MINING SITES | Teel's Marsh | | Mineral | NV |
| 2180 | OTHER SITES: MINING SITES | Yellow Peak | | Mineral | NV |
| 2181 | OTHER SITES: MINING SITES | Barcelona | | Nye | NV |
| 2182 | OTHER SITES: MINING SITES | Meigs | | Meigs | OH |
| 2183 | OTHER SITES: MINING SITES | Carter | | Beckham | OK |
| 2184 | OTHER SITES: MINING SITES | Cemet Area | | Caddo/Grady/Stephens | OK |
| 2185 | OTHER SITES: MINING SITES | Choctaw | | Choctaw | OK |
| 2186 | OTHER SITES: MINING SITES | Craig | | Craig | OK |
| 2187 | OTHER SITES: MINING SITES | Weatherford | | Custer | OK |
| 2188 | OTHER SITES: MINING SITES | NE Oklahoma | | Delaware | OK |
| 2189 | OTHER SITES: MINING SITES | Choctaw Mine Area | | Haskell | OK |
| 2190 | OTHER SITES: MINING SITES | Garland | | Haskell | OK |
| 2191 | OTHER SITES: MINING SITES | Sansbois Creek | | Haskell | OK |
| 2192 | OTHER SITES: MINING SITES | Stigler (Kinta-Stigler) | | Haskell | OK |
| 2193 | OTHER SITES: MINING SITES | Arkansas River | | Haskell/ Leflore | OK |
| 2194 | OTHER SITES: MINING SITES | Cowlington | | Haskell/ LeFlore | OK |
| 2195 | OTHER SITES: MINING SITES | Enterprise | | Haskell/ Pittsburg | OK |
| 2196 | OTHER SITES: MINING SITES | Kiowa | | Kiowa | OK |
| 2197 | OTHER SITES: MINING SITES | Snyder | | Kioway/ Tillman | OK |
| 2198 | OTHER SITES: MINING SITES | Ft. Smith | | LeFlore | OK |
| 2199 | OTHER SITES: MINING SITES | Spiro | | LeFlore | OK |
| 2200 | OTHER SITES: MINING SITES | W. Cameron | | LeFlore | OK |
| 2201 | OTHER SITES: MINING SITES | Drilling (Regional) | | LeFlore/ Sebastian/ Scott | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 2202 | OTHER SITES: MINING SITES | Porum | | Muskogee | OK |
| 2203 | OTHER SITES: MINING SITES | Morris | | Okmulgee | OK |
| 2204 | OTHER SITES: MINING SITES | Lone Jack | | Pawnee | OK |
| 2205 | OTHER SITES: MINING SITES | McAlester | | Pittsburg | OK |
| 2206 | OTHER SITES: MINING SITES | Sequoyah | | Sequoyah | OK |
| 2207 | OTHER SITES: MINING SITES | Wagnor | | Waggoner | OK |
| 2208 | OTHER SITES: MINING SITES | Arbuckle Mts. | | | OK |
| 2209 | OTHER SITES: MINING SITES | Gore, OK | | | OK |
| 2210 | OTHER SITES: MINING SITES | N. Wichita Mt. | | | OK |
| 2211 | OTHER SITES: MINING SITES | Vanoss Prospect | | | OK |
| 2212 | OTHER SITES: MINING SITES | Fairchance | | Fayette | PA |
| 2213 | OTHER SITES: MINING SITES | Pritchardville | | Beaufort/ Pamlico | SC |
| 2214 | OTHER SITES: MINING SITES | Cainhoy South/North | | Berkeley/ Charleston | SC |
| 2215 | OTHER SITES: MINING SITES | Adams Run | | Charleston | SC |
| 2216 | OTHER SITES: MINING SITES | Awendaw | | Charleston | SC |
| 2217 | OTHER SITES: MINING SITES | McClellanville | | Charleston | SC |
| 2218 | OTHER SITES: MINING SITES | Foreston | | Clarendon | SC |
| 2219 | OTHER SITES: MINING SITES | Hendersonville | | Colleton | SC |
| 2220 | OTHER SITES: MINING SITES | Sidney | | Colleton | SC |
| 2221 | OTHER SITES: MINING SITES | Dorchester | | Dorchester | SC |
| 2222 | OTHER SITES: MINING SITES | North Santee | | Georgetown | SC |
| 2223 | OTHER SITES: MINING SITES | McPhersonville | | Hampton | SC |
| 2224 | OTHER SITES: MINING SITES | Adrian | | Horry | SC |
| 2225 | OTHER SITES: MINING SITES | Wampee | | Horry | SC |
| 2226 | OTHER SITES: MINING SITES | Gillisonville | | Jasper | SC |
| 2227 | OTHER SITES: MINING SITES | Becker South | | Marlboro | SC |
| 2228 | OTHER SITES: MINING SITES | Kingstree | | Williamsburg | SC |
| 2229 | OTHER SITES: MINING SITES | East Black | | Custer | SD |
| 2230 | OTHER SITES: MINING SITES | Cascade Springs | | Fall River | SD |
| 2231 | OTHER SITES: MINING SITES | Edgemont | | Fall River | SD |
| 2232 | OTHER SITES: MINING SITES | Drilling | | Harding | SD |
| 2233 | OTHER SITES: MINING SITES | Twin Lakes | | Miner | SD |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 2234 | OTHER SITES: MINING SITES | Moody County Prospect | | Moody | SD |
| 2235 | OTHER SITES: MINING SITES | Flint Butte | | | SD |
| 2236 | OTHER SITES: MINING SITES | Sioux Uplift (regional) | | | SD |
| 2237 | OTHER SITES: MINING SITES | Camden Project | | Benton | TN |
| 2238 | OTHER SITES: MINING SITES | Sawyers Mill | | Benton | TN |
| 2239 | OTHER SITES: MINING SITES | Natchez Trace | | Carroll/Benton | TN |
| 2240 | OTHER SITES: MINING SITES | East Lexington | | Henderson | TN |
| 2241 | OTHER SITES: MINING SITES | Paris Landing | | Henry | TN |
| 2242 | OTHER SITES: MINING SITES | East Mansfield | | Henry/Carroll/Benton | TN |
| 2243 | OTHER SITES: MINING SITES | Slaton Area | | Crosby | TX |
| 2244 | OTHER SITES: MINING SITES | Buzzard | | Howard | TX |
| 2245 | OTHER SITES: MINING SITES | Hebbronville | | Jim Hogg/Webb | TX |
| 2246 | OTHER SITES: MINING SITES | Coy City | | Karnes | TX |
| 2247 | OTHER SITES: MINING SITES | S. Texas regional | | Karnes/ Live Oak/ Duval/ Atascosa/ Gonzales/ Dewitt/ McMullen | TX |
| 2248 | OTHER SITES: MINING SITES | Midland Basin | | Lubbock/Lynn/Garza/ Crosby | TX |
| 2249 | OTHER SITES: MINING SITES | Sulfur Springs Draw | | Martin | TX |
| 2250 | OTHER SITES: MINING SITES | Alamosa Creek | | Oldham | TX |
| 2251 | OTHER SITES: MINING SITES | Deep Basin Lignite Drilling | | | TX |
| 2252 | OTHER SITES: MINING SITES | Tushar Mt. | | Beaver/Piute | UT |
| 2253 | OTHER SITES: MINING SITES | Sunnyside/Asphalt Ridge | | Carbon | UT |
| 2254 | OTHER SITES: MINING SITES | Cedar Mt. | | Emery | UT |
| 2255 | OTHER SITES: MINING SITES | Kaiparowits | | Garfield | UT |
| 2256 | OTHER SITES: MINING SITES | Henry Mt. Coal Field | | Garfield/ Wayne | UT |
| 2257 | OTHER SITES: MINING SITES | Westwater | | Grand | UT |
| 2258 | OTHER SITES: MINING SITES | Book Cliffs Sego Coal Field | | Grand | UT |
| 2259 | OTHER SITES: MINING SITES | Spanish Valley | | Grand/San Juan | UT |
| 2260 | OTHER SITES: MINING SITES | P.R. Springs | | Grand/Uintah | UT |
| 2261 | OTHER SITES: MINING SITES | Juab | | Juab | UT |
| 2262 | OTHER SITES: MINING SITES | Orderville Gulch Area | | Kane | UT |
| 2263 | OTHER SITES: MINING SITES | Virgin River | | Kane | UT |
| 2264 | OTHER SITES: MINING SITES | Marysvale Area | | Piute/Sevier | UT |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 2265 | OTHER SITES: MINING SITES | Royal Flush | | San Juan | UT |
| 2266 | OTHER SITES: MINING SITES | Velvet | | San Juan | UT |
| 2267 | OTHER SITES: MINING SITES | Lisbon Valley | | San Juan | UT |
| 2268 | OTHER SITES: MINING SITES | Lower Lisbon Valley | | San Juan | UT |
| 2269 | OTHER SITES: MINING SITES | Sage Plain Area | | San Juan | UT |
| 2270 | OTHER SITES: MINING SITES | Seven Mile Area | | San Juan/Grand | UT |
| 2271 | OTHER SITES: MINING SITES | Deer Trail Mines | | Sevier | UT |
| 2272 | OTHER SITES: MINING SITES | S. Emery Coal Field | | Sevier | UT |
| 2273 | OTHER SITES: MINING SITES | Park City | | Summit | UT |
| 2274 | OTHER SITES: MINING SITES | Sheeprock Mountain (a.k.a. Silver King) | | Tooele | UT |
| 2275 | OTHER SITES: MINING SITES | Kolob Drilling | | Washington/ Iron | UT |
| 2276 | OTHER SITES: MINING SITES | Book Cliffs & Wasatch Plateau | | | UT |
| 2277 | OTHER SITES: MINING SITES | Uinta Basin | | | UT |
| 2278 | OTHER SITES: MINING SITES | Green River Area | | King | WA |
| 2279 | OTHER SITES: MINING SITES | Chesaw | | Okanogan | WA |
| 2280 | OTHER SITES: MINING SITES | Starlight | | Pend Oreille/ Stevens | WA |
| 2281 | OTHER SITES: MINING SITES | Wilkeson Coal | | Pierce | WA |
| 2282 | OTHER SITES: MINING SITES | Herem Lease | | Spokane | WA |
| 2283 | OTHER SITES: MINING SITES | Eastern Washington | | Spokane/ Ferry/ Stevens/Pend Oreille | WA |
| 2284 | OTHER SITES: MINING SITES | Deer Park | | Stevens | WA |
| 2285 | OTHER SITES: MINING SITES | Wazu | | Stevens | WA |
| 2286 | OTHER SITES: MINING SITES | Fisher River | | Chippewa | WI |
| 2287 | OTHER SITES: MINING SITES | Goggle Eye Creek (Eadsville INPUT area) | | Clark | WI |
| 2288 | OTHER SITES: MINING SITES | Bush Lake | | Florence | WI |
| 2289 | OTHER SITES: MINING SITES | Homestead | | Florence | WI |
| 2290 | OTHER SITES: MINING SITES | Lamon Tangue | | Florence | WI |
| 2291 | OTHER SITES: MINING SITES | Newald Project | | Florence | WI |
| 2292 | OTHER SITES: MINING SITES | Nicholas | | Florence | WI |
| 2293 | OTHER SITES: MINING SITES | Popple Creek | | Florence | WI |
| 2294 | OTHER SITES: MINING SITES | Rat River (Sugarbush Hill INPUT) | | Florence | WI |
| 2295 | OTHER SITES: MINING SITES | Rock Creek | | Florence | WI |
| 2296 | OTHER SITES: MINING SITES | Camp 20 | | Florence/ Forest | WI |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 2297 | OTHER SITES: MINING SITES | Armstrong Creek | | Forest | WI |
| 2298 | OTHER SITES: MINING SITES | Bonneval | | Forest | WI |
| 2299 | OTHER SITES: MINING SITES | Otter Creek Area | | Forest | WI |
| 2300 | OTHER SITES: MINING SITES | Roberts Lake | | Forest | WI |
| 2301 | OTHER SITES: MINING SITES | Simpson Creek | | Forest | WI |
| 2302 | OTHER SITES: MINING SITES | Torpee Springs | | Forest | WI |
| 2303 | OTHER SITES: MINING SITES | W. Branch | | Forest | WI |
| 2304 | OTHER SITES: MINING SITES | County Line | | Forest/ Marinette | WI |
| 2305 | OTHER SITES: MINING SITES | Iron County | | Iron | WI |
| 2306 | OTHER SITES: MINING SITES | Lake Tahoe | | Iron | WI |
| 2307 | OTHER SITES: MINING SITES | Little Martha Lake | | Iron | WI |
| 2308 | OTHER SITES: MINING SITES | Little Muskie Lake | | Iron | WI |
| 2309 | OTHER SITES: MINING SITES | Mercer Input Area | | Iron | WI |
| 2310 | OTHER SITES: MINING SITES | East Branch | | Langlade | WI |
| 2311 | OTHER SITES: MINING SITES | Elcho Input Area | | Langlade | WI |
| 2312 | OTHER SITES: MINING SITES | Kempster | | Langlade | WI |
| 2313 | OTHER SITES: MINING SITES | Lily | | Langlade | WI |
| 2314 | OTHER SITES: MINING SITES | Springdale Brook | | Marinette | WI |
| 2315 | OTHER SITES: MINING SITES | Clearwater Lake | | Oneida | WI |
| 2316 | OTHER SITES: MINING SITES | Fireside Lakes | | Rusk | WI |
| 2317 | OTHER SITES: MINING SITES | Round Lake | | Rusk | WI |
| 2318 | OTHER SITES: MINING SITES | Soft Maple Creek | | Rusk | WI |
| 2319 | OTHER SITES: MINING SITES | Duncan | | Fremont | WV |
| 2320 | OTHER SITES: MINING SITES | Ravenswood | | Jackson/ Mason | WV |
| 2321 | OTHER SITES: MINING SITES | Sitnik Acquisitions | | Kanawha | WV |
| 2322 | OTHER SITES: MINING SITES | Hartford Area (transferred to American Coal) | | Mason/ Meigs | WV |
| 2323 | OTHER SITES: MINING SITES | Bolt Mt./Rowland Land | | Raleigh | WV |
| 2324 | OTHER SITES: MINING SITES | Rowland Land-Bolt Mt. | | Raleigh | WV |
| 2325 | OTHER SITES: MINING SITES | Barr Coal | | Wetzel | WV |
| 2326 | OTHER SITES: MINING SITES | Wadeville | | Wood | WV |
| 2327 | OTHER SITES: MINING SITES | Simmons Fork | | Wyoming | WV |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 2328 | OTHER SITES: MINING SITES | Pioneer Fuels (transferred to Ruhr American Coal, 1996) | | Wyoming/ Logan/ Boone | WV |
| 2329 | OTHER SITES: MINING SITES | PIONEER COAL MINE | | | WV |
| 2330 | OTHER SITES: MINING SITES | Garret Area | | Albany | WY |
| 2331 | OTHER SITES: MINING SITES | East Shirley Basin | | Albany/ Carbon | WY |
| 2332 | OTHER SITES: MINING SITES | Laramie | | Albany/ Carbon | WY |
| 2333 | OTHER SITES: MINING SITES | Sheep Creek | | Albany/ Fremont/ Carbon | WY |
| 2334 | OTHER SITES: MINING SITES | N. Fish | | Campbel/ Johnson | WY |
| 2335 | OTHER SITES: MINING SITES | Gillette East Area Burlington No. (transferred to Kennecott) | | Campbell | WY |
| 2336 | OTHER SITES: MINING SITES | Horse Creek | | Campbell | WY |
| 2337 | OTHER SITES: MINING SITES | Jacobs Ranch (Thunder Creek) | | Campbell | WY |
| 2338 | OTHER SITES: MINING SITES | Keeline Tract | | Campbell | WY |
| 2339 | OTHER SITES: MINING SITES | Kintz Creek | | Campbell | WY |
| 2340 | OTHER SITES: MINING SITES | Moore Ranch | | Campbell | WY |
| 2341 | OTHER SITES: MINING SITES | Moreau Peak | | Campbell | WY |
| 2342 | OTHER SITES: MINING SITES | Rainbow Ranch | | Campbell | WY |
| 2343 | OTHER SITES: MINING SITES | Roundup Tract/N. Rochelle | | Campbell | WY |
| 2344 | OTHER SITES: MINING SITES | State Sect. 36-4470 JR North Bypass (transferred to Kennecott) | | Campbell | WY |
| 2345 | OTHER SITES: MINING SITES | Wyodak (Clovis Pt./E. Gillette) | | Campbell | WY |
| 2346 | OTHER SITES: MINING SITES | Clovis Point Mine (transferred to Kennecott) | | Campbell | WY |
| 2347 | OTHER SITES: MINING SITES | Alphabet Claims | | Campbell/ Converse | WY |
| 2348 | OTHER SITES: MINING SITES | Animal Claims | | Campbell/ Converse | WY |
| 2349 | OTHER SITES: MINING SITES | Caballo Creek Area | | Campbell/ Converse | WY |
| 2350 | OTHER SITES: MINING SITES | Conoco/KM JV - Buttes Area | | Campbell/ Converse | WY |
| 2351 | OTHER SITES: MINING SITES | Conoco/Moore Ranch JV | | Campbell/ Converse | WY |
| 2352 | OTHER SITES: MINING SITES | Reno Junction Area | | Campbell/ Converse | WY |
| 2353 | OTHER SITES: MINING SITES | S. Powder River Morton Ranch | | Campbell/ Converse | WY |
| 2354 | OTHER SITES: MINING SITES | Taylor Ranch Claims | | Campbell/ Converse | WY |
| 2355 | OTHER SITES: MINING SITES | Uranerze J.V. | | Campbell/ Converse | WY |
| 2356 | OTHER SITES: MINING SITES | Dad | | Carbon | WY |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 2357 | OTHER SITES: MINING SITES | Elk Mt. Project | | Carbon | WY |
| 2358 | OTHER SITES: MINING SITES | Getty/KGS JV | | Carbon | WY |
| 2359 | OTHER SITES: MINING SITES | Hanna Basin | | Carbon | WY |
| 2360 | OTHER SITES: MINING SITES | N. Hanna Basin | | Carbon | WY |
| 2361 | OTHER SITES: MINING SITES | North Hanna | | Carbon | WY |
| 2362 | OTHER SITES: MINING SITES | NW Shirley Mountain | | Carbon | WY |
| 2363 | OTHER SITES: MINING SITES | Penn Mine Project | | Carbon | WY |
| 2364 | OTHER SITES: MINING SITES | Rawlins Uplift | | Carbon | WY |
| 2365 | OTHER SITES: MINING SITES | Rock Creek Field-Laramin Basin | | Carbon | WY |
| 2366 | OTHER SITES: MINING SITES | Saratoga Area | | Carbon | WY |
| 2367 | OTHER SITES: MINING SITES | Savery Creek | | Carbon | WY |
| 2368 | OTHER SITES: MINING SITES | Shirley Mts. | | Carbon | WY |
| 2369 | OTHER SITES: MINING SITES | Spanish Mine | | Carbon | WY |
| 2370 | OTHER SITES: MINING SITES | Shirley Basin | | Carbon/ Converse/ Natrona/ Albany | WY |
| 2371 | OTHER SITES: MINING SITES | Canyon Creek | | Carbon/ Natrona | WY |
| 2372 | OTHER SITES: MINING SITES | Red Rim/China Butte Aera | | Carbon/ Sweetwater | WY |
| 2373 | OTHER SITES: MINING SITES | Bill Smith Mine | | Converse | WY |
| 2374 | OTHER SITES: MINING SITES | Brenning Basin Area | | Converse | WY |
| 2375 | OTHER SITES: MINING SITES | Douglas/Shawnee | | Converse | WY |
| 2376 | OTHER SITES: MINING SITES | Glenrock/Cole Creek | | Converse | WY |
| 2377 | OTHER SITES: MINING SITES | Lost Springs | | Converse | WY |
| 2378 | OTHER SITES: MINING SITES | Orin  Junction Area | | Converse | WY |
| 2379 | OTHER SITES: MINING SITES | Orpha Prospet | | Converse | WY |
| 2380 | OTHER SITES: MINING SITES | PSE&G | | Converse | WY |
| 2381 | OTHER SITES: MINING SITES | S. Douglas | | Converse | WY |
| 2382 | OTHER SITES: MINING SITES | S. Powder River Basin | | Converse | WY |
| 2383 | OTHER SITES: MINING SITES | South Powder River Basin (SPRB) | | Converse | WY |
| 2384 | OTHER SITES: MINING SITES | Core Drill Logs | | Converse/ Campbell | WY |
| 2385 | OTHER SITES: MINING SITES | Ross Flats | | Converse/ Campbell | WY |
| 2386 | OTHER SITES: MINING SITES | Pine Ridge | | Converse/ Natrona | WY |
| 2387 | OTHER SITES: MINING SITES | Aladdin | | Crook | WY |
| 2388 | OTHER SITES: MINING SITES | Belle Fourche | | Crook | WY |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 2389 | OTHER SITES: MINING SITES | Branaman Mt. | | Crook | WY |
| 2390 | OTHER SITES: MINING SITES | Burnt Hollow | | Crook | WY |
| 2391 | OTHER SITES: MINING SITES | Cook | | Crook | WY |
| 2392 | OTHER SITES: MINING SITES | Dewey Terrance | | Crook | WY |
| 2393 | OTHER SITES: MINING SITES | NW Black Hills | | Crook | WY |
| 2394 | OTHER SITES: MINING SITES | Poison Creek | | Crook | WY |
| 2395 | OTHER SITES: MINING SITES | Signal Hill | | Crook | WY |
| 2396 | OTHER SITES: MINING SITES | Alfred | | Fremont | WY |
| 2397 | OTHER SITES: MINING SITES | Antelope Project | | Fremont | WY |
| 2398 | OTHER SITES: MINING SITES | Arapaho Creek | | Fremont | WY |
| 2399 | OTHER SITES: MINING SITES | Buck Springs | | Fremont | WY |
| 2400 | OTHER SITES: MINING SITES | Cedar Ridge | | Fremont | WY |
| 2401 | OTHER SITES: MINING SITES | Copper Mt. - Dry Creek | | Fremont | WY |
| 2402 | OTHER SITES: MINING SITES | Cottonwood Creek | | Fremont | WY |
| 2403 | OTHER SITES: MINING SITES | Crooks Gap | | Fremont | WY |
| 2404 | OTHER SITES: MINING SITES | Gas Hills | | Fremont | WY |
| 2405 | OTHER SITES: MINING SITES | Hudson | | Fremont | WY |
| 2406 | OTHER SITES: MINING SITES | Lone Mt. | | Fremont | WY |
| 2407 | OTHER SITES: MINING SITES | Long Creek | | Fremont | WY |
| 2408 | OTHER SITES: MINING SITES | Schoening | | Fremont | WY |
| 2409 | OTHER SITES: MINING SITES | Sweetwater Crossing | | Fremont | WY |
| 2410 | OTHER SITES: MINING SITES | Willow Creek | | Fremont | WY |
| 2411 | OTHER SITES: MINING SITES | Cane Creek | | Fremont/ Carbon | WY |
| 2412 | OTHER SITES: MINING SITES | Dry Creek Area | | Fremont/ Johnson | WY |
| 2413 | OTHER SITES: MINING SITES | Green Mt. Sec. 7 | | Fremont/ Sweetwater | WY |
| 2414 | OTHER SITES: MINING SITES | Hadsell | | Fremont/ Sweetwater | WY |
| 2415 | OTHER SITES: MINING SITES | SMITH RANCH | | Glenrock | WY |
| 2416 | OTHER SITES: MINING SITES | Muskrat Canyon | | Goshen | WY |
| 2417 | OTHER SITES: MINING SITES | Yoder | | Goshen | WY |
| 2418 | OTHER SITES: MINING SITES | Rawhide Butte | | Goshen/ Niobrara | WY |
| 2419 | OTHER SITES: MINING SITES | Bridge Wagon Draw | | Hot Springs | WY |
| 2420 | OTHER SITES: MINING SITES | Bridger Creek | | Hot Springs | WY |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 2421 | OTHER SITES: MINING SITES | Jones Creek/Ditch Creek | | Hot Springs | WY |
| 2422 | OTHER SITES: MINING SITES | Thermopolis | | Hot Springs | WY |
| 2423 | OTHER SITES: MINING SITES | Buffalo | | Johnson | WY |
| 2424 | OTHER SITES: MINING SITES | Slake De Smet | | Johnson | WY |
| 2425 | OTHER SITES: MINING SITES | Sussex Bonniche | | Johnson | WY |
| 2426 | OTHER SITES: MINING SITES | Hole-In-the-Wall | | Johnson/ Natrona | WY |
| 2427 | OTHER SITES: MINING SITES | Borie Area | | Laramie | WY |
| 2428 | OTHER SITES: MINING SITES | Bald Mt. | | Natrona | WY |
| 2429 | OTHER SITES: MINING SITES | Bates Creek | | Natrona | WY |
| 2430 | OTHER SITES: MINING SITES | Bug | | Natrona | WY |
| 2431 | OTHER SITES: MINING SITES | Burnt Wagon Draw | | Natrona | WY |
| 2432 | OTHER SITES: MINING SITES | Flat Top Mt. | | Natrona | WY |
| 2433 | OTHER SITES: MINING SITES | Glat Top Mt. | | Natrona | WY |
| 2434 | OTHER SITES: MINING SITES | Grieve | | Natrona | WY |
| 2435 | OTHER SITES: MINING SITES | Lone Mountain | | Natrona | WY |
| 2436 | OTHER SITES: MINING SITES | Teapot | | Natrona | WY |
| 2437 | OTHER SITES: MINING SITES | Gas Hills | | Natrona/ Fremont | WY |
| 2438 | OTHER SITES: MINING SITES | North Rattlesnake | | Natrona/ Fremont | WY |
| 2439 | OTHER SITES: MINING SITES | Hat Creek | | Niobrara | WY |
| 2440 | OTHER SITES: MINING SITES | Indian Creek | | Niobrara | WY |
| 2441 | OTHER SITES: MINING SITES | Lightning Creek | | Niobrara | WY |
| 2442 | OTHER SITES: MINING SITES | Edgemont | | Niobrara/ Weston | WY |
| 2443 | OTHER SITES: MINING SITES | Amu | | Platte | WY |
| 2444 | OTHER SITES: MINING SITES | Hartville | | Platte | WY |
| 2445 | OTHER SITES: MINING SITES | Townline | | Platte | WY |
| 2446 | OTHER SITES: MINING SITES | Upper Broom Creek | | Platte | WY |
| 2447 | OTHER SITES: MINING SITES | North Saddle Mts. | | Santa Cruz | WY |
| 2448 | OTHER SITES: MINING SITES | Sheridan Area | | Sheridan | WY |
| 2449 | OTHER SITES: MINING SITES | Tongue River | | Sheridan | WY |
| 2450 | OTHER SITES: MINING SITES | MINING SITE | | Shirley Basin | WY |
| 2451 | OTHER SITES: MINING SITES | Circle Bar Ridge | | Sweetwater | WY |
| 2452 | OTHER SITES: MINING SITES | Pine Mt. | | Sweetwater | WY |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 2453 | OTHER SITES: MINING SITES | Rock Springs | | Sweetwater | WY |
| 2454 | OTHER SITES: MINING SITES | Green Mt./Red Desert Palo Verde Uranium Venture JV | | Sweetwater/ Freemont | WY |
| 2455 | OTHER SITES: MINING SITES | Bull Springs | | Sweetwater/ Fremont | WY |
| 2456 | OTHER SITES: MINING SITES | Northeast Red Desert | | Sweetwater/ Fremont | WY |
| 2457 | OTHER SITES: MINING SITES | Osborne Draw | | Sweetwater/ Fremont | WY |
| 2458 | OTHER SITES: MINING SITES | Oregon Buttes | | Sweetwater/ Fremont/ Sublette | WY |
| 2459 | OTHER SITES: MINING SITES | Dubois & Togwotee Pass | | Teton/ Fremont | WY |
| 2460 | OTHER SITES: MINING SITES | Newcastle | | Weston | WY |
| 2461 | OTHER SITES: MINING SITES | Pumpkin Buttes (Powder River Basin District) | | | WY |
| 2462 | OTHER SITES: MINING SITES | ARVADA-Carney-Cheyenne-Davis-Dietz-Masters-Monach-Pacific-Reno-Wyodak | | | WY |
| 2463 | OTHER SITES: MINING SITES | Clovis Point Coal Mine, WY | | | WY |
| 2464 | OTHER SITES: MINING SITES | powder river basin mines | | | WY |
| 2465 | OTHER SITES: MINING SITES | Silver King Mine/Sheep Rock | | | WY |

## Non-Owned Sites: Alabama Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| | | | **SEPARATELY FUNDED SITES** | | |
| 1 | NON-OWNED FUNDED SITES | ANNISTON TERMINAL | 2525 U.S. HIGHWAY #78 EAST | Anniston | AL |
| 2 | NON-OWNED FUNDED SITES | BIRMINGHAM TERMINAL | 2600 & 2700 ISHKOODA-WENONAH ROAD | Birmingham | AL |

## Non-Owned Sites: Georgia Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| \multicolumn SEPARATELY FUNDED SITES | | | | | |
| 1 | NON-OWNED FUNDED SITES | BRUNSWICK SITE | ONE-HALF MILE EAST OF HIGHWAY 25 ON PERRY LANE ROAD/NEAR SOUTH OF THIRD AVENUE, WEST OF ALBANY STREET | Brunswick | GA |
| \multicolumn OTHER SITES | | | | | |
| 2 | OTHER SITES: GENERAL | M&J SOLVENTS COMPANY SITE | 1577 MARIETTA ROAD NW | Atlanta | GA |
| 3 | OTHER SITES: GENERAL | LITTLE TYBEE ISLAND SITE | | Little Tybee Island | GA |
| 4 | OTHER SITES: GENERAL | TIFTEN AG CHEM MANUFACTURING SITE/SOGREEN WASTE PILE (BARREN AREA) ENVIRONMENTAL SITE | W MAPLE STREET AND HIGHLAND AVENUE | Tifton | GA |
| 5 | OTHER SITES: MINING SITES | Tybee/L. Tybee Islands | | Chatham | GA |

### Non-Owned Sites: Iowa Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | **SEPARATELY FUNDED SITES** | | | |
| 1 | NON-OWNED SERVICE STATIONS | Atlantic 2 | 7th and Walnut Streets | Atlantic | IA |
| 2 | NON-OWNED SERVICE STATIONS | Bettendorf 1 | 2920 State Street | Bettendorf | IA |
| 3 | NON-OWNED SERVICE STATIONS | Burlington 1 | 1200 N. Roosevelt Avenue | Burlington | IA |
| 4 | NON-OWNED SERVICE STATIONS | Carroll 1 | US Highway 30 East | Carroll | IA |
| 5 | NON-OWNED SERVICE STATIONS | Cedar Rapids | 1600 6th Street | Cedar Rapids | IA |
| 6 | NON-OWNED SERVICE STATIONS | Cedar Rapids 1 | 4713 6th Street | Cedar Rapids | IA |
| 7 | NON-OWNED SERVICE STATIONS | Centerville 1 | 220 East Maple Street | Centerville | IA |
| 8 | NON-OWNED SERVICE STATIONS | Clive 1 | 1725 N.W. 86th Street | Clive | IA |
| 9 | NON-OWNED SERVICE STATIONS | Cresco 1 | 202 2nd Avenue South | Cresco | IA |
| 10 | NON-OWNED SERVICE STATIONS | Davenport 2 | 2000 West River Road | Davenport | IA |
| 11 | NON-OWNED SERVICE STATIONS | Davenport 1 | 2920 West Locust | Davenport | IA |
| 12 | NON-OWNED SERVICE STATIONS | Denison 1 | White and Prospect Streets | Denison | IA |
| 13 | NON-OWNED SERVICE STATIONS | Des Moines 2 | 14th & Euclid | Des Moines | IA |
| 14 | NON-OWNED SERVICE STATIONS | Des Moines 7 | 1824 Second Avenue | Des Moines | IA |
| 15 | NON-OWNED SERVICE STATIONS | Des Moines 9 | 1954 Indianola Road | Des Moines | IA |
| 16 | NON-OWNED SERVICE STATIONS | Des Moines 11 | 2110 West Army Post Road | Des Moines | IA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 17 | NON-OWNED SERVICE STATIONS | Des Moines 3 | 2270 Hubbell Avenue | Des Moines | IA |
| 18 | NON-OWNED SERVICE STATIONS | Des Moines 15 | 2814 E. University Street | Des Moines | IA |
| 19 | NON-OWNED SERVICE STATIONS | Des Moines 17 | 2825 Easton Boulevard | Des Moines | IA |
| 20 | NON-OWNED SERVICE STATIONS | Des Moines 10 | 3200 S.E. 14th | Des Moines | IA |
| 21 | NON-OWNED SERVICE STATIONS | Des Moines 16 | 3418 Sixth Avenue | Des Moines | IA |
| 22 | NON-OWNED SERVICE STATIONS | Des Moines 6 | 3426 Harding Road | Des Moines | IA |
| 23 | NON-OWNED SERVICE STATIONS | Des Moines 1 | 4100 S.W. Ninth St. | Des Moines | IA |
| 24 | NON-OWNED SERVICE STATIONS | Des Moines 14 | 4200 East Hubbell | Des Moines | IA |
| 25 | NON-OWNED SERVICE STATIONS | Des Moines 13 | 4675 North Second Avenue | Des Moines | IA |
| 26 | NON-OWNED SERVICE STATIONS | Des Moines 12 | 6900 Hickman Road | Des Moines | IA |
| 27 | NON-OWNED SERVICE STATIONS | Des Moines 4 | 7101 University Avenue | Des Moines | IA |
| 28 | NON-OWNED SERVICE STATIONS | Dunlap | 7th & Iowa Streets | Des Moines | IA |
| 29 | NON-OWNED SERVICE STATIONS | Des Moines 8 | East 14th & Des Moines | Des Moines | IA |
| 30 | NON-OWNED SERVICE STATIONS | Des Moines Bulk Station | Raccoon Street between 9th & 10th | Des Moines | IA |
| 31 | NON-OWNED SERVICE STATIONS | Fairfield 1 | 605 North Second Street | Fairfield | IA |
| 32 | NON-OWNED SERVICE STATIONS | Fort Dodge 1 | 1202 Second Avenue, South | Fort Dodge | IA |
| 33 | NON-OWNED SERVICE STATIONS | Fort Dodge 2 | 1500 Second Avenue, North | Fort Dodge | IA |
| 34 | NON-OWNED SERVICE STATIONS | Fort Madison 1 | 2311 Avenue "L" | Fort Madison | IA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 35 | NON-OWNED SERVICE STATIONS | Indianola 1 | 109 S. Jefferson Avenue | Indianola | IA |
| 36 | NON-OWNED SERVICE STATIONS | Iowa City 1 | 304 East Burlington | Iowa City | IA |
| 37 | NON-OWNED SERVICE STATIONS | Kellogg | Interstate 80 & County Road | Kellogg | IA |
| 38 | NON-OWNED SERVICE STATIONS | Keokuk 1 | 2820 Main | Keokuk | IA |
| 39 | NON-OWNED SERVICE STATIONS | LeMars 1 | 226 Fifth Avenue, S.W. | LeMars | IA |
| 40 | NON-OWNED SERVICE STATIONS | LeMars | 234 5th Avenue | LeMars | IA |
| 41 | NON-OWNED SERVICE STATIONS | Maquoketa 1 | 311 East Platt Street | Maquoketa | IA |
| 42 | NON-OWNED SERVICE STATIONS | Mason City 1 | North Federal and 13t Street | Mason City | IA |
| 43 | NON-OWNED SERVICE STATIONS | Missouri Valley 1 | 500 West Erie Street | Missouri Valley | IA |
| 44 | NON-OWNED SERVICE STATIONS | Nevada 2 | 1136 East 5th Street | Nevada | IA |
| 45 | NON-OWNED SERVICE STATIONS | Newton 1 | 1901 First Avenue | Newton | IA |
| 46 | NON-OWNED SERVICE STATIONS | Oakland 1 | Main Street | Oakland | IA |
| 47 | NON-OWNED SERVICE STATIONS | Oelwein 1 | 935 South Frederick | Oelwein | IA |
| 48 | NON-OWNED SERVICE STATIONS | Osage 1 | 1428 Main Street | Osage | IA |
| 49 | NON-OWNED SERVICE STATIONS | Osceola 1 | 714 West McLane | Osceola | IA |
| 50 | NON-OWNED SERVICE STATIONS | Oskaloosa 1 | 1102 A Avenue West | Oskaloosa | IA |
| 51 | NON-OWNED SERVICE STATIONS | Ottumwa 1 | 1268 West 2nd | Ottumwa | IA |
| 52 | NON-OWNED SERVICE STATIONS | Ottumwa 2 | 201 North Madison | Ottumwa | IA |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 53 | NON-OWNED SERVICE STATIONS | Pella 1 | 600 Oskaloosa Street | Pella | IA |
| 54 | NON-OWNED SERVICE STATIONS | Sheldon 1 | 622 Second Avenue | Sheldon | IA |
| 55 | NON-OWNED SERVICE STATIONS | Sioux City 1 | 322 South Lewis Road | Sioux City | IA |
| 56 | NON-OWNED SERVICE STATIONS | Sioux City | 500 Wesley Way | Sioux City | IA |
| 57 | NON-OWNED SERVICE STATIONS | Storm Lake 1 | 420 Flindt Drive | Storm Lake | IA |
| 58 | NON-OWNED SERVICE STATIONS | Washington 1 | Route 2, Box 110-A | Washington | IA |
| 59 | NON-OWNED SERVICE STATIONS | Waterloo 1 | 2102-2116 Lafayette | Waterloo | IA |
| **OTHER SITES** | | | | | |
| 60 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Charles City | IA |
| 61 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Farmersburg | IA |
| 62 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 25245 highway 52 | Garnavillo | IA |
| 63 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Laporte City | IA |
| 64 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 206 railroad street | Mingo | IA |

## Non-Owned Sites: Idaho Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | | **OTHER SITES** | | |
| 1 | OTHER SITES: MINING SITES | Caribou County | | Caribou | ID |
| 2 | OTHER SITES: MINING SITES | Soda Springs | | Caribou | ID |
| 3 | OTHER SITES: MINING SITES | STANLEY BASIN | | Custer | ID |
| 4 | OTHER SITES: MINING SITES | Orogrande | | Idaho | ID |
| 5 | OTHER SITES: MINING SITES | Petzite Project | | Idaho | ID |
| 6 | OTHER SITES: MINING SITES | IXL | | Washington | ID |

## Non-Owned Sites: Illinois Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | **SEPARATELY FUNDED SITES** | | | |
| 1 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (LINDSAY LIGHT GROUP) | 160 E. ILLINOIS STREET | Chicago/ Streeterville | IL |
| 2 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (BEVERLY SAND & GRAVEL SITE) | 1100 BRANDT DRIVE | Chicago/ Streeterville | IL |
| 3 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES(ORANGE BLUE LLC/KIEFFER BUILDING) | 160 AND 200 EAST ILLINOIS STREET | Chicago/ Streeterville | IL |
| 4 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (SITE I) | 161 EAST GRAND AVENUE | Chicago/ Streeterville | IL |
| 5 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (COLUMBUS DRIVE SITE) | 221 N. COLUMBUS DRIVE | Chicago/ Streeterville | IL |
| 6 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (EAST OHIO ST SITES) | 245-247, 252, 341, AND 450 EAST OHIO STREET | Chicago/ Streeterville | IL |
| 7 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (SITE II: CHICAGO DOCK) | 316-318 EAST ILLINOIS STREET | Chicago/ Streeterville | IL |
| 8 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (ADAMS MARK HOTEL SITE) | 319 E. ILLINOIS STREET | Chicago/ Streeterville | IL |
| 9 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (LAKESHORE DRIVE SITE) | 401 N. LAKESHORE DRIVE | Chicago/ Streeterville | IL |
| 10 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (LINDSAY LIGHT III AND CHINESE RESTAURANT) | 22 WEST HUBBARD | Chicago/Streeterville | IL |
| 11 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (TEACHER'S RETIREMENT SITE) | 341 EAST OHIO | Chicago/Streeterville | IL |
| 12 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (KRAFT LOT) | 400 EAST ILLINOIS/510 N. PESHTIGO | Chicago/Streeterville | IL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 13 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (STREETERVILLE AREA) | 635 N. FAIRBANKS; 550 N. ST. CLAIR, 535 N. ST. CLAIR; 600 N. LAKE SHORE DRIVE; JANNE ADAMS MEMORIAL PARK; 505 N. LAKE SHORE DRIVE (LAKE POINT TOWER); ; 420 E. NORTH WATER; RIVER VIEWL RIVER EAST; 455 N. PARK; 465 N. PARK; 205, 209, 211 E. GRANT; 160 ILLINOIS (ALLEY OF CONCERN); 130 E. LAKE; LAKESHORE EAST; 630 MCCLUNG COURT; 405 E. ONTARIO; 515 N. PESHTIGO; 150-160 E. ONTARIO; NORTHWESTERN MEMORIAL HOSPITAL; REHABILITATION INSTITUTE OF CHICAGO; THE FORDHAM COMPANY; TFC PARK STREET LLC. | Chicago/Streeterville | IL |
| 14 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (GRAND PIER CENTER) | NORTH COLUMBUS DRIVE/200 E. ILLINOIS | Chicago/Streeterville | IL |
| 15 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES (LAKESHORE EAST- GOLF COURSE, CLUBHOUSE, AND COMMONWEALTH EDISON) | | Chicago/Streeterville | IL |
| 16 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES- DUSABLE PARK | RIVER EAST | Chicago/ Streeterville | IL |
| 17 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES- STREETERVILLE RIGHTS OF WAY | | Chicago/Streeterville | IL |
| 18 | NON-OWNED FUNDED SITES | DECATUR SITE (WASTE HAULING LANDFILL SITE) | MACON COUNTY, NE QUARTER OF SEC. 24, TOWNSHIP 16, NORTH RANGE 1 EAST | Decatur | IL |
| 19 | NON-OWNED FUNDED SITES | MOUNT VERNON SITE | 20 ACRES BOUNDED BY SHAWNEE STREET ON THE NORTH EAST AND STATE HIGHWAY 142 ON SOUTH | Mount Vernon | IL |
| 20 | NON-OWNED FUNDED SITES | KRESS CREEK (WEST BRANCH DUPAGE RIVER SUPERFUND SITE) | | West Chicago | IL |
| 21 | NON-OWNED FUNDED SITES | NON-OWNED RAS PROPERTIES | | West Chicago | IL |
| 22 | NON-OWNED FUNDED SITES | NON-OWNED RAS PROPERTIES -- WEST CHICAGO OPERA HOUSE | westrom building | West Chicago | IL |
| 23 | NON-OWNED SERVICE STATIONS | Abingdon 1 | Monmouth & Monroe Sts. | Abingdon | IL |
| 24 | NON-OWNED SERVICE STATIONS | Belleville 1 | 1531 Lebanon Avenue | Belleville | IL |
| 25 | NON-OWNED SERVICE STATIONS | Belvidere 1 | 600 Logan Avenue | Belvidere | IL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 26 | NON-OWNED SERVICE STATIONS | Bushnell #1 | 105 E. Hail Street | Bushnell | IL |
| 27 | NON-OWNED SERVICE STATIONS | Carlinville | 304 East First South Street | Carlinville | IL |
| 28 | NON-OWNED SERVICE STATIONS | Centralia 1 | 138 N. Walnut | Centralia | IL |
| 29 | NON-OWNED SERVICE STATIONS | Charleston 1 | 120 Lincoln Street | Charleston | IL |
| 30 | NON-OWNED SERVICE STATIONS | Chillicothe 1 | 223 N. 4th | Chillicothe | IL |
| 31 | NON-OWNED SERVICE STATIONS | Clinton | 105 East Van Buren | Clinton | IL |
| 32 | NON-OWNED SERVICE STATIONS | Collinsville 1 | 201 North Vandalia | Collinsville | IL |
| 33 | NON-OWNED SERVICE STATIONS | Decatur Bulk Station | 100 Industry Court | Decatur | IL |
| 34 | NON-OWNED SERVICE STATIONS | Decatur 7 | 1500 East Eldorado Street | Decatur | IL |
| 35 | NON-OWNED SERVICE STATIONS | Decatur 5 | 274 West Wood Street | Decatur | IL |
| 36 | NON-OWNED SERVICE STATIONS | Decatur | 560 East Pershing Road | Decatur | IL |
| 37 | NON-OWNED SERVICE STATIONS | DeKalb 1 | 1120 W. Lincoln Highway | DeKalb | IL |
| 38 | NON-OWNED SERVICE STATIONS | LEFTON IRON AND METAL | SCRAP SALVAGE SITE- 205 SOUTH 17TH STREET | East St. Louis | IL |
| 39 | NON-OWNED SERVICE STATIONS | Edwardsville | 100 South Main Street | Edwardsville | IL |
| 40 | NON-OWNED SERVICE STATIONS | Effingham 1 | 419 West Fayette Avenue | Effingham | IL |
| 41 | NON-OWNED SERVICE STATIONS | Fairfield 1 | W. Main and Clarence | Fairfield | IL |
| 42 | NON-OWNED SERVICE STATIONS | Flora 1 | 400 West North Avenue | Flora | IL |
| 43 | NON-OWNED SERVICE STATIONS | Freeport 1 | 901 South Galena | Freeport | IL |
| 44 | NON-OWNED SERVICE STATIONS | Galesburg 2 | RFD 3, Knoxville Road | Galesburg | IL |
| 45 | NON-OWNED SERVICE STATIONS | Galva 1 | S.E. 1st Avenue | Galva | IL |
| 46 | NON-OWNED SERVICE STATIONS | Georgetown 1 | 305 North Main Street | Georgetown | IL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----------------------------------|---------------|-------------------|----------------|-------|
| 47 | NON-OWNED SERVICE STATIONS | Granite City 1 | 2320 Nameoki Road | Granite City | IL |
| 48 | NON-OWNED SERVICE STATIONS | Greenville 1 | 110 East Harris St. | Greenville | IL |
| 49 | NON-OWNED SERVICE STATIONS | Harrisburg 1 | NW/C Commercial and Church Streets | Harrisburg | IL |
| 50 | NON-OWNED SERVICE STATIONS | Hoopeston 1 | West Main Street and South Sixth Avenue | Hoopeston | IL |
| 51 | NON-OWNED SERVICE STATIONS | Jacksonville 1 | 524 East Morton Avenue | Jacksonville | IL |
| 52 | NON-OWNED SERVICE STATIONS | Kankakee 3 | 121 West Court Street | Kankakee | IL |
| 53 | NON-OWNED SERVICE STATIONS | Kankakee 2 | 750 Fair Street | Kankakee | IL |
| 54 | NON-OWNED SERVICE STATIONS | Kewanee 1 | 501 N. Main | Kewanee | IL |
| 55 | NON-OWNED SERVICE STATIONS | LaSalle 1 | 145 Third Street | LaSalle | IL |
| 56 | NON-OWNED SERVICE STATIONS | Lincoln 1 | 203 North Kickapoo Street | Lincoln | IL |
| 57 | NON-OWNED SERVICE STATIONS | Litchfield 1 | 403 E. Union Avenue | Litchfield | IL |
| 58 | NON-OWNED SERVICE STATIONS | Marion 1 | 1500 West Main | Marion | IL |
| 59 | NON-OWNED SERVICE STATIONS | Mattoon 1 | 1721 Charleston Avenue | Mattoon | IL |
| 60 | NON-OWNED SERVICE STATIONS | Mendota 1 | 1212 13th Avenue | Mendota | IL |
| 61 | NON-OWNED SERVICE STATIONS | Metropolis 1 | NE/C Ferry & Sixth Streets | Metropolis | IL |
| 62 | NON-OWNED SERVICE STATIONS | Moline 1 | 4720 Bridgelane | Moline | IL |
| 63 | NON-OWNED SERVICE STATIONS | Monmouth 1 | Main and Franklin | Monmouth | IL |
| 64 | NON-OWNED SERVICE STATIONS | Monticello 1 | 117 N. Market Street | Monticello | IL |
| 65 | NON-OWNED SERVICE STATIONS | Morrison 1 | US Highway 30, North Route | Morrison | IL |
| 66 | NON-OWNED SERVICE STATIONS | mt. carmel | 330 walnut ave | Mt. Carmel | IL |
| 67 | NON-OWNED SERVICE STATIONS | Mt. Pulaski | Railroad Right-of-way Site | Mt. Pulaski | IL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 68 | NON-OWNED SERVICE STATIONS | Mt. Vernon | 100 South 15th Street | Mt. Vernon | IL |
| 69 | NON-OWNED SERVICE STATIONS | MT. VERNON | 1416 S 10TH | Mt. Vernon | IL |
| 70 | NON-OWNED SERVICE STATIONS | Murphysboro 1 | Sixth and Walnut Street | Murphysboro | IL |
| 71 | NON-OWNED SERVICE STATIONS | Normal | 313 West Beaufort | Normal | IL |
| 72 | NON-OWNED SERVICE STATIONS | Olney 1 | 703 West Main Street | Olney | IL |
| 73 | NON-OWNED SERVICE STATIONS | Petersburg | 219 N. 6th | Petersburg | IL |
| 74 | NON-OWNED SERVICE STATIONS | Princeton 1 | Highway 26, Route 1 | Princeton | IL |
| 75 | NON-OWNED SERVICE STATIONS | Rantoul 1 | 714 E. Champaign | Rantoul | IL |
| 76 | NON-OWNED SERVICE STATIONS | Rochelle 1 | US Highway 51, North of Rochelle | Rochelle | IL |
| 77 | NON-OWNED SERVICE STATIONS | Rock Island 1 | 1520 11th Street | Rock Island | IL |
| 78 | NON-OWNED SERVICE STATIONS | Rock Island 3 | 3100 Fifth Avenue | Rock Island | IL |
| 79 | NON-OWNED SERVICE STATIONS | Rockford 3 | 1430 East Broadway | Rockford | IL |
| 80 | NON-OWNED SERVICE STATIONS | Rockford | 2301 Harrison Avenue | Rockford | IL |
| 81 | NON-OWNED SERVICE STATIONS | Rockford 2 | 2903 S. Kishwaukee | Rockford | IL |
| 82 | NON-OWNED SERVICE STATIONS | Rockford 4 | 3410 West State Street | Rockford | IL |
| 83 | NON-OWNED SERVICE STATIONS | Salem 1 | 1435 West Main | Salem | IL |
| 84 | NON-OWNED SERVICE STATIONS | Springfield 3 | 1000 N. MacArthur | Springfield | IL |
| 85 | NON-OWNED SERVICE STATIONS | Springfield 2 | 2041 East Cook Street | Springfield | IL |
| 86 | NON-OWNED SERVICE STATIONS | Springfield 1 | 629 North 9th Street | Springfield | IL |
| 87 | NON-OWNED SERVICE STATIONS | Streator 1 | Bridge Street and Bloomington | Streator | IL |
| 88 | NON-OWNED SERVICE STATIONS | Sullivan 1 | 305 S. Hamilton | Sullivan | IL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 89 | NON-OWNED SERVICE STATIONS | Sycamore #1 | Route 23, Highway 23 South | Sycamore | IL |
| 90 | NON-OWNED SERVICE STATIONS | Taylorville | 1101 W. Spressor street | Taylorville | IL |
| 91 | NON-OWNED SERVICE STATIONS | Taylorville 1 | Highway 48 & Silver Street or 1101 Route 48 West | Taylorville | IL |
| 92 | NON-OWNED SERVICE STATIONS | Urbana 1 | US Highway 45 North | Urbana | IL |
| 93 | NON-OWNED SERVICE STATIONS | Washington 1 | 1309 Washington Road | Washington | IL |
| 94 | NON-OWNED SERVICE STATIONS | West Frankfort 1 | 1110 East Main | West Frankfort | IL |
| | | **OTHER SITES** | | | |
| 95 | OTHER SITES: AG-CHEM SITES | BLENDER- FARM CENTER | 100 E. Railroad Street | Kingston | IL |
| 96 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Richmond | IL |
| 97 | OTHER SITES: GENERAL | BELL TERMINAL | | Chicago | IL |
| 98 | OTHER SITES: GENERAL | DEKALB SITE | | DeKalb | IL |
| 99 | OTHER SITES: GENERAL | FORMER KETTLE RIVER CO/GLEN CARBON SITE | S ½ SEC. 23 T4N, R8W, LONGITUDE: -89.96, LATITUDE: 38.78/SW OF INTERSECTION OF STATE ROUTE 159 AND CENTER GROVE ROAD | Edwardsville | IL |
| 100 | OTHER SITES: GENERAL | TRI-COUNTY LANDFILL | Waste Management of Illinois | Elgin | IL |
| 101 | OTHER SITES: GENERAL | MARION WOOD TREATING FACILITY | E1/2 sec. 25 T9S, R2E, Longitude: -88.93, LAtitude: 37.71/off of route 37 (south court street) near intersection with crites road | Marion | IL |
| 102 | OTHER SITES: GENERAL | REED KEPPLER PARK SUPERFUND SITE | | West Chicago | IL |
| 103 | OTHER SITES: GENERAL | SEWAGE TREATMENT PLANT SUPERFUND SITE | | West Chicago | IL |
| 104 | OTHER SITES: MINING SITES | Spring Valley Area | | Bureau | IL |
| 105 | OTHER SITES: MINING SITES | Royal | | Champaign/ Vermillion | IL |
| 106 | OTHER SITES: MINING SITES | GALATIA MINE SITE | | Galatia | IL |
| 107 | OTHER SITES: MINING SITES | Galatia  (transferred to American Coal) | | Hamilton/ Saline | IL |
| 108 | OTHER SITES: MINING SITES | Hamilton-Saline | | Hamilton/ Saline | IL |
| 109 | OTHER SITES: MINING SITES | Flourspar District | | Johnson/ Pope/ Saline | IL |
| 110 | OTHER SITES: MINING SITES | Oglesby | | LaSalle/Putnam | IL |
| 111 | OTHER SITES: MINING SITES | Granville | | Putnam | IL |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 112 | OTHER SITES: MINING SITES | Danville-Royal | | Vermillion | IL |
| 113 | OTHER SITES: MINING SITES | Dubois | | Washington | IL |

## Non-Owned Sites: Indiana Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | | **SEPARATELY FUNDED SITES** | | |
| 1 | NON-OWNED SERVICE STATIONS | Anderson 1 | 603 East 8th | Anderson | IN |
| 2 | NON-OWNED SERVICE STATIONS | Clermont 1 | 9054 Crawfordsville Road | Clermont | IN |
| 3 | NON-OWNED SERVICE STATIONS | Clermont Pipeline Terminal | W. 30th St. | Clermont | IN |
| 4 | NON-OWNED SERVICE STATIONS | Clinton 1 | 9th and Vine Street | Clinton | IN |
| 5 | NON-OWNED SERVICE STATIONS | Elwood 1 | 2034 E. Main St | Elwood | IN |
| 6 | NON-OWNED SERVICE STATIONS | Franklin 1 | 650 West Madison | Franklin | IN |
| 7 | NON-OWNED SERVICE STATIONS | Greencastle 1 | 605 Bloomington | Greencastle | IN |
| 8 | NON-OWNED SERVICE STATIONS | Indianapolis 8 | 2801 Post Road | Indianapolis | IN |
| 9 | NON-OWNED SERVICE STATIONS | INDIANAPOLIS | 3311 KENTUCKY AVE | Indianapolis | IN |
| 10 | NON-OWNED SERVICE STATIONS | Indianapolis 2 | 4951 South Madison Avenue | Indianapolis | IN |
| 11 | NON-OWNED SERVICE STATIONS | Indianapolis 6 | 5461 East 30th Street | Indianapolis | IN |
| 12 | NON-OWNED SERVICE STATIONS | Indianapolis 1 | 550 South Harding Street | Indianapolis | IN |
| 13 | NON-OWNED SERVICE STATIONS | Indianapolis 7 | 911 West 34th Street | Indianapolis | IN |
| 14 | NON-OWNED SERVICE STATIONS | Kentland 1 | 5th & Seymour Streets | Kentland | IN |
| 15 | NON-OWNED SERVICE STATIONS | Lawrence 1 | 4715 Shadeland Avenue | Lawrence | IN |
| 16 | NON-OWNED SERVICE STATIONS | Linton 1 | 380 N.W. "A" Street | Linton | IN |
| 17 | NON-OWNED SERVICE STATIONS | Logansport 1 | 1001 Wheatland | Logansport | IN |
| 18 | NON-OWNED SERVICE STATIONS | Marion 1 | 1102 S. Baldwin Avenue | Marion | IN |
| 19 | NON-OWNED SERVICE STATIONS | 1741 SOUTH MAIN | 1741 SOUTH MAIN STREET | New Castle | IN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 20 | NON-OWNED SERVICE STATIONS | New Castle 1 | 2131 E. Broad Street | New Castle | IN |
| 21 | NON-OWNED SERVICE STATIONS | Peru 1 | 310 N. Broadway | Peru | IN |
| 22 | NON-OWNED SERVICE STATIONS | Plainfield 1 | US Highway & Clarks Road | Plainfield | IN |
| 23 | NON-OWNED SERVICE STATIONS | Princeton 1 | 1600 West Broadway | Princeton | IN |
| 24 | NON-OWNED SERVICE STATIONS | Rockville 1 | 600 North Lincoln Road | Rockville | IN |
| 25 | NON-OWNED SERVICE STATIONS | Speedway 1 | 2490 Georgetown Road | Speedway | IN |
| 26 | NON-OWNED SERVICE STATIONS | Sullivan 1 | Section and Johnson Street | Sullivan | IN |
| 27 | NON-OWNED SERVICE STATIONS | Terre Haute 2 | 1328 Poplar Street | Terre Haute | IN |
| 28 | NON-OWNED SERVICE STATIONS | Terre Haute 1 | 1732 North Third | Terre Haute | IN |
| 29 | NON-OWNED SERVICE STATIONS | Vincennes 1 | 1626 North 6th Street | Vincennes | IN |
| 30 | NON-OWNED SERVICE STATIONS | Wabash 1 | 958 North Cass | Wabash | IN |
| **OTHER SITES** | | | | | |
| 31 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Blooming Grove | IN |
| 32 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Huntington | IN |
| 33 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Lynn | IN |
| 34 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Milroy | IN |
| 35 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Raleigh | IN |
| 36 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Rushville | IN |
| 37 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Shelbyville | IN |
| 38 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Worthington | IN |
| 39 | OTHER SITES: GENERAL | FORMER INDIAN CREOSOTING COMPANY | NWNW SEC. 16/SWSW SEC. 9 T8N, R1W, LONGITUDE: -86.53, LATITUDE: 39.14/240 COUNTY CLUB ROAD | Bloomington | IN |
| 40 | OTHER SITES: GENERAL | CLERMONT TERMINAL | 10833 EAST COUNTY ROAD 300 NORTH | Clermont | IN |
| 41 | OTHER SITES: GENERAL | AMERICAN CHEMICAL SERVICES NPL SITE AND GRIFFITH FORMER LANDFILL SITES | 420 S. COLFAX AVENUE | Griffith | IN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 42 | OTHER SITES: GENERAL | KERR-MCGEE TERMINAL | 9301 W. 30TH STREET | Indianapolis | IN |

## Non-Owned Sites: Kansas Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | | **SEPARATELY FUNDED SITES** | | |
| 1 | NON-OWNED SERVICE STATIONS | Ark City | 601 Summit street | Ark City | KS |
| 2 | NON-OWNED SERVICE STATIONS | Arkansas City 1 | 601 S. Summit | Arkansas City | KS |
| 3 | NON-OWNED SERVICE STATIONS | Augusta 2 | 115 East 7th | Augusta | KS |
| 4 | NON-OWNED SERVICE STATIONS | Augusta 1 | 641 Osage | Augusta | KS |
| 5 | NON-OWNED SERVICE STATIONS | Belleville 1 | 28th & L Streets | Belleville | KS |
| 6 | NON-OWNED SERVICE STATIONS | Burlington 1 | 1124 N. 4th | Burlington | KS |
| 7 | NON-OWNED SERVICE STATIONS | Cherryvale Storage Tank | 101 East Fourth Street | Cherryvale | KS |
| 8 | NON-OWNED SERVICE STATIONS | Cherryvale 1 | NE/Third & Liberty (330 W. 3rd) | Cherryvale | KS |
| 9 | NON-OWNED SERVICE STATIONS | Colby | State Highway 25 | Colby | KS |
| 10 | NON-OWNED SERVICE STATIONS | Concordia 1 | NW/C 11th Street & Lincoln | Concordia | KS |
| 11 | NON-OWNED SERVICE STATIONS | Derby 1 | 230 S. Baltimore | Derby | KS |
| 12 | NON-OWNED SERVICE STATIONS | El Dorado 1 | 1631 West Central | El Dorado | KS |
| 13 | NON-OWNED SERVICE STATIONS | Emporia 1 | 1128 Commercial St. | Emporia | KS |
| 14 | NON-OWNED SERVICE STATIONS | Garden City Shop 'N Gas | 308 North Sixth Street | Garden City | KS |
| 15 | NON-OWNED SERVICE STATIONS | Garden City | NE/C 11th and Kansas Street | Garden City | KS |
| 16 | NON-OWNED SERVICE STATIONS | Hays 1 | 401 East 8th Street | Hays | KS |
| 17 | NON-OWNED SERVICE STATIONS | Haysville 1 | 248 South Seneca, Haysville KS 67060 | Haysville | KS |
| 18 | NON-OWNED SERVICE STATIONS | Hillsboro 1 | 414 S. Washington | Hillsboro | KS |
| 19 | NON-OWNED SERVICE STATIONS | Hutchinson 1 | 2629 East 4th Street | Hutchinson | KS |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 20 | NON-OWNED SERVICE STATIONS | Independence | 112 N. 10th Street | Independence | KS |
| 21 | NON-OWNED SERVICE STATIONS | Iola 1 | 201 South State Street | Iola | KS |
| 22 | NON-OWNED SERVICE STATIONS | Junction City | 711 Grant Avenue | Junction City | KS |
| 23 | NON-OWNED SERVICE STATIONS | Kansas City | 4732 State Avenue | Kansas City | KS |
| 24 | NON-OWNED SERVICE STATIONS | Lawrence 4 | 900 Illinois | Lawrence | KS |
| 25 | NON-OWNED SERVICE STATIONS | Lawrence 3 | 930 W. 23rd Street | Lawrence | KS |
| 26 | NON-OWNED SERVICE STATIONS | Lawrence 2 | West Sixth & Lawrence | Lawrence | KS |
| 27 | NON-OWNED SERVICE STATIONS | Lawrence 1 | 920 N. Second Street | Lawrence | KS |
| 28 | NON-OWNED SERVICE STATIONS | Liberal 2 | US 54 Highway & Jewell Street | Liberal | KS |
| 29 | NON-OWNED SERVICE STATIONS | Manhattan 1 | 12th and Laramie | Manhattan | KS |
| 30 | NON-OWNED SERVICE STATIONS | Manhattan 2 | State Highway 18 West | Manhattan | KS |
| 31 | NON-OWNED SERVICE STATIONS | Marysville 1 | 203 Center Street | Marysville | KS |
| 32 | NON-OWNED SERVICE STATIONS | Oakley | US Highway 83 & Interstate 70 | Oakley | KS |
| 33 | NON-OWNED SERVICE STATIONS | Ogden 1 | Highway 18 | Ogden | KS |
| 34 | NON-OWNED SERVICE STATIONS | Oswego 1 | NW/C 6th & Ohio Street | Oswego | KS |
| 35 | NON-OWNED SERVICE STATIONS | Paola 1 | NW/C Piankishaw and Silver | Paola | KS |
| 36 | NON-OWNED SERVICE STATIONS | Pittsburgh 1 | 719 South Broadway | Pittsburgh | KS |
| 37 | NON-OWNED SERVICE STATIONS | Russell 1 | US 281 E | Russell | KS |
| 38 | NON-OWNED SERVICE STATIONS | Topeka 5 | 101 East Highway 24 | Topeka | KS |
| 39 | NON-OWNED SERVICE STATIONS | Topeka 2 | 4710 South Topeka Avenue | Topeka | KS |
| 40 | NON-OWNED SERVICE STATIONS | Topeka 3 | 5335 South Topeka Boulevard | Topeka | KS |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 41 | NON-OWNED SERVICE STATIONS | Topeka 4 | NW/C I-70 & Valencia Road | Topeka | KS |
| 42 | NON-OWNED SERVICE STATIONS | Washington | 101 West 7th Street | Washington | KS |
| 43 | NON-OWNED SERVICE STATIONS | Wellington 1 | 206 West 15th | Wellington | KS |
| 44 | NON-OWNED SERVICE STATIONS | Wichita 2 | 1439 East 13th | Wichita | KS |
| 45 | NON-OWNED SERVICE STATIONS | Wichita 5 | 1701 East McArthur | Wichita | KS |
| 46 | NON-OWNED SERVICE STATIONS | Wichita 9 | 2160 South Broadway | Wichita | KS |
| 47 | NON-OWNED SERVICE STATIONS | Wichita 6 | 2347 South Senenca | Wichita | KS |
| 48 | NON-OWNED SERVICE STATIONS | Wichita 8 | 2410 South Oliver | Wichita | KS |
| 49 | NON-OWNED SERVICE STATIONS | Wichita 3 | 2439 North Arkansas | Wichita | KS |
| 50 | NON-OWNED SERVICE STATIONS | Wichita 4 | 4710 South East Boulevard | Wichita | KS |
| 51 | NON-OWNED SERVICE STATIONS | Wichita 1 | 6439 Highway 54 West | Wichita | KS |
| 52 | NON-OWNED SERVICE STATIONS | Wichita 7 | 695 North West Street | Wichita | KS |
| 53 | NON-OWNED SERVICE STATIONS | Wichita 10 | NW/C 13th & Maize Road | Wichita | KS |
| 54 | NON-OWNED SERVICE STATIONS | Yates Center 1 | 501 West Mary | Yates Center | KS |

## Non-Owned Sites: Louisiana Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| **SEPARATELY FUNDED SITES** | | | | | |
| 1 | NON-OWNED FUNDED SITES | DUBACH GAS SITE | 300 FLOWERS ROAD | Dubach | LA |
| 2 | OTHER SITES: GENERAL | CALHOUN FACILITY | 200 GRIGGS ROAD | Calhoun | LA |

## Non-Owned Sites: Massachusetts Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| | | | **SEPARATELY FUNDED SITES** | | |
| 1 | NON-OWNED FUNDED SITES | FIREWORKS SITE | APPROXIMATELY 240 ACRES GENERALLY BORDERED TO THE NORTH BY SCHOOL AND CIRCUIT STREETS; TO THE EAST BY WINTER STREET AND BROADWAY; TO THE SOUTH BY EAST WASHINGTON STREET; AND TO THE WEST BY KING STREET. | Hanover | MA |

## Non-Owned Sites: Missouri Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| | | | **OTHER SITES** | | |
| 1 | OTHER SITES: GENERAL | ST. LOUIS | 4000 KOCH HOSPITAL ROAD | Mehlville | MO |
| 2 | OTHER SITES: MINING SITES | Sheldon-Bellamy | | Barton/Vernon | MO |
| 3 | OTHER SITES: MINING SITES | SE Missouri Regional | | Butler/Carter/Reynolds /Shannon/Wayne | MO |
| 4 | OTHER SITES: MINING SITES | Cape Girardeau | | Cape Girardeau | MO |
| 5 | OTHER SITES: MINING SITES | Van Buren | | Carter | MO |
| 6 | OTHER SITES: MINING SITES | Caulfield District | | Howell/Ozark | MO |
| 7 | OTHER SITES: MINING SITES | Western Missouri | | Regional | MO |
| 8 | OTHER SITES: MINING SITES | Corridon | | Reynolds | MO |
| 9 | OTHER SITES: MINING SITES | Ellington Area | | Reynolds | MO |
| 10 | OTHER SITES: MINING SITES | Ozark Mine | | Reynolds | MO |
| 11 | OTHER SITES: MINING SITES | Paint Rock | | Shannon | MO |
| 12 | OTHER SITES: MINING SITES | Spring Valley | | Shannon | MO |
| 13 | OTHER SITES: MINING SITES | St. Genevieve County | | St. Genevieve | MO |
| 14 | OTHER SITES: MINING SITES | Vernon County | | Vernon | MO |
| 15 | OTHER SITES: MINING SITES | Piedmont | | Wayne | MO |
| 16 | OTHER SITES: MINING SITES | Belgrade | | | MO |
| 17 | OTHER SITES: MINING SITES | Williamsville Area | | | MO |

### Non-Owned Sites: Mississippi Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| SEPARATELY FUNDED SITES | | | | | |
| 1 | NON-OWNED FUNDED SITES | HATTIESBURG SITE | NEAR W. PINE STREET | HATTIESBURG | MS |

## Non-Owned Sites: Nevada Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| | | **SEPARATELY FUNDED SITES** | | | |
| 1 | OTHER SITES: MINING SITES | PIOCHE-CASELTON MINE SITES | T1N, R67 E | Lincoln | NV |
| 2 | OTHER SITES: MINING SITES | PIOCHE-BRISTOL MINE SITES | T3N, R66 E | Lincoln | NV |
| 3 | OTHER SITES: MINING SITES | Pioche (Bristol) | | Lincoln | NV |
| 4 | OTHER SITES: MINING SITES | Pioche (Caselton) | | Lincoln | NV |

## Non-Owned Sites: New Jersey Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| **SEPARATELY FUNDED SITES** | | | | | |
| 1 | NON-OWNED FUNDED SITES | WELSBACH AND GENERAL GAS MANTLE SUPERFUND SITE | 5 AREAS IN CAMDEN AND GLOUCESTER CITY | Gloucester City | NJ |
| 2 | NON-OWNED FUNDED SITES | MANVILLE SITE | VALERIE DRIVE & LOUISE DRIVE | Manville | NJ |
| **OTHER SITES** | | | | | |
| 3 | OTHER SITES: GENERAL | SILSONIX CORPORATE SITE | 514 LYONS AVENUE | Irvington | NJ |
| 4 | OTHER SITES: GENERAL | PATERSON SITE | 21, 51, 99, and 203 kuller road | Paterson | NJ |
| 5 | OTHER SITES: GENERAL | SEWAREN TERMINAL | 115 STATE STREET | Sewaren | NJ |
| 6 | OTHER SITES: MINING SITES | Manchester/ASARCO | | Ocean/ Manchester | NJ |

## Non-Owned Sites: New York Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|--------------------------------|---------------|-------------------|----------------|-------|
| | | **SEPARATELY FUNDED SITES** | | | |
| 1 | OTHER SITES: GENERAL | ROME SITE | 5900 SUCCESS DRIVE | Rome | NY |

## Non-Owned Sites: North Carolina Releases

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | **OTHER SITES** | | | |
| 1 | OTHER SITES: GENERAL | POTTER'S SEPTIC TANK SERVICE PITS SUPERFUND SITE | OFF 74-76 NEAR SANDY CREEK & NORTHWEST | Sandy Creek | NC |
| 2 | OTHER SITES: GENERAL | BIG "O" JAMBOREE SITE | HIGHWAY 17 NORTH AND ROANOKE RIVER | Williamston | NC |

**Non-Owned Sites: Ohio Covenant Not to Sue**

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | SEPARATELY FUNDED SITES | | | |
| 1 | NON-OWNED FUNDED SITES | TOLEDO TIE SITE | INTERSECTION OF FRENCHMENS ROAD AND ARCO DRIVE | Toledo | OH |
| 2 | NON-OWNED SERVICE STATIONS | Former kerr-mcgee manufacturing facility | 604 findlay street | Fostoria | OH |
| | | OTHER SITES | | | |
| 3 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | 1834 spangler road ne | Canton | OH |
| 4 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Delta | OH |
| 5 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Mt. Gilead | OH |
| 6 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Union City | OH |
| 7 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | W. Alexandria | OH |
| 8 | OTHER SITES: MINING SITES | Meigs | | Meigs | OH |

## Non-Owned Sites: Oklahoma Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | **SEPARATELY FUNDED SITES** | | | |
| 1 | NON-OWNED FUNDED SITES | GORE SITE (SEQUOIA FUELS) | 140 NORTH HIGHWAY 10 | Gore | OK |
| 2 | NON-OWNED FUNDED SITES | KRINGER/STIGLER SITE (CHOCTAW COAL MINE SITE) | HASKELL COUNTY | Kringer/Stigler | OK |
| 3 | NON-OWNED FUNDED SITES | WYNNEWOOD SITE | 906 SOUTH POWELL AVENUE | Wynnewood | OK |
| 4 | NON-OWNED FUNDED SITES | CUSHING SITE | 1 MILE EAST OF HIGHWAY 18 AND DEEP ROCK ROAD INTERSECTION | Cushing | OK |
| 5 | NON-OWNED FUNDED SITES | CIMARRON SITE | 1/2 MILE NORTH OF HIGHWAY 33 AND HIGHWAY 74 INTERSECTION | Guthrie | OK |
| 6 | NON-OWNED SERVICE STATIONS | Ada 1 | 14th Street & Mississippi | Ada | OK |
| 7 | NON-OWNED SERVICE STATIONS | Ada 2 | 630 N. Broadway | Ada | OK |
| 8 | NON-OWNED SERVICE STATIONS | Ada 3 | 914 West Main Street | Ada | OK |
| 9 | NON-OWNED SERVICE STATIONS | Ada 4 | Cradduck Road and Highway 99 | Ada | OK |
| 10 | NON-OWNED SERVICE STATIONS | Allen 1 | Bulk and Service Station & Tourist Court | Allen | OK |
| 11 | NON-OWNED SERVICE STATIONS | Altus 1 | 721 South Main Street | Altus | OK |
| 12 | NON-OWNED SERVICE STATIONS | Alva | 923 7th Street | Alva | OK |
| 13 | NON-OWNED SERVICE STATIONS | Anadarko 1 | 602 West Kentucky | Anadarko | OK |
| 14 | NON-OWNED SERVICE STATIONS | Anadarko 2 | SW/C South Mission & Kentucky | Anadarko | OK |
| 15 | NON-OWNED SERVICE STATIONS | Antlers 1 | U.S. Highway 271 | Antlers | OK |
| 16 | NON-OWNED SERVICE STATIONS | Antlers 2 | | Antlers | OK |
| 17 | NON-OWNED SERVICE STATIONS | Ardmore 1 | 203 - 14th Street, N.E. | Ardmore | OK |
| 18 | NON-OWNED SERVICE STATIONS | Ardmore 2 | SW/C US Highway 70 & I-35 | Ardmore | OK |
| 19 | NON-OWNED SERVICE STATIONS | Atoka 1 | 206 N. Mississippi Avenue | Atoka | OK |
| 20 | NON-OWNED SERVICE STATIONS | Atoka 2 | Highway 69 | Atoka | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 21 | NON-OWNED SERVICE STATIONS | Barnsdall 1 | 412 West Spruce | Barnsdall | OK |
| 22 | NON-OWNED SERVICE STATIONS | Bartlesville 3 | 4004 Nowata Road | Bartlesville | OK |
| 23 | NON-OWNED SERVICE STATIONS | Bartlesville 1 | 901 E. Frank Phillips | Bartlesville | OK |
| 24 | NON-OWNED SERVICE STATIONS | Bethany 2 | 7104 N.W. 23rd | Bethany | OK |
| 25 | NON-OWNED SERVICE STATIONS | Blackwell 1 | 1502 South Main Street | Blackwell | OK |
| 26 | NON-OWNED SERVICE STATIONS | Blackwell 2 | 728 North Main Street | Blackwell | OK |
| 27 | NON-OWNED SERVICE STATIONS | Braman 1 | NW/C I-35 & US 77 | Braman | OK |
| 28 | NON-OWNED SERVICE STATIONS | Britton | 301 East Britton Avenue | Britton | OK |
| 29 | NON-OWNED SERVICE STATIONS | Broken Bow 1 | West First and Park Drive | Broken Bow | OK |
| 30 | NON-OWNED SERVICE STATIONS | Cache 1 | 507 H Street | Cache | OK |
| 31 | NON-OWNED SERVICE STATIONS | Calvin 1 | U.S. 75 and 270 | Calvin | OK |
| 32 | NON-OWNED SERVICE STATIONS | Chandler Bulk Station | 6th and Manvel Streets | Chandler | OK |
| 33 | NON-OWNED SERVICE STATIONS | Chandler 1 | Cleveland Street and US Highway 66 | Chandler | OK |
| 34 | NON-OWNED SERVICE STATIONS | Checotah 1 | P.O. Box 28 | Checotah | OK |
| 35 | NON-OWNED SERVICE STATIONS | Cherokee 1 | Highway 64 and South Ohio | Cherokee | OK |
| 36 | NON-OWNED SERVICE STATIONS | Chickasha 2 | 1502 South 4th Street | Chickasha | OK |
| 37 | NON-OWNED SERVICE STATIONS | Choctaw 1 | Muzzy Street | Choctaw | OK |
| 38 | NON-OWNED SERVICE STATIONS | Cleveland 1 | C Street and Caddo | Cleveland | OK |
| 39 | NON-OWNED SERVICE STATIONS | Clinton 1 | 2000 Gary Freeway | Clinton | OK |
| 40 | NON-OWNED SERVICE STATIONS | Clinton 2 | NE/C 4th and Terrace | Clinton | OK |
| 41 | NON-OWNED SERVICE STATIONS | Cordell 1 | 1110 North Church Street | Cordell | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 42 | NON-OWNED SERVICE STATIONS | Cordell 2 | 1126 East Main Street | Cordell | OK |
| 43 | NON-OWNED SERVICE STATIONS | Cushing 1 | 1624 or 1348 East Main Street | Cushing | OK |
| 44 | NON-OWNED SERVICE STATIONS | Cushing 2 | 905 North Little | Cushing | OK |
| 45 | NON-OWNED SERVICE STATIONS | Cushing 3 | NW/C East Main & Linwood | Cushing | OK |
| 46 | NON-OWNED SERVICE STATIONS | Davis 1 | R.F.D. 1 | Davis | OK |
| 47 | NON-OWNED SERVICE STATIONS | Del City | 1801 S. Sunnylane | Del City | OK |
| 48 | NON-OWNED SERVICE STATIONS | Dill City | SE/4 of Sectio 31, T 10 N, R 18 W, Washita County | Dill City | OK |
| 49 | NON-OWNED SERVICE STATIONS | Drumright 2 | 501 North Harley Street | Drumright | OK |
| 50 | NON-OWNED SERVICE STATIONS | Drumright Bulk Station | Wheeler Lease | Drumright | OK |
| 51 | NON-OWNED SERVICE STATIONS | Duncan 3 | 16th and Pine | Duncan | OK |
| 52 | NON-OWNED SERVICE STATIONS | Duncan 1 | 505 S. 81st Bypass | Duncan | OK |
| 53 | NON-OWNED SERVICE STATIONS | Duncan 2 | 706 East Highway 7 | Duncan | OK |
| 54 | NON-OWNED SERVICE STATIONS | Edmond 2 | 1422 S. Broadway | Edmond | OK |
| 55 | NON-OWNED SERVICE STATIONS | Edmond 1 | 2216 West Edmond Road | Edmond | OK |
| 56 | NON-OWNED SERVICE STATIONS | El Reno 2 | 1519 Sunset Drive | El Reno | OK |
| 57 | NON-OWNED SERVICE STATIONS | Elk City 2 | 2124 West Third Street | Elk City | OK |
| 58 | NON-OWNED SERVICE STATIONS | Elk City | I-40 & County Road | Elk City | OK |
| 59 | NON-OWNED SERVICE STATIONS | Elk City 1 | NE/C First & Van Buren | Elk City | OK |
| 60 | NON-OWNED SERVICE STATIONS | Enid 3 | 129 West Elm Street | Enid | OK |
| 61 | NON-OWNED SERVICE STATIONS | Enid 5 | 1609 South Van Buren | Enid | OK |
| 62 | NON-OWNED SERVICE STATIONS | Enid 4 | 231 West Main Street | Enid | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 63 | NON-OWNED SERVICE STATIONS | Enid 1 | 308 West Broadway | Enid | OK |
| 64 | NON-OWNED SERVICE STATIONS | Enid 6 | 424 N. Van Buren | Enid | OK |
| 65 | NON-OWNED SERVICE STATIONS | Enid 7 | North 4th & Walnut | Enid | OK |
| 66 | NON-OWNED SERVICE STATIONS | Erick 1 | NE/C I-40 & SH 30 | Erick | OK |
| 67 | NON-OWNED SERVICE STATIONS | Eufaula 1 | 302 North Main Street | Eufaula | OK |
| 68 | NON-OWNED SERVICE STATIONS | Eufaula 2 | State Highway 9 and US 69 Service Road | Eufaula | OK |
| 69 | NON-OWNED SERVICE STATIONS | Fairland | NW/C Connor and Main Street | Fairland | OK |
| 70 | NON-OWNED SERVICE STATIONS | Fairview | Main and Ash Streets | Fairview | OK |
| 71 | NON-OWNED SERVICE STATIONS | Frederick 1 | 1200 S. Main Street | Frederick | OK |
| 72 | NON-OWNED SERVICE STATIONS | Gore 1 | NW/C 8th and Main Streets | Gore | OK |
| 73 | NON-OWNED SERVICE STATIONS | Guthrie 1 | 308 S. Division Street | Guthrie | OK |
| 74 | NON-OWNED SERVICE STATIONS | Guthrie | 617-618 Division Street | Guthrie | OK |
| 75 | NON-OWNED SERVICE STATIONS | Hennessey | I-81 & I-51 | Hennessey | OK |
| 76 | NON-OWNED SERVICE STATIONS | Henryetta | 611 E. Main street | Henryetta | OK |
| 77 | NON-OWNED SERVICE STATIONS | Henryetta 2 | SW/C East Main and F Streets | Henryetta | OK |
| 78 | NON-OWNED SERVICE STATIONS | Henryetta 1 | US Highway 62 East | Henryetta | OK |
| 79 | NON-OWNED SERVICE STATIONS | Holdenville 1 | 7th Avenue and Hinckley Street | Holdenville | OK |
| 80 | NON-OWNED SERVICE STATIONS | Hugo 1 | 601 W. Jackson | Hugo | OK |
| 81 | NON-OWNED SERVICE STATIONS | Idabel 1 | 110 East Washington | Idabel | OK |
| 82 | NON-OWNED SERVICE STATIONS | Kansas | State Highway 33 East | Kansas | OK |
| 83 | NON-OWNED SERVICE STATIONS | Keota 1 | 2 miles East of Keota on State Highway 9 | Keota | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 84 | NON-OWNED SERVICE STATIONS | Konawa 1 | 111 East Main | Konawa | OK |
| 85 | NON-OWNED SERVICE STATIONS | Lawton 4 | 2401 Cache Road | Lawton | OK |
| 86 | NON-OWNED SERVICE STATIONS | Lawton 6 | 4135 West Gore | Lawton | OK |
| 87 | NON-OWNED SERVICE STATIONS | Lexington 1 | Highway 77 | Lexington | OK |
| 88 | NON-OWNED SERVICE STATIONS | Lindsay 1 | 508 West Cherokee | Lindsay | OK |
| 89 | NON-OWNED SERVICE STATIONS | Madill | 511 S. 1st street | Madill | OK |
| 90 | NON-OWNED SERVICE STATIONS | Madill 1 | 511 South First | Madill | OK |
| 91 | NON-OWNED SERVICE STATIONS | Maysville 1 | Sixth and Ash Streets | Maysville | OK |
| 92 | NON-OWNED SERVICE STATIONS | McAlester 2 | 1101 E. Carl Albert | McAlester | OK |
| 93 | NON-OWNED SERVICE STATIONS | McAlester | 1101 E. Carl Albert pkwy | McAlester | OK |
| 94 | NON-OWNED SERVICE STATIONS | McAlester | Ashland & Main | McAlester | OK |
| 95 | NON-OWNED SERVICE STATIONS | Midwest City | 1100 N. Douglas Blvd. | Midwest City | OK |
| 96 | NON-OWNED SERVICE STATIONS | Midwest City 2 | 1100 North Midwest Blvd | Midwest City | OK |
| 97 | NON-OWNED SERVICE STATIONS | Midwest City 4 | 2725 South Midwest Blvd | Midwest City | OK |
| 98 | NON-OWNED SERVICE STATIONS | Midwest City | 8917 SE 29th street | Midwest City | OK |
| 99 | NON-OWNED SERVICE STATIONS | Midwest City | N.E. 10th street & N. Midwest Blvd. | Midwest City | OK |
| 100 | NON-OWNED SERVICE STATIONS | Midwest City 1 | NW/C NE 10 and Westminster | Midwest City | OK |
| 101 | NON-OWNED SERVICE STATIONS | Midwest City 5 | NW/C SE 29 & Post Road | Midwest City | OK |
| 102 | NON-OWNED SERVICE STATIONS | Midwest City | SE 29th street & Sooner road | Midwest City | OK |
| 103 | NON-OWNED SERVICE STATIONS | Moore | 600 SW 4th street | Moore | OK |
| 104 | NON-OWNED SERVICE STATIONS | Moore 2 | 714 N.W. 27th | Moore | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 105 | NON-OWNED SERVICE STATIONS | Moore | 714 NW 27th street | Moore | OK |
| 106 | NON-OWNED SERVICE STATIONS | Moore | 800 N.E. 12th street | Moore | OK |
| 107 | NON-OWNED SERVICE STATIONS | Moore 6 | NE/C SE 19th & Eastern | Moore | OK |
| 108 | NON-OWNED SERVICE STATIONS | Moore 1 | NW/C SE 119 & Sunnylane | Moore | OK |
| 109 | NON-OWNED SERVICE STATIONS | Moore 3 | SE/C 119th and Bryant | Moore | OK |
| 110 | NON-OWNED SERVICE STATIONS | Moore 4 | SE/C SE 164th & Bryant Avenue | Moore | OK |
| 111 | NON-OWNED SERVICE STATIONS | Moore 4 | SW 4th and Telephone Road | Moore | OK |
| 112 | NON-OWNED SERVICE STATIONS | Muskogee | 101 W. Southside Blvd. | Muskogee | OK |
| 113 | NON-OWNED SERVICE STATIONS | Muskogee | 111 S. 32nd street | Muskogee | OK |
| 114 | NON-OWNED SERVICE STATIONS | Muskogee 4 | 1202 West Okmulgee | Muskogee | OK |
| 115 | NON-OWNED SERVICE STATIONS | Muskogee | 2340 Gibson street | Muskogee | OK |
| 116 | NON-OWNED SERVICE STATIONS | Muskogee | 2404 E. Chandler road | Muskogee | OK |
| 117 | NON-OWNED SERVICE STATIONS | Muskogee 1 | 3704 West Okmulgee | Muskogee | OK |
| 118 | NON-OWNED SERVICE STATIONS | Muskogee | 737 Callahan street | Muskogee | OK |
| 119 | NON-OWNED SERVICE STATIONS | Muskogee 8 | 838 North Main Street | Muskogee | OK |
| 120 | NON-OWNED SERVICE STATIONS | Muskogee 9 | SW/C Shawnee and North 17th Street | Muskogee | OK |
| 121 | NON-OWNED SERVICE STATIONS | Mustang 2 | NE/C S.W. 74th Street and Czech Hall Road | Mustang | OK |
| 122 | NON-OWNED SERVICE STATIONS | Mustang 1 | NW/C SW 44th and Sara Road | Mustang | OK |
| 123 | NON-OWNED SERVICE STATIONS | Mustang 4 | SE/C Sw 29th St. & Mustang Road | Mustang | OK |
| 124 | NON-OWNED SERVICE STATIONS | Mustang 3 | SW/C SW 59th & Mustang Road | Mustang | OK |
| 125 | NON-OWNED SERVICE STATIONS | New Perryman | | New Perryman | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 126 | NON-OWNED SERVICE STATIONS | Newcastle 1 | Tuttle & Newcastle 1 | Newcastle | OK |
| 127 | NON-OWNED SERVICE STATIONS | Noble 1 | US Highway 77 | Noble | OK |
| 128 | NON-OWNED SERVICE STATIONS | Norman | 1445 W. Lindsey street | Norman | OK |
| 129 | NON-OWNED SERVICE STATIONS | Norman 2 | 2100 W. Main | Norman | OK |
| 130 | NON-OWNED SERVICE STATIONS | Norman | 2316 E. Lindsey street | Norman | OK |
| 131 | NON-OWNED SERVICE STATIONS | Norman 1 | 2316 West Lindsey | Norman | OK |
| 132 | NON-OWNED SERVICE STATIONS | Norman | 316 W. Robinson street | Norman | OK |
| 133 | NON-OWNED SERVICE STATIONS | Norman 10 | Highway 77 SE | Norman | OK |
| 134 | NON-OWNED SERVICE STATIONS | Norman 6 | NE/C SW 194th and Santa Fe Avenue | Norman | OK |
| 135 | NON-OWNED SERVICE STATIONS | Norman 4 | NW/C New State Highway 9 & Douglas | Norman | OK |
| 136 | NON-OWNED SERVICE STATIONS | Norman 3 | Robinson Street & Berry Street | Norman | OK |
| 137 | NON-OWNED SERVICE STATIONS | Norman 5 | SW/C SE 19th and Midwest Blvd | Norman | OK |
| 138 | NON-OWNED SERVICE STATIONS | Nowata 1 | 216 South Ash | Nowata | OK |
| 139 | NON-OWNED SERVICE STATIONS | Okemah 1 | 402 North Fifth Street | Okemah | OK |
| 140 | NON-OWNED SERVICE STATIONS | Okemah 2 | I-40 & State 27 Interchange | Okemah | OK |
| 141 | NON-OWNED SERVICE STATIONS | Oklahoma City | SE/C 17th and N MacArthur | Oklahoma | OK |
| 142 | NON-OWNED SERVICE STATIONS | Oklahoma City 42 | 100 N.E. 13th Street | Oklahoma City | OK |
| 143 | NON-OWNED SERVICE STATIONS | Oklahoma City 99 | 101 NW 63rd | Oklahoma City | OK |
| 144 | NON-OWNED SERVICE STATIONS | Oklahoma City 39 | 101 South Walker | Oklahoma City | OK |
| 145 | NON-OWNED SERVICE STATIONS | Oklahoma City 1 | 1023 West Main Street | Oklahoma City | OK |
| 146 | NON-OWNED SERVICE STATIONS | Oklahoma City 29 | 1030 North Western | Oklahoma City | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 147 | NON-OWNED SERVICE STATIONS | Southern Region Office | 105 S.E. 46th Street | Oklahoma City | OK |
| 148 | NON-OWNED SERVICE STATIONS | Oklahoma City | 10830 N. May avenue | Oklahoma City | OK |
| 149 | NON-OWNED SERVICE STATIONS | Oklahoma City 27 | 1100 S.W. 29th Street | Oklahoma City | OK |
| 150 | NON-OWNED SERVICE STATIONS | Oklahoma City 117 | 1207 Sovereign Row, Building A #1207B | Oklahoma City | OK |
| 151 | NON-OWNED SERVICE STATIONS | Oklahoma City | 122nd street & MacArthur blvd | Oklahoma City | OK |
| 152 | NON-OWNED SERVICE STATIONS | Oklahoma City | 122nd street & Rockwell avenue | Oklahoma City | OK |
| 153 | NON-OWNED SERVICE STATIONS | Oklahoma City 113 | 12300 N. MacArthur | Oklahoma City | OK |
| 154 | NON-OWNED SERVICE STATIONS | Oklahoma City 12 | 1301 South Walker | Oklahoma City | OK |
| 155 | NON-OWNED SERVICE STATIONS | Oklahoma City 35 | 1306 East Reno | Oklahoma City | OK |
| 156 | NON-OWNED SERVICE STATIONS | Oklahoma City 60 | 1601 South May Avenue (near 15th) | Oklahoma City | OK |
| 157 | NON-OWNED SERVICE STATIONS | Oklahoma City 32 | 1724 N.W. 16th Street | Oklahoma City | OK |
| 158 | NON-OWNED SERVICE STATIONS | Oklahoma City 75 | 1920 N.E. Eight Street | Oklahoma City | OK |
| 159 | NON-OWNED SERVICE STATIONS | Oklahoma City 7A | 201 South May Avenue | Oklahoma City | OK |
| 160 | NON-OWNED SERVICE STATIONS | Oklahoma City | 201 W. Britton road | Oklahoma City | OK |
| 161 | NON-OWNED SERVICE STATIONS | Oklahoma City 57 | 201 West Britton Road | Oklahoma City | OK |
| 162 | NON-OWNED SERVICE STATIONS | Oklahoma City 36 | 2040 N.W. 23rd Street | Oklahoma City | OK |
| 163 | NON-OWNED SERVICE STATIONS | Oklahoma City Warehouse | 220 N.W. Robert S. Kerr Avenue | Oklahoma City | OK |
| 164 | NON-OWNED SERVICE STATIONS | Oklahoma City 21 | 2321 N. Portland | Oklahoma City | OK |
| 165 | NON-OWNED SERVICE STATIONS | Oklahoma City 8 | 23rd & Eastern | Oklahoma City | OK |
| 166 | NON-OWNED SERVICE STATIONS | Oklahoma City | 23rd street & Portland avenue | Oklahoma City | OK |
| 167 | NON-OWNED SERVICE STATIONS | Oklahoma City | 23rd street & Rockwell avenue | Oklahoma City | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 168 | NON-OWNED SERVICE STATIONS | Oklahoma City 2 | 2410 S.W. 29th Street | Oklahoma City | OK |
| 169 | NON-OWNED SERVICE STATIONS | OKLAHOMA CITY | 2412 SW 29TH STREET (29TH AND AGNEW) | Oklahoma City | OK |
| 170 | NON-OWNED SERVICE STATIONS | Oklahoma City 31 | 2419 North Classen | Oklahoma City | OK |
| 171 | NON-OWNED SERVICE STATIONS | Oklahoma City | 2421 SW 29th street | Oklahoma City | OK |
| 172 | NON-OWNED SERVICE STATIONS | Oklahoma City 3 | 2523 Classen Blvd | Oklahoma City | OK |
| 173 | NON-OWNED SERVICE STATIONS | Oklahoma City | 2523 Classen Blvd. | Oklahoma City | OK |
| 174 | NON-OWNED SERVICE STATIONS | Oklahoma City 70 | 2726 S. Western | Oklahoma City | OK |
| 175 | NON-OWNED SERVICE STATIONS | Oklahoma City 58 | 2819 South Shields | Oklahoma City | OK |
| 176 | NON-OWNED SERVICE STATIONS | Oklahoma City 54 | 2840 S.W. 59th | Oklahoma City | OK |
| 177 | NON-OWNED SERVICE STATIONS | Oklahoma City 38 | 2900 N.W. 16th | Oklahoma City | OK |
| 178 | NON-OWNED SERVICE STATIONS | Oklahoma City 12 | 2900 Northwest 23rd Street | Oklahoma City | OK |
| 179 | NON-OWNED SERVICE STATIONS | midwest city #3 | 2917 south douglas avenue | Oklahoma City | OK |
| 180 | NON-OWNED SERVICE STATIONS | Oklahoma City 83 | 2922 N. Lincoln | Oklahoma City | OK |
| 181 | NON-OWNED SERVICE STATIONS | Oklahoma City 34 | 3020 N.W. 23rd | Oklahoma City | OK |
| 182 | NON-OWNED SERVICE STATIONS | Oklahoma City 40 | 318 North Walnut | Oklahoma City | OK |
| 183 | NON-OWNED SERVICE STATIONS | Oklahoma City | 3601 and 3603 NW 50th street | Oklahoma City | OK |
| 184 | NON-OWNED SERVICE STATIONS | Oklahoma City | 36th street & May avenue | Oklahoma City | OK |
| 185 | NON-OWNED SERVICE STATIONS | Oklahoma City | 3701 S. Pennsylvania avenue (near 36th street) | Oklahoma City | OK |
| 186 | NON-OWNED SERVICE STATIONS | Oklahoma City 15 | 3701 South Pennsylvania | Oklahoma City | OK |
| 187 | NON-OWNED SERVICE STATIONS | Oklahoma City | 4015 N. Pennsylvania avenue | Oklahoma City | OK |
| 188 | NON-OWNED SERVICE STATIONS | Oklahoma City 90 | 4015 North Pennsylvania | Oklahoma City | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 189 | NON-OWNED SERVICE STATIONS | Oklahoma City 11 | 402 South Robinson Street | Oklahoma City | OK |
| 190 | NON-OWNED SERVICE STATIONS | Oklahoma City 43 | 4200 Newcastle Road | Oklahoma City | OK |
| 191 | NON-OWNED SERVICE STATIONS | Oklahoma City 52 | 4200 South May Avenue (near may and 41st) | Oklahoma City | OK |
| 192 | NON-OWNED SERVICE STATIONS | Oklahoma City 26 | 429 S.E. 29th Street | Oklahoma City | OK |
| 193 | NON-OWNED SERVICE STATIONS | Oklahoma City 51 | 4430 West Reno | Oklahoma City | OK |
| 194 | NON-OWNED SERVICE STATIONS | Oklahoma City 67 | 4432 N.W. 63rd | Oklahoma City | OK |
| 195 | NON-OWNED SERVICE STATIONS | Oklahoma City | 4th street & Harrison avenue | Oklahoma City | OK |
| 196 | NON-OWNED SERVICE STATIONS | Oklahoma City | 5101 N. Western avenue | Oklahoma City | OK |
| 197 | NON-OWNED SERVICE STATIONS | Oklahoma City 30 | 5101 N. Western Avenue | Oklahoma City | OK |
| 198 | NON-OWNED SERVICE STATIONS | Oklahoma City 68 | 5241 NW 10th Street | Oklahoma City | OK |
| 199 | NON-OWNED SERVICE STATIONS | OKLAHOMA CITY | 5400 MARTIN LUTHER KING | Oklahoma City | OK |
| 200 | NON-OWNED SERVICE STATIONS | Oklahoma City 24 | 5529 SE 15th | Oklahoma City | OK |
| 201 | NON-OWNED SERVICE STATIONS | Oklahoma City | 57th and north may | Oklahoma City | OK |
| 202 | NON-OWNED SERVICE STATIONS | Oklahoma City 16 | 5816 North May Avenue | Oklahoma City | OK |
| 203 | NON-OWNED SERVICE STATIONS | Oklahoma City 6 | 5901 South Shields | Oklahoma City | OK |
| 204 | NON-OWNED SERVICE STATIONS | Oklahoma City | 63rd & Broadway | Oklahoma City | OK |
| 205 | NON-OWNED SERVICE STATIONS | Oklahoma City | 63rd street & May avenue | Oklahoma City | OK |
| 206 | NON-OWNED SERVICE STATIONS | Oklahoma City | 63rd street & Meridian avenue | Oklahoma City | OK |
| 207 | NON-OWNED SERVICE STATIONS | Oklahoma City 33 | 6401 N. May | Oklahoma City | OK |
| 208 | NON-OWNED SERVICE STATIONS | Oklahoma City 5 | 6602 North Western | Oklahoma City | OK |
| 209 | NON-OWNED SERVICE STATIONS | Oklahoma City 17 | 700 S.E. 15th | Oklahoma City | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 210 | NON-OWNED SERVICE STATIONS | Oklahoma City 18 | 701 N.E. 7th Street | Oklahoma City | OK |
| 211 | NON-OWNED SERVICE STATIONS | Oklahoma City 7 | 701 NE 8th Street | Oklahoma City | OK |
| 212 | NON-OWNED SERVICE STATIONS | Oklahoma City 114 | 7040 N.W. 122nd | Oklahoma City | OK |
| 213 | NON-OWNED SERVICE STATIONS | Oklahoma City 2A | 723 South Walker | Oklahoma City | OK |
| 214 | NON-OWNED SERVICE STATIONS | Oklahoma City 71 | 7941 N.E. Expressway | Oklahoma City | OK |
| 215 | NON-OWNED SERVICE STATIONS | Oklahoma City 111 | 7944 W. Hefner Road | Oklahoma City | OK |
| 216 | NON-OWNED SERVICE STATIONS | Oklahoma City Bulk Station | 814 South Harvey Street | Oklahoma City | OK |
| 217 | NON-OWNED SERVICE STATIONS | Oklahoma City | 89th street & S. Pennsylvania avenue | Oklahoma City | OK |
| 218 | NON-OWNED SERVICE STATIONS | Oklahoma City 116 | 9000 South Pennsylvania | Oklahoma City | OK |
| 219 | NON-OWNED SERVICE STATIONS | Oklahoma City 93 | 901 South Pennsylvania | Oklahoma City | OK |
| 220 | NON-OWNED SERVICE STATIONS | Oklahoma City 37 | 9214 North Western | Oklahoma City | OK |
| 221 | NON-OWNED SERVICE STATIONS | Oklahoma City 108 | 9300 Block of N. Rockwell | Oklahoma City | OK |
| 222 | NON-OWNED SERVICE STATIONS | Oklahoma City 73 | 950 N.E. 23rd Street (near kelley) | Oklahoma City | OK |
| 223 | NON-OWNED SERVICE STATIONS | Oklahoma City 61 | Hefner Road and Broadway Extension | Oklahoma City | OK |
| 224 | NON-OWNED SERVICE STATIONS | Oklahoma City | N. Council road & W. Hefner road | Oklahoma City | OK |
| 225 | NON-OWNED SERVICE STATIONS | Oklahoma City 106 | N. of I-240 & Sooner Road | Oklahoma City | OK |
| 226 | NON-OWNED SERVICE STATIONS | Oklahoma City 13 | N.E. 23rd and Post Road | Oklahoma City | OK |
| 227 | NON-OWNED SERVICE STATIONS | Oklahoma City 53 | N.E. 63rd & Prospect | Oklahoma City | OK |
| 228 | NON-OWNED SERVICE STATIONS | Oklahoma City 69 | N.W. 50th East of Portland | Oklahoma City | OK |
| 229 | NON-OWNED SERVICE STATIONS | Oklahoma City 115 | N.W. Highway & Harvest Hills Road | Oklahoma City | OK |
| 230 | NON-OWNED SERVICE STATIONS | Billboard | N.W/C N. W. 23rd and Ann Arbor | Oklahoma City | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 231 | NON-OWNED SERVICE STATIONS | Oklahoma City 94 | NE 64th & Oklahoma Avenue | Oklahoma City | OK |
| 232 | NON-OWNED SERVICE STATIONS | Oklahoma City 4 | NE Corner of SE 29th & Sooner Rd. | Oklahoma City | OK |
| 233 | NON-OWNED SERVICE STATIONS | Oklahoma City 91 | NE/C N. Eastern and 52nd | Oklahoma City | OK |
| 234 | NON-OWNED SERVICE STATIONS | Oklahoma City 49 | NE/C N.W. 16th St. and Council Road | Oklahoma City | OK |
| 235 | NON-OWNED SERVICE STATIONS | Oklahoma City 45 | NE/C Reno & Rockwell | Oklahoma City | OK |
| 236 | NON-OWNED SERVICE STATIONS | Oklahoma City 92 | NE/C S.W. 39th and Portland | Oklahoma City | OK |
| 237 | NON-OWNED SERVICE STATIONS | Oklahoma City 105 | NE/C SE 134 & Sunnylane | Oklahoma City | OK |
| 238 | NON-OWNED SERVICE STATIONS | Oklahoma City 104 | NE/C SW 89th & Walker | Oklahoma City | OK |
| 239 | NON-OWNED SERVICE STATIONS | Oklahoma City 44 | NW 24th and MacArthur Boulevard | Oklahoma City | OK |
| 240 | NON-OWNED SERVICE STATIONS | Oklahoma City 55 | NW/C 122nd and N. Kelley | Oklahoma City | OK |
| 241 | NON-OWNED SERVICE STATIONS | Oklahoma City 66 | NW/C N.W. 23rd Street and Ann Arbor | Oklahoma City | OK |
| 242 | NON-OWNED SERVICE STATIONS | Oklahoma City 112 | NW/C NW 122nd & Council | Oklahoma City | OK |
| 243 | NON-OWNED SERVICE STATIONS | Oklahoma City 82 | NW/C Reno & Mustang Road | Oklahoma City | OK |
| 244 | NON-OWNED SERVICE STATIONS | Billboards | NW/C S.E. 29th & Douglas | Oklahoma City | OK |
| 245 | NON-OWNED SERVICE STATIONS | Oklahoma City 78 | NW/C SW 44th & Rockwell | Oklahoma City | OK |
| 246 | NON-OWNED SERVICE STATIONS | Oklahoma City 100 | NW/C Wilshire & Harvey | Oklahoma City | OK |
| 247 | NON-OWNED SERVICE STATIONS | Billboard | S.E. CN.W. 63rd and Meridian | Oklahoma City | OK |
| 248 | NON-OWNED SERVICE STATIONS | Oklahoma City 41 | S.W. 13th and May Avenue | Oklahoma City | OK |
| 249 | NON-OWNED SERVICE STATIONS | Oklahoma City 20 | S.W. 44th and Pennsylvania | Oklahoma City | OK |
| 250 | NON-OWNED SERVICE STATIONS | Oklahoma City 86 | SE/C NW 10 & Morgan Road | Oklahoma City | OK |
| 251 | NON-OWNED SERVICE STATIONS | OKC - MEEKER #2 FARM | SE/C NW 164 STREET & PORTLAND AVENUE | Oklahoma City | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 252 | NON-OWNED SERVICE STATIONS | OKC - MEEKER #2 FARM | SE/C NW 164 STREET & PORTLAND AVENUE | Oklahoma City | OK |
| 253 | NON-OWNED SERVICE STATIONS | Oklahoma City 103 | SE/C of SW 44th & MacArthur | Oklahoma City | OK |
| 254 | NON-OWNED SERVICE STATIONS | Billboard | SE/C S.W. 59th & May | Oklahoma City | OK |
| 255 | NON-OWNED SERVICE STATIONS | Oklahoma City 76 | SE/C SE 149th & Sooner Road | Oklahoma City | OK |
| 256 | NON-OWNED SERVICE STATIONS | Oklahoma City 80 | SE/C SW 134th & S. Pennsylvania | Oklahoma City | OK |
| 257 | NON-OWNED SERVICE STATIONS | Oklahoma City 48 | SE/C SW 29th & Meridian | Oklahoma City | OK |
| 258 | NON-OWNED SERVICE STATIONS | Billboard | SE/C West Reno and Meridian | Oklahoma City | OK |
| 259 | NON-OWNED SERVICE STATIONS | Knox Service Station, Job 5 | Southwest 29th and Harvey | Oklahoma City | OK |
| 260 | NON-OWNED SERVICE STATIONS | Oklahoma City 72 | Styll Road and Northwest Highway. | Oklahoma City | OK |
| 261 | NON-OWNED SERVICE STATIONS | Oklahoma City | SW 59th street & May avenue | Oklahoma City | OK |
| 262 | NON-OWNED SERVICE STATIONS | Oklahoma City | sw 8th and pennsylvania ave | Oklahoma City | OK |
| 263 | NON-OWNED SERVICE STATIONS | Oklahoma City 97 | SW/C N. Western & Memorial Road | Oklahoma City | OK |
| 264 | NON-OWNED SERVICE STATIONS | Oklahoma City 81 | SW/C NW 10th & Mustang Road | Oklahoma City | OK |
| 265 | NON-OWNED SERVICE STATIONS | Oklahoma City 107 | SW/C SE 89 & Sooner Road | Oklahoma City | OK |
| 266 | NON-OWNED SERVICE STATIONS | Oklahoma City 95 | SW/C SW 29th & Morgan Road | Oklahoma City | OK |
| 267 | NON-OWNED SERVICE STATIONS | Oklahoma City | w. Reno avenue & s. Meridian street | Oklahoma City | OK |
| 268 | NON-OWNED SERVICE STATIONS | Oklahoma City 50 | NEC SW 44th & MacArthur | Oklahoma City | OK |
| 269 | NON-OWNED SERVICE STATIONS | Oklahoma City 47 | SW/C N. W. Highway & MacArthur Blvd | Oklahoma City | OK |
| 270 | NON-OWNED SERVICE STATIONS | Oklahoma City 100 | W. side of S. Western near 93rd Street (9128 western road) | Oklahoma City | OK |
| 271 | NON-OWNED SERVICE STATIONS | Okmulgee | 10 N. Wood Drive | Okmulgee | OK |
| 272 | NON-OWNED SERVICE STATIONS | Okmulgee 1 | 200 South Muskogee Street | Okmulgee | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 273 | NON-OWNED SERVICE STATIONS | Okmulgee 3 | 210 N. Wood Drive | Okmulgee | OK |
| 274 | NON-OWNED SERVICE STATIONS | Okmulgee 2 | Okmulgee and Fourth Streets | Okmulgee | OK |
| 275 | NON-OWNED SERVICE STATIONS | Owasso 1 | 101 S. Main | Owasso | OK |
| 276 | NON-OWNED SERVICE STATIONS | PAULS VALLEY | 900 S CHICKASAW | Pauls Valley | OK |
| 277 | NON-OWNED SERVICE STATIONS | Pawnee County | Fee 136, Lake Keystone | Pawnee | OK |
| 278 | NON-OWNED SERVICE STATIONS | Pawnee County | Fee 86 Arkansas River Property | Pawnee | OK |
| 279 | NON-OWNED SERVICE STATIONS | Perry | | Perry | OK |
| 280 | NON-OWNED SERVICE STATIONS | Pierce 307 | SW/C I-40 & Pierce Road | Pierce | OK |
| 281 | NON-OWNED SERVICE STATIONS | Ponca City 2 | 200 East Highland | Ponca City | OK |
| 282 | NON-OWNED SERVICE STATIONS | Ponca City | 500 E. Hartford avenue | Ponca City | OK |
| 283 | NON-OWNED SERVICE STATIONS | Ponca City 3 | Highway U.S. 60 West | Ponca City | OK |
| 284 | NON-OWNED SERVICE STATIONS | Ponca City 1 | South 4th Street and East South Avenue | Ponca City | OK |
| 285 | NON-OWNED SERVICE STATIONS | Poteau 1 | 500 North Front Street | Poteau | OK |
| 286 | NON-OWNED SERVICE STATIONS | Poteau | 701 Highway | Poteau | OK |
| 287 | NON-OWNED SERVICE STATIONS | Poteau Bulk Station | East Dewey and KCS right-of-way | Poteau | OK |
| 288 | NON-OWNED SERVICE STATIONS | Pryor 1 | Highway 69 | Pryor | OK |
| 289 | NON-OWNED SERVICE STATIONS | Purcell 1 | 508 South Green Street | Purcell | OK |
| 290 | NON-OWNED SERVICE STATIONS | Purcell 2 | 630 S. Green Avenue | Purcell | OK |
| 291 | NON-OWNED SERVICE STATIONS | Rush Springs 1 | West Side U.S. Highway 81 | Rush Springs | OK |
| 292 | NON-OWNED SERVICE STATIONS | Sallisaw | 1101 E. Cherokee avenue | Sallisaw | OK |
| 293 | NON-OWNED SERVICE STATIONS | Sapulpa 2 | 501 Dewey Avenue | Sapulpa | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 294 | NON-OWNED SERVICE STATIONS | Sapulpa 1 | 717 E. Dewey St. | Sapulpa | OK |
| 295 | NON-OWNED SERVICE STATIONS | Shattuck 1 | NE/C Main & 8th | Shattuck | OK |
| 296 | NON-OWNED SERVICE STATIONS | Shawnee 3 | 1501 North Kickapoo | Shawnee | OK |
| 297 | NON-OWNED SERVICE STATIONS | Shawnee 1 | 301 East Highland Street | Shawnee | OK |
| 298 | NON-OWNED SERVICE STATIONS | Shawnee 4 | NE/C I-40 & St. Highway 9A | Shawnee | OK |
| 299 | NON-OWNED SERVICE STATIONS | Spencer 1 | SW/C NE 36th & Spencer Road | Spencer | OK |
| 300 | NON-OWNED SERVICE STATIONS | Spiro 1 | | Spiro | OK |
| 301 | NON-OWNED SERVICE STATIONS | Stigler 2 | 701 Maine Street | Stigler | OK |
| 302 | NON-OWNED SERVICE STATIONS | Stigler 1 | 310 West Main | Stigler | OK |
| 303 | NON-OWNED SERVICE STATIONS | Stillwater 1 | 1124 Boomer Road | Stillwater | OK |
| 304 | NON-OWNED SERVICE STATIONS | Stillwater | 1124 N. Boomer Road | Stillwater | OK |
| 305 | NON-OWNED SERVICE STATIONS | Stillwater | 424 W. 6th Street | Stillwater | OK |
| 306 | NON-OWNED SERVICE STATIONS | Tahlequah | 1909 S. Muskogee avenue | Tahlequah | OK |
| 307 | NON-OWNED SERVICE STATIONS | Tahlequah | 904 S. Muskogee | Tahlequah | OK |
| 308 | NON-OWNED SERVICE STATIONS | Tishomingo 2 | Highway 78 East | Tishomingo | OK |
| 309 | NON-OWNED SERVICE STATIONS | Tishomingo 1 | Highway 99 (705 North Kemp) | Tishomingo | OK |
| 310 | NON-OWNED SERVICE STATIONS | Tulsa | 10519 E. 11th street | Tulsa | OK |
| 311 | NON-OWNED SERVICE STATIONS | Tulsa 29 | 10519 East 11th Street | Tulsa | OK |
| 312 | NON-OWNED SERVICE STATIONS | Tulsa 8 | 1435 South Lewis | Tulsa | OK |
| 313 | NON-OWNED SERVICE STATIONS | Tulsa 21 | 1706 East Pine Street | Tulsa | OK |
| 314 | NON-OWNED SERVICE STATIONS | Tulsa 9 | 1823 East Third Street | Tulsa | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 315 | NON-OWNED SERVICE STATIONS | Tulsa 3 | 209 S. Peoria | Tulsa | OK |
| 316 | NON-OWNED SERVICE STATIONS | Tulsa 10 | 21st and Lewis Avenue | Tulsa | OK |
| 317 | NON-OWNED SERVICE STATIONS | Tulsa 28 | 2341 Southwest Boulevard | Tulsa | OK |
| 318 | NON-OWNED SERVICE STATIONS | Tulsa 33 | 2604 East Apache | Tulsa | OK |
| 319 | NON-OWNED SERVICE STATIONS | Tulsa 17 | 2797 North Peoria | Tulsa | OK |
| 320 | NON-OWNED SERVICE STATIONS | Tulsa 6 | 3252 Southwest Boulevard | Tulsa | OK |
| 321 | NON-OWNED SERVICE STATIONS | Tulsa 23 | 3625 South Sheridan | Tulsa | OK |
| 322 | NON-OWNED SERVICE STATIONS | Tulsa 1 | 3917 East 11th Street | Tulsa | OK |
| 323 | NON-OWNED SERVICE STATIONS | Tulsa 2 | 4106 East Admiral Place | Tulsa | OK |
| 324 | NON-OWNED SERVICE STATIONS | Tulsa 20 | 6110 East 11th Street | Tulsa | OK |
| 325 | NON-OWNED SERVICE STATIONS | Tulsa 34 | 6505 E. 91st Street South | Tulsa | OK |
| 326 | NON-OWNED SERVICE STATIONS | Tulsa | 6505 S. 91st Street | Tulsa | OK |
| 327 | NON-OWNED SERVICE STATIONS | Tulsa 22 | 6624 E. Pine | Tulsa | OK |
| 328 | NON-OWNED SERVICE STATIONS | Tulsa 19 | 7200 Charles Page Boulevard | Tulsa | OK |
| 329 | NON-OWNED SERVICE STATIONS | Tulsa 5 | 7640 Sand Springs Road | Tulsa | OK |
| 330 | NON-OWNED SERVICE STATIONS | Tulsa 7 | 823 South Boston Avenue | Tulsa | OK |
| 331 | NON-OWNED SERVICE STATIONS | Tulsa 25 | 9616 East 21st Street | Tulsa | OK |
| 332 | NON-OWNED SERVICE STATIONS | Tulsa | Admiral and Allegheny | Tulsa | OK |
| 333 | NON-OWNED SERVICE STATIONS | Tulsa | Fee 85, Sec 31-T19N-R10E | Tulsa | OK |
| 334 | NON-OWNED SERVICE STATIONS | Tulsa 24 | Southwest Boulevard and West 45 Street | Tulsa | OK |
| 335 | NON-OWNED SERVICE STATIONS | Vian 1 | IH 40 and Lake Road Interchange | Vian | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 336 | NON-OWNED SERVICE STATIONS | Wagoner 1 | 1205 West Cherokee | Wagoner | OK |
| 337 | NON-OWNED SERVICE STATIONS | Warner 1 | NW/C I-40 and St. Highway 2 | Warner | OK |
| 338 | NON-OWNED SERVICE STATIONS | Waynoka | Cecil & Flynn Streets | Waynoka | OK |
| 339 | NON-OWNED SERVICE STATIONS | Weatherford 1 | Route 2 | Weatherford | OK |
| 340 | NON-OWNED SERVICE STATIONS | Webbers Falls 1 | I 40 and SH 100 | Webbers Falls | OK |
| 341 | NON-OWNED SERVICE STATIONS | Wynnewood | 903 S. D.A. McGee avenue | Wynnewood | OK |
| 342 | NON-OWNED SERVICE STATIONS | Wynnewood 1 (refinery) | Highway 77 at South City Limits | Wynnewood | OK |
| 343 | NON-OWNED SERVICE STATIONS | Wynnewood 2 | NE/C I-35 & St. Highway 29 | Wynnewood | OK |
| 344 | NON-OWNED SERVICE STATIONS | Yukon 5 | 1301 S. Cornwell | Yukon | OK |
| 345 | NON-OWNED SERVICE STATIONS | Yukon 2 | 307 E. Main | Yukon | OK |
| 346 | NON-OWNED SERVICE STATIONS | Yukon | 307 E. Main street | Yukon | OK |
| 347 | NON-OWNED SERVICE STATIONS | Yukon 4 | NE/C NW 10th and Cornwell | Yukon | OK |
| 348 | NON-OWNED SERVICE STATIONS | Yukon | S. Cornwell drive & W. VandAment avenue | Yukon | OK |
| 349 | NON-OWNED SERVICE STATIONS | Yukon 3 | SE/C NW 36th and Sara Rd. | Yukon | OK |
| 350 | NON-OWNED SERVICE STATIONS | Yukon 1 | SW/C 23rd and Mustang Road | Yukon | OK |
| | | **OTHER SITES** | | | |
| 351 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Antlers | OK |
| 352 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Boynton | OK |
| 353 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Dustin | OK |
| 354 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Ft. Cobb | OK |
| 355 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Haskell | OK |
| 356 | OTHER SITES: AG-CHEM SITES | BLENDER-FARM CENTER | | Poteau | OK |
| 357 | OTHER SITES: AG-CHEM SITES | DISTRICT OFFICE | | Pryor | OK |
| 358 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Sulphur | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 359 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Talahina | OK |
| 360 | OTHER SITES: GENERAL | HUGO SITE | CHOCTAW COUNTY, E1/2 SEC. 20 T6S, R17E, LONGITUDE: -95.55, LATITUDE: 34.02/1806 garrett  street | Hugo | OK |
| 361 | OTHER SITES: GENERAL | DOUBLE EAGLE REFINERY | 301 NORTH RHODE ISLAND AVENUE | Oklahoma City | OK |
| 362 | OTHER SITES: GENERAL | MOSLEY ROAD LANDFILL SITE | 3300 MOSLEY ROAD | Oklahoma City | OK |
| 363 | OTHER SITES: GENERAL | CATO OIL & GREASE | NW 10TH STREET AND RENO STREET | Oklahoma City | OK |
| 364 | OTHER SITES: GENERAL | SAND SPRINGS FORMER REFINERY SITE | 2 BLOCKS S 198 E. MORRO ROAD | Sand Springs | OK |
| 365 | OTHER SITES: GENERAL | SAND SPRINGS LANDFILL SITE | 0.5 MI SOUTH OF HWY 51 ON 137 NORTH AVENUE | Sand Springs | OK |
| 366 | OTHER SITES: MINING SITES | Carter | | Beckham | OK |
| 367 | OTHER SITES: MINING SITES | Cemet Area | | Caddo/Grady/Stephens | OK |
| 368 | OTHER SITES: MINING SITES | Choctaw | | Choctaw | OK |
| 369 | OTHER SITES: MINING SITES | Craig | | Craig | OK |
| 370 | OTHER SITES: MINING SITES | Weatherford | | Custer | OK |
| 371 | OTHER SITES: MINING SITES | NE Oklahoma | | Delaware | OK |
| 372 | OTHER SITES: MINING SITES | Choctaw Mine Area | | Haskell | OK |
| 373 | OTHER SITES: MINING SITES | Garland | | Haskell | OK |
| 374 | OTHER SITES: MINING SITES | Sansbois Creek | | Haskell | OK |
| 375 | OTHER SITES: MINING SITES | Stigler (Kinta-Stigler) | | Haskell | OK |
| 376 | OTHER SITES: MINING SITES | Arkansas River | | Haskell/ Leflore | OK |
| 377 | OTHER SITES: MINING SITES | Cowlington | | Haskell/ LeFlore | OK |
| 378 | OTHER SITES: MINING SITES | Enterprise | | Haskell/ Pittsburg | OK |
| 379 | OTHER SITES: MINING SITES | Kiowa | | Kiowa | OK |
| 380 | OTHER SITES: MINING SITES | Snyder | | Kioway/ Tillman | OK |
| 381 | OTHER SITES: MINING SITES | Ft. Smith | | LeFlore | OK |
| 382 | OTHER SITES: MINING SITES | Spiro | | LeFlore | OK |
| 383 | OTHER SITES: MINING SITES | W. Cameron | | LeFlore | OK |
| 384 | OTHER SITES: MINING SITES | Drilling (Regional) | | LeFlore/ Sebastian/ Scott | OK |
| 385 | OTHER SITES: MINING SITES | Porum | | Muskogee | OK |
| 386 | OTHER SITES: MINING SITES | Morris | | Okmulgee | OK |
| 387 | OTHER SITES: MINING SITES | Lone Jack | | Pawnee | OK |
| 388 | OTHER SITES: MINING SITES | McAlester | | Pittsburg | OK |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|----------------------------------|---------------|-------------------|----------------|-------|
| 389 | OTHER SITES: MINING SITES | Sequoyah | | Sequoyah | OK |
| 390 | OTHER SITES: MINING SITES | Wagnor | | Waggoner | OK |
| 391 | OTHER SITES: MINING SITES | Arbuckle Mts. | | | OK |
| 392 | OTHER SITES: MINING SITES | Gore, OK | | | OK |
| 393 | OTHER SITES: MINING SITES | N. Wichita Mt. | | | OK |
| 394 | OTHER SITES: MINING SITES | Vanoss Prospect | | | OK |

## Non-Owned Sites: Pennsylvania Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | | **OTHER SITES** | | |
| 1 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Atglen | PA |
| 2 | OTHER SITES: AG-CHEM SITES | FARM CENTER | 41 greenleaf road | Bloomsburg | PA |
| 3 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Everett | PA |
| 4 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Germansville | PA |
| 5 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Holland | PA |
| 6 | OTHER SITES: AG-CHEM SITES | FARM CENTER | | Honeybrook | PA |
| 7 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Martinsburg | PA |
| 8 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | McConnellsburg | PA |
| 9 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Millersville | PA |
| 10 | OTHER SITES: AG-CHEM SITES | FARM CENTER | milnor road route 4 | Milnor (also referred to as Greencastle) | PA |
| 11 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Pottstown | PA |
| 12 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Russellville | PA |
| 13 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Soudertown | PA |
| 14 | OTHER SITES: GENERAL | LEWIS RUN SITE | BIG SHANTY ROAD AND LAFAYETTE AVENUE | Lewis Run | PA |
| 15 | OTHER SITES: GENERAL | LACKAWANNA REFUSE SITE (AKA OLD FORGE LANDFILL) | SOUTH KEYSER AVENUE | Old Forge | PA |
| 16 | OTHER SITES: GENERAL | PHILADELPHIA AG CHEM MANUFACTURING SITE | 1701 SOUTH DELAWARE AVENUE | Philadelphia | PA |
| 17 | OTHER SITES: GENERAL | PHILADELPHIA WATERFRONT SITE (SYNTHETIC BONE ASH) | | Philadelphia | PA |
| 18 | OTHER SITES: MINING SITES | Fairchance | | Fayette | PA |

## Non-Owned Sites: Tennessee Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | **SEPARATELY FUNDED SITES** | | | |
| 1 | NON-OWNED SERVICE STATIONS | Bristol Peoples 46 | 301 Bluff City Highway | Bristol | TN |
| 2 | NON-OWNED SERVICE STATIONS | Bristol 140 | Volunteer Parkway and Shelby Lane | Bristol | TN |
| 3 | NON-OWNED SERVICE STATIONS | Chattanooga 27 | 1998 Dayton Pike | Chattanooga | TN |
| 4 | NON-OWNED SERVICE STATIONS | Chattanooga 98 | 2405 Dayton Boulevard | Chattanooga | TN |
| 5 | NON-OWNED SERVICE STATIONS | Chattanooga 117 | 4239 Bonny Oaks Drive | Chattanooga | TN |
| 6 | NON-OWNED SERVICE STATIONS | Chattanooga | 5801 Lee Highway | Chattanooga | TN |
| 7 | NON-OWNED SERVICE STATIONS | Chattanooga 28 | Main Street & Lyerly | Chattanooga | TN |
| 8 | NON-OWNED SERVICE STATIONS | Clarksville 41 | Highway 41-A & Walnut | Clarksville | TN |
| 9 | NON-OWNED SERVICE STATIONS | Columbia 47 | 514 North Garden | Columbia | TN |
| 10 | NON-OWNED SERVICE STATIONS | Columbia 161 | U.S. Highway 31 By-pass and Pillow Drive | Columbia | TN |
| 11 | NON-OWNED SERVICE STATIONS | Cookeville 163 | South Jefferson Avenue | Cookeville | TN |
| 12 | NON-OWNED SERVICE STATIONS | Donelson 11 | 3202 Lebanon Road at Central Pike | Donelson | TN |
| 13 | NON-OWNED SERVICE STATIONS | Elizabethton 142 | Route 7 - Highway 19 East | Elizabethton | TN |
| 14 | NON-OWNED SERVICE STATIONS | Elizabethton 2143 | State Highway 91 & US Highway 31 | Elizabethton | TN |
| 15 | NON-OWNED SERVICE STATIONS | Erwin | Main and Elm Streets | Erwin | TN |
| 16 | NON-OWNED SERVICE STATIONS | Franklin 2164 | 505 Hillsboro Road | Franklin | TN |
| 17 | NON-OWNED SERVICE STATIONS | Gallatin 51 | South Waters Avenue | Gallatin | TN |
| 18 | NON-OWNED SERVICE STATIONS | Gray 131 | US Highway 36 | Gray | TN |
| 19 | NON-OWNED SERVICE STATIONS | Greenville 50 | 1153 Tusculum Boulevard | Greenville | TN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| 20 | NON-OWNED SERVICE STATIONS | Greenville 120 | Snapps Ferry Road | Greenville | TN |
| 21 | NON-OWNED SERVICE STATIONS | Hixon 116 | 4514 Hixson Pike | Hixson | TN |
| 22 | NON-OWNED SERVICE STATIONS | Johnson City 13 | E. Main & Broadway | Johnson City | TN |
| 23 | NON-OWNED SERVICE STATIONS | Johnson City 14 | New Jonesboro Highway | Johnson City | TN |
| 24 | NON-OWNED SERVICE STATIONS | Kingsport 2007 | 1748 Netherland Inn Road | Kingsport | TN |
| 25 | NON-OWNED SERVICE STATIONS | Kingsport 6 | 2555 Fort Henry Drive | Kingsport | TN |
| 26 | NON-OWNED SERVICE STATIONS | Kingsport 31 | 340 East Sullivan Street | Kingsport | TN |
| 27 | NON-OWNED SERVICE STATIONS | Knoxville 39 | 4133 Broadway, N.E. | Knoxville | TN |
| 28 | NON-OWNED SERVICE STATIONS | Knoxville 29 | 4646 Broadway | Knoxville | TN |
| 29 | NON-OWNED SERVICE STATIONS | Knoxville 49 | 6211 Chapman Highway | Knoxville | TN |
| 30 | NON-OWNED SERVICE STATIONS | Knoxville 20 | NE/C Asheville Highway & Stooksbury Rd. | Knoxville | TN |
| 31 | NON-OWNED SERVICE STATIONS | Lebanon 2121 | 816 North Cumberland | Lebanon | TN |
| 32 | NON-OWNED SERVICE STATIONS | Lexington 6378 | 562 West Church | Lexington | TN |
| 33 | NON-OWNED SERVICE STATIONS | Madison 22 | Gallatin Road and Hall's Lane | Madison | TN |
| 34 | NON-OWNED SERVICE STATIONS | Madisonville 162 | US Highway 411 | Madisonville | TN |
| 35 | NON-OWNED SERVICE STATIONS | McMinnville 118 | 603 North Chancery Street | McMinnville | TN |
| 36 | NON-OWNED SERVICE STATIONS | Memphis 5 | 2742 Park Avenue | Memphis | TN |
| 37 | NON-OWNED SERVICE STATIONS | Memphis 2 | 3087 South Third | Memphis | TN |
| 38 | NON-OWNED SERVICE STATIONS | Memphis 4 | 3690 Jackson Avenue | Memphis | TN |
| 39 | NON-OWNED SERVICE STATIONS | Memphis 3 | 3819 Lamar Avenue | Memphis | TN |
| 40 | NON-OWNED SERVICE STATIONS | Memphis 1 | 4672 South Third Street | Memphis | TN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 41 | NON-OWNED SERVICE STATIONS | Memphis 6 | 908 Chelsea | Memphis | TN |
| 42 | NON-OWNED SERVICE STATIONS | Mt. Pleasant 127 | 302 North Main Street | Mt. Pleasant | TN |
| 43 | NON-OWNED SERVICE STATIONS | Murfreesboro 2129 | 1110 Memorial Drive | Murfreesboro | TN |
| 44 | NON-OWNED SERVICE STATIONS | Murfreesboro 148 | 1149 Northwest Broad St. | Murfreesboro | TN |
| 45 | NON-OWNED SERVICE STATIONS | Murfreesboro 37 | 215 N.W. Broad Street | Murfreesboro | TN |
| 46 | NON-OWNED SERVICE STATIONS | Nashville 18 | 1008 East Thompson Lane | Nashville | TN |
| 47 | NON-OWNED SERVICE STATIONS | Old Hickory 2010 | 1515 Robinson Road | Nashville | TN |
| 48 | NON-OWNED SERVICE STATIONS | NASHVILLE | 1814 4TH AVE | Nashville | TN |
| 49 | NON-OWNED SERVICE STATIONS | Nashville 2030 | 3720 Dickerson  Road | Nashville | TN |
| 50 | NON-OWNED SERVICE STATIONS | Nashville 43 | 3901 Hillsboro Road | Nashville | TN |
| 51 | NON-OWNED SERVICE STATIONS | Nashville 90 | 4537 Nolensville Pike | Nashville | TN |
| 52 | NON-OWNED SERVICE STATIONS | Nashville 5 | 6012 Charlotte Pike | Nashville | TN |
| 53 | NON-OWNED SERVICE STATIONS | Nashville 25 | 711 Lebanon Road | Nashville | TN |
| 54 | NON-OWNED SERVICE STATIONS | Nashville 45 | 721 Jefferson Street | Nashville | TN |
| 55 | NON-OWNED SERVICE STATIONS | Nashville 2019 | 801 North First Street | Nashville | TN |
| 56 | NON-OWNED SERVICE STATIONS | Nashville | Abbott-Martin Road | Nashville | TN |
| 57 | NON-OWNED SERVICE STATIONS | Nashville 39 | Charlotte Pike and Morrow Road | Nashville | TN |
| 58 | NON-OWNED SERVICE STATIONS | nashville #2168 | trousdale drive and elysian fields road | Nashville | TN |
| 59 | NON-OWNED SERVICE STATIONS | Paris 1 | 1005 Mineral Wells | Paris | TN |
| 60 | NON-OWNED SERVICE STATIONS | Shelbyville 121 | SW/C North Main and West Cedar | Shelbyville | TN |
| 61 | NON-OWNED SERVICE STATIONS | Smithville 128 | US Highway 70 | Smithville | TN |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 62 | NON-OWNED SERVICE STATIONS | Tullahoma | South Anderson & Volney Streets | Tullahoma | TN |
| 63 | NON-OWNED SERVICE STATIONS | Winchester 21 | 1109 First Avenue South | Winchester | TN |
| **OTHER SITES** | | | | | |
| 64 | OTHER SITES: AG-CHEM SITES | WAREHOUSE | | Cedar Hill | TN |
| 65 | OTHER SITES: GENERAL | MEMPHIS CONTAINER DRUM SITE (AKA TRI-STATE DRUMS) | 1761 WARFORD ROAD | Memphis | TN |
| 66 | OTHER SITES: MINING SITES | Camden Project | | Benton | TN |
| 67 | OTHER SITES: MINING SITES | Sawyers Mill | | Benton | TN |
| 68 | OTHER SITES: MINING SITES | Natchez Trace | | Carroll/Benton | TN |
| 69 | OTHER SITES: MINING SITES | East Lexington | | Henderson | TN |
| 70 | OTHER SITES: MINING SITES | Paris Landing | | Henry | TN |
| 71 | OTHER SITES: MINING SITES | East Mansfield | | Henry/Carroll/Benton | TN |

## Non-Owned Sites: Wisconsin Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | **SEPARATELY FUNDED SITES** | | | |
| 1 | NON-OWNED FUNDED SITES | MOSS AMERICAN NPL SITE (NON-OWNED PORTION) | 8716 NORTH GRANVILLE ROAD | Milwaukee | WI |
| 2 | NON-OWNED SERVICE STATIONS | Madison | 3505 E. Washington avenue | Madison | WI |
| 3 | NON-OWNED SERVICE STATIONS | Madison 2 | | Madison | WI |

## Non-Owned Sites: Navajo Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | SEPARATELY FUNDED SITES | | | |
| 1 | NON-OWNED FUNDED SITES | QUIVIRA MINE SITE (QUIVIRA NE CHURCH ROCK MINES I, IE AND II AND ALL AREAS WHERE CONTAMINANTS ASSOCIATED WITH THOSE MINES HAVE BEEN DEPOSITED, STORED, DISPOSED OF, PLACED, OR OTHERWISE COME TO BE LOCATED) | NE 1/4, SEC 27, T17N, R16W | McKinley County | NM |
| 2 | NON-OWNED FUNDED SITES | SHIPROCK MILL SITE | | Shiprock | NM |
| 3 | DESIGNATED NAVAJO AREA MINES | Black No. 1 Mine | N/A | Apache | AZ |
| 4 | DESIGNATED NAVAJO AREA MINES | Black No. 2 Mine | N/A | Apache | AZ |
| 5 | DESIGNATED NAVAJO AREA MINES | Black No. 2 Mine (West) | N/A | Apache | AZ |
| 6 | DESIGNATED NAVAJO AREA MINES | Block K | N/A | Apache | AZ |
| 7 | DESIGNATED NAVAJO AREA MINES | Flag No. 1 Mine | N/A | Apache | AZ |
| 8 | DESIGNATED NAVAJO AREA MINES | Frank Jr. Mine | N/A | Apache | AZ |
| 9 | DESIGNATED NAVAJO AREA MINES | Mesa 1 3/4 Incline | N/A | Apache | AZ |
| 10 | DESIGNATED NAVAJO AREA MINES | Mesa 1 3/4, Mine No. 2, P150 | N/A | Apache | AZ |
| 11 | DESIGNATED NAVAJO AREA MINES | Mesa I 1/2 Mine | N/A | Apache | AZ |
| 12 | DESIGNATED NAVAJO AREA MINES | Mesa I 1/4 Mine | N/A | Apache | AZ |
| 13 | DESIGNATED NAVAJO AREA MINES | Mesa I, Mine No. 10-15 | N/A | Apache | AZ |
| 14 | DESIGNATED NAVAJO AREA MINES | Mesa II 1/2 Mine | N/A | Apache | AZ |
| 15 | DESIGNATED NAVAJO AREA MINES | Mesa II 1/2 Mine, Mine 4 | N/A | Apache | AZ |
| 16 | DESIGNATED NAVAJO AREA MINES | Mesa II, Mine 4 | N/A | Apache | AZ |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 17 | DESIGNATED NAVAJO AREA MINES | Mesa II, Mine No. 1 & 2, P-21 | N/A | Apache | AZ |
| 18 | DESIGNATED NAVAJO AREA MINES | Mesa II, Mine No. 1, P-150 | N/A | Apache | AZ |
| 19 | DESIGNATED NAVAJO AREA MINES | Mesa III Mine | N/A | Apache | AZ |
| 20 | DESIGNATED NAVAJO AREA MINES | Mesa III, Mine 1 | N/A | Apache | AZ |
| 21 | DESIGNATED NAVAJO AREA MINES | Mesa IV 1/2 Mine and Simpson 181 | N/A | Apache | AZ |
| 22 | DESIGNATED NAVAJO AREA MINES | Mesa IV, Mine 1 | N/A | Apache | AZ |
| 23 | DESIGNATED NAVAJO AREA MINES | Mesa IV, Mine 2 | N/A | Apache | AZ |
| 24 | DESIGNATED NAVAJO AREA MINES | Mesa IV, Mine 3 | N/A | Apache | AZ |
| 25 | DESIGNATED NAVAJO AREA MINES | Mesa V Adit | N/A | Apache | AZ |
| 26 | DESIGNATED NAVAJO AREA MINES | Mesa V Incline | N/A | Apache | AZ |
| 27 | DESIGNATED NAVAJO AREA MINES | Mesa V Mine | N/A | Apache | AZ |
| 28 | DESIGNATED NAVAJO AREA MINES | Mesa VI Mine | N/A | Apache | AZ |
| 29 | DESIGNATED NAVAJO AREA MINES | Step Mesa Mine | N/A | Apache | AZ |
| 30 | DESIGNATED NAVAJO AREA MINES | Tommy James Mine | N/A | Apache | AZ |
| 31 | DESIGNATED NAVAJO AREA MINES | Section 1 | 13N 9W | McKinley | NM |
| 32 | DESIGNATED NAVAJO AREA MINES | Spencer Mine | 13N 9W | McKinley | NM |
| 33 | DESIGNATED NAVAJO AREA MINES | Section 10 | 14N 10W | McKinley | NM |
| 34 | DESIGNATED NAVAJO AREA MINES | Section 22 | 14N 10W | Mckinley | NM |
| 35 | DESIGNATED NAVAJO AREA MINES | Section 22 Heap Leach Mine | 14N 10W | Mckinley | NM |
| 36 | DESIGNATED NAVAJO AREA MINES | Section 24 | 14N 10W | McKinley | NM |
| 37 | DESIGNATED NAVAJO AREA MINES | Section 24 Heap Leach | 14N 10W | McKinley | NM |

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| 38 | DESIGNATED NAVAJO AREA MINES | Section 26 (including Section 26 mined through Section 24) | 14N 10W | McKinley | NM |
| 39 | DESIGNATED NAVAJO AREA MINES | Section 17 | 14N 9W | McKinley | NM |
| 40 | DESIGNATED NAVAJO AREA MINES | Section 18 (including Section 18 SEQ) | 14N 9W | Mckinley | NM |
| 41 | DESIGNATED NAVAJO AREA MINES | Section 19 | 14N 9W | McKinley | NM |
| 42 | DESIGNATED NAVAJO AREA MINES | Section 20 | 14N 9W | McKinley | NM |
| 43 | DESIGNATED NAVAJO AREA MINES | Section 29 (including Section 29 mined through Sections 30, 32, and 33) | 14N 9W | McKinley | NM |
| 44 | DESIGNATED NAVAJO AREA MINES | Section 30 | 14N 9W | Mckinley | NM |
| 45 | DESIGNATED NAVAJO AREA MINES | Section 30W | 14N 9W | Mckinley | NM |
| 46 | DESIGNATED NAVAJO AREA MINES | Section 31 | 14N 9W | McKinley | NM |
| 47 | DESIGNATED NAVAJO AREA MINES | Section 33 | 14N 9W | McKinley | NM |
| 48 | DESIGNATED NAVAJO AREA MINES | Section 35 | 14N 9W | McKinley | NM |
| 49 | DESIGNATED NAVAJO AREA MINES | Section 36 | 14N 9W | Mckinley | NM |
| 50 | DESIGNATED NAVAJO AREA MINES | Section 32 | 15N 11W | Mckinley | NM |
| 51 | DESIGNATED NAVAJO AREA MINES | Section 33 | 15N 11W | McKinley | NM |
| OTHER SITES | | | | | |
| 52 | NON-OWNED FUNDED SITES | NAVAJO AREA URANIUM MINES: LUKACHUKAI MOUNTAINS SITE | URANIUM MINING | Lukachukai | AZ |
| 53 | NON-OWNED FUNDED SITES | NAVAJO AREA URANIUM MINES: AMBROSIA LAKE U MINES | URANIUM MINING | Ambrosia Lake | NM |

## Non-Owned Sites: City of Chicago Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | **SEPARATELY FUNDED SITES** | | | |
| 1 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES-STREETERVILLE RIGHTS OF WAY | | Chicago/ Streeterville | IL |

## Non-Owned Sites: Chicago Park District Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|-----|-----|-----|-----|-----|-----|
| **SEPARATELY FUNDED SITES** | | | | | |
| 1 | NON-OWNED FUNDED SITES | LINDSAY LIGHT REMOVAL SITES- DUSABLE PARK | RIVER EAST | Chicago/ Streeterville | IL |

## Non-Owned Sites: West Chicago Local Communities Covenant Not to Sue

| No. | Settlement Agreement Designation | Property Name | Property Location | City or County | State |
|---|---|---|---|---|---|
| | | | **SEPARATELY FUNDED SITES** | | |
| 1 | NON-OWNED FUNDED SITES | KRESS CREEK (WEST BRANCH DUPAGE RIVER SUPERFUND SITE) | | West Chicago | IL |
| 2 | NON-OWNED FUNDED SITES | NON-OWNED RAS PROPERTIES | | West Chicago | IL |
| 3 | NON-OWNED FUNDED SITES | NON-OWNED RAS PROPERTIES – WEST CHICAGO OPERA HOUSE | westrom building | West Chicago | IL |
| | | | **OTHER SITES** | | |
| 4 | OTHER SITES: GENERAL | REED KEPPLER PARK SUPERFUND SITE | | West Chicago | IL |
| 5 | OTHER SITES: GENERAL | SEWAGE TREATMENT PLANT SUPERFUND SITE | | West Chicago | IL |

## EXHIBIT C

### QUITCLAIM DEED

*NOTE:  FORMATTING AND RECORDING
REQUIREMENTS VARY BY JURISDICTION.*

STATE OF _____        §
                          §
COUNTY OF _____       §

KNOW ALL BY THESE PRESENTS THAT _____, a
_____ ("***Grantor***"), for and in consideration of the sum of Ten
Dollars and No/100 ($10.00) and other good and valuable consideration paid by
_____, a _____ ("***Grantee***"), the receipt of which
is hereby acknowledged, and pursuant to and in accordance with the Order of the United
States Bankruptcy Court for the Southern District of New York, entered on _____,
20__ in Case No. 09-10156 styled *In re: TRONOX INCORPORATED, et al,* has
QUITCLAIMED and by these presents does QUITCLAIM unto Grantee, all of Grantor's
rights, title and interests in and to (a) **[that/those]** certain tract(s) of land located in
_____ County, _____, as more particularly described in <u>Exhibit A</u> attached
hereto and incorporated herein by this reference for all purposes (b) strips and gores between
such tract(s) of land and any abutting properties whether owned or claimed by deed,
limitations or otherwise, and whether or not held under fence by Grantor, (c) any land lying
in or under the bed of any creek, stream or waterway or any highway, avenue, street, road, alley,
easement or right-of-way, open or proposed, in, on, across, abutting or adjacent to such
tract(s) of land, (d) improvements, buildings or fixtures located on such tract(s) of land
(collectively, the "***Property***"), together with all of Grantor's rights, claim, title and interest
in and to any and all appurtenances, rights, easements, rights-of-way, mining rights (including
unpatented mining claims, mill site claims, and placer claims), mineral rights, mineral claims,
appurtenant groundwater rights, associated surface water rights, claims, and filings or other
interests related to the Property (the "***Attendant Property Rights***").

TO HAVE AND TO HOLD all of Grantor's rights, titles and interests in and to the Property
and the Attendant Property Rights unto Grantee, its successors and assigns forever, so that
neither Grantor nor its successors and assigns shall have, claim or demand any right or title to
the Property, the Attendant Property Rights or any part thereof.

*[Signature on following page.]*

THIS TRANSFER WAS MADE PURSUANT TO A PLAN CONFIRMED UNDER S.1129 OF THE UNITED STATES BANKRUPTCY CODE, AS A NECESSARY AND ESSENTIAL PART OF THE IMPLEMENTATION OF THE PLAN.   THE DEBTOR UNDER THE PLAN IS THE GRANTOR HEREIN.

EXECUTED effective as of the day of _____, 200_.

GRANTOR:

By: _____

Name:

Title:

## Attachment D

### The Henderson Property - Tax Assessor Parcels

| #178-01-415-001 |
| #178-12-101-003 |
| #178-12-110-004 |
| #178-12-201-003 |
| #178-12-201-004 |
| #178-12-201-005 |
| #178-12-301-002 |
| #178-12-301-003 |
| #178-12-401-002 |
| #178-12-401-004 |
| #178-12-401-005 |
| #178-12-401-006 |
| #178-12-401-009 |
| #178-12-401-010 |
| #178-12-601-004 |
| #178-12-701-001 |
| #178-12-701-003 |
| #178-12-801-001 |
| #178-13-101-002 |
| #178-13-501-001 |
| #178-13-501-005 |
| #178-13-601-001 |
| #178-13-601-002 |

<u>**Attachment E**</u>

**The Henderson Property - Legal Description**

All that land situated in the County of Clark, State of Nevada, more particularly described as follows:

<u>**PARCEL 1**</u> (APN 178-12-101-003):

The North One-Half (N 1/2) of the Northwest Quarter (NW 1/4) of Section 12, Township 22 South, Range 62 East, M.D.M. lying South of the Southerly boundary line of Warm Springs Road as described in Deed to the City of Henderson for road purposes, recorded July 28, 1998 in Book 980728 as Document No. 00996, Official Records.

<u>**PARCEL 2**</u> (APN 178-12-201-005):

The South Half (S 1/2) of the Northwest Quarter (NW 1/4) of Section 12, Township 22 South, Range 62 East, M.D.M. lying South of the Southerly boundary line of Warm Springs Road as described in Deed to the City of Henderson for road purposes, recorded July 28, 1998 in Book 980728 as Document No. 00996, Official Records.

Excepting therefrom all that portion lying Southerly of the South line of that certain Parcel No. One (1) as described in Deed to American Potash & Chemical Corporation, recorded March 23, 1962 in Book 349 as Document No. 282224, Official Records.

<u>**PARCEL 3**</u> (APN 178-12-201-003):

That certain parcel within the South Half (S 1/2) of the Northwest Quarter (NW 1/4) of Section 12, Township 22 South, Range 62 East, M.D.M. being bounded as follows:

On the North by the South line of that certain Parcel No. One (1) as described in Deed to American Potash & Chemical Corporation, recorded March 23, 1962 in Book 349 as Document No. 282224, Official Records;
On the East by the West line of that certain Parcel No. Two (2) as described in Deed to American Potash & Chemical Corporation, recorded March 23, 1962 in Book 349 as Document No. 282224, Official Records;

On the West by the West line of that certain Parcel "A" as described in correction Deed to Western Electrochemical recorded August 29, 1952 in Book 67 as Document No. 389974, Official Records;

And on the South by the South line of said South Half (S 1/2) of the Northwest Quarter (NW 1/4).

**PARCEL 4** (APN 178-12-201-004):

The South Half (S 1/2) of the Northwest Quarter (NW 1/4) of Section 12, Township 22 South, Range 62 East, M.D.M.

Excepting therefrom all that portion lying Northerly of the South line of that certain Parcel No. One (1) as described in Deed to American Potash & Chemical Corporation, recorded March 23, 1962 in Book 349 as Document No. 282224, Official Records.

Further excepting therefrom all that portion lying Westerly of the West line of that certain Parcel No. Two (2) as described in Deed to American Potash & Chemical Corporation, recorded March 23, 1962 in Book 349 as Document No. 282224, Official Records.

**PARCEL 5** (APN 178-12-601-004):

The South Half (S 1/2) of the Northeast Quarter (NE 1/4) of Section 12, Township 22 South, Range 62 East, M.D.M. lying South of the Southerly boundary line of Warm Springs Road as described in Deed to the City of Henderson for road purposes, recorded July 28, 1998 in Book 980728 as Document No. 00996, Official Records.

Excepting therefrom that certain Parcel "BB" as described in Deed to Titanium Metals Corporation of America, recorded January 2, 1968 in Book 844 as Document No. 678200, Official Records.

Further excepting therefrom that certain parcel as described in Deed to Titanium Metals Corporation of America, recorded February 4, 1972 in Book 205 as Document No. 164259, Official Records.

Further excepting therefrom that portion lying within Lots One (1), Two (2) and Three (3) as shown by map thereof in File 99 of Parcel Maps, Page 70 in the Office of the County Recorder, Clark County, Nevada.

Further excepting therefrom that portion as described in Deed to the City of Henderson for road purposes, recorded September 3, 1998 in Book 980903 as Document No. 00703, Official Records.

Further excepting therefrom any portion lying Easterly of the Southwesterly right of way line of U.S. Highway 95.

2

**PARCEL 6** (APN 178-12-301-002):

That certain parcel lying within the North Half (N 1/2) of the Southwest Quarter (SW 1/4) of Section 12, Township 22 South, Range 62 East, M.D.M. being bounded as follows:

On the East by the West line of that certain Parcel No. Two (2) as described in Deed to American Potash & Chemical Corporation, recorded March 23, 1962 in Book 349 as Document No. 282224, Official Records;

On the West by the West line of that certain Parcel "A" as described in correction Deed to Western Electrochemical recorded August 29, 1952 in Book 67 as Document No. 389974, Official Records;

On the North by the North line of said North Half (N 1/2) of the Southwest Quarter (SW 1/4); and

On the South by the South line of said North Half (N 1/2) of the Southwest Quarter (SW 1/4).

Excepting from the above described parcel any portion lying within Lot Four (4) as shown by map thereof in File 100 of Parcel Maps, Page 24 in the Office of the County Recorder, Clark County, Nevada.

**PARCEL 7** (APN 178-12-301-003):

The North Half (N 1/2) of the Southwest Quarter (SW 1/4) of Section 12, Township 22 South, Range 62 East, M.D.M.

Excepting therefrom that portion lying Westerly of the West line of that certain Parcel No. Two (2) as described in Deed to American Potash & Chemical Corporation, recorded March 23, 1962 in Book 349 as Document No. 282224, Official Records.

Together with all of the Government's rights, title and interest in and to that certain easement granted by Stauffer Chemical Company of Nevada, a Nevada Corporation, to the United States of America by Easement Deed dated December 10, 1952 recorded May 27, 1953 as Document No. 405819 in Book 70 of Deeds, at Page 386, Official Records of Clark County, Nevada.

**PARCEL 8** (APN 178-12-701-001):

The North Half (N 1/2) of the Southeast Quarter (SE 1/4) of Section 12, Township 22 South, Range 62 East, M.D.M.

Excepting therefrom that portion lying Easterly and Southerly on the East and South lines of that certain Parcel No. Two (2) as described in Deed to American Potash & Chemical Corporation, recorded March 23, 1962 in Book 349 as Document No. 282224, Official Records.

K&E 17948405.1

**PARCEL 9** (APN 178-12-701-003):

The North Half (N 1/2) of the Southeast Quarter (SE 1/4) of Section 12, Township 22 South, Range 62 East, M.D.M.

Excepting therefrom that portion lying Westerly and Northerly of the East and South lines of that certain Parcel No. Two (2) as described in Deed to American Potash & Chemical Corporation, recorded March 23, 1962 in Book 349 as Document No. 282224, Official Records.

Further excepting therefrom that portion lying Easterly of that East line of that certain Parcel "D" as described in correction Deed to Western Electrochemical Company recorded August 29, 1952 in Book 67 as Document No. 389974, Official Records.

**PARCEL 10** (APN 178-12-401-002):

The South Half (S 1/2) of the Southwest Quarter (SW 1/4) of Section 12, Township 22 South, Range 62 East, M.D.M.

Excepting therefrom that portion lying Southerly and Westerly of the South and West lines of that certain Parcel No. Two (2) as described in Deed to American Potash & Chemical Corporation, recorded March 23, 1962 in Book 349 as Document No. 282224, Official Records.

**PARCEL 11** (APN 178-12-401-004):

The South Half (S 1/2) of the Southwest Quarter (SW 1/4) of Section 12, Township 22 South, Range 62 East, M.D.B.&M.

Excepting therefrom all that portion lying West of the centerline of Fourth Street.

Further excepting therefrom all that portion lying North of the Southerly line of that certain Parcel No. Two (2) as described in Deed to American Potash & Chemical Corporation, a Delaware Corporation, recorded March 23, 1962 in Book 349 as Document No. 282224 of Official Records.
(APN 178-12-401-002)

Further excepting therefrom all those certain Parcels "A", "C" and "D" as described in Deed to Western Electrochemical Company, a Nevada corp., recorded November 3, 1951 in Book 65 of Deeds, Page 353 as Document No. 377255, of Official Records.
(APN 178-12-401-010, 178-12-401-011, 178-12-401-005 and 178-12-401-006)

Further excepting therefrom that certain Parcel No. One (1) as described in Deed to United States Lime Products Corporation, a Nevada corp., recorded September 28, 1956 in Book 109 as Document No. 90226 of Official Records.
(APN 178-12-801-004)

4

Further excepting therefrom that certain parcel described in Deed to the Flintkote Company, a Massachusetts corp., recorded November 3, 1971 in Book 177 as Document No. 141493 of Official Records.
(APN 178-12-801-003)

Further excepting therefrom that certain Parcel "S" as described in Deed to National Lead Company, a New Jersey corp., recorded June 20, 1967 in Book 803 as Document No. 645533 of Official Records, being more particularly described as follows:

Beginning at the Southwest (SW) corner of Section 12, Township 22 South, Range 62 East, Mount Diablo Base and Meridian;
Thence North 77°13' East, 1354.23 feet to a point on the center line of Fourth Street, which point is the True Point of Beginning;
Thence North 8°51'37" West 189.0 feet along the center line of Fourth Street to its intersection with the center line of Avenue F;
Thence North 81°08'23" East 848.0 feet along the center line of Avenue F to a point;
Thence South 8°51'37" East 189.0 feet to a point;
Thence South 81°08'23" West 627.0 feet to a point;
Thence South 8°51'37" East 64.50 feet to a point;
Thence South 81°08'23" West 56.00 feet to a point;
Thence North 8°51'37" West 64.50 feet to a point;
Thence South 81°08'23" West 165.0 feet to the True Point of Beginning.
(APN 178-12-401-007)

Further excepting therefrom the following described parcel (APN 178-12-401-009):

Commencing at the Southwest (SW) corner of Section 12, Township 22 South, Range 62 East, M.D.B.&M. &M.,
Thence North 77°13'00" East 1354.23 feet to a point on the centerline of Fourth Street, said point the True Point of Beginning;
Thence North 81°08'23" East 165.00 feet;
Thence South 8°51'37" East 64.50 feet;
Thence North 81°08'23" East 56.00 feet;
Thence North 8°51'37" West 64.50 feet;
Thence North 81°08'23" East 627.00 feet;
Thence South 8°51'37" East 118.00 feet;
Thence North 81°08'23" East 5.00 feet;
Thence South 8°51'37" East 45.50 feet;
Thence North 81°08'23" East 134.00 feet;
Thence South 8°51'37" East 232.00 feet;
Thence North 81°08'23" East 304.40 feet to the North-South centerline of said Section 12;
Thence South 00°42'34" West 189.19 feet to the South Quarter (S 1/4) corner of said Section 12;
Thence along the South line of said Section 12 North 89°00'41" West 1278.81 feet to the centerline of Fourth Street;
Thence North 8°51'37" West along said centerline 327.21 feet to the True Point of Beginning.

5

**PARCEL 12** (APN 178-12-401-005):

That portion of the South Half (S 1/2) of the Southwest Quarter (SW 1/4) of Section 12, Township 22 South, Range 62 East, M.D.M., more particularly described as follows:

Commencing at the Southwest Quarter (SW 1/4) of said Section 12;
Thence North 71°13'36" East a distance of 1752.22 feet to the True Point of Beginning;
Thence North 08°51'37" West a distance of 166.50 feet;
Thence North 81°08'23" East a distance of 740.00 feet;
Thence South 08°51'37" East a distance of 166.50 feet;
Thence South 81°08'23" West a distance of 740.00 feet to the True Point of Beginning.

(Deed reference: "Parcel C" of 377255 recorded November 2, 1951)

**PARCEL 13** (Portion APN 178-12-401-006):

That portion of the South Half (S 1/2) of the South Half (S 1/2) of Section 12, Township 22 South, Range 62 East, M.D.M., more particularly described as follows:

Commencing at the Southwest Quarter (SW 1/4) of said Section 12;
Thence North 74°16'34" East a distance of 2524.15 feet to the True Point of Beginning;
Thence North 08°51'37" West a distance of 166.50 feet;
Thence North 81°08'23" East a distance of 260.32 feet to a point on the Quarter Section line;
Thence South 00°42'34" West along the Quarter Section line a distance of 168.85 feet to a point;
Thence South 81°08'23" West a distance of 232.25 of the True Point of Beginning.

(Deed reference: "Parcel D" of 377255 recorded November 2, 1951).

**PARCEL 14** (Portion of APN 178-12-401-006):

Commencing at the Southeast (SE) corner of Section 12, Township 22 South, Range 62 East, M.D.M.;
Thence North 71°29'35" West a distance of 2630.29 to the True Point of Beginning;
Thence South 81°08'23" West a distance of 149.75 feet to a point on the Quarter Section line;
Thence North 00°42'34" East along the Quarter Section line a distance of 168.85 feet to a point;
Thence North 81°08'23" East a distance of 121.68 feet to a point;
Thence South 08°51'37" East a distance of 166.50 feet to the True Point of Beginning.

(Deed reference: "Parcel E" of 377255 recorded November 2, 1951)

**PARCEL 15** (APN 178-12-401-009):

Commencing at the Southwest (SW) corner of Section 12, Township 22 South, Range 62 East, M.D.B.&M. &M.,

Thence North 77°13'00" East 1354.23 feet to a point on the centerline of Fourth Street, said point the True Point of Beginning;
Thence North 81°08'23" East 165.00 feet;
Thence South 8°51'37" East 64.50 feet;
Thence North 81°08'23" East 56.00 feet;
Thence North 8°51'37" West 64.50 feet;
Thence North 81°08'23" East 627.00 feet;
Thence South 8°51'37" East 118.00 feet;
Thence North 81°08'23" East 5.00 feet;
Thence South 8°51'37" East 45.50 feet;
Thence North 81°08'23" East 134.00 feet;
Thence South 8°51'37" East 232.00 feet;
Thence North 81°08'23" East 304.40 feet to the North-South centerline of said Section 12;
Thence South 00°42'34" West 189.19 feet to the South Quarter (S 1/4) corner of said Section 12;
Thence along the South line of said Section 12 North 89°00'41" West 1278.81 feet to the centerline of Fourth Street;
Thence North 8°51'37" West along said centerline 327.21 feet to the True Point of Beginning.

(Deed reference 389974, recorded August 29, 1952; and 377255 recorded November 2, 1951).

Excepting therefrom that portion lying within that parcel described in Deed to the Flintkote Company, a Massachusetts Corp., recorded November 3, 1971 in Book 177 as Document No. 141493 of Official Records.

**PARCEL 16** (APN 178-12-401-010):

Beginning at the Southwest (SW) corner of Section 12, Township 22 South, Range 62 East, Mount Diablo Base and Meridian;
Thence North 78°16'05" East 2210.66 feet to a point which is the True Point of Beginning;
Thence North 81°08'23" East 10.00 feet to a point;
Thence South 8°51'37" East 95.17 feet to a point;
Thence North 81°08'23" East 272.00 feet to a point;
Thence North 8°51'37" West 95.17 feet to a point;
Thence North 81°08'23" East 244.52 feet to a point;
Thence South 0°42'34" West 243.89 feet to a point;
Thence South 81°08'23" West 119.97 feet to a point;
Thence South 8°51'37" East 108.5 feet to a point;
Thence North 81°08'23" East 0.33 feet to a point;
Thence South 8°51'37" East 144.00 feet to a point;
Thence South 81°08'23" West 227.33 feet to a point;
Thence North 8°51'37" West 232.00 feet to a point;
Thence South 81°8'23" West 134.00 feet to a point;
Thence North 8°51'37" West 45.50 feet to a point;
Thence South 81°08'23" West 5.00 feet to a point;

K&E 17948405.1

Thence North 8°51'37" West 215.50 feet to the True Point of Beginning.

(Deed reference 377255, recorded November 2, 1951).

Excepting therefrom that portion of the South Half (S 1/2) of Section 12, Township 22 South, Range 62 East, M.D.M., described as follows:

Beginning at the South Quarter (S 1/4) corner of Section 12, Township 22 South, Range 62 East, M.D.M.;
Thence along the North-South center line of Section 12, North 0°53'32-1/2" East 189.18 feet, to a point on the South line of that parcel of land described in the Deed to Arrowhead Lime and Chemical Co., hereinafter referred to as Arrowhead Parcel, recorded May 31, 1951 as Document No. 371209, Official Records.
Thence North 81°08'23" East along the South line of said Arrowhead Parcel 597.98 feet to the True Point of Beginning;

Thence South 81°08'23" West, along the South line of said Arrowhead Parcel 675.67 feet, to the Southwest Corner of said Arrowhead Parcel;
Thence continuing along the boundary of said Arrowhead Parcel, North 8°51'37" West 144.00 feet;
Thence South 81°08'23" West, a distance of 0.33 feet;
Thence North 8°51'37" West, a distance of 108.50 feet;
Thence North 81°08'23" East, a distance of 376.00 feet;
Thence North 8°51'37" West, a distance of 238.00 feet;
Thence North 81°08'23" East, a distance of 300.00 feet to the Northeast Corner of said Arrowhead Parcel;
Thence North 8°51'37" West, a distance of 43.51 feet;
Thence South 81°08'23" West, a distance of 739.59 feet;
Thence South 8°51'37" East, a distance of 134.17 feet;
Thence South 81°08'23" West, a distance of 126.50 feet;
Thence South 8°51'37" East, a distance of 90.96 feet;
Thence North 81°08'23" East, a distance of 126.50 feet;
Thence South 8°51'37" East, a distance of 374.67 feet;
Thence North 81°08'23" East, a distance of 739.59 feet;
Thence North 8°51'37" West, a distance of 65.79 feet to the True Point of Beginning, as described in the Deed to the Flintkote Company, a Massachusetts corporation, recorded November 03, 1971 in Book 177 as Document No. 141493, Official Records.
(APN 178-12-801-003)

Further excepting therefrom that portion of the South Half (S ½) of Section 12, Township 22 South, Range 62 East, M.D.M., more particularly described as follows:

Commencing at the South Quarter Corner of said Section 12;
Thence along the North-South center line of Section 12, North 0°53'32-1/2" East 189.18 feet;

K&E 17948405.1

To a point on the South line of that parcel of land described in the Deed Arrowhead Lime and Chemical Co., hereinafter referred to as Arrowhead Parcel, recorded May 31, 1951, as Document No. 371209, Official Records;

Thence South 81°08'23" West along an extension of the South line of said Arrowhead Parcel, a distance of 141.61 feet;

Thence North 8°51'37" West, a distance of 308.88 feet to the True Point of Beginning;

Thence South 81°08'23" West, a distance of 126.50 feet;

Thence South 8°51'37" East, a distance of 30.00 feet;

Thence North 81°08'23" East, a distance of 126.50 feet;

Thence North 8°31'37" West to the True Point of Beginning, as described in the Deed to Chemstar, Inc., recorded October 18, 1988 in Book 881018 as Document No. 00862, Official Records.

(APN 178-12-401-011)

**PARCEL 17** (APN 178-12-801-001)

The South Half (S 1/2) of the Southeast Quarter (SE 1/4) of Section 12, Township 22 South, Range 62 East, M.D.M.

Excepting therefrom that portion lying Easterly of the East line of that certain "Parcel D" as described in Deed to Western Electrochemical Company, recorded August 29, 1952 in Book 67 as Document No. 389974, Official Records.

Further excepting therefrom that portion lying within that certain Parcel No. Two (2) as described in Deed to American Potash & Chemical Corporation, recorded March 23, 1962 in Book 349 as Document No. 282224, Official Records.

Further excepting therefrom that certain "Parcel E" as described in Deed to Western Electrochemical Company, recorded November 2, 1951 in Book 65 as Document No. 377255.

Further excepting therefrom that certain "Parcel Two (2)" as described in Deed to United States Lime Products Corporation, recorded September 28, 1956 in Book 109 as Document No. 90226, Official Records.

Further excepting therefrom any portion lying within that certain parcel described in Deed to Flintkote Company, recorded November 3, 1971 in Book 177 as Document No. 141493, Official Records.

**PARCEL 18** (APN 178-13-501-001):

That portion of the North Half (N 1/2) of the Northeast Quarter (NE 1/4) of Section 13, Township 22 South, Range 62 East, M.D.M., more particularly described as follows:

Beginning at the North Quarter (N 1/4) corner of Section 13, Township 22 South, Range 62 East, Mount Diablo Base and Meridian,

K&E 17948405.1

Thence South 88°59'591/2" East 1456.55 feet along the North line of Section 13 to a point on the center line of Eleventh Street;

Thence South 8°51'37" East 637.87 feet along the center line of Eleventh Street;

Thence South 81°08'23" West 40.0 feet to West boundary of Eleventh Street;

Thence North 8°51'37" West 335.75 feet to a point;

Thence South 81°08'23" West 240.0 feet to a point;

Thence North 8°51'37" West 65.0 feet to a point;

Thence South 81°08'23" West 34.0 feet to a point;

Thence North 8°51'37" West 6.0 feet to a point;

Thence South 81°08'23" West 12.0 feet to a point;

Thence South 8°51'37" East 6.0 feet to a point;

Thence South 81°08'23" West 64.0 feet to a point;

Thence South 8°51'37" East 1.5 feet to a point;

Thence South 81°08'23" West 212.0 feet to a point;

Thence South 8°51'37" East 63.5 feet to a point;

Thence South 81°08'23" West 903.0 feet to a point;

Thence North 8°51'37" West 29.0 feet to a point;

Thence South 81°08'23" West 12.27 feet to a point on the North and South center line of Section 13;

Thence North 0°05'03" East 528.98 feet along the North and South center line of Section 13 to the Point of Beginning.

(Deed reference 389974 recorded August 29, 1952).

**PARCEL 19** (APN 178-13-101-002, Portion 178-13-601-001 and Portion 178-13-601-002):

That portion of the Northwest Quarter (NW 1/4) of Section 13, Township 22 South, Range 62 East, M.D.M., more particularly described as follows:

Beginning at the North Quarter (N 1/4) corner of Section 13, Township 22 South, Range 62 East, Mount Diablo Base and Meridian,

Thence South 0°05'03" West 528.98 feet to a point;

Thence South 81°08'23" West 22.73 feet to a point;

Thence South 8°51'37" East 29.00 feet to a point;

Thence South 81°08'23" West 341.00 feet to a point;

Thence North 8°51'37" West 65.00 feet to a point;

Thence South 81°08'23" West 362.00 feet to a point;

Thence South 8°51'37" East 234.00 feet to a point;

Thence North 81°08'23" East 362.00 feet to a point;

Thence North 8°51'37" West 49.00 feet to a point;

Thence North 81°08'23" East 340.27 feet to a point;

Thence South 0°05'03" West 1905.17 feet to a point on the center line of B M P Highway;

Thence South 81°08'23" West 118.06 feet to a point;

Thence North 8°51'37" West 1591.50 feet to a point on the center line of Avenue J;

10

Thence South 81°08'23" West 740.00 feet to a point on the center line of Fourth Street;

Thence North 8°51'37" West 508.50 feet along the center line of Fourth Street to a point on the center line of Avenue H;

Thence North 81°08'23" East 355.0 feet along the center line of Avenue H to a point on the center line of Fifth Street;

Thence North 8°51'37" West 555.0 feet along the center line of Fifth Street to a point on the center line of Avenue G;

Thence South 81°08'23" West 355.0 feet along the center line of Avenue G to a point on the center line of Fourth Street;

Thence North 8°51'37" West 117.29 feet along the center line of Fourth Street to a point on the North line of Section 13;

Thence South 89°00'41" East 1278.82 feet along the North line of Section 13 to the North Quarter (N 1/4) point, which is the Point of Beginning.

(Deed reference: "Parcel B" of 389974, recorded August 29, 1952).

Excepting therefrom that portion described in Deed to the State of Nevada for road purposes, recorded October 10, 1955 in Book 70 as Document No. 58733, Official Records.

Further excepting therefrom that portion described in Deed to the State of Nevada for road purposes, recorded January 16, 1957 in Book 118 as Document No. 97499, Official Records.

**PARCEL 20** (APN 178-13-501-005, Portion 178-13-601-001 and Portion 178-13-601-002):

Beginning at the Northeast (NE) corner of Section 13, Township 22 South, Range 62 East, Mount Diablo Base and Meridian;

Thence South 76°34'05" West 2727.32 feet to a point on the North and South center line of Section 13, which point is the True Point of Beginning;

Thence North 81°08'23" East 350.73 feet to a point on the West boundary of Eighth Street;

Thence North 8°51'37" West 120.0 feet to a point;

Thence North 81°08'23" East 40.0 feet to a point on the East boundary of Eighth Street;

Thence South 8°51'37" East 120.0 feet to a point;

Thence North 81°08'23" East 350.0 feet to a point;

Thence South 8°51'37" East 215.75 feet to a point;

Thence North 81°08'23" East 637.0 feet to a point;

Thence South 8°51'37" East 126.25 feet to a point;

Thence South 81°08'23" West 454.0 feet to a point;

Thence South 8°51'37" East 232.5 feet to a point on the North boundary of Avenue L;

Thence North 81°08'23" East 454.0 feet to a point;

Thence South 8°51'37" East 40.0 feet to a point on the South boundary of Avenue L;

Thence South 81°08'23" West 454.0 feet to a point;

Thence South 8°51'37" East 1167.5 feet to a point on the North boundary of B M P Highway;

Thence North 81°08'23" East 454.0 feet to a point;

Thence South 8°51'37" East 200.0 feet to a point on the South boundary of B M P Highway;

Thence South 81°08'23" West 554.0 feet to a point;

Thence North 8°51'37" West 100.0 feet to a point;
Thence South 81°08'23" West 1119.94 feet along the center line of B M P Highway to a point;
Thence North 0°05'03" East 1905.17 feet along the North and South center line of Section 13 to the True Point of Beginning.

(Deed reference 389974 recorded August 29, 1952).

Excepting therefrom that portion described in Deed to the State of Nevada for road purposes, recorded October 10, 1955 in Book 70 as Document No. 58733, Official Records.

Further excepting therefrom that portion described in Deed to the State of Nevada for road purposes, recorded January 16, 1957 in Book 118 as Document No. 97499, Official Records.

**PARCEL 21: (APN 178-12-415-00)**

That portion of the Southwest Quarter (SW ¼) of Section 1 and that portion of the North Half (N ½) of Section 12, all in Township 22 South, Range 62 East, M.D.M., described as follows:

All of Lot One (1) of the FINAL MAP OF NORTH GATE (a commercial subdivision) as shown by map thereof on file in Book 139 of Plats, Page 11 in the Office of the County Recorder, Clark County, Nevada.

**PARCEL 22:  (APN 178-12-110-004)**

A portion of Lot Two (2) of FINAL MAP OF NORTH GATE (a commercial subdivision) as shown in Book 139 of Plats, Page 11, Official Records, Clark County, Nevada, located in a portion of the Northeast Quarter (NE ¼) of the Northwest Quarter (NW ¼) of Section 12, Township 22 South, Range 62 East, M.D.M., Clark County, Nevada, more particularly described as follows:

Beginning at the Northwest corner of the Northeast Quarter (NE ¼) of the Northwest Quarter (NW ¼) of said Section 12, same being the Northwest corner of said Lot Two (2); thence South 89°52'36" East, along the North line thereof, coincident with the North boundary of said Lot Two (2), a distance of 587.32 feet; thence South 00°00'00" West departing said North line and said North boundary, 1008.29 feet to the beginning of a non-tangent curve concave Southwesterly having a radius of 15050.00 feet, same being the Northeasterly right-of-way of West Warm Springs Road, a radial line to said beginning bears North 25°47'29" East; thence along said curve and said Northeasterly right-of-way to the left through a central angle of 02°23'44", an arc length of 629.26 feet t the West boundary of said Lot Two (2); thence North 01°09'49" West, departing said Northeasterly right-of-way and along said West boundary, 747.85 feet to the Point of Beginning.

Being Lot 2-3 as shown on Record of Survey in File 173 of Surveys, Page 95 recorded June 17, 2008 in Book 20080617 as Document No. 03407, Official Records, Clark County, Nevada.

K&E 17948405.1

## Surveyors Legal Description (Parcels 1 through 20)

All that land situated in the County of Clark, State of Nevada, more particularly described as follows:

Commencing at a capped pin found at the Northwest Corner of Section 12;
Thence South 02°07'00" West, along the West line of said Section 12, a distance of 327.11 feet to the South line of Warm Springs Road (100' wide) and also being the True Place of Beginning of the parcel land herein described;
Thence South 67°31'21" East, along said South line, a distance of 1,025.39 feet;
Thence following the arc of a curve to the right having a radius of 14,950.00', a chord of 1,742.08', bearing South 64°10'56" East, a total arc distance of 1,743.07';
Thence following the arc of a curve to the right having a radius of 14,950.00', a chord of 872.72', bearing South 59°08'24" East a total arc distance of 872.85';
Thence South 57°28'03" East, a distance of 111.31 feet;
Thence South 08°51'37" East, a distance of 92.62 feet;
Thence South 63°17'49" East, a distance of 54.27 feet;
Thence South 08°51'37" East, a distance of 3,905.34 feet;
Thence South 81°08'23" West, a distance of 40.00 feet;
Thence North 08°51'37" West, a distance of 335.75 feet along the West line of 11th Street;
Thence South 81°08'23" West, a distance of 240.00 feet along the property line of a parcel of land, now or formerly in the name of U.S.A.;
Thence North 08°51'37" West, a distance of 65.00 feet;
Thence South 81°08'23" West, a distance of 34.00 feet;
Thence North 08°51'37" West, a distance of 6.00 feet;
Thence South 81°08'23" West, a distance of 12.00 feet;
Thence South 08°51'37" East, a distance of 6.00 feet;
Thence South 81°08'23" West, a distance of 64.00 feet;
Thence South 08°51'37" East, a distance of 1.50 feet;
Thence South 81°08'23" West, a distance of 212.00 feet;
Thence South 08°51'37" East, a distance of 63.50 feet;
Thence South 81°08'23" West, a distance of 548.00 feet to the East line of 8th Street;
Thence South 08°51'37" East, a distance of 120.00 feet;
Thence North 81°08'23" East, a distance of 350.00 feet;
Thence South 08°51'37" East, a distance of 215.75 feet;
Thence North 81°08'23" East, a distance of 637.00 feet;
Thence South 08°51'37" East, a distance of 126.25 feet;
Thence South 81°08'23" West, along the property line of a parcel of land, now or formerly in the name of Basic Environmental Co LLC, a distance of 454.00 feet;
Thence South 08°51'37" East, a distance of 232.50 feet;
Thence North 81°08'23" East, along the North line of Avenue L, a distance of 454.00 feet;
Thence South 08°51'37" East, a distance of 40.00 feet;
Thence South 81°08'23 West, a distance of 454.00 feet;
Thence South 08°51'37" East, a distance of 1,167.50 feet to the North line of Lake Mead Drive;

13

Thence South 81°08'23" West, along said North line, a distance of 1,338.00 feet;

Thence North 08°51'37" West, a distance of 1,491.50 feet;

Thence South 81°08'23" West, a distance of 740.00 feet;

Thence North 08°51'37" West, along the centerline of 4th Street, a distance of 508.50 feet;

Thence North 81°08'23" East, along the centerline of Avenue H, a distance of 355.00 feet;

Thence North 08°51'37" West, along the centerline of 5th Street, a distance of 555.00 feet;

Thence South 81°08'23" West, along the centerline of Avenue G, a distance of 355.50 feet;

Thence North 08°51'37" West, along the centerline of 4th Street, a distance of 444.50 feet;

Thence North 81°08'23" East, along the property line of a parcel of land, now or formerly in the name of Titanium Metals Corporation, a distance of 165.00 feet;

Thence North 08°51'37" West, a distance of 64.50 feet;

Thence North 81°08'23" East, a distance of 56.00 feet;

Thence South 08°51'37" East, a distance of 64.50 feet;

Thence North 81°08'23" East, a distance of 627.00 feet;

Thence North 08°51'37" West, a distance of 189.00 feet;

Thence South 81°08'23" West, a distance of 848.00 feet;

Thence North 08°51'37" West, passing a P.K. Nail found O 228.39 feet, a total arc distance of 3,126.71 feet;

Thence North 84°13'42" West, a distance of 679.70 feet to an iron pipe;

Thence North 02°07'00" East, along the West line of Section 12, a distance of 1,288.20 feet to the Place of Beginning.

The Basis of Bearings used for this Survey is North 02°07'00" East, being the West line of Section 12, as evidenced by monuments found;

Excepting therefrom the following described landlocked parcels of land.

**Parcel 1:**

Commencing at the South Quarter Corner (S ¼ C) of Section 12; Thence North 00°42'34" East, a distance of 189.18 feet; Thence North 81°08'23" East, a distance of 599.50 feet to a point at the place of beginning of the parcel of land herein described; Thence South 08°51'37" East, a distance of 65.79 feet; Thence South 81°08'23", a distance of 739.59 feet; Thence North 08°51'37" West, a distance of 344.67 feet; Thence South 81°08'23" West, a distance of 126.50 feet; Thence North 08°51'37" West, a distance of 123.96 feet; Thence North 81°08'23" East, a distance of 126.50 feet; Thence North 08°51'37" West, a distance of 131.17 feet; Thence North 81°08'23" East, a distance of 739.59 feet; Thence South 08°51'37" East, a distance of 534.01 feet to the place of beginning.

**Parcel 2:**

Commencing at the Southwest Corner of Section 12; Thence South 71°19'49" East, a distance of 2,033.40 feet to a point on the South right of way line of "H" Avenue, said point being at the place of beginning of the parcel of land herein described; Thence North 81°08'23" East, along

K&E 17948405.1

the South right of way line of "H" Avenue, a distance of 362.00 feet; Thence South 08°51'37" East, a distance of 65.00 feet; Thence North 81°08'23" East, a distance of 341.00 feet; Thence North 08°51'37" West, a distance of 29.00 feet; Thence North 81°08'23" East, a distance of 35.00 feet; Thence South 08°51'37" East, a distance of 29.00 feet; Thence North 81°08'23" East, a distance of 315.00 feet to a capped iron pin found on the West right of way line of 8th Street; Thence South 08°51'37" East, along the West line of 8th Street, a distance of 120.00 feet; Thence South 81°08'24" West, a distance of 691.00 feet; Thence South 08°51'37" East, a distance of 49.00 feet; Thence South 81°08'23" West, a distance of 362.00 feet; Thence North 08°51'37" West, a distance of 234.00 feet to the place of beginning.

K&E 17948405.1

## **Attachment F**

Existing Leases

Lease Agreement dated May 6, 2005, by and between Tronox LLC f/k/a Kerr-McGee Chemical LLC, as lessor, and Pronto Constructors, Inc., as lessee, as amended by the First Amendment to Lease Agreement dated May 1, 2007.

Lease Agreement dated August 31, 2006, by and between Tronox LLC, as landlord, and Industrial Supply Co, Inc., as tenant.

## EXHIBIT G

### Lease Term Sheet

Lease of Henderson, Nevada Facility

Tronox LLC ("Tenant") and the Henderson Environmental Response Trust ("Owner") shall enter into a triple net lease agreement (the "Henderson Facility Lease") relating to that certain real property, and all buildings, improvements and fixtures located thereon (the "Henderson Leased Facility"), as depicted in Exhibit A annexed hereto, where the Henderson Business is located. The Henderson Leased Facility is a portion of the Henderson Property. The Henderson Property is being transferred to Owner pursuant to that certain Consent Decree and Environmental Settlement Agreement (the "Settlement Agreement") to which this Lease Term Sheet is appended, and to the Plan of Reorganization. Tenant and Owner shall enter into the Henderson Facility Lease on terms satisfactory to the Backstop Parties, the Creditors' Committee, the United States (as each of such terms is defined in the Plan of Reorganization), Tenant and Owner, which terms shall include those set forth below. Capitalized terms used and not otherwise defined in this Lease Term Sheet shall have the respective meanings set forth in the Settlement Agreement. The Henderson Facility Lease shall contain other provisions to be agreed upon between the parties, including but not limited to the following which are summarized below:

| | |
|---|---|
| **Landlord/Owner:** | Henderson Environmental Response Trust |
| **Tenant:** | Tronox, LLC |
| **Guarantor:** | Tronox Incorporated ("Guarantor") |
| **Leased Premises:** | The Henderson Leased Facility, including all improvements to, fixtures on and buildings located on the land depicted in Exhibit A, and all rights and interests in and to all easements, structures, pipes, lines, appurtenances, equipment, facilities and certain easement areas (to be set forth in the Henderson Facility Lease); it may also include the non-exclusive or exclusive right to use parking areas, driveways, roads, alleys and means of ingress and egress, at certain portions of the Henderson Property (not including the Henderson Leased Facility), (also to be defined in the Henderson Facility Lease) to the extent reasonably required to access and utilize the Henderson Leased Facility and operate the Henderson Business, all subject to Owner's perpetual and assignable right of access, as described below under the caption "Owner's Right of Access." The Henderson Leased Facility shall not include the chromium- and perchlorate-related groundwater intercept and treatment systems or equipment or any other on-going environmental contamination investigation, treatment or remediation |

<table>
<tr><td></td><td>systems or equipment at or associated with the Henderson Property.</td></tr>
</table>

|  |  |
|---|---|
| **Triple Net Lease:** | The Henderson Facility Lease will be a triple net lease, with all real estate taxes, insurance, utilities, operating expenses and other expenses of maintaining, operating, repairing, and insuring the Henderson Leased Facility (including, without limitation, assessments of the Black Mountain Industrial Center Association, subject to the apportionment provisions set forth in the last sentence of this caption "Triple Net Lease") to be borne by Tenant.  Tenant shall have the right to contest or institute proceedings to reduce real property taxes by legal proceedings or in such manner as it may deem suitable, in the name of and with the cooperation of (but without cost to) Owner, who shall execute all documents reasonably necessary to accomplish the foregoing. Tenant shall use its best efforts to obtain from the taxing authorities a separate tax parcel assessment for the Henderson Leased Facility (and improvements located thereon) and cause Tenant to be named as the party to whom all such bills and assessments should be sent.  In addition, to the extent possible, Tenant shall obtain from the Black Mountain Industrial Center Association separate assessments for the Henderson Leased Facility and the balance of the Henderson Property.  To the extent the Henderson Leased Facility is not assessed as a separate tax parcel as of the Effective Date or any utilities (including any utilities provided to Owner pursuant to Owner's exercise of its rights to utilities) are not separately metered, the parties shall agree upon a reasonable apportionment of such real estate taxes and utilities, based on Tenant's pro rata share, provided that in any event Tenant shall be responsible for 100% of all building assessments for any improvements comprising part of the Henderson Leased Facility.  To the extent that assessments of the Black Mountain Industrial Center Association are not separately assessed for the Henderson Leased Property and the balance of the Henderson Property as of the Effective Date, the parties shall also agree upon a reasonable apportionment of the assessments imposed by the Black Mountain Industrial Center Association, based on Tenant's pro rata share. |
| **Initial Term:** | 25 years, commencing on the Effective Date (the "Initial Term"). |
| **Rent:** | $1 annually for the Initial Term, plus a one time payment of up to $10,500,000 payable on the Effective Date, which |

|  | one-time payment shall not be refundable under any circumstances. |
|---|---|
| **Renewal Options:** | Two (2) 25 year extensions at the option of the Tenant (the "Renewal Terms;" the Initial Term and the Renewal Terms, collectively the "Term"). |
| **Rent for Renewal Terms:** | Rent for each Renewal Term shall be the fair market value rent for similar properties in the Henderson, Nevada area ("FMV"), as determined by an independent appraiser reasonably agreed to by Tenant and Owner based on an approval process to be more particularly described in the Henderson Facility Lease. Rent will be adjusted as of the commencement of each of the Renewal Terms and on the 8th and 16th anniversaries of the commencement date of each of the Renewal Terms; provided that following the initial determination of FMV no adjustment of Rent will result in a decrease in Rent from the annual amount payable for the immediately preceding period. |
| **Use & Maintenance:** | Tenant will accept possession of the Henderson Leased Facility in its "AS-IS" condition as of the Effective Date. Owner will not be required under the Henderson Facility Lease to ensure that the Henderson Facility is habitable nor to perform any specific Environmental Actions or other work at the Henderson Leased Facility to render it suitable for the Henderson Business.  Tenant shall use the Henderson Leased Facility for its current use as a chemical manufacturing facility, including ancillary uses related thereto.  Any other use of the Henderson Leased Facility by Tenant shall require Owner's consent, which shall not be unreasonably withheld, conditioned or delayed. |
|  | Tenant shall maintain and operate the Henderson Leased Facility in accordance with applicable laws and codes. The Henderson Facility Lease will contain provisions to be agreed upon allowing Tenant the right to contest and cure violations. |
|  | In the event any violations cannot be cured within thirty (30) days after notice thereof is received by Tenant, so long as Tenant is actively, diligently and in good faith proceeding with continuity to cure such violation and cause the same to be discharged and the violation does not cause imminent endangerment to human health or the environment, Owner is protected from civil and criminal liability, and an indemnity by Tenant is given and/or other security is deposited with Owner (as may be required by Owner), if the |

reasonable cost of curing the violation exceeds $50,000, such cure period shall be extended for such longer time as is reasonably necessary (not to exceed a total of one hundred eighty (180) days unless failure to discharge is solely due to delays on the part of the agency in inspecting such violation or otherwise processing a correction of the violation and causing the same to be discharged in which case such period shall be extended on a per diem basis to allow for such delay).

**Dangerous Conditions:**   Tenant shall promptly undertake to remedy any condition on the Leased Premises which, under an objective standard, taking into account all circumstances (including, without limitation, Tenant's operation of a chemical manufacturing business at the Leased Premises), endangers human health, welfare or safety, and diligently pursue such remedy (the "Remedy") provided, however, that nothing in the previous clause shall require any Henderson Covered Person to take any actions or assume any liability with respect to remediation (including investigation), removal or restoration of any Henderson Legacy Conditions, except with respect to the Exacerbation Obligations.  If after receiving written notice from Owner of such condition Tenant does not promptly perform the Remedy, Owner may do so and may charge the reasonable costs of such Remedy to Tenant as additional rent.  Any disputes concerning this paragraph shall be resolved through AAA arbitration, to be completed within 90 days.  The non-prevailing party in such arbitration shall bear all reasonable fees and expenses of the prevailing party in connection with the arbitration.  The failure of Tenant to perform a Remedy required under this paragraph shall not constitute a default under the Lease unless Tenant shall fail to promptly pay a final arbitral award against it or any other amounts Tenant acknowledges to be due under this paragraph.

**Surrender:**   Upon surrender, the Henderson Leased Facility shall be returned to Owner in the same condition as on the Effective Date, ordinary wear and tear, casualty and condemnation excepted and further subject to (i) Tenant's right to make alterations as provided herein, and (ii) alterations or modifications resulting from any Environmental Actions conducted pursuant to the Settlement Agreement. Except as described in the following sentence, Tenant will not be required to perform any specific restorative work at the Henderson Leased Facility except insofar as is necessary to comply with the preceding sentence of this Lease Term

G-4

Sheet; provided, however, the Henderson Leased Facility shall be free of all liens (except to the extent such liens are caused by Owner, its successsors or assigns, it being understood that a lien related to a cure by Owner of a Tenant default shall not, under any circumstances, be deemed to be a "lien caused by Owner"), leases and tenancies.  Prior to surrender, Tenant (a) shall remove its fixtures and equipment from the Henderson Leased Facility (including any personalty related to the Henderson Business); (b) shall perform and fund, at its sole cost, Environmental Actions as required by law or agreement with respect to (i) any New Substances Conditions; (ii) any failure to comply with all applicable Environmental Laws; and (iii) any failure to comply with respect to the Due Care Obligations, subject to the Exacerbation Obligations, in each instance by any Henderson Covered Person; and (c) except with respect to Henderson Legacy Conditions, other than Exacerbation Obligations, shall comply with all requirements prescribed by Environmental Laws applicable to the shut-down or closure of chemical manufacturing processes or facilities, including waste treatment, storage or disposal units. If Tenant does not remove its fixtures or equipment upon surrender, the same shall become property of Owner at no cost to Owner, and may be removed by Owner at Tenant's expense.

**BMI:**

Tenant shall look solely to Basic Management Incorporated ("BMI") and not to Owner for the repair, replacement or upgrades of infrastructure owned or operated by BMI and for all utilities and other services provided, managed and maintained by BMI and its affiliates.  All charges of BMI as they relate to the Henderson Leased Facility and to the easements, rights and appurtenances included in the Henderson Leased Facility shall be borne by Tenant. Owner shall cooperate with Tenant (but at no cost to Owner) in connection with the provision of such repairs, utilities and services.

**Assignment/Subletting:**

(A) So long as no event of default has occurred and is continuing under the Henderson Facility Lease, Tenant may assign the Henderson Lease in its entirety, or sublet all or a portion of the Henderson Leased Facility, in each case with Owner's consent, which consent shall not be unreasonably withheld, conditioned or delayed; provided, however, Tenant may freely assign the Henderson Facility Lease in its entirety or sublet all or a portion of the Henderson Leased Facility to an affiliate

G-5

without Owner's consent, provided (i) Tenant remains fully liable under the Henderson Facility Lease, (ii) Guarantor remains fully liable under the Guaranty, and (iii) Tenant provides Owner with notice of such assignment or sublease.

(B) Among other factors, Owner may consider the following factors in providing or withholding its consent:

    (1) The creditworthiness of Assignee/Subtenant;

    (2) The experience of Assignee/Subtenant in operating a business similar to the Henderson Business;

    (3) Assignee/Subtenant's record, if any, of environmental violations; and

    (4) The ability of Assignee/Subtenant to comply with Tenant's obligations under the Henderson Facility Lease.

In the event Owner does not consent to an assignment or subletting, Owner shall set forth the basis for withholding its consent.

(C) Any sublease shall be subject and subordinate to the Henderson Facility Lease in all respects (including, without limitation, obligations to comply with Due Care Obligations), and will not release Tenant from liability under the Henderson Facility Lease or Guarantor from liability under the Guaranty.

(D) Assignee must assume all obligations under the Henderson Facility Lease.

(E) Upon any assignment to a person that is not an affiliate, the Tenant (and any affiliated guarantors or co-obligors) shall be released from all liability under the Henderson Facility Lease other than liabilities of Tenant, as tenant under the Henderson Facility Lease (or liabilities, if any, of Guarantor, as guarantor under the Guaranty), arising prior to the effective date of an assignment; provided however, that in the event that (i) Owner reasonably withholds consent to an assignment to a person that is not an affiliate as provided herein and (ii) Owner and Tenant expressly agree that as a condition to Owner consenting to such assignment, that Tenant (or any affiliated guarantors or co-obligors) shall not be released

G-6

from all liability under the Henderson Facility Lease, then Tenant, and its affiliated guarantors or co-obligors shall not be released from such liability under the Henderson Facility Lease unless the parties agree otherwise; provided, however, that nothing herein shall be construed to suggest that any consent conditioned upon the continuing liability of Tenant or Guarantor would be reasonable or unreasonable in any particular circumstance.

(F) Assignment shall trigger an adjustment of Rent to FMV only if such assignment occurs during a Renewal Term and to a party other than an affiliate of Tenant.

A Change of Control of Tenant shall constitute an assignment and shall require the consent of the Owner as provided above and shall be subject to Subparagraphs (A) through (F) above.  For purposes of the Henderson Facility Lease, a "Change of Control of Tenant" shall be (i) a sale or other transfer of all or substantially all of the assets of the Tenant in one or a series of transactions (other than the Henderson Facility Lease), together with (ii) a sale or other transfer in one or a series of transactions (including the issuance by the Tenant of equity interests in the Tenant) such that, following such sale or other transfer, a person or group of affiliated persons (other than the Guarantor and its affiliates) own equity interests in the Tenant representing more than 50% of the voting power of the Tenant entitled to vote, under ordinary circumstances, in the election of the board of directors, board of managers or other governing body of the Tenant.  For the avoidance of doubt, a direct or indirect transfer or acquisition of ownership of equity interests in the Guarantor or any of its affiliates (other than the Tenant), or any of their respective successors, shall not result in a Change of Control of Tenant.

As of the effective date of the Henderson Facility Lease there shall be no subleases in effect other than the Existing Leases.  Prior to such effective date, Tenant shall provide to Owner evidence (which may be in the form of an appropriate Bankruptcy Court order, or separate agreements entered into by the tenants under the Existing Leases) that each of the Existing Leases is subject and subordinate in all respects to the Henderson Facility Lease (including, Paragraphs 67(g) (to the extent applicable), 75, 84(d) and 84(e) of the Settlement Agreement, which shall be appended to the Henderson Facility Lease), that the Existing Leases

will automatically terminate on the termination of the Henderson Facility Lease, and that each tenant under the Existing Leases has acknowledged that it will look solely to Tenant (and not to Owner) with respect to any obligations of landlord under the Existing Leases.

**Owner's Right of Access:** Owner shall retain and reserve a perpetual and assignable right of access on, over, and through the Henderson Leased Facility, to enter upon the Henderson Leased Facility at all reasonable times to perform any Environmental Actions required by the Lead Agency pursuant to the Settlement Agreement, or otherwise to meet its environmental responsibilities required under applicable laws. Such right of access shall be binding on Tenant, its successors and assigns.

In exercising such right of access, Owner or its assignee shall provide Tenant and its successors and assigns, as the case may be, with reasonable notice of its intent to enter upon the Henderson Leased Facility and perform the required Environmental Actions, which notice may be curtailed or eliminated in any case where Owner, or the Lead Agency determines that there may exist an imminent endangerment to human health or the environment. Owner or its assignee shall use reasonable efforts, without material cost to Owner, to avoid or otherwise minimize interference with Tenant's and Tenant's successors' and assigns' quiet enjoyment of the Henderson Leased Facility and the Henderson Business. At the completion of work associated with such Environmental Actions at the Henderson Leased Facility, the work site shall be restored by Owner or its agents or contractors in accordance with the Henderson Lead Agency-approved work plan. In connection with any such work performed by Owner or its agents or contractors at the Henderson Leased Facility, Owner or its agents or contractors shall have the right to obtain and use utility services, including water, gas, electricity, sewer, and communications services available on the Henderson Property (and serving the Henderson Leased Facility) with Tenant's actual costs therefor charged to Owner. Except for the actual costs for such utility services, no fee, charge, or compensation will be due to Tenant or its successors and assigns, for the exercise of the right of access to the Henderson Leased Facility retained and reserved by Owner.

As provided in Paragraph 84(h) of the Settlement Agreement, Owner shall provide Tenant at least 15 business

days, or such shorter period as is established by the Henderson Lead Agency, to comment on work plans (including other approvable deliverables that describe work to be performed at or relating to the Henderson Leased Facility) concerning proposed Environmental Actions at or relating to the Henderson Leased Facility, at the same time such proposed work plans (including such approvable deliverables as described above) are provided to the Henderson Lead Agency and Non-Lead Agency for their review or approval, as applicable. Owner shall consult with Tenant to keep Tenant reasonably apprised of any major developments with respect to such Environmental Actions. In accessing the Henderson Leased Facility under the reserved right of access, the Owner agrees to comply, to the extent implicated by the Environmental Actions to be performed, with Tenant's established facility security and workplace safety procedures and policies that are timely provided to Owner by Tenant.

Owner shall not assume any liability to the Tenant, or its successors and assigns, should the performance of any required Environmental Actions interfere with their use of the Henderson Leased Facility.

The Henderson Facility Lease shall reference Owner's obligations under Paragraph 81(e) of the Settlement Agreement with respect to insurance.

**Tenant's Environmental Obligations:** The Henderson Facility Lease shall provide that in conducting its operations at the Henderson Leased Facility on and after the Effective Date, Tenant, including each Henderson Covered Person, shall (i) comply with Due Care Obligations; and (ii) comply with all applicable Environmental Laws, provided, however, that nothing in this clause (ii) shall require any Henderson Covered Person to take any actions or assume any liability with respect to remediation (including investigation), removal or restoration of any Henderson Legacy Conditions, except with respect to the Exacerbation Obligations. Tenant, as lessee and operator of the Henderson Leased Facility, and its successors and assigns under the Henderson Facility Lease, shall be liable for conditions that are attributable to (i) any New Substances Conditions; (ii) any failure to comply with Due Care Obligations, subject to the Exacerbation Obligations, and (iii) any failure to comply with applicable Environmental Laws, in each instance by any Henderson

G-9

Covered Person on or after the Effective Date.

The Henderson Facility Lease shall contain customary provisions relating to indemnity by a tenant with respect to the operations of Tenant at the Henderson Leased Facility following the Effective Date.  For the avoidance of doubt, Tenant shall provide environmental indemnities as an operator of the Henderson Leased Facility on the Henderson Property after the Effective Date with respect to (i) any New Substances Conditions; (ii) any failure to comply with applicable Environmental Laws; and (iii) any failure to comply with Due Care Obligations, subject to the Exacerbation Obligations, in each instance by any Henderson Covered Person on or after the Effective Date.

**Alterations:**

During the Term of the Henderson Facility Lease, Tenant may make alterations without Owner's consent, provided that (a) Tenant shall give Owner prior written notice of (i) any structural alterations, and (ii) any non-structural alterations costing in excess of $50,000, (b) no alterations shall exacerbate any Henderson Legacy Conditions or interfere with Tenant's Due Care Obligations, and (c) in connection with (i) any structural alterations, and (ii) any non-structural alterations costing in excess of $50,000, Owner may require an indemnity by Tenant and/or other security (including, without limitation, a payment or performance bond) prior to the commencement of any such Major Alteration, provided that no such indemnity shall be required to the extent an obligation is secured by other security or a payment or performance bond reasonably satisfactory to Owner.  Tenant must submit plans, if available, in advance for any (A) structural alterations, and (B) any non-structural alterations costing in excess of $75,000 to Owner for its approval, such approval not to be unreasonably withheld, conditioned or delayed.  Owner's approval of an alteration shall be deemed given if Owner does not respond to Tenant's written request for approval within 30 days thereof.  Tenant must obtain all necessary permits and comply with all laws in connection with any alterations.  Owner shall not require Tenant to remove any alterations upon the expiration or earlier termination of the Henderson Facility Lease.

**Casualty:**

Upon partial or total destruction of the Henderson Leased Facility by fire or other casualty, Tenant may elect to terminate the Henderson Facility Lease within 60 days after such casualty.  If Tenant does not elect to terminate the

Henderson Facility Lease, Tenant shall, at a minimum, restore the damaged improvements to a safe and non-hazardous condition, cure all violations, and take all other steps necessary to meet Tenant's Due Care Obligations, and if Tenant elects to further restore or rebuild the damaged improvements it shall do so promptly. Tenant may use its own insurance proceeds for the foregoing, and the Henderson Facility Lease shall contain customary provisions for the disbursement of insurance proceeds used for restoration. Tenant will assign any insurance proceeds over to Owner with respect to the damaged improvements Tenant elects not to restore or rebuild. If Tenant elects to terminate the Henderson Facility Lease, any insurance proceeds (after restoration of the damaged improvements to a safe and non-hazardous condition) shall be assigned over to Owner with respect to the buildings or structures comprising the Henderson Leased Facility, and Tenant is entitled to any proceeds relating to any personalty, fixtures and equipment that is part of the Henderson Business.

Tenant and its contractors must provide at all times during the term of the Henderson Facility Lease the insurance coverage in types, limits and deductibles to be agreed to in the Henderson Facility Lease. Such insurance shall be obtained from carriers duly licensed and authorized to do business in the State of Nevada and having a minimum rating by the A.M. Best Key Rating Guide as agreed to in the Henderson Facility Lease. Owner shall be named as an additional insured on all policies other than Workers Compensation, Employer Liability and Property Insurance. Owner shall be named as a loss payee on all policies of Property Insurance. All insurance policies shall require a 30 day notice of cancellation to Owner. The Henderson Facility Lease shall also contain provisions regarding release of claims and waiver of subrogation.

Tenant must provide proof of adequate insurance on the Effective Date, and at least annually thereafter.

**Condemnation:** If all or substantially all of the Henderson Leased Facility is taken by any governmental entity by right of eminent domain or pursuant to a conveyance or other acquisition in lieu of such eminent domain, the Henderson Facility Lease shall terminate as of the effective date of such taking or acquisition. If less than all or substantially all of the Henderson Leased Facility is so taken or acquired, and Tenant's ability to operate, access or use the Henderson

Leased Facility is impaired (in Tenant's commercially reasonable opinion), Tenant may elect to terminate the Henderson Facility Lease as of the effective date of such taking or acquisition with respect to the portion affected by such taking or acquisition.  If such taking or acquisition is during the Initial Term, there shall be no adjustment of Rent (or refund of the one time payment thereof), but the condemnation award will be equitably apportioned between Owner and Tenant to reflect the value of the leasehold for the balance of the Initial Term (except to the extent the award is applied to restoration of the Henderson Leased Facility required by such taking or acquisition to substantially the same condition that the same were in prior to a partial taking, in which case such portion of the award shall be applied to such restoration).  If such taking or acquisition is during one of the Renewal Terms, all Rent shall be proportionally abated according to the extent that the Henderson Leased Facility has been rendered inoperable, inaccessible or unusable by Tenant as a result of such taking or acquisition, and the entire condemnation award will be paid to Owner (except to the extent such award is for restoration of the Henderson Leased Facility). If the Henderson Facility Lease is not terminated, Tenant will restore the Henderson Leased Facility to substantially the same condition that the same were in prior to such partial taking or acquisition.  Tenant shall have the right to recover any award for Tenant's property, fixtures moving expenses, business dislocation damages, personalty (including the equipment that is part of the Henderson Business) and any other award available to a tenant.  For the avoidance of doubt, Owner's remedial work does not constitute a taking.  The Henderson Facility Lease shall contain customary provisions for the disbursement of any condemnation award used for restoration.

**Termination Right:**    Tenant shall have the right to terminate the Henderson Facility Lease at any time during the Term by providing sixty (60) days prior notice to Owner, provided Tenant complies with all obligations under the Henderson Facility Lease relating to the surrender of the Henderson Leased Facility at the end of the term (including, without limitation, those specified in this Lease Term Sheet under the caption "Surrender").

**Consistency of**
**Agreements and**    To the extent reasonably possible, the provisions of the Henderson Facility Lease shall be interpreted in a manner consistent with the Settlement Agreement.  Where the

**Construction:**     provisions of the Henderson Facility Lease are irreconcilable with the provisions of the Settlement Agreement, the provisions of the Settlement Agreement shall prevail.  The Henderson Facility Lease shall include the following clause:  "In the event of any conflict between the Henderson Facility Lease and the Settlement Agreement, any obligation of the Owner to perform Environmental Actions is subject solely to the terms and funding limitations contained in the Settlement Agreement." The Henderson Facility Lease shall include an appendix containing those Paragraphs of the Settlement Agreement that specifically pertain to the obligations of Tronox, LLC, as Tenant, relating to the Henderson Leased Facility, including without limitation, such obligations as are set forth in Paragraphs or Subparagraphs 67(f); 67(g); 71; 75; 78; 79; 84(d); 84(e); and such defined terms from the Settlement Agreement as are used but not defined in any of the foregoing Paragraphs of the Settlement Agreement, and these provisions shall be incorporated herein and in the Henderson Facility Lease, as obligations of Tenant, its successors and assigns.

**Added Provisions:**     The Henderson Facility Lease will also contain the following provisions:

a. Nothing in these paragraphs (a), (b) or (c) shall preclude Tenant from enforcing any of its rights or remedies under the Henderson Facility Lease against Owner.  Tenant acknowledges and agrees that none of the Henderson Trust Parties (as defined in the Settlement Agreement) shall be personally liable unless the Court, by a final order that is not reversed on appeal, finds that it committed fraud or willful misconduct after the Effective Date in relation to the Henderson Trustee's duties.  There shall be an irrebuttable presumption that any action taken or not taken with the approval of the Court does not constitute an act of fraud or willful misconduct.  Except with respect to enforcement of the Henderson Facility Lease, the Henderson Trust Parties are exculpated by all persons, including without limitation, Tenant, of and from any and all claims, causes of action and other assertions of liability arising out of the ownership of Henderson Trust Assets and the discharge of the powers and duties conferred upon the Henderson Trust and/or Trustee by the Settlement Agreement or any order of court entered pursuant to or in furtherance of the Settlement Agreement, or applicable law or otherwise.  Owner shall be liable for any final judgment (not reversed on appeal, if appealed)

G-13

awarded in favor of Tenant against Owner under the Henderson Facility Lease, which judgment shall be satisfied out of the Henderson Trust Administrative Account. Neither the State of Nevada, the United States, any of Debtors nor the Guarantor shall be deemed to be an owner, operator, trustee, partner, agent, shareholder, officer, or director of the Henderson Trust or the Henderson Trust Parties, or to be an owner or operator of the Henderson Property on account of the Settlement Agreement or actions contemplated thereby. Nothing in this paragraph purports to preclude or otherwise affect the status of Tenant as an operator or lessee of the Henderson Leased Facility on account of the Henderson Facility Lease or any activities or operations conducted by Tenant at the Henderson Leased Facility on or after the Effective Date provided that Tenant shall not have any obligations with respect to Henderson Legacy Conditions except as provided in Paragraph 75 of the Settlement Agreement.

b. In consideration of the applicability of the covenant not to sue (and reservation of rights) to Tenant in accordance with Paragraphs 136 and 145 of the Settlement Agreement, Tenant covenants not to sue and agrees not to assert claims or causes of action against the United States, the State of Nevada, the Local Governments (as defined in the Settlement Agreement), with respect to the Henderson Property, including but not limited to any direct or indirect claim for reimbursement from the Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113, 42 U.S.C. §§ 9606(b), 9607, 9611, 9612, 9613, RCRA, or any other provision of law; any claims and causes of action against the United States, the State of Nevada, or the Local Governments, including any of their departments, agencies or instrumentalities pursuant to Section 107 or 113 of CERCLA, 42 U.S.C. §§ 9607, 9613, or other applicable state Environmental Laws; and any claims and causes of action arising out of the response activities at the Henderson Property. Notwithstanding the above, Tenant's covenant and agreement shall not apply in the event that the United States, State of Nevada, or Local Government brings a cause of action against Tenant but only to the extent that Tenant's claims and causes of action arise from the same response action, response costs, damages, or other relief that the United States, State of Nevada, or Local Government brings against Tenant.

c. In consideration of the applicability of the covenant not to sue (and reservation of rights) to Tenant in accordance with Paragraph 148 of the Settlement Agreement, Tenant covenants not to sue, and agrees not to assert claims or causes of action against the Henderson Trust Parties with respect to the Henderson Property, provided however, that nothing in this paragraph shall preclude the Tenant from enforcing any of its rights or remedies under the Henderson Facility Lease against the Owner. Owner and Tenant shall abide by all terms and conditions of the Henderson Facility Lease and shall perform all of their respective obligations under the Henderson Facility Lease.

**Guaranty:**

On the Effective Date, Guarantor shall execute and deliver to the Henderson Trust, an irrevocable and unconditional guaranty (the "Guaranty") of the observance and performance of Tenant's obligations under (i) the Henderson Facility Lease and (ii) the Settlement Agreement as its obligations pertain to the Henderson Leased Facility. The Guaranty shall be in form and substance reasonably satisfactory to Guarantor and Owner. In the event the Henderson Facility Lease is assigned to a person that is not an affiliate, then upon such assignment, subject to the "Assignment/Subletting" paragraphs above, (i) Tenant and any affiliated guarantors or co-obligors, and each of their successors and assigns (other than the assignee of the Henderson Facility Lease) shall be released from all liability and obligations arising on and after the effective date of such assignment under the Settlement Agreement as such liability and obligations pertain to the Henderson Leased Facility, the Henderson Facility Lease and the Guaranty, (ii) Tenant shall be released from all liability and obligations arising on and after the effective date of such assignment under the Henderson Facility Lease, (iii) Guarantor, and each of its successors and assigns shall be released from all liability and obligations arising on and after the effective date of such assignment under the Henderson Facility Lease and the Guaranty, and (iv) Tenant and Guarantor shall retain all liabilities and obligations arising prior to the effective date of such assignment under the Settlement Agreement as such liabilities and obligations pertain to the Henderson Leased Facility, the Henderson Facility Lease and the Guaranty and with respect to Tenant, under the Henderson Facility Lease and with respect to Guarantor, under the Guaranty.

**Exhibit A**
The Henderson Leased Facility

## Attachment H

Schedule of Costs

## I.    THIRD PARTY VENDORS

Pursuant to Subparagraphs 161(b)(iii) and 162(b) above, the Environmental Response Trustees shall reimburse Debtors for reasonably-incurred, actual out-of-pocket disbursements for support vendors utilized in gathering requested Environmental Information and Real Property Information stored at the Off-Site Facility in hard-copy form, including but not limited to document storage and delivery vendors, and document copy companies.  The Environmental Response Trustees may choose to contract with and pay the costs of such vendors directly.

## II.    HOURLY RATES

The Environmental Response Trustees shall reimburse Debtors for reasonably-incurred "in house" time and expenses to research, locate and provide the Environmental Response Trustees with requested Environmental Information and Real Property Information that are stored at the Off-Site Facility, including historical analyses and document review as needed, but not including any document review or legal analyses relating to privilege issues or compliance with laws or legal proceedings. Such costs shall be separately itemized on invoices to the Environmental Response Trustees and billed at the rates below.  Time expended on tasks shall be reported on invoices in increments of one-tenth of an hour. The Environmental Response Trustees shall reimburse Debtors for the actual, reasonable costs of photo-copying required for the provisions of copies (in-house copying). Reasonable photo-copying and fax costs shall not exceed $0.10 per page.

    A.  Attorney - $250.00 per hour.

    B.  Legal Assistant or Paralegal  - $90.00 per hour.

    C.  Secretary - $60.00 per hour.

## III.    DOCUMENT TRANSMITTAL

When transmitting hard copy files from the Off-Site Facility to the Environmental Response Trustees, Debtors shall utilize the most cost-effective means of transmittal commensurate with the nature of the item (i.e., the volume, etc.) and with the time-urgency of the delivery.  Messengers and overnight delivery services shall be avoided when less expensive but reliable alternatives (e.g., U.S. Mail, UPS, etc.) will provide timely delivery.  When feasible, e-mail transmission of electronic documents or scanned documents is preferable to mailing or faxing.

**IV.**    **<u>TIMELY MONTHLY INVOICES</u>**

Debtors shall send the Environmental Response Trustees invoices for fees and expenses incurred on a monthly basis.  Debtors are expected to provide invoices promptly, and no more than 25 days after the end of each month in which the invoiced fees and/or expenses were incurred.