**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| TRONOX INCORPORATED, et al.,[1] | ) | Case No. 09-10156 (ALG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND**
**ORDER CONFIRMING THE FIRST AMENDED JOINT PLAN**
**OF REORGANIZATION OF TRONOX INCORPORATED *ET AL.***
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, "**Tronox**") having:[2]

a. commenced, on January 12, 2009 (the "**Petition Date**"), these chapter 11 cases (collectively, the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**");

b. continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on July 7, 2010, the *Joint Plan of Reorganization of Tronox Incorporated* et al. *Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1706] and the *Disclosure Statement Regarding the Joint Plan of Reorganization of Tronox Incorporated* et al. *Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1707], which documents were subsequently amended and modified, as described herein;

d. filed, on July 8, 2010, *Tronox's Motion for Entry of an Order (I) Approving the Disclosure Statement; (II) Establishing a Record Date for Voting on the Plan of Reorganization; (III) Approving Solicitation Packages and Procedures for the Distribution Thereof; (IV) Approving the Forms of Ballots; (V) Establishing Procedures*

---

[1] The debtors in these cases include: Tronox Luxembourg S.ar.l; Tronox Incorporated; Cimarron Corporation; Southwestern Refining Company, Inc.; Transworld Drilling Company; Triangle Refineries, Inc.; Triple S, Inc.; Triple S Environmental Management Corporation; Triple S Minerals Resources Corporation; Triple S Refining Corporation; Tronox LLC; Tronox Finance Corp.; Tronox Holdings, Inc.; Tronox Pigments (Savannah) Inc.; and Tronox Worldwide LLC.

[2] Capitalized terms used but not otherwise defined in this order (the "**Confirmation Order**") shall have the meanings ascribed to such terms in the *First Amended Joint Plan of Reorganization of Tronox Incorporated* et al. *Pursuant to Chapter 11 of the Bankruptcy Code*, dated November 5, 2010 [Ex. B to Docket No. 2402] (the "**Plan**") and attached hereto as **Exhibit A**. The rules of interpretation set forth in Article I.B of the Plan shall apply to this Confirmation Order.

*for Voting on the Plan; and (VI) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [Docket No. 1710] (the "**Solicitation Procedures Motion**");

e.  filed, on August 27, 2010, *Tronox's Motion for an Order (A) Authorizing Tronox to Enter Into (I) a Plan Support Agreement and (II) an Equity Commitment Agreement, and to Pay Certain Fees in Connection Therewith, and (B) Approving Procedures for a Rights Offering* [Docket No. 1936];

f.  filed, on September 1, 2010, the *First Amended Joint Plan of Reorganization of Tronox Incorporated* et al. *Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1947], the related *Disclosure Statement Regarding the First Amended Joint Plan of Reorganization of Tronox Incorporated* et al. *Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1948] (the "**Disclosure Statement**"); and the proposed *Amended Order (I) Approving the Disclosure Statement; (II) Establishing a Record Date for Voting on the Plan of Reorganization; (III) Approving Solicitation Packages and Procedures for the Distribution Thereof; (IV) Approving the Forms of Ballots; (V) Establishing Procedures for Voting on the Plan; and (VI) Establishing Notice and Objection Procedures for Confirmation of the Plan* [Docket No. 1957], which documents were subsequently amended as set forth herein;

g.  filed, on September 21, 2010, a revised version of the Plan [Docket No. 2124] and a revised version of the Disclosure Statement [Docket No. 2125];

h.  filed, on September 22, 2010, a further revised version of the Plan [Docket No. 2148] and a further revised version of the Disclosure Statement [Docket No. 2149];

i.  filed, on September 24, 2010, a further revised version of the Plan [Docket No. 2158] and a further revised version of the Disclosure Statement [Docket No. 2159];

j.  filed, on September 27, 2010, Tronox's Motion for Entry of an Order Authorizing Tronox to (A) Enter into the Facility Syndication Engagement Letter and (B) Pay Fees and Costs to GS Lending Partners in Connection Therewith [Docket No. 2167];

k.  filed, on October 1, 2010, solicitation versions of the Plan [Ex. A. to Docket No. 2196] and the Disclosure Statement [Ex. B to Docket No. 2196];

l.  distributed rights offering and solicitation materials beginning on or about October 4, 2010, consistent with the Bankruptcy Code, the Bankruptcy Rules, the *Order Approving Tronox's Rights Offering Procedures* [Docket No. 2186] (the "**Rights Offering Order**") and the *Amended Order (I) Approving the Disclosure Statement; (II) Establishing a Record Date for Voting on the Plan of Reorganization; (III) Approving Solicitation Packages and Procedures for the Distribution Thereof; (IV) Approving the Forms of Ballots; (V) Establishing Procedures for Voting on the Plan; and (VI) Establishing Notice and Objection Procedures for Confirmation of the Plan* [Docket No. 2187] (the "**Solicitation Procedures Order**"), which Solicitation Procedures Order also approved, among other things, solicitation procedures (the "**Solicitation Procedures**") and related notices, forms and ballots (collectively, the "**Solicitation Packages**"), distribution of the rights offering and solicitation materials being evidenced by the *Affidavit of Service of*

2

*Alison M. Tearnen re: Solicitation Materials for Holders of Claims and Equity Interests* [Docket No. 2310] and the *Affidavit of Service of David M. Sharp re: Rights Offering Materials* [Docket No. 2269] (the "**KCC Affidavit**s");

m.  published, on October 7, 2010, notice of the Confirmation Hearing (the "**Confirmation Hearing Notice**") in *The Oklahoman* and the national edition of *The Wall Street Journal*, to provide notice to creditors who are unknown or not reasonably ascertainable by Tronox and creditors whose identities are known but whose addresses are unknown by Tronox, as evidenced by the *Affidavit of Publication of Notice of (A) Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and (B) Related Voting and Objection Deadlines* [Docket No. 2324] (the "**Publication Affidavit**");

n.  filed, on October 14, 2010, *Tronox's Motion for Interim and Final Orders (A) Authorizing (I) Replacement Postpetition Secured Financing, (II) Use of Cash Collateral and (III) Repayment of Existing Postpetition Financing; and (B) Scheduling a Final Hearing* [Docket No. 2252];

o.  filed, on October 15, 2010, *Tronox's Motion for Entry of an Order Authorizing Tronox to (A) Enter into an Exit Financing Commitment Letter and (B) Pay Fees and Expenses to Wells Fargo in Connection Therewith* [Docket No. 2257] (the "**Revolving Facility Commitment Motion**");

p.  filed, on October 29, 2010, portions of the Plan Supplement (as amended and supplemented from time to time, the "**Plan Supplement**") for the *First Amended Joint Plan of Reorganization of Tronox Incorporated* et al. *Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2343] (which included forms of the Tort Claims Trust Agreement, the Tort Claims Trust Distribution Procedures, the Registration Rights Agreement, the Amended and Restated Certificate of Incorporation and Bylaws of Reorganized Tronox Incorporated, the Assumed Executory Contract and Lease List, and the Exit Credit Agreement), and filed the amendments and supplements thereto on November 9, 2010 [Docket No. 2441] (which included the Environmental Claims Settlement Agreement), November 12, 2010 [Docket No. 2480] (which included the form of the Management 2010 Bonus Plan), November 16, 2010 [Docket No. 2520] (which included the Members of the New Board) and November 26, 2010 [Docket No. 2559] (which included the forms of the New Management Agreements and the Management Equity Plan);

q.  filed, on November 5, 2010, *Tronox's Motion for Entry of an Order Approving Immaterial Modifications to Tronox's First Amended Joint Plan of Reorganization* [Docket No. 2402] (the "**Plan Modification Motion**");

r.  filed, on November 13, 2010, the proposed *Findings of Fact, Conclusions of Law and Order Confirming the First Amended Joint Plan of Reorganization of Tronox Incorporated et al. Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 2481];

s.  filed, on November 13, 2010, *Tronox's Memorandum of Law (A) in Support of Confirmation of the First Amended Joint Plan of Reorganization of Tronox Incorporated*

et al. *Pursuant to Chapter 11 of the Bankruptcy Code and (B) in Response to Objections Thereto* [Docket No. 2482] (the "**Plan Confirmation Brief**");

t.   filed, on November 15, 2010, the *Amended Certification of Alison M. Tearnen with Respect to the Tabulation of Votes on the First Amended Joint Plan of Reorganization of Tronox Incorporated et al. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2492] (the "**Voting Certification**"), detailing the results of the Plan voting process;

u.   filed, on November 15, 2010, the Declaration of Dennis L. Wanlass in Support of Confirmation of the First Amended Joint Plan of Reorganization of Tronox Incorporated et al. Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 2500]; the Declaration of Todd R. Snyder in Support of Confirmation of the First Amended Joint Plan of Reorganization of Tronox Incorporated et al. Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 2501]; Declaration of Gary Barton in Support of Confirmation of First Amended Joint Plan of Reorganization of Tronox Incorporated, et al. Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 2502] (the "**Declarations in Support of Confirmation**");

This Court having:

a.   entered, on September 17, 2010, the *Order Authorizing Tronox to Enter Into (A) a Plan Support Agreement and (B) an Equity Commitment Agreement, and to Pay Certain Fees in Connection Therewith* [Docket No. 2072];

b.   entered on September 30, 2010, the Rights Offering Order [Docket No. 2186];

c.   entered, on September 30, 2010, the Solicitation Procedures Order [Docket No. 2187], which, among other things, set November 17, 2010, at 11:00 a.m. (ET), as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128 and 1129 of the Bankruptcy Code;

d.   entered, on September 30, 2010, the Order Authorizing Tronox to (A) Enter into the Facility Syndication Engagement Letter and (B) Pay Fees and Costs to GS Lending Partners in Connection Therewith [Docket No. 2183];

e.   entered, on October 20, 2010, the *Interim Order (I) Authorizing Debtors (A) to Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (C) to Use Postpetition Financing to Repay Existing Debtor-in-Possession Financing, and (II) Scheduling Final Hearing Under Bankruptcy Rule 4001(B) and (C)* [Docket No. 2281];

f.   entered, on October 27, 2010, the *Order Authorizing Tronox to (A) Enter Into an Exit Financing Commitment Letter and (B) Pay Fees and Expenses to Wells Fargo in Connection Therewith* [Docket No. 2318];

g.   entered, on November 9, 2010, the Final Order Authorizing Debtors (A) to Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1),

4

364(c)(2), 364(c)(3), 364(d)(1) and 364(e), (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (C) to Use Postpetition Financing to Repay Existing Debtor-in-Possession Financing [Docket No. 2421];

h.  entered, on November 17, 2010, an order approving the Plan Modification Motion [Docket No. 2533];

i.  reviewed the Plan, the Disclosure Statement, the filed portions of the Plan Supplement, the Plan Confirmation Brief, the Declarations in Support of Confirmation, the Voting Certification and all pleadings, exhibits, statements, responses and comments regarding Confirmation, including all objections, statements and reservations of rights made with respect thereto;

j.  heard the statements, arguments and objections made by counsel in respect of Confirmation;

k.  considered all oral representations, testimony, documents, filings and other evidence regarding Confirmation;

l.  overruled, including for the reasons stated on the record of the Confirmation Hearing, any and all objections to the Plan and Confirmation thereof and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

m.  taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing, the Plan and all modifications thereto has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby and that any party in interest so affected has had the opportunity to object to Confirmation; and, after due deliberation and based upon the record described above, it appearing to the Court that the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing, as well as the representations made by Tronox on the record of the Confirmation Hearing, establish just cause for the relief granted herein; the Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Order:[3]

---

[3] The findings of fact and the conclusions of law set forth herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law set forth in the Bench Decision are hereby

5

# I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED

THAT:

## A.    Jurisdiction and Venue

1.      Venue in this Court was proper as of the Petition Date pursuant to 28 U.S.C. §§

1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  The

Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  The Court

has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions

of the Bankruptcy Code and should be confirmed.

## B.    Eligibility for Relief

2.      The Tronox Debtors were and are entities eligible for relief under section 109 of

the Bankruptcy Code.

## C.    Commencement and Joint Administration of the Chapter 11 Cases

3.      On the Petition Date, Tronox commenced the Chapter 11 Cases by filing

voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.  By prior

order of the Court, the Chapter 11 Cases were consolidated for procedural purposes only and are

being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 39].  Tronox has

operated its businesses and managed its properties as debtors in possession since the Petition

Date pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has

been appointed in the Chapter 11 Cases.

## D.    Judicial Notice

4.      The Court takes judicial notice of (and deems admitted into evidence for

---

incorporated herein.  To the extent that any of the following findings of fact constitute conclusions of law, they
are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are
adopted as such.

K&E 17922457.18

Confirmation) the docket of the Chapter 11 Cases and all related adversary proceedings and appeals maintained by the clerk of the applicable court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts and all evidence and arguments made, proffered or adduced at the hearings held before the applicable court during the pendency of the Chapter 11 Cases.  Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference.  All unresolved objections, statements and reservations of rights to the extent not sustained as set forth in the Bench Decision are hereby overruled on the merits.

**E.      Claims Bar Date**

5.      On May 28, 2009, the Bankruptcy Court entered the *Order (A) Setting Bar Dates for Filing Proofs of Claim, (B) Approving the Form and Manner for Filing Proofs of Claim and (C) Approving Notice Thereof* [Docket No. 466] (the "**Bar Date Order**").  The Bar Date Order established, as applicable, (a) 5:00 p.m. (PT) on August 12, 2009 or (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for filing such Claims as the deadline for filing Proofs of Claim.

**F.      Solicitation Procedures Order and Rights Offering Order**

6.      On September 30, 2010, the Bankruptcy Court entered the Solicitation Procedures Order, which, among other things:  (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code; (b) fixed September 22, 2010 as the Record Date; (c)  fixed November 5, 2010 at 4:00 p.m. (ET), as the Plan Objection Deadline; (d) fixed November 5, 2010 at 5:00 p.m. (PT), as the Voting Deadline; (e) fixed November 17, 2010 at 11:00 a.m. (ET), as the date and time for the commencement of the Confirmation Hearing; and (f) approved the Solicitation Procedures, the Solicitation Packages and other materials relating to solicitation that were attached as exhibits to the Solicitation

7

Procedures Order, including the Confirmation Hearing Notice, the Tort Notice, the Notice of Non-Voting Status, the Notice to Disputed Claims and the Notice to Contract and Lease Counterparties.

7.    On September 30, 2010, the Bankruptcy Court entered the Rights Offering Order, which, among other things, approved the procedures associated with the Rights Offering (the "**Rights Offering Procedures**"), the Rights Exercise Form and the Q&A with respect to the Rights Offering.

**G.    Transmittal and Mailing of Materials; Notice**

8.    As evidenced by the KCC Affidavits, due, adequate and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan and with respect to Confirmation, has been given to: (a) all known holders of Claims and Equity Interests; (b) all parties that requested notice in accordance with Bankruptcy Rule 2002; and (c) all counterparties to Executory Contracts and Unexpired Leases with Tronox, in substantial compliance with the Solicitation Procedures Order, Bankruptcy Rules 2002(b), 3017 and 3020(b), and the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") and no other or further notice is or shall be required. Adequate and sufficient notice of the Confirmation Hearing, and any applicable dates, deadlines and hearings described in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules, the Local Rules and the Solicitation Procedures Order as evidenced by the KCC Affidavits, and no other or further notice is or shall be required.

9.    Tronox published the Confirmation Hearing Notice once each in *The Oklahoman* and the national edition of *The Wall Street Journal*, in compliance with the Disclosure Statement, the Solicitation Procedures Order and Bankruptcy Rule 2002(l), as evidenced by the Publication Affidavit, and no other or further notice is or shall be required.

8

**H.    Solicitation**

10.    Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules and any other applicable rules, laws and regulations.

11.    Specifically, the Solicitation Packages approved by the Court in the Solicitation Procedures Order (including the Disclosure Statement, the Plan, the form of ballots and related notices approved thereby) were transmitted to and served on all holders of Claims or Equity Interests in Classes that were entitled to vote to accept or reject the Plan, and relevant portions of the Solicitation Packages and other notices approved by the Solicitation Procedures Order were transmitted to and served on other parties in interest in the Chapter 11 Cases, all in compliance with section 1125 of the Bankruptcy Code, the Solicitation Procedures Order, the Solicitation Procedures, the Bankruptcy Rules and the Local Rules.   Transmittal and service of such documents was adequate and sufficient, and no further notice is or shall be required.

12.    The Rights Offering Procedures, Rights Exercise Form and Q&A approved by the Court in the Rights Offering Order were transmitted to and served on all holders of Claims that were entitled to participate in the Rights Offering.   Transmittal and service of such documents was adequate and sufficient, and no further notice is or shall be required.

**I.    Voting Certification**

13.    Tronox filed the Voting Certification before the commencement of the Confirmation Hearing, consistent with the Solicitation Procedures Order.  All procedures used to tabulate ballots received in connection with Confirmation were fair and conducted in accordance with the Solicitation Procedures Order, as evidenced by the KCC Affidavits.

9

14.    As set forth in the Plan and Disclosure Statement, holders of Claims and Equity Interests in Classes 3, 4, 5, 6, 7 and 8 (collectively, the "**Voting Classes**") were eligible to vote on the Plan pursuant to the Plan and the Solicitation Procedures.  In addition, holders of Claims in Classes 1 and 2 (collectively, the "**Deemed Accepting Classes**") are deemed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

15.    As evidenced by the Voting Certifications, holders of Equity Interests in Class 8 (the "**Rejecting Class**") voted to reject the Plan.  As further evidenced by the Voting Certifications, all other Voting Classes, specifically holders of Claims in Classes 3, 4, 5, 6 and 7, voted to accept the Plan (collectively, the "**Impaired Accepting Classes**").

16.    Based on the foregoing, and as evidenced by the Voting Certification, at least one Impaired Class of Claims (excluding the acceptance by any insiders of Tronox) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

## J.    Plan Supplement

17.    On October 29, 2010, as supplemented on November 9, 2010, November 12, 2010, November 16, 2010, November 26, 2010 and the record of the Confirmation Hearing, Tronox filed portions of the Plan Supplement with the Bankruptcy Court and served notice of such filing on the Core Group and the 2002 List (each as defined in Dkt. No. 47, the case management order in the Chapter 11 Cases) and those other parties affected by documents contained therein.  The documents contained in the filed portions of the Plan Supplement are integral to, part of and incorporated by reference into the Plan.  The filed portions of the Plan Supplement comply with the terms of the Plan, and the filing and notice of such documents constitutes good and proper notice in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Solicitation Procedures Order, and no other or further notice is or

shall be required.  Pursuant to the Plan, Tronox reserves its right to modify and/or supplement the Plan Supplement prior to the Effective Date in a manner consistent with and contemplated by the Plan.

## K.    Modifications to the Plan

18.     On November 5, 2010, Tronox filed the Plan Modification Motion.  The filing of the Plan Modification Motion and the description therein and at the Confirmation Hearing of certain modifications to the Plan constitutes due and sufficient notice thereof.  In addition, subsequent to the Voting Deadline (as defined in the Solicitation Procedures Order), Tronox made certain modifications to the Plan.  Any and all modifications to the Plan since the entry of the Solicitation Procedures Order, including as described in the Plan Modification Motion or otherwise set forth in this Confirmation Order, are consistent with all of the provisions of the Bankruptcy Code, including sections 1122, 1123, 1125 and 1127 thereof.  None of the modifications made since the entry of the Solicitation Procedures Order effects a materially adverse change in the treatment of any holder of a Claim or Equity Interest under the Plan. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  The Plan as modified and attached hereto as **Exhibit A** shall constitute the Plan submitted for Confirmation.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims or Equity Interests who voted to accept the Plan are hereby deemed to have accepted the Plan as modified, and no holder of a Claim or Equity Interest shall be permitted to change its vote on account of any such modifications to the Plan.

11

**L.       Bankruptcy Rule 3016**

19.      The Plan is dated and identifies the Entities submitting it, thereby satisfying

Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the clerk of the Court

satisfied Bankruptcy Rule 3016(b).

**M.      Burden of Proof**

20.      Tronox, as proponent of the Plan, has met its burden of proving the elements of

sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which

is the applicable evidentiary standard for Confirmation.

**N.       Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

21.      The Plan complies with all applicable provisions of section 1129 of the

Bankruptcy Code as follows:

**i.        Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of
the Bankruptcy Code**

22.      The Plan complies with all applicable provisions of the Bankruptcy Code as

required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123

thereof.

**a.        <u>Sections 1122 and 1123(a)(1)—Proper Classification</u>**

23.      The classification of Claims and Equity Interests under the Plan is proper under

the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code,

Article III of the Plan provides for the separate classification of Claims and Equity Interests into

8 Classes, based on differences in the legal nature or priority of such Claims and Equity Interests

(other than Administrative Claims, Priority Tax Claims, Replacement DIP Facility Claims and

statutory fees owed to the U.S. Trustee ("**Statutory Fees**"), which are addressed in Article II of

the Plan and which are not required to be designated as separate Classes pursuant to section

12

1123(a)(1) of the Bankruptcy Code).   Valid business, factual and legal reasons exist for the separate classification of the various Classes of Claims and Equity Interests created under the Plan, the classifications were not done for any improper purpose and the creation of such Classes does not unfairly discriminate between or among holders of Claims or Equity Interests.

24.     As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.   Accordingly, the requirements of sections 1122(a), 1122(b) and 1123(a)(1) of the Bankruptcy Code are satisfied.

### b.      Section 1123(a)(2)—Specification of Unimpaired Classes

25.     Article III of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired under the Plan.   Additionally, Article II of the Plan specifies that Administrative Claims, Priority Tax Claims, Replacement DIP Facility Claims and Statutory Fees are Unimpaired, although these Claims are not classified under the Plan.   Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code are satisfied.

### c.      Section 1123(a)(3)—Specification of Treatment of Impaired Classes

26.     Article III of the Plan specifies the treatment of each Impaired Class under the Plan, including Classes 3, 4, 5, 6, 7 and 8.   Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code are satisfied.

### d.      Section 1123(a)(4)—No Discrimination

27.     Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan uniformly provides for the same treatment of each Claim or Equity Interest in a particular Class, as the case may be, unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest.   Accordingly, the requirements of section 1123(a)(4) of the Bankruptcy Code are satisfied.

13

e.      **Section 1123(a)(5)—Adequate Means for Plan Implementation**

28.      Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article IV and various

other provisions of the Plan, and various documents and agreements set forth in the filed portions

of the Plan Supplement, provide adequate and proper means for the Plan's implementation,

including:   (a) the deemed substantive consolidation of the Tronox Debtors;  (b) the general

settlement of Claims and Equity Interests under the Plan; (c) the settlement of Environmental

Claims and Tort Claims, including the Environmental Claims Settlement Agreement, the

creation and funding of the Environmental Response Trusts, the lease relating to the Henderson

Facility, the creation and funding of the Tort Claims Trust and the creation and funding of the

Anadarko Litigation Trust; (d) the Exit Financing (which includes, for the avoidance of doubt,

the Revolving Facility[4]) and the conversion of Replacement DIP Facility Claims into a portion of

the Exit Financing and the incurrence of new indebtedness as part of the Exit Financing; (e) the

Rights Offering; (f) the issuance and distribution of the New Common Stock, the New Warrants

and the other securities issued under the Plan, and the application of section 1145 of the

Bankruptcy Code; (g) entry into the Registration Rights Agreement and the New Warrant

Agreement; (h) the cancellation of existing agreements, Unsecured Notes and Equity Interests;

(i) the proposed restructuring transactions under the Plan; (j) the continued corporate existence of

the Tronox Debtors; (k) the vesting of the Retained Assets in Reorganized Tronox; (l) certain

amendments to the Tronox Debtors' organizational documents, including adoption and filing of

---

[4]      Consistent with the terms and conditions set forth in the commitment letter attached to the Revolving Facility
Commitment Motion (the "**Revolving Commitment Letter**"), the Revolving Facility shall mean the $125
million asset -based revolving credit facility (the "**Revolving Facility**") to be entered into on the Effective Date
pursuant to the terms of the Credit Agreement (the "**Revolving Credit Agreement**"), as the same may be
amended, restated, supplemented or otherwise modified from time to time, by and among Reorganized Tronox,
the other U.S. Borrowers and Guarantors party thereto, Wells Fargo Capital Finance, LLC, as Agent (the
"**Revolving Agent**"), and the lenders signatory thereto (the "**Revolving Lenders**"), together with all other
agreements and documents related to the Revolving Facility, in each case, as the same may be amended,
restated, supplemented or otherwise modified form time to time (together with the Revolving Credit Agreement,
collectively, the "**Revolving Credit Documents**").

K&E 17922457.18

the Amended and Restated Certificate of Incorporation of Reorganized Tronox Incorporated and the adoption of the Amended and Restated Bylaws of Reorganized Tronox Incorporated; (m) the appointment of the New Board; (n) adoption and implementation of the Management Equity Plan, the Management 2010 Bonus Plan and the New Management Agreements; (o) the application of section 1146 of the Bankruptcy Code; (p) the preservation of certain specified Causes of Action; (q) the treatment of employee and retiree benefits, including assumption of the Pension Plan; (r) and the assumption of indemnification provisions and the D&O Liability Insurance Policies.

29.    As of the Effective Date, Environmental Properties Management, LLC; Le Petomane XXVII, Inc.; Greenfield Environmental Multistate Trust, LLC; Greenfield Environmental Savannah Trust, LLC; and Weston Solutions, Inc., shall be appointed as environmental response trustees for the Cimarron Environmental Response Trust, Henderson Environmental Response Trust, Multistate Environmental Response Trust, Savannah Environmental Response Trust, and West Chicago Environmental Response Trust, respectively, provided that the Environmental Claims Settlement Agreement shall first have been approved by the Court under applicable environmental laws after the completion of public comment.

30.    Moreover, Reorganized Tronox will have, immediately upon the Effective Date, sufficient Cash to make all payments required to be made on the Effective Date pursuant to the terms of the Plan.  Accordingly, the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

### f.    Section 1123(a)(6)—Voting Power of Equity Securities

31.    The Amended and Restated Certificate of Incorporation of Reorganized Tronox Incorporated contained in the Plan Supplement prohibits the issuance of non-voting securities. The Plan, therefore, satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

K&E 17922457.18

### g.       Section 1123(a)(7)—Selection of Officers and Directors

32.    The identity and affiliations of the members of the New Board have been disclosed prior to and on the record of the Confirmation Hearing.  The New Board shall consist of seven (7) directors, including (a) the Chief Executive Officer of Reorganized Tronox Incorporated and (b) six other directors who each shall be an "independent director" within the meaning of the rules of the New York Stock Exchange.  The members of the New Board were selected by the Backstop Parties in consultation with Tronox and the Creditors' Committee, and subject to background checks reasonably satisfactory to Tronox and the Creditors' Committee, with the Creditors' Committee having unconditional veto rights with respect to the selection of two of the directors.  The existing officers of Tronox shall remain in their current capacities as officers of Reorganized Tronox on the Effective Date pursuant to the terms of the New Management Agreements.  The selection of the initial directors and officers of Reorganized Tronox was, is and will be consistent with the interests of holders of Claims and Equity Interests and public policy.  Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code are satisfied.

### h.       Section 1123(b)—Discretionary Contents of the Plan

33.    The Plan contains various provisions that may be construed as discretionary and are not required for Confirmation under the Bankruptcy Code.  As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, section 1123(b) of the Bankruptcy Code is satisfied.

### (i)       Section 1123(b)(1)-(2)—Claims and Executory Contracts

34.    Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims

16

and Equity Interests, and Article V of the Plan provides for the assumption, assumption and assignment or rejection of the Executory Contracts and Unexpired Leases of Tronox not previously assumed, assumed and assigned or rejected pursuant to section 365 of the Bankruptcy Code and appropriate authorizing orders of the Court.

### (ii) *Section 1123(b)(3)—Settlement, Releases, Exculpation, Injunction and Preservation of Claims and Causes of Action*

35. **Compromise and Settlement.** The Plan settles numerous litigable issues in the Chapter 11 Cases pursuant to Bankruptcy Rule 9019 and sections 363 and 1123 of the Bankruptcy Code. These settlements are in consideration for the distributions and other benefits provided under the Plan and any other compromise and settlement provisions of the Plan and the Plan itself constitute a compromise of all Claims, Equity Interests or Causes of Action relating to the contractual, legal and subordination rights that a holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest or any distribution to be made on account of such an Allowed Claim or Equity Interest. The compromise and settlement of such Claims and Equity Interests embodied in the Plan is in the best interests of Tronox, its Estates and all holders of Claims and Equity Interests, and is fair, equitable and reasonable.

36. **Global Creditor Settlement.** The Plan is premised on a global settlement (the "**Global Creditor Settlement**") among Tronox, the Creditors' Committee, the Ad Hoc Noteholders' Committee, the Backstop Parties, the United States, the Governmental Environmental Entities, the Nevada Parties and the holders of Tort Claims (collectively, the "**Settling Parties**"), which has enabled the implementation of Tronox's restructuring goals and includes the Environmental Claims Settlement Agreement, the creation and funding of the Environmental Response Trusts, the lease relating to the Henderson Facility, the creation and

17

funding of the Tort Claims Trust, the creation and funding of the Anadarko Litigation Trust and the Rights Offering.

37.    The Global Creditor Settlement is the cornerstone of the Plan.  It (a) is a product of Tronox's reasonable business judgment, (b) is fair and equitable, (c) is a necessary component to the feasibility of the Plan, (d) falls well above the lowest point in the range of reasonableness, (e) is in the best interests of Tronox, its Estates and all holders of Claims and Equity Interests, (f) does not violate the absolute priority rule, (g) was negotiated at arm's length and in good faith with the assistance of experienced counsel and financial advisors and (h) is an essential element of the Plan.

38.    In reaching an ultimate decision on the substantive fairness of the Global Creditor Settlement, the Court considered the following factors:  (a) the balance between the possibility of success of litigation and the Global Settlement's future benefits, including avoiding expensive and lengthy estimation or other proceedings with respect to the amount and priority of Environmental Claims and Tort Claims; (b) the likelihood of complex and protracted litigation, including with respect to the amount and priority of the Environmental Claims and Tort Claims, and risk and difficulty of collecting on the judgment; (c) the proportion of creditors and parties in interest that support the Global Settlement; (d) the competency of counsel reviewing the Global Settlement; (e) the nature and breadth of releases to be obtained by officers and directors; and (f) the extent to which the Global Settlement is the product of arm's length bargaining.

39.    **Equity Committee Settlement.**    As described more fully in the Plan Modification Motion and the Plan Confirmation Brief, for settlement purposes only, the Plan provides holders of Class 8 Equity Interests in Tronox Incorporated their pro rata share of the New Warrants (the "**Equity Committee Settlement**," and together with the Global Creditor

18

Settlement, the "**Global Settlement**").  The Equity Committee Settlement was proposed in good faith, is the product of Tronox's reasonable business judgment and is in the best interests of Tronox, its Estates and all holders of Claims and Equity Interests.  It provides certainty regarding valuation issues and ensures that Tronox can proceed toward confirmation of the Plan and emergence from chapter 11 in an expeditious manner, free from the distraction of substantial litigation with the Equity Committee.  The Equity Committee Settlement was negotiated at arm's length and in good faith with the assistance of experienced counsel and financial advisors.

40.     As a result of the foregoing, the Global Settlement is fair, reasonable and meets the standard for approval of settlements pursuant to section 1123(b)(3) of the Bankruptcy Code, Bankruptcy Rule 9019 and applicable United States Supreme Court and Second Circuit law.  *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968); *In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007).

41.     Pursuant to Bankruptcy Rule 9019, Tronox is authorized, without further approval of this Court, to execute and deliver all agreements, documents, instruments, and certificates relating to the Global Settlement and consistent with the terms of the Plan and the Global Settlement and to perform its obligations thereunder.

42.     **Releases by Tronox.**  The releases and discharges of Claims and Causes of Action by Tronox described in Article VIII.C of the Plan (the "**Tronox Release**") pursuant to section 1123(b)(3)(A) of the Bankruptcy Code represents a valid exercise of Tronox's business judgment.  Pursuing any such claims against the Released Parties is not in the best interests of Tronox's various constituencies as the costs involved likely would outweigh any potential benefits from pursuing such claims.

K&E 17922457.18

43.    **Third Party Releases.**    For the reasons reflected on the record of the Confirmation Hearing, the releases of Claims and causes of action by holders of Claims and Equity Interests described in Article VII.D of the Plan (the "**Third Party Release**s") are appropriate and warranted under the unique circumstances of the Chapter 11 Cases.

44.    The Plan and the Global Settlement reflect the settlement and resolution of complex issues, and the releases are an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan and the Global Settlement. The release provisions in the Plan are a critical component of the Global Settlement, which maximizes recoveries to Tronox's stakeholders and affords Tronox the opportunity to restructure its businesses to compete effectively post-emergence.

45.    In approving the Third Party Releases, the Bankruptcy Court determined the Third Party Releases are (a) in exchange for the good, valuable and significant consideration provided by the Released Parties, (b) a good faith settlement and compromise of the claims released by holders of Claims and Equity Interests; (c) in the best interests of Tronox and all holders of Claims and Equity Interests; (d) fair, equitable and reasonable; (e) necessary to the Plan because the enjoined claims would directly impact Tronox's reorganization as many of the Released Parties are beneficiaries of indemnity obligations; (f) given and made after notice and opportunity for hearing; (g) a product of the Global Settlement, which was negotiated at arm's length and in good faith with multiple creditor constituencies and which was accepted overwhelmingly by all Voting Classes; and (h) a bar to any holders of Claims and Equity Interests asserting any Claim released by the Third Party Release against any of the Released Parties to the fullest extent permitted by applicable law.

20

46.    **Exculpation.**  The exculpation provisions set forth in Article VIII.F of the Plan

are essential to the Plan.  The record in the Chapter 11 Cases fully supports the exculpation, and

the exculpation provisions set forth in Article VIII.F of the Plan, as modified herein, are

appropriately tailored to protect the Exculpated Parties from inappropriate litigation related to

acts or omissions up to and including the Effective Date and are hereby approved; <u>provided that</u>

nothing in the Plan shall (a) exculpate any Person or Entity from any liability resulting from any

act or omission constituting fraud, willful misconduct, gross negligence, criminal conduct,

malpractice, misuse of confidential information that causes damages or ultra vires acts as

determined by a Final Order or (b) limit the liability of the professionals of the Exculpated

Parties to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule

1.8(h)(1) (2009).

47.    Notwithstanding anything to the contrary herein, the release provisions in the Plan

do not release any post-Effective Date obligations of any party under the Plan or any document,

instrument or agreement (including those set forth in the Plan Supplement) executed to

implement the Plan.  No Person shall be discharged, released or relieved from any liability with

respect to the Pension Plan as a result of the Chapter 11 Cases or the Plan, nor shall the PBGC,

the Pension Plan or any other Person be enjoined or precluded from enforcing any liability with

respect to the Pension Plan as a result of the Chapter 11 Cases, the Plan's provisions or the

Plan's Confirmation.  Notwithstanding anything to the contrary herein, the release provisions in

the Plan do not release the personal liability of any of the aforementioned Released Parties for

any statutory violation of applicable tax laws or bar any right of action asserted by a

governmental taxing authority against the aforementioned Released Parties for any statutory

violation of applicable tax laws.

48.    **Injunction.**  The injunction provisions set forth in Article VIII.E of the Plan (the "**Plan Injunction**") are essential to the Plan and are necessary to preserve and enforce the Tronox Releases, the Third Party Releases and the Plan, and are narrowly tailored to achieve that purpose.

49.    Each of the Tronox Release, the Third Party Releases, the exculpation provision and the Plan Injunction are:  (a) to the fullest extent permitted by applicable law, within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (b) an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) an integral element of the transactions incorporated into the Plan; (d) in the best interests of Tronox, its Estates and all stakeholders in the Chapter 11 Cases; (e) important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to Tronox; and (f) consistent with sections 105, 1123 and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code and other applicable law.  The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Tronox Release, the Third Party Releases, the exculpation provisions and the injunction contained in Article VIII of the Plan.

50.    **No Release of Certain Claims or Liabilities.**  Notwithstanding anything to the contrary herein or in the Plan, except insofar as any release or discharge is expressly provided in the Environmental Claims Settlement Agreement, the Plan does not release or discharge (a) any criminal liability, (b) any liability to any Governmental Unit that is not a claim within the meaning of section 101(5) of the Bankruptcy Code, (c) any claim of any Governmental Unit or the Nevada Parties that arises after the Effective Date, (d) any liability of a non-debtor to any Governmental Unit or the Nevada Parties, or (e) subject to the provisions of the Environmental

Claims Settlement Agreement, any liabilities to which Reorganized Tronox may be subject under applicable laws to a Governmental Unit or the Nevada Parties as the owner or operator of the Retained Assets after the Effective Date.

51.     Notwithstanding anything to the contrary herein or in the Plan: (a) the rights of the Internal Revenue Service to setoff and recoupment shall be preserved; and (b) nothing in Article VIII.D of the Plan shall constitute a release of the Internal Revenue Service's claims, if any, against the Released Parties and nothing shall affect the ability of the Internal Revenue Service to pursue, to the extent allowed by non-bankruptcy law, any non-debtors for any liabilities that may be related to any federal tax liabilities owed by Tronox or Reorganized Tronox.

52.     Notwithstanding anything to the contrary herein or in the Plan, nothing herein or in the Plan shall discharge, release or preclude (a) any liability to the Securities and Exchange Commission that is not a Claim and (b) any liability to the SEC on the part of any Person or Entity that is not a Tronox Debtor or a Reorganized Tronox Debtor.

53.     Nothing herein, in the Plan, the Plan Supplement or any document related thereto shall in any way release any claim against or liability of the following parties (or their Affiliates), who are not Released Parties: Lehman Brothers Holdings Inc., Ernst & Young LLP, Kerr-McGee Corporation and Anadarko Petroleum Corporation and their respective officers, directors, partners, managers, employees, advisors, attorneys, professionals, accountants, investment bankers, consultants, agents and other representatives (including their respective officers, directors, partners, managers, employees, members and professionals) in their capacity as such, whether such claims or liabilities be direct or indirect, fixed or contingent, including the claims asserted in the Anadarko Litigation.  For the avoidance of doubt, nothing herein, in the Plan, the

23

Plan Supplement or any document or agreement shall in any way release any individuals who were former directors or officers of the Tronox Debtors or their subsidiaries and also were or currently are directors or officers of Kerr-McGee Corporation and/or Anadarko Petroleum Corporation.

54.    **Preservation of Claims and Causes of Action**.   Article IV.O of the Plan appropriately provides for the preservation and retention by Reorganized Tronox of all Causes of Action (excluding the Anadarko Litigation) in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.   The provisions regarding the retained Causes of Action in the Plan are appropriate and are in the best interests of Tronox, its Estates and all holders of Claims and Equity Interests.

### i.    Section 1123(d)—Cure of Defaults

55.    Article V.C of the Plan provides for the satisfaction of any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan in accordance with section 365 of the Bankruptcy Code by payment of any "cure amount" pursuant to the terms thereof.   Tronox, in accordance with the Plan, distributed notices of proposed assumption and proposed cure amounts to the applicable counterparties, which notices included procedures for objecting to and resolving proposed assumptions of Executory Contracts and Unexpired Leases and any cure amounts paid in connection therewith.   Accordingly, the requirements of section 1123(d) of the Bankruptcy Code are satisfied.

### ii.    Section 1129(a)(2)—Compliance of Tronox with the Applicable Provisions of the Bankruptcy Code

56.    Tronox, as proponent of the Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including

K&E 17922457.18

sections 1122, 1123, 1124, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

57.    Votes to accept or reject the Plan were solicited by Tronox and its present and former members, partners, representatives, officers, directors, employees, advisors, attorneys and agents after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code.

58.    Tronox and its respective present and former members, partners, representatives, officers, directors, employees, advisors, attorneys and agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in a manner consistent with the applicable provisions of the Disclosure Statement, the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

59.    Tronox and its respective present and former members, officers, directors, employees, advisors, attorneys and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.    Accordingly, the requirements of section 1129(a)(2) of the Bankruptcy Code are satisfied.

K&E 17922457.18

### iii.        Section 1129(a)(3)—Proposal of Plan in Good Faith

60.     Tronox has proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself and the process leading to its formulation, including the negotiation of the Global Settlement.  Tronox's good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement and the hearing thereon, the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

61.     The Plan is the product of extensive, good faith, arm's-length negotiations among Tronox and certain of its principal constituencies, including the Settling Parties and the Equity Committee.  The Plan itself and the process leading to its formulation provide independent evidence of Tronox's good faith, serve the public interest and assure fair treatment of holders of Claims and Equity Interests.  Consistent with the overriding purpose of chapter 11, the Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing Tronox to reorganize and emerge from chapter 11 free of the Environmental Claims (to the extent provided by the Environmental Claims Settlement Agreement) and Tort Claims, and with a capital structure that will allow it to satisfy its obligations with sufficient liquidity and capital resources.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### iv.        Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable

62.     The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by Tronox in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives

of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.  Accordingly, the

requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

> **v.     Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

63.     The Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy

Code because, in the Disclosure Statement, the Plan and the Plan Supplement, Tronox has

disclosed the following  (a) the identity and affiliations of each proposed director, each proposed

officer and the manner in which additional officers and directors of Reorganized Tronox will be

chosen following Confirmation; and (b) the identity of and nature of any compensation for any

insider who will be employed or retained by Reorganized Tronox.  The method of appointment

of directors and officers of Reorganized Tronox was, is and will be consistent with the interests

of holders of Claims and Equity Interests and public policy.  Accordingly, the requirements of

section 1129(a)(5) of the Bankruptcy Code are satisfied.

> **vi.     Section 1129(a)(6)—Approval of Rate Changes**

64.     The Plan does not contain any rate changes subject to the jurisdiction of any

governmental regulatory commission and therefore will not require governmental regulatory

approval.    Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the

Chapter 11 Cases.

> **vii.     Section 1129(a)(7)—Best Interests of Holders of Claims and Equity Interests**

65.     The liquidation analysis attached as **Exhibit E** to the Disclosure Statement (the

"**Liquidation Analysis**") and the other evidence related thereto in support of the Plan that was

proffered or adduced at or prior to, or in declarations in connection with, the Confirmation

Hearing: (a) are reasonable, persuasive, credible and accurate as of the dates such analysis or

evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate

K&E 17922457.18

methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that holders of Allowed Claims and Equity Interests in every Class will recover property of a value at least as much or more under the Plan on account of such Claim or Equity Interest, as of the Effective Date, than the amount such holder would receive if Tronox was liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

viii. **Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class**

66. Classes 1 and 2 are Unimpaired Classes of Claims and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. As set forth in the Voting Certification, Classes 3, 4, 5, 6 and 7 have voted to accept the Plan and Class 8 has voted to reject the Plan.

67. Because the Plan has not been accepted by the Rejecting Class, Tronox seeks Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code. Thus, although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Rejecting Class, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Class and thus satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the Rejecting Class as described further below.

ix. **Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

68. The treatment of Administrative Claims, Priority Tax Claims, Replacement DIP Facility Claims and Statutory Fees under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(9) of the Bankruptcy Code are satisfied.

K&E 17922457.18

x.        **Section 1129(a)(10)—Acceptance By At Least One Impaired Class**

69.    As set forth in the Voting Certifications, the Impaired Accepting Classes have

voted to accept the Plan.  Specifically, holders of Claims in Classes 3, 4, 5, 6 and 7 voted to

accept the Plan.  As such, there is at least one Class of Claims that is Impaired under the Plan and

has accepted the Plan, determined without including any acceptance of the Plan by any insider

(as defined by the Bankruptcy Code).  Accordingly, the requirements of section 1129(a)(10) of

the Bankruptcy Code are satisfied.

xi.       **Section 1129(a)(11)—Feasibility of the Plan**

70.    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence

supporting the Plan proffered or adduced by Tronox at, or prior to, or in declarations filed in

connection with, the Confirmation Hearing:  (a) is reasonable, persuasive, credible and accurate

as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes

reasonable and appropriate methodologies and assumptions; (c) has not been controverted by

other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely

to be followed by the liquidation or the need for further financial reorganization of Reorganized

Tronox or any successor to Reorganized Tronox under the Plan except as provided in the Plan;

and (e) establishes that Reorganized Tronox will have sufficient funds available to meet its

obligations under the Plan.  Accordingly, the requirements of section 1129(a)(11) of the

Bankruptcy Code have been satisfied.

xii.      **Section 1129(a)(12)—Payment of Bankruptcy Fees**

71.    Article II.D of the Plan provides that all fees payable pursuant to section 1930 of

the United States Judicial Code, as determined by the Bankruptcy Court at the Confirmation

Hearing, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases

are converted, dismissed, or closed, whichever occurs first.  Accordingly, Tronox has satisfied the requirements of section 1129(a)(12) of the Bankruptcy Code.

### xiii.    Section 1129(a)(13)—Retiree Benefits

72.    Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to section 1114 of the Bankruptcy Code.  Article V.I of the Plan provides that, on and after the Effective Date, all retiree benefits shall continue to be paid in accordance with applicable law. Accordingly, the requirements of section 1129(a)(13) of the Bankruptcy Code are satisfied.

### xiv.    Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Class

73.    The Plan may be confirmed  pursuant to section 1129(b) of the Bankruptcy Code notwithstanding that the requirements of section 1128(a)(8) have not been met because Tronox has demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to Class 8 (the only impaired Class that voted to reject the Plan).

74.    The Plan is "fair and equitable" with respect to Class 8 because no junior Class of Claims or Equity Interests will receive or retain any property under the Plan on account of such Claims or Equity Interests.

75.    The evidence supporting the Plan proffered or adduced by Tronox at, or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding Tronox's classification and treatment of Claims and Equity Interests: (a) is reasonable, persuasive, credible and accurate; (b) utilizes reasonable and appropriate methodologies and assumptions; and (c) has not been controverted by other creditable evidence.

76.      The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

     **xv.**       **Section 1129(c)—Only One Plan**

77.      Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Cases that was not previously withdrawn.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

     **xvi.**      **Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes**

78.      No governmental unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the requirements of section 1129(d) of the Bankruptcy Code are satisfied.

**O.**      **Satisfaction of Confirmation Requirements**

79.      Based upon the foregoing, all other filed pleadings, documents, exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**P.**      **Disclosure: Agreements and Other Documents**

80.      Tronox has disclosed all material facts regarding: (a) the adoption of the Amended and Restated Certificate of Incorporation and Amended and Restated Bylaws of Reorganized Tronox Incorporated; (b) the selection of the members of the New Board and the officers of Reorganized Tronox; (c) Reorganized Tronox's obligations under (i) the Exit Credit Documents and (ii) the Revolving Credit Documents; (d) the sources and distribution of Cash

under the Plan; (e) the terms and conditions of the Rights Offering; (f) the terms and issuance of the New Common Stock and Reorganized Tronox's reliance on the exemptions under section 1145(a) of the Bankruptcy Code and section 4(2) of the Securities Act; (g) the exemption provided by section 1146(a) of the Bankruptcy Code; (h) the Registration Rights Agreement; (i) the cancellation of the Unsecured Notes and the Equity Interests; (j) the terms of the Management Equity Plan, the Management 2010 Bonus Plan and the New Management Agreements; (k) the adoption, execution and delivery of all contracts, leases, instruments, releases, indentures and other agreements related to any of the foregoing; and (l) the adoption, execution and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of Reorganized Tronox.

**Q.    Transfers by Tronox; Vesting of the Retained Assets**

81.    Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated therein, on the Effective Date, the Retained Assets shall vest in Reorganized Tronox free and clear of all Liens, Claims, charges or other encumbrances (except for Liens granted to secure the Exit Financing and the Revolving Facility, including the Liens securing the Replacement DIP Facility Claims that are converted into the Converted Term Loan Exit Financing, as defined below).

82.    Notwithstanding anything to the contrary herein or in the Plan, (a) the Environmental Trust Assets, the Nevada Assets and the Environmental Insurance Assets shall be transferred to Tronox Worldwide LLC and shall then vest in the applicable Environmental Response Trusts as provided in the Environmental Claims Settlement Agreement, (b) the Tort Claims Trust Insurance Assets shall be transferred to Tronox Worldwide LLC and shall then vest in the Tort Claims Trust and (c) Tronox's right and interest in the Anadarko Litigation shall be transferred to Tronox Worldwide LLC and shall then vest in the Anadarko Litigation Trust, in

32

each case free and clear of all Liens, Claims, interests, charges or other encumbrances. All of the foregoing transfers are essential elements of the Plan and are in the best interests of Tronox and its Estates. Any transfer of ownership by Tronox of any real property assets (including the Environmental Trust Assets and the Nevada Assets) pursuant to the Plan and this Confirmation Order shall be accomplished by quitclaim deed.

83.    On and after the Effective Date, except as otherwise provided in the Plan or the Plan Supplement, Reorganized Tronox may operate its businesses and may use, acquire or dispose of property and compromise or settle any Claims, Equity Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**R.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

84.    Each of the conditions precedent to the Effective Date, as set forth in Article IX.B of the Plan, has been satisfied or waived in accordance with the provisions of the Plan, or is reasonably likely to be satisfied, provided, however, that no waiver of the conditions precedent to the Effective Date Shall have occurred without the consent of Tronox, the Replacement DIP Agent, the Creditors' Committee, the Required Backstop Parties and, to the extent applicable, the United States and the Nevada Parties.

**S.    Implementation**

85.    All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents (including the Environmental Claims Settlement Agreement and related exhibits, the Environmental Response Trust Agreements, the Anadarko Litigation Trust Agreement, the Tort Claims Trust Agreement, the Tort Claims Trust Distribution Procedures, the Equity Commitment Agreement, the Plan Support Agreement, the Exit Credit Agreement, the other Exit Credit Documents, the Revolving

K&E 17922457.18

Credit Agreement, the other Revolving Credit Documents, the Registration Rights Agreement, the New Warrant Agreement, the New Management Agreements, the Management Equity Plan and the Management 2010 Bonus Plan) are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document and agreement is in the best interests of Tronox, its Estates and holders of Claims and Equity Interests.  Tronox has exercised reasonable business judgment in determining to enter into these documents and has provided sufficient and adequate notice of these documents (to the extent filed).  With the exception of the New Warrant Agreement, the Anadarko Litigation Trust Agreement and the Environmental Response Trust Agreements, which remain subject to ongoing negotiation, the terms and conditions of these documents are fair and reasonable and were negotiated in good faith and at arm's length.  Tronox is authorized, without further approval of the Court, to execute and deliver all agreements, documents, instruments and certificates relating thereto and perform its obligations thereunder; provided, however, that the terms of the Anadarko Litigation Trust Agreement, the Environmental Response Trust Agreements and the New Warrant Agreement remain subject to ongoing negotiation, and such agreements shall be filed with the Court on notice to parties in interest with an opportunity to be heard prior to such documents becoming effective pursuant to the Plan and this Confirmation Order; and provided further that it shall be a condition precedent to the Effective Date that (a) the terms of the Anadarko Litigation Trust Agreement are subject to the agreement of the Tort Claims Trustee and the other parties thereto and (b) the terms of the Environmental Response Trust Agreements and New Warrant Agreement are reasonably acceptable to the parties affected thereby or are approved by the Bankruptcy Court.

T.      **Good Faith**

86.    Tronox has proposed the Plan in good faith, with the legitimate and honest purposes of reorganizing Tronox's ongoing businesses and maximizing the value of Tronox and the recovery to stakeholders.  Based on the record in the Chapter 11 Cases, (a) Tronox and its non-debtor affiliates; (b) the agents and lenders under each of the Prepetition Facilities, the Original DIP Facility, the Replacement DIP Facility and the debtor-in-possession credit facility that was refinanced from the proceeds of the Replacement DIP Facility; (c) the Ad Hoc Noteholders' Committee; (d) the Creditors' Committee; (e) the United States; (f) the Nevada Parties; (g) the Backstop Parties; and (h) with respect to each of the foregoing Entities in clauses (a) through (g), such Entities' current or former subsidiaries, affiliates, managed accounts or funds, officers, directors, principals, members, employees, agents, financial advisors, attorneys, accountants, investments bankers, consultants, representatives and other Professionals, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII.F of the Plan.  Such parties will continue to act in good faith if they proceed to (a) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by the Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

K&E 17922457.18

U.    **Corporate Action**

87.    Upon the Effective Date, all actions contemplated by and set forth in the Plan shall be deemed authorized and approved in all respects, including (a) entry into the New Management Agreements and adoption of the Management Equity Plan and Management 2010 Bonus Plan; (b) selection of the directors and officers of Reorganized Tronox; (c) the rationalization of Reorganized Tronox's corporate structure; (d) the completion of (i) the Exit Financing, including the conversion of the Replacement DIP Facility Claims into the Converted Term Loan Exit Financing and (ii) the Revolving Facility; (e) the authorization, issuance and distribution of New Common Stock and New Warrants as provided in the Plan; and (f) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of Tronox or Reorganized Tronox, and any corporate action required by Tronox or Reorganized Tronox in connection with implementation of the Plan shall be deemed to have occurred and shall be in effect upon the Effective Date, without any requirement of further action by the directors or officers of Tronox or Reorganized Tronox.

V.    **Issuance of New Common Stock and New Warrants**

88.    The issuance of New Common Stock and New Warrants is an essential element of the Plan, and is in the best interests of Tronox, its Estates, and holders of Claims and Equity Interests.

W.    **Executory Contracts and Unexpired Leases**

89.    Tronox has exercised reasonable business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases as set forth in the Plan, the Plan Supplement, this Confirmation Order or otherwise.  Each assumption, assumption and assignment or rejection of an Executory Contract or Unexpired Lease in accordance with the

36

Plan, the Plan Supplement, this Confirmation Order or otherwise shall be legal, valid and binding upon (a) Tronox and Reorganized Tronox if such Executory Contract or Unexpired Lease is assumed, (b) the assignee of such Executory Contract or Unexpired Lease if such contract or lease is assumed and assigned and (c) all non-debtor parties to such Executory Contract or Unexpired Lease, all to the same extent as if such assumption, assumption and assignment or rejection had been authorized and effectuated pursuant to a separate order of the Court that was entered pursuant to section 365 of the Bankruptcy Code before Confirmation.

## X.    Approval of the Management Compensation Programs

90.    The Management Equity Plan and the Management 2010 Bonus Plan (collectively, the "**Management Compensation Programs**") are essential elements of the Plan. The terms and conditions of the Management Compensation Programs were negotiated in good faith and at arm's length with the Creditors' Committee and the Ad Hoc Noteholders' Committee.  The terms of the Management Compensation Programs are reasonable, and Tronox has provided adequate notice of the material terms of such programs.  Tronox and Reorganized Tronox are authorized, without further approval of the Court, and with the consent of the Creditors' Committee and the Ad Hoc Noteholders' Committee, to execute and deliver all agreements, documents, instruments and certificates relating to the Management Compensation Programs and perform their obligations thereunder in accordance with, and subject to, the terms of the Management Compensation Programs.

## Y.    Retention of Jurisdiction

91.    The Court properly may retain jurisdiction over the matters set forth in Article XI and other applicable provisions of the Plan.

K&E 17922457.18

## II.    ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

### A.    Order

92.    This Confirmation Order shall confirm the Plan.  A copy of the Plan is attached hereto as **Exhibit A**.

### B.    Objections

93.    To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been withdrawn, waived or settled before entry of this Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, such objections are hereby overruled on the merits.

### C.    Confirmation of the Plan

94.    The Plan and the filed portions of the Plan Supplement (as such may be amended by this Confirmation Order or in accordance with the Plan) and all of their provisions are confirmed in all respects pursuant to section 1129 of the Bankruptcy Code.  Except as otherwise provided herein, the documents contained in the filed portions of the Plan Supplement, and any amendments, modifications and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto and documents referred to in such papers), and the execution, delivery and performance thereof by Tronox and Reorganized Tronox, are authorized and approved as finalized, executed and delivered.  Without further order or authorization of the Court, Tronox, Reorganized Tronox and their successors are authorized and empowered to make all modifications to all documents included and filed as part of the Plan Supplement that are consistent with the Plan, provided such modifications are not material or do not require the consent of another party.  As set forth in the Plan, once finalized, executed and, to

the extent necessary, approved by the Bankruptcy Court, upon the occurrence of the Effective

Date, the documents comprising the Plan Supplement and all other documents contemplated by

the Plan shall constitute legal, valid, binding and authorized obligations of the respective parties

thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as

of the Effective Date (or in the case of the Liens and security interests securing the Converted

Term Loan Exit Financing, on October 20, 2010 (when the interim order approving the

Replacement DIP Facility was entered)), all Liens and other security interests purported to be

created or assumed thereby.

95.     The terms of the Plan, the Plan Supplement (and any portion thereof that may be

subsequently approved) and exhibits thereto are incorporated by reference into, and are an

integral part of, this Confirmation Order.  The terms of the Plan, the Plan Supplement (and any

portion thereof that may be subsequently approved), all exhibits thereto, and all other relevant

and necessary documents, shall be effective and binding as of the Effective Date of the Plan (or

in the case of the Replacement DIP Documents, as of the applicable date prior to the Effective

Date).

**D.     Findings of Fact and Conclusions of Law**

96.     The findings of fact and the conclusions of law set forth herein shall constitute

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to

the proceeding by Bankruptcy Rule 9014.  To the extent any of the following constitute findings

of fact or conclusions of law, they are adopted as such.  To the extent any of the prior findings of

fact or conclusions of law constitutes an order of this Court, they are adopted as such.

**E.     Plan Classification Controlling**

97.     The terms of the Plan shall solely govern the classification of Claims and Equity

Interests for purposes of the distributions to be made thereunder.  The classifications set forth on

39

the ballots tendered to or returned by the holders of Claims or Equity Interests in connection with voting on the Plan pursuant to the Solicitation Procedures Order:  (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Equity Interest as representing the actual classification of such Claim or Equity Interest under the Plan for distribution purposes; and (d) shall not be binding on Tronox and Reorganized Tronox except for voting purposes.

**F.      General Settlement of Claims and Equity Interests**

98.      As one element of, and in consideration for, an overall negotiated settlement of numerous disputed Claims and issues embodied in the Plan, including the Global Settlement and the Equity Committee Settlement, pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code and in consideration for the classification, Distributions, Releases and other benefits provided under the Plan, the provisions of the Plan shall upon Consummation constitute a good faith compromise and settlement of all Claims, Equity Interests and controversies resolved pursuant to the Plan.  Subject to Articles VI and VII of the Plan, all distributions made to holders of Allowed Claims and Equity Interests in any Class are intended to be and shall be final.

**G.      Approval of Environmental Claims Settlement Agreement**

99.      Tronox's entry into the Environmental Claims Settlement Agreement is expressly approved as being reasonable, fair and equitable pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code.  The Environmental Claims Settlement Agreement shall not become effective until approved by the Bankruptcy Court under applicable environmental law following a public comment process as provided in paragraph 169 of the Environmental

40

Claims Settlement Agreement.  Any further findings by the Bankruptcy Court with respect to the Environmental Claims Settlement Agreement shall be incorporated herein by reference.

100.    Environmental Properties Management, LLC; Le Petomane XXVII, Inc.; Greenfield Environmental Multistate Trust, LLC; Greenfield Environmental Savannah Trust, LLC; and Weston Solutions, Inc., are hereby approved as environmental response trustees for the Cimarron Environmental Response Trust, Henderson Environmental Response Trust, Multistate Environmental Response Trust, Savannah Environmental Response Trust, and West Chicago Environmental Response Trust, respectively, and are hereby appointed to such positions as of the Effective Date, provided that the Environmental Claims Settlement Agreement shall first have been approved by the Bankruptcy Court under applicable environmental laws after the completion of public comment.

**H.    Solicitation and Notice**

101.    Notice of the Confirmation Hearing complied with the terms of the Solicitation Procedures Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The solicitation of votes on the Plan and the Solicitation Packages complied with the Solicitation Procedures, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

**I.    References to Plan Provisions**

102.    The failure specifically to include or to refer to any particular article, section or provision of the Plan, Plan Supplement or any related document in the Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of the Bankruptcy Court that the Plan and any related documents be confirmed in their entirety.

41

## J.    Immediate Binding Effect

103.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, to the fullest extent permitted by applicable law, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon Tronox, Reorganized Tronox and any and all holders of Claims or Equity Interests (irrespective of whether holders of such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan or herein, each Entity acquiring property under the Plan and any and all non-debtor parties to Executory Contracts and Unexpired Leases with Tronox.

## K.    Cancellation of Agreements, Unsecured Notes and Equity Interests

104.    On the Effective Date, except as otherwise specifically provided for in the Plan: (a) the obligations of Tronox under the Indenture and any other Certificate, Equity Security, share, note, bond, indenture, purchase right, option, warrant or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in Tronox or giving rise to any Claim or Equity Interest (except for the Replacement DIP Documents and the Replacement DIP Facility Claims thereunder and except for such certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in Tronox that are reinstated pursuant to the Plan), shall be cancelled solely as to Tronox and its Affiliates, and Reorganized Tronox shall not have any continuing obligations thereunder; and (b) the obligations of Tronox and its Affiliates pursuant, relating or pertaining to any agreements, indentures, Certificates of designation, by-laws or certificate or articles of incorporation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in Tronox (except for the Replacement DIP

42

Documents and the Replacement DIP Facility Claims thereunder and except for such agreements, Certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in Tronox that are specifically Reinstated pursuant to the Plan) shall be released and discharged; *provided, however, that*:

- Notwithstanding Confirmation or Consummation, any such indenture or agreement that governs the rights of the holder of a Claim, including the Indenture, Indenture shall continue in effect solely for the purposes of: (a) allowing holders to receive the distributions provided for hereunder and (b) to the extent that the Indenture Trustee Fee Claim is not paid in full by Reorganized Tronox, of allowing the Indenture Trustee to exercise its Indenture Charging Lien and to make distributions to the holders of Unsecured Notes Claims on account of such Claims, as set forth in Article VI.D of the Plan;

- The foregoing shall not affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to Reorganized Tronox;

- The foregoing shall not effect the cancellation of shares issued pursuant to the Plan nor any other shares held by one Tronox Debtor in the capital of another Tronox Debtor; and

- The Replacement DIP Facility Claims, as converted into the Converted Term Loan Exit Financing, and the guarantees of and the Liens securing such Replacement DIP Facility Claims, and the Replacement DIP Documents, as Exit Credit Documents, shall not be cancelled, released or discharged, and such guarantees and Liens shall continue to guarantee or secure, as the case may be, such Replacement DIP Facility Claims in accordance with the terms of the applicable Exit Credit Documents.

**L.    Approval of the Exit Financing**

105.    On the Effective Date, and without further notice to or order or other approval of the Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person or Entity (including the boards of directors of the Tronox Debtors) except for the Confirmation Order and as otherwise required by the Replacement DIP Documents:  (a) the Replacement DIP Facility Claims shall convert into a corresponding portion of the Exit Financing in accordance with the terms of the Replacement DIP Documents (such portion of the Exit Financing, the "**Converted Term Loan Exit Financing**"); (b) Reorganized

43

Tronox shall assume, and be bound by the terms of, the Replacement DIP Agreement and the

other Replacement DIP Documents, and without limiting the foregoing, Reorganized Tronox

shall assume the Replacement DIP Facility Claims on the terms and conditions set forth in the

Replacement DIP Documents, which from and after the Effective Date shall constitute Exit

Credit Documents; (c) all Replacement DIP Documents, as Exit Credit Documents, shall remain

in full force and effect on and after the Effective Date, and all Liens, rights, interests, duties and

obligations thereunder shall survive the Effective Date and shall continue to secure all

Replacement DIP Facility Claims assumed by Reorganized Tronox and all other obligations

under the Exit Credit Documents; and (d) Reorganized Tronox shall, and is authorized to, enter

into and perform and to execute and deliver an Accession and Novation Agreement (as defined

in the Replacement DIP Agreement) and such other agreements, instruments or documents

reasonably requested by the Replacement DIP Agent (in form and substance acceptable to the

Replacement DIP Agent) to evidence or effectuate the conversion of the Replacement DIP

Facility into part of the Exit Financing in accordance with the terms of the Replacement DIP

Documents.

106.    The Exit Financing (including the conversion of the Replacement DIP Facility

into the Converted Term Loan Exit Financing), the Exit Credit Documents (including all

Replacement DIP Documents that upon the Effective Date become Exit Credit Documents), all

transactions contemplated thereby, and all actions to be taken, undertakings to be made, and

obligations to be incurred by Reorganized Tronox in connection therewith, including the

payment of all fees, indemnities, expenses and other amounts provided for by the Exit Credit

Documents, are hereby approved.  Without limiting the foregoing, Reorganized Tronox shall

pay, as and when due, all fees, indemnities, expenses and other amounts provided under the Exit

K&E 17922457.18

Credit Documents.    The Exit Credit Documents shall constitute legal, valid, binding and

authorized obligations of Reorganized Tronox, enforceable in accordance with their terms.    The

financial accommodations to be assumed or extended pursuant to the Exit Credit Documents are

being assumed or extended, and shall be deemed to have been assumed or extended, in good

faith, for legitimate business purposes and for fair consideration and reasonably equivalent value,

are reasonable, shall not be subject to avoidance, recharacterization or subordination (including

equitable subordination) for any purposes whatsoever, and shall not constitute preferential

transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any

other applicable non-bankruptcy law.    On the Effective Date, all of the Liens and security

interests to be assumed or granted in accordance with the Exit Credit Documents (a) shall be

deemed to be approved; (b) shall be legal, binding and enforceable Liens on, and security

interests in, the collateral granted thereunder in accordance with the terms of the Exit Credit

Documents; (c) shall be deemed perfected on the Effective Date (or in the case of the Liens and

security interests securing the Converted Term Loan Exit Financing, on October 20, 2010 (when

the interim order approving the Replacement DIP Facility was entered)), subject only to such

Liens and security interests as may be permitted under the Exit Credit Documents, and with the

priorities established in respect thereof under the Exit Credit Documents (including the

intercreditor agreement referenced therein) and applicable non-bankruptcy law; and (d) shall not

be subject to avoidance, recharacterization, or subordination (including equitable subordination)

for any purposes whatsoever and shall not constitute preferential transfers, fraudulent

conveyances or other voidable transfers under the Bankruptcy Code or any applicable non-

bankruptcy law.    Reorganized Tronox and the Persons and Entities granted such Liens and

security interests are authorized to make all filings and recordings, and to obtain all

45

governmental approvals and consents necessary to establish and perfect such liens and security

interests under the provisions of the applicable state, provincial, federal or other law (whether

domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation

Order (it being understood that perfection shall occur automatically by virtue of the entry of the

Confirmation Order, or in the case of Liens and security interests granted pursuant to the

Replacement DIP Documents, by virtue of the interim and final orders of the Court approving

same, and any such filings, recordings, approvals and consents shall not be required), and will

thereafter cooperate to make all other filings and recordings that otherwise would be necessary

under applicable law to give notice of such Liens and security interests to third parties. To the

extent that any holder of a Secured Claim that has been satisfied or discharged in full pursuant to

the Plan, or any agent for such holder, has filed or recorded publicly any Liens and/or security

interests to secure such holder's Secured Claim, then as soon as practicable on or after the

Effective Date, such holder (or the agent for such holder) shall take any and all steps requested

by Tronox, Reorganized Tronox or any administrative agent under the Exit Credit Documents

that are necessary to cancel and/or extinguish such publicly-filed Liens and/or security interests,

in each case all costs and expenses in connection therewith to be paid by Tronox or Reorganized

Tronox.

107.    Notwithstanding anything to the contrary in this Order or the Plan, the

Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of any rights or

remedies relating to, or any other matters arising under, any or all of the Exit Credit Documents.

108.    To reflect the refinancing of Tronox's debtor-in-possession financing that

occurred on October 21, 2010, the definitions of "Replacement DIP Agreement" and

K&E 17922457.18

"Replacement DIP Facility" in the Plan are hereby amended and restated in their entirety as

follows:

> "'*Replacement DIP Agreement*' means that certain Senior Secured Super-Priority
> Debtor-in-Possession and Exit Credit and Guaranty Agreement, dated as of
> October 21, 2010, among Tronox Incorporated, Tronox Worldwide LLC, Certain
> Subsidiaries of Tronox Worldwide LLC, as Guarantors, various Lenders,
> Goldman Sachs Lending Partners LLC, as Sole Lead Arranger and Sole
> Bookrunner, Goldman Sachs Lending Partners LLC, as Syndication Agent, and
> Goldman Sachs Lending Partners LLC, as Administrative Agent and Collateral
> Agent, as amended from time to time."

> "'*Replacement DIP Facility*' means the $425 million term loan facility under the
> Replacement DIP Agreement."

In addition, clause (f) of the definition of "Released Party" in the Plan is hereby amended to read

as follows:  "(f) the agents and lenders under each of the Prepetition Facilities, the Original DIP

Facility, the Replacement DIP Facility and the debtor-in-possession facility that was refinanced

from the proceeds of the Replacement DIP Facility, in each case solely in connection with such

facilities."

109.    Notwithstanding anything to the contrary contained herein or in the Plan, the

Letters of Credit Cash Collateral Agreement, dated as of December 24, 2009, among Tronox

Incorporated, Tronox Worldwide LLC and JPMorgan Chase Bank, N.A. shall remain in full

force and effect, survive the Effective Date of the Plan and be enforceable against Reorganized

Tronox.

## M.    Approval of the Revolving Facility

110.    On the Effective Date, Reorganized Tronox is hereby authorized to enter into,

perform and execute the Revolving Credit Agreement, including any and all amendments and

modifications thereto and execute, deliver, record and file any other agreements, instruments,

certificates, financing statements or documents related thereto, and are hereby authorized to enter

into, perform and take all other actions to consummate any and all transactions contemplated

47

thereby.  Without limiting the foregoing, Reorganized Tronox is authorized to pay, and shall pay, as and when due, all fees, indemnities, expenses and other amounts provided under the Revolving Credit Documents.  The Revolving Credit Documents shall constitute legal, valid, binding and authorized obligations of Reorganized Tronox enforceable in accordance with their terms.

111.    The Liens and security interests to be granted in accordance with the Revolving Credit Agreement and the other Revolving Credit Documents shall be valid, binding and enforceable Liens on and security interests in the collateral granted thereunder in accordance with the terms of the Revolving Credit Documents executed by Reorganized Tronox in connection with the Revolving Credit Documents and shall be deemed perfected on the Effective Date.  The guarantees, mortgages, pledges, liens and other security interests granted pursuant to or in connection with the Revolving Credit Agreement and the other Revolving Credit Documents are granted in good faith, for legitimate business purposes, fair consideration and reasonably equivalent value as an inducement to the Revolving Lenders to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance, fraudulent transfer, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law, and shall not otherwise be subject to avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and the priorities of such liens and security interests shall be as set forth in the definitive documentation executed in connection with the Revolving Credit Agreement.  Reorganized Tronox is authorized to make all filings and recordings and to obtain all government approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign).

48

112.    Notwithstanding anything to the contrary in this Order or the Plan, (a) the Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of or any rights or remedies related to, or any other matters arising under, the any or all of the Revolving Credit Agreement or the other Revolving Credit Documents, and (b) the Revolving Commitment Letter shall, and shall be deemed to, continue and survive in full force and effect, and shall constitute legal, valid, binding and enforceable obligations of Tronox and Reorganized Tronox and shall not be impaired, prejudiced or modified (without the prior written consent of the Agent (as defined in the Revolving Commitment Letter) at any time prior to the closing of the Revolving Facility on the Effective Date.

**N.    New Common Stock**

113.    In accordance with the terms of Article IV.E.2 of the Plan, on the Effective Date, Reorganized Tronox Incorporated shall issue or reserve for issuance all of the New Common Stock.  The New Common Stock shall represent all of the direct and indirect common equity of Reorganized Tronox Incorporated authorized, issued or reserved as of the Effective Date.  The issuance of New Common Stock by Reorganized Tronox Incorporated (including shares issued upon exercise of the New Warrants or pursuant to the Management Equity Plan (subject to the terms thereof)) is authorized without the need for further corporate action.  All of the shares of New Common Stock issued pursuant to the Plan (including upon exercise of the New Warrants or pursuant to the Management Equity Plan (subject to the terms thereof)) is deemed duly authorized, validly issued, fully paid and non-assessable.  Distributions of New Common Stock pursuant to the Plan will be made through broker accounts via electronic issuance of the shares and by entry of the registered shareholder's name in the stock ledger of Reorganized Tronox Incorporated.

K&E 17922457.18

**O.      New Warrants**

114.    On the Effective Date, Reorganized Tronox Incorporated will issue the New Warrants to the holders of Equity Interests in Class 8 pursuant to the terms of the New Warrant Agreement.  All New Common Stock issued pursuant to the exercise of the New Warrants is deemed duly authorized and validly issued without the need for further corporate action.

**P.      Section 1145 Exemption**

115.    The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act and applicable state securities laws, and no other non-bankruptcy law applies to the solicitation.

116.    Pursuant to Section 1145 of the Bankruptcy Code, the offering, issuance and distribution of (a) the New Common Stock to holders of Class 3 Claims, Class 6 Claims and to participants in the Rights Offering, except as set forth below and with respect to the Backstop Parties, (b) the New Warrants to holders of Class 8 Equity Interests and (c) the New Common Stock deliverable upon exercise of the New Warrants and/or implementation of the Management Equity Plan are exempt from, among other things, the registration requirements of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of securities.  In addition, under Section 1145 of the Bankruptcy Code, such New Common Stock and New Warrants will be freely tradable in the United States, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities Exchange Commission, if any, applicable at the time of any further transfer of such securities and instruments and subject to any restrictions in the Registration Rights Agreement and the Amended and Restated Certificate of Incorporation.

K&E 17922457.18

117.    Notwithstanding the foregoing, as part of the Global Settlement, Tronox and the Backstop Parties have agreed and the Plan is drafted to provide that any Unsubscribed Shares and Equity Backstop Consideration (each as defined in the Equity Commitment Agreement) issued to the Backstop Parties as consideration for their commitment to backstop the Rights Offering will be issued without registration in reliance upon the exemption set forth in section 4(2) of the Securities Act and will be "restricted securities."  Holders of such Unsubscribed Shares and Equity Backstop Consideration shall receive registration rights as set forth in the Registration Rights Agreement.

118.    To the extent deemed securities, pursuant to Section 1145 of the Bankruptcy Code, the offering, issuance and distribution of the interests in the Anadarko Litigation Trust and the Environmental Response Trusts are exempt from, among other things, the registration requirements of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of securities.

**Q.    Provisions Governing Distributions**

119.    The distribution provisions of Article VI of the Plan are hereby approved in their entirety.   Except as otherwise set forth in the Plan, Reorganized Tronox shall make all distributions required under the Plan.

**R.    Procedures for Resolving Contingent, Unliquidated and Disputed Claims**

120.    The procedures contained in Article VII of the Plan for resolving contingent, unliquidated and disputed Claims are hereby approved in their entirety.

**S.    Treatment of Executory Contracts and Unexpired Leases**

121.    The Executory Contract and Unexpired Lease provisions of Article V of the Plan are hereby approved in their entirety.

K&E 17922457.18

### i.        Director and Officer Insurance Policies and Agreements

122.    To the extent Tronox's D&O Liability Insurance Policies or agreements are deemed Executory Contracts, notwithstanding anything to the contrary in the Plan, Reorganized Tronox shall be deemed to have assumed all of Tronox's unexpired D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date.

123.    Reorganized Tronox shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on the Petition Date, with respect to conduct occurring prior thereto, and all directors and officers of Tronox who served in such capacity as of the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

### ii.        Indemnification and Reimbursement Obligations

124.    On the Effective Date, and except as prohibited by applicable law or subject to the limitations set forth in the Plan, Tronox shall assume all of the Indemnification Provisions in place on and before the Effective Date for Indemnified Parties for Claims related to or in connection with any actions, omissions or transactions occurring before the Effective Date; provided, however, that nothing herein, in the Plan, the Plan Supplement or any document related thereto shall in any way release or provide indemnification for any claim against or liability of the following parties, who are not Indemnified Parties: Lehman Brothers Holdings, Inc., Ernst & Young LLP, Kerr-McGee Corporation and Anadarko Petroleum Corporation and their officers, directors, employees, advisors, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives (including their respective officers, directors, employees, members, and professionals), whether such claims or liabilities be direct or indirect, fixed or contingent, including the claims asserted in the Anadarko Litigation; and

52

provided further, however, that for the avoidance of doubt, nothing herein, in the Plan, the Plan

Supplement or any document related thereto shall in any way release or indemnify any

individuals who were former directors or officers of the Tronox Debtors or their subsidiaries and

also were or currently are directors or officers of Kerr-McGee Corporation and/or Anadarko

Petroleum Corporation.

125.    Notwithstanding any contrary provision in the Plan Documents (as defined

below), including Articles V.H and V.J of the Plan, nothing contained in the Plan Documents or

the preceding paragraph shall be construed to alter any existing obligation of the Tronox Debtors

to indemnify, but only as necessary to insure, any individuals who were former directors and/or

officers of the Tronox Debtors or their subsidiaries and also were or are currently directors or

officers of Kerr-McGee Corporation and/or Anadarko Petroleum Corporation (including their

respective affiliates).  For the avoidance of doubt, if the Tronox Debtors assume an existing

Indemnification Provision or D&O Liability Insurance Policy that affects such individuals, they

shall retain their rights under such assumed Indemnification Provision or Insurance Policy but

only as necessary to access insurance proceeds.

**T.    Vesting of the Retained Assets in Reorganized Tronox**

126.    Except as otherwise provided in the Plan or any agreement, instrument or other

document incorporated therein, on the Effective Date, the Retained Assets and all Causes of

Action (excluding the Anadarko Litigation and any claim or cause of action of Tronox related

thereto) shall vest in Reorganized Tronox free and clear of all liens, Claims, charges or other

encumbrances (except for Liens granted to secure the Exit Financing (including Liens securing

the Replacement DIP Facility Claims) and the Revolving Facility).

127.    Notwithstanding anything to the contrary herein or in the Plan, (a) the

Environmental Trust Assets, the Nevada Assets and the Environmental Insurance Assets shall be

53

transferred to Tronox Worldwide LLC and shall then vest in the applicable Environmental Response Trusts as provided in the Environmental Claims Settlement Agreement, (b) the Tort Claims Trust Insurance Assets shall be transferred to Tronox Worldwide LLC and shall then vest in the Tort Claims Trust and (c) Tronox's right and interest in the Anadarko Litigation shall be transferred to Tronox Worldwide LLC and shall then vest in the Anadarko Litigation Trust, in each case free and clear of all Liens, Claims, charges or other encumbrances.  Any transfer of ownership by Tronox of any real property assets (including the Environmental Trust Assets and the Nevada Assets) pursuant to the Plan and this Confirmation Order shall be accomplished by quitclaim deed.

128.    On and after the Effective Date, except as otherwise provided in the Plan, Reorganized Tronox may operate its businesses and may use, acquire or dispose of property and compromise or settle any Claims, Equity Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**U.    Discharge of Tronox**

129.    As set forth in Article VIII.A of the Plan, pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise provided in the Plan, the Exit Credit Documents, this Confirmation Order or such other order of the Bankruptcy Court that may be applicable, the Distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by Reorganized Tronox), Equity Interests and causes of action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date,

K&E 17922457.18

whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in, the Tronox Debtors, Reorganized Tronox or any of their assets or properties.

130.    Except as otherwise provided in the Plan, this Confirmation Order or such other order of the Bankruptcy Court that may be applicable, all Persons and Entities shall be precluded from asserting against Tronox, its successors or assigns, including Reorganized Tronox, its agents and employees, or their respective assets, properties or interests in property, any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts or legal bases therefor were known or existed prior to the Effective Date regardless of whether a proof of Claim or Equity Interest was filed.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, all Replacement DIP Facility Claims that are converted into the Converted Term Loan Exit Financing in accordance with the terms of the Replacement DIP Documents shall be governed exclusively by the applicable Exit Credit Documents, and shall not be discharged, released or otherwise terminated pursuant to the Plan, section 1141(d) of the Bankruptcy Code or otherwise.

**V.    Post-Effective Date Compromise or Settlement of Claims**

131.    In accordance with the Article VII and any other relevant provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, Reorganized Tronox may compromise and settle Claims against it and Causes of Action against other Entities (excluding, for the avoidance of doubt, the Anadarko Litigation and any claim or cause of action of Tronox related thereto).

55

**W.    Subordinated Claims**

132.    The allowance, classification and treatment of all Allowed Claims and   the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise.   Pursuant to section 510 of the Bankruptcy Code, Tronox reserved the right to reclassify any Allowed Claim in accordance with any contractual, legal or equitable subordination rights relating thereto.

**X.    Settlement, Release, Injunction and Related Provisions**

133.    The following release, injunction, exculpation and related provisions set forth in Article VIII of the Plan (or as modified herein) are hereby approved and authorized in their entirety:

**i.    Releases by Tronox**

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of Tronox and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by Tronox, Reorganized Tronox and the Estates from any and all Claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative Claims asserted or assertable on behalf of the Tronox Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that Tronox, Reorganized Tronox, the Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of**

56

**any Claim or Equity Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, Tronox, the Chapter 11 Cases, Tronox's restructuring, the purchase, sale or rescission of the purchase or sale of any Security of Tronox or Reorganized Tronox, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between Tronox and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement, the Replacement DIP Documents, the Exit Credit Documents or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, gross negligence, breach of fiduciary duty or a criminal act to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, breach of fiduciary duty or a criminal act.**

**The foregoing release shall not apply to any express contractual or financial obligations or any right or obligations arising under or that is part of the Plan or any agreements entered into pursuant to, in connection with or contemplated by the Plan.**

ii.      **Release by Holders of Claims and Equity Interests**

**As of the Effective Date, to the fullest extent permitted by applicable law, each Holder of a Claim or an Equity Interest (including, for the avoidance of doubt, all shareholders of Tronox Incorporated) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged Tronox, Reorganized Tronox and the Released Parties from any and all Claims, Equity Interests, obligations,**

57

rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative Claims asserted on behalf of a debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, Tronox, Tronox's restructuring, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of Tronox or Reorganized Tronox, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between Tronox and any Released Party, the restructuring of Claims and Equity Interests prior to or during the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Replacement DIP Documents, the Exit Credit Documents or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, gross negligence, breach of fiduciary duty or a criminal act to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, breach of fiduciary duty or a criminal act.

Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any Replacement DIP Facility Claims (whenever arising) or any post-Effective Date obligations of any party under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the

Plan. No Person shall be discharged, released or relieved from any liability with respect to the Pension Plan as a result of the Chapter 11 Cases or the Plan, nor shall the PBGC, the Pension Plan or any other Person be enjoined or precluded from enforcing any liability with respect to the Pension Plan as a result of the Chapter 11 Cases, the Plan's provisions or the Plan's Confirmation.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release the personal liability of any of the aforementioned Released Parties in this Article VIII for any statutory violation of applicable tax laws or bar any right of action asserted by a governmental taxing authority against the aforementioned Released Parties for any statutory violation of applicable tax laws.  The releases set forth herein do not release, nullify or preclude the liability, if any, of the United States to the Nevada Parties under applicable Environmental Laws (as defined in the Environmental Claims Settlement Agreement) as a potentially responsible or liable party with respect to any Henderson Legacy Conditions (as defined in the Environmental Claims Settlement Agreement).

    iii.        **Exculpation**

Upon and effective as of the Effective Date, Tronox and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring consultants and other professional advisors and agents together with the Exculpated Parties will all be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code.

Except with respect to any acts or omissions expressly set forth in and preserved by the Plan, the Plan Supplement or related documents, the Exculpated Parties shall neither have nor incur any liability to any Entity for any prepetition or postpetition act taken or

K&E 17922457.18

omitted to be taken up to and including the Effective Date in connection with, or arising from or relating in any way to, the Chapter 11 Cases, including the operation of Tronox's businesses during the pendency of the Chapter 11 Cases; formulating, negotiating, preparing, disseminating, implementing and/or effecting the Plan Support Agreement, the Equity Commitment Agreement, the Original DIP Facility, the Replacement DIP Documents, the Exit Credit Documents, the Rights Offering, the Rights Offering Procedures, the Disclosure Statement and the Plan (including the Plan Supplement and any related contract, instrument, release or other agreement or document created or entered into in connection therewith); the solicitation of votes for the Plan and the pursuit of Confirmation and Consummation of the Plan; the administration of the Plan and/or the property to be distributed under the Plan; the offer and issuance of any securities under the Plan; and any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of Tronox.  In all respects, each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its respective duties under, pursuant to or in connection with the Plan.

Notwithstanding anything herein to the contrary, nothing in the foregoing "Exculpation" shall (1) exculpate any Person or Entity from any liability resulting from any act or omission constituting fraud, willful misconduct, gross negligence, criminal conduct, malpractice, misuse of confidential information that causes damages or ultra vires act as determined by a Final Order or (2) limit the liability of the professionals of the Exculpated Parties to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).

60

iv.        **Injunction**

**Except as otherwise expressly provided in the Plan or the Exit Credit Documents or for obligations issued pursuant to the Plan, all Entities who have held, hold or may hold Claims or Equity Interests that have been released pursuant to Article VIII.C or Article VIII.D, discharged pursuant to Article VIII.A or exculpated pursuant to Article VIII.F, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, Tronox, Reorganized Tronox or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Equity Interests; (2) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against Tronox, Reorganized Tronox or the Released Parties on account of or in connection with or with respect to any such Claims or Equity Interests; (3) creating, perfecting or enforcing any encumbrance of any kind against Tronox, Reorganized Tronox or the Released Parties or the property or estates of Tronox, Reorganized Tronox or the Released Parties on account of or in connection with or with respect to any such Claims or Equity Interests; (4) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from Tronox, Reorganized Tronox or the Released Parties or against the property or Estates of Tronox, Reorganized Tronox or the Released Parties on account of or in connection with or with respect to any such Claims or Equity Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding an indication in a Proof of Claim or Equity Interest or otherwise that such Holder asserts, has or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; and (5) commencing or continuing in any manner any action or other**

61

proceeding of any kind on account of, in connection with or with respect to any such Claims or Equity Interests released or settled pursuant to the Plan.

134.    **The sole recourse of Holders of Tort Claims shall be the Tort Claims Trust, and such Holders shall have no right at any time to assert Tort Claims against Reorganized Tronox or any of its assets.**

135.    Nothing in this Confirmation Order shall affect any release granted under any prior order of this Court, all of which remain in full force and effect in accordance with their respective terms.

**Y.    Release of Liens**

136.    Except as otherwise provided in the herein, in the Plan, in the Exit Credit Documents, the Revolving Credit Documents or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to Reorganized Tronox and its successors and assigns.

**Z.    Preservation of Causes of Action**

137.    The provisions of Article IV.O of the Plan are hereby approved in their entirety. Subject to the releases set forth in Article VIII of the Plan and the terms of the Environmental Claims Settlement Agreement, and in accordance with section 1123(b) of the Bankruptcy Code, Reorganized Tronox shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date,

K&E 17922457.18

including any actions specifically enumerated in the Plan Supplement (excluding the Anadarko Litigation, which will be transferred to the Anadarko Litigation Trust), and Reorganized Tronox's rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  Reorganized Tronox may pursue such Causes of Action, as appropriate, in accordance with the best interests of Reorganized Tronox.

138.    No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that Reorganized Tronox will not pursue any and all available Causes of Action against them. Reorganized Tronox expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, Reorganized Tronox expressly reserves all Causes of Action, for later adjudication, and therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or Consummation.

## AA.    Management Equity Plan

139.    On the Effective Date, the Management Equity Plan shall become effective without any further action by Reorganized Tronox.  Tronox reserves the right to amend the Management Equity Plan with the consent of the Required Backstop Parties and the Creditors' Committee at any time prior to the Effective Date.

## BB.    Management 2010 Bonus Plan

140.    On the Effective Date, the Management 2010 Bonus Plan shall become effective without any further action by Reorganized Tronox.

## CC.     Employee Benefits

141.    Pursuant to Article V.I.6 of the Plan, on and after the Effective Date, Reorganized Tronox may honor, in the ordinary course of business, any prepetition contracts, agreements, policies, programs and plans for, among other things, compensation (other than prepetition equity based compensation or severance obligations set forth in an employment agreement with Tronox), health care benefits, disability benefits, deferred compensation benefits, travel benefits, vacation benefits, savings plans, severance benefits, retirement benefits, welfare benefits, pension benefits, life insurance and accidental death and dismemberment insurance for the directors, officers and employees of any of the Tronox Debtors who served in such capacity at any time; provided, however, that Tronox's or Reorganized Tronox's performance under any employment agreement will not entitle any person to any benefit or alleged entitlement under any contract, agreement, policy, program or plan that has expired, been waived or deemed waived, released, settled or been terminated before the Effective Date, or restore, reinstate or revive any such benefit or alleged entitlement under any such contract, agreement, policy, program or plan.  Nothing herein shall limit, diminish or otherwise alter Reorganized Tronox's defenses, claims, Causes of Action or other rights with respect to any such contracts, agreements, policies, programs and plans, including Reorganized Tronox's rights to modify unvested benefits pursuant to their terms.

142.    Notwithstanding anything to the contrary herein or in the Plan, Tronox shall not assume any employment agreements for employees or officers of the Tronox Debtors employed in the United States.

143.    The continuation of any compensation and benefits programs shall not be deemed to trigger any applicable change of control, immediate vesting, termination, or similar provisions therein (unless a compensation and benefits program counterparty timely objects to the

K&E 17922457.18

continuation contemplated by this Section in which case any such compensation and benefits program shall be deemed rejected or discontinued as of immediately prior to the Petition Date).

**DD.    Continuation of Retiree Benefits and Pension Plan**

144.    Notwithstanding anything to the contrary herein or in the Plan, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with the terms of the Plan, the underlying employee benefit plan documents (as may be amended or terminated at the discretion of Reorganized Tronox) and applicable law.

145.    Pursuant to the Plan, Tronox shall assume the Pension Plan.  The Pension Plan shall be continued in accordance with its terms, and Reorganized Tronox shall satisfy the minimum funding standards pursuant to 26 U.S.C. §§ 412 and 430 and 29 U.S.C. §§ 1082 and 1083, be liable for the payment of PBGC premiums in accordance with Title IV of ERISA, subject to any and all applicable rights and defenses of the Tronox Debtors, and administer the Pension Plan in accordance with the provisions of ERISA and the Internal Revenue Code. Notwithstanding any provision of the Plan or the Confirmation Order to the contrary, the Pension Plan shall be continued and administered in accordance with ERISA and the Internal Revenue Code.

**EE.    Workers' Compensation Programs**

146.    As of the Effective Date, except as set forth in the Plan or the Plan Supplement, Tronox and Reorganized Tronox shall continue to honor their obligations under: (a) all applicable federal and state workers' compensation laws; and (b) Tronox's written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds, policies, programs and plans for workers' compensation and workers' compensation insurance.

147.    All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the

K&E 17922457.18

Bankruptcy Court; provided, however, that nothing in the Plan shall limit, diminish, or otherwise alter Tronox's or Reorganized Tronox's defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs and plans; provided, further, that nothing herein shall be deemed to impose any obligations on Tronox in addition to what is provided for under applicable state law.

**FF.    Professional Fee Claims**

148.    Final Fee Applications.  All final requests for payment of Professional Fee Claims (including the Holdback Amount and Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date) shall be filed with the Bankruptcy Court and served on Tronox and counsel to the Creditors' Committee shall be filed no later than sixty (60) days after the Confirmation Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders in the Chapter 11 Cases, the Allowed Amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court shall be paid by Reorganized Tronox in full in cash.

149.    Payment of Interim Amounts.  Subject to the Holdback Amount, on the Effective Date, Tronox shall pay all amounts owing to Professionals for all outstanding amounts payable relating to prior periods through the Confirmation Date.  To receive payment, on or before Effective Date, each Professional shall submit a detailed invoice covering such period in the manner and providing the detail as set forth in the Professional Fee Order.

150.    Holdback Escrow Account.  On the Effective Date, Reorganized Tronox shall fund the Holdback Escrow Account with Cash equal to the Holdback Amount.  The Holdback Escrow Account shall be maintained in trust for the Professionals with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order or other orders of the Court.  Such funds shall not be considered property of Reorganized Tronox.  The remaining

66

amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by Reorganized Tronox from the Holdback Escrow Account, without interest or other earnings therefrom, when such Claims are Allowed by a Bankruptcy Court order.  When all Professional Fee Claims have been paid in full, amounts remaining in the Holdback Escrow Account, if any, shall be paid to Reorganized Tronox.

151.    <u>Post-Confirmation Date Fees and Expenses</u>.  Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, Tronox or Reorganized Tronox, as the case may be, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by Tronox or Reorganized Tronox.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Tronox or Reorganized Tronox, as the case may be, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

**GG.    United States Trustee Statutory Fees**

152.    Tronox shall pay all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of Tronox's businesses (including any fraction thereof), until the entry of a Final Order, dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

K&E 17922457.18

**HH.    Payment of Fees and Expenses of Indenture Trustee**

153.    On or before the Effective Date, Reorganized Tronox shall pay, as an Allowed Administrative Claim, the reasonable and documented fees and expenses of the Indenture Trustee in full in Cash, in an amount not to exceed $550,000.

154.    Subject to payment in full of the Indenture Trustee Fee Claim in an amount not to exceed $550,000 and the payment of all other fees and expenses (including fees and expenses of counsel) incurred by the Indenture Trustee in administering distributions to holders of Unsecured Notes Claims, to the extent payment of the foregoing fees and expenses is permitted by the Indenture, the Indenture Charging Lien of the Indenture Trustee shall be forever released and discharged.  Once the Indenture Trustee has completed performance of all its duties set forth in the Plan or in connection with any Distributions to be made under the Plan, the Indenture Trustee, and its successors and assigns, shall be relieved of all obligations as Indenture Trustee effective as of the Effective Date.

**II.    Payment of Certain Fees and Expenses**

155.    Tronox shall pay the fees and expenses of the legal counsel and financial advisors to the Backstop Parties as set forth in the Equity Commitment Agreement.  In addition to the fees of Gleacher provided for under the Gleacher engagement letter, Reorganized Tronox may pay, subsequent to the Effective Date, an additional sum of up to $750,000 to Gleacher in connection with Gleacher's services as financial advisor to the Backstop Parties.  Tronox and the Backstop Parties agree that the transactions contemplated hereby comprise an Alternative Transaction under the Gleacher engagement letter.

156.    On the Effective Date, subject to supporting documentation being provided to counsel to each of Tronox, the Backstop Parties and the Creditors' Committee, Tronox shall pay all reasonable fees and expenses of Michael Carroll's counsel, Montgomery, McCracken, Walker

K&E 17922457.18

& Rhoads, LLP, for services rendered and to be rendered in connection with the Chapter 11 Cases, up to a maximum of $200,000.

157.    On the Effective Date, Tronox shall pay the Government Environmental Entities $3,000,000 as an Allowed Administrative Claim.  Such amount shall be deemed to satisfy all fees and expenses incurred, directly or indirectly, in connection with the Plan or the Chapter 11 Cases, including (a) all fees and expenses of any legal or financial advisors to the Government Environmental Entities and any consultants or other persons retained or engaged by or on behalf of the Governmental Environmental Entities and (b) any other out of pocket costs and expenses incurred by the Governmental Environmental Entities.  No Government Environmental Entity shall attempt to recover additional fees or expenses from Tronox or Reorganized Tronox, including through any requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

**JJ.    Exemption from Certain Transfer Taxes and Recording Fees**

158.    Pursuant to and to the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from Tronox to Reorganized Tronox, Tronox Worldwide LLC or to any other Person or Entity) pursuant to, in contemplation of, or in connection with the Plan or pursuant to:  (a) the issuance, distribution, transfer, or exchange of any debt, equity securities, or other interest in Tronox or Reorganized Tronox; (b) the creation, modification, consolidation, assumption, termination, refinancing and/or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment or recording of any lease or sublease; (d) the grant of collateral as security for any or all of the Exit Financing; or (e) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection

K&E 17922457.18

with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall and shall be directed to forego the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment.  The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

## KK.    Retention of Jurisdiction

159.    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, except as otherwise provided in the Plan and the Confirmation Order, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including exclusive jurisdiction to:

- allow, disallow, determine, liquidate, classify, estimate or establish the priority, Secured or unsecured status or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount or allowance of Claims or Equity Interests;

- decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized to be paid by the Tronox Debtors' estates pursuant to the Bankruptcy Code or the Plan;

- resolve any matters related to:  (a) the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which a Tronox Debtor is party or with respect to which a Tronox Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual

70

obligation under any Executory Contract or Unexpired Lease that is assumed; (c) Reorganized Tronox amending, modifying or supplementing after the Effective Date, pursuant to Article V of the Plan, the Assumed Executory Contract and Unexpired Lease List; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

- ensure that Distributions to holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan;

- adjudicate, decide or resolve any motions, adversary proceedings (including the Anadarko Litigation), contested or litigated matters, Causes of Action and any other matters, and grant or deny any applications involving a Tronox Debtor that may be pending on the Effective Date;

- adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

- enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan or the Disclosure Statement;

- enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

- resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

- issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

- resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

- resolve any cases, controversies, suits, disputes or causes of action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the holder of a Claim or Equity Interest for amounts not timely repaid pursuant to Article V.J.1 of the Plan;

- enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

- determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;

71

- enter an order or Final Decree concluding or closing the Chapter 11 Cases;

- adjudicate any and all disputes arising from or relating to Distributions under the Plan;

- consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

- determine requests for the payment of Claims and Equity Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

- hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

- hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

- hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article VIII of the Plan, regardless of whether such termination occurred prior to or after the Effective Date;

- enforce all orders previously entered by the Bankruptcy Court; and

- hear any other matter not inconsistent with the Bankruptcy Code.

## LL.    Other Essential Documents and Agreements

160.    The Amended and Restated Certificate of Incorporation, the Amended and Restated Bylaws, the Registration Rights Agreement, any other agreements, instruments, certificates or documents related thereto and the transactions contemplated by each of the foregoing are approved and, upon execution and delivery of the agreements and documents relating thereto by the applicable parties, the Amended and Restated Certificate of Incorporation, the Amended and Restated Bylaws, the Registration Rights Agreement and any other agreements, instruments, certificates or documents related thereto shall be in full force and effect and valid, binding and enforceable in accordance with their terms without the need for any further notice to or action, order or approval of this Court, or other act or action under applicable law, regulation, order or rule.  Tronox, and after the Effective Date, Reorganized Tronox, are

authorized, without further approval of this Court or any other party, to execute and deliver all agreements, documents, instruments, securities and certificates relating to such agreements and perform their obligations thereunder, including paying all fees due thereunder or in connection therewith.

161.     On or before the Effective Date, Tronox may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Tronox or Reorganized Tronox, as applicable, and upon request all holders of Claims or Equity Interests receiving distributions pursuant to the Plan and all other parties in interest, shall, from time to time, prepare, execute and delivery any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**MM.    Return of Deposits**

162.     All utilities, including any Person who received a deposit or other form of adequate assurance of performance pursuant to section 366 of the Bankruptcy Code during these Chapter 11 Cases (collectively, the "**Deposits**"), including gas, electric, telephone, water, trash and sewer services, shall return such Deposits to Tronox and/or Reorganized Tronox, as applicable, either by setoff against postpetition indebtedness or by cash refund, by no later than ten (10) days following the Effective Date, and as of the Confirmation Date, such utilities are not entitled to make requests for or receive Deposits.

**NN.    Governing Law**

163.     Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents,

K&E 17922457.18

instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) and corporate governance matters; provided, however, that (a) corporate governance matters relating to Tronox or Reorganized Tronox, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Tronox Debtor or Reorganized Tronox Debtor, as applicable; and (b) with respect to the Exit Credit Documents, the terms of such agreements shall apply.

## OO.    Effectiveness of All Actions

164.    Except as set forth in the Plan, all actions authorized to be taken shall be effective on, prior to, or after the Effective Date pursuant to and subject to the terms of the Plan, the agreements related thereto and this Confirmation Order, without further application to, or order of this Court, or further action by the respective officers, directors, members or stockholders of Reorganized Tronox and with the effect that such actions had been taken by unanimous action of such officers, directors, members or stockholders.

## PP.    Approval of Consents and Authorization to Take Acts Necessary to Implement Plan

165.    Pursuant to section 1142(b) of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provision of the business corporation laws of any other state, each of Tronox and Reorganized Tronox hereby is authorized and empowered to take such actions and to perform such acts as may be necessary, desirable or appropriate to comply with or implement the Plan, the Plan Supplement, the Exit Credit Agreement, the other Exit Credit Documents, the Revolving Credit Agreement, the other Revolving Credit Documents, the Registration Rights Agreement, the Management Compensation Programs and any other Plan documents, including the election or appointment, as the case may be, of directors and officers of the New Board as authorized in the Plan, and all documents, instruments, securities and

74

agreements authorized thereunder and related thereto and all annexes, exhibits and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any stockholder or board of directors' approval.    On the Effective Date, the appropriate officers of Reorganized Tronox and members of the New Board are authorized and empowered to issue, execute and deliver the agreements, documents, securities and instruments authorized by and consistent with the Plan in the name of and on behalf of Reorganized Tronox.    Subject to the terms of this Confirmation Order, the Plan and the agreements related thereto, each of Tronox, Reorganized Tronox and the officers and directors thereof are authorized to take any such actions without further corporate action or action of the directors or stockholders of Tronox or Reorganized Tronox.    On the Effective Date, or as soon thereafter as is practicable, Reorganized Tronox shall file any amended certificates of incorporation with the Secretary of State of the state in which each such entity is (or will be) organized, in accordance with the applicable general business law of each such jurisdiction.

166.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement and any documents, instruments, securities, agreements and any amendments or modifications thereto.

## QQ.    Modifications or Amendments

167.    Except as otherwise specifically provided in the Plan, and subject to the conditions precedent to the Effective Date, Tronox, with the reasonable consent of the

75

Replacement DIP Agent, the Creditors' Committee, the Required Backstop Parties and the United States (in consultation with the Nevada Parties) reserves the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, Tronox expressly reserves its right to revoke or withdraw or, with the reasonable consent of the Replacement DIP Agent, the Creditors' Committee, the Backstop Parties and the United States, to alter, amend or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X of the Plan. Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127 of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**RR.    Effect of Conflict between Plan and Confirmation Order**

168.    If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

**SS.    Payment of Statutory Fees**

169.    All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by this Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for

K&E 17922457.18

each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

## TT.    Dissolution of Official Committees

170.    On the Effective Date, the Creditors' Committee and the Equity Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.  Tronox shall not be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee or the Equity Committee after the Effective Date, except with respect to pending fee applications and appeals of the Confirmation Order.

## UU.    Reservation of Rights

171.    Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by Tronox with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of Tronox with respect to the holders of Claims or Equity Interests prior to the Effective Date.

## VV.    Notice of Entry of the Confirmation Order

172.    In accordance with Bankruptcy Rules 2002 and 3020(c), within ten (10) Business Days of the date of entry of the Confirmation Order, Tronox shall serve a notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with notice of the Confirmation Hearing; provided, however, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom Tronox served the notice of the Confirmation Hearing, but received such notice returned marked

77

"undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless Tronox has been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.

173.    Mailing of the notice of entry of the Confirmation Order in the time and manner set forth in the previous paragraph shall be good and sufficient notice under the particular circumstances in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice shall be necessary.

## WW.  Injunctions and Automatic Stay

174.    Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

175.    This Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Equity Interests, Causes of Action, obligations, suits, judgments, damages, demands, debts, rights or liabilities released pursuant to the Plan.

## XX.  Nonseverability of Plan Provisions upon Confirmation

176.    Each term and provision of the Plan, as it may have been altered or interpreted herein, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of Tronox, the Creditors' Committee and the Required Backstop Parties; and (c) nonseverable and mutually dependent.

78

**YY.    Authorization to Consummate**

177.    Tronox is authorized to consummate the Plan on any business day selected by the Debtors after the entry of the Confirmation Order, subject to satisfaction or waiver (by the required parties) of the conditions to the Effective Date set forth in Article IX of the Plan.

178.    Notwithstanding anything to the contrary herein or in the Plan, the Effective Date and consummation of the Plan are contingent on (a) the Court's entry of an order approving the Environmental Claims Settlement Agreement under applicable environmental laws after the completion of public comment; (b) the Environmental Claims Settlement Agreement becoming effective on or before the Effective Date pursuant to paragraph 169 thereof and (c) the Environmental Claims Settlement Agreement not being null and void pursuant to paragraph 170 thereof.  The condition precedent embodied in this paragraph shall not be waived without the consent of the Replacement DIP Agent, the United States and the Nevada Parties, as provided in Article IX.C of the Plan.

**ZZ.    Miscellaneous Provisions**

179.    **Environmental Liability.**  Notwithstanding anything to the contrary herein or in the Plan, nothing shall release, nullify or preclude any liability of Reorganized Tronox as the owner or operator of a property of Reorganized Tronox with respect to any properties owned or operated after the Effective Date (other than with respect to the Henderson Facility, liability for which shall be as set forth in the Environmental Claims Settlement Agreement and the Henderson Facility Lease (as defined in the Environmental Claims Settlement Agreement)).

180.    **Existing Henderson Leases.**  As of the effective date of the Henderson Facility Lease, there shall be no other leases or subleases in effect that relate to the Henderson Facility, other than with Pronto Constructors, Inc. and Industrial Supply Co. Inc. (the "**Existing Henderson Leases**"), any other leases being deemed rejected.  Each of the Existing Henderson

79

Leases is subject and subordinate in all respects to the Henderson Facility Lease. The Existing Henderson Leases will automatically terminate on the termination of the Henderson Facility Lease, and each tenant under the Existing Henderson Leases has acknowledged that it will look solely to Tronox Incorporated (and not to the Henderson Trust) (each as defined in the Henderson Facility Lease) with respect to any obligations of landlord under the Existing Henderson Leases.

181.    **No Successor Liability.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, none of the debtors comprising Reorganized Tronox (a) shall be deemed to be a legal successor, alter ego or continuation of, or have merged with, Tronox, Kerr-McGee Corporation, Anadarko Petroleum Corporation or any of their respective affiliates, subsidiaries and predecessors, and, except as expressly provided in any of the Plan Documents, (b) shall have any liability whatsoever based on any theory of successor or vicarious liability of any kind or character, or based upon any theory or legal principle under or relating to antitrust, environmental, tort, successor or transferee liability law for any act or omission of Tronox that took place on or before the Effective Date.

182.    **Insurance Neutrality.**    Nothing contained herein, in the Plan, the Plan Supplement, the Disclosure Statement or otherwise shall in any way operate to, or have the effect of, altering or impairing in any respect the legal, equitable or contractual rights and defenses of the insureds or insurers under any policy of insurance and related agreements. The rights and obligations of the parties and others under any policy of insurance and related agreements shall be determined under such policies and related agreements, including the terms, conditions, limitations, exclusions and endorsements thereof, which shall remain in full force and effect, and under any applicable non-bankruptcy law.

K&E 17922457.18

183.    **Continuation of Certain Indemnification and Reimbursement Obligations.**
Any obligation to indemnify, pay or reimburse any of the agents or the lenders under the
Prepetition Facilities or the Original DIP Facility shall survive, remain in full force and effect
and be enforceable against Reorganized Tronox after the Effective Date.

184.    **Deemed Objection to Tort Claims.**  Except for Tort Claims previously allowed
by an order of this Court, all Tort Claims are deemed objected to and shall be channeled to the
Tort Claims Trust for allowance or disallowance in accordance with the Tort Claims Trust
Distribution Procedures.

185.    **Tort Claims Trust Agreement.**  The definition of "Future Tort Claimant" in the
Tort Claims Trust Agreement shall be deemed to replace the definition of such term set forth in
Article I of the Plan.  The definition of "Allowed Unknown Tort Claim" in the Tort Claims Trust
Agreement is hereby incorporated into Article I of the Plan as a new defined term.   The
description of the percentage of the Tort Claims Trust Distributable Amount available for
distribution to holders of Allowed Indirect Environmental Claims set forth in section 3.4 of the
Tort Claims Trust Agreement shall control over the description of such percentage set forth in
Article III.B.4 of the Plan.

186.    **Inconsistency with Prior Orders.**  This Confirmation Order shall supersede any
orders issued by this Court prior to the Confirmation Date that are inconsistent with this
Confirmation Order; provided, however, that nothing in this Confirmation Order shall affect the
continuing validity of (a) the *Order Approving Tronox's Entry Into the Kress Creek Settlement
with the United States of America* [Docket No. 1573]; (b) the *Order Approving Revised
Stipulation and Order with Respect to Federal Debt Collection Procedures Act* [Adv. Proc. No.
09-01198 (ALG), Docket No. 52]; and (c) the *Stipulation and Agreed Order (I) Permitting Lead*

81

*Plaintiffs to File Proof of Claim Out of Time and (II) Granting Lead Plaintiffs Limited Relief*

*from the Automatic Stay and Other Related Relief* [Docket No. 2542].

### AAA.  Resolutions of Objections and Concerns of Non-Debtor Parties

187.    **Non-Impairment of Property Tax Liens.**  Any property tax lien securing the

payment of real property taxes shall remain in full force and effect until all taxes, penalties and

interest secured by those liens are paid in full, and such liens shall not be primed by or

subordinated to any liens granted to secure the Exit Financing.  To the extent that 2010 property

taxes are not timely paid in the ordinary course of business, the relevant taxing authorities shall

be entitled to payment of all penalties and interest they would otherwise be entitled to collect

under state law.

188.    **Resolution of Certain Matters with Lead Plaintiffs.**  In full and final resolution

of the objection [Docket No. 2392] of LaGrange Capital Partners, LP and LaGrange Capital

Partners Offshore Fund, Ltd. (the "**Lead Plaintiffs**"), Tronox and the Lead Plaintiffs have

entered into a separate stipulation [Docket No. 2542] which has been "so ordered" by the

Bankruptcy Court.  In connection therewith, Tronox agrees as follows:

> From and after the Effective Date, Reorganized Tronox and any transferee of
> Tronox's or Reorganized Tronox's documents, as the case may be, shall preserve
> and maintain all of Tronox's and Reorganized Tronox's documents, files, books,
> records, and electronic data (including emails) that relate to the claims, defenses
> and allegation in the Securities Litigation (collectively, the "**Documents**")
> whether maintained by Tronox, Reorganized Tronox, any successors to Tronox,
> or transferred to such other transferee, and Reorganized Tronox, Tronox and/or
> such other transferee shall not destroy or otherwise abandon any such Documents
> absent agreement from the Lead Plaintiffs or further order of this Court or such
> other court of competent jurisdiction after a hearing upon notice to all parties in
> interest, including Lead Plaintiffs, with an opportunity to be heard until such time
> as a final, non-appealable judgment is entered in the Securities Litigation.
>
> Nothing in the Plan or this Confirmation Order shall or is intended to (i) affect,
> release, enjoin or impact in any way the prosecution of the claims asserted against
> the existing Non-Debtor Defendants or to be asserted against any Non-Debtor
> (other than the directors and officers being released under the Plan (who are

82

identified in Exhibit A to the stipulation resolving Lead Plaintiffs' objection to the Plan)), or (ii) affect, enjoin or impact the rights of Lead Plaintiffs and/or the Class from seeking discovery from Tronox, Reorganized Tronox or such other transferee of the Retained Assets, or any other assets of Tronox or Reorganized Tronox, to the fullest extent permitted by applicable law or court order.

189.    **Resolution of Certain Matters with Anadarko.**    In full and final resolution of the objection [Dkt. No. 2398] of Anadarko Petroleum Corporation and its affiliates and subsidiaries, including the entity now known as Kerr-McGee Corporation, which was formed in May 2001 (collectively "**Anadarko**"), the parties have agreed as follows:

i.    **Releases; Reservations of Rights.**

190.    Notwithstanding any contrary provision in this Order, the Plan, any documents contained in the Plan Supplement, or any other documents executed in connection with the Plan (collectively, the "**Plan Documents**"), including Articles VIII.A, VIII.D and VIII.E of the Plan, Anadarko shall not be deemed to have waived, released, or otherwise discharged any of its Claims, rights, suits, damages, defenses, actions, remedies, causes of action or other claims, whether known or unknown, foreseen or unforeseen, accrued or unaccrued, contingent, unliquidated or disputed, existing or hereafter arising, in law, equity or otherwise, against any non-Debtor Released Party except (a) as otherwise provided in Article VIII.F (Exculpation) of the Plan, as modified herein and (b) with respect to any claims against those individuals who were directors and officers of the Tronox Debtors on July 7, 2010, which claims shall be satisfied solely from available insurance proceeds as more fully provided in a separate stipulation between the parties to be submitted to the Court at a later date; provided, however, that nothing in this paragraph shall (i) alter the scope of any covenants not to sue, releases or contribution protection provided in the Environmental Claims Settlement Agreement; (ii) permit Anadarko to assert any claim that is derivative of any claim for which Tronox has provided a release or covenant not to sue under any Plan Document, including the Environmental Claims Settlement

83

Agreement; and (iii) permit Anadarko to recover any assets held by any Environmental Response Trust or the Anadarko Litigation Trust. All parties reserve the right to make all available arguments concerning the effect, if any, of the Plan Documents (including the Environmental Claims Settlement Agreement and this paragraph 190), including, but not limited to, in the event that Anadarko is found to be liable for the Tronox Debtors' environmental and/or tort liabilities.

191.    All parties reserve the right to make any available arguments, and assert any available claims and available defenses concerning the effect, if any, of the Plan Documents on the determination of liability or measure of damages (including, to the extent relevant, the value of the Tort Claims and the Environmental Claims) in the Anadarko Litigation, including under section 550 of the Bankruptcy Code.

192.    Nothing in the Plan Documents shall affect Anadarko's rights, if any, to assert prior to entry of an order of the Bankruptcy Court approving the Environmental Claims Settlement Agreement under applicable environmental law, that the Environmental Claims Settlement Agreement is not fair, reasonable or consistent with applicable environmental laws.

### ii.    Setoff/Recoupment.

193.    Notwithstanding any contrary provision in the Plan Documents, including Articles VIII.A and VIII.E of the Plan, Anadarko's (including its affiliates) right (if any) to setoff or recoup against any obligation due from Tronox, Reorganized Tronox or the Released Parties or against the property or Estates of Tronox, Reorganized Tronox or the Released Parties on account of or in connection with or with respect to its Claims shall be preserved, shall not be discharged, and Anadarko (including any of its affiliates) shall not be enjoined from asserting any such rights, irrespective of whether Anadarko or its affiliates have filed a motion requesting the right to perform such setoff and/or recoupment on or before the Confirmation Date; <u>provided</u>,

K&E 17922457.18

however, that Anadarko shall not be permitted to setoff or recoup funds out of any judgment rendered in the Anadarko Litigation other than as provided in Article III.D of the Plan.

### iii.      Disputed Reserve.

194.    Notwithstanding any contrary provision in the Plan Documents, including Article VII.B of the Plan, to the extent the Bankruptcy Court determines the amount of Anadarko's and/or its affiliates' Claims (including any claim for rejection damages) for reserve purposes by estimation or otherwise, the Tronox Debtors shall promptly establish a reserve for any such Claim in any amount so determined.

### iv.      Partial Distributions.

195.    Notwithstanding any contrary provision in the Plan Documents, including Article VII.I of the Plan, the Tronox Debtors shall promptly make a distribution on any portion of the Claims of Anadarko and/or its affiliates that becomes Allowed without regard to whether the entirety of any such Claim (including the Anadarko Section 502(h) Claim) has become Allowed.

### v.      Disallowance of Claims Subject to Avoidance Action.

196.    Notwithstanding any contrary provision in the Plan Documents, including Article VII.G of the Plan, if otherwise Allowed and not subordinated, the Anadarko Section 502(h) Claim shall not be disallowed solely on the basis that Anadarko (including its affiliates) has offset, reduced or recouped any judgment against it in the Anadarko Litigation, rather than paying the amount of such judgment or returning the property recovered.

### vi.      Defaults Deemed Cured.

197.    The following sentence of Article VIII.A of the Plan (Discharge) is hereby deemed stricken:  "Any default by Tronox or its Affiliates with respect to any Claim or Equity Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date."

85

**BBB.   Final Order**

198.    This Confirmation Order is intended to be a final order and the period in which an

appeal must be filed to commence upon the entry hereof.

IT IS SO ORDERED.

Date:  November 30, 2010                         /s/ Allan L. Gropper
New York, New York                               United States Bankruptcy Judge

86

**<u>Exhibit A</u>**

**First Amended Plan of Reorganization**