Richard M. Cieri
Jonathan S. Henes
Patrick J. Nash, Jr. (admitted *pro hac vice*)
Nicole L. Greenblatt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TRONOX INCORPORATED, et al.,[1] | ) | Case No. 09-10156 (ALG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**NOTICE OF FILING AMENDED EXHIBITS TO THE PLAN**
**SUPPLEMENT FOR THE FIRST AMENDED JOINT PLAN OF**
**REORGANIZATION OF TRONOX INCORPORATED *ET AL.* PURSUANT TO**
**CHAPTER 11 OF THE BANKRUPTCY CODE (EXECUTION VERSIONS OF THE**
**TORT CLAIMS TRUST AGREEMENT AND DISTRIBUTION PROCEDURES)**

    **PLEASE TAKE NOTICE** that on October 1, 2010, Tronox Incorporated and its

affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively,

"**Tronox**") filed the solicitation version of the *First Amended Joint Plan of Reorganization of*

*Tronox Incorporated* et al. *Pursuant to Chapter 11 of the Bankruptcy Code* [Ex. A to Dkt. No.

2196] (as may be amended from time to time, including by the modifications filed on November

---

[1]    The debtors in these cases include:  Tronox Luxembourg S.ar.l; Tronox Incorporated; Cimarron Corporation;
    Southwestern Refining Company, Inc.; Transworld Drilling Company; Triangle Refineries, Inc.; Triple S, Inc.;
    Triple S Environmental Management Corporation; Triple S Minerals Resources Corporation; Triple S Refining
    Corporation; Tronox LLC; Tronox Finance Corp.; Tronox Holdings, Inc.; Tronox Pigments (Savannah) Inc.;
    and Tronox Worldwide LLC.

5, 2010 as Ex. B to Dkt. No. 2402, the "**Plan**"),[2] pursuant to which certain materials were required to be filed as a supplement to the Plan.

      **PLEASE TAKE FURTHER NOTICE** that on October 29, 2010,  Tronox filed the Plan Supplement [Dkt. No. 2343] (the "**Plan Supplement**"), which included the forms of the Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures.

      **PLEASE TAKE FURTHER NOTICE** that Tronox hereby files the following amended exhibits to the Plan Supplement, together with redlines reflecting revisions agreed upon by the signatories thereto:

      **Exhibit A**: Tort Claims Trust Agreement

      **Exhibit B**: Tort Claims Trust Distribution Procedures

| | |
|---|---|
| New York, New York<br>Dated: February 4, 2011 | /s/ Nicole L. Greenblatt<br>Richard M. Cieri<br>Jonathan S. Henes<br>Nicole L. Greenblatt<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, New York  10022<br>Telephone:    (212) 446-4800<br>Facsimile:    (212) 446-4900<br><br>- and -<br><br>Patrick J. Nash, Jr.<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, Illinois  60654<br>Telephone:    (312) 862-2000<br>Facsimile:    (312) 862-2200<br><br>Counsel to the Debtors<br>and Debtors in Possession |

---

[2]    Capitalized terms used but not defined herein have the meanings set forth in the Plan.

K&E 18330663

**<u>Exhibit A</u>**

**Tort Claims Trust Agreement**

**TRONOX INCORPORATED TORT CLAIMS TRUST AGREEMENT**

# TABLE OF CONTENTS

**Page**

SECTION I         ESTABLISHMENT OF TORT CLAIMS TRUST ....................................... 2

1.1      Creation and Name ................................................................. 2

1.2      Definitions............................................................................ 3

1.3      Purpose of Tort Claims Trust................................................. 8

1.4      Appointment of Tort Claims Trustee ..................................... 8

1.5      Governance of Tort Claims Trust ........................................... 8

1.6      Transfer of Tort Claims Trust Assets and Rights to Tort Claims Trustee ............ 9

1.7      Tort Claims Trustee's Acceptance of Assets and Assumptions of Liabilities ........................................................................... 10

1.8      Reliance................................................................................ 11

1.9      Instruments of Further Assurance; Information.................... 11

SECTION II        ADMINISTRATION OF TORT CLAIMS TRUST.................................... 11

2.1      Payment of Expenses and Liabilities ................................... 11

2.2      Claims Administration ........................................................ 12

SECTION III       POWERS, LIMITATIONS AND DUTIES OF THE TORT CLAIMS TRUSTEE ............................................................................. 12

3.1      General Powers of Tort Claims Trustee................................ 12

3.2      Additional Powers of the Tort Claims Trustee ..................... 15

3.3      Limitations on Tort Claims Trustee ..................................... 16

3.4      Establishment and Maintenance of Accounts and Reserves................. 18

3.5      Payment of Certain Fees, Expenses, and Costs After Effective Date................. 19

3.6      Investment Power................................................................. 20

3.7      Tax and Reporting Duties of Tort Claims Trustee................ 21

SECTION IV        QUALIFIED SETTLEMENT FUND........................................... 23

4.1      Tax Treatment ...................................................................... 23

4.2      No Right to Reversion with Respect to Tort Claims Trust Assets ..................... 24

4.3      Obligations of the Tort Claims Trustee ................................ 24

4.4      Obligations of Reorganized Tronox...................................... 24

4.5      No Contravention of Requirements ...................................... 25

4.6      Withholding of Taxes and Other Charges ............................ 25

4.7      Other Governmental Disclosures.......................................... 25

# TABLE OF CONTENTS
(continued)

**Page**

SECTION V        TORT CLAIMS TRUSTEE ........................................................ 26

5.1      Initial Tort Claims Trustee ..................................................... 26

5.2      Term of Service ....................................................................... 26

5.3      Successor Tort Claims Trustee ................................................ 27

5.4      Liability of Tort Claims Trustee, Delaware Trustee and Others ........................ 27

5.5      Tort Claims Trust Continuance ............................................... 27

5.6      Reliance by Tort Claims Trustee ............................................ 28

5.7      Tort Claims Trustee's Compensation and Reimbursement ................................. 29

5.8      Indemnification ...................................................................... 34

5.9      Insurance ............................................................................... 34

5.10     No Implied Obligations ........................................................... 34

5.11     No Personal Liability ............................................................. 34

SECTION VI       TRUST ADVISORY COMMITTEE ..................................... 35

6.1      Initial Members of the TAC .................................................... 35

6.2      Duties ..................................................................................... 35

6.3      Term of Office ........................................................................ 35

6.4      Successor Members of the TAC .............................................. 36

6.5      TAC's Employment of Professionals ...................................... 37

6.6      Compensation and Expenses of the TAC ................................ 38

6.7      Procedures for Consultation with and Obtaining the Consent of the TAC ......... 38

SECTION VII      DELAWARE TRUSTEE ......................................................... 41

7.1      There shall be at all times a Delaware Trustee ....................... 41

7.2      The Delaware Trustee shall not be entitled to exercise any powers, nor
         shall the Delaware Trustee have any of the duties and responsibilities, of
         the Tort Claims Trustee set forth herein .................................. 41

7.3      The Delaware Trustee shall serve until such time as the Tort Claims
         Trustee removes the Delaware Trustee or the Delaware Trustee resigns
         and a successor Delaware Trustee is appointed by the Trustees in
         accordance with the terms of Section 7.4 below ..................... 41

7.4      Upon the resignation or removal of the Delaware Trustee, the TAC shall
         appoint a successor Delaware Trustee by delivering a written instrument to
         the outgoing Delaware Trustee .............................................. 42

# TABLE OF CONTENTS
(continued)

**Page**

7.5     The initial Delaware Trustee shall be the individual or entity reflected on the signature pages of this Agreement ................................................................. 42

7.6     Delaware Trustee's Compensation and Reimbursement ..................................... 42

SECTION VIII     DURATION AND TERMINATION OF TORT CLAIMS TRUST ............. 43

8.1     Duration/Termination ......................................................................................... 43

8.2     Continuance of Tort Claim Trust for Winding Up ............................................. 44

8.3     Final Accounting ................................................................................................. 45

SECTION IX     MISCELLANEOUS PROVISIONS ........................................................ 46

9.1     Irrevocability ....................................................................................................... 46

9.2     Settlor, Representative and Cooperation ............................................................ 46

9.3     Applicable Law ................................................................................................... 46

9.4     Entire Agreement; No Waiver ............................................................................ 46

9.5     Amendments ....................................................................................................... 46

9.6     Successors and Assigns ....................................................................................... 47

9.7     No Association, Partnership or Joint Venture ..................................................... 48

9.8     Severability ......................................................................................................... 48

9.9     Notices ................................................................................................................. 48

9.10     Effectiveness ....................................................................................................... 50

9.11     Counterparts ........................................................................................................ 50

9.12     Headings .............................................................................................................. 50

9.13     Confidentiality .................................................................................................... 50

9.14     No Bond Required ............................................................................................... 50

9.15     Dispute Resolution .............................................................................................. 50

9.16     Retention of Jurisdiction ..................................................................................... 51

9.17     Relationship to Plan ............................................................................................ 51

Exhibit A     Tort Claims Trust Distribution Procedures

Exhibit B     Certificate of Trust

# TRONOX INCORPORATED

# TORT CLAIMS TRUST AGREEMENT

THIS AGREEMENT AND DECLARATION OF THE TRUST (the "**Tort Claims Trust Agreement**") dated as of the Effective Date, by and between Tronox Incorporated ("**Tronox**") and its debtor affiliates listed on the signature pages annexed hereto (collectively, the "**Tronox Debtors**"), The Garretson Resolution Group, Inc. as trustee (the "**Tort Claims Trustee**"); Wilmington Trust Company, a Delaware banking corporation, as the trustee for purposes of Chapter 38 of title 12 of the Delaware Code, 12 Del. C. §§3801 *et seq.* (the "**Delaware Trustee**"); and the members of the Tort Claims Trust Advisory Committee as identified on the signature pages to this agreement (the "**TAC**") is executed to facilitate the implementation of the *First Amended Joint Plan of Reorganization of Tronox Incorporated et al. Pursuant to Chapter 11 of the Bankruptcy Code* [Ex. B to Docket No. 2402] (as may be amended, modified or supplemented from time to time, the "**Plan**"). All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

WHEREAS, on January 12, 2009 (the "**Petition Date**"), the Tronox Debtors filed a voluntary petition for relief under chapter 11 of the United States Code (the "**Bankruptcy Code**");

WHEREAS, the Tronox Debtors have reorganized under the Bankruptcy Code in a case pending before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), styled as In re Tronox Incorporated, et al., Case No. 09-10156 (ALG).

WHEREAS, on November 30, 2010, the Bankruptcy Court entered an order confirming the Plan [Docket No. 2567] (the "**Confirmation Order**");

WHEREAS, the Plan provides, inter alia, for Tronox's creation of a trust to make distributions to Holders of Allowed Tort Claims (the "**Tort Claims Trust**");

WHEREAS, pursuant to the Plan, the Tort Claims Trust is to use its assets and the income therefrom to satisfy all of the Tort Claims;

WHEREAS, pursuant to the Plan, the Tort Claims Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "**QSF Regulations**"); and

WHEREAS, it is the intent of Tronox that the Tort Claims Trust be administered, maintained and operated at all times through mechanisms that provide reasonable assurance that the Tort Claims Trust will satisfy all Tort Claims pursuant to the Tort Claims Trust Distribution Procedures, which are attached hereto as Exhibit A.

NOW, THEREFORE, it is hereby agreed as follows:

SECTION I

**ESTABLISHMENT OF TORT CLAIMS TRUST**

1.1    **Creation and Name.**  The parties hereto hereby create a trust known as the Tort Claims Trust, which is the Tort Claims Trust provided for and referred to in the Plan.  The Tort Claims Trust shall constitute a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. §§3801 *et seq.* (as the same may be amended from time to time, the "**Act**"), and the Tort Claims Trustee and the Delaware Trustee shall execute and cause to be filed a Certificate of Trust, in the form attached hereto as Exhibit B, with the Secretary of State of the State of Delaware pursuant to Section 3810 of the Act.  It is the intention of the parties hereto that the Tort Claims Trust shall be a statutory trust under the Act and that this Tort Claims Trust Agreement shall constitute the governing instrument of the Tort Claims Trust.  The Tort Claims Trustee may transact the business and affairs of the Tort Claims Trust in the name of the Tort

Claims Trust, and references herein to the Tort Claims Trust shall include the Tort Claims

Trustee acting on behalf of the Tort Claims Trust.

**1.2**    <u>**Definitions**</u>.

(a)    "**Allowed Asbestos Claim**" means an Asbestos Claim which was the

subject of a timely filed Proof of Claim (or a Proof of Claim that was authorized by a Final Order

to be late filed before the Effective Date), and (a) has been Allowed by a Final Order, (b) is

Allowed (i) pursuant to the Plan, or (ii) in any stipulation that is approved by the Bankruptcy

Court, or (c) a Claim that is Allowed through the Tort Claims Trust Distribution Procedures.

(b)    "**Allowed Future Tort Claim**" means a Tort Claim held by a Future Tort

Claimant that is Allowed by a Final Order.

(c)    "**Allowed Indirect Environmental Claim**" means an Indirect

Environmental Claim which was the subject of a timely filed Proof of Claim (or a Proof of Claim

that was authorized by a Final Order to be late filed before the Effective Date), and (a) has been

Allowed by a Final Order, or (b) is Allowed (i) pursuant to the Plan, (ii) in any stipulation that is

approved by the Bankruptcy Court or (iii) pursuant to any contract, instrument, indenture or

other agreement entered into or assumed in connection with the Plan.

(d)    "**Allowed Non-Asbestos Toxic Exposure Claims**" means a Non-

Asbestos Toxic Exposure Claim which was the subject of a timely filed Proof of Claim (or a

Proof of Claim that was authorized by a Final Order to be late filed before the Effective Date)

and is Allowed through the Tort Claims Trust Distribution Procedures.

(e)    "**Allowed Property Damage Claims**" means a Property Damage Claim

which was the subject of a timely filed Proof of Claim (or a Proof of Claim that was authorized

by a Final Order to be late filed before the Effective Date) and (a) has been Allowed by a Final

Order, (b) is Allowed (i) pursuant to the Plan, or (ii) in any stipulation that is approved by the Bankruptcy Court, or (c) that is Allowed through the Tort Claims Trust Distribution Procedures.

(f)    "**Allowed Tort Claim**" means, collectively, Allowed Asbestos Claims, Allowed Future Tort Claims, Allowed Indirect Environmental Claims, Allowed Non-Asbestos Toxic Exposure Claims, Allowed Property Damage Claims, and any Allowed Unaccounted-for Tort Claim.

(g)    "**Allowed Unaccounted-for Tort Claim**" means any Tort Claim that is (a) (i) a Claim that is listed in the Schedules by Tronox as neither disputed, contingent nor unliquidated, and as to which Tronox or any other party in interest has not filed an objection by the Claims Objection Bar Date or such other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules or the Bankruptcy Court or (ii) that is a Claim as to which a Proof of Claim was timely filed and as to which no objection was filed by the Claims Objection Bar Date; and (b) is not an Asbestos Claim, Future Tort Claim, Indirect Environmental Claim, Non-Asbestos Toxic Exposure Claim, or Property Damage Claim, which Tort Claim is Allowed through the Tort Claims Trust Distribution Procedures.

(h)    "**Anadarko Litigation**" means the adversary proceeding pending in the Bankruptcy Court captioned *Tronox Incorporated, et al. v. Anadarko Petroleum Corporation, et al.*, Adversary Proceeding No. 09-01198 (ALG).

(i)    "**Asbestos Claims**" means, collectively, any Tort Claims, or allegation or portion thereof against, or any debt, liability or obligation of, any Tronox Debtor or non-debtor Affiliate thereof resulting directly or indirectly from alleged injury to a person or property from asbestos exposure or release, including all claims for indemnification or contribution relating to alleged injury from asbestos exposure or release, whether or not such alleged injury was known or had manifested as of Confirmation, to the extent arising, directly or indirectly, from acts,

-4-

omissions, business or operations of any Tronox Debtor, including all retained claims, debts, obligations or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general and special damages).

(j)     "**Effective Date**" means the date selected by Tronox that is a Business Day after the Confirmation Date on which the conditions to the occurrence of the Effective Date have been met or waived pursuant to Article IX.B and Article IX.C of the Plan. Unless otherwise specifically provided in the Plan, anything required to be done by Tronox or Reorganized Tronox, as applicable, on the Effective Date may be done on the Effective Date or as soon as reasonably practicable thereafter.

(k)     "**Final Order**" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek certiorari, or move for a new trial, re-argument, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing has been timely filed, or as to which any appeal that has been taken, any petition for certiorari, or motion for a new trial, review, re-argument, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

(l)     "**Funded Tort Claims Trust Amount**" means $12.5 million in Cash, which Tronox will contribute to the Tort Claims Trust on the Effective Date.

(m)     "**Future Tort Claimant**" means an Entity that establishes that it holds a Tort Claim that arose prior to the Effective Date and was not discharged under the Plan.

(n)    "**Indirect Environmental Claim**" means a Claim held by a private party for breach of contract, indemnification, contribution, reimbursement or cost recovery related to environmental monitoring or remediation, including Claims for contribution or direct costs under any Environmental Law.

(o)    "**Non-Asbestos Toxic Exposure Claims**" means timely filed Tort Claims against any Tronox Debtor for personal injury, wrongful death, sickness or disease arising directly or indirectly from exposure to or release of creosote, benzene, radiation or other environmental contamination or chemical exposure or release.

(p)    "**Proof of Claim**" means a proof of Claim timely filed against any of the Tronox Debtors in the Chapter 11 Cases.

(q)    "**Property Damage Claims**" means timely filed private party property damage, remediation or restoration Tort Claims related to creosote, benzene, or other chemical exposure or release, or environmental contamination, radiation (including naturally occurring radioactive material) or related matters.

(r)    "**Tort Claim**" means non-governmental Claims against any Tronox Debtor, whether such Claims are known or unknown, whether by contract, tort or statute, whether existing or hereinafter arising, for death, bodily injury, sickness, disease, medical monitoring or other personal physical injuries or damage to property to the extent caused or allegedly caused directly or indirectly by the presence of or exposure to any product or toxin manufactured, stored, or disposed of, or other property owned, operated or used for storage or disposal by, any Tronox Debtor or any Entity for whose products or operations any Tronox Debtor allegedly has liability, including all such Claims relating to the Owned Sites, the Other Sites, the Environmental Trust Assets, the Nevada Assets or the Retained Assets to the extent owned, operated or used for disposal by, any Tronox Debtor prior to the Effective Date and not

-6-

by Reorganized Tronox, including Non-Asbestos Toxic Exposure Claims, Property Damage

Claims, Asbestos Claims, Indirect Environmental Exposure Claims, and Claims of Future Tort

Claimants.  For the avoidance of doubt, Tort Claims do not include any workers' compensation

claims brought directly by a past or present employee of any Tronox Debtor under an applicable

workers' compensation statute.

(s)     "**Tort Claims Insurance Assets**" means all net proceeds (after deduction

of counsel's contingency fee only) of any insurance settlements or recoveries, or the rights to

such proceeds, from any Insurance Policies providing any coverage for the benefit of any

Holders of Tort Claims, including (a) Home Indemnity Insurance, Policy Numbers:   GA

4389610 (1/1/73 - 1/1/74), GA 4389610 (1/1/74 - 1/1/75), GA 4389610 (1/1/75 - 1/1/76), GA

9119366 (1/1/76 - 1/1/77), GA 9119366 (1/1/77 - 7/1/78), GA 9697500 (7/1/78 - 7/1/79), GA

9730184 (7/1/79 - 7/1/80) GA 9730184 (7/1/80 - 7/1-81); (b) Old Republic Insurance Company,

Commercial General Liability Policy Numbers:  MWZ 43816 (7/1/85 - 7/1/86), MWZ 43956

(7/1/86 - 7/1/87), MWZY 10049 (7/1/87 - 7/1/88); (c) Travelers (Aetna) Indemnity Company,

Policy   Numbers:     08AL018757SR  (1/15/65 - 1/1/66),  8XN4SC  (7/1/65 - 1/1/66),

40AL00500SR(Y) (1/1/66 - 1/1/67), 8XN4SC (1/1/66 - 1/1/67), 40AL00500SR(Y) (1/1/67 -

1/1/68), 8XN4SC (1/1/67 - 1/1/68), 40AL00500SR(Y) (1/1/68 - 1/1/69), 8XN4SC (1/1/68 -

4/8/68), 8XN4SC (4/8/68 - 1/1/69); and (d) policies issued by Century Indemnity Co. and

described in Dkt. No. 1274.

(t)     "**Tort Claims Trust Distributable Amount**" means the amount available

for Distribution from the Tort Claims Trust from time to time, after payment of administrative

expenses as provided in the Tort Claims Trust Agreement.

(u)     "**Tort Claims Trust Distribution Procedures**" means the procedures to

be implemented by the Tort Claims Trustee, pursuant to the terms and conditions of the Plan and

the Tort Claims Trust Agreement, to process, liquidate and make Distributions on account of Tort Claims. Final determinations on the allowance or disallowance of Tort Claims for Distribution purposes shall be made in accordance with the Tort Claims Trust Distribution Procedures.

**1.3** **Purpose of Tort Claims Trust.**

(a)    The Tort Claims Trust is established for the sole purpose of assuming the liabilities of the Tronox Debtors, their predecessors and successors in interest, for all Tort Claims and to use the Tort Claims Trust Distributable Amount to pay the Holders of Allowed Tort Claims in accordance with the Plan, this Tort Claims Trust Agreement, and the Tort Claims Trust Distribution Procedures, and in a manner that is fair, reasonable and equitable in light of the limited assets available to satisfy the Tort Claims.

(b)    The Tort Claims Trust shall have no objective or authority to carry on or conduct any trade or business, or accept an assignment of any claim or right of action from, or assume liabilities of, any person or entity other than the Tronox Debtors as predecessors and successors in interest, and no part of the Tort Claims Trust's assets or proceeds, revenue or income therefrom, shall be used or disposed of by the Tort Claims Trust in furtherance of any trade or business.

**1.4**    **Appointment of Tort Claims Trustee.**  As of the Effective Date, the initial Tort Claims Trustee shall be the entity appearing on the signature pages of this Tort Claims Trust Agreement, which hereby accepts the trust imposed on it by this Tort Claims Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Tort Claims Trust Agreement.

**1.5**    **Governance of Tort Claims Trust.**  The Tort Claims Trust shall be administered by the Tort Claims Trustee as further provided herein. The Tort Claims Trustee's powers are

-8-

exercisable solely in a fiduciary capacity, subject to the limitations set forth in Section 5.4 below, consistent with, and in furtherance of, the purposes of this Tort Claims Trust Agreement and not otherwise.  Subject to the terms and conditions of this Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures, the Tort Claims Trustee may delegate responsibility for discrete issues or decisions to one or more third parties subject to continued oversight by the Tort Claims Trustee.

      **1.6**      <u>**Transfer of Tort Claims Trust Assets and Rights to Tort Claims Trustee**</u>.

(a)      Pursuant to the Plan, the Tort Claims Trust shall be funded with the following:  (i) 12% of the proceeds of the Anadarko Litigation, in accordance with the Anadarko Litigation Trust Agreement, (ii) the Funded Tort Claims Trust Amount and (c) the Tort Claims Insurance Assets.  The sole recourse of Holders of Tort Claims for or in respect of such Tort Claims shall be against the Tort Claims Trust, and such Holders shall have no right at any time to assert Tort Claims against Reorganized Tronox or any of its assets.

(b)      Holders of Allowed Tort Claims will receive on account of such allowed Tort Claims a distribution from the Tort Claims Trust in accordance with the Tort Claims Trust Distribution Procedures.

(c)      The Tronox Debtors and Reorganized Tronox shall not be required to pay any fee or expense for, or assume any liabilities related to, the operation or administration of the Tort Claims Trust or any other arrangement established with respect to the determination, satisfaction or resolution of any issues related to the Tort Claims (which fees and expenses shall be covered by funds contributed to the Tort Claims Trust).

**1.7**    **Tort Claims Trust's and Trustee's Acceptance of Assets and Assumptions of Liabilities.**

(a)    The Tort Claims Trustee hereby accepts the duties as trustee imposed on it by this Tort Claims Trust Agreement and agrees to observe and perform such duties on and subject to the terms and conditions set forth in this Tort Claims Trust Agreement.

(b)    In connection with and in furtherance of the purposes of the Tort Claims Trust, the Tort Claims Trustee hereby expressly accepts the transfer of assets to the Tort Claims Trust pursuant to Section 1.6 and subject to the terms of the Plan.

(c)    The Tort Claims Trustee hereby further agrees to establish and maintain the accounts of the Tort Claims Trust and to distribute the assets of the Tort Claims Trust in accordance with the Plan, this Tort Claims Trust Agreement, and the Tort Claims Trust Distribution Procedures.

(d)    In furtherance of the purposes of and on behalf of the Tort Claims Trust, the Tort Claims Trust hereby expressly assumes all liability for (i) all Allowed Tort Claims and Tort Claims to be Allowed or disallowed pursuant to this Agreement and the Tort Claims Trust Distribution Procedures and (ii) all premiums, deductibles, retrospective premium adjustments, security or collateral arrangements, or any other charges, costs, fees or expenses (if any) that become due to any insurer as a result of Allowed Tort Claims.  All indemnity, defense cost and insurance liabilities shall be paid exclusively by the Tort Claims Trust and shall not be personal liabilities of the Tort Claims Trustee unless caused by the Tort Claims Trustee's own breach of trust constituting fraud, bad faith or willful misconduct.

(e)    In furtherance of the purposes of the Tort Claims Trust, the Tort Claims Trust expressly assumes all liabilities and responsibility for all Allowed Tort Claims (subject to the limitations on liability described in Section 5.4 below), and neither the Tronox Debtors nor

-10-

Reorganized Tronox shall have any further financial or other responsibility or liability therefore. Except as otherwise provided in this Tort Claims Trust Agreement, the Tort Claims Trust shall have all defenses, counterclaims, cross-claims, offsets and recoupments, as well as rights of indemnification, contribution, subrogation and similar rights, regarding such claims that the Tronox Debtors or Reorganized Tronox have or would have had under applicable law. Regardless of the foregoing, however, a claimant must meet otherwise applicable federal, state and foreign statutes of limitations and repose.

**1.8**    **Reliance.**  The Tort Claims Trustee may rely upon Tronox's Schedules of Assets and Liabilities and all other information provided by Tronox or its representatives concerning Tort Claims, the reconciliation thereof and documents supporting such reconciliation, and the Proof of Claim register maintained by Kurtzman Carson Consultants LLC.

**1.9**    **Instruments of Further Assurance; Information.**  Reorganized Tronox, and such persons as shall have the right and power to do so after the Effective Date, shall, upon reasonable request of the Tort Claims Trustee or its successors or assigns, execute, acknowledge and deliver such further instruments, documents, books and records and take, provide further information, or cause to be taken, all such further actions as may be necessary or proper to effectively carry out the purposes of this Tort Claims Trust Agreement, the Tort Claims Trust Distribution Procedures, and the Plan and to otherwise carry out the intent of the parties hereunder, under the Tort Claims Distribution Procedures, and under the Plan.

**SECTION II**

**ADMINISTRATION OF TORT CLAIMS TRUST**

**2.1**    **Payment of Expenses and Liabilities.**

(a)    Payment of all Tort Claims Trust expenses and liabilities with respect to Tort Claims shall be payable solely by the Tort Claims Trustee out of the Tort Claims Trust.

(b)    Neither the Tronox Debtors, Reorganized Tronox, their predecessors, subsidiaries, successors in interest, the present or former directors, officers, employees or agents of the Tronox Debtors, Reorganized Tronox, nor the Tort Claims Trustee or any of its officers, agents, advisors or employees shall be liable for the payment of any Tort Claims Trust expense or any other liability of the Tort Claims Trust.

**2.2**    **Claims Administration**.    The Tort Claims Trustee shall promptly proceed to implement the Tort Claims Trust Distribution Procedures.

SECTION III

**POWERS, LIMITATIONS AND DUTIES OF THE TORT CLAIMS TRUSTEE**

**3.1**    **General Powers of Tort Claims Trustee.**

(a)    The Tort Claims Trustee is and shall act as the fiduciary to the Tort Claims Trust in accordance with the provisions of this Tort Claims Trust Agreement, the Tort Claims Trust Distribution Procedure and the Plan.    The Tort Claims Trustee shall, at all times, administer the Tort Claims Trust and the assets therein in accordance with the purposes set forth in Section 1.3 hereof.    Subject to the limitations set forth in this Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures, the Tort Claims Trustee shall have the power to take any and all actions that, in the judgment of the Tort Claims Trustee, are necessary or proper to fulfill the purposes of the Tort Claims Trust, including, without limitation, each power expressly granted in this Section 3.1, any power reasonably incidental thereto and any trust power now or hereafter permitted under the laws of the State of Delaware.    In addition, except as required by applicable law or otherwise specified herein, the Tort Claims Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(b)    Subject to and without limiting the generality of Sections 1.3  and 3.1(a) above, and except as limited below, the Tort Claims Trustee shall have the power to:

-12-

(i)      receive and hold the assets of the Tort Claims Trust and exercise all rights with respect thereto, including the right to vote and sell any securities that are included in the Tort Claims Trust assets;

(ii)      invest the monies held from time to time by the Tort Claims Trust;

(iii)      pay liabilities and expenses of the Tort Claims Trust, including, but not limited to, Tort Claims Trust expenses;

(iv)      establish such funds, reserves and accounts within the Tort Claims Trust as required by the Plan, the Tort Claims Trust Distribution Procedures and as otherwise may be deemed by the Tort Claims Trustee to be necessary in carrying out the purposes of the Tort Claims Trust;

(v)      sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding concerning the Tort Claims Trust;

(vi)      make, pursue (by litigation or otherwise), collect, compromise or settle, in the name of the Tort Claims Trust or the name of Reorganized Tronox, any claim, right, action or cause of action included in the Tort Claims Trust, including, but not limited to, insurance recoveries, before any court of competent jurisdiction; provided, however, that settlement of actions before the Bankruptcy Court require the approval of the Bankruptcy Court;

(vii)      establish, supervise and administer the Tort Claims Trust in accordance with the Tort Claims Trust Distribution Procedures and the terms thereof;

(viii)      sell, transfer, or exchange any or all of the assets of the Tort Claims Trust at such prices and upon such terms as the Tort Claims Trustee and the TAC, through its unanimous approval, may consider proper, consistent with the other terms of this Tort Claims Trust Agreement;

-13-

(ix)        enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the Tort Claims Trust to operate;

(x)        compensate the Delaware Trustee, the TAC members, and their employees, legal, financial, accounting, investment and other advisors, consultants, independent contractors and agents, and reimburse the Delaware Trustee and the TAC members for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder, in accordance with Section 6.5 below and the separate fee agreement referenced in Section 7.6 below;

(xi)        in accordance with Section 5.8 below, defend, indemnify and hold harmless (and purchase insurance to defend, indemnify and hold harmless) (A) the Tort Claims Trustee, (B) the Delaware Trustee, (C) the TAC members, (D) the directors, officers and employees of the Tort Claims Trust, and (E) any agents, advisors and consultants of the Tort Claims Trust or the TAC, to the fullest extent that a statutory trust organized under the laws of the State of Delaware is, from time to time, entitled to indemnify and/or insure its directors, trustees, officers, employees, agents, advisors and representatives;

(xii)        appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing, forecasting and other consultants and agents as the business of the Tort Claims Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Tort Claims Trustee permit and as the Tort Claims Trustee, in its discretion, deems advisable or necessary in order to carry out the terms of the Tort Claims Trust;

(xiii)        remit payment to employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors and agents, including those engaged by the Tort Claims Trust;

-14-

(xiv)     execute and deliver such instruments as the Tort Claims Trustee considers proper in administering the Tort Claims Trust;

(xv)     enter into such other arrangements with third parties as are deemed by the Tort Claims Trustee to be necessary in carrying out the purposes of the Tort Claims Trust, provided such arrangements do not conflict with any other provision of this Tort Claims Trust Agreement;

(xvi)     consult with the TAC as required under this Tort Claims Trust Agreement at such other times and with respect to such other issues relating to the conduct of the Tort Claims Trust as the Tort Claims Trustee considers desirable; and

(xvii)     consult with Reorganized Tronox at such times and with respect to such issues relating to the conduct of the Tort Claims Trust as the Tort Claims Trustee considers desirable.

(c)     The Tort Claims Trustee shall consult with the TAC (i) on the general implementation and administration of the Tort Claims Trust; (ii) on the general implementation and administration of the Tort Claims Trust Distribution Procedures; (iii) on an annual budget for the reimbursable expenses contemplated by Sections 3.1(b)(ix), (xii) and (xiii) of this Trust Agreement; and (iv) on such other matters as may be required under this Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures.

**3.2**     **Additional Powers of the Tort Claims Trustee.**

(a)     Subject to the express limitations contained herein, the Tort Claims Trustee shall have, and may exercise with respect to the assets of the Tort Claims Trust, or any part thereof, and to the administration and distribution of such assets, all powers now or hereafter conferred on trustees by the laws of the State of Delaware.

-15-

(b)     The powers conferred by this Section 3.2 in no way limit any power conferred on the Tort Claims Trustee by any other section hereof but shall be in addition thereto; provided, however, that the powers conferred by this Section 3.2 are conferred and may be exercised only and solely within the limitations and for the limited purposes imposed and expressed herein and in the Plan.

### 3.3     Limitations on Tort Claims Trustee.

(a)     The Tort Claims Trustee shall carry out the purposes of the Tort Claims Trust and the directions contained herein, and shall not at any time, on behalf of the Tort Claims Trust or the Holder of Tort Claims (a) enter into or engage in any business, (b) accept an assignment of any right of action from any person or entity other than Tronox, or (c) assume any liabilities of, any person or entity other than the Tronox Debtors, except as authorized by this Tort Claims Trust Agreement.  Furthermore, no part of the Tort Claims Trust, or the proceeds, revenue or income therefrom shall be used or disposed of by the Tort Claims Trustee in furtherance of any business other than as contemplated herein or by the Plan.

(b)     This limitation shall apply irrespective of whether the conduct of any such business activities is deemed by the Tort Claims Trustee to be necessary or proper for the conservation and protection of the Tort Claims Trust.  The Tort Claims Trustee may not hold a controlling interest in the stock of, or be a partner, an officer or a director of any of the Holders of Tort Claims nor may the Tort Claims Trustee have the power to guarantee any Tort Claim.

(c)     The Tort Claims Trustee shall be required to obtain the consent of the TAC pursuant to the Consent Process set forth in Section 6.7(b) below, in addition to other instances contained herein, in order:

(i)     to establish and/or to change the "Claims Materials" to be provided Holders of Tort Claims under Section 5.1 of the Tort Claims Trust Distribution Procedures;

-16-

(ii)    to change the form of release to be provided pursuant to Section 4.6 of the Tort Claims Trust Distribution Procedures;

(iii)    to enter into an agreement settling or otherwise resolving the liability of any insurer under any insurance policy of legal action related thereto;

(iv)    to change the compensation of the Tort Claims Trustee, the Delaware Trustee, or the members of the TAC, other than to reflect reasonable cost-of-living increases or changes approved by the Bankruptcy Court as otherwise provided herein; provided that a change in the compensation of the Delaware Trustee shall also require the consent of the Delaware Trustee;

(v)    to take structural or other actions to minimize any tax on the Tort Claims Trust Assets;

(vi)    to amend any provision of this Agreement in accordance with the terms hereof (and the consent of the Delaware Trustee solely to the extent any such amendment adversely affects the rights, duties and obligations of the Delaware Trustee hereunder);

(vii)    to amend any provision of the Tort Claims Trust Distribution Procedures in accordance with the terms thereof;

(viii)    if outside of the Tort Claims Trust's ordinary course of administration, to disclose any information, documents or other materials to preserve, litigate, resolve or settle coverage, or to comply with an applicable obligation under an insurance policy or insurance settlement agreement pursuant to Section 3.1(b)(vi) above ;

(ix)    for all purposes of this Tort Claims Trust Agreement and the Act, the consent of the TAC shall be deemed the consent of the Beneficial Owners.

(d)    The Tort Claims Trustee shall meet with the TAC no less often than quarterly.  The Tort Claims Trustee shall meet with the TAC between such quarterly meetings at

mutually convenient times and locations when so requested by any member of the TAC. The Delaware Trustee shall not be required or permitted to attend meetings.

(e)     The Tort Claims Trustee, upon notice from the TAC, if practicable in view of pending business, shall, at the next meeting with the TAC, consider issues submitted by them.

**3.4**     **Establishment and Maintenance of Accounts and Reserves.**  The Tort Claims Trustee shall create four separate funds as described in the Plan.  Specifically, the Tort Claims Trustee shall create:

**Fund A**, which shall be a fund established for the payment of Allowed Asbestos Claims, Allowed Future Tort Claims, and any Allowed Unaccounted-for Tort Claim, and which shall consist of a separate sub-account within the Tort Claims Trust equal to six and one-quarter percent (6.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund; the *Res* is defined in Section 1.1 of the TDPs and the Excess Anadarko Fund is defined in Section 1.5(e) of the TDPs);

**Fund B**, which shall be a fund established for the payment of Allowed Indirect Environmental Claims, and which shall consist of a separate sub-account within the Tort Claims Trust equal to .15625 percent of the *Res* (excluding from the *Res* the Excess Anadarko Fund) for each whole million dollars of aggregate Allowed Indirect Environmental Claims (.0015625 times the number of whole millions of dollars of Allowed Category B Claims times the *Res* (excluding from the *Res* the Excess Anadarko Fund)), but in no event more than six and one-quarter percent (6.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund);

**Fund C**, which shall be a fund established for the payment of Allowed Property Damage Claims, and which shall consist of a separate sub-account within the Tort Claims Trust equal to .125 percent of the *Res* (excluding from the *Res* the Excess Anadarko Fund) for each whole million dollars of aggregate Allowed Property Damage Claims (.00125 times the number of

-18-

whole millions of dollars of Allowed Category C Claims times the *Res* (excluding from the *Res* the Excess Anadarko Fund)), but in no event more than six and one-quarter percent (6.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund); and

**Fund D**, which shall be a fund established for payment of the Allowed Non-Asbestos Toxic Exposure Claims, and which shall consist of a separate sub-account within the Tort Claims Trust equal to the balance of the *Res* (excluding from the *Res* the Excess Anadarko Fund) not otherwise allocated to Funds A, B, and C pursuant to Sections 1.5(a)-(c) above, but in any event not less than eighty-one and one-quarter percent (81.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund). For the avoidance of doubt, portions of the *Res* not allocated to Fund B or Fund C in accordance the provisions in this Section 3.4 shall be allocated solely to Fund D.

In addition, the Tort Claims Trustee may, from time to time, create such other accounts and reserves within the Tort Claims Trust as it may deem necessary, prudent or useful in order to provide for the payment of expenses and payment of Tort Claims and may, with respect to any such account or reserve, restrict the use of monies therein. The Tort Claims Trustee may also maintain such additional accounts and reserves as may be required by applicable law or by order of the Bankruptcy Court.

### 3.5     Payment of Certain Fees, Expenses, and Costs After Effective Date.

The Tort Claims Trustee shall, within thirty (30) days after the Effective Date, pay from Fund D the sum of Three Million Dollars ($3 Million) to The Powell Law Group, P.C. ("**PLG**") as partial compensation and reimbursement for the fees, costs, and expenses (including, but not limited to, expert witness and consulting expert fees, fees for outside counsel retained by PLG related to committee and other work necessary to establish the Tort Claims Trust, and court costs) that PLG incurred in pursuing the claims of its clients who are Holders of Non-Asbestos Toxic Exposure Claims, who comprise the majority of the Holders of Non-Asbestos Toxic

Exposure Claims (the "**Initial Fund D Payment**").  The Initial Fund D Payment shall be credited towards the amounts that PLG is entitled to recover from those clients' recoveries pursuant to the terms of PLG's contracts with those clients, which recoveries shall be paid once the Tort Claims Trust begins paying Tort Claims at the times and in the manners specified in the TDPs.  PLG shall provide to the Tort Claims Trustee an accounting of the per claimant expenses and fees allocated to this Initial Fund D Payment at least 30 days before the Trustee is required to pay any of the PLG Fund D claimants.

       **3.6**      **Investment Power.**

       (a)      The Tort Claims Trustee shall not be required to invest any monies received by the Tort Claims Trust.  To the contrary, in the exercise of its reasonable judgment, the Tort Claims Trustee may hold monies to be distributed to Holders of Allowed Tort Claims within sixty (60) days in a non-interest bearing account.

       (b)      Investment of monies held in the Tort Claims Trust shall be administered in the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs, subject to the following limitations and provisions:

       (i)      The Tort Claims Trust shall not acquire, directly or indirectly, equity in any entity.

       (ii)      The Tort Claims Trust shall not acquire or hold any long-term debt securities unless such securities are (A) rated "Baa" or higher by Moody's Investors Service ("**Moody's**"), "BBB" or higher by Standard & Poor's Financial Services LLC ("**S&P**") or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency or (B) issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(iii)     The Tort Claims Trust shall not acquire or hold for longer than ninety (90) days any commercial paper unless such commercial paper is rated "Prime-1" or higher by Moody's, "A-1" or higher by S&P or has been given an equivalent rating by another nationally recognized statistical rating agency.

(iv)     The Tort Claims Trust shall not acquire or hold any certificates of deposit unless all publicly held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit and the holding company, if any, of which such financial institution is a subsidiary, satisfy the standards set forth herein.

(v)     The Tort Claims Trust shall not acquire or hold any repurchase obligations.

(vi)     The Tort Claims Trust shall not acquire or hold any options.

(c)     The Tort Claims Trustee may liquidate such investments if the Tort Claims Trustee determines in his or her discretion that such liquidation is necessary to protect the Tort Claims Trust from loss on the amounts invested.

(d)     The Tort Claims Trustee shall be restricted to the holding and collection of the assets of the Tort Claims Trust and the payment and distribution thereof for the purposes set forth in the Plan, in this Tort Claims Trust Agreement, and in the Tort Claims Trust Distribution Procedures and to the conservation, protection and maximization of the Tort Claims Trust and to the administration thereof in accordance with the provisions of this Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures.

(e)     The Tort Claims Trustee shall keep all assets of the Tort Claims Trust segregated from, and shall not commingle any assets with, any assets of any other person, including any of the Tort Claims Trustee's own assets.

-21-

### 3.7     Tax and Reporting Duties of Tort Claims Trustee.

(a)     The Tort Claims Trustee shall (i) timely file such income tax and other returns and statements and shall timely pay all taxes required to be paid by the Tort Claims Trust, (ii) comply with all withholding obligations, as required under the applicable provisions of the Internal Revenue Code ("**IRC**") and of any state law and the regulations promulgated thereunder, (iii) meet, without limitation, all requirements necessary to qualify and maintain qualification of the Tort Claims Trust as a qualified settlement fund within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC and (iv) take no action that could cause the Tort Claims Trust to fail to qualify as a qualified settlement fund within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC.

(b)     The Tort Claims Trustee shall timely account to the Bankruptcy Court as follows:

(i)     As soon as practicable, but no later than 60 days after each calendar quarter or the termination of the Tort Claims Trust, the Tort Claims Trustee shall file with the Bankruptcy Court a written report and account showing (i) the assets and liabilities of the Tort Claims Trust at the end of such quarter or upon termination of the Tort Claims Trust and the receipts and disbursements of the Tort Claims Trust for such quarter, (ii) any changes in the assets or to the allowance of Tort Claims which had not been previously reported, (iii) a general description of the activities of the Tort Claims Trust and (iv) if applicable, the amount of compensation paid to the Tort Claims Trustee for the preceding quarter.  The Tort Claims Trustee may file similar reports for such interim periods as the Tort Claims Trustee, in its discretion, deems advisable.  Simultaneously with delivery of each set of financial statements referred to above, the Tort Claims Trustee shall cause to be prepared and filed with the Bankruptcy Court a

report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements. The Tort Claims Trustee shall provide a copy of such report to Reorganized Tronox when such report is filed.

(ii)    The Tort Claims Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within 120 days following the end of each fiscal year, an annual report containing financial statements of the Tort Claims Trust (including, without limitation, a balance sheet of the Tort Claims Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Tort Claims Trustee and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of Tort Claims and as to the conformity of the financial statements with generally accepted accounting principles. The Tort Claims Trustee shall provide a copy of such report to Reorganized Tronox, the Delaware Trustee, and the TAC when such reports are filed with the Bankruptcy Court.

(iii)    All materials required to be filed with the Bankruptcy Court by this Section 3.7 shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Office of the United States Trustee for the Southern District of New York.

(c)    The Tort Claims Trustee shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projection covering such fiscal year and the succeeding four fiscal years (the "**Annual Report**"). The Tort Claims Trustee shall provide a copy of the Annual Report to the Bankruptcy Court.

**SECTION IV**

**QUALIFIED SETTLEMENT FUND**

4.1    **Tax Treatment.**  The Tort Claims Trust is intended to be treated for U.S. federal income tax purposes as a "qualified settlement fund" as described within the QSF Regulations. Accordingly, for all U.S. federal income tax purposes the transfer of assets to the Tort Claims Trust will be treated as a transfer to a trust satisfying the requirements of the QSF Regulations by the Tronox Debtors, as transferors, for distribution to Holders of Tort Claims and in complete settlement of such Tort Claims.

4.2    **No Right to Reversion with Respect to Tort Claims Trust Assets.**  After the Trust Distribution Effective Date, neither the Tronox Debtors nor Reorganized Tronox will have any rights to any refunds or reversion with respect to any Tort Claims Trust Assets or any earnings thereon.

4.3    **Obligations of the Tort Claims Trustee.**  The Tort Claims Trustee shall be the "administrator" (as defined in the QSF Regulations) of the Tort Claims Trust and shall (a) timely file such income tax and other returns and statements and timely pay all taxes required to be paid from the assets in the Tort Claims Trust as required by law and in accordance with the provisions of the Plan and this Tort Claims Trust Agreement, (b) in the event that Reorganized Tronox elects to treat the Torts Claims Trust as a grantor trust pursuant to Treasury Regulation §1.468B-1(k)(1), provide Reorganized Tronox with any statements or reports required by the QSF Regulations or Treasury Regulation §1.671-4, to enable Reorganized Tronox to calculate its share of the Torts Claim Trust's tax obligations and attributes, (c) comply with all withholding obligations, as required under the applicable provisions of the IRC and of any state law and the regulations promulgated thereunder, (d) meet all other requirements necessary to qualify and maintain qualification of the Tort Claims Trust as a "qualified settlement fund" within the

meaning of the QSF Regulations, and (e) take no action that could cause the Tort Claims Trust to fail to qualify as a "qualified settlement fund" within the meaning of the QSF Regulations.

4.4    **Obligations of Reorganized Tronox.**  Following the funding of the Tort Claims Trust (and in no event later than February 15th of the calendar year following the date of this Tort Claims Trust Agreement), Reorganized Tronox shall provide, or cause to be provided, to the Tort Claims Trust any reports or statements required under the QSF Regulations.  Following any subsequent transfers of cash or other property to the Tort Claims Trust, the transferor (or the entity treated as the transferor for U.S. federal income tax purposes) shall provide, or cause to be provided, to the Tort Claims Trustee any reports or statements required under the QSF Regulations.

4.5    **No Contravention of Requirements.**  No provision in this Tort Claims Trust Agreement or the Tort Claims Trust Distribution Procedures shall be construed to mandate any distribution on any claim or other action that would contravene the Tort Claims Trust's compliance with the requirements of a "qualified settlement fund" within the meaning of the QSF Regulations.

4.6    **Withholding of Taxes and Other Charges.**

(a)    The Tort Claims Trust may withhold from any amounts distributable at any time to the Holders of Tort Claims such sum or sums as may be necessary to pay any taxes or other charges which have been or may be imposed on the Tort Claims Trust or the Holders of Tort Claims under the income tax laws of the United States or of any state or political subdivision or entity by reason of any distribution provided for herein or in the Plan, whenever such withholding is required by any law, regulation, rule, ruling, directive or other governmental requirement.

(b)      The Tort Claims Trustee, in the exercise of its discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts as may be withheld in accordance with the provisions of this Section 4.6.  Notwithstanding the foregoing, but without prejudice to the Tort Claims Trust's rights hereunder, the Holders of Tort Claims shall have the right with respect to the United States or any state or political subdivision or entity to contest the imposition of any tax or other charge by reason of any distribution hereunder or under the Plan.

**4.7**      **Other Governmental Disclosures**.  The Tort Claims Trustee shall file, or cause to be filed, any other statements, returns or disclosures relating to the Tort Claims Trust that are required by any governmental unit or applicable law.

## SECTION V

## TORT CLAIMS TRUSTEE

**5.1**      **Initial Tort Claims Trustee**.  The Tort Claims Trust shall have only one Tort Claims Trustee at any given time.  The initial Tort Claims Trustee is the entity identified on the signature pages to this Agreement.

**5.2**      **Term of Service**.

(a)      The Tort Claims Trustee shall serve until the earliest of (i) its dissolution or his or her death, (ii) its (or his or her) resignation pursuant to Section 5.2(b) below, (iii) its (or his or her) removal pursuant to Section 5.2(c) below, or (iv) the termination of the Tort Claims Trust pursuant to Section 8.1(b) below.

(b)      A Tort Claims Trustee may resign at any time by written notice to the TAC.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than 90 days after the date such notice is given, where practicable.

-26-

(c)    The Tort Claims Trustee may be removed pursuant to an order of the Bankruptcy Court at the recommendation of a majority of the TAC in the event that it (or he or she) becomes unable to discharge its (or his or her) duties hereunder due to a change in personnel, accident or physical or mental deterioration or for other good cause.  Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general administration provisions of SECTION III above, a consistent pattern of neglect and failure to perform or participate in performing the duties of the Tort Claims Trustee hereunder, or repeated non-attendance at scheduled meetings.    Such removal shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

**5.3**    **Successor Tort Claims Trustee.**

(a)    Upon the termination of service of the Tort Claims Trustee, whether as a result of the expiration of its (or his or her) term or its dissolution (or his or her death), resignation or removal, the TAC shall appoint a successor Tort Claims Trustee.  In the event that the TAC cannot agree on the successor Tort Claims Trustee, the Bankruptcy Court shall make the appointment.

(b)    Immediately upon the appointment of any successor Tort Claims Trustee, all rights, titles, duties, powers and authority of the predecessor Tort Claims Trustee hereunder shall be vested in, and undertaken by, the successor Tort Claims Trustee without any further act.  No successor Tort Claims Trustee shall be liable personally for any act or omission of his or her predecessor Tort Claims Trustee.

(c)    Each successor Tort Claims Trustee shall serve until the earliest of (i) its dissolution (or his or her death), (ii) his or her resignation pursuant to Section 5.2(b) above, (iii) his or her removal pursuant to Section 5.2(c) above, or (iv) the termination of the Tort Claims Trust pursuant to Section 8.1(b) below.

**5.4**    **Liability of Tort Claims Trustee, Delaware Trustee and Others.**
Notwithstanding anything to the contrary herein, in exercising the rights granted hereunder, the Tort Claims Trustee shall use the same degree of care and skill as an individual of ordinary prudence, discretion and judgment would exercise or use in his own affairs.  The Tort Claims Trustee, the Delaware Trustee and the TAC shall not be liable to the Tort Claims Trust, to any individual holding a Tort Claim, or to any other person, except for such individual's own breach of trust constituting fraud, bad faith or willful misconduct.

**5.5**    **Tort Claims Trust Continuance.**

(a)    The resignation or removal of the Tort Claims Trustee shall not operate to terminate the Tort Claims Trust or to revoke any existing agency created pursuant to the terms of this Tort Claims Trust Agreement or invalidate any action theretofore taken by the Tort Claims Trustee or any prior Tort Claims Trustee.

(b)    In the event of the resignation or removal of the Tort Claims Trustee, such Tort Claims Trustee shall (a) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Tort Claims Trustee to effect the termination of the Tort Claims Trustee's capacity under this Tort Claims Trust Agreement and the conveyance of the assets then held by the Tort Claims Trustee to such Tort Claims Trustee's successor, (b) deliver to the successor Tort Claims Trustee all documents, instruments, records and other writings related to the Tort Claims Trust as may be in the possession of the Tort Claims Trustee and (c) otherwise assist and cooperate in effecting the assumption of his or her obligations and functions by such successor Tort Claims Trustee.

**5.6**    **Reliance by Tort Claims Trustee.**

(a)    The Tort Claims Trustee may rely, and shall be fully protected personally and absolved from liability in acting upon, any resolution, statement, certificate, instrument,

-28-

opinion, report, notice, request, consent, order or other instrument or document which the Tort

Claims Trustee believes to be genuine and to have been signed or presented by the proper party

or parties or, in the case of facsimile transmissions or electronic mail, to have been sent by the

proper party or parties, in each case without obligation to satisfy itself that the same was given in

good faith and without responsibility for errors in delivery, transmission or receipt.

        (b)     In the absence of fraud, bad faith or willful misconduct on the part of the

Tort Claims Trustee, the Tort Claims Trustee may rely as to the truth of any statements contained

therein in acting thereon.  The Tort Claims Trustee may consult with and rely on the advice of

legal counsel and such other experts, advisors, consultants or other professionals (collectively,

the "Tort Claims Trustee Professionals") as shall have been retained pursuant to this Tort Claims

Trust Agreement and shall be fully protected and absolved from liability in respect of any action

taken or suffered by it in accordance with the opinions of the Tort Claims Trustee Professionals.

    **5.7**        **Tort Claims Trustee's Compensation and Reimbursement.**  The Tort Claims

Trustee may pay from the assets of the Tort Claims Trust the reasonable salaries, fees and

expenses of the Tort Claims Trustee and any professionals retained by the Tort Claims Trust.

The Tort Claims Trustee shall receive compensation from the Tort Claims Trust for its service as

the Tort Claims Trustee, paid first by interest to the extent interest has accrued, and then from

principal, according to the terms identified in Sections 5.7(a)–(h) for the particular services

included therein.  The compensation outlined below is subject to reasonable periodic adjustment

with approval of the Tort Claims Trustee and the TAC to account for inflation and / or market

changes.

        (a)     Establishing and Managing the Tort Claims Trust as a Qualified

Settlement Fund; Serving as Trustee:  The Tort Claims Trustee shall establish and administer the

Tort Claims Trust fund pursuant to the terms of the Tort Claims Trust Agreement and the TDPs

(collectively, the "**Trust Distribution Documents**").  In addition to the per-claimant amounts listed below, and the fees yet to be negotiated for any additional future services as described in Section 5.7(h), the Tort Claims Trustee shall receive a program establishment fee in the amount of $540,000.00, intended to compensate the Tort Claims Trustee for its own services to the Tort Claims Trust related to government healthcare reporting duties, initial correspondence, fiduciary services and consultancy services provided prior to and until the date of transfer of Anadarko Litigation proceeds, if any, as described by Section 1.1(b) of the TDPs.

(b)     Present Injury—Asbestos, Non-Asbestos, and Unaccounted-for Claims: In accordance with the TDPs, the Tort Claims Trustee shall make Distributions to the Holders of Allowed Asbestos Claims, Allowed Non-Asbestos Toxic Exposure Claims, Allowed Unaccounted-for Tort Claims, and Allowed Future Tort Claims either directly or through the care of their counsel.  The Tort Claims Trustee shall assess a fee of $550.00 per Holder of an Allowed Asbestos Claim, Allowed Non-Asbestos Toxic Exposure Claim, Allowed Unaccounted-for Tort Claim, or Allowed Future Tort Claim; provided, however, that for Holders asserting an Allowed Non-Asbestos Toxic Exposure Claim that is submitted to the Tort Claims Trustee as a medical monitoring/unimpaired claim under Schedules B or D of the TDPs, the Tort Claims Trustee shall assess a fee of $150.00 per such claimant.  The fee assessed for each Holder of a Tort Claim described in this Section 5.7(b) shall be assessed against the Fund for the Category to which each such Tort Claim belongs, as set forth in Sections 1.4 and 1.5 of the TDPs.

(c)     Indirect Environmental Claims:  In accordance with the TDPs, the Tort Claims Trustee shall make Distributions to the Holders of Allowed Indirect Environmental Claims either directly or through the care of their counsel.  The Tort Claims Trustee shall assess a fee of $550.00 per Holder of an Allowed Indirect Environmental Claim, which shall be assessed against Fund B, as that term is defined in Sections 1.4 and 1.5 of the TDPs.

(d)      Property Damage Claims:  In accordance with the TDPs, the Tort Claims Trustee shall make Distributions to the Holders of Allowed Property Damage Claims either directly or through the care of their counsel.  The Tort Claims Trustee shall assess a fee of $550.00 per Holder of an Allowed Property Damage Claim, which shall be assessed against Fund C, as that term is defined in Sections 1.4 and 1.5 of the TDPs.

(e)      Healthcare Lien Verification:

(i)      In accordance with the TDPs, the Tort Claims Trustee shall verify which Holders of Allowed Asbestos Claims, Allowed Non-Asbestos Toxic Exposure Claims, Allowed Future Tort Claims, and Allowed Unaccounted-for Tort Claims are recipients of federal Medicare benefits (Part A and B) and / or Medicaid benefits (Medicaid benefits shall be verified in state of residence only, unless otherwise agreed).  If healthcare lien verification does not apply to a claim (e.g., if healthcare liens do not apply to bankruptcy proceeds or Property Damage Claims) no fee for healthcare lien verification or lien resolution shall apply.  If healthcare lien verification services are required for any claimant, the Tort Claims Trustee shall assess a fee of $100.00 per such claimant for such services, which shall be assessed against the Fund for the Category to which such Tort Claim belongs, as set forth in Sections 1.4 and 1.5 of the TDPs.

(ii)      Although the Tort Claims Trustee shall fulfill its obligations to verify whether healthcare reimbursement obligations may exist and shall fulfill reporting obligations under the Medicare, Medicaid and the SCHIP Extension Act of 2007, the resolution of healthcare reimbursement obligations is the duty of each Holder and his or her counsel, and the Tort Claims Trustee shall not be liable to the Tort Claims Trust, to any Holder of a Tort Claim, or to any other person for any act or omission relating to matters covered in this Section 5.7(e), except for the Tort Claims Trustee's own breach of trust constituting fraud, bad faith, or willful misconduct.

-31-

(f)    Pass-through Expenses and Other Services or Expenses:  In addition to the fees above, specific activity-based costs will be passed through directly to the Tort Claims Trust. These pass-through costs include, but are not limited to, independent external audits (as required by the Trust Distribution Documents), external counsel or litigation expenses, insurance, tax preparation fees, postage, printing, envelope material costs, and travel expenses (if applicable for court proceedings or required meetings).

(g)    Appeal and Trust Administration Fees:  The Tort Claims Trustee may reserve a portion of each Fund associated with each Category of Tort Claims (as defined by Sections 1.4 and 1.5 of the TDPs) to cover the reasonable costs, expenses, and fees, including attorney fees, associated with the appeal, Individual Review, arbitration, litigation, settlement, or other adjudication (collectively, as used in this Section 5.7(g), "**Resolution**") of Tort Claims asserted against that Fund ("**Reserve for Resolution**").  The Tort Claims Trustee shall pay from the respective Reserve for Resolution the reasonable costs, expenses, and fees, including attorney fees, associated with such Resolution of Tort Claims, and for all other activities required to administer the Tort Claims Trust beyond those identified above.  In the event that the amount of a Reserve for Resolution is insufficient to cover the reasonable costs, expenses, and fees, including attorney fees, associated with the Resolution of the Tort Claims for the Category associated with that Fund, the Tort Claims Trustee shall be entitled to assess the excess costs, expenses, and fees, including attorney fees, of such Resolution (i) against the remainder of the Fund from which that Reserve for Resolution was created, (ii) if said Fund is exhausted, then against each of the other Reserves for Resolution in proportion to the percentage of the aggregate value of the remaining Reserves for Resolution that each such Reserve for Resolution represents, and (iii) if the Reserves for Resolution are exhausted, against each of the other Funds in

proportion to the percentage of the aggregate value of the remaining Funds that each such Fund represents.

(h)    Additional Services:  The TAC and the Tort Claims Trustee intend and contemplate that the Tort Claims Trustee may provide additional, as-yet-unidentified services to the Tort Claims Trust beyond those listed above, and do hereby expressly and irrevocably waive, to the fullest extent permitted by applicable law, any and all actual or potential conflicts of interest that may arise from the Tort Claims Trustee providing such services to the Tort Claims Trust.  The Tort Claims Trustee shall have authority, subject only to TAC approval, to contract on behalf of the Tort Claims Trust with itself in its capacity as a claims administrator for such services, which may include, but are not limited to, the following: the resolution of Healthcare Reimbursement Obligations (as defined in Section 4.7 of the TDPs) subsequent to the verification of said obligations as described in Section 5.7(e) above, the identification and resolution of any probate or bankruptcy interests in payments due to claimants, coordinating the preservation of claimants' needs- or entitlement-based government benefits, and the procurement of medical records.  This practice shall be encouraged in those areas in which the Tort Claims Trustee has capacity and / or expertise to provide necessary services.  The Tort Claims Trustee shall receive compensation from the Tort Claims Trust for such unidentified services at a reasonable rate, as negotiated between the Tort Claims Trustee and the TAC at the time the need for such services arises.  The compensation associated with each such service shall be assessed against the Holders of Tort Claims for whom each such service is provided.

(i)    Payment Terms:

(i)    Within 15 days of the transfer of any amounts identified in Section 1.1 of the TDPs, the Tort Claims Trustee shall be authorized to assess fees associated with Section 5.7(a) of the Tort Claims Trust Agreement.

-33-

(ii)    For those Tort Claims described in Sections 5.7(b)-(d) for which the Tort Claims Trustee's fee is $550.00 per Holder, the Tort Claims Trustee shall be authorized to assess $220.00 of each per-Holder fee within 15 days of the transfer of the amount identified in Section 1.1(a) of the TDPs, and shall be authorized to assess the remaining $330.00 of each per-Holder fee within 15 days of the transfer of the amount identified in Section 1.1(b) of the TDPs. For those Tort Claims described in Section 5.7(b) for which the Tort Claims Trustee's fee is $150.00 per Holder, the Tort Claims Trustee shall be authorized to assess $60.00 of each per-Holder fee within 15 days of the transfer of the amount identified in Section 1.1(a) of the TDPs, and shall be authorized to assess the remaining $90.00 of each per-Holder fee within 15 days of the transfer of the amount identified in Section 1.1(b) of the TDPs. For the healthcare-lien-verification services described in Section 5.7(e) above, the Tort Claims Trustee shall be authorized to assess $40.00 of each $100.00 per-Holder fee within 15 days of the transfer of the amount identified in Section 1.1(a) of the TDPs, and shall be authorized to assess the remaining $60.00 of each per-Holder fee within 15 days of the transfer of the amount identified in Section 1.1(b) of the TDPs.

(iii)    Pass-through expenses and appeal and trust administration fees, as described in Sections 5.7(f)-(g) of the Tort Claims Trust Agreement, if any, may begin to be assessed within 15 days of the transfer of the amount in identified Section 1.1(a) of the TDPs and will be billed monthly.

(iv)    Within 15 days of the transfer of the amount identified in Section 1.1(a) of the TDPs, and after the approval by TAC of the agreed-upon negotiated rate, the Tort Claims Trust shall be authorized to assess fees associated with Section 5.7(h) of the Tort Claims Trust Agreement.

5.8    **Indemnification.**  The Tort Claims Trust shall indemnify and defend (A) the Tort Claims Trustee, (B) the Delaware Trustee, (C) the TAC members, (D) the officers and employees of the Tort Claims Trust, and (E) any agents, advisors and consultants of the Tort Claims Trust or the TAC in the performance of its duties hereunder to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of its duties hereunder or in connection with activities undertaken by the Tort Claims Trustee prior to the Effective Date in connection with the formation, establishment, or funding of the Tort Claims Trust.

5.9    **Insurance.**  The Tort Claims Trustee may purchase, at the expense of the Tort Claims Trust, reasonable amounts and types of insurance with regard to any liabilities, losses, damages, claims, costs and expenses it may incur, including, but not limited to, attorneys' fees arising out of or due to its actions or omissions or consequences of such actions or omissions, other than as a result of its fraud, bad faith or willful misconduct, with respect to the implementation of this Tort Claims Trust Agreement, the Plan or the Confirmation Order.

5.10    **No Implied Obligations.**  No Tort Claims Trustee shall be liable for any duties or obligations except for the performance of such duties and obligations as are specifically set forth herein.  No implied covenants or obligations shall be read into this Tort Claims Trust Agreement.

5.11    **No Personal Liability.**  Persons dealing with the Tort Claims Trust must look solely to the Tort Claims Trust for the enforcement of any claims against the Tort Claims Trust or the satisfaction of any liability incurred by the Tort Claims Trustee to such persons in carrying out the terms of this Tort Claims Trust.  Neither the Tort Claims Trustee, the Delaware Trustee, the Tronox Debtors, Reorganized Tronox, the members of the TAC nor any other person shall have any personal liability or individual obligation to satisfy any such liability.

-35-

**SECTION VI**

**TRUST ADVISORY COMMITTEE**

**6.1**    **Initial Members of the TAC.**  The TAC shall consist of three members, who shall initially be the persons named on the signature pages hereof.

**6.2**    **Duties.**  The members of the TAC shall serve in a fiduciary capacity, representing all of the Holders of Tort Claims for the purpose of protecting the rights of such persons.  The Tort Claims Trustee must consult with the TAC on matters identified in Section 3.1(c) above and in other provisions herein and must obtain the consent of the TAC on matters identified in Section 3.3(c) above.  Where provided in the Tort Claims Trust Distribution Procedures, certain other actions of the Tort Claims Trustee are also subject to the consent of the TAC.

**6.3**    **Term of Office.**

(a)    The initial members of the TAC appointed in accordance with Section 6.1(a) above shall serve the staggered three-, four-, or five-year terms shown on the signature pages hereof.  Thereafter, each term of service shall be five years.  Each member of the TAC shall serve until the earliest of (i) the end of his or her first full term of office, (ii) his or her death, (iii) his or her resignation pursuant to Section 6.3(b)below, (iv) his or her removal pursuant to Section 6.3(c) below, or (v) the termination of the Tort Claims Trust pursuant to Section 8.1(b) below.

(b)    A member of the TAC may resign at any time by written notice to the other members of the TAC and the Tort Claims Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    A member of the TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration,

mental incompetence, a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member (such as repeated nonattendance of scheduled meetings) or for other good cause. Such removal shall be made at the recommendation of the other members of the TAC with the approval of the Bankruptcy Court.

       6.4     **Successor Members of the TAC**.

       (a)     If, prior to the termination of service of a member of the TAC other than as a result of removal, he or she has designated in writing an individual to succeed him or her as a member of the TAC, such individual shall be his or her successor. If such member of the TAC did not designate an individual to succeed him or her prior to the termination of his or her service as contemplated above, such member's law firm may designate his or her successor. If (i) a member of the TAC did not designate an individual to succeed him or her prior to the termination of his or her service and such member's law firm does not designate his or her successor as contemplated above or (ii) he or she is removed pursuant to Section 6.3(c) above, his or her successor shall be appointed by a majority of the remaining members of the TAC or, if such members cannot agree on a successor, the Bankruptcy Court. Nothing in this Tort Claims Trust Agreement shall prevent the reappointment of an individual serving as a member of the TAC for an additional term or terms and there shall be no limit on the number of terms that a TAC member may serve.

       (b)     Each successor member of the TAC shall serve until the earliest of (i) the end of a full term of five years for which he or she was appointed if his or her immediate predecessor member of the TAC completed his or her term pursuant to Section 6.3(a) above, (ii) the end of the term of the member of the TAC whom he or she replaced if his or her predecessor member did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to

Section 6.3(b) above, (v) his or her removal pursuant to Section 6.3(c) above, or (vi) the termination of the Tort Claims Trust pursuant to Section 8.1 below.

      **6.5**    **TAC's Employment of Professionals.**

      (a)    The TAC may, but is not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties deemed by the TAC to be qualified as experts on any matter submitted to the TAC (the "**TAC Professionals**").  The TAC and the TAC Professionals shall at all times have reasonable access to the Tort Claims Trust's officers, employees and agents, as well as to any trust professionals, and shall also have reasonable access to all information generated by them or otherwise available to the Tort Claims Trust or the Tort Claims Trustee; provided that in no event shall the TAC, its members or the TAC Professionals have any right to consult with counsel to the Tort Claims Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Tort Claims Trust.  In the absence of gross negligence the written opinion of or information provided by any TAC Professional or trust professional deemed by the TAC to be qualified as an expert on the particular matter submitted to the TAC shall be full and complete authorization and protection in support of any action taken or not taken by the TAC in good faith and in accordance with the written opinion of or information provided by such TAC Professional or Trust professional.

      (b)    The Tort Claims Trust shall promptly reimburse, or pay directly if so instructed, the TAC for any reasonable fees and expenses associated with the TAC's employment of legal counsel pursuant to this provision in connection with the TAC's performance of its duties hereunder.  The Tort Claims Trust shall also promptly reimburse, or pay directly if so instructed, the TAC for any reasonable fees and expenses associated with the

TAC's employment of any other TAC Professional pursuant to this provision in connection with the TAC's performance of its duties hereunder.

6.6    **Compensation and Expenses of the TAC.**    Each member of the TAC shall receive compensation from the Tort Claims Trust for attendance at meetings or other Tort Claims Trust business performed in the form of a reasonable hourly rate set by the Tort Claims Trustee, but in no event less than $600 per hour.    In addition, the Tort Claims Trust shall promptly reimburse each member of the TAC for any reasonable out-of-pocket fees and expenses incurred by him or her in connection with the performance of his or her duties as a member of the TAC. Such compensation or reimbursement shall be deemed a Tort Claims Trust Expense.    The Tort Claims Trust shall include a reasonably detailed description of the amounts paid under this Section 6.6 in the Annual Report.

6.7    **Procedures for Consultation with and Obtaining the Consent of the TAC.**

(a)    Consultation Process.

(i)    In the event the Tort Claims Trustee is required to consult with the TAC pursuant to Section 3.1(c) above or on other matters as provided herein, the Tort Claims Trustee shall provide the TAC with written advance notice of the matter under consideration and with all relevant information concerning the matter as is reasonably practicable under the circumstances.    The Tort Claims Trustee shall also provide the TAC with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisors retained by the Tort Claims Trust and its staff (if any) as the TAC may reasonably request during the time that the Tort Claims Trustee is considering such matter and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Tort Claims Trustee; provided that in no event shall the TAC or its members have any right to consult with counsel to the Tort Claims Trust or obtain

-39-

any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Tort Claims Trust.

        (ii)     In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 3.1(c), the Tort Claims Trustee shall take into consideration the time required for the TAC, if its members so wish, to engage and consult with its own independent financial or investment advisors as to such matter. In any event, the Tort Claims Trustee shall not take definitive action on any such matter until at least thirty (30) days after providing the TAC with the initial written notice that such matter is under consideration by the Tort Claims Trustee, unless such time period is waived by the TAC.

        (b)     <u>Consent Process</u>.

        (i)     Except as otherwise set forth herein, the TAC shall act by majority vote.

        (ii)     In the event the Tort Claims Trustee are required to obtain the consent of the TAC pursuant to Section 3.3(c) above, the Tort Claims Trustee shall provide the TAC with a written notice stating that its consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Tort Claims Trustee proposes to take and explaining in detail the reasons why the Tort Claims Trustee desires to take such action. The Tort Claims Trustee shall provide the TAC as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Tort Claims Trustee shall also provide the TAC with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisors retained by the Tort Claims Trust and its staff (if any) as the TAC may reasonably request during the time that the Tort Claims Trustee is considering such action, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with

-40-

the Tort Claims Trustee; provided that in no event shall the TAC or its members have any right to consult with counsel to the Tort Claims Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Tort Claims Trust.

(iii)    The TAC must consider in good faith and in a timely fashion any request for its consent by the Tort Claims Trustee and must in any event advise the Tort Claims Trustee in writing of its consent or its objection to the proposed action within thirty (30) days of receiving the original request for consent from the Tort Claims Trustee.  The TAC may not withhold its consent unreasonably.  If the TAC decides to withhold its consent, it must explain in detail its objections to the proposed action.  If the TAC does not advise the Tort Claims Trustee in writing of its consent or its objections to the action within thirty (30) days of receiving notice regarding such request, the TAC's consent to the proposed actions shall be deemed to have been affirmatively granted.

(iv)    If, after following the procedures specified in this Section 6.7(b), the TAC continues to object to the proposed action and to withhold its consent to the proposed action, the Tort Claims Trustee and/or the TAC shall resolve their dispute in accordance with Section 9.15 below.  However, the burden of proof with respect to the validity of the TAC's objection and withholding of its consent shall be on the TAC.

**SECTION VII**

**<u>DELAWARE TRUSTEE</u>**

**7.1**    There shall be at all times a Delaware Trustee.  The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law, and shall act through one or more persons

-41-

authorized to bind such entity.  If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 7.1, it shall resign immediately in the manner and with the effect specified in Section 7.3 below.  For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder.

**7.2**    The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Tort Claims Trustee set forth herein.  The Delaware Trustee shall be a trustee of the Tort Claims Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act.  The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the Tort Claims Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.  The Delaware Trustee shall have no liability for acts or omissions of the Tort Claims Trustee

**7.3**    The Delaware Trustee shall serve until such time as the Tort Claims Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the TAC in accordance with the terms of Section 7.4 below.  The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance notice to the Tort Claims Trustee; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the TAC in accordance with Section 7.4 below.  If the TAC does not act within such 60-day period, the Delaware Trustee may apply

-42-

to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

**7.4**      Upon the resignation or removal of the Delaware Trustee, the TAC shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Tort Claims Trustee and any fees and expenses due to the outgoing Delaware Trustee are paid.  Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Tort Claims Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Tort Claims Trust Agreement.

**7.5**      The initial Delaware Trustee shall be the individual or entity reflected on the signature pages of this Agreement.

**7.6**      **Delaware Trustee's Compensation.**  The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.

**SECTION VIII**

**DURATION AND TERMINATION OF TORT CLAIMS TRUST**

**8.1**      **Duration/Termination.**

(a)      The term for the Tort Claims Trust shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of Section 8.1(b) below.

-43-

(b)    The Tort Claims Trust shall automatically terminate (the "**Termination Date**") on the date ninety (90) days after the first to occur of:

(i)    the Tort Claims Trustee decides to terminate the Tort Claims Trust because (i) (aa) it deems it unlikely that new Tort Claims will be filed against the Tort Claims Trust, (bb) all Tort Claims duly filed with the Tort Claims Trust have been liquidated and settled and paid to the extent provided under the Tort Claims Trust Agreement or disallowed by a final, non-appealable order, to the extent possible based upon the funds available through the Plan, (cc) 12 consecutive months have elapsed during which no new Tort Claims have been filed with the Tort Claims Trust; or (dd) the administrative costs of operating the Tort Claims Trust will erode the funds remaining in the Tort Claims Trust; and (ii) the Anadarko Litigation has been fully resolved and all proceeds payable to the Tort Claims Trust from the Anadarko Litigation Trust have been received and distributed according to the terms of this Agreement and the Tort Claims Trust Distribution Procedures;

(ii)    if the Tort Claims Trustee has procured irrevocable insurance policies and established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses of the Tort Claims Trust in a manner consistent with the Tort Claims Trust Agreement, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a final order; or

(iii)    to the extent that any rule against perpetuities shall be deemed to apply to the Tort Claims Trust, the date on which twenty-one (21) years less ninety-one (91) days pass after the death of the last survivor of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof.

### 8.2    Continuance of Tort Claims Trust for Winding Up.

(a)    After the termination of the Tort Claims Trust and for the purpose of liquidating and winding up the affairs of the Tort Claims Trust, the Tort Claims Trustee shall continue to act as such until all duties under the Plan and this Tort Claims Trust Agreement have been fully performed.  Upon distribution of all of the assets of the Tort Claims Trust, or the proceeds thereof, the Tort Claims Trustee shall hold the books, records and files delivered to or created by the Tort Claims Trustee for a period of four years after the last distribution of assets from the Tort Claims Trust is made.  All costs and expenses associated with the storage of such documents shall be paid by the Tort Claims Trust.  At the Tort Claims Trustee's discretion, all such records and documents may be destroyed at any time after four years from the distribution of all of the assets of the Tort Claims Trust.  Except as otherwise specifically provided herein, upon the distribution of all of the assets of the Tort Claims Trust, the Tort Claims Trustee shall have no further duties or obligations hereunder except to (a) account and report as provided in Section 3.7 hereof and (b) perform such other acts as may be required by law.

(b)    On the Termination Date or as soon as reasonably practicable, after the wind-up of the Tort Claims Trust's affairs by the Tort Claims Trustee and payment of all the Tort Claims Trust's liabilities have been provided for as required by applicable law including Section 3808 of the Act, all monies remaining in the Tort Claims Trust's estate shall be given to such organization(s) exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, which tax-exempt organization(s) shall be selected by the Tort Claims Trustee using its reasonable discretion; provided, however, that (i) if practicable, the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on, or the relief of suffering of individuals suffering from Non-Asbestos Toxic Tort related cancers or disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to Reorganized Tronox

-45-

within the meaning of section 468B(d)(3) of the Internal Revenue Code.  Notwithstanding any contrary provision of the Plan and related documents, this provision cannot be modified or amended.

**8.3** **Final Accounting**.

(a)    Upon termination of the Tort Claims Trust, the Tort Claims Trustee shall file an accounting with the Bankruptcy Court setting forth the amount the Tort Claims Trustee has collected and disbursed, as well as the fees and expenses incurred in administering the Tort Claims Trust, including the fees and expenses incurred by the Tort Claims Trustee and its professionals.  The Tort Claims Trustee shall seek the issuance and entry of any orders necessary to approve such accounting and discharge it from any and all liability for acting as Tort Claims Trustee under the Plan and this Tort Claims Trust Agreement.   The Tort Claims Trust's professionals shall be required to maintain accurate time and expense records.

(b)    Following the dissolution and distribution of the assets of the Tort Claims Trust, the Tort Claims Trust shall terminate and the Tort Claims Trustee shall execute and cause a Certification of Cancellation of the Certificate of Trust of the Tort Claims Trust to be filed in accordance with the Act.  Notwithstanding anything to the contrary contained in this Tort Claims Trust Agreement, the existence of the Tort Claims Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

**SECTION IX**

**MISCELLANEOUS PROVISIONS**

**9.1** **Irrevocability**.  The Tort Claims Trust is irrevocable.

**9.2** **Settlor, Representative and Cooperation**.    Tronox is hereby irrevocably designated as the Settlor and it is hereby authorized to take any action required of the Settlor in

connection with the creation this Tort Claims Trust Agreement.  Tronox agrees to cooperate in implementing the goals and objectives of this Tort Claims Trust.

       **9.3**    <u>**Applicable Law.**</u>  The Tort Claims Trust created herein shall be construed, regulated and administered under the laws of the State of Delaware without regard to principles of conflicts of law; provided, however, that the Tort Claims Trust and any interpretation or enforcement of the provisions of this Tort Claims Trust Agreement shall be subject to the non-exclusive jurisdiction of the Bankruptcy Court.

       **9.4**    <u>**Entire Agreement; No Waiver.**</u>  The entire agreement of the parties relating to the subject matter of this Tort Claims Trust Agreement is contained herein, in the Tort Claims Trust Distribution Procedures, and in the in the Plan and in the documents referred to herein. This Tort Claims Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof.  Any failure to exercise or delay in exercising any right, power or privilege hereunder shall not operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege.  The rights and remedies provided herein are cumulative and are not exclusive of rights under law or in equity.

       **9.5**    <u>**Amendments.**</u>  The Tort Claims Trustee may modify or amend this Tort Claims Trust Agreement, provided, however, that any such amendment shall require the consent of the TAC in accordance with Section 3.3(c) above; and provided, further, that no such modification or amendment, unless the modification or amendment is signed by the Delaware Trustee, may adversely affect the rights, duties or obligations of the Delaware Trustee.  The Tort Claims Trustee may modify or amend the Tort Claims Trust Distribution Procedures by a writing with the consent of the TAC as provided in the Tort Claims Trust Distribution Procedures; provided, however, that no amendment to such procedures shall be inconsistent with the provisions

-47-

limiting amendments to such procedures provided therein.  Notwithstanding anything contained in this Tort Claims Trust Agreement to the contrary, none of this Tort Claims Trust Agreement, the Tort Claims Trust Distribution Procedures or the Bylaws of the Tort Claims Trust (if Bylaws are adopted in the future), or any document annexed to the foregoing, shall be modified or amended in any way that could (a) change the purpose of the Tort Claims Trust as set forth in Section 1.3 hereof, (b) jeopardize, impair or adversely affect the distributions to be made under this Tort Claims Trust Agreement to any Holder of Tort Claims, or (c) jeopardize, impair or modify the Tort Claims Trust's qualified settlement fund status under section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC.  Any material change to the Tort Claims Trust Agreement or the Tort Claims Trust shall be made known to the notice parties in accordance with Section 9.9 below.

**9.6** **Successors and Assigns.**  The provisions of this Tort Claims Trust Agreement shall be binding upon and inure to the benefit of the Tronox Debtors, Reorganized Tronox, the Tort Claims Trust, the Tort Claims Trustee and their respective successors and assigns, except that neither the Tronox Debtors, Reorganized Tronox, the Tort Claims Trust nor the Tort Claims Trustee may assign or otherwise transfer any of its, or their, rights or obligations under this Tort Claims Trust Agreement except as contemplated herein and in the Plan and in the documents related thereto.

**9.7** **No Association, Partnership or Joint Venture.**  This Tort Claims Trust Agreement is not intended to create and shall not be interpreted as creating an association, partnership or joint venture of any kind.

**9.8** **Severability.**  If any term or provision of this Tort Claims Trust Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Tort Claims Trust Agreement, such term or provision shall be fully severable and this

Tort Claims Trust Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Tort Claims Trust Agreement. The remaining terms and provisions of this Tort Claims Trust Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Tort Claims Trust Agreement. Moreover, this Tort Claims Trust Agreement shall be construed so as to limit any term or provision so as to make it a legal, valid and enforceable provision; provided, however, that such construction, to the maximum extent possible, shall give effect to the purposes of the Plan.

9.9    **Notices.**    Any notices or communications required hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by e-mail or facsimile pursuant to the instructions listed below, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below:

| Tort Claims Trustee | Delaware Trustee |
|---|---|
| Matthew L. Garretson<br>The Garretson Resolution Group, Inc.<br>7775 Cooper Road<br>Cincinnati, OH 45242<br>mlg@garretsonfirm.com<br>Phone: (513) 794-0400<br>Fax: (513) 575-7201<br><br>and<br><br>Rachael A. Rowe<br>Keating, Muething & Klekamp, PLL<br>One East 4th Street, Suite 1400<br>Cincinnati, OH 45202<br>rrowe@kmklaw.com<br>Phone: (513)579-6486<br>Fax: (513)579-6457 | Wilmington Trust Company<br>1100 North Market Street<br>Wilmington, DE 19890-1615<br>Attention: Joe Feil<br>Phone: (302) 636-6466<br>Fax: (302) 636-4149 |
| **TAC** | **Reorganized Tronox** |
| Jill A. Moran, Esquire<br>The Powell Law Group, P.C.<br>10 Fox Run Road<br>Drums, PA 18222<br>jmoran@powell-group.com<br>Phone: (570) 708-1529<br>Fax: (570) 708-7050<br><br>and<br><br>Anthony W. Merrill, Esquire<br>Polsinelli Shughart PC<br>Cityscape<br>One East Washington, Suite 1200<br>Phoenix, AZ 85004<br>amerrill@polsinelli.com<br>Phone: (602) 650-2310<br>eFax: (602) 297-6579<br><br>and | Tronox Incorporated<br>3301 NW 150th Street<br>Oklahoma City, OK 73134 |

| Matthew Slocum, Esquire<br>Slocum and Lang, P.C.<br>10 Fox Run Road<br>Drums, PA 18222<br>matt@slocumlang.com<br>Phone: (888) 367-4577<br>Fax: (570) 614-2147 | |

**9.10**    **Effectiveness.**    This Tort Claims Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

**9.11**    **Counterparts.**    This Tort Claims Trust Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute one and the same instrument.

**9.12**    **Headings.**    The section headings contained in this Tort Claims Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Tort Claims Trust Agreement or of any term or provision hereof.

**9.13**    **Confidentiality.**    The Tort Claims Trustee shall, during the period that it serves in such capacity under this Tort Claims Trust Agreement and following either the termination of this Tort Claims Trust Agreement or such Tort Claims Trustee's removal, incapacity or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the assets of the Tort Claims Trust relate or of which it has become aware in its capacity as Tort Claims Trustee.

**9.14**    **No Bond Required.**    Notwithstanding any state law to the contrary, the Tort Claims Trustee (including any successor trustee) shall be exempt from giving any bond or other surety in any jurisdiction.

**9.15**    **Dispute Resolution.**    Any disputes between the Tort Claims Trustee and the TAC that arise under this Tort Claims Trust Agreement or the TDP shall be resolved by submission of the matter to an alternative dispute resolution ("**ADR**") process mutually

agreeable to the parties involved.  Should any party to the ADR process be dissatisfied with the decision of the arbitrator(s), that party may apply to the Bankruptcy Court for a judicial determination of the matter.  In either case, if the dispute arose pursuant to the consent provision set forth in Section 6.7(b), the burden of proof shall be on the TAC to show that the objection was valid.  Should the dispute not be resolved by the ADR process within thirty (30) days after submission, the parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court.

**9.16**    **Retention of Jurisdiction.**  The Bankruptcy Court shall retain jurisdiction as set forth in the Plan over issues related to the enforcement or interpretation of this Tort Claims Trust Agreement, including the determination of all claims, controversies, disputes and issues arising under or in connection with the Tort Claims Trust or this Tort Claims Trust Agreement and the management and administration of the Tort Claims Trust and for all of the purposes contemplated herein.

**9.17**    **Relationship to Plan and Tort Claims Trust Distribution Procedures.**  The principal purpose of this Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures is to aid in the implementation of the Plan.  Thus, this Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures incorporate and are subject to the provisions of the Plan.  In the event that any provision of this Tort Claims Trust Agreement or the Tort Claims Trust Distribution Procedures is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provision of the Plan or the Confirmation Order shall control.  In the event that any provision of the Tort Claims Trust Distribution Procedures is found to be inconsistent with a provision of the Tort Claims Trust Agreement, the Tort Claims Trust Agreement shall control.

IN WITNESS WHEREOF, the parties have executed this Tort Claims Trust Agreement

this _____ day of February, 2011.

**TRONOX INCORPORATED**

By:_____

Title:_____

**Garretson Resolution Group, Inc., solely in its capacity as TORT CLAIMS TRUSTEE**

By:_____

Title:_____

**Wilmington Trust Company, solely in its capacity as DELAWARE TRUSTEE**

By:_____

Title:_____

**TORT CLAIMS TRUST ADVISORY
COMMITTEE**


By:_____(who shall serve an initial term of five (5) years)
    Jill A. Moran, Esquire
    The Powell Law Group, P.C.
    10 Fox Run Road
    Drums, PA  18222
    jmoran@powell-group.com
    Phone:  (570) 708-1529
    Fax:  (570) 708-7050


By:_____(who shall serve an initial term of four (4) years)
    Matthew Slocum, Esquire
    Slocum and Lang, P.C.
    10 Fox Run Road
    Drums, PA 18222
    matt@slocumlang.com
    Phone:  (888) 367-4577
    Fax:  (570) 614-2147


By:_____(who shall serve an initial term of three (3) years)
    Anthony W. Merrill, Esquire
    Polsinelli Shughart PC
    Cityscape
    One East Washington, Suite 1200
    Phoenix, AZ  85004
    amerrill@polsinelli.com
    Phone:  (602) 650-2310
    eFax:  (602) 297-6579

**TRONOX INCORPORATED TORT CLAIMS TRUST AGREEMENT**

# TABLE OF CONTENTS

**Page**

SECTION I            ESTABLISHMENT OF TORT CLAIMS TRUST .........................................2

    1.1    Creation and Name ..................................................................................2

    1.2    Definitions .............................................................................................3

    1.3    Purpose of Tort Claims Trust ...............................................................8

    1.4    Appointment of Tort Claims Trustee....................................................8

    1.5    Governance of Tort Claims Trust .........................................................8

    1.6    Transfer of Tort Claims Trust Assets and Rights to Tort Claims Trustee............9

    1.7    Tort Claims Trustee's Acceptance of Assets and Assumptions of Liabilities
             .............................................................................................10

    1.8    Reliance ................................................................................................11

    1.9    Instruments of Further Assurance; Information ...................................11

SECTION II           ADMINISTRATION OF TORT CLAIMS TRUST .....................................11

    2.1    Payment of Expenses and Liabilities....................................................11

    2.2    Claims Administration .........................................................................12

SECTION III          POWERS, LIMITATIONS AND DUTIES OF THE TORT CLAIMS
                   TRUSTEE ...........................................................................................12

    3.1    General Powers of Tort Claims Trustee ...............................................12

    3.2    Additional Powers of the Tort Claims Trustee.....................................15

    3.3    Limitations on Tort Claims Trustee .....................................................16

    3.4    Establishment and Maintenance of Accounts and Reserves ................18

    **3.5    Payment of Certain Fees, Expenses, and Costs After Effective Date ...........19**

    **3.6**    Investment Power .................................................................................~~19~~**20**

    ~~3.6~~**3.7** Tax and Reporting Duties of Tort Claims Trustee ...............................21

SECTION IV           QUALIFIED SETTLEMENT FUND .......................................................23

    4.1    Tax Treatment .......................................................................................23

    4.2    No Right to Reversion with Respect to Tort Claims Trust Assets .................~~23~~**24**

    4.3    Obligations of the Tort Claims Trustee ...............................................24

    4.4    Obligations of Reorganized Tronox .....................................................24

    4.5    No Contravention of Requirements......................................................~~24~~**25**

    4.6    ~~Grantor Trust Election~~ ..........................................................~~25~~4.7 Withholdin

    ~~4.8~~**4.7** Other Governmental Disclosures .........................................................25

-i-

**Error! Unknown document property name.**

**TABLE OF CONTENTS**
(continued)

**Page**

| | | | |
|---|---|---|---|
| SECTION V | TORT CLAIMS TRUSTEE | ...................... | 26 |
| 5.1 | Initial Tort Claims Trustee | ...................... | 26 |
| 5.2 | Term of Service | ...................... | 26 |
| 5.3 | Successor Tort Claims Trustee | ...................... | 27 |
| 5.4 | Liability of Tort Claims Trustee, Delaware Trustee and Others | ...................... | 27 |
| 5.5 | Tort Claims Trust Continuance | ...................... | ~~28~~**27** |
| 5.6 | Reliance by Tort Claims Trustee | ...................... | 28 |
| 5.7 | Tort Claims Trustee's Compensation and Reimbursement | ...................... | 29 |
| 5.8 | Indemnification | ...................... | ~~30~~**34** |
| 5.9 | Insurance | ...................... | ~~30~~**34** |
| 5.10 | No Implied Obligations | ...................... | ~~30~~**34** |
| 5.11 | No Personal Liability | ...................... | ~~31~~**34** |
| SECTION VI | TRUST ADVISORY COMMITTEE | ...................... | ~~31~~**35** |
| 6.1 | Initial Members of the TAC | ...................... | ~~31~~**35** |
| 6.2 | Duties | ...................... | ~~31~~**35** |
| 6.3 | Term of Office | ...................... | ~~31~~**35** |
| 6.4 | Successor Members of the TAC | ...................... | ~~32~~**36** |
| 6.5 | TAC's Employment of Professionals | ...................... | ~~33~~**37** |
| 6.6 | Compensation and Expenses of the TAC | ...................... | ~~34~~**38** |
| 6.7 | Procedures for Consultation with and Obtaining the Consent of the TAC | ...... | ~~35~~**38** |
| SECTION VII | DELAWARE TRUSTEE | ...................... | ~~37~~**41** |
| 7.1 | There shall be at all times a Delaware Trustee | ...................... | ~~37~~**41** |
| 7.2 | The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Tort Claims Trustee set forth herein | ...................... | ~~37~~**41** |
| 7.3 | The Delaware Trustee shall serve until such time as the Tort Claims Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustees in accordance with the terms of Section 7.4 below | ...................... | ~~38~~**41** |
| 7.4 | Upon the resignation or removal of the Delaware Trustee, the TAC shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee | ...................... | ~~38~~**42** |

**Error! Unknown document property name.**

## TABLE OF CONTENTS
(continued)

**Page**

7.5    The initial Delaware Trustee shall be the individual or entity reflected on the signature pages of this Agreement.............................................................~~39~~**42**

7.6    Delaware Trustee's Compensation and Reimbursement................................~~39~~**42**

SECTION VIII    DURATION AND TERMINATION OF TORT CLAIMS TRUST ........~~39~~**43**

8.1    Duration/Termination ...........................................................................~~39~~**43**

8.2    Continuance of Tort Claim Trust for Winding Up ...........................................~~40~~**44**

8.3    Final Accounting ................................................................................~~41~~**45**

SECTION IX    MISCELLANEOUS PROVISIONS .......................................~~42~~**46**

9.1    Irrevocability ....................................................................................~~42~~**46**

9.2    Settlor, Representative and Cooperation .....................................................~~42~~**46**

9.3    Applicable Law...................................................................................~~42~~**46**

9.4    Entire Agreement; No Waiver ...................................................................~~43~~**46**

9.5    Amendments ......................................................................................~~43~~**46**

9.6    Successors and Assigns .........................................................................~~44~~**47**

9.7    No Association, Partnership or Joint Venture ................................................~~44~~**48**

9.8    Severability........................................................................................~~44~~**48**

9.9    Notices .............................................................................................~~45~~**48**

9.10    Effectiveness ......................................................................................~~45~~**50**

9.11    Counterparts ......................................................................................~~45~~**50**

9.12    Headings ...........................................................................................~~45~~**50**

9.13    Confidentiality.....................................................................................~~45~~**50**

9.14    No Bond Required ................................................................................~~46~~**50**

**9.15    Dispute Resolution..............................................................................50**

**9.16**    Retention of Jurisdiction.......................................................................~~46~~**51**

~~9.16~~**9.17** ............................................................................................ Relationship to Plan ~~46~~**51**

**Exhibit A    Tort Claims Trust Distribution Procedures**

**Exhibit B    Certificate of Trust**

**Error! Unknown document property name.**

# TRONOX INCORPORATED

## TORT CLAIMS TRUST AGREEMENT

THIS AGREEMENT AND DECLARATION OF THE TRUST (the "**Tort Claims Trust Agreement**") dated as of [_____], 2010,**the Effective Date,** by and between Tronox Incorporated ("**Tronox**") and its debtor affiliates listed on the signature pages annexed hereto (collectively, the "**Tronox Debtors**"), The Garretson Firm Resolution Group, Inc. as trustee (the "**Tort Claims Trustee**"); _____ as the qualifying**Wilmington Trust Company, a Delaware banking corporation, as the** trustee for purposes of Chapter 38 of title 12 of the Delaware Code, 12 Del. C. §§3801 *et seq.* (the "**Delaware Trustee**"); and the members of the Tort Claims Trust Advisory Committee as identified on the signature pages to this agreement (the "**TAC**") is executed to facilitate the implementation of the *Proposed First Amended Joint Plan of Reorganization of Tronox Incorporated et al. Pursuant to Chapter 11 of the Bankruptcy Code* [**Ex. B to** Docket No. 2158**2402**] (as may be amended, modified or supplemented from time to time, the "**Plan**").  All capitalized terms used by not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**WHEREAS**, on January 12, 2009 (the "**Petition Date**"), the Tronox Debtors filed a voluntary petition for relief under chapter 11 of the United States Code (the "**Bankruptcy Code**");

**WHEREAS**, the Tronox Debtors have reorganized under the Bankruptcy Code in a case pending before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), styled as In re Tronox, Incorporated, et al., Case No. 09-10156.**10156 (ALG).**

**WHEREAS**, on [DATE],**November 30, 2010,** the Bankruptcy Court entered an order confirming the Plan **[Docket No. 2567]** (the "**Confirmation Order**");

**Error! Unknown document property name.**

WHEREAS, the Plan provides, inter alia, for Tronox's creation of a trust to make distributions to ~~h~~**H**olders of ~~a~~**A**llowed Tort Claims (the "**Tort Claims Trust**");

WHEREAS, pursuant to the Plan, the Tort Claims Trust is to use its assets and the income therefrom to satisfy all of the Tort Claims;

WHEREAS, pursuant to the Plan, the Tort Claims Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "**QSF Regulations**"); and

WHEREAS, it is the intent of Tronox that the Tort Claims Trust be administered, maintained and operated at all times through mechanisms that provide reasonable assurance that the Tort Claims Trust will satisfy all Tort Claims pursuant to the Tort Claims Trust Distribution Procedures, which are attached hereto as Exhibit A.

NOW, THEREFORE, it is hereby agreed as follows:

## SECTION I

## ESTABLISHMENT OF TORT CLAIMS TRUST

**1.1**    **Creation and Name.**  The ~~Tort Claims Trustee and the Delaware Trustee~~**parties hereto** hereby create a trust known as the Tort Claims Trust, which is the Tort Claims Trust provided for and referred to in the Plan.  The Tort Claims Trust shall constitute a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. §§3801 *et seq.* (as the same may be amended from time to time, the "**Act**"), and the Tort Claims Trustee and the Delaware Trustee shall **execute and** cause to be filed a Certificate of Trust, in the form attached hereto as Exhibit B, with the Secretary of State of the State of Delaware pursuant to Section 3810 of the Act.  It is the intention of the parties hereto that the Tort Claims Trust shall be a statutory trust under the Act and that this Tort Claims Trust Agreement shall constitute the governing instrument of the Tort Claims

Error! Unknown document property name.

Trust. The Tort Claims Trustee may transact the business and affairs of the Tort Claims Trust in the name of the Tort Claims Trust, and references herein to the Tort Claims Trust shall include the Tort Claims Trustee acting on behalf of the Tort Claims Trust.

**1.2** **Definitions.**

(a) "**Allowed Asbestos Claim**" means an Asbestos Claim which was the subject of a timely filed Proof of Claim (or a Proof of Claim that was authorized by a Final Order to be late filed before the Effective Date), and (a) has been Allowed by a Final Order, (b) is Allowed (i) pursuant to the Plan, or (ii) in any stipulation that is approved by the Bankruptcy Court, or (c) a Claim that is Allowed through the Tort Claims Trust Distribution Procedures.

(b) "**Allowed Future Tort Claim**" means a Tort Claim held by a Future Tort Claimant that is Allowed by a Final Order.

(c) "**Allowed Indirect Environmental Claim**" means an Indirect Environmental Claim which was the subject of a timely filed Proof of Claim (or a Proof of Claim that was authorized by a Final Order to be late filed before the Effective Date), and (a) has been Allowed by a Final Order, **or** (b) is Allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court or (iii) pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection with the Plan.

(d) "**Allowed Non-Asbestos Toxic Exposure Claims**" means a Non-Asbestos Toxic Exposure Claim which was the subject of a timely filed Proof of Claim (or a Proof of Claim that was authorized by a Final Order to be late filed before the Effective Date) and is Allowed through the Tort Claims Trust Distribution Procedures.

(e) "**Allowed Property Damage Claims**" means a Property Damage Claim which was the subject of a timely filed Proof of Claim (or a Proof of Claim that was authorized by a Final Order to be late filed before the Effective Date) and (a) has been Allowed by a Final Order,

Error! Unknown document property name.

(b) is Allowed (i) pursuant to the Plan, or (ii) in any stipulation that is approved by the Bankruptcy Court, or (c) that is Allowed through the Tort Claims Trust Distribution Procedures.

(f)    "**Allowed Tort Claim**" means, collectively, Allowed Asbestos Claims, Allowed Future Tort Claims, Allowed Indirect Environmental Claims, Allowed Non-Asbestos Toxic Exposure Claims, Allowed Property Damage Claims, and any Allowed ~~Unknown~~**Unaccounted-for** Tort Claim.

(g)    "**Allowed ~~Unknown~~Unaccounted-for Tort Claim**" means any Tort Claim that is ~~not an Allowed Asbestos Claim, Allowed~~**(a) (i) a Claim that is listed in the Schedules by Tronox as neither disputed, contingent nor unliquidated, and as to which Tronox or any other party in interest has not filed an objection by the Claims Objection Bar Date or such other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules or the Bankruptcy Court or (ii) that is a Claim as to which a Proof of Claim was timely filed and as to which no objection was filed by the Claims Objection Bar Date; and (b) is not an Asbestos Claim,** Future Tort Claim, ~~Allowed~~ Indirect Environmental Claim, *~~Allowed~~* Non-Asbestos Toxic Exposure Claim, or ~~Allowed~~ Property Damage Claim, which Tort Claim ~~has been~~**is** Allowed ~~by Final Order~~**through the Tort Claims Trust Distribution Procedures**.

(h)    "**Anadarko Litigation**" means the adversary proceeding pending in the Bankruptcy Court captioned *Tronox Incorporated, et al. v. Anadarko Petroleum Corporation, et al.*, Adversary Proceeding No. 09-01198 (ALG).

(i)    "**Asbestos Claims**" means, collectively, any Tort Claims, or allegation or portion thereof against, or any debt, liability or obligation of, any Tronox Debtor or non-debtor Affiliate thereof resulting direct**ly** or indirectly from alleged injury to a person or property from asbestos exposure or release, including all claims for indemnification or contribution relating to alleged injury from asbestos exposure or release, whether or not such alleged injury was known or

-4-

Error! Unknown document property name.

had manifested as of Confirmation, to the extent arising, directly or indirectly, from acts, omissions, business or operations of any Tronox Debtor, including all retained claims, debts, obligations or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general and special damages).

(j)    "**Effective Date**" means the date selected by Tronox that is a Business Day after the Confirmation Date on which the conditions to the occurrence of the Effective Date have been met or waived pursuant to Article IX.B and Article IX.C **of the Plan**.  Unless otherwise specifically provided in the Plan, anything required to be done by Tronox or Reorganized Tronox, as applicable, on the Effective Date may be done on the Effective Date or as soon as reasonably practicable thereafter.

(k)    "**Final Order**" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek certiorari, or move for a new trial, re-argument, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing has been timely filed, or as to which any appeal that has been taken, any petition for certiorari, or motion for a new trial, review, re-argument, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

(l)    "**Funded Tort Claims Trust Amount**" means $12.5 million in Cash, which Tronox will contribute to the Tort Claims Trust on the Effective Date.

(m)    "**Future Tort Claimant**" means an ~~e~~**E**ntity that establishes that it holds a Tort Claim that arose prior to the Effective Date and was not discharged under the Plan.

-5-

**Error! Unknown document property name.**

(n)    "**Indirect Environmental Claim**" means a Claim held by a private party for breach of contract, indemnification, contribution, reimbursement or cost recovery related to environmental monitoring or remediation, including Claims for contribution or direct costs under any Environmental Law.

(o)    "**Non-Asbestos Toxic Exposure Claims**" means timely filed Tort Claims against any Tronox Debtor for personal injury, wrongful death, sickness or disease arising directly or indirectly from exposure to or release of creosote, benzene, radiation or other environmental contamination or chemical exposure or release.

(p)    "**Proof of Claim**" means a proof of Claim timely filed against any of the Tronox Debtors in the Chapter 11 Cases.

(q)    "**Property Damage Claims**" means timely filed private party property damage, remediation or restoration Tort Claims related to creosote, benzene, or other chemical exposure or release, or environmental contamination, radiation (including naturally occurring radioactive material**)** or related matters.

(r)    "**Tort Claim**" means non-governmental Claims against any Tronox Debtor, whether such Claims are known or unknown, whether by contract, tort or statute, whether existing or hereinafter arising, for death, bodily injury, sickness, disease, medical monitoring or other personal physical injuries or damage to property to the extent caused or allegedly caused directly or indirectly by the presence of or exposure to any product or toxin manufactured**, stored,** or disposed of, or other property owned, operated or used for **storage or** disposal by, any Tronox Debtor or any Entity for whose products or operations any Tronox Debtor allegedly has liability, including all such Claims relating to the Owned Sites, the Other Sites, the Environmental Trust Assets, the Nevada Assets or the Retained Assets to the extent owned, operated or used for disposal by, any Tronox Debtor prior to the Effective Date and not by Reorganized Tronox,

-6-

**Error! Unknown document property name.**

including Non-Asbestos Toxic Exposure Claims, Property Damage Claims, Asbestos Claims**,**
**Indirect Environmental Exposure Claims,** and Claims of Future Tort Claimants.   For the
avoidance of doubt, Tort Claims do not include any workers' compensation claims brought
directly by a past or present employee of any Tronox Debtor under an applicable workers'
compensation statute.

(s)    "**Tort Claims Insurance Assets**" means all net proceeds (after deduction
of counsel's contingency fee only) of any insurance settlements or recoveries, or the rights to such
proceeds, from any Insurance Policies providing any coverage for the benefit of any ~~h~~**H**olders of
Tort Claims, including (a) Home Indemnity Insurance, Policy Numbers:  GA 4389610 (1/1/73 -
1/1/74), GA 4389610 (1/1/74 - 1/1/75), GA 4389610 (1/1/75 - 1/1/76), GA 9119366 (1/1/76 -
1/1/77), GA 9119366 (1/1/77 - 7/1/78), GA 9697500 (7/1/78 - 7/1/79), GA 9730184 (7/1/79 -
7/1/80) GA 9730184 (7/1/80 - 7/1-81); (b) Old Republic Insurance Company, Commercial
General Liability Policy Numbers:  MWZ 43816 (7/1/85 - 7/1/86), MWZ 43956 (7/1/86 - 7/1/87),
MWZY 10049 (7/1/87 - 7/1/88); (c) Travelers (Aetna) Indemnity Company, Policy Numbers:
08AL018757SR (1/15/65 - 1/1/66), 8XN4SC (7/1/65 - 1/1/66), 40AL00500SR(Y) (1/1/66 -
1/1/67), 8XN4SC (1/1/66 - 1/1/67), 40AL00500SR(Y) (1/1/67 - 1/1/68), 8XN4SC (1/1/67 -
1/1/68), 40AL00500SR(Y) (1/1/68 - 1/1/69), 8XN4SC (1/1/68 - 4/8/68), 8XN4SC (4/8/68 -
1/1/69); and (d) policies issued by Century Indemnity Co. and described in Dkt. No. 1274.

(t)    "**Tort Claims Trust Distributable Amount**" means the amount available
for Distribution from the Tort Claims Trust **from time to time**, after payment of administrative
expenses as provided in the Tort Claims Trust Agreement.

(u)    "**Tort Claims Trust Distribution Procedures**" means the procedures to
be implemented by the Tort Claims Trustee, pursuant to the terms and conditions of the Plan and
the Tort Claims Trust Agreement, to process, liquidate and make Distributions on account of Tort

**Error! Unknown document property name.**

Claims.  Final determinations on the allowance or disallowance of Tort Claims for Distribution purposes shall be made in accordance with the Tort Claims Trust Distribution Procedures.

**1.3    Purpose of Tort Claims Trust.**

(a)    The Tort Claims Trust is established for the sole purpose of assuming the liabilities of the Tronox Debtors, their predecessors and successors in interest, for all Tort Claims and to use the Tort Claims Trust Distributable Amount to pay the ~~h~~**H**olders of Allowed Tort Claims in accordance with **the Plan,** this Tort Claims Trust Agreement, **and** the Tort Claims Trust Distribution Procedures, and in a manner that is fair, reasonable and equitable in light of the limited assets available to satisfy the Tort Claims.

(b)    The Tort Claims Trust shall have no objective or authority to carry on or conduct any trade or business, or accept an assignment of any claim or right of action from, or assume liabilities of, any person or entity other than the Tronox Debtors as predecessors and successors in interest, and no part of the Tort Claims Trust's assets or proceeds, revenue or income therefrom, shall be used or disposed of by the Tort Claims Trust in furtherance of any trade or business.

**1.4    Appointment of Tort Claims Trustee.**  As of the Effective Date, the **initial** Tort Claims Trustee shall be the entity appearing on the signature pages of this **Tort Claims Trust** Agreement, which hereby accepts the trust imposed on it by this Tort Claims Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Tort Claims Trust Agreement.

**1.5    Governance of Tort Claims Trust.**  The Tort Claims Trust shall be administered by the Tort Claims Trustee as further provided herein.  The Tort Claims Trustee's powers are exercisable solely in a fiduciary capacity **, subject to the limitations set forth in Section 5.4 below,** consistent with, and in furtherance of, the purposes of this Tort Claims Trust Agreement

-8-

**Error! Unknown document property name.**

and not otherwise.  Subject to the terms and conditions of this Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures, the Tort Claims Trustee may delegate responsibility for discrete issues or decisions to one or more third parties subject to continued oversight by the Tort Claims Trustee.

**1.6**     **Transfer of Tort Claims Trust Assets and Rights to Tort Claims Trustee.**

(a)    Pursuant to the Plan, the Tort Claims Trust shall be funded with the following:  (i) 12% of the proceeds of the Anadarko Litigation, in accordance with the Anadarko Litigation Trust Agreement, (ii) the Funded Tort Claims Trust Amount and (c) the Tort Claims Insurance Assets.  The sole recourse of Holders of Tort Claims for or in respect of such Tort Claims shall be against the Tort Claims Trust, and such **H**olders shall have no right at any time to assert Tort Claims against Reorganized Tronox or any of its assets.

(b)    Holders of Allowed Tort Claims will receive on account of such allowed Tort Claims a distribution from the Tort Claims Trust in accordance with the Tort Claims Trust Distribution Procedures.

(c)    The Tronox Debtors and Reorganized Tronox shall not be required to pay any fee or expense for, or assume any liabilities related to, the operation or administration of the Tort Claims Trust or any other arrangement established with respect to the determination, satisfaction or resolution of any issues related to the Tort Claims (which fees and expenses shall be covered by funds contributed to the Tort Claims Trust).

**1.7**     **Tort Claims Trust's and Trustee's Acceptance of Assets and Assumptions of Liabilities.**

(a)    The Tort Claims Trustee hereby accepts the duties as trustee imposed on it by this Tort Claims Trust Agreement and agrees to observe and perform such duties on and subject to the terms and conditions set forth in this Tort Claims Trust Agreement.

Error! Unknown document property name.

(b)    In connection with and in furtherance of the purposes of the Tort Claims Trust, the Tort Claims Trustee hereby expressly accepts the transfer of assets to the Tort Claims Trust pursuant to Section 1.6 and subject to the terms of the Plan.

(c)    The Tort Claims Trustee hereby further agrees to establish and maintain the accounts of the Tort Claims Trust and to distribute the assets of the Tort Claims Trust in accordance with the Plan, this Tort Claims Trust Agreement, and the Tort Claims Trust Distribution Procedures.

(d)    In furtherance of the purposes of and on behalf of the Tort Claims Trust, the Tort Claims Trustee hereby expressly assumes all liability for (i) all Allowed Tort Claims and Tort Claims to be Allowed or disallowed pursuant to this Agreement and the Tort Claims Trust Distribution Procedures and (ii) all premiums, deductibles, retrospective premium adjustments, security or collateral arrangements, or any other charges, costs, fees or expenses (if any) that become due to any insurer as a result of Allowed Tort Claims. **All indemnity, defense cost and insurance liabilities shall be paid exclusively by the Tort Claims Trust and shall not be personal liabilities of the Tort Claims Trustee unless caused by the Tort Claims Trustee's own breach of trust constituting fraud, bad faith or willful misconduct.**

(e)    In furtherance of the purposes of the Tort Claims Trust, the Tort Claims Trustee expressly assumes all liabilities and responsibility for all Allowed Tort Claims ~~Trust Claims~~**(subject to the limitations on liability described in Section 5.4 below)**, and neither the Tronox Debtors nor Reorganized Tronox shall have any further financial or other responsibility or liability therefore.  Except as otherwise provided in this Tort Claims Trust Agreement, the Tort Claims Trust shall have all defenses, **counterclaims,** cross-claims, offsets and recoupments, as well as rights of indemnification, contribution, subrogation and similar rights, regarding such claims that the Tronox Debtors or Reorganized Tronox have or would have had under applicable

Error! Unknown document property name.

law.  Regardless of the foregoing, however, a claimant must meet otherwise applicable federal, state and foreign statutes of limitations and repose.

**1.8**    **Reliance.**  The Tort Claims Trustee may rely upon Tronox's Schedules of Assets and Liabilities and all other information provided by Tronox or its representatives concerning Tort Claims, the reconciliation thereof and documents supporting such reconciliation, and the Proof of Claim register maintained by Kurtzman Carson Consultants LLC.

**1.9**    **Instruments of Further Assurance; Information.**  Reorganized Tronox, and such persons as shall have the right and power to do so after the Effective Date, shall, upon reasonable request of the Tort Claims Trustee or its successors or assigns, execute, acknowledge and deliver such further instruments, documents, books and records and take, provide further information, or cause to be taken, all such further actions as may be necessary or proper to effectively carry out the purposes of this Tort Claims Trust Agreement, the Tort Claims Trust Distribution Procedures, and the Plan and to otherwise carry out the intent of the parties hereunder, under the Tort Claims Distribution Procedures, and under the Plan.

**SECTION II**

**ADMINISTRATION OF TORT CLAIMS TRUST**

**2.1**    **Payment of Expenses and Liabilities.**

(a)    Payment of all Tort Claims Trust expenses and liabilities with respect to Tort Claims shall be payable solely by the Tort Claims Trustee out of the Tort Claims Trust.

(b)    Neither the Tronox Debtors, Reorganized Tronox, their predecessors, subsidiaries, successors in interest, the present or former directors, officers, employees or agents of the Tronox Debtors, Reorganized Tronox, nor the Tort Claims Trustee or any of its officers, agents, advisors or employees shall be liable for the payment of any Tort Claims Trust expense or any other liability of the Tort Claims Trust.

**Error! Unknown document property name.**

**2.2** **Claims Administration**.  The Tort Claims Trustee shall promptly proceed to implement the Tort Claims Trust Distribution Procedures.

**SECTION III**

**POWERS, LIMITATIONS AND DUTIES OF THE TORT CLAIMS TRUSTEE**

**3.1** **General Powers of Tort Claims Trustee.**

(a)    The Tort Claims Trustee is and shall act as the fiduciary to the Tort Claims Trust in accordance with the provisions of this Tort Claims Trust Agreement, the Tort Claims Trust Distribution Procedure and the Plan.  The Tort Claims Trustee shall, at all times, administer the Tort Claims Trust and the assets therein in accordance with the purposes set forth in Section 1.3 hereof.  Subject to the limitations set forth in this Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures, the Tort Claims Trustee shall have the power to take any and all actions that, in the judgment of the Tort Claims Trustee, are necessary or proper to fulfill the purposes of the Tort Claims Trust, including, without limitation, each power expressly granted in this Section 3.1, any power reasonably incidental thereto and any trust power now or hereafter permitted under the laws of the State of Delaware.  In addition, except as required by applicable law or otherwise specified herein, the Tort Claims Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(b)    Subject to and without limiting the generality of Sections 1.3 **and 3.1(a)** above, and except as limited below, the Tort Claims Trustee shall have the power to:

(i)    receive and hold the assets of the Tort Claims Trust and exercise all rights with respect thereto, including the right to vote and sell any securities that are included in the Tort Claims Trust assets;

(ii)    invest the monies held from time to time by the Tort Claims Trust;

Error! Unknown document property name.

(iii)        pay liabilities and expenses of the Tort Claims Trust, including, but not limited to, Tort Claims Trust expenses;

(iv)        establish such funds, reserves and accounts within the Tort Claims Trust as required by the Plan, the Tort Claims Trust Distribution Procedures and as otherwise may be deemed by the Tort Claims Trustee to be necessary in carrying out the purposes of the Tort Claims Trust;

(v)        sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding concerning the Tort Claims Trust;

(vi)        make, pursue (by litigation or otherwise), collect, compromise or settle, in the name of the Tort Claims Trust or the name of Reorganized Tronox, any claim, right, action or cause of action included in the Tort Claims Trust, including, but not limited to, insurance recoveries, before any court of competent jurisdiction; provided, however, that settlement of actions before the Bankruptcy Court require the approval of the Bankruptcy Court;

(vii)        establish, supervise and administer the Tort Claims Trust in accordance with the Tort Claims Trust Distribution Procedures and the terms thereof;

(viii)        ~~subject to the agreement of the TAC,~~ sell, transfer**,** or exchange any or all of the assets of the Tort Claims Trust at such prices and upon such terms as the Tort Claims ~~Trustees~~**Trustee and the TAC, through its unanimous approval,** may consider proper, consistent with the other terms of this Tort Claims Trust Agreement;

(ix)        enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the Tort Claims Trust to operate;

(x)        compensate the Delaware Trustee, the TAC members, and their employees, legal, financial, accounting, investment and other advisors, consultants, independent contractors and agents, and reimburse the Delaware Trustee~~,~~ and the TAC members for all

-13-

**Error! Unknown document property name.**

reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder, ~~provided however that such reimbursable expenses shall not cumulatively exceed $10,000 for any calendar year~~**in accordance with Section 6.5 below and the separate fee agreement referenced in Section 7.6 below**;

           (xi)    in accordance with Section 5.8 below, defend, indemnify and hold harmless (and purchase insurance ~~indemnifying~~**to defend, indemnify and hold harmless**) (A) the Tort Claims Trustee, (B) the Delaware Trustee ~~and~~**,** (C) the TAC members, ~~and~~**(D) the directors, officers and employees of the Tort Claims Trust, and (E)** any agents, advisors and consultants of the Tort Claims Trust or the TAC, to the fullest extent that a statutory trust organized under the laws of the State of Delaware is, from time to time, entitled to indemnify and/or insure its directors, trustees, officers, employees, agents, advisors and representatives;

           (xii)    appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing, forecasting and other consultants and agents as the business of the Tort Claims Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Tort Claims Trustee permit and as the Tort Claims Trustee, in its discretion, deems advisable or necessary in order to carry out the terms of the Tort Claims Trust~~, provided however that without the unanimous approval of the TAC, such reimbursable expenses shall not exceed $100,000 in any calendar year~~;

           (xiii)    remit payment to employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors and agents, including those engaged by the Tort Claims Trust~~, provided however that without the unanimous approval of the TAC, such reimbursable expenses shall not exceed $100,000 in any calendar year~~;

           (xiv)    execute and deliver such instruments as the Tort Claims Trustee considers proper in administering the Tort Claims Trust;

-14-

**Error! Unknown document property name.**

(xv)      enter into such other arrangements with third parties as are deemed by the Tort Claims Trustee to be necessary in carrying out the purposes of the Tort Claims Trust, provided such arrangements do not conflict with any other provision of this Tort Claims Trust Agreement;

(xvi)      consult with the TAC as required under this Tort Claims Trust Agreement at such other times and with respect to such other issues relating to the conduct of the Tort Claims Trust as the Tort Claims Trustee considers desirable; and

(xvii)      consult with Reorganized Tronox at such times and with respect to such issues relating to the conduct of the Tort Claims Trust as the Tort Claims Trustee considers desirable.

(c)      The Tort Claims Trustee shall consult with the TAC (i) on the general implementation and administration of the Tort Claims Trust; (ii) on the general implementation and administration of the Tort Claims Trust Distribution Procedures; and (iii) **on an annual budget for the reimbursable expenses contemplated by Sections 3.1(b)(ix), (xii) and (xiii) of this Trust Agreement; and (iv)** such other matters as may be required under this Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures.

**3.2      Additional Powers of the Tort Claims Trustee.**

(a)      Subject to the express limitations contained herein, the Tort Claims Trustee shall have, and may exercise with respect to the assets of the Tort Claims Trust, or any part thereof, and to the administration and distribution of such assets, all powers now or hereafter conferred on trustees by the laws of the State of Delaware.

(b)      The powers conferred by this Section 3.2 in no way limit any power conferred on the Tort Claims Trustee by any other section hereof but shall be in addition thereto; provided, however, that the powers conferred by this Section 3.2 are conferred and may be

-15-

**Error! Unknown document property name.**

exercised only and solely within the limitations and for the limited purposes imposed and expressed herein and in the Plan.

**3.3**    **Limitations on Tort Claims Trustee.**

(a)    The Tort Claims Trustee shall carry out the purposes of the Tort Claims Trust and the directions contained herein, and shall not at any time, on behalf of the Tort Claims Trust or the ~~h~~**H**older of Tort Claims (a) enter into or engage in any business**,** (b) accept an assignment of any right of action from any person or entity other than Tronox**,** or (c) assume any liabilities of, any person or entity other than the Tronox Debtors**, except as authorized by this Tort Claims Trust Agreement**.  Furthermore, no part of the Tort Claims Trust, or the proceeds, revenue or income therefrom shall be used or disposed of by the Tort Claims Trustee in furtherance of any business other than as contemplated herein or by the Plan.

(b)    This limitation shall apply irrespective of whether the conduct of any such business activities is deemed by the Tort Claims Trustee to be necessary or proper for the conservation and protection of the Tort Claims Trust.  The Tort Claims Trustee may not hold a controlling interest in the stock of, or be a partner, an officer or a director of any of the ~~h~~**H**olders of Tort Claims nor may the Tort Claims Trustee have the power to guarantee any Tort Claim.

(c)    The Tort Claims Trustee shall be required to obtain the consent of the TAC pursuant to the Consent Process set forth in Section 6.7(b) below, in addition to other instances contained herein, in order:

(i)    to establish and/or to change the "Claims Materials" to be provided ~~h~~**H**olders of Tort Claims under Section 5.1 of the Tort Claims Trust Distribution Procedures;

(ii)    to change the form of release to be provided pursuant to Section 4.6 of the Tort Claims Trust Distribution Procedures;

~~(iii)  to terminate the Tort Claims Trust pursuant to Section 8.1(b) below;~~

-16-

**Error! Unknown document property name.**

**(iii)** (iv) to enter into an agreement settling or otherwise resolving the liability of any insurer under any insurance policy of legal action related thereto;

**(iv)** (v) to change the compensation of the Tort Trustee, Claims Trustee, the Delaware Trustee, or the members of the Tort Trust Advisory Committee**TAC**, other than to reflect reasonable cost-of-living increases or changes approved by the Bankruptcy Court as otherwise provided herein; provided that a change in the compensation of the Delaware Trustee shall also require the consent of the Delaware Trustee;

**(v)** (vi) to take structural or other actions to minimize any tax on the Tort Claims Trust Assets;

**(vi)** (vii) to amend any provision of this Agreement in accordance with the terms hereof (and the consent of the Delaware Trustee solely to the extent any such amendment adversely affects the rights, duties and obligations of the Delaware Trustee hereunder);

**(vii)** (viii) to amend any provision of the Tort Claims Trust Distribution Procedures in accordance with the terms thereof;

**(viii)** (ix) **if outside of the Tort Claims Trust's ordinary course of administration,** to disclose any information, documents or other materials to preserve, litigate, resolve or settle coverage, or to comply with an applicable obligation under an insurance policy or insurance settlement agreement pursuant to Section 3.1(b)(vi) above ;

**(ix)** (x) for all purposes of this **Tort Claims Trust** Agreement and the Act, the consent of the TAC shall be deemed the consent of the Beneficial Owners.

(d)     The Tort Claims Trustee shall meet with the TAC no less often than quarterly.  The Tort Claims Trustee shall meet with the TAC between such quarterly meetings at mutually convenient times and locations when so requested by any member of the TAC.  The Delaware Trustee shall not be required or permitted to attend meetings.

-17-

(e)    The Tort Claims Trustee, upon notice from the TAC, if practicable in view of pending business, shall, at the next meeting with the TAC, consider issues submitted by them.

**3.4    Establishment and Maintenance of Accounts and Reserves.**  The Tort Claims Trustee shall create four separate funds as described in the Plan.  Specifically, the **Tort Claims** Trustee shall create:

**Fund A**, which shall be a fund established for the payment of Allowed Asbestos Claims, Allowed Future Tort Claims, and any Allowed ~~Unknown~~**Unaccounted-for** Tort Claim, **and** which shall ~~be funded with 6.25% of the Tort Claims Trust Distributable Amount~~**consist of a separate sub-account within the Tort Claims Trust equal to six and one-quarter percent (6.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund; the *Res* is defined in Section 1.1 of the TDPs and the Excess Anadarko Fund is defined in Section 1.5(e) of the TDPs)**;

**Fund B**, which shall be a fund established for the payment of Allowed Indirect Environmental Claims, **and** which shall ~~be funded with 6.25% of~~**consist of a separate sub-account within** the Tort Claims Trust ~~Distributable Amount if the aggregate amount of~~**equal to .15625 percent of the *Res* (excluding from the *Res* the Excess Anadarko Fund) for each whole million dollars of aggregate** Allowed Indirect Environmental Claims ~~is equal to or greater than $80 million, such that the aggregate amount of Allowed Indirect Environmental Claims to be paid out of the Tort Claims Trust Distributable Amount is equal to or greater than $40 million; provided that if the aggregate amount of Allowed Indirect Environmental Claims to be paid out of the Tort Claims Trust is less than $40 million, then the percentage shall be proportionally reduced (for example, if the aggregate amount of Allowed Indirect Environmental Claims is $20 million, then Holders of Allowed Indirect Environmental Claims shall receive 50% of the above allocated percentage of the Tort Claims Trust Distributable Amount, or 1.5625%~~**(.0015625 times the**

-18-

**number of whole millions of dollars of Allowed Category B Claims times the *Res* (excluding from the *Res* the Excess Anadarko Fund)), but in no event more than six and one-quarter percent (6.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund)**;

**Fund C**, which shall be a fund established for the payment of Allowed Property Damage Claims, **and** which shall ~~be funded with 6.25% of~~**consist of a separate sub-account within** the Tort Claims Trust ~~Distributable Amount if the aggregate amount of Allowed Property Damage Claims is equal to or greater than $50 million; provided that if the aggregate amount of Allowed Property Damage Claims is less than $50 million, then the 6.25% shall be proportionally reduced (for example, if the aggregate amount of~~**equal to .125 percent of the *Res* (excluding from the *Res* the Excess Anadarko Fund) for each whole million dollars of aggregate** Allowed Property Damage Claims ~~is $25 million, then Holders of Property Damage Claims shall receive 50% of 6.25%, or 3.125%, of the Tort Claims Trust Distributable Amount~~**(.00125 times the number of whole millions of dollars of Allowed Category C Claims times the *Res* (excluding from the *Res* the Excess Anadarko Fund)), but in no event more than six and one-quarter percent (6.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund)**; and

**Fund D**, which shall be a fund established for payment of the Allowed Non-Asbestos Toxic Exposure Claims, **and** which shall ~~be funded with the remaining Tort Claims Trust Distributable Amount~~**consist of a separate sub-account within the Tort Claims Trust equal to the balance of the *Res* (excluding from the *Res* the Excess Anadarko Fund) not otherwise allocated to Funds A, B, and C pursuant to Sections 1.5(a)-(c) above, but in any event not less than eighty-one and one-quarter percent (81.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund).  For the avoidance of doubt, portions of the *Res* not allocated to Fund B or Fund C in accordance the provisions in this Section 3.4 shall be allocated solely to Fund D.**

Error! Unknown document property name.

In addition, the Tort Claims Trustee may, from time to time, create such other accounts and reserves within the Tort Claims Trust as it may deem necessary, prudent or useful in order to provide for the payment of expenses and payment of Tort Claims and may, with respect to any such account or reserve, restrict the use of monies therein.  The Tort Claims Trustee may also maintain such additional accounts and reserves as may be required by applicable law or by order of the Bankruptcy Court.

**3.5    Payment of Certain Fees, Expenses, and Costs After Effective Date.**

**The Tort Claims Trustee shall, within thirty (30) days after the Effective Date, pay from Fund D the sum of Three Million Dollars ($3 Million) to The Powell Law Group, P.C. ("PLG") as partial compensation and reimbursement for the fees, costs, and expenses (including, but not limited to, expert witness and consulting expert fees, fees for outside counsel retained by PLG related to committee and other work necessary to establish the Tort Claims Trust, and court costs) that PLG incurred in pursuing the claims of its clients who are Holders of Non-Asbestos Toxic Exposure Claims, who comprise the majority of the Holders of Non-Asbestos Toxic Exposure Claims (the "Initial Fund D Payment").  The Initial Fund D Payment shall be credited towards the amounts that PLG is entitled to recover from those clients' recoveries pursuant to the terms of PLG's contracts with those clients, which recoveries shall be paid once the Tort Claims Trust begins paying Tort Claims at the times and in the manners specified in the TDPs.  PLG shall provide to the Tort Claims Trustee an accounting of the per claimant expenses and fees allocated to this Initial Fund D Payment at least 30 days before the Trustee is required to pay any of the PLG Fund D claimants.**

Error! Unknown document property name.

**3.6** ~~3.5~~ **Investment Power.**

(a)     The Tort Claims Trustee shall not be required to invest any monies received by the Tort Claims Trust.  To the contrary, in the exercise of its reasonable judgment, the Tort Claims Trustee may hold ~~receipts~~**monies** to be distributed to Holders of Allowed Tort Claims within sixty (60) days in a non-interest bearing account.

(b)     Investment of monies held in the Tort Claims Trust shall be administered in the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs, subject to the following limitations and provisions:

(i)     The Tort Claims Trust shall not acquire, directly or indirectly, equity in any entity.

(ii)     The Tort Claims Trust shall not acquire or hold any long-term debt securities unless such securities are (A) rated "Baa" or higher by Moody's Investors Service ("**Moody's**"), "BBB" or higher by Standard & Poor's Financial Services LLC ("**S&P**") or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency or (B) issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(iii)     The Tort Claims Trust shall not acquire or hold for longer than ninety (90) days any commercial paper unless such commercial paper is rated "Prime-1" or higher by Moody's, "A-1" or higher by S&P or has been given an equivalent rating by another nationally recognized statistical rating agency.

(iv)     The Tort Claims Trust shall not acquire or hold any certificates of deposit unless all publicly held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit and the holding company, if any, of which such financial institution is a subsidiary, satisfy the standards set forth herein.

**Error! Unknown document property name.**

(v)    The Tort Claims Trust shall not acquire or hold any repurchase obligations.

(vi)    The Tort Claims Trust shall not acquire or hold any options.

(c)    The Tort Claims Trustee may liquidate such investments if the Tort Claims Trustee determines in his or her discretion that such liquidation is necessary to protect the Tort Claims Trust from loss on the amounts invested.

(d)    The Tort Claims Trustee shall be restricted to the holding and collection of the assets of the Tort Claims Trust and the payment and distribution thereof for the purposes set forth ~~herein and~~ in the Plan**, in this Tort Claims Trust Agreement, and in the Tort Claims Trust Distribution Procedures** and to the conservation, protection and maximization of the Tort Claims Trust and to the administration thereof in accordance with the provisions of this Tort Claims Trust Agreement **and the Tort Claims Trust Distribution Procedures**.

(e)    The Tort Claims Trustee shall keep all assets of the Tort Claims Trust segregated from, and shall not commingle any assets with, any assets of any other person, including any of the Tort Claims Trustee's own assets.

**3.7    ~~3.6~~Tax and Reporting Duties of Tort Claims Trustee.**

(a)    The Tort Claims Trustee shall (i) timely file such income tax and other returns and statements and shall timely pay all taxes required to be paid by the Tort Claims Trust, (ii) comply with all withholding obligations, as required under the applicable provisions of the Internal Revenue Code ("**IRC**") and of any state law and the regulations promulgated thereunder, (iii) meet, without limitation, all requirements necessary to qualify and maintain qualification of the Tort Claims Trust as a qualified settlement fund within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC and (iv) take no action that could cause the Tort Claims Trust to fail to qualify as a qualified settlement fund within the

-22-

**Error! Unknown document property name.**

meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC.

(b)    The Tort Claims Trustee shall timely account to the Bankruptcy Court as follows:

(i)    As soon as practicable, but no later than [35**60** days] after each calendar quarter or the termination of the Tort Claims Trust, the Tort Claims Trustee shall file with the Bankruptcy Court a written report and account showing (i) the assets and liabilities of the Tort Claims Trust at the end of such quarter or upon termination of the Tort Claims Trust and the receipts and disbursements of the Tort Claims Trust for such quarter, (ii) any changes in the assets or to the allowance of Tort Claims which had not been previously reported, (iii) a general description of the activities of the Tort Claims Trust and (iv) if applicable, the amount of compensation paid to the Tort Claims Trustee for the preceding quarter.  The Tort Claims Trustee may file similar reports for such interim periods as he or she**the Tort Claims Trustee**, in his or her**its** discretion, deems advisable.  Simultaneously with delivery of each set of financial statements referred to above, the Tort Claims Trustee shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements.  The Tort Claims Trustee shall provide a copy of such report to Reorganized Tronox when such report is filed.

(ii)    The Tort Claims Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual report containing financial statements of the Tort Claims Trust (including, without limitation, a balance sheet of the Tort Claims Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Tort Claims Trustee and accompanied by an opinion of

-23-

**Error! Unknown document property name.**

such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of Tort Claims and as to the conformity of the financial statements with generally accepted accounting principles.  The Tort Claims Trustee shall provide a copy of such report to Reorganized Tronox, the Delaware Trustee, and the TAC when such reports are filed with the Bankruptcy Court.

(iii)    All materials required to be filed with the Bankruptcy Court by this Section 3.63.7 shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Office of the United States Trustee for the Southern District of New York.

(c)    The Tort Claims Trustee shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projection covering such fiscal year and the succeeding four fiscal years (the "**Annual Report**").  The Tort Claims Trustee shall provide a copy of the Annual Report to the Bankruptcy Court.

**SECTION IV**

**<u>QUALIFIED SETTLEMENT FUND</u>**

**4.1    <u>Tax Treatment.</u>**  The Tort Claims Trust is intended to be treated for U.S. federal income tax purposes as a "qualified settlement fund" as described within the QSF Regulations. Accordingly, for all U.S. federal income tax purposes the transfer of assets to the Tort Claims Trust will be treated as a transfer to a trust satisfying the requirements of the QSF Regulations by the **Tronox** Debtors, as transferors, for distribution to **H**olders of Tort Claims and in complete settlement of such Tort Claims.

**4.2    <u>No Right to Reversion with Respect to Tort Claims Trust Assets</u>.**  After the Trust Distribution Effective Date, neither the Tronox Debtors nor Reorganized Tronox will have

-24-

**Error! Unknown document property name.**

any rights to any refunds or reversion with respect to any Tort Claims Trust Assets or any earnings thereon.

4.3    **Obligations of the Tort Claims Trustee.**  The Tort Claims Trustee shall be the "administrator" (as defined in the QSF Regulations) of the Tort Claims Trust and shall (a) timely file such income tax and other returns and statements and timely pay all taxes required to be paid from the assets in the Tort Claims Trust as required by law and in accordance with the provisions of the Plan and this ~~Agreement, (b~~**Tort Claims Trust Agreement, (b) in the event that Reorganized Tronox elects** *to treat the Torts Claims Trust as a grantor trust pursuant to Treasury* **Regulation §1.468B-1(k)(1), provide Reorganized Tronox with any statements or reports required by the QSF Regulations or Treasury Regulation §1.671-4, to enable Reorganized Tronox to calculate its share of the Torts Claim Trust's tax obligations and attributes, (c)** comply with all withholding obligations, as required under the applicable provisions of the IRC and of any state law and the regulations promulgated thereunder, (~~c~~**d**) meet all other requirements necessary to qualify and maintain qualification of the Tort Claims Trust as a "qualified settlement fund" within the meaning of the QSF Regulations, and (~~d~~**e**) take no action that could cause the Tort Claims Trust to fail to qualify as a "qualified settlement fund" within the meaning of the QSF Regulations.

4.4    **Obligations of Reorganized Tronox.**  Following the funding of the Tort Claims Trust (and in no event later than February 15th of the calendar year following the date of this **Tort Claims Trust** Agreement), Reorganized Tronox shall provide, or cause to be provided, to the Tort Claims Trust any reports or statements required under the QSF Regulations.  Following any subsequent transfers of cash or other property to the Tort Claims Trust, the transferor (or the entity treated as the transferor for U.S. federal income tax purposes) shall provide, or cause to be

-25-

**Error! Unknown document property name.**

provided, to the Tort Claims Trustee any reports or statements required under the QSF Regulations.

4.5    **No Contravention of Requirements.**  No provision in this **Tort Claims Trust** Agreement or the Tort Claims Trust Distribution Procedures shall be construed to mandate any distribution on any claim or other action that would contravene the Tort Claims Trust's compliance with the requirements of a "qualified settlement fund" within the meaning of the QSF Regulations.

4.6  Grantor Trust Election.  The Tronox Debtors or the Reorganized Debtors, to the extent permitted by law, will elect *to treat the Torts Claims Trust as a grantor trust pursuant to Treasury* regulation section 1.468B-1(k)(1).  The Torts claims Trustee shall cooperate fully with such election.

**4.6**    4.7 **Withholding of Taxes and Other Charges.**

(a)    The Tort Claims Trust may withhold from any amounts distributable at any time to the h**H**olders of Tort Claims such sum or sums as may be necessary to pay any taxes or other charges which have been or may be imposed on the Tort Claims Trust or the h**H**olders of Tort Claims under the income tax laws of the United States or of any state or political subdivision or entity by reason of any distribution provided for herein or in the Plan, whenever such withholding is required by any law, regulation, rule, ruling, directive or other governmental requirement.

(b)    The Tort Claims Trustee, in the exercise of its discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts as may be withheld in accordance with the provisions of this Section 4.7.**4.6.**  Notwithstanding the foregoing, but without prejudice to the Tort Claims Trust's rights hereunder, the h**H**olders of Tort Claims shall have the right with respect to the United States or any state or political subdivision or entity to

-26-

Error! Unknown document property name.

contest the imposition of any tax or other charge by reason of any distribution hereunder or under the Plan.

**4.7** ~~4.8~~ **Other Governmental Disclosures.** The Tort Claims Trustee shall file, or cause to be filed, any other statements, returns or disclosures relating to the Tort Claims Trust that are required by any governmental unit or applicable law.

**SECTION V**

**TORT CLAIMS TRUSTEE**

**5.1** **Initial Tort Claims Trustee.** ~~In addition to the Delaware Trustee identified in the first paragraph of the Agreement and whose role is further described in SECTION VII, there shall be one (1)~~**The Tort Claims Trust shall have only one** Tort Claims Trustee **at any given time**. The initial Tort Claims Trustee is the entity identified on the signature pages to this Agreement.

**5.2** **Term of Service.**

(a) ~~A~~**The Tort Claims** Trustee shall serve until the earliest of (i) its dissolution or his or her death, (ii) its (or his or her) resignation pursuant to Section **5.2**(b) below, (iii) its (or his or her) removal pursuant to Section **5.2**(c) below, or (iv) the termination of the Tort Claims Trust pursuant to Section 8.1(b) below.

(b) A Tort Claims Trustee may resign at any time by written notice to the TAC. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ~~ninety (~~90~~)~~ days after the date such notice is given, where practicable.

(c) The Tort Claims Trustee may be removed pursuant to an order of the Bankruptcy Court at the recommendation of a majority of the TAC in the event that it (or he or she) becomes unable to discharge its (or his or her) duties hereunder due to a change in personnel, accident or physical or mental deterioration or for other good cause. Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general administration

-27-

**Error! Unknown document property name.**

provisions of SECTION III above, a consistent pattern of neglect and failure to perform or participate in performing the duties of the Tort Claims Trustee hereunder, or repeated non-attendance at scheduled meetings. Such removal shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

**5.3**   **Successor Tort Claims Trustee.**

(a)   Upon the termination of service of the Tort Claims Trustee, whether as a result of the expiration of its (or his or her) term or its dissolution (or his or her death), resignation or removal, the TAC shall appoint a successor **Tort Claims** Trustee. In the event that the TAC cannot agree on the successor **Tort Claims** Trustee, the Bankruptcy Court shall make the appointment.

(b)   Immediately upon the appointment of any successor Tort Claims Trustee, all rights, titles, duties, powers and authority of the predecessor Tort Claims Trustee hereunder shall be vested in, and undertaken by, the successor Tort Claims Trustee without any further act. No successor Tort Claims Trustee shall be liable personally for any act or omission of his or her predecessor Tort Claims Trustee.

(c)   Each successor Tort Claims Trustee shall serve until the earliest of (i) its dissolution (or his or her death), (ii) his or her resignation pursuant to Section 5.2(b) above, (iii) his or her removal pursuant to Section 5.2(c) above, or (iv) the termination of the Tort Claims Trust pursuant to Section 8.1(b) below.

**5.4**   **Liability of Tort Claims Trustee, Delaware Trustee and Others.** Notwithstanding anything to the contrary herein, in exercising the rights granted hereunder, the Tort Claims Trustee shall use the same degree of care and skill as an individual of ordinary prudence, discretion and judgment would exercise or use in his own affairs. The Tort Claims Trustee, the Delaware Trustee and the TAC shall not be liable to the Tort Claims Trust, to any

-28-

**Error! Unknown document property name.**

individual holding a Tort Claim, or to any other person, except for such individual's own breach of trust constituting fraud, bad faith or willful misconduct.

**5.5**     **Tort Claims Trust Continuance.**

(a)     The resignation or removal of the Tort Claims Trustee shall not operate to terminate the Tort Claims Trust or to revoke any existing agency created pursuant to the terms of this Tort Claims Trust Agreement or invalidate any action theretofore taken by the Tort Claims Trustee or any prior Tort Claims Trustee.

(b)     In the event of the resignation or removal of the Tort Claims Trustee, such Tort Claims Trustee shall (a) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Tort Claims Trustee to effect the termination of the Tort Claims Trustee's capacity under this Tort Claims Trust Agreement and the conveyance of the assets then held by the Tort Claims Trustee to such Tort Claims Trustee's successor, (b) deliver to the successor Tort Claims Trustee all documents, instruments, records and other writings related to the Tort Claims Trust as may be in the possession of the Tort Claims Trustee and (c) otherwise assist and cooperate in effecting the assumption of his or her obligations and functions by such successor Tort Claims Trustee.

**5.6**     **Reliance by Tort Claims Trustee.**

(a)     The Tort Claims Trustee may rely, and shall be fully protected personally **and absolved from liability** in acting upon, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document which the Tort Claims Trustee believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of facsimile transmissions or electronic mail, to have been sent by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.

-29-

**Error! Unknown document property name.**

(b)      In the absence of fraud, bad faith or willful misconduct on the part of the Tort Claims Trustee, the Tort Claims Trustee may rely as to the truth of any statements contained therein in acting thereon.  The Tort Claims Trustee may consult with and rely on the advice of legal counsel and such other experts, advisors, consultants or other professionals **(collectively, the "Tort Claims Trustee Professionals")** as shall have been retained pursuant to this Tort Claims Trust Agreement and shall be fully protected **and absolved from liability** in respect of any action taken or suffered by ~~them~~**it** in accordance with the ~~written opinion of legal counsel~~**opinions of the Tort Claims Trustee Professionals**.

**5.7**      **Tort Claims Trustee's Compensation and Reimbursement.**  The Tort Claims Trustee may pay from the assets of the Tort Claims Trust the reasonable salaries, fees and expenses of the Tort Claims Trustee and any professionals retained by the Tort Claims Trust. The Tort Claims Trustee shall receive compensation from the Tort Claims Trust for its service as the Tort Claims Trustee, paid first by interest to the extent interest has accrued, ~~in the total amount of _____ percent (____%) of the gross current and future deposits payable to the Anadarko Tort Claims Trust or subaccounts thereto described by Section 1.6(a) of this agreement ("Trustee's Total Compensation"), subject to a minimum annual fee of _____ dollars ($_____) in each of the first _____ (__) years and $_____ in each year thereafter prior to the termination of the trust ("Trustee's Minimum Compensation").   The Trustee's Minimum Compensation, intended to accommodate foundational setup and fixed costs, shall be payable within ten (10) days of transfer of funds to the Tort Claims Trust in the first year, and within ten (10) days of each anniversary of the Effective Date thereafter.~~ *Tort Claims Trustee shall receive* ~~the balance of the Trustee's Total Compensation less the Trustee's Minimum Compensation in twelve (12) equal monthly payments, beginning upon the date of each deposit to the Tort Claims Trust. In addition to the costs proposed~~ *above, specific activity-based* ~~expenses will be~~

-30-

passed through directly and reimbursable by ~~*the Tort Claims Trust. These pass-through costs include*~~ but are not limited to reasonable legal fees, postage costs, envelope materials costs, travel expenses, and external audit expense. Pass-through costs, if any, will be billed monthly and will be paid to Tort Claims Trustee within fifteen (15) days of submission. **and then from principal, according to the terms identified in Sections 5.7(a)–(h) for the particular services included therein. The compensation outlined below is subject to reasonable periodic adjustment with approval of the Tort Claims Trustee and the TAC to account for inflation and / or market changes.**

**(a)    Establishing and Managing the Tort Claims Trust as a Qualified Settlement Fund; Serving as Trustee:   The Tort Claims Trustee shall establish and administer the Tort Claims Trust fund pursuant to the terms of the Tort Claims Trust Agreement and the TDPs (collectively, the "Trust Distribution Documents").  In addition to the per-claimant amounts listed below, and the fees yet to be negotiated for any additional future services as described in Section 5.7(h), the *Tort Claims Trustee shall receive* a program establishment fee in the amount of $540,000.00, intended to compensate the Tort Claims Trustee for its own services to the Tort Claims Trust related to government healthcare reporting duties, initial correspondence, fiduciary services and consultancy services provided prior to and until the date of transfer of Anadarko Litigation proceeds, if any, as described by Section 1.1(b) of the TDPs.**

**(b)    Present Injury—Asbestos, Non-Asbestos, and Unaccounted-for Claims:  In accordance with the TDPs, the Tort Claims Trustee shall make Distributions to the Holders of Allowed Asbestos Claims, Allowed Non-Asbestos Toxic Exposure Claims, Allowed Unaccounted-for Tort Claims, and Allowed Future Tort Claims either directly or through the care of their counsel.  The Tort Claims Trustee shall assess a fee of $550.00 per**

-31-

**Error! Unknown document property name.**

Holder of an Allowed Asbestos Claim, *Allowed* Non-Asbestos Toxic Exposure Claim, Allowed Unaccounted-for Tort Claim, or Allowed Future Tort Claim; provided, however, that for Holders asserting an Allowed Non-Asbestos Toxic Exposure Claim that is submitted to the Tort Claims Trustee as a medical monitoring/unimpaired claim under Schedules B or D of the TDPs, the Tort Claims Trustee shall assess a fee of $150.00 per such claimant.  The fee assessed for each Holder of a Tort Claim described in this Section 5.7(b) shall be assessed against the Fund for the Category to which each such Tort Claim belongs, as set forth in Sections 1.4 and 1.5 of the TDPs.

(c)    Indirect Environmental Claims:  In accordance with the TDPs, the Tort Claims Trustee shall make Distributions to the Holders of Allowed Indirect Environmental Claims either directly or through the care of their counsel.  The Tort Claims Trustee shall assess a fee of $550.00 per Holder of an Allowed Indirect Environmental Claim, which shall be assessed against Fund B, as that term is defined in Sections 1.4 and 1.5 of the TDPs.

(d)    Property Damage Claims:  In accordance with the TDPs, the Tort Claims Trustee shall make Distributions to the Holders of Allowed Property Damage Claims either directly or through the care of their counsel.  The Tort Claims Trustee shall assess a fee of $550.00 per Holder of an Allowed Property Damage Claim, which shall be assessed against Fund C, as that term is defined in Sections 1.4 and 1.5 of the TDPs.

(e)    Healthcare Lien Verification:

(i)    In accordance with the TDPs, the Tort Claims Trustee shall verify which Holders of Allowed Asbestos Claims, Allowed Non-Asbestos Toxic Exposure Claims, Allowed Future Tort Claims, and Allowed Unaccounted-for Tort Claims are recipients of federal Medicare benefits (Part A and B) and / or Medicaid benefits (Medicaid

-32-

benefits shall be verified in state of residence only, unless otherwise agreed).  If healthcare lien verification does not apply to a claim (e.g., if healthcare liens do not apply to bankruptcy proceeds or Property Damage Claims) no fee for healthcare lien verification or lien resolution shall apply.  If healthcare lien verification services are required for any claimant, the Tort Claims Trustee shall assess a fee of $100.00 per such claimant for such services, which shall be assessed against the Fund for the Category to which such Tort Claim belongs, as set forth in Sections 1.4 and 1.5 of the TDPs.

(ii)    Although the Tort Claims Trustee shall fulfill its obligations to verify whether healthcare reimbursement obligations may exist and shall fulfill reporting obligations under the Medicare, Medicaid and the SCHIP Extension Act of 2007, the resolution of healthcare reimbursement obligations is the duty of each Holder and his or her counsel, and the Tort Claims Trustee shall not be liable to the Tort Claims Trust, to any Holder of a Tort Claim, or to any other person for any act or omission relating to matters covered in this Section 5.7(e), except for the Tort Claims Trustee's own breach of trust constituting fraud, bad faith, or willful misconduct.

(f)    Pass-through Expenses and Other Services or Expenses:  In addition to the fees *above, specific activity-based* costs will be passed through directly to *the Tort Claims Trust.  These pass-through costs include*, but are not limited to, independent external audits (as required by the Trust Distribution Documents), external counsel or litigation expenses, insurance, tax preparation fees, postage, printing, envelope material costs, and travel expenses (if applicable for court proceedings or required meetings).

(g)    Appeal and Trust Administration Fees:  The Tort Claims Trustee may reserve a portion of each Fund associated with each Category of Tort Claims (as defined by Sections 1.4 and 1.5 of the TDPs) to cover the reasonable costs, expenses, and fees, including

Error! Unknown document property name.

attorney fees, associated with the appeal, Individual Review, arbitration, litigation, settlement, or other adjudication (collectively, as used in this Section 5.7(g), "Resolution") of Tort Claims asserted against that Fund ("Reserve for Resolution").  The Tort Claims Trustee shall pay from the respective Reserve for Resolution the reasonable costs, expenses, and fees, including attorney fees, associated with such Resolution of Tort Claims, and for all other activities required to administer the Tort Claims Trust beyond those identified above. In the event that the amount of a Reserve for Resolution is insufficient to cover the reasonable costs, expenses, and fees, including attorney fees, associated with the Resolution of the Tort Claims for the Category associated with that Fund, the Tort Claims Trustee shall be entitled to assess the excess costs, expenses, and fees, including attorney fees, of such Resolution (i) against the remainder of the Fund from which that Reserve for Resolution was created, (ii) if said Fund is exhausted, then against each of the other Reserves for Resolution in proportion to the percentage of the aggregate value of the remaining Reserves for Resolution that each such Reserve for Resolution represents, and (iii) if the Reserves for Resolution are exhausted, against each of the other Funds in proportion to the percentage of the aggregate value of the remaining Funds that each such Fund represents.

(h)    Additional Services:  The TAC and the Tort Claims Trustee intend and contemplate that the Tort Claims Trustee may provide additional, as-yet-unidentified services to the Tort Claims Trust beyond those listed above, and do hereby expressly and irrevocably waive, to the fullest extent permitted by applicable law, any and all actual or potential conflicts of interest that may arise from the Tort Claims Trustee providing such services to the Tort Claims Trust.  The Tort Claims Trustee shall have authority, subject only to TAC approval, to contract on behalf of the Tort Claims Trust with itself in its capacity as a claims administrator for such services, which may include, but are not limited

-34-

to, the following: the resolution of Healthcare Reimbursement Obligations (as defined in Section 4.7 of the TDPs) subsequent to the verification of said obligations as described in Section 5.7(e) above, the identification and resolution of any probate or bankruptcy interests in payments due to claimants, coordinating the preservation of claimants' needs- or entitlement-based government benefits, and the procurement of medical records. This practice shall be encouraged in those areas in which the Tort Claims Trustee has capacity and / or expertise to provide necessary services. The Tort Claims Trustee shall receive compensation from the Tort Claims Trust for such unidentified services at a reasonable rate, as negotiated between the Tort Claims Trustee and the TAC at the time the need for such services arises. The compensation associated with each such service shall be assessed against the Holders of Tort Claims for whom each such service is provided.

(i)    Payment Terms:

(i)    Within 15 days of the transfer of any amounts identified in Section 1.1 of the TDPs, the Tort Claims Trustee shall be authorized to assess fees associated with Section 5.7(a) of the Tort Claims Trust Agreement.

(ii)    For those Tort Claims described in Sections 5.7(b)-(d) for which the Tort Claims Trustee's fee is $550.00 per Holder, the Tort Claims Trustee shall be authorized to assess $220.00 of each per-Holder fee within 15 days of the transfer of the amount identified in Section 1.1(a) of the TDPs, and shall be authorized to assess the remaining $330.00 of each per-Holder fee within 15 days of the transfer of the amount identified in Section 1.1(b) of the TDPs. For those Tort Claims described in Section 5.7(b) for which the Tort Claims Trustee's fee is $150.00 per Holder, the Tort Claims Trustee shall be authorized to assess $60.00 of each per-Holder fee within 15 days of the transfer of the amount identified in Section 1.1(a) of the TDPs, and shall be authorized to assess the

-35-

Error! Unknown document property name.

**remaining $90.00 of each per-Holder fee within 15 days of the transfer of the amount identified in Section 1.1(b) of the TDPs.   For the healthcare-lien-verification services described in Section 5.7(e) above, the Tort Claims Trustee shall be authorized to assess $40.00 of each $100.00 per-Holder fee within 15 days of the transfer of the amount identified in Section 1.1(a) of the TDPs, and shall be authorized to assess the remaining $60.00 of each per-Holder fee within 15 days of the transfer of the amount identified in Section 1.1(b) of the TDPs.**

**(iii)    Pass-through expenses and appeal and trust administration fees, as described in Sections 5.7(f)-(g) of the Tort Claims Trust Agreement, if any, may begin to be assessed within 15 days of the transfer of the amount in identified Section 1.1(a) of the TDPs and will be billed monthly.**

**(iv)    Within 15 days of the transfer of the amount identified in Section 1.1(a) of the TDPs, and after the approval by TAC of the agreed-upon negotiated rate, the Tort Claims Trust shall be authorized to assess fees associated with Section 5.7(h) of the Tort Claims Trust Agreement.**

**5.8    Indemnification.**   The Tort Claims Trust shall indemnify and defend the Tort Claims Trustee, (A) the Tort Claims Trustee, (B) the Delaware Trustee and, (C) the TAC members and, (CD) the officers and employees of the Tort Claims Trust, and (E) any agents, advisors and consultants of the Tort Claims Trust or the TAC in the performance of its duties hereunder to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of its duties hereunder or in connection with activities undertaken by the Tort Claims Trustee prior to the Effective Date in connection with the formation, establishment, or funding of the Tort Claims Trust.

Error! Unknown document property name.

5.9    **Insurance.**  The Tort Claims Trustee may purchase, at the expense of the Tort Claims Trust, reasonable amounts and types of insurance with regard to any liabilities, losses, damages, claims, costs and expenses it may incur, including, but not limited to, attorneys' fees arising out of or due to its actions or omissions or consequences of such actions or omissions, other than as a result of its fraud, bad faith or willful misconduct, with respect to the implementation of this Tort Claims Trust Agreement, the Plan or the Confirmation Order.

5.10    **No Implied Obligations.**  No Tort Claims Trustee shall be liable for any duties or obligations except for the performance of such duties and obligations as are specifically set forth herein.  No implied covenants or obligations shall be read into this Tort Claims Trust Agreement.

5.11    **No Personal Liability.**  Persons dealing with the Tort Claims Trust must look solely to the Tort Claims Trust for the enforcement of any claims against the Tort Claims Trust or the satisfaction of any liability incurred by the Tort Claims Trustee to such persons in carrying out the terms of this Tort Claims Trust.  Neither the Tort Claims Trustee, **the Delaware Trustee,** the Tronox Debtors, Reorganized Tronox, the members of the TAC nor any other person shall have any personal liability or individual obligation to satisfy any such liability.

# SECTION VI

## TRUST ADVISORY COMMITTEE

6.1  *Initial Members of the TAC.*

**6.1**    (a) *Initial Members of the TAC.*  The TAC shall consist of three (3) members, who shall initially be the persons named on the signature pages hereof.

(b)    Each initial member of the TAC shall serve until the earliest of (i) the end of his or her term pursuant to Section 6.3(a) below, (ii) his or her death, (iii) his or her resignation pursuant to Section 6.3(b) below, (iv) his or her removal pursuant to Section *6.3*(c) below, or (v) the termination of the Tort Claims Trust pursuant to Section 8.1(b) below.

**Error! Unknown document property name.**

6.2    **Duties.**  The members of the TAC shall serve in a fiduciary capacity, representing

all of the ~~h~~**H**olders of Tort Claims for the purpose of protecting the rights of such persons.  The

Tort Claims Trustee must consult with the TAC on matters identified in Section 3.1(c) above and

in other provisions herein and must obtain the consent of the TAC on matters identified in Section

3.3(c) above.  Where provided in the Tort Claims Trust Distribution Procedures, certain other

actions of the Tort Claims Trustee are also subject to the consent of the TAC.

6.3    **Term of Office.**

(a)    The initial members of the TAC appointed in accordance with Section

6.1(a) above shall serve the staggered three-, four-, or five-year terms shown on the signature~~s~~

pages hereof.  Thereafter, each term of service shall be five ~~(5)~~ years.  Each member of the TAC

shall serve until the earliest of (i) the end of his or her first full term of office, (ii) his or her death,

(iii) his or her resignation pursuant to Section **6.3**(b)below, (iv) his or her removal pursuant to

Section *6.3*(c) below, or (v) the termination of the Tort Claims Trust pursuant to Section 8.1(b)

below.

(b)    A member of the TAC may resign at any time by written notice to the other

members of the TAC and the Tort Claims Trustee.  Such notice shall specify a date when such

resignation shall take effect, which shall not be less than ninety (90) days after the date such notice

is given, where practicable.

(c)    A member of the TAC may be removed in the event that he or she becomes

unable to discharge his or her duties hereunder due to accident, physical deterioration, mental

incompetence, a consistent pattern of neglect and failure to perform or to participate in performing

the duties of such member (such as repeated nonattendance of scheduled meetings) or for other

good cause.  Such removal shall be made at the recommendation of the other members of the TAC

with the approval of the Bankruptcy Court.

-38-

**6.4**    **Successor Members of the TAC.**

(a)    If, prior to the termination of service of a member of the TAC other than as a result of removal, he or she has designated in writing an individual to succeed him or her as a member of the TAC, such individual shall be his or her successor.  If such member of the TAC did not designate an individual to succeed him or her prior to the termination of his or her service as contemplated above, such member's law firm may designate his or her successor.  If (i) a member of the TAC did not designate an individual to succeed him or her prior to the termination of his or her service and such member's law firm does not designate his or her successor as contemplated above or (ii) he or she is removed pursuant to Section 6.3(c) above, his or her successor shall be appointed by a majority of the remaining members of the TAC or, if such members cannot agree on a successor, the Bankruptcy Court.  Nothing in this **Tort Claims Trust** Agreement shall prevent the reappointment of an individual serving as a member of the TAC for an additional term or terms and there shall be no limit on the number of terms that a TAC member may serve.

(b)    Each successor member of the TAC shall serve until the earliest of (i) the end of a full term of five (5) years for which he or she was appointed if his or her immediate predecessor member of the TAC completed his or her term pursuant to Section 5.3**6.3**(a) above, (ii) the end of the term of the member of the TAC whom he or she replaced if his or her predecessor member did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to Section 5.3**6.3**(b) above, (v) his or her removal pursuant to Section 6.3(c) above, or (vi) the termination of the Tort Claims Trust pursuant to Section 6.1(b)**8.1** below.

**6.5**    **TAC's Employment of Professionals.**

(a)    The TAC may, but is not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties deemed by the TAC to be qualified as experts on any matter submitted to the TAC

-39-

(the "**TAC Professionals**").   The TAC and the TAC Professionals shall at all times have ~~complete~~**reasonable** access to the Tort Claims Trust's officers, employees and agents, as well as to any ~~T~~trust ~~P~~professionals, and shall also have ~~complete~~**reasonable** access to all information generated by them or otherwise available to the Tort Claims Trust or the Tort Claims Trustee; provided that in no event shall the TAC, its members or the TAC Professionals have any right to consult with counsel to the Tort Claims Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Tort Claims Trust.   In the absence of gross negligence the written opinion of or information provided by any TAC Professional or ~~T~~trust professional deemed by the TAC to be qualified as an expert on the particular matter submitted to the TAC shall be full and complete authorization and protection in support of any action taken or not taken by the TAC in good faith and in accordance with the written opinion of or information provided by such TAC Professional or Trust professional.

(b)    The Tort Claims Trust shall promptly reimburse, or pay directly if so instructed, the TAC for any reasonable fees and expenses associated with the TAC's employment of legal counsel pursuant to this provision in connection with the TAC's performance of its duties hereunder.   The Tort Claims Trust shall also promptly reimburse, or pay directly if so instructed, the TAC for any reasonable fees and expenses associated with the TAC's employment of any other TAC Professional pursuant to this provision in connection with the TAC's performance of its duties hereunder.

6.6    **Compensation and Expenses of the TAC.**   Each member of the TAC shall receive compensation from the Tort Claims Trust for attendance at meetings or other Tort Claims Trust business performed in the form of a reasonable hourly rate set by the Tort Claims Trustee**, but in no event less than $600 per hour**.   In addition, the Tort Claims Trust shall promptly reimburse each member of the TAC for any reasonable out-of-pocket fees and expenses incurred

Error! Unknown document property name.

by him or her in connection with the performance of his or her duties as a member of the TAC. Such compensation or reimbursement shall be deemed a Tort Claims Trust Expense. The Tort Claims Trust shall include a reasonably detailed description of the amounts paid under this Section 6.6 in the Annual Report.

6.7     **Procedures for Consultation with and Obtaining the Consent of the TAC.**

(a)     Consultation Process.

(i)     In the event the Tort Claims Trustee is required to consult with the TAC pursuant to Section 3.1(c) above or on other matters as provided herein, the Tort Claims Trustee shall provide the TAC with written advance notice of the matter under consideration and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Tort Claims Trustee shall also provide the TAC with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisors retained by the Tort Claims Trust and its staff (if any) as the TAC may reasonably request during the time that the Tort Claims Trustee is considering such matter and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Tort Claims Trustee; provided that in no event shall the TAC or its members have any right to consult with counsel to the Tort Claims Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Tort Claims Trust.

(ii)     In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 3.1(c), the Tort Claims Trustee shall take into consideration the time required for the TAC, if its members so wish, to engage and consult with its own independent financial or investment advisors as to such matter. In any event, the Tort Claims Trustee shall not take definitive action on any such matter until at least thirty (30) days after

-41-

**Error! Unknown document property name.**

providing the TAC with the initial written notice that such matter is under consideration by the Tort Claims Trustee, unless such time period is waived by the TAC.

(b)    Consent Process.

(i)    Except as otherwise set forth herein, the TAC shall act by majority vote.

(ii)    In the event the Tort Claims Trustee are required to obtain the consent of the TAC pursuant to Section 3.3(c) above, the Tort Claims Trustee shall provide the TAC with a written notice stating that its consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Tort Claims Trustee proposes to take and explaining in detail the reasons why the Tort Claims Trustee desires to take such action.  The Tort Claims Trustee shall provide the TAC as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances.  The Tort Claims Trustee shall also provide the TAC with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisors retained by the Tort Claims Trust and its staff (if any) as the TAC may reasonably request during the time that the Tort Claims Trustee is considering such action, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Tort Claims Trustee; provided that in no event shall the TAC or its members have any right to consult with counsel to the Tort Claims Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Tort Claims Trust.

(iii)    The TAC must consider in good faith and in a timely fashion any request for its consent by the Tort Claims Trustee and must in any event advise the Tort Claims Trustee in writing of its consent or its objection to the proposed action within thirty (30) days of receiving the original request for consent from the Tort Claims Trustee.  The TAC may not withhold

-42-

Error! Unknown document property name.

its consent unreasonably.  If the TAC decides to withhold its consent, it must explain in detail its objections to the proposed action.  If the TAC does not advise the Tort Claims Trustee in writing of its consent or its objections to the action within thirty (30) days of receiving notice regarding such request, the TAC's consent to the proposed actions shall be deemed to have been affirmatively granted.

(iv)    If, after following the procedures specified in this Section —**6.7(b)**, the TAC continues to object to the proposed action and to withhold its consent to the proposed action, the Tort Claims Trustee and/or the TAC shall resolve their dispute in accordance with Section —**9.15** below.  However, the burden of proof with respect to the validity of the TAC's objection and withholding of its consent shall be on the TAC.

**SECTION VII**

**DELAWARE TRUSTEE**

7.1    There shall be at all times a Delaware Trustee.  The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law**,** and shall act through one or more persons authorized to bind such entity.  If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 7.1, it shall resign immediately in the manner and with the effect specified in Section 7.3 below.  For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder.

7.2    The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Tort Claims Trustee set forth herein.  The Delaware Trustee shall be a trustee of the Tort Claims Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Act and for taking such actions as are

Error! Unknown document property name.

required to be taken by a Delaware Trustee under the Act.  The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the Tort Claims Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.  **The Delaware Trustee shall have no liability for acts or omissions of the Tort Claims Trustee**

**7.3**    The Delaware Trustee shall serve until such time as the Tort Claims Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the ~~Trustees~~**TAC** in accordance with the terms of Section 7.4 below.  The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance notice to the Tort Claims Trustee; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the TAC in accordance with Section 7.4 below.  If the TAC does not act within such 60-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

**7.4**    Upon the resignation or removal of the Delaware Trustee, the TAC shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee.  Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Tort Claims Trustee and any fees and expenses due to the outgoing Delaware Trustee are paid.  Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the

-44-

**Error! Unknown document property name.**

rights, powers, duties and obligations of the outgoing Delaware Trustee under this Tort Claims Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Tort Claims Trust Agreement.

7.5     The initial Delaware Trustee shall be the individual or entity reflected on the signature pages of this Agreement.

7.6     **Delaware Trustee's Compensation ~~and Reimbursement~~.**  The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.

**SECTION VIII**

**DURATION AND TERMINATION OF TORT CLAIMS TRUST**

8.1     **Duration/Termination.**

(a)     The term for the Tort Claims Trust shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of Section **8.1**(b) below.

(b)     The Tort Claims Trust shall automatically terminate (the "**Termination Date**") on the date ninety (90) days after the first to occur of:

(i)     the Tort Claims Trustee decides to terminate the Tort Claims Trust because (i) (aa) it deems it unlikely that new Tort Claims will be filed against the Tort Claims Trust, (bb) all Tort Claims duly filed with the Tort Claims Trust have been liquidated and settled and paid to the extent provided under the Tort Claims Trust Agreement or disallowed by a final, non-appealable order, to the extent possible based upon the funds available through the Plan, (cc) ~~twelve (~~12~~)~~ consecutive months have elapsed during which no new Tort Claims have been filed with the Tort Claims Trust; or (dd) the administrative costs of operating the **Tort Claims** Trust will erode the funds remaining in the **Tort Claims** Trust; and (ii) the Anadarko Litigation has been fully resolved and all proceeds payable to the Tort **Claims** Trust from the Anadarko Litigation Trust have

-45-

Error! Unknown document property name.

been received and distributed according to the terms of this Agreement and the Tort Claims Trust Distribution Procedures;

(ii)    if the Tort Claims Trustee has procured irrevocable insurance policies and established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses of the Tort Claims Trust in a manner consistent with the Tort Claims Trust Agreement, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a final order; or

(iii)    to the extent that any rule against perpetuities shall be deemed to apply to the Tort Claims Trust, the date on which twenty-one (21) years less ninety-one (91) days pass after the death of the last survivor of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof.

**8.2    Continuance of Tort Claims Trust for Winding Up.**

(a)    After the termination of the Tort Claims Trust and for the purpose of liquidating and winding up the affairs of the Tort Claims Trust, the Tort Claims Trustee shall continue to act as such until all duties under the Plan and this Tort Claims Trust Agreement have been fully performed.  Upon distribution of all of the assets of the Tort Claims Trust, or the proceeds thereof, the Tort Claims Trustee shall hold the books, records and files delivered to or created by the Tort Claims Trustee for a period of four years after the last distribution of assets from the Tort Claims Trust is made.  All costs and expenses associated with the storage of such documents shall be paid by the Tort Claims Trust.  At the Tort Claims Trustee's discretion, all such records and documents may be destroyed at any time after four years from the distribution of all of the assets of the Tort Claims Trust.  Except as otherwise specifically provided herein, upon the distribution of all of the assets of the Tort Claims Trust, the Tort Claims Trustee shall have no

-46-

**Error! Unknown document property name.**

further duties or obligations hereunder except to (a) account and report as provided in Section 3.63.7 hereof and (b) perform such other acts as may be required by law.

(b)    On the Termination Date or as soon as reasonably practicable, after the wind-up of the Tort Claims Trust's affairs by the Tort Claims Trustee and payment of all the Tort Claims Trust's liabilities have been provided for as required by applicable law including Section 3808 of the Act, all monies remaining in the Tort Claims Trust's estate shall be given to such organization(s) exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, which tax-exempt organization(s) shall be selected by the Tort Claims Trustee using its reasonable discretion; provided, however, that (i) if practicable, the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on, or the relief of suffering of individuals suffering from Non-Asbestos Toxic Tort related cancers or disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to Reorganized Tronox within the meaning of section 468B(d)(3) of the Internal Revenue Code.  Notwithstanding any contrary provision of the Plan and related documents, this provision cannot be modified or amended.

**8.3    Final Accounting.**

(a)    Upon termination of the Tort Claims Trust, the Tort Claims Trustee shall file an accounting with the Bankruptcy Court setting forth the amount the Tort Claims Trustee has collected and disbursed, as well as the fees and expenses incurred in administering the Tort Claims Trust, including the fees and expenses incurred by the Tort Claims Trustee and its professionals. The Tort Claims Trustee shall seek the issuance and entry of any orders necessary to approve such accounting and discharge it from any and all liability for acting as Tort Claims Trustee under the Plan and this Tort Claims Trust Agreement.  The Tort Claims Trust's professionals shall be required to maintain accurate time and expense records.

-47-

**Error! Unknown document property name.**

(b)     Following the dissolution and distribution of the assets of the Tort Claims Trust, the Tort Claims Trust shall terminate and the Tort Claims Trustee shall execute and cause a Certification of Cancellation of the Certificate of Trust of the Tort Claims Trust to be filed in accordance with the Act.  Notwithstanding anything to the contrary contained in this Tort Claims Trust Agreement, the existence of the Tort Claims Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

## SECTION IX

## MISCELLANEOUS PROVISIONS

**9.1**     **Irrevocability.**  The Tort Claims Trust is irrevocable.

**9.2**     **Settlor, Representative and Cooperation.**     Tronox is hereby irrevocably designated as the Settlor and it is hereby authorized to take any action required of the Settlor in connection with the creation this Tort Claims Trust Agreement.  Tronox agrees to cooperate in implementing the goals and objectives of this Tort Claims Trust.

**9.3**     **Applicable Law.**  The Tort Claims Trust created herein shall be construed, regulated and administered under the laws of the State of Delaware without regard to principles of conflicts of law; provided, however, that the Tort Claims Trust and any interpretation or enforcement of the provisions of this Tort Claims Trust Agreement shall be subject to the **non-exclusive** jurisdiction of the Bankruptcy Court.

**9.4**     **Entire Agreement; No Waiver.**  The entire agreement of the parties relating to the subject matter of this Tort Claims Trust Agreement is contained herein, in the Tort Claims Trust Distribution Procedures, and in the in the Plan and in the documents referred to herein.  This Tort Claims Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof.  Any failure to exercise or delay in exercising any right, power or privilege hereunder shall not operate as a waiver thereof, nor shall any single or partial

-48-

Error! Unknown document property name.

exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege.  The rights and remedies provided herein are cumulative and are not exclusive of rights under law or in equity.

**9.5**    **Amendments.**  The Tort Claims Trustee may modify or amend this **Tort Claims Trust** Agreement, provided, however, that any such amendment shall require the consent of the TAC in accordance with Section 3.3(c) above; and provided, further, that no such modification or amendment, unless the modification or amendment is signed by the Delaware Trustee, may adversely affect the rights, duties or obligations of the Delaware Trustee.  The Tort Claims Trustee may modify or amend the Tort Claims Trust Distribution Procedures by a writing with the consent of the TAC as provided in the Tort Claims Trust Distribution Procedures; provided, however, that no amendment to such procedures shall be inconsistent with the provisions limiting amendments to such procedures provided therein.  Notwithstanding anything contained in this **Tort Claims Trust** Agreement to the contrary, none of this **Tort Claims Trust** Agreement, the Tort Claims Trust Distribution Procedures or the Bylaws of the Tort Claims Trust **(if Bylaws are adopted in the future)**, or any document annexed to the foregoing, shall be modified or amended in any way that could (a) change the purpose of the Tort Claims Trust as set forth in Section 1.3 hereof, (b) jeopardize, impair or adversely affect the distributions to be made under this Tort Claims Trust Agreement to any ~~h~~**H**older of Tort Claims, or (c) jeopardize, impair or modify the Tort Claims Trust's qualified settlement fund status under section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC.  Any material change to the Tort Claims Trust Agreement or the Tort Claims Trust shall be made known to the notice parties in accordance with Section 9.9 below.

**9.6**    **Successors and Assigns.**  The provisions of this Tort Claims Trust Agreement shall be binding upon and inure to the benefit of the Tronox Debtors, Reorganized Tronox, the Tort

-49-

Claims Trust, the Tort Claims Trustee and their respective successors and assigns, except that neither the Tronox Debtors, Reorganized Tronox, the Tort Claims Trust nor the Tort Claims Trustee may assign or otherwise transfer any of its, or their, rights or obligations under this Tort Claims Trust Agreement except as contemplated herein and in the Plan and in the documents related thereto.

      **9.7**    **No Association, Partnership or Joint Venture.**   This Tort Claims Trust Agreement is not intended to create and shall not be interpreted as creating an association, partnership or joint venture of any kind.

      **9.8**    **Severability.**  If any term or provision of this Tort Claims Trust Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Tort Claims Trust Agreement, such term or provision shall be fully severable and this Tort Claims Trust Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Tort Claims Trust Agreement.  The remaining terms and provisions of this Tort Claims Trust Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Tort Claims Trust Agreement.  Moreover, this Tort Claims Trust Agreement shall be construed so as to limit any term or provision so as to make it a legal, valid and enforceable provision; provided, however, that such construction, to the maximum extent possible, shall give effect to the purposes of the Plan.

      **9.9**    **Notices.**  Any notices or communications required hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by e-mail or facsimile pursuant to the instructions listed below, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below:

Error! Unknown document property name.

| Tort Claims Trustee | Delaware Trustee |
|---|---|
| **Matthew L. Garretson**<br>The Garretson ~~Firm~~ Resolution Group, Inc.<br>7775 Cooper Road<br>Cincinnati, OH  45242<br>**mlg@garretsonfirm.com**<br>**Phone:  (513) 794-0400**<br>**Fax:  (513) 575-7201**<br><br>**and**<br><br>**Rachael A. Rowe**<br>**Keating, Muething & Klekamp, PLL**<br>**One East 4th Street, Suite 1400**<br>**Cincinnati, OH  45202**<br>**rrowe@kmklaw.com**<br>**Phone:  (513)579-6486**<br>**Fax:  (513)579-6457** | ~~To  be  added~~**Wilmington  Trust Company**<br>**1100 North Market Street**<br>**Wilmington, DE 19890-1615**<br>**Attention: Joe Feil**<br>**Phone: (302) 636-6466**<br>**Fax: (302) 636-4149** |
| **TAC** | **Reorganized Tronox** |
| Jill A. Moran, Esquire<br>The Powell Law Group, P.C.<br>10 Fox Run Road<br>Drums, PA  18222<br>**jmoran@powell-group.com**<br>**Phone:  (570) 708-1529**<br>**Fax:  (570) 708-7050**<br><br>**and**<br><br>**Anthony W. Merrill, Esquire**<br>**Polsinelli Shughart PC**<br>**Cityscape**<br>**One East Washington, Suite 1200**<br>**Phoenix, AZ  85004**<br>**amerrill@polsinelli.com**<br>**Phone:  (602) 650-2310**<br>**eFax:  (602) 297-6579**<br><br>**and** | Tronox Incorporated<br>3301 NW 150th Street<br>Oklahoma City, OK  73134 |

**Error! Unknown document property name.**

| **Matthew Slocum, Esquire** | |
| :--- | :--- |
| **Slocum and Lang, P.C.** | |
| **10 Fox Run Road** | |
| **Drums, PA 18222** | |
| **matt@slocumlang.com** | |
| **Phone:  (888) 367-4577** | |
| **Fax:  (570) 614-2147** | |

**9.10**    **Effectiveness.**  This Tort Claims Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

**9.11**    **Counterparts.**  This Tort Claims Trust Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute one and the same instrument.

**9.12**    **Headings.**  The section headings contained in this Tort Claims Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Tort Claims Trust Agreement or of any term or provision hereof.

**9.13**    **Confidentiality.**  The Tort Claims Trustee shall, during the period that it serves in such capacity under this Tort Claims Trust Agreement and following either the termination of this Tort Claims Trust Agreement or such Tort Claims Trustee's removal, incapacity or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the assets of the Tort Claims Trust relate or of which it has become aware in its capacity as Tort Claims Trustee.

**9.14**    **No Bond Required.**  Notwithstanding any state law to the contrary, the Tort Claims Trustee (including any successor trustee) shall be exempt from giving any bond or other surety in any jurisdiction.

**9.15**    **Dispute Resolution.  Any disputes between the Tort Claims Trustee and the TAC that arise under this Tort Claims Trust Agreement or the TDP shall be resolved by submission of the matter to an alternative dispute resolution ("ADR") process mutually**

Error! Unknown document property name.

agreeable to the parties involved.  Should any party to the ADR process be dissatisfied with the decision of the arbitrator(s), that party may apply to the Bankruptcy Court for a judicial determination of the matter.  In either case, if the dispute arose pursuant to the consent provision set forth in Section 6.7(b), the burden of proof shall be on the TAC to show that the objection was valid.  Should the dispute not be resolved by the ADR process within thirty (30) days after submission, the parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court.

9.16    9.15 Retention of Jurisdiction.  The Bankruptcy Court shall retain jurisdiction as set forth in the Plan over issues related to the enforcement or interpretation of this Tort Claims Trust Agreement, including the determination of all claims, controversies, disputes and issues arising under or in connection with the Tort Claims Trust or this Tort Claims Trust Agreement and the management and administration of the Tort Claims Trust and for all of the purposes contemplated herein.

9.17    9.16 Relationship to Plan and Tort Claims Trust Distribution Procedures. The principal purpose of this Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures is to aid in the implementation of the Plan.  Thus, this Tort Claims Trust Agreement incorporates and is and the Tort Claims Trust Distribution Procedures incorporate and are subject to the provisions of the Plan.  In the event that any provision of this Tort Claims Trust Agreement or the Tort Claims Trust Distribution Procedures is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provision of the Plan or the Confirmation Order shall control.  In the event that any provision of the Tort Claims Trust Distribution Procedures is found to be inconsistent with a provision of the Tort Claims Trust Agreement, the Tort Claims Trust Agreement shall control.

-53-

IN WITNESS WHEREOF, the parties have executed this Tort Claims Trust Agreement

this _____ day of ————————————————————, 2010 **February, 2011.**

**TRONOX INCORPORATED**

By: _____

Title: _____


**Garretson Resolution Group, Inc., solely in its capacity as** TORT CLAIMS TRUSTEE

By: Matthew L. Garretson_____

Title: President, Garretson Firm Resolution Group, Inc._____

_____


**Wilmington Trust Company, solely in its capacity as** DELAWARE TRUSTEE

By: _____

Title: _____

**Error! Unknown document property name.**

**TORT CLAIMS TRUST ADVISORY COMMITTEE**

By: _____ **(who shall serve an initial term of five (5) years)**
      Jill A. Moran, Esquire
      368248The Powell Law Group, P.C.
      10 Fox Run Road
      Drums, PA  18222
      jmoran@powell-group.com
      Phone:  **(**570 **)** 708-1529
      Fax:  (570) 708-7050

By: _____ **(who shall serve an initial term of four (4) years)**
      **Matthew Slocum, Esquire**
      **Slocum and Lang, P.C.**
      **10 Fox Run Road**
      **Drums, PA 18222**
      **matt@slocumlang.com**
      **Phone:  (888) 367-4577**
      **Fax:  (570) 614-2147**

**By:** _____ **(who shall serve an initial term of three (3) years)**
      Anthony W. Merrill, Esquire
      Polsinelli Shughart PC
      3636 N. Central Ave.**Cityscape**
      **One East Washington**, Suite 1200
      Phoenix, AZ  85012**85004**
      amerrill@polsinelli.com
      Phone:  602.650.2310**(602) 650-2310**
      eFax:  602.297.6579**(602) 297-6579**

By: _____

Title: _____

-55-

**Error! Unknown document property name.**

## Exhibit B

**Tort Claims Trust Distribution Procedures**

# TRONOX INCORPORATED

## TORT CLAIMS TRUST DISTRIBUTION PROCEDURES

Capitalized terms not otherwise defined in these Tort Claims Trust Distribution Procedures ("**TDPs**") shall have the meaning ascribed to such terms in the Plan or the Tort Claims Trust Agreement ("**Trust Agreement**") executed pursuant to the Plan, as applicable.

The Plan, and the Trust Agreement pursuant to the Plan, establish a Tort Claims Trust (the "**Trust**") and contemplate the establishment of the TDPs to set out the procedures and means to be implemented by the Tort Claims Trustee for the purpose of processing, liquidating, Allowing and paying Distributions on account of Tort Claims.

These TDPs are not intended to, nor shall they be deemed to, create additional substantive rights for any claimant.

## ARTICLE I
## GENERAL

1.1    <u>Trust *Res*</u>.  The assets transferred or to be transferred to or received by the Trust consist of:

  (a)    the Funded Tort Claims Trust Amount, being $12.5 million in Cash;

  (b)    the Trust's share (not less than twelve percent (12%)) of the proceeds of the Anadarko Litigation pursuant to the Anadarko Litigation Trust Agreement, together with any other amounts provided therein; and

  (c)    the Tort Claims Insurance Assets.

The Trust res ("**Res**") shall consist of the foregoing Trust assets, together with any income or earnings realized or received in respect thereof.

1.2    <u>Tort Claims Trust Distributable Amount</u>.  The Tort Claims Trust Distributable Amount (the "**Trust Distributable Amount**") consists of the *Res* less payments made by the Trust on account of administrative expenses as provided in the Trust Agreement.

1.3    <u>Inherent Uncertainty</u>.  The Trust Distributable Amount is presently unknown, and the Plan contemplates certain distributions to Holders of Allowed Tort Claims within each Category (as hereinafter defined) of Tort Claims on a substantially pro rata basis before all Claims are liquidated and before the Trust Distributable Amount is fully known.  Accordingly, distributions on account of Allowed Tort Claims need to take into account (to the extent reasonably foreseeable and practicable at the time of each distribution) the uncertainty regarding the number and aggregate liquidated amount of Allowed Tort Claims and the amount allocable to each Category of Tort Claims.

3714899.7

1.4     Categories of Tort Claims.  The Trust is established to provide for distributions to Holders of Tort Claims.  Tort Claims include and consist of the following (each a "**Category,**" as designated):

(a)     **Category A:**  Allowed Asbestos Claims, Allowed Unaccounted-for Tort Claims, and Allowed Future Tort Claims.

(b)     **Category B:**  Allowed Indirect Environmental Claims.

(c)     **Category C:**  Allowed Property Damage Claims.

(d)     **Category D:**  Allowed Non-Asbestos Toxic Exposure Claims.

Holders of Tort Claims in each of the foregoing Categories A, B, C, and D will receive distribution(s) of the *Res* allocable to such Category pursuant to the Plan and these TDPs.

1.5     Determination of Category Sub-Funds.  Pursuant to the Plan and the Trust Agreement, the *Res* shall be divided into the following five (5) separate funds (each, a "**Fund**") in order to determine the pro rata amount distributable to each Holder of an Allowed Tort Claim within each Category:

(a)     **Category A:**  Holders of Allowed Tort Claims in Category A shall each receive their respective pro rata portion of Fund A.  Fund A shall consist of a separate sub-account within the Trust equal to six and one-quarter percent (6.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund; the Excess Anadarko Fund is defined in Section 1.5(e)).

(b)     **Category B:**  Holders of Allowed Tort Claims in Category B shall each receive their respective pro rata portion of Fund B.  Fund B shall consist of a separate sub-account within the Trust equal to .15625 percent of the *Res* (excluding from the *Res* the Excess Anadarko Fund) for each whole million dollars of aggregate Allowed Indirect Environmental Claims (.0015625 times the number of whole millions of dollars of Allowed Category B Claims times the *Res* (excluding from the *Res* the Excess Anadarko Fund)), but in no event more than six and one-quarter percent (6.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund) (such percentage, the "**Fund B Percentage**").

(c)     **Category C:**  Holders of Allowed Tort Claims in Category C shall each receive their respective pro rata portion of Fund C.  Fund C shall consist of a separate sub-account within the Trust equal to .125 percent of the *Res* (excluding from the *Res* the Excess Anadarko Fund) for each whole million dollars of aggregate Allowed Property Damage Claims (.00125 times the number of whole millions of dollars of Allowed Category C Claims times the *Res* (excluding from the *Res* the Excess Anadarko Fund)), but in no event more than six and one-quarter percent (6.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund) (such percentage, the "**Fund C Percentage**").

(d)     **Category D:**  Holders of Allowed Tort Claims in Category D shall each receive their respective pro rata portion of Fund D.  Fund D shall consist of a separate sub-account within the Trust equal to the balance of the *Res* (excluding from the *Res* the Excess Anadarko Fund) not otherwise allocated to Funds A, B, and C pursuant to Sections 1.5(a)-(c)

-2-

above, but in any event not less than eighty-one and one-quarter percent (81.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund).  For the avoidance of doubt, portions of the *Res* not allocated to Fund B or Fund C in accordance Sections 1.5 (b) or (c) above shall be allocated solely to Fund D.

      (e)    **Outlying Claims:**  The Holders of Category A Claims and Category D Claims who have an Outlying Claim with an Excess Award, shall receive on account of their Excess Award a pro rata portion of any Excess Anadarko Fund pursuant to Section 4.5.  As used herein, the "**Excess Anadarko Fund**" shall mean and consist of five percent (5%) of the net proceeds, if any, of the Anadarko Litigation payable to the Trust pursuant to the Anadarko Litigation Trust Agreement in excess of One Hundred Twenty Million Dollars ($120 Million).  For purposes of determining the amount of Funds A, B, C, and D there shall be excluded from the *Res* the Excess Anadarko Fund.

## ARTICLE II
## ALLOWANCE OF CLAIMS

2.1    <u>General</u>.  All Tort Claims shall be processed, resolved, liquidated and, if Allowed, paid pursuant to these TDPs.

2.2    <u>Claims Procedures</u>.

      (a)    The Holder of a Tort Claim may assert a Claim against the Trust pursuant to these TDPs.

      (b)    Within ninety (90) days of the Effective Date, the Trust shall create a claim form to be completed by any Holder of a Tort Claim who desires to have a Tort Claim Allowed ("**Trust Claim Form**") and the Trust Claim Form shall provide such information about the Holder and the Tort Claim as the Tort Claim Trustee reasonably deems necessary and appropriate to enable the Trust to determine the Category, validity, and amount, as appropriate, of the Tort Claim, provided, however, that with respect to personal injury claims as to which a timely Proof of Claim was filed, (i) the Trust Claim Form shall not require further proof of exposure, and (ii) the Trust Claim Form shall not require further proof of injury.  For the avoidance of doubt, a timely filed Proof of Claim shall be accepted by the Trust as irrefutable and final proof of exposure to a Tronox toxic substance and irrefutable and final proof of the injury asserted in the proof of claim with respect to such exposure.  Where illness/injury was not specified on a timely Proof of Claim Form or where the illness/injury sought to be compensated has changed, a sworn statement by the Holder of a Tort Claim or such Holder's authorized representative shall be sufficient proof of injury.  An official bankruptcy proof of claim completed and filed in the Tronox proceedings may be attached to the Trust Claim Form and be incorporated by reference as appropriate.  For the avoidance of doubt, and without limiting the protection afforded by the Tort Claims Trust Agreement and/or these TDPs, the Tort Claims Trustee shall have the protection afforded by Section 5.6 of the Tort Claims Trust Agreement in relying on the information described in this Section 2.2(b).

3714899.7

(c)      The Holder of a Tort Claim shall specify, in the Trust Claim Form, the Category in which his or her Claim falls.  No Claim shall be considered, Allowed, or paid in more than one Category.

(d)      Claims shall be reviewed, processed and liquidated in chronological order based on the date and time of the timely filing of an official bankruptcy proof of claim, or, as regards future Category A claims, on the date of filing of a Trust Claim Form with the Trust (such dates and times being referred to as the "**Filing Date**").  The Trust will afford priority among claims having the same Filing Date by lottery or other equitable means approved by the Trust Advisory Committee.

(e)      Claims in Categories B, C, and D for which no official bankruptcy proof of claim was timely filed with the Bankruptcy Court by the Claims Bar Date shall be disallowed without further review or consideration.

(f)      Pursuant to the Confirmation Order, all Claims shall be subject to these TDPs.

## ARTICLE III
## LIQUIDATION AND ALLOWANCE (DISALLOWANCE)

3.1      <u>Categories B and C</u>.

(a)      All Category B Claims have been or, prior to the expiration of the Claims Objection Bar Date will be, objected to by Tronox.  All Category B Claims shall be liquidated in the Chapter 11 Cases for all purposes of these TDPs and Allowed in the amounts determined by Final Order, or, if settled, in the amounts set forth in a settlement agreement between the Holder of the Category B Claims and Tronox (and any other party thereto).  For Category B Claims the Allowed Amount of the Claim shall be one-half (1/2) of the amount so determined or agreed to.

(b)      All Category C claims will be referred to binding arbitration pursuant to Section 3.5 of these TDPs and shall be liquidated thereby for all purposes of these TDPs and Allowed in the amounts awarded in the arbitration, or, if settled, in the amounts set forth in a settlement agreement between the Holder of the Category C Claim and the Trust.  For Category C Claims the Allowed Amount of the Claim shall be the full amount so determined or agreed to.

(c)      As soon as practicable after determination of the Allowed Amounts of all Category B and Category C Claims, the Tort Claims Trustee shall determine the aggregate of the Allowed Amounts of all Category B Claims and the aggregate of the Allowed Amounts of all Category C Claims and, on the basis thereof, shall then determine the Fund B Percentage and the Fund C Percentage (Fund A being fixed at 6.25% of the *Res* (excluding the Excess Anadarko Fund) and Fund D being the entire balance of the *Res* (excluding the Excess Anadarko Fund)).  Notice of such determinations shall be [●] and shall be final and binding for all purposes.

3.2      <u>Categories A and D</u>.

(a)      Upon a determination that a Trust Claim Form for a particular Category A or Category D Claim is complete, which determination shall be made by the Tort Claims Trustee

-4-

and provided to the Holder by written notice (a "**Determination Notice**"), the Holder of a Category A or Category D Claim shall have the option of accepting the Scheduled Value (as hereinafter defined) for such Claim (which amount shall be stated in the Determination Notice) or of proceeding with the dispute resolution procedures set forth in Section 3.3 below; provided, however, that there are no Scheduled Values for a Category A Claim that is either an Allowed Unaccounted-for Claim or an Allowed Future Tort Claim, and the Holder of such a Claim must proceed with the individual review procedures set forth in Section 3.4, below.  A Holder's election to proceed with the dispute resolution procedures set forth in Section 3.3 hereof shall be provided by written notice to the Trust and must be received by the Trust within thirty (30) days of the date of the Determination Notice (a "**Rejection Notice**").  If a Holder fails to timely provide a Rejection Notice to the Trust, the Holder shall be conclusively presumed to have accepted the Scheduled Value.  The Holder of a Category A Claim that is either an Allowed Unaccounted-for Claim or an Allowed Future Tort Claim need not provide a Rejection Notice to the Trust.  Instead, the Determination Notice sent to such Holder will state that the Holder's Claim will be evaluated under the individual review procedures in Section 3.4, below.

(b)     Schedule A attached hereto sets forth the Scheduled Values for those Category A Claims that are Allowed Asbestos Claims.

(c)     Schedules B, C, D, and E attached hereto set forth the Scheduled Values for all Category D Claims.

(d)     A Holder accepting the Scheduled Value shall not be required to meet any further evidentiary requirements (beyond the matters required to be set forth in the Trust Claim Form) with regard to such Claim, and the Claim shall then be liquidated and Allowed in the amount of the Scheduled Value.

3.3     <u>Dispute Resolution – Categories A and D</u>.

(a)     If a Holder of a Category A Claim or a Category D Claim timely provides a Rejection Notice in accordance with Section 3.2, the Claim shall be valued and liquidated in accordance with this Section 3.3.

(b)     At any time during the dispute resolution process the Holder of a Claim and the Trust may agree to settle the Claim and thereby conclude the process.

(c)     At the option of the Trust, to be exercised by written notice to the Holder of the Claim given within 90 days of the Trust's receipt of a Rejection Notice, the Claim shall (i) be evaluated in accordance with the Trust's Individual Review Process pursuant to Section 3.4, below, (ii) be referred to arbitration, as provided in Section 3.5,  below, which arbitration may be binding or non-binding at the election of the Holder, or (iii) be liquidated in the tort system as provided in Section 3.6, below.  In each such case, the determined value of the Claim may be greater or less than the Scheduled Value which shall have no evidentiary relevance.

3.4     <u>Individual Review – Categories A and D</u>.

(a)     Claims referred for review under this Section 3.4 ("**Individual Review**") shall be processed in chronological order based on their Filing Date.

-5-

(b)      A Claim referred for Individual Review shall be reviewed for purposes of determining whether the Claim would be compensable in the tort system and, if so, the amount at which such Claim would be determined and liquidated in the tort system.  In such regard, the Trust shall within six (6) months following the Effective Date adopt and publish procedures, subject to the approval of the Trust Advisory Committee, for processing Claims referred for Individual Review, which procedures may include evidentiary standards, mediation, third-party expert review, and any other non-binding dispute resolution mechanisms deemed appropriate by the Trust.

(c)      Promptly after (and, in any event within sixty (60) days following) the conclusion of the Individual Review of a Claim (if the Claim has not previously been settled by agreement), the Trust shall make an offer of settlement at such amount and on such terms deemed appropriate by the Trust (an "**Individual Review Settlement Offer**").  The Holder shall have thirty (30) days within which to accept or reject the Individual Review Settlement Offer, provided that if the Holder has not timely acted with regard to such offer by written acceptance or rejection, it shall be deemed to have been rejected.

(d)      In the event the Holder accepts the Individual Review Settlement Offer, the Claim shall be liquidated and Allowed in the amount and on the terms mutually agreed upon.

(e)      In the event the Holder rejects or is deemed to reject the Individual Review Settlement Offer, the Holder shall have the option to elect to have the Claim resolved (i) by binding arbitration as provided for in Section 3.5 below, or (ii) in the tort system as provided for in Section 3.6 below.  Such election shall be made in the notice rejecting the Individual Review Settlement Offer, provided that a Holder failing to provide such written notice of rejection under paragraph (c) above shall be conclusively deemed to have elected binding arbitration.

3.5      <u>Arbitration – Categories A and D</u>.

(a)      Contemporaneous with the adoption of the procedures for Individual Review, the Trust shall adopt and publish procedures, subject to the approval of the Trust Advisory Committee, regarding non-binding and binding arbitration of disputed Claims.  In such regard, the arbitrable issues shall include any aspect of liability or damages that could be at issue or applicable in the tort system, including the determination of applicable law, evidentiary standards, causation and damages, provided that offers of settlement or compromise shall not be offered or accepted as evidence of any matter.

(b)      Election of binding arbitration shall require the consent (or deemed election) of both the Holder and the Trust.

(c)      Punitive damages shall not be available or awarded in any arbitration.

(d)      The award of the arbitrator shall contain a finding as to liability and the liquidated value of (damages attributable to) the Claim.

(e)      An award in non-binding arbitration that is accepted by both the Holder and the Trust, and any award in binding arbitration shall be final and binding on the parties and

-6-

the Claim shall, subject to the limitations provided for in these TDPs, be Allowed in the amount of such award.

(f)     Non-binding and binding arbitration of disputed Claims shall take place only in Delaware.

3.6     Tort System Litigation – Categories A and D.

(a)     If the Trust refers a Claim to the tort system, or if a non-binding arbitration award is rejected by the Holder or the Trust, or if the Holder so elects under Section 3.4(e), the Holder of such Claim shall have the right to pursue a lawsuit in the tort system against the Trust (a "**Lawsuit**").

(b)     Any Lawsuit may be commenced against the Trust only in Delaware.

(c)     Any such Lawsuit shall be filed by the Holder only in his or her own right and name and not as a representative or member of a class.  No suit may be consolidated, for any purpose, with any other Lawsuit and a Holder shall not seek such consolidation or class status.

(d)     In any such Lawsuit all claims, counterclaims and defenses (including with respect to the Trust, all defenses which could have been or were asserted by Tronox) shall be available to the parties.  Punitive damages shall not be available or awarded in any such Lawsuit.

(e)     A Claim asserted in the tort system shall be liquidated and Allowed in the amount awarded by Final Order in such Lawsuit in the event the Holder is the prevailing party. If the Trust is the prevailing party the Claim shall be disallowed.

3.7     Allowed Amount.  The amount at which a Tort Claim is liquidated and Allowed hereunder is sometimes referred to herein as the "**Allowed Amount**."

**ARTICLE IV**
**PAYMENT OF CLAIMS**

4.1     Category B Claims.

(a)     As soon as practicable after the liquidation and Allowance (or disallowance) of all Category B Claims, the Trust's determination of the aggregate amount of all Allowed Category B Claims as set forth in Section 3.1(b), and either (i) the Trust's receipt of the funds described in Section 1.1(b) or (ii) at such earlier time as the Tort Claims Trustee in its sole discretion deems appropriate, the Trust shall determine, as provided in Section 1.5, the applicable Fund B Percentage, the amount of Fund B (to the extent then determinable and reduced to Cash, (the "**Fund B Cash**")) and each Holder's pro rata share of the Fund B Cash, and shall pay each Holder its pro rata share of the Fund B Cash.  Payment shall be made to the Holder either directly or through the care of the Holder's counsel.

(b)     From time to time thereafter as Trust assets allocable hereunder to Fund B for Category B Claims are liquidated and reduced to Cash, the Trust shall make further

supplemental Distributions with respect to Allowed Category B Claims in accordance with the foregoing procedures; provided, however, that no such supplemental Distribution need be made until the balance of the Fund B Cash available for supplemental Distribution shall exceed **[$●]**.

       4.2    <u>Category C Claims</u>.

       (a)    As soon as practicable after the liquidation and Allowance (or disallowance) of all Category C Claims, the Trust's determination of the aggregate amount of all Allowed Category C Claims as set forth in Section 3.1(b), and either (i) the Trust's receipt of the funds described in Section 1.1(b) or (ii) at such earlier time as the Tort Claims Trustee in its sole discretion deems appropriate, the Trust shall determine, as provided in Section 1.5, the applicable Fund C Percentage, the amount of Fund C (to the extent then determinable and reduced to Cash, (the "**Fund C Cash**")) and each Holder's pro rata share of the Fund C Cash, and shall pay each Holder its pro rata share of the Fund C Cash.  Payment shall be made to the Holder either directly or through the care of the Holder's counsel.

       (b)    From time to time thereafter as Trust assets allocable hereunder to Fund C for Category C Claims are liquidated and reduced to Cash, the Trust shall make further supplemental Distributions with respect to Allowed Category C Claims in accordance with the foregoing procedures; provided, however, that no such supplemental Distribution need be made until the balance of the Fund C Cash available for supplemental Distribution shall exceed **[$●]**.

       4.3    <u>Category A Claims</u>.

       (a)    An objective of the Trust is to pay the Holder of each Allowed Category A Claim the same percentage of their respective Allowed Amount as each other Holder of an Allowed Category A Claim is paid (that is, to afford pro rata treatment to the Holders of all Allowed Category A Claims).  Another objective of the Trust is to pay Holders of Allowed Category A Claims compensation on account of their injury as promptly as possible following the determination of the Allowed Amount thereof.  In light of these competing objectives, it is not possible to fully implement or achieve both simultaneously.  Accordingly, to balance as much as possible the consequences of these competing considerations, Holders of Allowed Class A Claims will be paid more promptly than a strict pro rata payment requirement would permit (because such a requirement would necessitate liquidation of all Category A Claims, present and future, and would require liquidation and reduction to Cash of all Trust assets, including contingent assets presently in litigation) by payment of only a portion of the amount ultimately anticipated to be paid on account of a Claim.  Because this requires that the Trust make estimates of the number, type and amount of Claims asserted and to be asserted, of the ultimate aggregate amount of Claims that will be Allowed in the future and of the value that will be realized on unliquidated Trust assets, the portion of the Allowed Amount paid from time to time will likely vary so as to not overpay Claims Allowed early on in the process.

       (b)    Either (i) as soon as practicable after the Trust receives the funds described in Section 1.1(b) or (ii) at such earlier time as the Tort Claims Trustee in its sole discretion deems appropriate, the Trust shall commence making payments to Holders of Allowed Category A Claims on a first-Allowed-first-paid ("**FIFO**") basis in a cumulative amount equal to

-8-

[●] percent ([●]%) of the amount of the Allowed Claim (the "**Fund A Payment Percentage**"). Payment shall be made to the Holder either directly or through the care of the Holder's counsel.

(c)     The Fund A Payment Percentage and the related underlying assumptions, including those regarding the anticipated aggregate Allowed Amount of all Category A Claims, the nature and number of future Category A Claims and the Cash to be realized from Trust assets that are unliquidated, shall be reviewed not less frequently than [●] and the Fund A Payment Percentage shall be adjusted to take into account any changes warranting adjustment.  To the extent the Fund A Payment Percentage is increased in the future, Holders of Allowed Category A Claims who previously have received a payment on account thereof shall be paid a supplemental payment in the amount of the difference between the original amount paid and the amount that would have been paid had the newly established Fund A Payment Percentage applied in determining the prior payment.

4.4     Category D Claims.

(a)     An objective of the Trust is to pay the Holder of each Allowed Category D Claim the same percentage of their respective Allowed Amount as each other Holder of an Allowed Category D Claim is paid (that is, to afford pro rata treatment to the Holders of all Allowed Category D Claims).  Another objective of the Trust is to pay Holders of Allowed Category D Claims compensation on account of their injury as promptly as possible following the determination of the Allowed Amount thereof.  In light of these competing objectives, it is not possible to fully implement or achieve both simultaneously.  Accordingly, to balance as much as possible the consequences of these competing considerations, Holders of Allowed Class D Claims will be paid more promptly than a strict pro rata payment requirement would permit (because such a requirement would necessitate liquidation of all Category D Claims, present and future, and would require liquidation and reduction to Cash of all Trust assets, including contingent assets presently in litigation) by payment of only a portion of the amount reasonably ultimately anticipated to be paid on account of a Claim.  Because this requires that the Trust make an estimate of the aggregate amount of Category D Claims the portion of the Allowed Amount paid from time to time may vary so as to not overpay Claims Allowed early on in the process.

(b)     Either (i) as soon as practicable after the Trust receives the funds described in Section 1.1(b) or (ii) at such earlier time as the Tort Claims Trustee in its sole discretion deems appropriate, the Trust shall commence making payments to Holders of Allowed Category D Claims on a FIFO basis in a cumulative amount equal to [●] percent ([●]%) of the amount of the Allowed Claim (the "**Fund D Payment Percentage**").  Payment shall be made to the Holder either directly or through the care of the Holder's counsel.

(c)     The Fund D Payment Percentage and the related underlying assumptions, including those regarding the anticipated aggregate Allowed Amount of all Category D Claims, the nature and number of future Category D Claims and the Cash to be realized from Trust assets that are unliquidated in amount, shall be reviewed not less frequently than [●] and the Fund D Payment Percentage shall be adjusted to take into account any changes warranting adjustment. To the extent the Fund D Payment Percentage is increased in the future, Holders of Allowed Category D Claims who previously have received a payment on account thereof shall be paid a

-9-

supplemental payment in the amount of the difference between the original amount paid and the amount that would have been paid had the newly established Fund D Payment Percentage applied in determining the prior payment.

4.5     Outlying Claims.

(a)     In the event the Holder of a Category A or Category D Claim declines to accept or is deemed to reject the Settlement Offer at the Scheduled Amount and, thereafter, the Holder prevails in binding arbitration or litigation in the tort system and receives an award, in either case, in excess of the Scheduled Amount for such Claim (an "**Outlying Claim**"), the Allowed Amount of such Outlying Claim shall be bifurcated into (i) an amount equal to the Scheduled Amount for such Claim and (ii) the excess thereof over such Scheduled Amount (such excess being referred to herein as the "**Excess Award**").

(b)     As regards each Outlying Claim, the Holder shall be paid in accordance with this Section 4.5, anything herein or otherwise to the contrary notwithstanding.  Such Holder shall be paid:  (i) on account of the Scheduled Amount portion of the Allowed Amount of such Outlying Claim an amount equal to the appropriate Payment Percentage of such Scheduled Amount (and, from time to time, any supplemental payments in respect thereof as may be paid to other Holders of Claims in such Category not constituting Outlying Claims); and (ii) on account of the Excess Amount an amount equal to such Holder's pro rata portion of the Excess Anadarko Fund, if any, but not in excess of the Excess Amount.  Amounts payable in respect of the Excess Amounts, if any, shall be paid within one hundred twenty (120) days following the liquidation and Allowance (or disallowance) of all Category A and Category D Claims liquidated through binding arbitration or litigation in the tort system.  Any deferred payment hereunder shall not bear interest nor shall the Holders otherwise receive compensation with regard to such deferral.

(c)     In the event that there are funds remaining in the Excess Anadarko Fund after all Outlying Claims have been paid, the remaining funds shall be divided between Funds A and D in proportion to the aggregate value of the Allowed Tort Claims in Categories A and D.  The funds shall then be distributed to the Holders of Allowed Tort Claims in each such Category according to the payment procedures set forth in Sections 4.3 and 4.4, as the case may be.

4.6     Releases.  The Trustee shall have the discretion to determine the form and substance of the releases to be provided to the Trust and the Released Parties in order to maximize recovery for Holders against other tortfeasors without increasing the risk or amount of Claims for indemnification or contribution from the Trust with respect to the Claim.  As a condition to making any payment to a Holder, the Trust shall obtain, for the benefit of the Trust and the Released Parties, a general release in accordance with the applicable state or other law.  If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a Holder may, in the discretion of the Trust, constitute such a release.

4.7     Healthcare Reimbursement Obligations.

(a)     After the Effective Date, the Tort Claims Trustee shall verify which Holders of Allowed Asbestos Claims, Allowed Non-Asbestos Toxic Exposure Claims, Allowed Unaccounted-for Tort Claims, and Allowed Future Tort Claims are recipients of federal

-10-

Medicare benefits (Part A and B) and / or Medicaid benefits (Medicaid benefits shall be verified in state of residence only, unless otherwise agreed) for which the Holder has a reimbursement obligation (a "**Healthcare Reimbursement Obligation**").  The Tort Claims Trustee shall not release the portion of a payment that might be encumbered by a Healthcare Reimbursement Obligation (the "**Healthcare Holdback Amount**") until proof of resolution and satisfaction of such Healthcare Reimbursement Obligation is provided to the Tort Claims Trustee in a form that the Tort Claims Trustee, in its sole discretion, deems acceptable.  Upon receipt of such proof, the Trust shall pay the Healthcare Holdback Amount to such Holder either directly or through the care of his or her counsel, as provided in these TDPs.

(b)    Anything herein to the contrary notwithstanding, although the Tort Claims Trustee shall fulfill its obligations to verify whether Healthcare Reimbursement Obligations may exist and shall fulfill its reporting obligations under the Medicare, Medicaid and SCHIP Extension Act of 2007, the resolution and reporting of Healthcare Reimbursement Obligations is the duty of each Holder and his or her counsel, and the Tort Claims Trustee shall not be liable to the Tort Claims Trust, to any Holder of a Tort Claim, or to any other person for any act or omission relating to matters covered in this Section 4.7, except for the Tort Claims Trustee's own breach of trust constituting fraud, bad faith, or willful misconduct.

4.8    Payment Deferral.  Anything herein to the contrary notwithstanding, the Trustee, with the consent of the Trust Advisory Committee, may defer any payments contemplated hereby until a sufficient number of Claims in a Category have been liquidated and Allowed in order to provide reasonable assurance that the Claims in such Category will be afforded pro rata treatment; provided that deferral of payments to Claims in a Category shall, within such Category, be on a non-discriminatory basis.  Any deferred payment hereunder shall not bear interest, nor shall the Holders otherwise receive compensation with regard to such deferral.

**ARTICLE V**
**CLAIMS MATERIALS**

5.1    Claims Materials.  The Trust shall prepare suitable claims materials ("**Claims Materials**") for all Tort Claims, and shall provide such Claims Materials upon written request to any interested party.  The Trust Claim Form to be submitted to the Trust shall require the Holder to assert the highest disease Level for which the Claim qualifies at the time of filing.  The Trust Claim Form shall also include a certification by the Holder or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure.  In developing its claim filing procedures, the Trust shall make reasonable efforts to afford Holders the opportunity to utilize currently available technology, including filing claims and supporting documentation over the internet and electronically by disk or CD-rom.  The Trust Claim Form to be used by the Trust shall be developed by the Trust and submitted to the Trust Advisory Committee for approval; it may be changed by the Trust with the consent of the Trust Advisory Committee.

5.2    Content of Claims Materials.  The Claims Materials shall include a copy of these TDPs, such instructions as the Trust shall approve, and the Trust Claim Form.  The Holder shall provide the Trust with information regarding any recovery from other defendants and claims resolution organizations relating to Claim.

-11-

5.3    <u>Withdrawal of Claims</u>.  A Holder may withdraw a Claim at any time upon written notice to the Trust, provided that any subsequently filed Claim shall be subject to any statute of limitations.

5.4    <u>Filing Requirements and Fees</u>.  The Trustee shall have the discretion to determine, with the consent of the Trust Advisory Committee, whether a filing fee should be required for any Claims that do not accept the Scheduled Value.  Any such requirement shall be applied, within any Category, on a non-discriminatory basis.

5.5    <u>English Language</u>.  All claims, claims forms, submissions and evidence submitted to the Trust or in connection with any Claim or its liquidation shall be in the English language.

## ARTICLE VI
## MISCELLANEOUS

6.1    <u>Amendments</u>.  Except as otherwise provided herein, the Trustee may amend, modify, delete, or add to any provisions of these TDPs (including, without limitation, amendments to conform these TDPs to advances in scientific or medical knowledge or other changes in circumstances), provided the consent of the Trust Advisory Committee is first obtained, except that an adjustment to a Payment Percentage is also governed by Section 4.3 or 4.4 (as appropriate).  Nothing herein is intended to preclude the Trust Advisory Committee from proposing to the Trustee, in writing, amendments to these TDPs.

6.2    <u>Severability</u>.  Should any provision contained in these TDPs be determined to be void or unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of these TDPs.  Should any provision contained in these TDPs be determined to be in conflict with or contrary to Tronox's obligations to any insurance company providing insurance coverage in respect of Claims for personal injury based on exposure to a Tronox product, or to conduct that exposed the Holder to a Tronox product, for which Tronox has legal responsibility, or a product containing any toxic substance for which Tronox has legal responsibility, the Trust, with the consent of the Trust Advisory Committee, may amend these TDPs and/or the Trust Agreement to make the provisions of either or both documents consistent with the duties and obligations of Tronox to said insurance company.

6.3    <u>Governing Law</u>.  Except for purposes of determining the liquidated value of any Claim, administration of these TDPs shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to principles of conflicts of laws.

6.4    <u>Construction</u>.

(a)    Unless the context of these TDPs otherwise clearly requires, references to the plural include the singular, the singular includes the plural and the part includes the whole and "or" has the inclusive meaning represented by the phrase "and/or."  The words "hereof," "herein," "hereunder" and similar terms refer to the TDPs as a whole and not to any particular provision.  The word "including" has the meaning "including, but not limited to."  The section headings contained in these TDPs are for reference purposes only and shall not control or affect the construction of the TDPs or the interpretation thereof in any respect.

-12-

(b)     All references to other documents shall be deemed to include all amendments, modifications and supplements thereto to the extent such amendment, modification or supplement is made in accordance with the provisions of such document and these TDPs.

(c)     All requirements for consents or approvals shall be deemed to require written consent or approval.

## TRONOX INCORPORATED

## TORT CLAIMS TRUST DISTRIBUTION PROCEDURES

### SCHEDULE A

| ASBESTOS VALUES | |
|---|---|
| **Disease** | **Scheduled Value** |
| Mesothelioma | $250,000 |
| Lung Cancer plus evidence of an underlying Bilateral Asbestos Related Nonmalignant Disease | $100,000 |
| Other Lung Cancer | $1,000 |
| Other Cancer | $25,000 |
| Severe Asbestosis | $30,000 |
| Diagnosis of Bilateral Asbestos-Related Nonmalignant Disease plus (a) TLC less than 80%, or (b) FVC less than 80% and FEV1/FVC ratio greater than or equal to 65% | $5,000 |
| Bilateral Asbestos-Related Nonmalignant Disease | $1,500 |

-14-

**TRONOX INCORPORATED**

**TORT CLAIMS TRUST DISTRIBUTION PROCEDURES**

**SCHEDULE B**

| CREOSOTE VALUES | |
|---|---|
| **Disease** | **Scheduled Value** |
| Precancerous Skin Lesion | $26,000 |
| Skin Cancer | $120,000 |
| Lung Cancer | $700,000 |
| Breast Cancer | $475,000 |
| Other Cancer | $600,000 |
| Asthma Adult | $150,000 |
| Asthma Child | $175,000 |
| Cardiovascular | $250,000 |
| Respiratory | $80,000 |
| Medical Monitoring/Unimpaired | $5,000 |

-15-

**TRONOX INCORPORATED**

**TORT CLAIMS TRUST DISTRIBUTION PROCEDURES**

**SCHEDULE C**

| BENZENE VALUES | | |
| --- | --- | --- |
| **Disease** | **Scheduled Value (Kerr McGee/Tronox)** | **Scheduled Value (Kerr McGee/Tronox - Not Primary Target)** |
| Acute Myelogenous Leukemia | $600,000 | $5,000 |
| Other Blood Disorder | $25,000 | $1,500 |
| Damage to Reproductive System | $25,000 | $500 |
| Damage to Immune System | $10,000 | $500 |
| Skin, Eye, Respitory Irritation | $2,500 | $0 |
| Convulsions | $10,000 | $500 |
| Headache/Dizziness | $1,500 | $0 |
| Other | $1,500 | $0 |

-16-

**TRONOX INCORPORATED**

**TORT CLAIMS TRUST DISTRIBUTION PROCEDURES**

**SCHEDULE D**

| SILICA VALUES | |
|---|---|
| **Disease** | **Scheduled Value** |
| Acute Silicosis | $2,000 |
| Chronic Silicosis | $2,000 |
| Accelerated Silicosis | $2,000 |
| Other Respiratory | $1,000 |
| Medical Monitoring | $500 |

3714899.7

**TRONOX INCORPORATED**

**TORT CLAIMS TRUST DISTRIBUTION PROCEDURES**

**SCHEDULE E**

| OTHER EXPOSURE VALUES | |
|---|---|
| **(Non-Asbestos/Non-Creosote/Non-Benzene/Non-Silica)** | |
| **Disease** | **Scheduled Value** |
| Cancer | $10,000 |
| Cardiovascular | $2,500 |
| Respiratory | $5,000 |
| Other | $500 |

-18-

**TRONOX INCORPORATED**

**TORT CLAIMS TRUST DISTRIBUTION PROCEDURES**

Capitalized terms not otherwise defined in these Tort Claims Trust Distribution Procedures ("**"TDPs"**") shall have the meaning ascribed to such terms in the Plan or the Tort Claims Trust Agreement ("**"Trust Agreement"**") executed pursuant to the Plan, as applicable.

The Plan, and the Trust Agreement pursuant to the Plan, establish a Tort Claims Trust (the "**"Trust"**") and contemplate the establishment of the TDPs to set out the procedures and means to be implemented by the Tort Claims Trustee for the purpose of processing, liquidating, Allowing and paying Distributions on account of Tort Claims.

These TDPs are not intended to, nor shall they be deemed to, create additional substantive rights for any claimant.

**ARTICLE I**~~Article I~~
**GENERAL**

1.1     Trust *Res*.  The assets transferred or to be transferred to or received by the Trust consist of:

(a)     the Funded Tort Claims Trust Amount, being $12.5 million in Cash;

(b)     the Trust's share (not less than twelve percent (12%)) of the proceeds of the Anadarko Litigation pursuant to the Anadarko Litigation Trust Agreement, together with any other amounts provided therein; and

(c)     the Tort Claims Insurance Assets.

The Trust res ("**"*Res*"**") shall consist of the foregoing Trust assets, together with any income or earnings realized or received in respect thereof.

1.2     Tort Claims Trust Distributable Amount.  The Tort Claims Trust Distributable Amount (the "**"Trust Distributable Amount"**") consists of the *Res* less payments made by the Trust on account of administrative expenses as provided in the Trust Agreement.

1.3     Inherent Uncertainty.  The ~~total~~ Trust Distributable Amount is presently unknown, and the Plan contemplates **certain** distributions to ~~h~~**H**olders of Allowed Tort Claims within each Category (as hereinafter defined) of Tort Claims on a substantially pro rata basis before all Claims are liquidated and before ~~such~~**the** Trust Distributable Amount is fully known.  Accordingly, ~~D~~**d**istributions on account of Allowed Tort Claims need to take into account (to the extent reasonably foreseeable and practicable at the time of each ~~D~~**d**istribution) the uncertainty regarding the number and aggregate liquidated amount of Allowed Tort Claims and the ~~total Trust Distributable Amount~~**amount** allocable to each Category of Tort Claims.

1.4    <u>Categories of Tort Claims</u>.  The Trust is established to provide for ~~D~~**d**istributions to Holders of Tort Claims.  Tort Claims include and consist of the following (each a "**"Category,"**" as designated):

(a)    **Category A:  Allowed** Asbestos Claims ~~and~~**, Allowed Unaccounted-for Tort** Claims ~~of~~**, and Allowed** Future Tort Claim~~ants~~.

(b)    **Category B:  Allowed** Indirect Environmental Claims.

(c)    **Category C:  Allowed** Property Damage Claims.

(d)    **Category D:  Allowed** Non-Asbestos Toxic Exposure Claims.

Holders of Tort Claims in each of the foregoing Categories A ~~-~~**, B, C, and** D will receive ~~a pro rata Distribution of that portion~~**distribution(s)** of the *Res* allocable to such Category pursuant to the Plan and ~~Section 1.5 hereof, except as otherwise provided in Section 4.5 with respect to Holders of Category A or D Claims that constitute Outlying Claims~~**these TDPs**.

1.5    <u>Determination of Category Sub-Funds</u>.  Pursuant to the Plan and the Trust Agreement, the *Res* shall be divided ~~, for purposes of determining the pro rata amount Distributable to each Holder of an Allowed Tort Claim within each Category,~~ into **the following** five (5) separate funds (each, a ~~"Fund"), each such Fund established for the exclusive benefit of Holders of Allowed Tort Claims~~**"Fund") in order to determine the pro rata amount distributable to each Holder of an Allowed Tort Claim** within ~~the correlative~~**each** Category~~, as follows~~:

(a)    **Category A:**  Holders of Allowed Tort Claims in Category A shall **each** receive a~~a~~**their respective** pro rata portion of Fund A.  Fund A shall consist of a separate sub-account within the Trust equal to six and one-quarter percent (6.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund**; the Excess Anadarko Fund is defined in Section 1.5(e)**).

(b)    **Category B:**  Holders of Allowed Tort Claims in Category B shall **each** receive a~~a~~**their respective** pro rata portion of Fund B.  Fund B shall consist of a separate sub-account within the Trust equal to .15625 percent of the *Res* (excluding from the *Res* the Excess Anadarko Fund) for each whole million dollars of aggregate Allowed Indirect Environmental Claims (.0015625 times the number of whole millions of dollars of Allowed Category B Claims times the *Res* (excluding from the *Res* the Excess Anadarko Fund)**,** but in no event more than six and one-quarter percent (6.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund) (such percentage, the "**"Fund B Percentage**"").

(c)    **Category C:**  Holders of Allowed Tort Claims in Category C shall **each** receive a~~a~~**their respective** pro rata portion of Fund C.  Fund C shall consist of a separate sub-account within the Trust equal to .125 percent of the *Res* (excluding from the *Res* the Excess Anadarko Fund) for each whole million dollars of aggregate Allowed Property Damage Claims (.00125 times the number of whole millions of dollars of Allowed Category C Claims times the *Res* (excluding from the *Res* the Excess Anadarko Fund)**,** but in no event more than six and one-quarter percent (6.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund) (such percentage, the "**"Fund C Percentage**"").

- 2 -

(d)    **Category D:**  Holders of Allowed Tort Claims in Category D shall **each** receive ~~a~~**their respective** pro rat~~e~~**a** portion of Fund D.  Fund D shall consist of a separate sub-account within the Trust equal to the balance of the *Res* (excluding from the *Res* the Excess Anadarko Fund) not otherwise allocated to Funds A, B**,** and C pursuant to Sections 1.5(a)-(c) above, but in any event not less than eighty-one and one-quarter percent (81.25%) of the *Res* (excluding from the *Res* the Excess Anadarko Fund).  For the avoidance of doubt, portions of the *Res* not allocated to Fund B or Fund C in accordance Sections 1.5 (b) or (c) above shall be allocated solely to Fund D.

(e)    **Outlying Claims:**  The Holders of Category A Claims and Category ~~B Claims that constitute Outlying Claims shall, with respect to that portion of the~~**D Claims who have an** Outlying Claim ~~constituting the~~**with an** Excess Award, **shall** receive on account of ~~such~~**their** Excess Award a pro rata portion of ~~the~~**any** Excess Anadarko Fund~~, if any, as contemplated by~~ **pursuant to** Section 4.5.  As used herein, the ~~"~~**"Excess Anadarko Fund"**~~"~~ shall mean and consist of ~~[●]~~**five** percent (~~[●]~~**5**%) of the net proceeds, if any, of the Anadarko Litigation payable to the Trust pursuant to the Anadarko Litigation Trust Agreement in excess of One Hundred Twenty Million Dollars ($120 Million~~), but in no event more than [●] Dollars ($[●]~~).  For purposes of determining the amount of Funds A~~,~~**, B, C, and** D there shall be excluded from the *Res* ~~the amount thereof constituting~~ the Excess Anadarko Fund.

<h1 style="text-align:center">**ARTICLE II**~~Article II~~<br>ALLOWANCE OF CLAIMS</h1>

2.1    <u>General</u>.  All Tort Claims shall be processed, resolved, liquidated and, if Allowed, paid pursuant to these TDPs.

2.2    <u>Claims Procedures</u>.

(a)    The Holder of a Tort Claim may assert a Claim against the Trust ~~as herein contemplated~~**pursuant to these TDPs**.

(b)    Within ninety (90) days ~~following~~**of** the Effective Date, the Trust shall ~~approve and adopt a proof of~~**create a** claim form ~~or forms requiring the~~**to be completed by any** Holder of a Tort Claim ~~desiring~~**who desires** to have a Tort Claim Allowed ~~and paid to~~**("Trust Claim Form") and the Trust Claim Form shall** provide such information ~~concerning~~**about** the Holder and the Tort Claim as the Tort Claim Trustee reasonably deems necessary ~~or~~**and** appropriate to enable the Trust to determine the Category, validity**,** and amount, as appropriate, of ~~each such Tort Claim.  Such claim form(s) may contain such variations as deemed appropriate to take into account differences between the Categories and related liquidation procedures.  Notwithstanding the foregoing, a~~**the Tort Claim, provided, however, that with respect to personal injury claims as to which a timely Proof of Claim was filed, (i) the Trust Claim Form shall not require further proof of exposure, and (ii) the Trust Claim Form shall not require further proof of injury.  For the avoidance of doubt, a timely filed Proof of Claim shall be accepted by the Trust as irrefutable and final proof of exposure to a Tronox toxic substance and irrefutable and final proof of the injury asserted in the proof of claim with respect to such exposure.  Where illness/injury was not specified on a timely Proof of Claim Form or where the illness/injury sought to be compensated has changed, a sworn statement**

**by the Holder of a Tort Claim or such Holder's authorized representative shall be sufficient proof of injury.  An official bankruptcy** proof of claim completed and filed in the Tronox proceedings **may be attached to the Trust Claim Form and be incorporated by reference as appropriate.  For the avoidance of doubt, and without limiting the protection afforded by the Tort Claims Trust Agreement and/or these TDPs, the Tort Claims Trustee shall have the protection afforded by Section 5.6 of the Tort Claims Trust Agreement in relying** on the ~~official proof of claim form that contains the information required by these TDPs may be substituted for or accepted (with any information necessary to supplement such official proof of claim to comply herewith) in lieu of the Trust form to the extent provided in these TDPs~~**information described in this Section 2.2(b)**.

(c)     The Holder of a Tort Claim shall specify, in the ~~proof of claim~~**Trust Claim Form**, the Category in which ~~such~~**his or her** Claim falls.  ~~In no event~~**No Claim** shall ~~a Claim~~ be considered, Allowed**,** or paid in more than one Category.

(d)     Claims shall be reviewed, processed and liquidated in chronological order based ~~upon the date and time of their filing with the Bankruptcy Court or, if not previously filed with the Bankruptcy Court, with the Trust (such date~~**on the date and time of the timely filing of an official bankruptcy proof of claim, or, as regards future Category A claims, on the date of filing of a Trust Claim Form with the Trust (such dates** and time**s** being referred to as the "**"Filing Date"**")  .  The Trust will afford priority among claims having the same Filing Date by lottery or other equitable means approved by the Trust Advisory Committee.

(e)     Claims in Categories B, C ~~and D that were not previously~~**, and D for which no official bankruptcy proof of claim was timely** filed with the Bankruptcy Court by the Claims Bar Date shall be disallowed~~,~~ without further review or consideration.

(f)     ~~For purposes of these TDPs and Allowance or disallowance~~ **Pursuant to the Confirmation Order**, all Claims shall be ~~deemed to be timely objected to by the Trust and, therefore,~~ subject to these TDPs.

## **ARTICLE III**~~Article III~~
## **LIQUIDATION AND ALLOWANCE (DISALLOWANCE)**

3.1     Categories B and C.

(a)     All Category B Claims have been or, prior to the expiration of the Claims Objection Bar Date will be, objected to by Tronox.  ~~Such~~**All Category B** Claims shall be liquidated in the Chapter 11 Cases for all purposes of these TDPs and Allowed in the amount**s** determined by Final Order, or, if settled, in the amount**s** set forth in a settlement agreement between the Holder of the Category B Claims and Tronox (and any other party thereto) ~~and approved by the Trust.  In the case of~~**.  For** Category B Claims the Allowed Amount of the Claim shall be one-half (1/2) of the amount so determined or agreed to.

(b)     All Category C claims will be referred to binding arbitration **pursuant to Section 3.5 of these TDPs** and shall be liquidated thereby for all purposes of these TDPs and Allowed in the amount**s** awarded in the arbitration, or, if settled, in the amount**s** set forth in a settlement agreement between the Holder of the Category C Claim and the Trust.  **For Category C**

3714899.7

**Claims the Allowed Amount of the Claim shall be the full amount so determined or agreed to.**

(c)    As soon as practicable ~~following the liquidation and Allowance (or if applicable disallowance)~~**after determination of the Allowed Amounts** of all Category B and Category C Claims, the Tort Claims Trustee shall determine the aggregate ~~amount of all Category B Claims, one-half (1/2) of the aggregate amount~~**of the Allowed Amounts** of all Category B Claims and the aggregate ~~amount~~**of the Allowed Amounts** of all Category C Claims and, on the basis thereof, **shall then determine** the Fund B Percentage and the Fund C Percentage (Fund A being fixed at 6.25% of the *Res* (excluding the Excess Anadarko Fund) and Fund D being the entire balance of the *Res* (excluding the Excess Anadarko Fund)).  Notice of such determinations shall be [●].  ~~In the event no one objects to such determinations by written notice to the Tort Claims Trustee [~~ and ~~●] within [●] days following the giving of notice thereof, such determinations shall become~~**shall be** final and binding for all purposes.

3.2    ~~Scheduled Values – ~~Categories A and D.

(a)    Upon a determination that ~~the pertinent proof of claim relating to ~~a **Trust Claim Form for a particular** Category A or Category D Claim is complete, which determination shall be made by the ~~Trust~~**Tort Claims Trustee** and provided to the Holder by written notice (a "~~"~~**Determination Notice**"~~"~~**")**, the Holder of a Category A or Category D Claim shall have the option of accepting the Scheduled Value (as hereinafter defined) for such Claim (which amount shall be stated in the Determination Notice) or of proceeding with the dispute resolution procedures set forth in Section 3.3 below.  ~~A Holder's election in such regard shall be irrevocable and~~**; provided, however, that there are no Scheduled Values for a Category A Claim that is either an Allowed Unaccounted-for Claim or an Allowed Future Tort Claim, and the Holder of such a Claim must proceed with the individual review procedures set forth in Section 3.4, below.  A Holder's election to proceed with the dispute resolution procedures set forth in Section 3.3 hereof** shall be provided by written notice to the Trust **and must be** received by the Trust within thirty (30) days ~~following~~**of** the date of the Determination Notice (a "~~"~~**Rejection Notice**"~~"~~**")**.  ~~In the event~~**If** a Holder fails to timely provide ~~such~~**a** Rejection Notice to the Trust, the Holder shall be conclusively presumed to have accepted the Scheduled Value.  **The Holder of a Category A Claim that is either an Allowed Unaccounted-for Claim or an Allowed Future Tort Claim need not provide a Rejection Notice to the Trust.  Instead, the Determination Notice sent to such Holder will state that the Holder's Claim will be evaluated under the individual review procedures in Section 3.4, below.**

(b)    Schedule A attached hereto sets forth the Scheduled Values for **those** Category A Claims **that are Allowed Asbestos Claims**.

(c)    Schedules B~~,~~**, C, D, and** E attached hereto set forth the Scheduled Values for **all** Category D Claims.

(d)    A Holder accepting the Scheduled Value shall not be required to meet any further evidentiary requirements (beyond the matters required to be set forth in the ~~verified proof of claim relating thereto~~**Trust Claim Form**) with regard to such Claim, and the Claim shall **then** be liquidated and Allowed in the amount of the Scheduled Value.

**3714899.7**

3.3    Dispute Resolution ~– Categories A and D.

(a)    ~~In the event that~~**If** a Holder of a Category A **Claim** or **a** Category D Claim timely provides a Rejection Notice in accordance with Section 3.2, the Claim shall be valued and liquidated in accordance with this Section 3.3.

(b)    *Anything herein to the contrary notwithstanding,* ~~at~~**At** any time during the dispute resolution process the Holder of ~~the~~**a** Claim and the Trust may agree to settle the Claim and thereby conclude the process.

(c)    At the option of the Trust, to be exercised by written notice to the Holder of the Claim given within 90 days ~~after~~**of** the Trust~~'~~**'**s receipt of a Rejection Notice, the Claim shall ~~be~~ (i) ~~be~~ evaluated in accordance with the Trust~~'~~**'**s Individual Review Process pursuant to Section ~~3.4~~**3.4,** below, (ii) ~~be~~ referred to arbitration, as provided in Section ~~3.5~~ **3.5,** below, which arbitration may be binding or non-binding at the election of the Holder, or (iii) ~~be~~ **be** liquidated in the tort system as provided in Section ~~3.6~~**3.6,** below.  In each such case, the ~~liquidated~~**determined** value of ~~such~~**the** Claim may be greater or less than the Scheduled Value ~~(~~which shall have no evidentiary relevance ~~in determining the liquidated amount of such Claim)~~.

3.4    ~~Individual Review~~ **Individual Review – Categories A and D.**

(a)    Claims referred for review under this Section 3.4 ("~~Individual Review~~**"Individual Review")** shall be processed in chronological order based ~~upon~~**on** their Filing Date.

(b)    A Claim referred for Individual Review shall be reviewed for purposes of determining whether the Claim would be compensable in the tort system and, if so, the amount at which such Claim would be determined and liquidated in the tort system.  In such regard, the Trust shall within six (6) months following the Effective Date adopt and publish procedures, subject to the approval of the Trust Advisory Committee, for processing Claims referred for Individual Review, which procedures may include evidentiary standards , mediation, third-party expert review, and any other non-binding dispute resolution mechanisms deemed appropriate by the Trust.

(c)    Promptly after (and, in any event within sixty (60) days following) the conclusion of the Individual Review of a Claim (if the Claim has not previously been settled by agreement), the Trust shall make an offer of settlement at such amount and on such terms deemed appropriate by the Trust (an ~~"~~**"Individual Review Settlement Offer**~~"~~**")**).  The Holder shall have thirty (30) days within which to accept or reject the Individual Review Settlement Offer, provided that if the Holder has not timely acted with regard to such offer by written acceptance or rejection, it shall be deemed to have been rejected.

(d)    In the event the Holder accepts the Individual Review Settlement Offer, the Claim shall be liquidated and Allowed in the amount and on the terms mutually agreed upon.

(e)    In the event the Holder rejects or is deemed to reject the Individual Review Settlement Offer, the Holder shall have the option to elect to have the Claim resolved (i) by binding arbitration as ~~contemplated by~~**provided for in** Section 3.5 below, or (ii) in the tort system

- 6 -

as contemplated by**provided for in** Section 3.6 below.  Such election shall be made in the notice rejecting the Individual Review Settlement Offer, provided that a Holder failing to provide such written notice of rejection under paragraph (c) above shall be conclusively deemed to have elected binding arbitration.

 3.5 Arbitration **– Categories A and D**.

 (a) Subject hereto, contemporaneous**Contemporaneous** with the adoption of the procedures for Individual Review, the Trust shall adopt and publish procedures, subject to the approval of the Trust Advisory Committee, regarding non-binding and binding arbitration of disputed Claims.  In such regard, the arbitrable issues shall include any aspect of liability or damages that could be at issue or applicable in the tort system, including the determination of applicable law, evidentiary standards, causation and damages, provided that offers of settlement or compromise shall not be offered or accepted as evidence of any matter.

 (b) Election of binding arbitration shall require the consent (or deemed election) of both the Holder and the Trust.

 (c) Punitive damages shall not be available or awarded in any arbitration.

 (d) The award of the arbitrator shall contain a finding as to liability and the liquidated value of (damages attributable to) the Claim.

 (e) An award in non-binding arbitration that is accepted by both the Holder and the Trust, and any award in binding arbitration shall be final and binding on the parties and the Claim shall**, subject to the limitations provided for in these TDPs,** be Allowed in the amount of such award.

 **(f) Non-binding and binding arbitration of disputed Claims shall take place only in Delaware.**

 3.6 Tort System Litigation **– Categories A and D**.

 (a) In the event**If** the Trust refers a Claim to the tort system, **or if** a non-binding arbitration award is rejected by the Holder or the Trust**,** or **if** the Holder so elects under Section 3.4(e), the Holder of such Claim shall retain**have** the right to commence**pursue** a lawsuit in the tort system against the Trust (a "**"Lawsuit"**").

 (b) The**Any** Lawsuit may be commenced against the Trust **only** in Delaware.

 (c) Any such Lawsuit shall be filed by the Holder only in his or her own right and name and not as a representative or member of a class.  No suit may be consolidated, for any purpose, with any other l**L**awsuit and a Holder shall not seek such consolidation or class status.

 (d) In any such Lawsuit all claims, counterclaims and defenses (including with respect to the Trust, all defenses which could have been or were asserted by Tronox) shall be available to the parties.  Punitive damages shall not be available or awarded in any such Lawsuit.

- 7 -

(e)    A Claim asserted in the tort system shall be liquidated and Allowed in the amount awarded by Final Order in such Lawsuit in the event the Holder is the prevailing party.  If the Trust is the prevailing party the Claim shall be disallowed.

3.7    <u>Allowed Amount</u>.  The amount at which a Tort Claim is liquidated and Allowed hereunder is sometimes referred to herein as the "**Allowed Amount**."

## **ARTICLE IV**~~Article IV~~
## PAYMENT OF CLAIMS

4.1    <u>Category B Claims</u>.

(a)    ~~Upon~~**As soon as practicable after the** liquidation and Allowance (or disallowance) of all Category B Claims ~~and~~**,** the Trust**'s** determination of the aggregate amount of all Allowed Category B Claims as set forth in Section 3.1(b), **and either (i) the Trust's receipt of the funds described in Section 1.1(b) or (ii) at such earlier time as the Tort Claims Trustee in its sole discretion deems appropriate,** the Trust shall determine, as provided in Section 1.5, the applicable Fund B Percentage, the amount of Fund B (to the extent then determinable and reduced to Cash, (the "**Fund B Cash**")) and each Holder**'s** pro rata share of the Fund B Cash**, and shall pay each Holder its pro rata share of the Fund B Cash.  Payment shall be made to the Holder either directly or through the care of the Holder's counsel.**

~~(b)~~ **(b)** From time to time thereafter as Trust assets allocable hereunder to Fund B for Category B Claims are liquidated and reduced to Cash, the Trust shall make further supplemental Distributions with respect to Allowed Category B Claims in accordance with the foregoing procedures; provided, however, that no such supplemental Distribution need be made until the balance of the Fund B Cash available for supplemental Distribution shall exceed **[$●]**.

4.2    <u>Category C Claims</u>.

(a)    ~~Upon~~**As soon as practicable after the** liquidation and Allowance (or disallowance) of all Category C Claims ~~and~~**,** the Trust**'s** determination of the aggregate amount of all Allowed Category C Claims as set forth in Section 3.1(b), **and either (i) the Trust's receipt of the funds described in Section 1.1(b) or (ii) at such earlier time as the Tort Claims Trustee in its sole discretion deems appropriate,** the Trust shall determine, as provided in Section 1.5, the applicable Fund C Percentage, the amount of Fund C (to the extent then determinable and reduced to Cash, (the "**Fund C Cash**")) and each Holder**'s** pro rata share of the Fund C Cash**, and shall pay each Holder its pro rata share of the Fund C Cash.  Payment shall be made to the Holder either directly or through the care of the Holder's counsel.**

~~(b)~~ **(b)** From time to time thereafter as Trust assets allocable hereunder to Fund C for Category C Claims are liquidated and reduced to Cash, the Trust shall make further supplemental Distributions with respect to Allowed Category C Claims in accordance with the foregoing procedures; provided, however, that no such supplemental Distribution need be made until the balance of the Fund C Cash available for supplemental Distribution shall exceed **[$●]**.

3714899.7

4.3    Category A Claims.

(a)    As soon as practicable following *the Effective Date, the* Trust shall determine the amount (the "**Fund A Cash**") of Fund A then liquidated and reduced to Cash (the "**Initial Fund A Cash Determination**").   The date on which such Initial Fund A Cash Determination is made is herein referenced to as the "**Initial Fund A Determination Date**."

**(a)**    (b) An objective of the Trust is to pay the Holder of each Allowed Category A Claim the same percentage of the**their respective** Allowed Amount as each other Holder of an Allowed Category A Claim is paid (that is, to afford pro rata treatment to the Holders of all Allowed Category A Claims).  Another objective of the Trust is to pay Holders of Allowed Category A Claims compensation on account of their injury as promptly as possible following the determination of the Allowed Amount thereof.  In light of these competing objectives, it is not possible to fully implement or achieve both simultaneously.  Accordingly, to mitigate**balance** as much as possible the consequences of these competing considerations, Holders of Allowed Class A Claims will be paid more promptly than a strict pro rata payment requirement would permit (because such a requirement would necessitate liquidation of all Category A Claims, present and future, and would require liquidation and reduction to Cash of all Trust assets, including contingent assets presently in litigation) by payment of only a portion of the amount ultimately anticipated to be paid on account of a Claim.  Because this requires that the Trust make estimates of the number, type and amount of Claims asserted and to be asserted, of the ultimate aggregate amount of Claims that will be Allowed in the future and of the value that will be realized on unliquidated Trust assets, the portion of the Allowed Amount paid from time to time will likely vary so as to not overpay Claims Allowed early on in the process.

**(b)**    (c) In light of the foregoing**Either (i) as soon as practicable after the Trust receives the funds described in Section 1.1(b) or (ii) at such earlier time as the Tort Claims Trustee in its sole discretion deems appropriate**, the Trust shall commence making payments, as herein determined and provided, to Holders of Allowed Category A Claims out of available Fund A Cash within ninety (90) days after the Initial Determination Date on a first-Allowed-first-paid ("**"FIFO"**") basis in an**a cumulative** amount equal to [●] percent ([●]%) (the "*Fund A Payment Percentage*") of the amount of the Allowed Claim **(the "*Fund A Payment Percentage*").  Payment shall be made to the Holder either directly or through the care of the Holder's counsel**.

**(c)**    (d) The Fund A Payment Percentage and the related underlying assumptions, including those regarding the anticipated aggregate Allowed Amount of all Category A Claims, the nature and number of future Category A Claims and the Cash to be realized from Trust assets that are unliquidated in amount, shall be reviewed not less frequently than [●] and the Fund A Payment Percentage shall be adjusted to take into account any changes warranting adjustment.  To the extent the Fund A Payment Percentage is increased in the future, Holders of Allowed Category A Claims who previously have received a payment on account thereof shall be paid a supplemental payment in the amount of the difference between the original amount paid and the amount that would have been paid had the newly established Fund A Payment Percentage applied in determining the prior payment.

- 9 -

4.4    Category D Claims.

(a)    Upon the Trust's determination of the applicable Fund D Percentage, the Trust shall determine the amount (the "**Fund D Cash**") of Fund D then liquidated and reduced to Cash (the "**Initial Fund D Cash Determination**").  The date on which such Initial Fund D Cash Determination is made is herein referenced to as the "**Initial Fund D Determination Date**."

**(a)**    (b) An objective of the Trust is to pay the Holder of each Allowed Category D Claim the same percentage of the**their respective** Allowed Amount as each other Holder of an Allowed Category D Claim is paid (that is, to afford pro rata treatment to the Holders of all Allowed Category D Claims).  Another objective of the Trust is to pay Holders of Allowed Category D Claims compensation on account of their injury as promptly as possible following the determination of the Allowed Amount thereof.  In light of these competing objectives, it is not possible to fully implement or achieve both simultaneously.  Accordingly, to mitigate**balance** as much as possible the consequences of these competing considerations, Holders of Allowed Class D Claims will be paid more promptly than a strict pro rata payment requirement would permit (because such a requirement would necessitate liquidation of all Category D Claims, present and future, and would require liquidation and reduction to Cash of all Trust assets, including contingent assets presently in litigation) by payment of only a portion of the amount reasonably ultimately anticipated to be paid on account of a Claim.  Because this requires that the Trust make estimates of the number, type and amount of Claims asserted and to be asserted, of the ultimate**an estimate of the** aggregate amount of **Category D** Claims that will be Allowed in the future and of the value that will be realized on unliquidated Trust assets, the portion of the Allowed Amount paid from time to time will likely**may** vary so as to not overpay Claims Allowed early on in the process.

**(b)**    (c) In light of the foregoing **Either (i) as soon as practicable after the Trust receives the funds described in Section 1.1(b) or (ii) at such earlier time as the Tort Claims Trustee in its sole discretion deems appropriate**, the Trust shall commence making payments, as herein determined and provided, to Holders of Allowed Category D Claims out of available Fund D Cash within ninety (90) days after the Initial Determination Date on a FIFO basis in an**a cumulative** amount equal to [●] percent ([●]%) (the "*Fund D Payment Percentage*") of the amount of the Allowed Claim **(the "*Fund D Payment Percentage*").  Payment shall be made to the Holder either directly or through the care of the Holder's counsel**.

**(c)**    (d) The Fund D Payment Percentage and the related underlying assumptions, including those regarding the anticipated aggregate Allowed Amount of all Category D Claims, the nature and number of future Category D Claims and the Cash to be realized from Trust assets that are unliquidated in amount, shall be reviewed not less frequently than [●] and the Fund D Payment Percentage shall be adjusted to take into account any changes warranting adjustment.  To the extent the Fund D Payment Percentage is increased in the future, Holders of Allowed Category D Claims who previously have received a payment on account thereof shall be paid a supplemental payment in the amount of the difference between the original amount paid and the amount that would have been paid had the newly established Fund D Payment Percentage applied in determining the prior payment.

- 10 -

4.5    Outlying Claims.

(a)    In the event the Holder of a Category A or Category D Claim declines to accept or is deemed to reject the Settlement Offer at the Scheduled Amount and, thereafter, the Holder prevails in binding arbitration or litigation in the tort system and receives an award, in either case, in excess of the Scheduled Amount for such Claim (an "**"Outlying Claim"**"), the Allowed Amount of such Outlying Claim shall be bifurcated into (i) an amount equal to the Scheduled Amount for such Claim and (ii) the excess thereof over such Scheduled Amount (such excess being referred to herein as the "**"Excess Award"**").

(b)    As regards each Outlying Claim, the Holder shall be paid in accordance with this Section 4.5, anything herein or otherwise to the contrary notwithstanding.  Such Holder shall be paid:  (i) on account of the Scheduled Amount portion of the Allowed Amount of such Outlying Claim an amount equal to the appropriate Payment Percentage of such Scheduled Amount (and, from time to time, any supplemental payments in respect thereof as may be paid to other Holders of Claims in such Category not constituting Outlying Claims); and (ii) on account of the Excess Amount an amount equal to such Holder's pro rata portion of the Excess Anadarko Fund, if any, but not in excess of the Excess Amount.  Amounts payable in respect of the Excess Amounts, if any, shall be paid within one hundred twenty (120) days following the liquidation and Allowance (or disallowance) of all Category A and Category D Claims liquidated through binding arbitration or litigation in the tort system.  Any deferred payment hereunder shall not bear interest nor shall the Holders otherwise receive compensation with regard to such deferral.

**(c)    In the event that there are funds remaining in the Excess Anadarko Fund after all Outlying Claims have been paid, the remaining funds shall be divided between Funds A and D in proportion to the aggregate value of the Allowed Tort Claims in Categories A and D.  The funds shall then be distributed to the Holders of Allowed Tort Claims in each such Category according to the payment procedures set forth in Sections 4.3 and 4.4, as the case may be.**

4.6    Releases.  The Trustee shall have the discretion to determine the form and substance of the releases to be provided to the Trust and the Released Parties in order to maximize recovery for Holders against other tortfeasors without increasing the risk or amount of Claims for indemnification or contribution from the Trust with respect to the Claim.  As a condition to making any payment to a Holder, the Trust shall obtain, for the benefit of the Trust and the Released Parties, a general release in accordance with the applicable state or other law.  If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a Holder may, in the discretion of the Trust, constitute such a release.

**4.7    Healthcare Reimbursement Obligations.**

**(a)    After *the Effective Date, the* Tort Claims Trustee shall verify which Holders of Allowed Asbestos Claims, Allowed Non-Asbestos Toxic Exposure Claims, Allowed Unaccounted-for Tort Claims, and Allowed Future Tort Claims are recipients of federal Medicare benefits (Part A and B) and / or Medicaid benefits (Medicaid benefits shall be verified in state of residence only, unless otherwise agreed) for which the Holder has a reimbursement obligation (a "Healthcare Reimbursement Obligation").  The Tort Claims**

- 11 -

3714899.7

**Trustee shall not release the portion of a payment that might be encumbered by a Healthcare Reimbursement Obligation (the "Healthcare Holdback Amount") until proof of resolution and satisfaction of such Healthcare Reimbursement Obligation is provided to the Tort Claims Trustee in a form that the Tort Claims Trustee, in its sole discretion, deems acceptable.  Upon receipt of such proof, the Trust shall pay the Healthcare Holdback Amount to such Holder either directly or through the care of his or her counsel, as provided in these TDPs.**

**(b)** *Anything herein to the contrary notwithstanding,* **although the Tort Claims Trustee shall fulfill its obligations to verify whether Healthcare Reimbursement Obligations may exist and shall fulfill its reporting obligations under the Medicare, Medicaid and SCHIP Extension Act of 2007, the resolution and reporting of Healthcare Reimbursement Obligations is the duty of each Holder and his or her counsel, and the Tort Claims Trustee shall not be liable to the Tort Claims Trust, to any Holder of a Tort Claim, or to any other person for any act or omission relating to matters covered in this Section 4.7, except for the Tort Claims Trustee's own breach of trust constituting fraud, bad faith, or willful misconduct.**

**4.8** ~~4.7~~ Payment Deferral.  Anything herein to the contrary notwithstanding, the Trustee, with the consent of the Trust Advisory Committee, may defer any payments contemplated hereby until a sufficient number of Claims in a Category have been liquidated **and Allowed in order** to provide reasonable assurance that the Claims in such Category will be afforded pro rata treatment; provided that deferral of payments to Claims in a Category shall, within such Category, be on a non-discriminatory basis.  **Any deferred payment hereunder shall not bear interest, nor shall the Holders otherwise receive compensation with regard to such deferral.**

## ARTICLE V ~~Article V~~
## CLAIMS MATERIALS

5.1    <u>Claims Materials</u>.  The Trust shall prepare suitable claims materials ("**"Claims Materials"**") for all Tort Claims, and shall provide such Claims Materials upon written request to any interested party.  The ~~proof of claim form~~**Trust Claim Form** to be submitted to the Trust shall require the Holder to assert the highest disease Level for which the Claim qualifies at the time of filing.  The ~~proof of claim form~~**Trust Claim Form** shall also include a certification by the Holder or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure.  In developing its claim filing procedures, the Trust shall make reasonable efforts to afford Holders the opportunity to utilize currently available technology, including filing claims and supporting documentation over the internet and electronically by disk or CD-rom.  The ~~proof of claim form~~**Trust Claim Form** to be used by the Trust shall be developed by the Trust and submitted to the Trust Advisory Committee for approval; it may be changed by the Trust with the consent of the Trust Advisory Committee.

5.2    <u>Content of Claims Materials</u>.  The Claims Materials shall include a copy of these TDPs, such instructions as the Trust shall approve, and ~~a detailed proof of claim form~~**the Trust Claim Form**.  The Holder shall provide the Trust with information regarding any recovery from other defendants and claims resolution organizations relating to Claim.

- 12 -

5.3     Withdrawal of Claims.  A Holder may withdraw a Claim at any time upon written notice to the Trust, provided that any subsequently filed Claim shall be subject to any statute of limitations.

5.4     Filing Requirements and Fees.  The Trustee shall have the discretion to determine, with the consent of the Trust Advisory Committee, whether a filing fee should be required for any Claims **that do not accept the Scheduled Value**.  Any such requirement shall be applied, within any Category, on a non-discriminatory basis.

5.5     English Language.  All claims, claims forms, submissions and evidence submitted to the Trust or in connection with any Claim or its liquidation shall be in the English language.

## ARTICLE VI~~Article VI~~
## MISCELLANEOUS

6.1     Amendments.  Except as otherwise provided herein, the Trustee may amend, modify, delete, or add to any provisions of these TDPs (including, without limitation, amendments to conform these TDPs to advances in scientific or medical knowledge or other changes in circumstances), provided the consent of the Trust Advisory Committee is first obtained, except that an adjustment to a Payment Percentage is also governed by Section 4.3 or 4.4 (as appropriate).  Nothing herein is intended to preclude the Trust Advisory Committee from proposing to the Trustee, in writing, amendments to these TDPs.

6.2     Severability.  Should any provision contained in these TDPs be determined to be void or unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of these TDPs.  Should any provision contained in these TDPs be determined to be in conflict with or contrary to Tronox's obligations to any insurance company providing insurance coverage in respect of Claims for personal injury based on exposure to a Tronox product, or to conduct that exposed the Holder to a Tronox product, for which Tronox has legal responsibility, or a product containing any toxic substance for which Tronox has legal responsibility, the Trust, with the consent of the Trust Advisory Committee, may amend these TDPs and/or the Trust Agreement to make the provisions of either or both documents consistent with the duties and obligations of Tronox to said insurance company.

6.3     Governing Law.  Except for purposes of determining the liquidated value of any Claim, administration of these TDPs shall be governed by, and construed in accordance with, the laws of the State of Delaware**, without regard to principles of conflicts of laws**.

6.4     Construction.

(a)     Unless the context of these TDPs otherwise clearly requires, references to the plural include the singular, the singular includes the plural and the part includes the whole and "or" has the inclusive meaning represented by the phrase "and/or."  The words "hereof," "herein," "hereunder" and similar terms refer to the TDPs as a whole and not to any particular provision.  The word "including" has the meaning "including, but not limited to."  The section headings contained in these TDPs are for reference purposes only and shall not control or affect the construction of the TDPs or the interpretation thereof in any respect.

- 13 -

(b)      All references to other documents shall be deemed to include all amendments, modifications and supplements thereto to the extent such amendment, modification or supplement is made in accordance with the provisions of such document and these TDPs.

(c)      All requirements for consents or approvals shall be deemed to require written consent or approval.

- 14 -

**TRONOX INCORPORATED**

**TORT CLAIMS TRUST DISTRIBUTION PROCEDURES**

**SCHEDULE A**

| ASBESTOS VALUES | |
|---|---|
| **Disease** | **Scheduled Value** |
| Mesothelioma | $250,000 |
| Lung Cancer plus evidence of an underlying Bilateral Asbestos Related Nonmalignant Disease | $100,000 |
| Other Lung Cancer | $1,000 |
| Other Cancer | $25,000 |
| Severe Asbestosis | $30,000 |
| Diagnosis of Bilateral Asbestos-Related Nonmalignant Disease plus (a) TLC less than 80%, or (b) FVC less than 80% and FEV1/FVC ratio greater than or equal to 65%. | $5,000 |
| Bilateral Asbestos-Related Nonmalignant Disease | $1,500 |

- 15 -

**TRONOX INCORPORATED**

**TORT CLAIMS TRUST DISTRIBUTION PROCEDURES**

**SCHEDULE B**

| CREOSOTE VALUES | |
|---|---|
| **Disease** | **Scheduled Value** |
| Precancerous Skin Lesion | $26,000 |
| Skin Cancer | $120,000 |
| Lung Cancer | $700,000 |
| Breast Cancer | $~~450,000~~**475,000** |
| Other Cancer | $600,000 |
| Asthma Adult | $~~100,000~~**150,000** |
| Asthma Child | $~~100,000~~**175,000** |
| Cardiovascular | $~~150,000~~**250,000** |
| Respiratory | $~~55,000~~**80,000** |
| Medical Monitoring/Unimpaired | $~~3,825~~**5,000** |

- 16 -

# TRONOX INCORPORATED

## TORT CLAIMS TRUST DISTRIBUTION PROCEDURES

### SCHEDULE C

| BENZENE VALUES | | |
|---|---|---|
| **Disease** | **Scheduled Value (Kerr McGee/Tronox)** | **Scheduled Value (Kerr McGee/Tronox - Not Primary Target)** |
| Acute Myelogenous Leukemia | $600,000 | $5,000 |
| Other Blood Disorder | $25,000 | $1,500 |
| Damage to Reproductive System | $25,000 | $500 |
| Damage to Immune System | $10,000 | $500 |
| Skin, Eye, Respitory Irritation | $2,500 | $0 |
| Convulsions | $10,000 | $500 |
| Headache/Dizziness | $1,500 | $0 |
| Other | $1,500 | $0 |

- 17 -

**TRONOX INCORPORATED**

**TORT CLAIMS TRUST DISTRIBUTION PROCEDURES**

**SCHEDULE D**

| SILICA VALUES | |
|---|---|
| **Disease** | **Scheduled Value** |
| Acute Silicosis | $2,000 |
| Chronic Silicosis | $2,000 |
| Accelerated Silicosis | $2,000 |
| Other Respiratory | $1,000 |
| Medical Monitoring | $500 |

- 18 -

**TRONOX INCORPORATED**

**TORT CLAIMS TRUST DISTRIBUTION PROCEDURES**

**SCHEDULE E**

| OTHER EXPOSURE VALUES (Non-Asbestos/Non-Creosote/Non-Benzene/Non-Silica) | |
|---|---|
| **Disease** | **Scheduled Value** |
| Cancer | $10,000 |
| Cardiovascular | $2,500 |
| Respiratory | $5,000 |
| Other | $500 |

3683705.1

- 19 -