## <u>Exhibit 2</u>

**Anadarko Litigation Trust Agreement**

## LITIGATION TRUST AGREEMENT

This litigation trust agreement (the "Litigation Trust Agreement"), dated as of February 14, 2011, is entered into by and among Tronox (as defined below); the United States of America, as beneficiary; the Garretson Resolution Group, Inc., not individually but solely in its representative capacity as trustee of the Tort Claims Trust (as defined below) ("Garretson"), a beneficiary; Greenfield Environmental Multistate Trust LLC, not individually but solely in its representative capacity as trustee of the Multistate Trust (defined below) ("Greenfield"), a beneficiary; Le Petomane XXVII, Inc., not individually but solely in its representative capacity as trustee of the Nevada Trust (as defined below) ("Le Petomane XXVII"), a beneficiary; John Hueston, as Trustee (the "Trustee"); and Garretson, Greenfield, Le Petomane XXVII, and Karen Cordry, as members of the Trust Advisory Board (the "Trust Advisory Board"), appointed by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Tronox Incorporated, *et al*. Pursuant to Chapter 11 of the Bankruptcy Code, dated November 5, 2010 [Ex. B to Dkt. No. 2402] (as may be amended from time to time, the "Plan"), confirmed by the Bankruptcy Court on November 30, 2010 [Dkt. No. 2567], which provides for the establishment of the litigation trust evidenced hereby (the "Anadarko Litigation Trust" or "Litigation Trust" or the "Trust"), and entry into this Litigation Trust Agreement.

## WITNESSETH

WHEREAS, certain of the Debtors are prosecuting an adversary proceeding against Anadarko Petroleum Corporation and Kerr-McGee Corporation (the "Anadarko Defendants"), which is currently pending in the Bankruptcy Court as Adversary Proceeding Number 09-01198 (ALG) (the "Anadarko Litigation");

WHEREAS, the Anadarko Litigation Trust is created pursuant to and to effectuate the Plan;

WHEREAS, the Anadarko Litigation Trust is created on behalf of and for the sole benefit of the Beneficiaries (as defined below);

WHEREAS, the Plan, the Environmental Claims Settlement Agreement, and the Tort Claims Trust Agreement provide for the creation of a Litigation Trust that will (i) receive from the Debtors (a) all of their respective rights and interests in the Anadarko Litigation and (b) $25,000,000 in cash (the "Initial Funding," and together with (a), the "Trust Assets"), which shall constitute a portion of the Funded Environmental Amount and which payment shall satisfy paragraph 121 of the Environmental Claims Settlement Agreement, (ii) hold the Trust Assets and all dividends, rents, royalties, income, proceeds and other receipts of, from or attributable to the Trust Assets (the "Trust Proceeds," and together with the Trust Assets, the "Trust Property") in trust for the benefit of the Beneficiaries as provided herein, and (iii) oversee and direct the liquidation of the Trust Property held by it for the benefit of the Beneficiaries pursuant to the terms of this Litigation Trust Agreement;

WHEREAS, this Litigation Trust Agreement is executed to establish the Litigation Trust and to facilitate implementation of the Plan, the Environmental Claims Settlement Agreement, and the Tort Claims Trust Agreement;

WHEREAS, the Litigation Trust is established hereunder for the sole purpose of prosecuting the Anadarko Litigation and liquidating and distributing the Trust Property to or for the benefit of the holders of interests in the Litigation Trust (the "Litigation Trust Interests"), with no objective or authority to continue or engage in the conduct of a trade or business;

WHEREAS, the Litigation Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 et seq. of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "QSF Regulations"); and

WHEREAS, presuming that the Litigation Trust qualifies as a "qualified settlement fund" within the meaning of the QSF Regulations, to the extent permitted by law, Tronox and the Reorganized Debtors will elect to treat the Litigation Trust for tax purposes as a grantor trust pursuant to the QSF Regulations;

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the Debtors, the Reorganized Debtors, the Trustee, the members of the Trust Advisory Board; the United States of America, as Beneficiary; the Garretson Resolution Group, Inc., not individually but solely in its representative capacity as trustee of the Tort Claims Trust (as defined below), a Beneficiary; Greenfield Environmental Multistate Trust LLC, not individually but solely in its representative capacity as trustee of the Multistate Trust (defined below), a Beneficiary; Le Petomane XXVII, Inc., not individually but solely in its representative capacity as trustee of the Nevada Trust (as defined below), a Beneficiary, agree as follows:

1.      **DEFINITIONS**

(a)      Tronox.  The term "Tronox" shall mean the Debtors and Reorganized Debtors.

(b)      Debtors.  The term "Debtors" shall mean Tronox Incorporated; Tronox Luxembourg S.ar.l; Cimarron Corporation; Southwestern Refining Company, Inc.; Transworld Drilling Company; Triangle Refineries, Inc.; Triple S, Inc.; Triple S Environmental Management Corporation; Triple S Minerals Resources Corporation; Triple S Refining Corporation; Tronox LLC; Tronox Finance Corp.; Tronox Holdings, Inc.; Tronox Pigments (Savannah) Inc., and Tronox Worldwide LLC.

(c)      Reorganized Debtors.  The term "Reorganized Debtors" shall mean the Debtors, as reorganized pursuant to the Plan, and any successors thereto, whether by merger, consolidation, dissolution, restructuring, recapitalization, acquisition of assets or equity securities, or otherwise, on or after the Effective Date (as defined below).

(d)      Beneficiaries.  The term "Beneficiaries" shall mean the United States of America; the Cimarron Environmental Response Trust ("Cimarron Trust"); the Commonwealth of Massachusetts; the Multistate Environmental Response Trust ("Multistate Trust"); the Navajo

Nation; the Nevada Environmental Response Trust ("Nevada Trust"); the Savannah Environmental Response Trust ("Savannah Trust"); the State of Alabama; the State of Georgia[1]; the State of Illinois; the State of Louisiana; the State of Missouri; the State of New Jersey; the State of New York; the State of Ohio; the State of Oklahoma; the State of Texas; and the Tort Claims Trust; and each of their respective successors and any permitted assigns.

(e)    <u>Effective Date</u>.  The term "Effective Date" shall have the same meaning as in the Plan.

(f)    <u>Environmental Claims Settlement Agreement</u>.  The term "Environmental Claims Settlement Agreement" shall have the same meaning as in the Plan.

(g)    <u>Government Environmental Entities</u>.  The term "Government Environmental Entities" shall have the same meaning as in the Plan.

(h)    <u>Tort Claims Trust</u>.  The term "Tort Claims Trust" shall have the same meaning as in the Plan.

(i)    <u>Tort Claims Trust Agreement</u>.  The term "Tort Claims Trust Agreement" shall have the same meaning as in the Plan.

(j)    <u>Initial Funding</u>.  The term "Initial Funding" shall have the same meaning provided in the Recitals, above.

(k)    <u>Plan</u>.  The term "Plan" shall have the meaning provided in the introductory text, above.

(l)    <u>Trustee, Trust Advisory Board, Trust Assets, Trust Proceeds, Trust Property, Litigation Trust Agreement, Anadarko Litigation Trust, Litigation Trust, Anadarko Litigation, Anadarko Defendants, Bankruptcy Court, QSF Regulations, and qualified settlement fund</u>.  The terms "Trustee," "Trust Advisory Board," "Trust Assets," "Trust Proceeds," "Trust Property," "Litigation Trust Agreement," "Anadarko Litigation Trust," "Litigation Trust," "Anadarko Litigation," "Anadarko Defendants," "Bankruptcy Court," "QSF Regulations," and "qualified settlement fund" shall have the meaning for such terms provided in the introductory text and recitals, above.

(m)    <u>At-Large Member</u>.  The term "At-Large Member" shall have the meaning provided in subsection 8(a)(i), below.

(n)    Any capitalized terms for which no definition is provided herein shall have the meaning given such terms in the Plan.

---

[1] All references to "Georgia" or the "State of Georgia" are limited to the "Georgia Department of Natural Resources, Environmental Protection Division."

## 2.      ESTABLISHMENT OF THE LITIGATION TRUST

(a)      Establishment and Declaration of Trust.

(i)      Name.  This Trust shall be known as the "Anadarko Litigation Trust," in which name the Trustee may conduct the affairs of the Litigation Trust.

(ii)      Office.  The office of the Litigation Trust shall be in care of the Trustee at its trust office or at any other address that the Trustee may designate by written notice to the Beneficiaries.

(iii)      Declaration of Trust; Transfer of Trust Assets.  Pursuant to the Plan, (I) the Debtors and the Trustee hereby establish as of the Effective Date the Litigation Trust on behalf of and for the Beneficiaries, (II) the Debtors irrevocably and absolutely transfer, assign, convey, and deliver to the Litigation Trust as of the Effective Date, in trust to and for the benefit of the Beneficiaries for the uses and  purposes stated herein, all of their rights, title, and interests (whether legal, beneficial, or otherwise) to the Anadarko Litigation, including any and all claims therein, free and clear of any lien, claim, encumbrance, or interest in such property of it or any other person or entity and (III) the Debtors irrevocably and absolutely transfer to the Litigation Trust the Initial Funding in trust to and for the benefit of the Beneficiaries for the uses and purposes stated herein.  Effective as of the Effective Date, the Trustee shall have all the rights, powers, and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the Litigation Trust.  The Trustee is hereby authorized to file with any governmental authority any documents necessary to establish the Litigation Trust.  The Litigation Trust shall remain subject to the continuing jurisdiction of the Bankruptcy Court.

(iv)      Transfer of Documents and Information.  The Debtors have provided their counsel with relevant documents related to the Anadarko Litigation, including more than 5 million pages of documents that have been produced in the Anadarko Litigation.  The Debtors' counsel will promptly respond to reasonable requests for documents or information from the Trustee related to the Anadarko Litigation.  To the extent documents or information related to the Anadarko Litigation or required to be available as part of the Anadarko Litigation are not available from the Debtors' counsel, Tronox shall promptly respond to reasonable requests for such documents or information (including documents or information maintained in electronic format and original documents), whether held by any of them or any of their respective agents, advisors, attorneys, accountants or other professionals, subject to the terms of paragraphs 161 through 163 of the Environmental Claims Settlement Agreement and Attachment H thereto.  In addition, Tronox shall provide the Trustee with access to the employees, agents, advisors, attorneys, accountants and professionals employed, retained or consulted by Tronox who have knowledge of matters relevant to the Anadarko Litigation, including making such parties available to provide deposition, trial or other testimony in connection with the Anadarko Litigation, subject to the terms of the paragraphs 161 through 163 of the Environmental Claims Settlement Agreement and Attachment H thereto.  After the Effective Date, paragraph 163 of the Environmental Claims Settlement Agreement and Attachment H thereto shall govern retention by Reorganized Tronox of information related to the Anadarko Litigation and the access of the Trustee thereto.  Notwithstanding the foregoing provisions of this paragraph, in the event the Tronox determines that any such provision of information violates any law or legal proceeding or

4

waives any applicable privilege, protection or immunity, including, without limitation, the attorney-client privilege or the work-product doctrine, Tronox shall take all reasonable measures to provide such information in a manner that avoids any such harm or consequence, including retention of the specific files.

(v)    <u>Appointment of Trustee</u>.  The Trustee is hereby appointed as trustee of the Litigation Trust effective as of the date hereof, to have all the rights, powers, and duties set forth herein.

(vi)    <u>Acceptance of Trust</u>.  The Trustee hereby agrees to accept and hold the Trust Property in trust for the holders of Litigation Trust Interests identified herein, subject to the terms of this Litigation Trust Agreement.

(vii)    <u>Incidents of Ownership</u>.  The Beneficiaries shall be the sole beneficiaries of the Trust and the Trust Property, and the Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein and in the Plan, including but not limited to, those powers set forth in Section 4(b).

(viii)    <u>No Reversion to Debtors or Reorganized Debtors</u>.  In no event shall any part of the Trust Property revert to or be distributed to any of the Debtors or any of the Reorganized Debtors.

(ix)    <u>Duties of Reorganized Debtors; Reimbursement of Expenses.</u>  The Reorganized Debtors shall have no responsibility or obligation with respect to the Anadarko Litigation after the Effective Date, other than (I) to comply with Article 2(a)(iv) herein; (II) to perform their obligations under, and otherwise comply with, paragraph 163 of the Environmental Claims Settlement Agreement (subject to Attachment H thereto); (III) following any transfers of cash or other property to the Litigation Trust, to provide, or cause to be provided, to the Trustee any reports or statements required under the QSF Regulations; and (IV) otherwise to use reasonable efforts to cooperate with the Trustee.

(x)    <u>Access to Environmental Liability Report and Expert</u>.  The Litigation Trust will provide the Reorganized Debtors with any final expert report prepared by Dr. Neil Ram or Roux Associates.  The Litigation Trust will also provide the Reorganized Debtors with reasonable access upon reasonable notice to Dr. Ram, provided that such access shall be at the sole expense of the Reorganized Debtors, including any fees and expenses of Dr. Ram in connection therewith.  Notwithstanding anything to the contrary contained in this Agreement or the Plan, the Reorganized Debtors shall have no right to any access to Dr. Ram or Roux Associates, to the extent that the provision of such access could (y) result in the waiver of any privileges or protections from production of documents or information in the Anadarko Litigation or (z) violate any confidentiality agreement or order or protective order.  Information deemed confidential by the Trustee and provided to Reorganized Debtors shall be treated as confidential by Reorganized Debtors in accordance with a confidentiality agreement, reasonably satisfactory in form and substance to the Trustee, to be executed by Reorganized Debtors.

(b)    Title to Trust Property.

(i)    Upon the Effective Date, title to the Trust Property shall pass to the Litigation Trust free and clear of all Claims and equity interests in accordance with section 1141 of the Bankruptcy Code.

(ii)    Upon the transfer to the Litigation Trust of the Trust Property, (I) the Trustee, on behalf of the Beneficiaries, shall succeed to all of the Debtors' and the Reorganized Debtors' rights, title, and interests in and to the Trust Property, and neither the Debtors nor the Reorganized Debtors will have any further interests or rights in or with respect to the Trust Property or the Litigation Trust, and (II) no creditor of or holder of a claim against or interest in any Debtor or any Reorganized Debtor (other than the Beneficiaries in their capacities as such) will have any claim against or recourse to the Litigation Trust or any of the Trust Property.  The Trustee on behalf of the Litigation Trust as successor-in-interest to the Debtors' Estates (for the limited purpose of fulfilling the Trustee's duties under this Litigation Trust Agreement) may execute and deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), and take, or cause to be taken, all such further action in order to evidence, vest, perfect or effectuate the transfer of the Trust Property to the Litigation Trust and consummation of the transactions contemplated hereby and by the Plan.

(iii)    With respect to all Trust Property, the Trustee will directly and indirectly be the representative of each Debtor's Estate, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, and will have the rights and powers provided for in the Bankruptcy Code, including section 1107 thereof, in addition to any rights and powers granted in this Litigation Trust Agreement and in the Plan.  The Litigation Trust will be the successor-in-interest to each of the Debtors with respect to any action that was or could have been commenced by any of the Debtors prior to the Effective Date that is a Trust Property and shall be deemed substituted for the same as the party in such litigation.  The Litigation Trust may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all claims, rights or causes of actions, suits and proceedings, whether in law or in equity, whether known or unknown, that any Debtor or its Estate may hold against any person or entity, that constitute Trust Property, in accordance with the terms of this Litigation Trust Agreement including, but not limited to, Section 4(c), below.  All actions, claims, rights, or interests constituting Trust Property are preserved and retained and may be enforced by the Litigation Trust as the representative of each Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The Trustee will be a party in interest as to all matters over which the Bankruptcy Court has jurisdiction or retains jurisdiction under the Plan insofar as such matters affect the Litigation Trust or the Trust Property.

## 3.    HOLDERS OF LITIGATION TRUST INTERESTS

(a)    Rights of Holders of Trust Interests.  Each Beneficiary shall be a holder of Litigation Trust Interests in proportion to its right to distributions from the Trust under Section 5 hereof.  The Litigation Trust Interests will be uncertificated; accordingly, distributions of Litigation Trust Interests will be accomplished solely by the entry of the names of the holders and their respective Litigation Trust Interests in the books and records of the Litigation Trust.

Each holder of a Litigation Trust Interest shall take and hold its uncertificated beneficial interest subject to all of the terms and provisions of this Litigation Trust Agreement, the Confirmation Order, and the Plan. The interest of a holder of a Litigation Trust Interest is in all respects personal property, and upon the death, insolvency or incapacity of an individual holder of a Litigation Trust Interest, such holder's interest shall pass to the legal representative of such holder of a Litigation Trust Interest and such death, insolvency or incapacity shall not terminate or affect the validity of this Litigation Trust Agreement. A holder of a Litigation Trust Interest shall have no title to, right to, possession of, management of, or control of, the Trust Property except as herein expressly provided. No surviving spouse, heir or devisee of any deceased holder of a Litigation Trust Interest shall have any right of dower, homestead, or inheritance, or of partition, or any other right, statutory or otherwise, in the Trust Property, but the whole title to all the Trust Property shall be vested in the Litigation Trust and the sole interest of the holders of Litigation Trust Interests shall be the rights and benefits given to such persons under this Litigation Trust Agreement. The record holder of Litigation Trust Interests will be entitled to participate in the rights due to a holder of Litigation Trust Interests hereunder.

(b)     No Legal Title in Holders of Litigation Trust Interests. No holder of a Litigation Trust Interest shall have legal title to any part of the Trust Property. No transfer by operation of law or otherwise of the right, title and interest of any holder of a Litigation Trust Interest in and to the Trust Property or hereunder shall operate to terminate this Litigation Trust or entitle any successor or transferee of such holder of a Litigation Trust Interest to an accounting or to the transfer to it of legal title to any part of the Trust Property.

(c)     Identification of Holders of Litigation Trust Interests. The record holders of the Litigation Trust Interests shall be recorded and set forth in a register maintained by the Trustee expressly for such purpose. Except as otherwise required by law, references in this Litigation Trust Agreement to the identification of holders and the providing of information to holders shall be read to mean holders of record as set forth in the official register maintained by the Trustee and shall not mean any beneficial owner not recorded on such official registry. Unless expressly provided herein, the Trustee may establish a record date, which it deems practicable for determining the holders for a particular purpose. The distribution of Litigation Trust Interests to the holders of Litigation Trust Interests shall be accomplished as set forth herein.

(d)     Non-Transferability of Litigation Trust Interests. The Litigation Trust Interests have not been registered pursuant to the Securities Act of 1933, as amended, or any state securities law. If the Litigation Trust Interests constitute "securities," the parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code shall apply to the Litigation Trust Interests. The Litigation Trust Interests shall not be capable of being transferred, assigned, pledged or hypothecated, in whole or in part. Any purported transfer, assignment, pledge or hypothecation of a Litigation Trust Interest or any part thereof shall constitute a violation of this Section 3(d) and shall be void ab initio.

4.     PURPOSE, AUTHORITY, LIMITATIONS, AND DUTIES

(a)     Purpose of the Litigation Trust. The Litigation Trust is established for the sole purpose of prosecuting the Anadarko Litigation and liquidating and distributing the Trust

Property, in accordance with the QSF Regulations, with no objective to continue or engage in the conduct of a trade or business. The Trustee shall, in an expeditious but orderly and reasonable manner, distribute the Trust Property, and not unduly prolong the duration of the Litigation Trust, subject to Section 4(c), below. The distribution of the Trust Property shall be accomplished by transferring such assets to the holders of Litigation Trust Interests, in the manner and in the proportions set forth herein. The Trustee shall prosecute or resolve the Anadarko Litigation with the goal of ensuring that any resolution or recovery will include cash, cash equivalents, promissory note(s) and/or marketable securities in an amount sufficient to make distributions of cash, cash equivalents, promissory note(s) and/or marketable securities to all Beneficiaries that would prefer to receive distributions in cash, cash equivalents, promissory note(s) and/or marketable securities rather than in another form of consideration, to the extent that such Beneficiaries timely advise the Trustee of such preferences.

(b)     Authority of Trustee.  In connection with the administration of the Litigation Trust, except as set forth in this Litigation Trust Agreement, including Section 4(c) hereof, and subject in all respects to the powers and rights of the Trust Advisory Board set forth herein, the Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Litigation Trust. Without limiting, but subject to, the foregoing and to Section 4(c) hereof, the Trustee shall be expressly authorized, but shall not be required, in each case upon reasonable consultation with the Trust Advisory Board, to:

(i)     hold legal title to any and all rights of the holders of the Litigation Trust Interests in or arising from the Trust Property, including, but not limited to, collecting any and all money and other property belonging to the Litigation Trust;

(ii)     perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code;

(iii)     subject to Section 4(c) below, compromise, adjust, mediate, arbitrate, sue on or defend, pursue, prosecute, abandon, or otherwise protect and enforce the rights to the Trust Property by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(iv)     subject to Section 4(c) below, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, engage in, intervene in, join, compromise, adjust, release, mediate, arbitrate, sue on or defend, counterclaim, setoff, recoup, pursue, prosecute, abandon, or otherwise deal with and settle any actions, suits, proceedings, disputes, claims, controversies, demands, causes of action, or other litigation in favor of or against the Litigation Trust, to enter into agreements relating to the foregoing, whether or not any suit is commenced or claim accrued or asserted and, in advance of any controversy, to enter into agreements regarding arbitration, adjudication or settlement thereof, all in the name of the Litigation Trust if necessary or appropriate, and institute or continue actions which were or otherwise could have been brought by any Debtor that constitute Trust Property, and prosecute or defend all litigation or appeals that are Trust Property and, when appropriate, settle such actions and claims;

(v)      determine and satisfy any and all liabilities created, incurred or assumed by the Litigation Trust, subject to Section 11(a) hereof;

(vi)      make distributions to holders of the Litigation Trust Interests;

(vii)      file, if necessary, any and all tax and information returns with respect to the Litigation Trust, comply with any withholding obligations, and pay taxes properly payable by the Litigation Trust, if any;

(viii)      assert or waive any privilege or defense on behalf of the Litigation Trust;

(ix)      pay all expenses and make all other payments relating to the Trust Property, including the liquidation and distribution thereof;

(x)      obtain insurance coverage with respect to the liabilities and obligations of the Trustee and the Trust Advisory Board under this Litigation Trust Agreement (in the form of, among other things, an errors and omissions policy or otherwise), except to the extent that the liabilities and obligations of the Trustee or members of the Trust Advisory Board are covered by other applicable insurance available from other sources, and indemnification for the Trustee and the members of the Trust Advisory Board and others as provided for in this Litigation Trust Agreement;

(xi)      subject to Section 4(c) below, retain and pay third-party providers of professional services, including, but not limited to, attorneys, accountants, and other professionals reasonably necessary to accomplish the purposes of the Litigation Trust;

(xii)      invest any moneys held as part of the Litigation Trust (including any earnings thereon or proceeds therefrom) in accordance with the terms and limitations of Section 6(c) hereof;

(xiii)      request any appropriate tax determination with respect to the Litigation Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(xiv)      open and maintain bank accounts and deposit funds, draw checks and make disbursements in accordance with the Plan and this Litigation Trust Agreement;

(xv)      enforce, waive, assign or release rights, privileges or immunities of any kind;

(xvi)      seek any relief from, or resolution of, any disputes by the Bankruptcy Court;

(xvii)      appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to the Plan (insofar as it affects the Litigation Trust or the Trust Property), the Litigation Trust, the Trust Advisory Board, or the Anadarko Litigation;

(xviii)  establish and maintain a web site for the purpose of providing notice of the Litigation Trust activities in addition to notice by other means or, to the extent specifically authorized by any given holder of Litigation Trust Interests, in lieu of notice by other means, subject to providing notice to those holders referred to in Section 14(f) hereof;

(xix)   file any and all documents and take or refrain from taking any and all actions the Trustee reasonably deems necessary for the continuation, protection, distribution, liquidation, and maximization of the Trust Property consistent with the purposes hereof; and

(xx)   do any and all things necessary to accomplish the purposes of this Litigation Trust Agreement.

(c)    Limitations on Trustee's Authority.  Notwithstanding anything to the contrary contained in the Plan, the Confirmation Order or this Litigation Trust Agreement:

(i)    Settlement.

(I)    The Trustee may not settle, compromise, abandon, dismiss, release, submit to binding arbitration  or mediation, or waive, in whole or in part, the Anadarko Litigation, or any claims, rights, causes of action, appeals, or collection efforts arising thereunder or in connection therewith, without the consent of (A) the United States, after consultation with the Beneficiaries and the Government Environmental Entities, and (B) a majority of the Trust Advisory Board.  (Any such settlement, compromise, abandonment, dismissal, release, submission, or waiver referred to herein as a "Settlement").  For avoidance of doubt, the provisions of this subsection 4(c)(i)(I) are in addition to, and not in lieu of, the limitations contained in subsections 4(c)(i)(II) and 4(c)(i)(IV).

(II)    In the event that the Trustee proposes to enter into any Settlement involving the payment (in whole or part) of consideration other than cash, cash equivalents, promissory note(s) and/or marketable securities, the Trustee shall prepare a written plan, prior to entering into such Settlement, describing the manner in which Trust Property would thereafter be distributed pursuant to Section 5 hereof if the Settlement were entered into (the "Distribution Plan").  As part of a Distribution Plan, the Trustee shall include a valuation of any non-monetary consideration that would be part of the Settlement or distributed under the Distribution Plan, and shall consider any non-monetary consideration to be paid or provided directly to a Beneficiary under the Settlement as if it were a distribution from the Trust.  The Distribution Plan shall be subject to the unanimous approval of the Trust Advisory Board, except as provided in the follow section 4(c)(i)(III).  To the extent that a Distribution Plan would provide for any distribution to be made to a Beneficiary in a form other than cash, cash equivalents, promissory note(s) and/or marketable securities, the Trustee must obtain the written consent of that Beneficiary before entering into such Settlement.  For avoidance of doubt, the

provisions of this subsection 4(c)(i)(II) are in addition to, and not in lieu of, the limitations contained in subsections 4(c)(i)(I) and 4(c)(i)(IV).

(III)    In event that the Trustee has prepared a Distribution Plan as provided in the preceding subsection 4(c)(i)(II); the Trust Advisory Board fails to approve unanimously such Distribution Plan; and not more than one member of the Trust Advisory Board voted against the Distribution Plan, then the At-Large Member of the Trust Advisory Board shall cast a vote in favor or against the Distribution Plan based on whether it believes that the terms of the Distribution Plan, including the valuation of the non-monetary consideration, are reasonable.  If the At-Large Member determines that such terms are reasonable, then it shall vote in favor of the Distribution Plan, in which case the Trust Advisory Board shall be deemed to have unanimously approved the Distribution Plan pursuant to the preceding subsection 4(c)(i)(II).

(IV)    The Trustee shall not enter into any Settlement involving the payment (in whole or part) of consideration other than cash unless such Settlement includes a cash amount greater than or equal to (i) the lesser of (x) $74 million in cash (or, if the Settlement is after a second trial on the merits has occurred, $84 million in cash) and (y) any amount that the Trustee and lead litigation counsel for the Trust ("Trust Litigation Counsel") otherwise jointly agree to be the maximum amount that may be due to Trust Litigation Counsel under the Special Fee Arrangement between the Trust and Trust Litigation Counsel (the "Special Fee Arrangement") referred to in Article IV.C.5 of the Plan, plus (ii) an amount of cash sufficient to pay any incurred or reasonably anticipated liabilities of the Trust, less (iii) any amount of cash (or cash equivalents) that is reasonably anticipated to be Trust Property at the conclusion of the Anadarko Litigation.  For avoidance of doubt, the provisions of this subsection 4(c)(i)(IV) are in addition to, and not in lieu of, the limitations contained in subsections 4(c)(i)(I) and 4(c)(i)(II).

(V)    No Settlement involving the payment (in whole or part) of consideration other than cash shall become effective until the lesser of (a) the net cash amount referred to in subsection 4(c)(i)(IV)(i)-(iii), or (b) the cash amount referred to in subsection 4(c)(i)(IV)(i), has been deposited in escrow to be paid to Trust Litigation Counsel to the extent thereafter determined to be due under the Special Fee Arrangement, and such deposit is confirmed to Trust Litigation Counsel.

(ii)    Any engagement, compensation or indemnification on behalf of the Litigation Trust of consultants, agents, employees or other professional persons to assist the Trustee with respect to the Trustee's responsibilities, powers and duties under this Litigation Trust Agreement (other than Trust Litigation Counsel or conflicts counsel engaged in connection with prosecuting or resolving the Anadarko Litigation) shall require the prior written consent of the Trust Advisory Board.  All attorney services in connection with prosecuting or resolving the

Anadarko Litigation shall be provided pursuant to the terms of the Special Fee Arrangement. Subject to any contrary provision in the Special Fee Arrangement, the Special Fee Arrangement may be amended or replaced by the Trustee only with the consent of the Trust Advisory Board and the United States. Notwithstanding the foregoing, the Trustee may (I) approve the engagement of conflicts counsel by Trust Litigation Counsel, to be paid as provided by the Special Fee Arrangement, (II) engage counsel for the purpose of rendering advice on behalf of the Litigation Trust on any terms deemed reasonable, in writing, by a majority of the Trust Advisory Board, and (III) call upon attorneys that are employed by or members of the law firm of which the Trustee is a member to conduct research, analyze issues of fact and law, render opinions, provide consultation and perform other tasks as necessary and appropriate in the judgment of the Trustee to fulfill the Trustee's duties to prosecute or resolve the Anadarko litigation, safeguard the Trust and the assets of the Trust, and perform other duties as set forth in the Litigation Trust Agreement, to be paid as provided in subsection 6(e)(i), below. The Trustee shall take no action inconsistent with Section 13, hereof.

(iii)    The Trustee shall not, and shall not be authorized to, engage the Litigation Trust in any trade or business and shall take (I) such actions consistent with the orderly distribution of the Trust Property as are required by applicable law and (II) such actions permitted hereunder; *provided*, *however*, that the Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Litigation Trust, the Tort Claims Trust, and the Environmental Response Trusts as qualified settlement funds within the meaning of the QSF Regulations or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(iv)    The Litigation Trust shall not hold any operating assets of a going concern directly and shall not hold 50% or more of the stock (in either vote or value) of any entity that is treated as a corporation for federal income tax purposes, nor be the sole member of a limited liability company, nor have any interest in an entity that is treated as a partnership for federal income tax purposes, unless such stock, membership interests or partnership interest was obtained involuntarily or as a matter of practical economic necessity in order to preserve the value of the Trust Property, or, in any case, such corporation, company or partnership does not hold operating assets of a going business.

(d)    Books and Records.  The Trustee shall maintain in respect of the Litigation Trust and the holders of Litigation Trust Interests books and records relating to the Trust Property and income of the Litigation Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Litigation Trust in such detail and for such period of time as may be necessary to enable it to make a full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Litigation Trust. Except as expressly provided herein, nothing in this Litigation Trust Agreement requires the Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust or as a condition for managing any payment or distribution out of the Trust Property. Members of the Trust Advisory Board shall have the right to examine the Trust's books and records upon the affirmative vote of the Trust Advisory Board. Holders of the Litigation Trust Interests shall have the right upon thirty (30) days' prior written notice delivered to the Trustee to inspect such books and records (including financial statements), subject to the Trustee's right to deny access in a reasonable

effort to preserve privileged or confidential information or protect litigation or other strategies and provided that, if so requested, such holder shall have entered into a confidentiality agreement reasonably satisfactory in form and substance to the Trustee.  Any books and records determined by the Trustee, in its sole discretion, not to be reasonably necessary for administering the Litigation Trust or for the Trustee's compliance with the provisions of this Litigation Trust Agreement may, to the extent not prohibited by applicable law, be destroyed.

(e)    Additional Powers.  Except as otherwise set forth in this Litigation Trust Agreement or in the Plan, and subject to the Treasury Regulations governing qualified settlement funds and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Trustee may control and exercise authority over the Trust Property and over the protection, conservation, and disposition thereof.  No person dealing with the Litigation Trust shall be obligated to inquire into the authority of the Trustee in connection with the protection, conservation, liquidation, or disposition of the Trust Property.

(f)    Reporting Duties of the Trustee.

(i)    In addition to the reporting duties of the Trustee under Section 9 hereof, the Trustee shall file any returns for the Litigation Trust required by the QSF Regulations, including satisfying the reporting requirements under Treasury Regulations Section 1.671-4.

(ii)    The Trustee shall pay, out of the Trust Property, any taxes imposed on the Litigation Trust or the Trust Property.

(iii)    The Trustee may request an expedited determination of taxes of the Litigation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.  The Trustee shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Litigation Trust that are required by any governmental unit.  Commencing thirty (30) days after the Effective Date, and continuing quarterly thereafter until the Litigation Trust is terminated, the Trustee shall report in writing to the Trust Advisory Board as to the status of the Anadarko Litigation and all other matters that materially affect the Litigation Trust or the Trust Property.  In addition, the Trustee shall communicate with members of the Trust Advisory Board and with the Beneficiaries regarding all matters that may materially affect the Litigation Trust or the Trust Property.  Notwithstanding anything to the contrary contained herein, the Trustee shall not provide or disclose any information that the Trustee reasonably believes is privileged or otherwise protected from discovery without first ensuring that the inclusion of that information will not waive any such privilege or protection.

(iv)    The Trustee shall provide the Reorganized Debtors, as transferors to the Litigation Trust, with any statements or reports required by the QSF Regulations or Treasury Regulation § 1.671-4, to enable the Reorganized Debtors to calculate their share of the Litigation Trust's tax obligations and attributes.

13

(g)     Compliance with Laws.  Any and all distributions of Trust Property and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

(h)     Tax Treatment.

(i)     Qualified Settlement Fund.  The Litigation Trust is intended to be treated for U.S. federal income tax purposes as a "qualified settlement fund" as described within the QSF Regulations.  Accordingly, subject to definitive guidance from the Internal Revenue Service or a judicial decision to the contrary, it is the intention of all Parties and the Beneficiaries hereto that, for all U.S. federal income tax purposes, the transfer of assets to the Litigation Trust will be treated as a transfer to a trust satisfying the requirements of the QSF Regulations by Tronox Worldwide LLC, as transferor, for distribution to the holders of (I) the Tort Claims Trust's beneficial interests in the Litigation Trust, (II) the Multistate Trust's beneficial interests in the Litigation Trust, (III) the Cimarron Trust's beneficial interests in the Litigation Trust, (IV) the Nevada Trust's beneficial interests in the Litigation Trust, (V) the Savannah Trust's beneficial interests in the Litigation Trust, (VI) the West Chicago Trust's beneficial interests in the Litigation Trust; and (VII) the other Beneficiaries' beneficial interests in the Litigation Trust.

(ii)     Grantor Trust Election.  To the extent permitted by law, Tronox will elect to treat the Litigation Trust as a grantor trust, solely for tax purposes, pursuant to the QSF Regulations.  The Trustee will reasonably cooperate with such election.

## 5.     DISTRIBUTIONS

(a)     On any date determined by the Trustee with the consent of the Trust Advisory Board, or on any date directed by unanimous vote of the Trust Advisory Board, and in any event promptly upon receipt of any payment or distribution received in connection with any judgment or settlement in the Anadarko Litigation, the Trustee shall distribute from the Litigation Trust the Trust Property Then Available For Distribution (as defined below) to the holders of the Litigation Trust Interests, as described in this Section 5.

(i)     Initial Distribution.  The Trustee shall make an initial distribution (the "Initial Distribution") from the Trust Property Then Available For Distribution as follows:

(I)     First, an amount equal to 88% of the Initial Funding shall be distributed in the proportions described in Schedule 1 to the Beneficiaries listed therein, for the purposes described in Paragraph XII of the Environmental Claims Settlement Agreement.

(II)     Second, an amount equal to 12% of the Initial Funding less the Interest Adjustment (as defined below), if a negative number, shall be distributed in the proportions described in Schedule 1 to the Beneficiaries listed therein, for the purposes described in Paragraph XII of the Environmental Claims Settlement Agreement.

(III)     Third, if the Interest Adjustment is negative, an amount equal to the Interest Adjustment shall be distributed to the Tort Claims

Trust as part of the Initial Distribution for payment to the Holders of Tort Claims in accordance with the Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures.

(IV)    The Interest Adjustment shall be (x) the amount of interest that would have accrued at an annual percentage rate of interest of 25% on a principal amount of 12% of the Initial Funding, compounded annually beginning on the Effective Date and ending on the date of the Initial Distribution, less (y) $1,750,000.

(ii)    <u>Additional Distributions</u>.  After the Initial Distribution has been completed, any and all additional distributions shall be made on a pro rata basis as follows:

(I)    88% of the Trust Property Then Available For Distribution remaining after the Initial Distribution, plus the Interest Adjustment, if positive, shall be distributed in the proportions described in Schedule 1 to the Beneficiaries listed therein, for the purposes described in Paragraph XII of the Environmental Claims Settlement Agreement.

(II)    12% of the Trust Property Then Available For Distribution, remaining after the Initial Distribution, less the Interest Adjustment if positive, shall be distributed to the Tort Claims Trust for payment to the Holders of the Tort Claims in accordance with the Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures.

(iii)    Prior to making any distribution, the Trustee shall, in consultation with and subject to the approval of the Trust Advisory Board, determine such amounts (the "<u>Expense Reserve</u>") that are (I) reasonably necessary to meet liabilities (whether fixed or contingent), (II) necessary to pay reasonable expenses (including, but not limited to, any fees to professionals retained by the Litigation Trust, including any payments due under the Special Fee Arrangement or the Trustee Term Sheet and Engagement Letter, and any taxes imposed on the Litigation Trust or in respect of the Trust Property), and (III) necessary to satisfy other reasonable liabilities reasonably incurred by the Litigation Trust in accordance with the Plan or this Litigation Trust  Agreement, taking into account, for purposes of the foregoing, the availability, where applicable, of cash already on hand or scheduled to be received to satisfy such liabilities or expenses.  "<u>Trust Property Then Available For Distribution</u>" as of any distribution date shall be determined by the Trustee in advance of each distribution date by subtracting the Expense Reserve from the then available Trust Proceeds.  The Trustee may withhold from amounts distributable to any person any and all amounts, determined in the Trustee's reasonable sole discretion (based on advice of counsel or accountants, as applicable), required by any law, regulation, rule, ruling, directive, or other governmental requirement.

(iv)    All distributions made by the Trustee shall be payable to the holders of the Litigation Trust Interests as of the 15th day prior to the date scheduled for the distribution, unless such day is not a Business Day, in which case such day shall be the following Business Day (the "<u>Record Date</u>").  If the distribution shall be in cash, the Trustee shall

distribute such cash by wire, check, or such other form as the Trustee deems appropriate under the circumstances.

(v)    In the event that the resolution of the Anadarko Litigation, other than pursuant to a Settlement (which shall be governed in the first instance by Section 4), results in the payment (in whole or part) of consideration other than cash, cash equivalents, promissory note(s) and/or marketable securities, the Trustee shall prepare a Distribution Plan.  As part of a Distribution Plan, the Trustee shall include a valuation of any non-monetary consideration that would be distributed under the Distribution Plan, and shall consider any non-monetary consideration to be paid or provided directly to a Beneficiary as if it were a distribution from the Trust.

(I)    The Distribution Plan shall be subject to the unanimous approval of the Trust Advisory Board.

(II)    In event that the Trustee has prepared a Distribution Plan as provided in this subsection 5(a)(v); the Trust Advisory Board fails to approve unanimously such Distribution Plan as provided in subsection 5(a)(v)(I); and not more than one member of the Trust Advisory Board votes against the Distribution Plan, then the At-Large Member of the Trust Advisory Board shall cast a vote in favor or against the Distribution Plan based on whether it believes that the terms of the Distribution Plan, including the valuation of the non-monetary consideration, are reasonable. If the At-Large Member determines that such terms are reasonable, then it shall vote in favor of the Distribution Plan, in which case the Trust Advisory Board shall be deemed to have unanimously approved the Distribution Plan pursuant to the preceding subsection 5(a)(v)(I).

(III)    In the event that the Trust Advisory Board either rejects or does not unanimously approve, and is not deemed to have unanimously approved, the Distribution Plan prepared by the Trustee pursuant to subsections 5(a)(v), within 45 days following the Trustee's submission of the Distribution Plan to the Trust Advisory Board, the Trustee may apply to the Bankruptcy Court for an order approving the Distribution Plan, with such modifications, if any, in whole or part as the Bankruptcy Court deems consistent with the rights of Holders of Litigation Trust Interests.

(vi)    If the Trustee has prepared, and the Trust Advisory Board has unanimously approved, or is deemed to have unanimously approved, a Distribution Plan pursuant to subsection 4(c)(i)(II) above or subsection, 4(c)(i)(III), 5(a)(v)(I) or 5(a)(v)(II) above, or the Bankruptcy Court has entered an order approving a Distribution Plan pursuant to subsection 5(a)(v)(III), and the Settlement or other resolution to which that Distribution Plan relates goes into effect, then the Trustee shall thereafter conform distributions of Trust Property Then Available For Distribution to the terms of the Distribution Plan.  Notwithstanding anything to the contrary in this paragraph, the Trustee may make distributions of Trust Property inconsistent with the Distribution Plan to the extent authorized by the joint written instruction of all Beneficiaries.

(vii)    In the event that a Distribution Plan calls for the distribution of cash equivalents, promissory note(s) and/or marketable securities to a Beneficiary, the Trust will, at the request of the Beneficiary, use reasonable efforts to reduce such cash equivalents, promissory note(s) and/or marketable securities to cash prior to distributing such assets to that Beneficiary.  In such event, the distribution to the Beneficiary shall be limited to the amount resulting from reducing such assets to cash, net of any fees or expenses associated with reducing such assets to cash.

## 6.    THE TRUSTEE

(a)    <u>Generally</u>.  The Trustee will initially be John C. Hueston  The Trustee shall serve as trustee until its successor shall have been appointed in accordance with Section 7 hereof or until resignation, death or removal.  The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Litigation Trust and not otherwise, except that the Trustee may deal with the Trust Property for its own account as permitted by Section 6(e) hereof.

(b)    <u>Responsibilities of Trustee</u>.  The Trustee shall prosecute, settle, or otherwise resolve the Anadarko Litigation, subject to the provisions of Section 4(c), timely distribute any Trust Property Then Available For Distribution in accordance with the terms set forth herein, and not unduly prolong the duration of the Litigation Trust.  In so doing, the Trustee will exercise its reasonable business judgment in prosecuting the Anadarko Litigation.  Except as otherwise expressly set forth in this Litigation Trust Agreement, and subject in all respects to the provisions of Sections 4(c), 8 and 13, the Trustee shall have absolute discretion to pursue or not to pursue any and all claims, rights, or causes of action, as it determines are in the best interests of the holders of the Litigation Trust Interests and consistent with the purposes of the Litigation Trust, and shall have no liability for the outcome of its decision.  Subject to the provision of Section 4(c), the Trustee may incur any reasonable and necessary expenses in performing its duties under this Litigation Trust Agreement.

(c)    <u>Investment and Safekeeping of Trust Property</u>.  The right and power of the Trustee to invest Trust Property, the proceeds thereof, or any income earned by the Litigation Trust, shall be limited to the right and power that a qualified settlement fund, within the meaning of the QSF Regulations, is permitted to hold, pursuant to the Treasury Regulations and any IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

(d)    <u>Authorization to Expend and Reserve Trust Property</u>.  The Trustee may expend and reserve the Trust Property (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the Trust Property during liquidation, (b) to pay all administrative expenses of the Litigation Trust (including, but not limited to, any taxes imposed on the Litigation Trust), and (c) to satisfy all other liabilities incurred or assumed by the Litigation Trust (or to which the Trust Property are otherwise subject), including obligations under the Special Fee Arrangement, in accordance with this Litigation Trust Agreement.

(e)    <u>Expense Reimbursement and Compensation.</u>

(i)    The Trust Property shall be subject to the claims of the Trustee and the costs and expenses of the Litigation Trust, including, but not limited to, the reasonable fees and reasonable expenses of the Trustee and its retained professionals, representatives, agents, and employees, including obligations under the Special Fee Arrangement.  The Trustee shall be entitled to reimburse itself out of any available cash in the Litigation Trust for its actual reasonable out-of-pocket expenses and for any and all losses, liabilities, expenses, or damages that the Trustee may, in good faith and without willful misconduct, gross negligence, or fraud, sustain in the exercise and performance of any of the powers and duties of the Trustee under this Litigation Trust Agreement.  As compensation for the performance of its duties, the Trustee will be entitled to compensation pursuant to that certain engagement letter ("Litigation Trustee Engagement Letter") dated February 14, 2011; provided, however, that the Trustee shall not be entitled to any compensation that, taken together with other Trust expenditures, exceeds the applicable Authorized Expenditure Level and permited departures therefrom established pursuant to subsection 6(h), and nothing in the Litigation Trustee Engagement Letter will be deemed to modify or limit any provision of this Litigation Trust Agreement, including but not limited the authority of the Trust Advisory Board to remove the Trustee for cause pursuant to subsection 8(ii).  The Litigation Trustee Engagement Letter may be modified only by joint agreement of the Trustee and the Trust Advisory Board.  The Trustee, its professionals (other than those of its attorneys retained in accordance with the Special Fee Arrangement), its agents, and its employees may be compensated on a *nunc pro tunc* basis, for work performed prior to the Effective Date, upon the agreement of the Trust Advisory Board.  Notwithstanding anything herein, nothing in this paragraph shall authorize the payment of (x) any fees, costs or expenses incurred in connection with the prosecution of the Anadarko Litigation prior to the Effective Date or (y) any fees, costs, or expenses to the attorneys for the Litigation Trust not specifically provided for in the Special Fee Arrangement (except as provided at 4(c)(ii), above).

(ii)    If the cash in the Litigation Trust shall be insufficient to pay the expenses and liabilities of the Trust, including but not limited to any obligation to compensate and reimburse the Trustee, the Trust Advisory Board or any members thereof, or  any professionals authorized to be compensated or reimbursed by this Litigation Trust Agreement for any amounts to which they are entitled, then the Trustee is hereby authorized, with the written approval of the Trust Advisory Board, to reduce to cash that portion of the Trust Property necessary to effect such compensation and reimbursement.

(f)    No Bond.  The Trustee shall serve without bond.

(g)    Confidentiality.  The Trustee and all members of the Trust Advisory Board shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Trust Property relates or of which it has become aware in its capacity as Trustee, except as otherwise required by law.

(h)    Budget.  On or as soon as reasonably practicable (and in any event within 30 days) after the Effective Date, and therafter on a quarterly basis, the Trustee shall prepare and deliver to the United States and to the members of the Trust Advisory Board a budget for the operation of the Litigation Trust (the "Budget").  The Budget shall state a maximum amount of expenditures during such quarter (excluding any expenditures pursuant to the Special Fee Arrangement with Trust Litigation Counsel) that the Trustee seeks authority to make prior to

seeking further approval from the Trust Advisory Board (the "Authorized Expenditure Level"). The Trustee may also from time to time submit to the Trust Advisory Board an amended Budget, with an amended Authorized Expenditure Level, for approval or rejection by the Board.  The Trust Advisory Board shall approve such Authorized Expenditure Level provided that the Trustee has presented reasonable grounds for it.  The Trust Advisory Board shall approve or reject in writing the Authorized Expenditure Level contained in such Budget or amended Budget no later than its next meeting occurring at least five business days after the submission of the Budget or amended Budget; *provided, however*, that where the circumstances of the Anadarko Litigation require it, the Trustee may designate an amendment as urgent, in which case the Trust Advisory Board shall act on the amendment no later than five business days after its submission. If the Trust Advisory Board fails to approvce or disapprove a proposed Authorized Expenditure Level within the time periods provided by this subsection, the Authorized Expenditure Level shall be deemed approved.  The Trustee may not exceed such Authorized Expenditure Level for a given quarter by greater than 15% without obtaining further approval in writing from the Board; *provided, however*, that the Trustee may exceed an Authorized Expenditure Level for a given quarter by more than 15% if the total amount of expenses incurred by the Trustee on a cumulative, aggregate basis from the inception of the Trust through the last business day of the quarter does not exceed the total cumulative, aggregate amount of the Authroized Expenditure Levels over the same period.  The Authorized Expenditure Level as of the Effective Date shall be deemed to be $250,000, from the inception of the Trust until such time as the Trust Advisory Board first approves an Authorized Expenditure Level for the Trustee.

(i)    Tax Reporting.  The Trustee shall be the "administrator" (as defined in the QSF Regulations) of the Litigation Trust and shall meet, without limitation, all requirements necessary to qualify and maintain qualification of the Litigation Trust as a qualified settlement fund within the meaning of the QSF Regulations, and take no action that could cause the Litigation Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations.

7.    **SUCCESSOR TRUSTEE**

(a)    Removal.  The Trustee may be removed and replaced by the Trust Advisory Board for cause by written consent of a majority of the members (excluding the At-Large Member) or at a meeting of the Trust Advisory Board called for the purpose of removing the Trustee.  For the purpose of the preceding sentence, "cause" shall mean willful misconduct, fraud, or gross negligence; any negligence, even if not rising to the level of gross negligence, that risks adversely affecting the success of the Anadarko Litigation; any seriously or repeatedly deficient performance of duties under the Litigation Trust Agreement; or any violation of the provisions of this Litigation Trust Agreement.  Such removal shall become effective on the date action is taken.

(b)    Resignation.  The Trustee may resign by giving not less than ninety (90) days' prior written notice thereof to the Trust Advisory Board.  Such resignation shall become effective on the later to occur of: (i) the day specified in such notice, and (ii) the appointment of a successor Trustee by the Trust Advisory Board and the acceptance by such successor of such appointment.  If a successor Trustee is not appointed or does not accept its appointment within

ninety (90) days following delivery of notice of resignation, the Trustee may petition the Bankruptcy Court for appropriate relief.

(c)    Appointment of Successor Trustee.  In the event of the death (in the case of a Trustee that is a natural person), dissolution (in the case of a Trustee that is not a natural person), resignation pursuant to Section 7(b) hereof, incompetency, or removal pursuant to Section 7(a) hereof, a successor Trustee may be appointed either by (a) unanimous vote of the Trust Advisory Board, subject to the approval of the United States in consultation with the Beneficiaries, or (b) order of the Bankruptcy Court.  Such vote or order shall specify the date on which such appointment shall be effective.  Every successor Trustee appointed hereunder shall execute, acknowledge, and deliver to the Bankruptcy Court and to a removed or resigning Trustee (or the representative of a deceased or dissolved Trustee) an instrument accepting the appointment under this Litigation Trust Agreement and agreeing to be bound hereto, and thereupon the successor Trustee, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of such removed, resigning, deceased, or dissolved Trustee pursuant to this Litigation Trust Agreement and the Plan; *provided*, *however*, that a removed or resigning Trustee (or the representative of a deceased or dissolved Trustee) shall, nevertheless, when requested in writing by the successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee under the Litigation Trust, or confirming the conveyance and transfer thereto of, all the estates, properties, rights, powers, and privileges of such predecessor Trustee.

## 8.    TRUST ADVISORY BOARD

(a)    Trust Advisory Board.

(i)    The Trust Advisory Board shall be comprised of five members appointed to serve on the Trust Advisory Board by the Bankruptcy Court, and one member (the "At-Large Member") selected as provided in subsection 8(a)(i)(II), below.

(I)    Initially, the members other than the At-Large Member shall be the five individuals or entities listed on the attached Schedule 2, who are deemed appointed by the Bankruptcy Court's approval of this Litigation Trust Agreement.  Two members shall be deemed to have been recommended to the Bankruptcy Court for appointment jointly by the United States and the Beneficiaries other than the Multistate Trust, the Nevada Trust, and the Tort Claims Trust, and one member shall be deemed to have been recommended to the Bankruptcy Court for appointment by each of the Multistate Trust, the Nevada Trust, and the Tort Claims Trust, in each case as indicated on the attached Schedule 2. (The Beneficiary or Beneficiaries deemed to be recommending such member referred to as the "Recommending Beneficiary.")  Each of these members of the Trust Advisory Board shall owe fiduciary duties only to the Recommending Beneficiary or Beneficiaries for that member.  For the avoidance of doubt, the nominees of the Multistate Trust, the Nevada Trust, and the Tort Claims Trust shall have fiduciary duties only to the beneficiaries of the Multistate Trust, the Nevada Trust, and the Tort

Claims Trust, respectively. The relationship between Board members and Recommending Beneficiaries is not an attorney-client relationship, and the fiduciary duties governing activities of Board members under this Litigation Trust Agreement will not preclude Board members who are attorneys, or the law firms of which they are members or with which they are associated, from representing clients with interests adverse to the Recommending Beneficiaries on unrelated matters.

(II)     The At-Large Member shall be chosen as soon as practicable after the Effective Date by the unanimous vote of the other members of the Trust Advisory Board; provided that if the Trust Advisory Board fails to select an At-Large Member by unanimous vote within 90 days of the Effective Date, the Trustee shall move the Bankruptcy Court to appoint the At-Large Member. In the event the Trustee makes a motion to appoint the At-Large Member, as described in the preceding sentence, the Bankruptcy Court shall not appoint any person or entity to serve as such At-Large Member unless such person is disinterested within the meaning of Section 327 of the Bankruptcy Code. Immediately after being selected by the members of the Trust Advisory Board or the Bankruptcy Court, the At-Large Member shall execute, acknowledge, and deliver to the Trustee and to the other members of the Trust Advisory Board, and file with the Bankruptcy Court, an instrument accepting its appointment as the At-Large Member under this Litigation Trust Agreement and agreeing to be bound hereto, and thereupon, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the At-Large Member pursuant to this Litigation Trust Agreement. The At-Large Member shall be an entity or person qualified to review environmental analyses and shall have access to the final expert reports of Dr. Ram, and, to the extent not inconsistent with protecting documents and information from disclosure in the Anadarko Litigation, shall also have access to Dr. Ram and any other work product prepared by Dr. Ram. If necessary, the At-Large Member may incur up to $50,000 in expenses in reviewing available environmental analyses and conferring with Dr. Ram. The At-Large Member shall owe fiduciary duties to all Beneficiaries. The At-Large Member shall be a non-voting member of the Trust Advisory Board (except as provided in subsections 4(c)(i)(III) and 5(a)(v)(II)), and the rights, power and authority of the At-Large Member under this Litigation Trust Agreement shall be limited to (i) the right to attend and participate, other than by voting, in any meeting of the Trust Advisory Board, to the same extent as other members of the Trust Advisory Board and (ii) the rights, power and authority to vote for or against a Distribution Plan as and to the extent and based on the factors set forth in subsections 4(c)(i)(III) and 5(a)(v)(II). Without limiting the foregoing, the At-Large Member shall not be considered a "member of the Trust Advisory Board" for the purpose of the first two sentences of subsection 8(e)(i) or for the purpose of subsections 8(e)(ii) and 8(f), below.

(ii)      The Trust Advisory Board shall have the authority and responsibility to oversee, review, and guide the activities and performance of the Trustee and shall have the authority to remove and replace the Trustee at any time for cause by written consent of a majority of the members (excluding the At-Large Member) or at a meeting of the Trust Advisory Board called for the purpose of removing the Trustee.  For the purpose of the preceding sentence, "cause" shall mean willful misconduct, fraud, or gross negligence; any negligence, even if not rising to the level of gross negligence, that risks adversely affecting the success of the Anadarko Litigation; any seriously or repeatedly deficient performance of duties under the Litigation Trust Agreement; or any violation of the provisions of this Litigation Trust Agreement.  The Trustee shall consult with and provide information to the Trust Advisory Board in accordance with and pursuant to the terms of this Litigation Trust Agreement.  The Trust Advisory Board may direct the Trustee to take any action or not take any action with respect to Trust Property or otherwise so long as such direction is consistent with the Plan; the Environmental Claims Settlement Agreement as it exists on the Effective Date and as modified by the First Amendment to the Consent Decree and Environmental Settlement Agreement ("First Amendment"); the Tort Claims Trust Agreement as it exists on the Effective Date; the Special Fee Arrangement; this Litigation Trust Agreement; and the purposes of the Litigation Trust; *provided*, *however*, that the Trustee, upon advice of counsel, shall refuse to follow any direction that conflicts with law, the Plan, the Environmental Claims Settlement Agreement as it exists on the Effective Date and as modified by the First Amendment, the Tort Claims Trust Agreement as it exists on the Effective Date, the Special Fee Arrangement, this Litigation Trust Agreement, or the purposes of the Litigation Trust; *provided further that* the Trust Advisory Board may not direct the Trustee to undertake any action that the Trustee is prohibited, by Section 4(c) or otherwise, to take under this Litigation Trust Agreement; and *provided further* that nothing in this Litigation Trust Agreement shall be interpreted to authorize the Trust Advisory Board to direct the Trustee to take any action that this Litigation Trust Agreement conditions (i) upon the joint agreement of the Trustee and the Trust Advisory Board or (ii) upon Trust Advisory Board approval of a proposal made by the Trustee, including but not limited to the provisions of subsection 4(c)(i).  Members of the Trust Advisory Board shall make themselves reasonably available for consultation by their respective Recommending Beneficiaries.

(iii)      The Trust shall pay all reasonable out-of-pocket fees and expenses incurred by any member of the Trust Advisory Board (other than the fees, costs or expenses of attorneys, professionals or other advisors) and shall reimburse all such members for any and all losses, liabilities, expenses, or damages that such members may, in good faith and without willful misconduct, gross negligence, or fraud, sustain in the exercise and performance of any of the powers and duties of the Trust Advisory Board under this Litigation Trust Agreement.  The Trust shall also pay a stipend to each member of the Trust Advisory Board in the amount of $5,000 per annum; *provided* that any member of the Trust Advisory Board who also serves as a trustee, contractor, or employee of the Multistate Trust, Nevada Trust, or Tort Claims Trust shall not receive a stipend; *provided further, however*, that the amount of said stipend may be increased or decreased, or the stipend may be made payable to a Trust Advisory Board member who is a trustee, contractor, or employee of the Multistate Trust, Nevada Trust, or Tort Claims Trust, if the Trustee and the Trust Advsiory Board (by unanimous vote) conclude that such change is in the best interest of the Trust and the Trust's Beneficiaries.

(iv)    The Trust Advisory Board shall have no obligation or responsibility to retain, engage or consult any attorneys, professionals or other advisors, and in the event the Trust Advisory Board elects to retain, engage or consult any such persons, the Trust shall have no obligation to pay any of the fees, costs or expenses of such persons, (x) except as provided in subsection 8(a)(i)(II), above, and (y) except that the Trust shall pay up to a total of $50,000 (or such higher amount jointly agreed by the Trustee and the unanimous vote of the Trust Advisory Board) for the fees, costs or expenses of any attorneys engaged by unanimous vote of the Trust Advisory Board at reasonable rates to advise the Trust Advisory Board on its rights and responsibilities under this Litigation Trust Agreement.

(v)    The Trust Advisory Board shall have the right to cause the Litigation Trust to purchase insurance coverage with respect to the liabilities and obligations of its members under this Litigation Trust Agreement, except to the extent that such liabilities and obligations are covered by other insurance applicable to the service of such members of the Trust Advisory Board.

(vi)    At its first meeting, the Trust Advisory Board shall select a chairman or chairwoman from among the members (other than the At-Large Member) of the Trust Advisory Board.  Such selection shall be by majority vote of the Trust Advisory Board, and such chairman or chairwoman may be removed and replaced as chairman or chairwoman by another member of the Trust Advisory Board, at any time and without cause, by a subsequent majority vote of the Trust Advisory Board.  Such chairman or chairwoman shall preside over the meetings of the Trust Advisory Board, but otherwise shall have no additional rights or privileges as a result of his or her status as chairman or chairwoman.

(b)    <u>Regular Meetings of the Trustee and the Trust Advisory Board</u>.  Meetings of the Trustee and the Trust Advisory Board are to be held with such frequency and at such place as the Trustee and the Trust Advisory Board may determine in their sole discretion, but in no event shall such meetings be held less frequently than quarterly.  Such meetings (other than the first meeting of the Trust Advisory Board) should be held telephonically as authorized by subsection 8(e)(i), when practicable.

(c)    <u>Special Meetings of the Trustee and the Trust Advisory Board</u>.  Special meetings of the Trustee and the Trust Advisory Board may be held whenever and wherever called for either by the Trustee or any member of the Trust Advisory Board.  Such meetings (other than the first meeting of the Trust Advisory Board) should be held telephonically as authorized by subsection 8(e)(i), when practicable.

(d)    <u>Notice of, and Waiver of Notice for, Trustee and Trust Advisory Board</u>. Notice of the time and place (but not necessarily the purpose or all of the purposes) of any regular or special meeting will be given to the Trustee and the members of the Trust Advisory Board in person or by telephone, or via mail or facsimile or electronic mail transmission.  Notice to the Trustee and the members of the Trust Advisory Board of any such regular or special meeting, if the meeting is to be held in-person rather than telephonically, will be deemed given sufficiently in advance when, at least ten (10) days before the meeting date, (i) if given by mail, the same is deposited in the United States mail, with postage thereon prepaid, (ii) if given by facsimile transmission or by e-mail, the same is transmitted by such means, or (iii) if personally

delivered (including by overnight courier) or given by telephone, the same is handed, or the substance thereof is communicated over the telephone to the Trustee and the members of the Trust Advisory Board or to an adult member of his or her office staff or household.  In the event that such meeting is to be held telephonically, as authorized by subsection 8(e)(i), the notice requirement in the preceding sentence shall be ten (10) days for notice by mail and 48 hours for facsimile transmission, email, personal delivery (including by overnight courier) or telephone. The Trustee and any member of the Trust Advisory Board may waive notice of any meeting and any adjournment thereof at any time before, during, or after it is held, as provided by law. Except as provided in the next sentence below, the waiver must be in writing, signed by the Trustee or the members of the Trust Advisory Board entitled to the notice, and filed with the minutes or records of the Trust.  The attendance of the Trustee or a member of the Trust Advisory Board at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

      (e)    <u>Manner of Acting</u>.

      (vii)   A majority of the total number of members of the Trust Advisory Board then in office shall constitute a quorum for the transaction of business at any meeting of the Trust Advisory Board.  The affirmative vote of a majority of the members of the Trust Advisory Board present at a meeting at which a quorum is present shall be the act of the Trust Advisory Board except as otherwise required by law or as provided in this Litigation Trust Agreement.  The Trustee may direct that the members of the Trust Advisory Board shall participate in any regular or special meeting (other than the initial meeting of the Trust Advisory Board) by, and conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  In the event that the Trustee does not so direct, any or all members of the Trust Advisory Board may nonetheless choose to participate in, or conduct, any meeting through such telephonic or similar means.  Any member of the Trust Advisory Board participating in a meeting by this means is deemed to be present in person at the meeting.  The Trust Advisory Board, and individual members thereof, shall take into account the relative expense of in person and telephonic appearance at meetings in determining the manner of members' appearance.  The members of the Trust Advisory Board shall have the authority to designate any person or entity to act on their behalf, including, without limitation, to attend, participate in and vote at meetings of the Trust Advisory Board.  The Trust Advisory Board shall prepare minutes of its meetings.  The members of the  Trust Advisory Board shall at all times seek to minimize expenses that they incur that are chargeable to the Trust, in order to conserve funds consistent with the purpose of the Trust and the limited funding available to it.

      (viii)   Any member of the Trust Advisory Board who is present at a meeting of the Trust Advisory Board when action is taken is deemed to have assented to the action taken unless: (i) such member of the Trust Advisory Board objects at the beginning of the meeting (or promptly upon his/her arrival) to holding it or transacting business at the meeting; or (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice of his/her dissent or abstention to the Trust Advisory Board

before its adjournment.  The right of dissent or abstention is not available to any member of the Trust Advisory Board who votes in favor of the action taken.

(f)    <u>Trust Advisory Board's Action Without a Meeting</u>.  Any action required or permitted to be taken by the Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Trust Advisory Board as evidenced by one or more written consents describing the action taken, signed by the Trust Advisory Board and filed with the minutes or proceedings of the Trust Advisory Board.

(g)    <u>Tenure, Removal, and Replacement of the Members of the Trust Advisory Board</u>.  The authority of the members of the Trust Advisory Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Trust is terminated in accordance with Section 10(a).  The service of the members of the Trust Advisory Board will be subject to the following:

(i)    The members of the Trust Advisory Board will serve until death or resignation, or removal pursuant to subsection (ii) or (iii) below;

(ii)    A member of the Trust Advisory Board may resign at any time by providing a written notice of resignation to the remaining members of the Trust Advisory Board.  Such resignation will be effective when a successor is appointed as provided herein;

(iii)    Any member of the Trust Advisory Board may be removed for cause by the Bankruptcy Court, upon the motion of the Trustee or any Beneficiary or on the Court's own motion.

(iv)    In the event of a vacancy in any member's position (whether by removal, death or resignation), other than the position of At-Large Member, the Recommending Beneficiary for the vacating member shall be entitled to recommend to the Bankruptcy Court an individual or entity to be appointed as a successor to the vacating member.  In the event that the Bankruptcy Court declines to appoint an individual or entity recommended by a Recommending Beneficiary as a successor member, the Recommending Beneficiary may recommend additional individuals or entities to the Bankruptcy Court.  If the Recommending Beneficiary fails timely to seek the appointment of a successor member, or fails timely to recommend an additional individual or entity after the Court has declined to appoint a recommended individual or entity, the Trustee or any Beneficiary may make application to the Court for the appointment of a successor member notwithstanding the lack of action by the Recommending Beneficiary.  Upon appointment of a successor member, such appointment will be evidenced by delivery of notice to record holders of Litigation Trust Interests, which notice will include the name, address and telephone number of the successor member of the Trust Advisory Board.

(v)    In the event of a vacancy in the At-Large Member's position, a successor At-Large Member shall be chosen by the unanimous vote of the other members of the Trust Advisory Board; provided that if the Trust Advisory Board fails to select an At-Large Member by unanimous vote at its first meeting after the vacancy arises, the Trustee may move the Bankruptcy Court to appoint a successor At-Large Member.

(vi)    Immediately upon appointment of any successor member of the Trust Advisory Board, all rights, powers, duties, authority and privileges of the predecessor member of the Trust Advisory Board hereunder will be vested in and undertaken by the successor member of the Trust Advisory Board without any further act, and the successor member of the Trust Advisory Board will not be liable for any act or omission of the predecessor member of the Trust Advisory Board.

## 9.    REPORTS TO HOLDERS OF LITIGATION TRUST INTERESTS

(a)    <u>Securities Laws</u>.  Under section 1145 of the Bankruptcy Code, the issuance of Litigation Trust Interests under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration of securities.  If the Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with any of the registration, reporting, or other requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Trustee shall take any and all actions necessary to comply with such requirements or may seek exemption from the Securities and Exchange Commission therefor, and, if granted, shall comply with the terms of any such exemption.

(b)    <u>Other Reporting</u>.  As soon as practicable after the end of each calendar year and as soon as practicable upon termination of the Litigation Trust, the Trustee shall provide to the members of the Trust Advisory Board and to each holder of Litigation Trust Interests appearing on its records as of the end of such period or such date of termination a written report describing the financial condition of the Litigation Trust for such period.  Such report shall reflect the result of such procedures relating to the financial accounting administration of the Litigation Trust considered by the Trustee, subject to the approval of the Trust Advisory Board, to be appropriate under the circumstances.  To the extent considered appropriate by the Trustee, subject to the approval of the Trust Advisory Board, such report may but need not be prepared by an independent certified public accountant employed by the Trustee and may but need not be certified or prepared in accordance with U.S. generally accepted accounting principles.  Such report shall not include any estimate of the value of the Anadarko Litigation.  In addition, the Trustee shall provide to each holder of Litigation Trust Interests appearing on its records as of the end of each calendar quarter a written report including: (a) a description of any action taken by the Trustee in the performance of its duties that materially affects the Litigation Trust and of which notice has not previously been given to the holders of Litigation Trust Interests; (b) a description of the progress of the Anadarko Litigation and any other material information relating to the Trust Property and the administration of the Litigation Trust; and (c) a statement of the fees and expenses of the Trustee and the Trust's professionals.  Notwithstanding anything to the contrary contained herein, the Trustee shall not provide or disclose any information that it reasonably believes is privileged or otherwise protected from discovery without first ensuring that inclusion of that information will not waive any such privilege or protection.  Subject to the foregoing sentence, the Trustee may, but is not required to, post any such report on a limited-access web site maintained by the Trustee and available to the Beneficiaries.  To the extent specifically authorized by a Beneficiary, the posting of any such report may be in lieu of providing a copy to the Beneficiary (unless otherwise required by law).

## 10.    TERMINATION OF LITIGATION TRUST

(a)    Termination of Litigation Trust.

(i)    The Litigation Trust shall terminate upon the occurrence of the earlier of (I) the full liquidation, administration and distribution of the Trust Property in accordance with the Plan, the Confirmation Order and this Litigation Trust Agreement and the full performance of all other duties and functions of the Trustee set forth in the Plan, the Confirmation Order and this Litigation Trust Agreement or (II) the fifth anniversary of the Effective Date, subject to one or more finite extensions, which must be approved by the Bankruptcy Court within one month prior to the then-current termination date and provided that the Trustee receives an opinion of counsel or a favorable ruling from the Internal Revenue Service to the effect that any such extension would not adversely affect the status of the Trust as a qualified settlement fund (or a qualified settlement fund treated as a grantor trust pursuant to the QSF Regulations) for federal income tax purposes.

(ii)    The Trustee shall not unduly prolong the duration of the Litigation Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute Trust Property, subject to the limitations of Section 4(c), and to effect the distribution of the Trust Property to the holders of the Litigation Trust Interests in accordance with the terms hereof and terminate the Litigation Trust as soon as practicable.  Prior to and upon termination of the Litigation Trust, the Trust Property will be distributed to the holders of the Litigation Trust Interests, pursuant to the provisions set forth in Section 5 hereof.  If (x) the Trustee has sent two notices by certified mail, at least a month apart, to a holder of Litigation Trust Interests, inviting that holder to claim a distribution of Trust Property, and (y) a year has passed from the date of the second notice without such holder's claiming such Trust Property, such Trust Property will be redistributed *pro rata* to all other holders of Litigation Trust Interests receiving Trust Property pursuant to Section 5 hereof.

(b)    Continuance of Trust for Winding Up.  After the termination of the Litigation Trust and for the purpose of winding up the affairs of the Litigation Trust, the Trustee shall continue to act as such until its duties have been fully performed.  Upon termination of the Litigation Trust, the Trustee shall retain for a period of two years the books, records, the register of holders of Litigation Trust Interests, and certificates and other documents and files which shall have been delivered to or created by the Trustee; *provided that,* subject to the terms of any applicable protective order, documents received by the Trustee solely in connection with the conduct of the Anadarko Litigation, including discovery documents produced by any party therein, may be destroyed at any time after the completion of the Anadarko Litigation, including the expiration of time to take any appeals, but only to the extent permitted by law, judicial rule, or other agreements pertaining to such documents.  At the Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two years from the completion and winding up of the affairs of the Litigation Trust.  Except as otherwise specifically provided herein, upon the termination of the Litigation Trust, the Trustee shall have no further duties or obligations hereunder.  Notwithstanding the above, the Trustee shall notify the Beneficiaries and Government Environmental Entities at least three months prior to the destruction of any documents authorized to be destroyed under this subsection, and shall offer

the Beneficiaries and Government Environmental Entities an opportunity to take possession, custody, and control of such documents.

## 11.    LIMITATIONS ON LIABILITY; INDEMNIFICATION

(a)    <u>Liability of Trustee, Trust Advisory Board; Indemnification</u>.  Except as otherwise provided in section 14(c), none of the Trustee, the Trust Advisory Board, or Trust Advisory Board members, or any of their respective officers, directors, shareholders, designees, partners, affiliates, employees, or professionals, or any duly designated agent or representative of the Trustee, the Trust Advisory Board, or the Trust Advisory Board members shall be personally liable for any act or omission in such capacity, other than acts or omissions resulting from such person or entity's own fraud, willful misconduct, gross negligence, self-dealing, or *ultra vires* acts.  The Trustee and the Trust Advisory Board may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their attorneys, accountants and financial advisors and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons.  Notwithstanding such authority, and except as otherwise expressly required herein, neither the Trustee nor the Trust Advisory Board shall be under any obligation to consult with their attorneys, accountants, financial advisors, or agents, and their determination not to do so shall not result in the imposition of liability on the Trustee or the Trust Advisory Board or its members or, as applicable, their respective designees, unless such determination is based on the Trustee's or the Trust Advisory Board's respective fraud, willful misconduct, gross negligence, self-dealing, or *ultra vires* acts.  The Litigation Trust shall indemnify and hold harmless the Trustee, the Trust Advisory Board, its members, and all of their respective designees, partners, affiliates, employees, and professionals, and any duly designated agent or representative of the Trustee or the Trust Advisory Board or any of its members (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees and costs payable monthly in arrears arising out of or due to their actions or omissions, or consequences of such actions or omissions with respect to the Litigation Trust or the implementation or administration of this Litigation Trust Agreement and the Plan; *provided*, *however*, that no such indemnification will be made to such persons for such actions or omissions that result from fraud, willful misconduct, gross negligence, self-dealing, or *ultra vires* acts.

(b)    <u>Reliance by Trustee</u>.  Except as otherwise provided in Section 11(a) hereof:

(i)    The Trustee and the Trust Advisory Board may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper, document, spreadsheet, or database believed by it to be genuine and to have been signed or presented by the proper party or parties; and

(ii)    Except as otherwise provided in section 14(c), persons dealing with the Trustee or the Trust Advisory Board shall look only to Trust Property to satisfy any liability incurred by the Trustee or the Trust Advisory Board, other than in the case of fraud, willful misconduct, gross negligence, self-dealing, or *ultra vires* acts, to such person in carrying out the terms of this Litigation Trust Agreement, and neither the Trustee, the Trust Advisory

Board, its members, nor any of their respective designees, partners, affiliates, agents, employees, representatives, attorneys, or professionals shall have any personal obligation or recourse of any nature or kind whatsoever to satisfy any such liability, other than in the case of fraud, willful misconduct, gross negligence, self-dealing or ultra vires acts.

## 12.   AMENDMENT AND WAIVER

(a)   <u>Amendment and Waiver</u>.  Any substantive provision of this Litigation Trust Agreement may be amended, and any right of the Trust may be waived, by the joint agreement of the Trustee, a majority vote of the Trust Advisory Board (excluding the At-Large Member), and the United States; except that (I) any such amendment or waiver that affects a provision of this Litigation Trust Agreement requiring a unanimous vote of the Trust Advisory Board or that affects subsections 4(a), 4(c)(i)(II) or 4(c)(i)(III) may be approved only by the joint agreement of the Trustee, a unanimous vote of the Trust Advisory Board (excluding the At-Large Member), and the United States, (II) any such amendment or waiver that affects the last sentence of subsection 4(c)(i)(II), subsections 5(a)(i) or 5(a)(ii), or Schedule 1 requires the approval of any adversely affected Beneficiaries, and (III) subsection 4(c)(i)(IV), subsection 4(c)(i)(V), and this subsection 12(a)(III) may not be amended or waived.  Technical amendments to this Litigation Trust Agreement may be made, as necessary, to clarify this Litigation Trust Agreement or enable the Trustee to effectuate the terms of this Litigation Trust Agreement by the Trustee with the approval of the Trust Advisory Board and the United States, but with notice to each of the holders of Litigation Trust Interests.  Notwithstanding this Section 12(a), any amendments to this Litigation Trust Agreement shall not be inconsistent with the purpose and intention of the Litigation Trust to pursue the Anadarko Litigation and distribute the Trust Property in accordance with the QSF Regulations and Section 4(a) hereof, nor shall any such amendments be inconsistent with the Plan, the Environmental Claims Settlement Agreement as it exists on the Effective Date and as modified by the First Amendment, the Tort Claims Trust Agreement as it exists on the Effective Date, or the Special Fee Arrangement.

## 13.   ADDITIONAL PROVISIONS RELATED TO THE UNITED STATES

(a)   In addition to the provisions otherwise specifically applicable to the United States in this Litigation Trust Agreement, including but not limited to the requirement of Section 4(c)(i)(II)(A), above, that the consent of the United States be obtained for any Settlement, and in addition to the provisions applicable to the United States as a Beneficiary, the following additional provisions shall apply:

(i)   The United States shall be given advance notice of any Settlement negotiations or other dispute resolution process, and shall have the right to be present and participate.

(ii)   The United States shall have such rights as are accorded to it under the Special Fee Arrangement between the Trust and its attorneys.

(iii)   The United States shall have standing to be heard in any judicial proceeding concerning the Trust or the Anadarko Litigation.

(iv)    The Trust shall endeavor to coordinate its litigation strategy in the Anadarko Litigation with counsel for the United States.

(v)    To the greatest extent consistent with the protection of privileged documents and information from disclosure and to the extent permitted under the Protective Orders (as defined in subsection 14(c)), the Trust will, upon request, provide the United States access to all documents and information in the possession of the Trust and its counsel.

(vi)    Nothing contained in this Litigation Trust Agreement shall be construed to compromise or in any way alter the independent right of the United States to participate in the Anadarko Litigation under the "Order Approving Revised Stipulation and Order with Respect to Federal Debt Collection Procedures Act" entered by the United States Bankruptcy Court for the Southern District of New York on August 29, 2009.

(b)    The United States and the Trust are jointly prosecuting the Anadarko Litigation and share a common interest in the Litigation with the other Beneficiaries and the Government Environmental Entities.  Accordingly, privileged documents and information relating to the prosecution of the Anadarko Litigation may be exchanged among the United States, the other Beneficiaries, the Government Environmental Entities and the Trust, or their respective counsel, without waiver of privilege.

(c)    Notwithstanding anything in this Litigation Trust Agreement, the United States retains sole authority over, and ownership of, and control of the prosecution and settlement of the claims asserted in its complaint-in-intervention in the Anadarko Litigation; provided, however, that the proceeds of any settlement or other resolution of such claims shall be treated as if they were funds obtained in the Anadarko Litigation by the Litigation Trust, and shall be distributed as such to the Beneficiaries in accordance with the terms of this Litigation Trust Agreement.

## 14.    MISCELLANEOUS PROVISIONS

(a)    Intention of Parties to Establish Qualified Settlement Fund.  This Litigation Trust Agreement is intended to create a qualified settlement fund for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Litigation Trust Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

(b)    Preservation of Privilege and Defenses.  Any attorney client privilege, work product privilege, or other privilege or immunity held by Tronox, including any such privilege held jointly by Tronox and another person or entity ("Joint Privilege"), that attaches to any documents or communications (whether written or oral) transferred to the Litigation Trust or related to the Anadarko Litigation shall vest in the Trust.  Subject to the provisions of this paragraph, paragraph 14(c) and the Protective Orders, the Trustee and the Trust Advisory Board, and the members of the Trust Advisory Board, shall have access to information to which a Joint Privilege applies solely in connection with the exercise of their powers and duties under this Litigation Trust Agreement.  The Trust, the Trustee and the Trust Advisory Board shall not

disclose any information to which a Joint Privilege applies to any Beneficiary other than the United States, unless expressly permitted by both the Protective Orders, including Paragraphs 10 and 11 of the Agreed Protective Order, and applicable law.  The Trust, the Trustee, the Trust Advisory Board, and the members of the Trust Advisory Board shall take all appropriate actions to preserve such privileges and immunities, including, but not limited to, by complying with applicable provisions of the Protective Orders and all applicable laws governing the use or dissemination of joint privileged information.  The Debtors, the Reorganized Debtors and the Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges and immunities.  Disclosure of any qualifying documents or communications to the Trust, the Trustee, the Trust Advisory Board, any member of the Trust Advisory Board, or any Beneficiary in accordance with the provisions of this Agreement and the Protective Orders shall not be deemed a waiver of any applicable privilege, immunity or protection for purposes of the Anadarko Litigation or any other Federal or State proceeding.  Any and all work product created by or on behalf of the Trustee, the Trust Advisory Board, their retained professionals (including, but not limited to, their counsel), agents, representatives, and employees shall be deemed confidential to the extent that such work product is not protected by the attorney client privilege, attorney work-product doctrine, or any other applicable privilege.

(c)     Protective Orders.  Notwithstanding anything to the contrary herein, the Trust, the Trustee, the Trust Advisory Board and the members of the Trust Advisory Board shall not have access to documents protected by the Agreed Protective Order (docket no. 248 in case 09-10156) and Second Agreed Protective Order (docket no. 2626 in case 09-10156) (collectively and as has been and may be further modified or amended, the "Protective Orders") until such time as the Trustee (on behalf of himself, the Trust, and the Trust Advisory Board) and the members of the Trust Advisory Board (i) execute an appropriate document agreeing to be bound by and comply with the Protective Orders and (ii) notify the other parties to the Protective Orders that such document has been executed.  Notwithstanding anything to the contrary in this Litigation Trust Agreement, this Litigation Trust Agreement shall not be construed to relieve any person or entity, including the Trustee and the Trust Advisory Board members, of any liability that might otherwise exist for violation of the Protective Orders.

(d)     Treatment of Tronox as Party for Certain Purposes.  Notwithstanding anything to the contrary herein and subject to Tronox's rights under the Federal Rules of Civil Procedure, Federal Rules of Evidence, Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court and any other applicable rules (collectively, the "Rules"), Tronox (a) shall be required to comply with the Protective Orders, the Stipulation and Order Regarding Expert Discovery (docket no. 104 in case 09-01198) and the Deposition Protocol Stipulation and Order (docket no. 115 in case 09-01198) and (b) shall continue to be treated as if it is a party-plaintiff for the purposes of (i) preservation of evidence, (ii) the jurisdiction of any court presiding over the Anadarko Litigation to order the appearance of witnesses at deposition, hearing, or trial, (iii) responding to discovery requests, (iv) receipt of any appropriate papers or pleadings by service pursuant to Rule 7005 of the Federal Rules of Bankruptcy Procedure rather than Rule 7004 or Rule 9016 of the Federal Rules of Bankruptcy Procedure, and (v) any other purpose necessary or appropriate to avoid undue prejudice to the Defendants in the Anadarko Litigation.

(e)    <u>Certain Parties Not Beneficiaries</u>.  The following persons and entities are not and may not become Beneficiaries:  Anadarko Petroleum Corporation, Kerr-McGee Corporation, Ernst & Young LLP, and Lehman Brothers Holdings Inc., and each of their respective officers, directors, partners, members, employees, advisors, attorneys, professionals, accountants, investment bankers, consultants, agents and other representatives (including their respective affiliates officers, directors, employees, members and professionals), or any individuals who were former directors or officers of any of the Debtors or any of their subsidiaries and who also were or currently are directors or officers of Kerr-McGee Corporation and/or Anadarko Petroleum Corporation (collectively, the "Adverse Persons").  Notwithstanding anything to the contrary contained in this Litigation Trust Agreement, the Plan, the Confirmation Order or any other order (except a final order by a court of competent jurisdiction expressly requiring the production of such information to such Adverse Persons) or agreement, the Adverse Persons are not entitled to receive, and the Trust shall not provide to the Adverse Persons, any non-public information regarding the Anadarko Litigation or the Trust Property. Further, the Trust shall not provide such non-public information to any person or entity without receiving assurances deemed appropriate by the Trustee that such non-public information will not be provided by the recipient to the Adverse Persons.

(f)    <u>Laws as to Construction</u>.  This Litigation Trust Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York, without giving effect to provisions, policies, or principles thereof governing conflict or choice of laws.

(g)    <u>Severability</u>.  If any provision of this Litigation Trust Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Litigation Trust Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Litigation Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

(h)    <u>Notices – General</u>.  Except as otherwise specifically provided herein, any notice or other communication hereunder shall be deemed to have been sufficiently given, for all purposes, if personally delivered or sent by mail, postage prepaid, or by telecopy addressed to the person for whom such notice is intended as follows (or such other address as may be designated by notice given in accordance with this Section 14(h)):

If to the Trustee:

> John C. Hueston
> Irell & Manella LLP
> 1800 Avenue of the Stars
> Suite 900
> Los Angeles, CA 90067-4276

If to the Debtors or the Reorganized Debtors:

       Tronox Incorporated
       3301 NW 150th Street
       Oklahoma City, Oklahoma 73134
       Attn: General Counsel

If to the Trust Advisory Board:

       <u>For Karen Cordry</u>
       Karen Cordry
       National Association of Attorneys General
       2030 M Street, N.W., 8th Floor
       Washington, DC  20036

       <u>For Garretson Resolution Group</u>
       Matthew L. Garretson
       The Garretson Resolution Group, Inc.
       7775 Cooper Road
       Cincinnati, OH  45242

       and

       Rachael A. Rowe
       Keating, Muething & Klekamp, PLL
       One East 4th Street, Suite 1400
       Cincinnati, OH  45202

       <u>For Greenfield Environmental Multistate
           Trust, LLC</u>
       Marc Weinreich, Vice President
       Greenfield Environmental Multistate Trust, LLC
       Trustee of the Multistate Environmental
           Response Trust
       Greenfield Environmental Trust Group, Inc.
       1928 Eagle Crest Drive
       Draper, UT  84020

       <u>For Le Petomane XXVII, Inc.</u>
       Le Petomane XXVII, Inc., not individually but
       solely as Trustee of the Nevada Environmental
       Response Trust
       35 E. Wacker Dr.
       Chicago, IL  60601

with a copy to:

Foley & Lardner LLP
777 E. Wisconsin Ave., Suite 3500
Milwaukee, WI  53202
Attention:  Tanya C. O'Neill

If to a holder of a Litigation Trust Interest:

To the name and address set forth on the registry
maintained by the Trustee.

(i)      Notices – Email.  Except as otherwise specifically provided herein, any notice or other communication hereunder shall be deemed to have been sufficiently given, for all purposes, if sent by email to the email address of a person who has previously consented to the notice by email in lieu of other means; has designated the particular email address to be used for this purpose; and has not revoked such consent or designation; provided that such service shall not be deemed sufficient if the Trustee receives an electronic notification that electronic transmission of such email was unsuccessful.  At any time, such person or entity may terminate its approval to delivery of notices by email.

(j)      Headings.  The section headings contained in this Litigation Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Litigation Trust Agreement or of any term or provision hereof.

(k)      Relationship to the Plan.  If any provisions of this Litigation Trust Agreement are found to be inconsistent with the provisions of the Plan, the provisions of this Litigation Trust Agreement shall control.

(l)      No Recourse to Beneficiaries.  In no event shall the Beneficiaries or Government Environmental Entities have any responsibility for paying any expenses, fees, and other obligations of the Anadarko Litigation Trust, and in no event shall the Trust, the Trustee, or the Trust Advisory Board, or any of their agents, representatives, or professionals, have recourse to the Beneficiaries or the Government Environmental Entities therefor.

(m)      The Trust's Compliance With Other Orders.  The Trust shall be bound (to the same extent that Tronox would have been bound but for this Litigation Trust Agreement) by all orders entered by the Bankruptcy Court in the Anadarko Litigation on or before the Effective Date and all stipulations between Tronox and the Defendants that have been filed with the Bankruptcy Court in the Anadarko Litigation on or before the Effective Date, including the Stipulation and Order Regarding Expert Discovery and the Deposition Protocol Stipulation and Order.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Litigation Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**FOR TRONOX LUXEMBOURG S.ar.L**

Date: _____

By: _____
Michael J. Foster
Attorney-in-Fact

**FOR TRONOX INCORPORATED**

Date: _____

By: _____
Michael J. Foster
Vice President, General Counsel & Secretary

**FOR CIMARRON CORPORATION**

Date: _____

By: _____
Michael J. Foster
Director, Vice President & Secretary

**FOR SOUTHWESTERN REFINING COMPANY, INC.**

Date: _____

By: _____
Michael J. Foster
Director, Vice President & Secretary

**FOR TRANSWORLD DRILLING COMPANY**

Date: _____

By: _____
Michael J. Foster
Director, Vice President & Secretary

**FOR TRIANGLE REFINERIES, INC.**

Date: _____

By: _____
Michael J. Foster
Director, Vice President & Secretary


**FOR TRIPLE S, INC.**

Date: _____

By: _____
Michael J. Foster
Director, Vice President & Secretary


**FOR TRIPLE S ENVIRONMENTAL MANAGEMENT CORPORATION**

Date: _____

By: _____
Michael J. Foster
Director, Vice President & Secretary


**FOR TRIPLE S MINERALS RESOURCES CORPORATION**

Date: _____

By: _____
Michael J. Foster
Director, Vice President & Secretary


**FOR TRIPLE S REFINING CORPORATION**

Date: _____

By: _____
Michael J. Foster
Director, Vice President & Secretary

37

**FOR TRONOX LLC**

Date: _____

By: _____
Michael J. Foster
Manager, Vice President & Secretary

**FOR TRONOX FINANCE CORP.**

Date: _____

By: _____
Michael J. Foster
Director, Vice President & Secretary

**FOR TRONOX HOLDINGS, INC.**

Date: _____

By: _____
Michael J. Foster
Director
Vice President & Secretary

**FOR TRONOX PIGMENTS (SAVANNAH) INC.**

Date: _____

By: _____
Michael J. Foster
Director, Vice President & Secretary

**FOR TRONOX WORLDWIDE LLC**

Date: _____

By: _____
Michael J. Foster
Manager, Vice President & Secretary

**FOR THE TRUSTEE**

_____ (solely in his capacity as Trustee for the
Anadarko Litigation Trust)

Name: John C. Hueston
Irell & Manella LLP

**FOR THE MEMBERS OF THE TRUST ADVISORY BOARD**

Date: 2/12/2011

Greenfield Environmental Multistate Trust LLC
Not Individually But Solely In Its Representative
Capacity
As Trustee for the Multistate Trust
By:  Greenfield Environmental Trust Group, Inc., Member
By:  Cynthia Brooks, President


The Nevada Trustee
By and through Le Petomane XXVII, Inc., not
individually but solely as the Nevada Environmental
Response Trust Trustee

Date: _____     By: _____
                                 Jay A. Steinberg, not individually but solely
                                 in the representative capacity as President of
                                 the Trustee of the Nevada Environmental
                                 Response Trust


GARRETSON RESOLUTION GROUP, INC.
(solely in its capacity as Tort Claims Trustee)

Date: _____     By: _____
                             Name:   Matthew L. Garretson
                             Title:    President and CEO


Date: _____     By: _____
                             Name:   Karen Cordry:


40A

**FOR THE MEMBERS OF THE TRUST ADVISORY BOARD**

Date: _____

_____
Greenfield Environmental Multistate Trust LLC
Not Individually But Solely In Its Representative
Capacity
As Trustee for the Multistate Trust
By:  Greenfield Environmental Trust Group, Inc., Member
By:  Cynthia Brooks, President


The Nevada Trustee
By and through Le Petomane XXVII, Inc., not
individually but solely as the Nevada Environmental
Response Trust Trustee

Date: 2/9/11 _____

By: _____  as President, and not individually
Jay A. Steinberg, not individually but solely
in the representative capacity as President of
the Trustee of the Nevada Environmental
Response Trust


GARRETSON RESOLUTION GROUP, INC.
(solely in its capacity as Tort Claims Trustee)

Date: _____

By: _____
Name:  Matthew L. Garretson
Title:    President and CEO


Date: _____

By: _____
Name:    Karen Cordry:


40B

**FOR THE MEMBERS OF THE TRUST ADVISORY BOARD**

Date: _____

    _____
Greenfield Environmental Multistate Trust LLC
Not Individually But Solely In Its Representative
Capacity
As Trustee for the Multistate Trust
By: Greenfield Environmental Trust Group, Inc., Member
By: Cynthia Brooks, President


The Nevada Trustee
By and through Le Petomane XXVII, Inc., not
individually but solely as the Nevada Environmental
Response Trust Trustee

Date: _____

By: _____
    Jay A. Steinberg, not individually but solely
    in the representative capacity as President of
    the Trustee of the Nevada Environmental
    Response Trust


GARRETSON RESOLUTION GROUP, INC.
(solely in its capacity as Tort Claims Trustee)

Date: _2/10/11_____

By: _____
Name: Matthew L. Garretson
Title: President and CEO


Date: _____

By: _____
Name: Karen Cordry:

40C

**FOR THE MEMBERS OF THE TRUST ADVISORY BOARD**

Date: _____

Greenfield Environmental Multistate Trust LLC
Not Individually But Solely In Its Representative
Capacity
As Trustee for the Multistate Trust
By:  Greenfield Environmental Trust Group, Inc., Member
By:  Cynthia Brooks, President


The Nevada Trustee
By and through Le Petomane XXVII, Inc., not
individually but solely as the Nevada Environmental
Response Trust Trustee

Date: _____

By:  _____
     Jay A. Steinberg, not individually but solely
     in the representative capacity as President of
     the Trustee of the Nevada Environmental
     Response Trust


GARRETSON RESOLUTION GROUP, INC.
(solely in its capacity as Tort Claims Trustee)

Date: _____

By: _____
Name:   Matthew L. Garretson
Title:    President and CEO


Date: _2/10/2011_

By: _~Karen Cordry~_
Name:   Karen Cordry:

40D

**FOR THE UNITED STATES OF AMERICA**

Date: 2/9/11

ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20044

Date: 2/11/11

PREET BHARARA
United States Attorney for the
Southern District of New York

By:

ROBERT WILLIAM YALEN
TOMOKO ONOZAWA
JOSEPH A. PANTOJA
Assistant United States Attorneys
86 Chambers Street
New York, New York 10007
Tel: (212) 637-2722
Fax: (212) 637-2686

Date: 2/10/11

ALAN S. TENENBAUM
National Bankruptcy Coordinator
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20044

Date: 2/10/11

FREDERICK PHILLIPS, Attorney
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20044

41

**FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

Date: _1/1A/11_          By: _____

                                     CYNTHIA GILES
                                       Assistant Administrator for Enforcement
                                       and Compliance Assurance
                                       U.S. Environmental Protection Agency

Date: _1/14/11_          By: _____

                                       CRAIG KAUFMAN
                                       Attorney-Advisor
                                       U.S. Environmental Protection Agency
                                       Ariel Rios Building
                                       1200 Pennsylvania Avenue, NW
                                     Washington, DC 20460

*In re: Tronox, Inc., et al.,* Case No. 09-10156 (ALG)

42

**FOR THE MULTISTATE TRUST**

Date: 2/9/2011

Greenfield Environmental Multistate Trust LLC
Not Individually But Solely In Its Representative
Capacity
As Trustee for the Multistate Trust
By:  Greenfield Environmental Trust Group, Inc., Member
By:  Cynthia Brooks, President

43

**FOR THE TORT CLAIMS TRUST**

GARRETSON RESOLUTION GROUP, INC.
(solely in its capacity as Tort Claims Trustee)

By: _____

Name:   Matthew L. Garretson

Title:    President and CEO

44

**FOR THE NEVADA TRUST**

The Nevada Trustee
By and through Le Petomane XXVII, Inc., not
individually but solely as the Nevada Environmental
Response Trust Trustee

Date: _____

By: _____ *as President and not individually*
Jay A. Steinberg, not individually but solely
in the representative capacity as President of
the Trustee of the Nevada Environmental
Response Trust

45

# Schedule 1

|   | Beneficiary | Percentage |
|---|---|---|
| 1 | United States | 41.92400% |
| 2 | Multistate Trust | 25.41900% |
| 3 | Nevada Trust | 25.00000% |
| 4 | Cimarron Trust | 1.83900% |
| 5 | Massachusetts | 1.65300% |
| 6 | Savannah Trust | 1.28500% |
| 7 | Navajo Nation | 1.00000% |
| 8 | New Jersey | 0.72500% |
| 9 | Oklahoma | 0.37000% |
| 10 | Texas | 0.16000% |
| 11 | Illinois | 0.15200% |
| 12 | Missouri | 0.15000% |
| 13 | Alabama | 0.11000% |
| 14 | Ohio | 0.10200% |
| 15 | Mississippi | 0.10000% |
| 16 | New York | 0.00500% |
| 17 | Louisiana | 0.00400% |
| 18 | Georgia | 0.00200% |

# Schedule 2

|   | Initial Advisory Board Member | Recommending Beneficiary |
|---|---|---|
| 1 | Greenfield Environmental Multistate Trust LLC, Not Individually But Solely In Its Representative Capacity as Trustee for the Multistate Trust | Multistate Trust |
| 2 | The Nevada Environmental Response Trust By and through Le Petomane XXVII, Inc., not individually but solely as the Trustee of the Nevada Environmental Response Trust | Nevada Trust |
| 3 | Trustee of the Tort Claims Trust | Tort Claims Trust |
| 4 | Karen Cordry, Esq. | Recommended jointly by the United States and the Beneficiaries other than the Multistate Trust, the Nevada Trust, and the Tort Claims Trust |
| 5 | [VACANT] | Recommended jointly by the United States and the Beneficiaries other than the Multistate Trust, the Nevada Trust, and the Tort Claims Trust |